COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice admission forthcoming*

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARK BAIRD and RICHARD GALLARDO, <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Attorney General of the State of California, and DOES 1-10, <br><br><br> Defendants. | Case No. <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF 42 U.S.C. §§ 1983, 1988** |

NOW COME Plaintiffs, MARK BAIRD and RICHARD GALLARDO, by and through their counsel, and allege against Defendants California Attorney General Xavier Becerra and Does 1-10 as follows:

1.  This is an action for declaratory and injunctive relief proximately caused by California's statutory firearms licensing scheme and the actions of the defendants for violations of Plaintiffs' fundamental human rights under, *inter alia*, the Second, Fourth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §1983.

1

2. The Court's jurisdiction over Plaintiffs' federal claims is authorized pursuant to 28 U.S.C. §1331 and §1343.

3. The Court's jurisdiction over Plaintiffs' claims for injunctive and declaratory relief is authorized by 28 U.S.C. §2201 and §2202.

4. The Court's jurisdiction over Plaintiffs' federal claims and for statutory attorney's fees is authorized pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988.

5. Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**THE PARTIES**

6. Plaintiff, MARK BAIRD ("Plaintiff" or "Mr. Baird") is a United States citizen and a resident of Siskiyou County, California.

7. Plaintiff, RICHARD GALLARDO ("Plaintiff" of "Mr. Gallardo") is a United States citizen and a resident of Shasta County, California.

8. Defendant XAVIER BECERRA ("Defendant" or "Defendant Becerra") is the Attorney General of the State of California. Defendant Becerra is sued herein in his official capacity only. Pursuant to California State Constitution Article V, Section 13, as the Attorney General for the State of California, Defendant is the chief law enforcement officer of the State whose duty it is to ensure that the laws of the State are uniformly and adequately enforced.

9. Defendant Becerra has direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to Defendant may seem advisable.

2

10.  Whenever in the opinion of Defendant Becerra any law of the State is not being adequately enforced in any county, it shall be Defendant's duty to prosecute any violations of law of which the superior court shall have jurisdiction. In such cases Defendant shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, Defendant shall assist any district attorney in the discharge of the duties of that office.

11.  Becerra and Defendants "DOES 1-10" are personally and otherwise responsible for formulating, executing, and administering the California Penal Code, which include those related to the possession of firearms, licensing, and manner of carry.

12.  The true names or capacities of Defendants DOES 1-10, whether individual, corporate, or otherwise, are presently unknown to Plaintiffs and are therefore sued herein as "Does 1-10".

13.  Plaintiffs reserve the right to request leave of the Court to amend this complaint to identify the true names and/or capacities of one or more of Defendants Does 1-10 within a reasonable time of discovering their identities.

## STATEMENT OF FACTS

14.  In every county in California having a population under 200,000, where a law-abiding individual has met the criteria for the issuance of an open carry license, the Sheriff of such county has discretion to deny the application due to the "may issue" language of the statutes. (Penal Codes §26150 and §26155).

15.  The California Department of Justice ("DOJ") creates and provides to the state Sheriff's Offices standard Concealed Carry ("CCW") Application Forms.

16.  The California DOJ has not created, does not provide to the public via its website, and does not distribute to the various Sheriff's Offices in the state, a standard application for an open carry license.

17. None of the counties in California that have populations of less than 200,000 people (aka "26150(b)(2) counties") have issued open carry licenses since 2012.

18. California Penal Code §26225 requires that a copy of all firearms licenses issued in each county (open carry and concealed carry) be "filed immediately" with the DOJ.

19. For the time period encompassing 2012 to the present, the DOJ's records reflect no open carry licenses have been issued in the State of California.

***Plaintiff Mark Baird: Siskiyou County***

20. Plaintiff Mark Baird is an individual of unquestionably good moral character, a law-abiding citizen, and has never been charged with, summoned, or arrested for any violation of the California State Penal Code or any other criminal offense.

21. Mr. Baird does not hold a California firearm license and does not fall within any of the exemptions to the California Penal Code sections criminalizing the possession of firearms, whether loaded or unloaded.

22. Mr. Baird possesses firearms in his home for self-defense. Under California law, no license is required to possess a firearm in one's home for self-defense.

23. Mr. Baird seeks to carry a handgun loaded and exposed (hereinafter "open carry") for self-defense outside of his home and in public.

24. Mr. Baird seeks to carry a firearm loaded and exposed for self-defense in public without the need to demonstrate any "cause" or "reason" for the issuance thereof.

25. Mr. Baird is a resident of the County of Siskiyou, California, which according to the most recent federal census has a population of less than 200,000 people. Based on the population of Siskiyou County, its residents are eligible to apply for an open carry firearm license under California's statutory firearms licensing scheme.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

***Siskiyou County Application Process Devoid of "Open Carry" Option***

26.  The Siskiyou County written criteria for the issuance of a carry license does not contain an option for applying for an open carry license.

27.  The Siskiyou County written instructions for a "carry" license only identify an option for concealed carry, not open carry.

28.  The Siskiyou County handgun licensing procedure has no option for a law-abiding individual to apply for an open carry license.

29.  The Siskiyou County Sheriff's Office Information Form is entitled, "CONCEALED WEAPON LICENSE RENEWAL/CHANGE".

30.  The Siskiyou County Sheriff's Office has no form for an "Open Carry Renewal/ Change".

31.  The second page of the Siskiyou County Sheriff's Office Information Form indicates, "Signature of CCW holder".

32.  There are no forms used by the Siskiyou County Sheriff's Office, or available to the law-abiding residents of Siskiyou County, for the purpose of applying for an "Open Carry" handgun license.

33.  The Siskiyou County Sheriff's website only provides "Concealed Carry Weapon Information", and not "Open Carry Weapon Information". The Siskiyou County Sheriff's website has no information related to obtaining and/or applying for an open carry license.

34.  The Siskiyou County Sheriff's Office provides to carry license applicants an approved firearm application form issued by the State of California Department of Justice (the "DOJ Application"). The DOJ Application contains a section for the applicant to indicate the type of license being applied for, which is to be filled out by the applicant.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

35. The "type of license" section on the DOJ Application handed out by the Siskiyou County Sheriff's Office is pre-populated by the Siskiyou County Sheriff's Office and indicates, "STANDARD CCW".

36. By filling in the "type of license" section on the DOJ Application, the Siskiyou County Sheriff's Office eliminates the ability for Siskiyou County residents to apply for an open carry license.

37. By filling in the "type of license" section on the DOJ Application, the Siskiyou County Sheriff's Office purposely conceals from its residents their right to choose the type of handgun license to apply for, to wit, open carry.

38. On more than one occasion, Mr. Baird applied to Siskiyou County Sheriff Jon Lopey ("Sheriff Lopey") for an open carry license for self-defense in public pursuant to California Penal Code §26150.

39. Sheriff Lopey has denied each of Mr. Baird's requests for an open carry firearms license.

40. In Siskiyou County, even where an applicant has met the criteria for the issuance of an open carry license, the "may issue" language of California's licensing scheme gives Sheriff Lopey the authority to deny the application. (Penal Code §26150(b)).

41. Mr. Baird has met the criteria for the issuance of an open carry license, yet Sheriff Lopey has denied his applications. Sheriff Lopey was authorized to deny Mr. Baird's applications because California's licensing scheme contains the language "may issue". (Penal Code §26150(b)). Upon information and belief, Sheriff Lopey's described conduct is performed at the direction of and/or with the knowledge and approval of Defendant Becerra.

42. There is no administrative appeal process available for challenging Sheriff Lopey's denial of Mr. Baird's applications for an open carry license.

6

43.  Even if there were an available administrative appeal process to challenge Sheriff Lopey's denial of Mr. Baird's application for an open carry license, such 'process' would be futile because Sheriff Lopey informed Mr. Baird that he will not issue "open carry" licenses.

44.  Upon information and belief, Sheriff Lopey has not issued any open carry firearm licenses during his tenure as Sheriff of Siskiyou County.

45.  If the language of California's licensing scheme provided that the Sheriffs "shall issue" an open carry license to applicants who meet the criteria under Penal Code §26150(a) for the issuance thereof, Sheriff Lopey would be required by law to issue an open carry license to Mr. Baird.

46.  Mr. Baird would apply for an open carry license in a county other than Siskiyou County, but is prohibited by California Penal Code 26150(b)(2). California law requires open carry license applications be made in the county of residence. Mr. Baird's application for an open carry license in another county would be futile as none of the Sheriff Offices in California will issue an open carry license.

47.  Mr. Baird does not have a residence outside of Siskiyou County and is, therefore ineligible under §26150 and/or §26155 to apply for an open carry license in any other county.

48.  Mr. Baird seeks to carry a firearm loaded and exposed for self-protection outside of Siskiyou County, but is precluded by California State Penal Code §26150(b) and 26155(b), which provide that an open carry license is only valid in the county of issuance.

49.  If Mr. Baird is ultimately issued an open carry license, his Second Amendment right to possess firearms for self-protection in public will exist only within Siskiyou County. The moment Mr. Baird steps over the line from Siskiyou County into any other county in California, his open carry license will become invalid, leaving him subject to physical harm, criminal prosecution and incarceration. (Penal Codes §25850, §26150, and §26155).

50.  Mr. Baird, in fact, travels outside of Siskiyou County and intends to carry loaded and exposed for self-protection during such travels throughout the State of California.

51.  Irrespective of the frequency of Mr. Baird's travels outside of Siskiyou County, his right to open carry while traveling outside of his county of residence is being infringed and violated by California State Law and Defendants who, *inter alia,* enforce and direct the enforcement of such laws.

52.  Mr. Baird intends to exercise his Second Amendment right to open carry in Siskiyou County and throughout the State of California, with or without an open carry license, as he is a law-abiding citizen, with no state or federal prohibitors to the possession of firearms, and seeks to exercise a core right protected by the Second Amendment, to wit, the right to open carry a firearm in public for self-protection.

### Plaintiff Richard Gallardo: Shasta County

53.  Plaintiff Richard Gallardo is an individual of unquestionably good moral character, a law-abiding citizen, and has ever been charged with, summoned, or arrested for any violation of the California State Penal Code or any other criminal offense.

54.  Mr. Gallardo possesses firearms in his home for self-defense. Under California law, no license is required to possess a firearm in one's home for self-defense.

55.  Mr. Gallardo seeks to carry a handgun loaded and exposed ("open carry") for self-defense outside of his home and in public.

56.  Mr. Gallardo seeks to carry a firearm loaded and exposed for self-defense in public without the need to demonstrate any "cause" or "reason" for the issuance thereof.

57.  Mr. Gallardo is a resident of Shasta County, California. Shasta County has a population of less than 200,000 people. The residents of Shasta County are eligible to apply for an open carry firearm license under California's statutory firearms licensing scheme.

***Shasta County Application Process Devoid of "Open Carry" Option***

58.  The Shasta County written criteria for the issuance of a carry license does not contain an option for applying for an open carry license.

59.  The Shasta County written instructions for a "carry" license identify only "concealed carry".

60.  The Shasta County handgun licensing procedure has no option for a law-abiding individual to apply for an open carry license.

61.  The Shasta County Sheriff's Office Criteria and Requirements Form only mentions the process for applying for a Concealed Carry License.

62.  The Shasta County Sheriff's Office has no application form for an "Open Carry Renewal/Change".

63.  There are no forms available or used by the Shasta County Sheriff's Office for the purpose of applying for an "Open Carry" handgun license.

64.  The Shasta County Sheriff's website only provides information pertaining to applying for a "Concealed Carry Weapon" license, and no information pertaining to applying for an "Open Carry" license.

65.  The Shasta County application instructions entitled, "Concealed Weapon Permit Application Process" only pertains to applying for a concealed carry license. Shasta County has no instructions pertaining to applying for an open carry license.

66.  The Shasta County Sheriff's Office provides the approved firearm application form issued by the State of California Department of Justice (the "DOJ Application"), which is entitled, "Standard Application for License to Carry a Concealed Weapon (CCW)."

67.  Shasta County Sheriff Tom Bosenko ("Sheriff Bosenko") has not issued any open carry firearm licenses during his tenure in Shasta County.

68. Sheriff Bosenko has publicly declared that he will never issue an open carry firearm license because open carry would cause a lot of angst, fear, and concern for his deputies.

69. Sheriff Bosenko stated publicly that, based on conversations during his regular meetings with the Sheriffs around the State, none of the Sheriffs serving in 26150(b)(2) counties in California have ever issued "open carry" pistol licenses. Upon information and belief, Sheriff Bosenko and all other Sheriffs in the State of California are refusing to issue open carry firearm licenses at the direction of and/or with the encouragement, knowledge and/or approval of Defendant Becerra.

70. Mr. Gallardo applied to Sheriff Bosenko's office for an open carry license on more than one occasion. Each of Mr. Gallardo's applications for an open carry license were denied by the Shasta County Sheriff's Office.

71. The Shasta County Sheriff's Office explained, "We don't offer a license to carry loaded and exposed in Shasta County. This type of license is only good in the county issued and we would have to extend this option to all permit holders."

72. Mr. Gallardo has met the criteria for the issuance of an open carry license, yet the "may issue" language of California's licensing scheme gives Sheriff Bosenko the authority to deny the application. (Penal Code §26150(b)).

73. If the language of California's licensing scheme provided that the Sheriffs "shall issue" an open carry license to applicants who meet the statutory criteria under Penal Code §26150(a) for the issuance thereof, Sheriff Bosenko would be required by law to issue an open carry license to Mr. Gallardo.

74. Mr. Gallardo would apply for an open carry license in a county other than Shasta County, but is prohibited by California Penal Code §26150(b) and §26155(b). California law requires open carry license applications be made in the county of residence. Open carry licenses

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

are invalid outside of the county of issuance.

75. Mr. Gallardo does not have a residence outside of Shasta County and is, therefore, ineligible to apply for an open carry license in any other county. Even if Mr. Gallardo were eligible to apply for an open carry license in a county having a population less than 200,000 other than Shasta County, such application would be futile as no Sheriff Offices in California issue open carry licenses.

76. There is no administrative appeal process available for challenging Sheriff Bosenko's denial of Mr. Gallardo's applications for an open carry license.

77. Even if there were an available administrative appeal process to challenge Sheriff Bosenko's denial of Mr. Gallardo's application for an open carry license, such 'process' would be futile because Sheriff Bosenko affirmatively stated that he does not, and will not, issue open carry licenses in Shasta County.

78. Mr. Gallardo seeks to carry a firearm loaded and exposed for self-protection outside of Shasta County, but is precluded by California State Penal Code §26150(b)(2), which provides that an open carry license is only valid in the county of issuance.

79. If Mr. Gallardo is ultimately issued an open carry license, his Second Amendment right to self-protection in public will exist only within Shasta County. The moment Mr. Gallardo steps over the line from Shasta County into any other county in California, his open carry license would become invalid, leaving him subject to physical harm, criminal prosecution, and incarceration. (See, Penal Codes §25850, §26150, and §26155).

80. Mr. Gallardo, in fact, travels outside of Shasta County and intends to carry loaded and exposed for self-protection during such travels throughout the State of California.

81. Irrespective of the frequency of Mr. Gallardo's travels outside of Shasta County, his right to open carry while traveling outside of his county of residence is infringed and violated by

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

California State Law.

82.  Mr. Gallardo intends to exercise his Second Amendment right to open carry in Shasta County and throughout the State of California, with or without an open carry license, as he is a law-abiding citizen, with no state or federal prohibitors to the possession of firearms, and seeks to exercise a core right protected by the Second Amendment, to wit, the right to open carry of a firearm in public for self-protection.

## STATEMENT OF LAW[1]

### *Law Enforcement Has NO DUTY to Protect the Individual*

83.  Despite the common misconception that law enforcement is required to "Serve and Protect", police officers have no duty to protect any individual from physical harm caused by a third person. Citizens have no constitutional right to be protected by the state from physical attack by private third parties, absent some special relationship between the state and the victim or the criminal and the victim that distinguishes the victim from the general public. *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint where police failed to take steps to respond to the continued threats, harassment and violence by estranged husband because "there is, in general, no constitutional duty of state officials to protect members of the public at large from crime."); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th Cir 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

84.  California state laws cloak police officers with immunity from liability where police are alleged to have failed to deploy prospective protective services, such as by failing to provide armed security on buses, failing to provide police personnel to patrol a parking lot where a sexual assault subsequently occurred, or failing to dispatch police to a residence where a woman claimed

---

[1] The Statement of Law is integral to Plaintiffs' claims and prayers for declaratory and injunctive relief.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

her estranged husband had threatened to kill her. See, e.g., *So v Bay Area R.T.*, 2013 US Dist LEXIS 149807, at *17-18 [ND Cal Oct. 17, 2013, No. C-12-05671 DMR] citing, *Gates v. Superior Court*, 32 Cal. App. 4th 481, 505-07, 38 Cal. Rptr. 2d 489, 503-04 (1995) (summarizing cases; applying Section 845 immunity to LAPD officers sued for withdrawing from an area at the start of a riot).

85.   Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody. California Government Code §846. See also, *So v Bay Area R.T.*, 2013 US Dist LEXIS 149807 at *27-29, n 8 [ND Cal Oct. 17, 2013, No. C-12-05671 DMR] citing, *Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070, 1077, 235 Cal.Rptr. 844 (cases finding police officers not liable for failure to protect are generally grounded in the common law distinction between misfeasance and nonfeasance); *City of Sunnyvale v. Superior Court*, (1988) 203 Cal.App.3d 839, 842, 250 Cal.Rptr. 214) ("One who has not created a peril is not liable in tort for merely failing to take affirmative steps to assist or protect another, absent a special relationship giving rise to a duty to so act.") (internal citations omitted). See, e.g., *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 80 Cal. Rptr. 2d 196 (Cal. Ct. App. 1999) (asserting NIED and wrongful death actions against police who failed to prevent suicide); *Williams v. State of California*, 34 Cal. 3d 18, 192 Cal. Rptr. 233, 664 P.2d 137 (1983) (negligence claim against police officers who did not investigate or pursue owner of a passing truck whose brake drum broke off and was propelled through the windshield of plaintiff's car); *M.B. v. City of San Diego*, 233 Cal.App.3d 699, 284 Cal. Rptr. 555 (Cal. Ct. App. 1991) (negligence claim against police who failed to investigate or take precautions against man who later raped woman who reported her fear of him to the police); *Von Batsch v. American District Telegraph Company*, 175 Cal. App. 3d 1111, 222 Cal. Rptr. 239 (Cal. Ct. App. 1985) (wrongful death complaint against city and burglar alarm company for

13

failure to investigate and discover unauthorized entry of intruder who later killed plaintiffs' husband and employee); *Carpenter v. City of Los Angeles*, 230 Cal. App. 3d 923, 281 Cal. Rptr. 500 (Cal. Ct. App. 1991) (negligent failure to warn witness of threats); *Wallace v. City of Los Angeles*, 12 Cal. App. 4th 1385, 16 Cal. Rptr. 2d 113 (Cal. Ct. App. 1993) (negligent failure to warn witness of danger); *McCorkle v. City of Los Angeles*, 70 Cal.2d 252, 74 Cal. Rptr. 389, 449 P.2d 453 (1969).

86.  Because law enforcement has no duty, legal or otherwise, to protect any individual from physical harm, each and every individual is responsible for protecting themselves from personal harm and danger.

87.  The government cannot prevent law-abiding individuals from exercising their fundamental right to possess firearms in public to protect themselves from physical harm.

### The U.S. Constitution Codifies Pre-Existing Human Rights

88.  We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain inalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. *The Declaration of Independence*, 1 U.S.C. § XLIII (1776).

89.  Among the "self-evident truths" the Framers of the Constitution believed was that God endowed people with certain inalienable rights, rights no government could take away; these rights were inalienable by the government because they were derived from a source more powerful than, and entitled to more respect than, the government--even a democratically elected government. *Newdow v Rio Linda Union Sch. Dist.*, 597 F3d 1007, 1029 (9th Cir 2010) (analyzing whether the government's inclusion of the phrase "under God" in the Pledge of Allegiance established a religion; ultimately holding it did not.).

90.  "The Declaration of Independence was the promise; the Constitution was the fulfillment." The Constitution fulfilled the promise of the Declaration by creating a government

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

of limited powers, divided into three coequal but separate branches that would check and balance one another to ensure the government remained *limited*, and the people's rights secure. *Newdow v Rio Linda Union Sch. Dist.*, 597 F3d at 1030-1031.

91. The pre-existing human rights codified in the Bill of Rights (the first 10 Amendments to the U.S. Constitution) are attached to the *individual*.

92. The Bill of Rights protects pre-existing freedoms, *inter alia,* freedom of speech, religion, and the press, freedom from governmental intrusion by soldiers into one's home, security in one's person and home from warrants lacking probable cause, freedom from unreasonable governmental searches, freedom from cruel and unusual punishment by the government, freedom from being prosecuted twice for the same criminal offense, the right to a trial by jury, freedom from self-incrimination in the face of criminal charges, and *inter alia,* the right to confront witnesses against you. See, e.g., *Carpenter v United States*, ___US___ , ___, 138 S Ct 2206, 2257 (2018) ("As the plain language of the Fourth Amendment makes clear, Fourth Amendment rights are personal."), citing, *Rakas v. Illinois*, 439 U. S. 128, 140, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

### The Constitutional Amendments Are Fully Applicable to the States

93. Decades ago, the United States Supreme Court abandoned the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights. *McDonald v City of Chicago*, 561 US at 785-786, citing, *S New York*, 268 US 652, 654 (1925); *Cantwell v. Connecticut*, 310 U.S. 296 (1940); *Louisiana ex rel. Gremillion v. NAACP*, 366 U.S. 293 (1961)], the prohibition of unreasonable searches and seizures of the Fourth Amendment, [*Ker v. California*, 374 U.S. 23 (1963)], and the right to counsel guaranteed by the Sixth Amendment, [*Gideon v. Wainwright*, 372 U.S. 335 (1963)] are all to be enforced against the States under the Fourteenth Amendment according to

the same standards that protect those personal rights against federal encroachment.").

94.  Likewise, the Second Amendment right to keep and bear arms for the purpose of self-defense is fully applicable to the states. *McDonald v City of Chicago*, supra.

**The Second Amendment**

95.  The rights codified in the Bill of Rights are self-evident – the individual has no burden to prove their entitlement to the exercise of these rights. Because these are pre-existing rights, the individual automatically benefits from, and is protected by, such rights.

96.  No individual is required to seek permission from the government before enjoying the benefits of the rights codified in the Bill of Rights. The Bill of Rights limits the *government's conduct*; it does not give anything to the individual other than freedom from governmental oppression.

97. "A well-regulated militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." *United States Constitution, Amendment II.*

98.  The Second Amendment does not *give* the individual the right to possess and carry weapons to protect himself; it *prohibits the government* from infringing upon the basic, fundamental right of the individual to (1) keep arms and (2) bear arms for self-defense. *United States Constitution, Amendment II.*

99. "Individual self-defense is *the* central component of the Second Amendment right." *McDonald v City of Chicago*, 561 US at 767, citing, *District of Columbia v. Heller*, 554 U.S. 570, 599 (emphasis added) (internal quotations omitted). The Second Amendment protects the core right of the individual to self-protection. *District of Columbia v. Heller*, 554 US at 595-599, 628.

100.  The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty". *McDonald v City of Chicago*, 561 US 742, 768

16

(2010). "The right to bear arms has always been the distinctive privilege of free men. Aside from any necessity of self-protection to the person, it represents among all nations power coupled with the exercise of a certain jurisdiction…[I]t was not necessary that the right to bear arms should be granted in the Constitution, for it had always existed." *District of Columbia v Heller*, 554 US at 619, *citing,* J. Ordronaux, Constitutional Legislation in the United States 241-242 (1891).

### The Right to "Keep" and "Bear" Arms

101.  The right of law-abiding responsible citizens to use arms in the defense of hearth and home is a core right protected by the Second Amendment. *District of Columbia v. Heller*, 554 US 570, 635 (2008).

102.  But, the right of the individual to possess firearms for self-defense in the home is not ***the*** core right of the Second Amendment, as many judicial decisions misleadingly posit. The Supreme Court in *Heller* did not hold or even opine that the right to possess firearms ***in the home*** was the core right of the Second Amendment. Such a myopic view of the scope of the Second Amendment's protections would render superfluous the language pertaining to the necessity of having a "well-regulated militia" to ensure "the security of a free State". Surely, the framers of the Constitution did not envision or intend that the well-regulated militia would (or could) secure the freedom of the State from inside of their homes.

103.  The individual's right to "self-defense" is ***the core*** Second Amendment right identified by the Supreme Court in *Heller*.  *Heller*, 554 US 630.  Nowhere in *Heller* did the Supreme Court limit the scope of the Second Amendment to the possession of firearms in the home for self-defense; its holding simply found that the defendant government's prohibition of firearm possession in the home violated the Second Amendment. The right of the people to keep arms (possess) and bear arms (carry in public), are each central and integral to the ***core right to self-defense*** that is protected by the Second Amendment and they are of equal importance. Self-

17

defense at home and self-defense in public are equally important rights because keeping arms and bearing arms are necessary to the individual's basic human right of self-defense.

### The Basic Human Right to Self-Defense

104.  Self-defense is a basic human right, recognized by many legal systems from ancient times to the present day. *McDonald v City of Chicago*, 561 US at 768. The fundamental right to self-defense is inseparable from the individual. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia v. Heller*, 554 US at 595-599.

105.  The detailed analysis conducted by the Supreme Court in *Heller* bears out the Court's desire to emphasize the existence the fundamental human right of the individual to self-defense – at home or in public. The narrow issue before the Court in *Heller* could have been resolved without the Justices taking the time to call attention to the fact that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L. Ed. 588 (1876), '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed…" *District of Columbia v Heller*, 554 US 570, 592 (2008) (emphasis in the original).

106.  The framers of the Constitution made clear that the core right to self-defense protected by the Second Amendment "*shall not be infringed*". The core right to keep arms at

home and bear arms in public *shall not* be interfered with to any extent. Infringement of a core Second Amendment right is *per se* unconstitutional.

107. An individual does not forfeit his right to self-protection by stepping outside of his home. The right to self-protection is as great outside of one's home as it is inside the home. *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012).

108. Disarm a community and you rob them of the means of defending life. Take away their weapons of defense and you take away the inalienable right of defending liberty. *McDonald v City of Chicago*, 561 US at 776 (internal citation omitted).

### "Open Carry" is a Core Second Amendment Right

109. It is beyond cavil that law enforcement has no duty to protect the individual from harm. Because law enforcement has no duty to protect the individual, the duty of self-protection lies with the individual. Each person is solely and individually responsible for his own self-defense and self-protection, at home and in public.

110. The Supreme Court has recognized that the individual's right to self-defense is as critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia v. Heller*, 554 US at 595-599; *McDonald*, 561 US at 776. Carrying firearms for self-defense outside of one's home is within the core rights protected by the scope of the Second Amendment.

111. The Courts of this Circuit have held that the "concealed carry" of firearms is merely a 'privilege' and not a core right subject to the protections of the Second Amendment. *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (*Peruta II*) (cert. den.).

112. Having trampled the right of the law-abiding individual to decide for himself how to carry his firearm for self-defense in public, the only remaining option for bearing arms for self-protection in this Circuit is open carry.

113. The United States Supreme Court expressly rejected the idea that the scope of the

Second Amendment right should be determined by 'judicial interest balancing'. *McDonald v City of Chicago*, 561 US at 785-786, citing, *Heller*, 554 U.S. at 633-635 ("Evidence from the period immediately following the ratification of the Fourteenth Amendment confirms that the right to keep and bear arms is considered a "fundamental" right"). (internal citations omitted).

114. As such, the state cannot eviscerate a core right falling with the scope of the Second Amendment right to bear arms by requiring a showing of "good cause", forcing a law-abiding person to beg the government for permission to exercise his fundamental right to protect himself from physical harm.

**California Requires "Good Cause" for Open Carry Licenses**

115. In California, carrying a loaded firearm in public, whether open or concealed, without a license or some other statutory exemption is a criminal offense subjecting the offender to incarceration and other criminal penalties. (Penal Code §25850).

116. California's firearm licensing scheme requires applicants to demonstrate "good cause" for the issuance of any carry license, whether for "concealed carry" or "open carry". (Penal Code §26150-§26225).

117. As with the other nine (9) Amendments, the Second Amendment attaches to the *individual* and is automatic. There is no requirement that an individual demonstrate to the government "cause" before being able to exercise the core rights within the scope of the Second Amendment - to possess and carry ("keep and bear") firearms. *United States Constitution, Bill of Rights.*

118. California Penal Code §26150(a) provides that when a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following: (1) the applicant is of good moral character; (2) "good cause" exists for issuance of the license; (3) the applicant is a

resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business; and (4) the applicant has completed a course of training as described in Section 26165.

119. Similarly, under California Penal Code §26155(a), when an individual applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county may issue a license to that person upon proof of all of the following: (1) The applicant is of good moral character; (2) Good cause exists for issuance of the license; (3) The applicant is a resident of that city; (4) The applicant has completed a course of training as described in Section 26165.

120. Under California Penal Codes §26150 and §26155, where an applicant has been found to be approved for the issuance of a license to carry, including demonstrating "good cause", the licensing officer[2] "may issue a license in either of the following formats: (1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person. (2) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person."[3]

121. Under both licensing statutes, §26150 and §26155, an applicant for an "open carry" license in California must demonstrate "good cause" for the issuance of an "open carry" license. (Penal Code §26150(a)(2)).

**California's "Good Cause" Requirement for Open Carry Violates the Second Amendment**

---

[2] The "sheriff" of the county pursuant to §26150 and the "chief or other head of a municipal police department" pursuant to §26155.

[3] (1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person. (2) Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

21

122.  Broadly prohibitory laws restricting a core Second Amendment right are categorically unconstitutional. *Heller*, 554 U.S. at 628-35 ("We know of no other enumerated constitutional right whose core protection has been subjected to a free-standing 'interest-balancing' approach."); *McDonald*, 130 S. Ct. at 3047-48.

123.  California's "good cause" requirement for the issuance of an open carry firearms license restricts the core right to self-defense under the protections of the Second Amendment and is *per se* unconstitutional. A law-abiding person does not lose his right to protect himself simply by walking outside of his front door. See, *District of Columbia v. Heller*, 554 US at 595-599 (The basic human right to self-defense is inseparable from the individual. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental outside of the home as it is inside of the home.).

124.  The Ninth Circuit upheld "good cause" requirements for the issuance of a concealed carry license based on the [unconstitutional] view that the Second Amendment does not extend to the concealed carry of firearms in public by members of the general public in *Peruta v County of San Diego*, 824 F3d at 939 ("any prohibition or restriction on concealed carry that a state may choose to impose, including a requirement of "good cause" however defined, does not violate the individual's Second Amendment rights).

125.  Eliminating the concealed carry of firearms from the scope of the rights protected by the Second Amendment leaves only one option for self-defense in public - open carry.  The *Peruta II* court acknowledged that if the Second Amendment protects the right of a member of the general public to carry a firearm in public, it is only the right to open carry. *Peruta II*, 824 F3d at 942.

126.  California's "good cause" requirement, upheld by the Ninth Circuit as a lawful restriction on the 'privilege' to carry concealed, is categorically unconstitutional when applied to

22

open carry, which is [by default] a core Second Amendment right.

127. California's "good cause" requirement is unconstitutional because it treats a core Second Amendment right (open carry) the same way it treats what it deems to be a 'privilege' (concealed carry).

128. The average person cannot establish "good cause", which is commonly defined in the Ninth Circuit and other circuits demonstrating a need for self-protection that is greater than the average person, requiring documented threats of violence that establish the applicant is a target and at risk for specific harm. "Good cause" can rarely be established because members of the general public have not had specific threats made against them nor can the average person demonstrate that they are being targeted for violent acts. The definition of "good cause" does not include the basic human right to self-defense in public.

129. The factors constituting "good cause" for the issuance of a carry license vary from county to county as determined by the sheriff in office at the time; the definition is subject to change at the whim of the sitting sheriff and/or when a new sheriff is elected.

130. Indeed, the Los Angeles Police Department has moved to cancel most of the few remaining concealed weapons permits in civilian hands, which have been held by law-abiding individuals since 1994 simply because Police Chief Michel Moore "does not believe [the concealed carry licensees] were still entitled to the permits, because he 'felt' it was 'unlikely' that they still faced 'extraordinary physical danger' to their lives.[4] "I do not believe the continued wholesale allowance for each to possess a CCW license based on circumstances that may have existed 24 years ago is in the best interest of the public," Chief Moore said. *Id.* The right to carry firearms for self-protection cannot continue to be controlled and dictated by the arbitrary and unconstitutional views of governmental officials with an unnatural and aberrant compulsion to

---

[4] See, https://bearingarms.com/tom-k/2019/04/01/lapd-wants-cancel-citizens-concealed-carry-permits/.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

dictate whether and how law-abiding individuals exercise their fundamental right to protect themselves. Indeed, left unchallenged and unchecked, this controlling and irrational conduct will effectively leave law-abiding individuals completely vulnerable and defenseless in the presence of armed criminals, lawbreakers, and delinquents. This is true because the police have no duty to protect anyone and criminals, by definition, do not follow the law.

131. Aside from Defendants' *de facto* ban on open carry and the issuance of open carry licenses since 2012, the state's statutory "good cause" requirement amounts to a total ban on public carry for the typical law-abiding citizen. When the "good cause" requirement is analyzed regarding its effect on the typical law-abiding citizen, it prevents and precludes the typical member of society from self-protection outside of their home. See, *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (DC Cir 2017) ("…the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen.").

132. The "good cause" and "proper cause" requirements in this Circuit and others are intentionally imposed by the government for the sole purpose of severely restricting the issuance of concealed carry licenses. The very goal of the "good cause" requirement is to eliminate the public carrying of firearms. Because the average person cannot establish "good cause" as defined under California jurisprudence, few "concealed carry" licenses are issued in this state.

133. The "good cause" requirement has, in fact, prevented the issuance of any open carry license in the State of California since 2012.

134. The "good cause" requirement is *per se* unconstitutional and violates the Second Amendment because it requires individuals to distinguish themselves from the typical law-abiding citizen, however, fundamental rights like the right to self-protection are *the same* for every law-abiding individual.

135.  No law-abiding individual should be required to prove they are entitled to protect themselves from harm, particularly when law enforcement has no duty to protect the individual.

136.  Plaintiffs' right to self-protection exists wherever they are – whether in public or at home – its value and inalienability does not change based on their location.

137.  Those portions of California Penal Code §26150 and §26155 requiring an applicant to show "good cause" for the issuance of an "open carry" firearm license should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**California's "May Issue" Language for "Open Carry" is Unconstitutional**

138.  California Penal Code §26150(a) provides that a sheriff of a county **may** issue a license to that person upon proof of all of the following: (1) the applicant is of good moral character; (2) good cause exists for issuance of the license; (3) the applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business; and (4) the applicant has completed a course of training as described in Section 26165. (emphasis added).

139.  California Penal Code §26150 provides that "where an applicant has been approved" for the issuance of a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff **may issue** a license to carry loaded and exposed ("open carry") where the population of the county is less than 200,000 persons according to the most recent federal decennial census. (emphasis added).

140.  Similarly, Penal Code §26155 provides, "the chief or other head of a municipal police department **may issue** an "open carry" license…where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census..." (emphasis added).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

141. Where a law-abiding person has no state or federal prohibitors to firearm possession, the government is prohibited from interfering with and infringing that individual's ability to exercise the basic human right to self-defense outside of the home. The right to self-protection outside of the home is as much a core and fundamental right falling within the scope of the Second Amendment as the right to self-protection inside of the home.

142. The "may issue" language of California Penal Codes §26150 and §26155 should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**California's Geographical Restrictions on "Open Carry" Are Unconstitutional (Second Amendment Violation)**

143. Applications for an open carry license must be made in the applicants' county of residence.[5] (Penal Codes §26150(a)(3) and §26155(a)(3)).

144. There are certain exceptions to the general prohibitions on "open carry" in California, but Plaintiffs do not fall within any of the statutory exceptions that would permit the "open carry" of a firearm throughout the State of California without criminal penalties.

145. Open carry licenses can only be issued in counties that have a population less than 200,000 and are only valid in the county of residence/issuance. (Penal Codes §26150(b) and §26155(b)).

146. If an individual who is duly issued an open carry license carries his firearm loaded and exposed in a county other than his county of residence (the county of issuance) he will be subject to criminal penalties and sanctions, up to and including imprisonment. (Penal Code §25850).

147. Individuals who are issued an open carry license in their home county are rendered

---

[5] Statutory language relating to business ownership and/or employment have been omitted as immaterial to the instant matter. Plaintiff is not substantially employed in any other county or city and state law preempts local authorities from issuing handgun "open carry" licenses, except as provided by law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

unarmed and defenseless when traveling to any other part of California.

148. If Plaintiffs are issued an open carry license and thereafter choose to leave their firearms home while traveling to other counties in California, they will be left defenseless and unarmed.

149. While governmental regulations on sensitive areas, such as schools and courthouses have been upheld by the courts as presumptively lawful (*Heller*, 554 US at 626), California's broad and overreaching geographical (1) limitation on the validity of open carry licenses; and (2) ban on the issuance of an open carry license based on population size, eviscerates a core right of the individual to "open carry" for self-protection outside of the home.

150. Restricting the open carry of firearms from entire counties in the state based on population size unlawfully implicates a core Second Amendment right, serves no legitimate governmental interest, and has no provable or quantifiable effect on public safety.

151. Indeed, the danger to the individual and need for the protections of the Second Amendment increase in direct proportion to the increase in population density, due to the corresponding increase in criminals and criminal activity in highly populated areas. Preventing open carry by law-abiding individuals in high crime/highly populated areas does not increase public safety. To the contrary, the open carry of firearms by law-abiding people in highly populated, high crime areas will decrease the rate of criminal activity.

A. *County of Issuance*

152. Those provisions of California Penal Code §26150(b) and §26155(b) restricting "open carry" to the county of issuance infringe on and violate a core right of the Second Amendment, to wit, the right to self-protection via "open carry" outside of the home in every other county in California.

153. Those portions of §26150(b) and §26155(b) restricting "open carry" to the county of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

issuance should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

### B. *Counties With Populations Less Than 200,000*

154.  Those provisions of California Penal Code §26150(b) and §26155(b) restricting "open carry" to counties with a population under 200,000 infringe on and violate a core right of the Second Amendment, to wit, the right to self-protection via "open carry" outside of the home.

155.  Those portions of California Penal Code §26150(b) and §26155(b) restricting "open carry" to counties with a population under 200,000 should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**California's Geographical Restrictions on "Open Carry" Are Unconstitutional
(Fourteenth Amendment Violation)**

156.  The right to travel "was recognized as a right fundamental to the national character of our Federal government" before the Fourteenth Amendment was ratified. *Edwards v California*, 314 US 160, 178 (1941). The fundamental constitutional right to travel is protected by the Privileges and Immunities Clause of Article IV, §2 of the U.S. Constitution, and the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution.  See, *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 902 (1986).  This right "protects the right of a citizen of one State to enter and to leave another State."  *Saenz v. Roe*, 526 U.S. 489, 500 (1999); see *United States v. Guest*, 383 U.S. 745 (1966); *Edwards v. California*, 314 U.S. 160 (1941).

157.  In *Bell v Maryland*, 378 US 226 (1964), the Supreme Court queried, "Is the right of a person to eat less basic than his right to travel, which we protected in *Edwards v. California*, 314 U.S. 160? Does not a right to travel in modern times shrink in value materially when there is no accompanying right to eat in public places? The right of any person to travel interstate

28

irrespective of race, creed, or color is protected by the Constitution. Certainly his right to travel intrastate is as basic. Certainly his right to eat at public restaurants is as important in the modern setting as the right of mobility. In these times that right is, indeed, practically indispensable to travel either interstate or intrastate." *Bell v Maryland*, 378 US at 255 (vacating the convictions of 12 African American students charged with Criminal Trespass after they participated in a "sit-in" demonstration at a privately-owned restaurant that refused to serve members of their race.).

158. The fundamental right to interstate and/or intrastate travel, in order to exercise the basic right to eat for self-preservation, is common sense.

159. The United States Supreme Court recognized that eating is a basic necessity for the body to continue its existence, but if the body succumbs to death from a physical attack, what good is food then? Protection of the body from physical harm is even more fundamental to human existence than food; if the body does not exist, neither does the need for travel, food, or water.

160. The right of any person to travel interstate irrespective of race, creed, or color is protected by the Constitution. *Edwards v. California*, supra. "Certainly [the] right to travel intrastate is as basic. Certainly [the] right to eat at public restaurants is as important in the modern setting as the right of mobility. In these times that right is, indeed, practically indispensable to travel either interstate or intrastate."

161. The statutory ban on open carry (i) outside of one's own county and (ii) in counties having a population over 200,000 violates Plaintiffs' fundamental right to travel by forcing them to choose which constitutional right they would rather exercise: the right to travel or their Second Amendment right to self-defense in public.

162. California Penal Codes §26150(b) and §26155(b) *per se* interfere with and deter Plaintiffs' right to intrastate travel by forcing Plaintiffs to choose between self-protection (Second

Amendment) and their right to travel. See, e.g., *Soto-Lopez*, 476 U.S. at 903.

163. California Penal Codes §26150(b) and §26155(b) discriminate against individuals based on the exercise of their Second Amendment rights.

164. If Plaintiffs are granted an open carry license and carry a firearm outside of their respective counties of residence, which they each intend to do, they will risk having their open carry licenses revoked for failing to remain in the county of issuance while armed, which will deprive them of their Second Amendment right to open carry.

165. If Plaintiffs carry openly outside of their counties of issuance, which they intend to do, they will risk criminal prosecution because they will be carrying open and loaded without a valid license based on the restrictions of Penal Code §26150(b) and §26155(b). See, *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) ("It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution.").

A. *County of Issuance*

166. Those portions of California Penal Codes §26150(b) and §26155(b) restricting the validity of an "open carry" license to the county of issuance violate the Fourteenth Amendment right to travel.

167. Those portions of California Penal Codes §26150(b) and §26155(b) restricting the validity of an "open carry" license to the county of issuance should be declared a violation of the Fourteenth Amendment right to travel, enjoined from enforcement, and stricken as unconstitutional.

B. *Counties With Populations Less Than 200,000*

168. Those portions of California Penal Codes §26150(b) and §26155(b) restricting the issuance of "open carry" license to counties with a population under 200,000 violate the Fourteenth Amendment right to travel.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

169.  Those portions of California Penal Codes §26150(b) and §26155(b) restricting the issuance of "open carry" licenses to counties with a population under 200,000 should be declared a violation of the Fourteenth Amendment right to travel, enjoined from enforcement, and stricken as unconstitutional.

## California's Geographical Restrictions on "Open Carry" Are Unconstitutional (Dormant Commerce Clause)

170.  The Constitution grants Congress the power to "regulate Commerce … among the several States."  U.S. Const. art. I, §8, cl. 3.  "Although the Constitution does not in terms limit the power of States to regulate commerce, [the Supreme Court] ha[s] long interpreted the Commerce Clause as an implicit restraint on state authority, even in the absence of a conflicting federal statute."  *United Haulers Ass'n, Inc. v. Oneida Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007).

171.  The Commerce Clause's implied restriction on state authority, referred to as the "dormant Commerce Clause," is driven by a concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.  *McBurney v. Young*, 133 S. Ct. 1709, 1719 (2013) (internal quotations omitted); *Maine v. Taylor*, 477 U.S. 131, 151 (1986) ("The Commerce Clause significantly limits the ability of States and localities to regulate or otherwise burden the flow of interstate commerce." (emphasis added)).

172.  Plaintiffs intend to carry their firearms openly while traveling outside of their counties of issuance and into other counties within the State of California for all lawful purposes, including those activities that affect interstate and intrastate commerce.

173.  California Penal Codes §26150(b) and §26155(b) violate the Dormant Commerce Clause by discriminating against interstate commerce, imposing burdens on commerce that far

31

exceed any purported local benefits, and impermissibly attempting to control economic activity that takes place entirely (i) outside of the county issuing an open carry license, and (ii) outside of counties having a population under 200,000.

174. California Penal Codes §26150(b) and §26155(b) impermissibly and negatively affect the regulation of commerce within and without counties having populations of 200,000 or less.

A. *County of Issuance*

175. Those provisions of California Penal Codes §26150(b) and §26155(b) restricting "open carry" to the county of issuance violate the Dormant Commerce Clause.

176. Those provisions of California Penal Codes §26150(b) and §26155(b) restricting "open carry" to the county of issuance should be declared a violation of the Dormant Commerce Clause, enjoined from enforcement, and stricken as unconstitutional.

B. *Counties With Populations Less Than 200,000*

177. Those provisions of California Penal Codes §26150(b) and §26155(b) restricting "open carry" to counties with a population under 200,000 violate the Dormant Commerce Clause.

178. Those provisions of California Penal Codes §26150(b) and §26155(b) restricting "open carry" to counties with a population under 200,000 should be declared a violation of the Dormant Commerce Clause, enjoined from enforcement, and stricken as unconstitutional.

**California's Unloaded Carry Restrictions Are Unconstitutional**
**(Second Amendment Violation)**

179. A core right of the Second Amendment is the right of the law-abiding individual to carry a firearm ("bear arms") outside of the home. See cases cited, *supra.* An open carry license issued under §26150(b) or §26155(b) would permit Plaintiffs to carry a firearm in public "loaded and exposed".

32

180.  California Penal Code §26350 makes it a crime to open carry an unloaded handgun, whether on one's person, inside a vehicle, or on a vehicle. A violation of §26350 carries penalties of imprisonment up to one year and/or fines.

181.  Should Plaintiffs be issued open carry licenses and encounter a circumstance wherein their respective handguns are in an unloaded state while in public, Plaintiffs would face criminal prosecution and penalties, including imprisonment.

182.  Should Plaintiffs be issued open carry licenses, they may also face circumstances wherein they possess their handgun inside of their respective vehicles in an unloaded state, and would therefore face criminal prosecution and penalties including imprisonment under Penal Code §26350.

183.  California Penal Code §26350 should be declared unconstitutional as applied to open carry licensees, enjoined from enforcement, and stricken as unconstitutional.

**Demarcating the Manner of Personal Carry Violates the Second Amendment**

184.  A core right protected by the Second Amendment is the right to bear arms for self-defense. The term "bears a firearm" refers to an individual "carrying the weapon on or about his person for the purpose of being armed and ready for offensive or defensive action in case of a conflict." *Muscarello v United States*, 524 US 125, 139-140 (1998) (Justice Ginsberg, dissenting opinion), citing, Black's Law Dictionary 214 (6th ed. 1990) (defining the phrase "carry arms or weapons"). "On or about his person" necessarily means one's body or within his area of reach.

185.  The government's interference with the manner in which a law-abiding individual can bear arms in public unlawfully infringes upon the Second Amendment and fails to promote any significant, substantial, or important government objective. *Pena v Lindley*, 898 F3d 969, 979 (9th Cir 2018), citing, *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 965 (9th Cir. 2014).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

186. The law-abiding individual with no legal or factual prohibitors to firearm possession, such as Plaintiffs, is fit to possess firearms *in the first instance*.

187. A firearm in the hands of the law-abiding person, such as Plaintiffs, is a tool of self-protection, and sometimes, a tool of protection for law enforcement officers and fellow neighbors as well.

188. A law-abiding person carrying a firearm, such as Plaintiffs, is no more likely to commit a crime with that firearm than he is likely to commit a crime with the car he drives, the knife in his tackle box, or the axe in his shed.

189. California strives to eliminate the public carry of firearms altogether, as borne out by California's licensing scheme which requires of "good cause" for the issuance of any type of carry license whether for concealed carry or open carry.

190. Defendant Becerra, dubbed "The Enemy of the Second Amendment"[6], has consistently taken steps in his professional capacity to restrict Second Amendment rights.

191. A law-abiding individual who cannot demonstrate "good cause" as defined by Defendants, and California state and federal courts, should not face criminal prosecution simply because s/he has made the tactical decision to carry a lawfully owned firearm in the small of the back holster, in a pocket, or underneath a sweater or jacket.

192. Concealed carry is the universally preferred method of law-abiding individuals, including Plaintiffs, to carry a firearm, for reasons including tactical advantage over an attacker, convenience of carry location, accessibility to one's firearm for self-defense, and practical considerations relating to one's wardrobe.

193. With the commencement of governmental regulation of the possession of firearms, legislative statutes and judicial case law have unconstitutionally redefined the term "concealed".

---

[6] NRA-ILA, January 7, 2017.

"Concealment" was historically synonymous with an intention to hide or cover up forbidden conduct and/or objects, denoting malintent and a criminal *mens rea*.

194.  A law-abiding individual who is lawfully carrying a firearm on their person in public – whether openly such that the firearm can be readily seen, or in a waistband holster covered by a winter jacket – is simply "carrying" their firearm. A law-abiding person has no malintent; they have no intention to use their firearm to commit a crime. There is no legitimate governmental objective served by regulating how law-abiding people can carry their firearms.

195.  The definition of "open carry" or "exposed carry" cannot even be conclusively established and creates an unlawful legal burden and risk of criminal prosecution on the law-abiding individual.  An individual with a duly-issued open carry license who puts on a coat in the wintertime, is now 'concealing' his firearm. A woman wearing a dress upon which it would be impossible to secure a firearm "exposed", will necessarily be stripped of the right to protect herself in public because she will be prosecuted as a criminal if she carries her firearm holstered underneath her dress or in her purse.

196.  In 1863, California passed legislation banning concealed carry of firearms due to the high rate of crime during the Gold Rush.[7] As the San Francisco newspaper The Daily Alta California explained it:

> "During the thirteen years that California has been a State, there have been more deaths occasioned by sudden assaults with weapons previously concealed about the person of the assailant or assailed, than by all other acts of violence which figure on the criminal calendar…. Heretofore there has been no law passed which would remedy the evil. Public opinion, as expressed through the action of our legislators, seems to have sanctioned the custom, barbarous though it be. For many sessions prior to the last, ineffectual efforts were made to enact some statute which would effectually prohibit this practice of carrying concealed weapons. A radical change of

---

[7] NRA Institute for Legislative Action, Tuesday January 1, 2013, *citing,* "Three Years in California", Borthwick, J.D. (1857); Gunfighters, Highwaymen, & Vigilantes", McGrath, Roger (1984).

public sentiment demanded it, but the desired law was not passed until the last Legislature, by a handsome majority, enacted the subjoined act, entitled "An Act to prohibit the carrying of concealed weapons."

197.  Only 7 years later, California repealed the concealed carry ban. The Sacramento Daily Union published an editorial discussing the 1870 repeal of the concealed-carry ban:

"There is reason to believe it was generally observed by the vast majority of good citizens. There is as good reason to believe it was not observed by the vast majority of roughs, fighting men, and predatory characters. In many cases of assault between quiet citizens and these last named characters, it was found that the good citizen had to defend himself unarmed against the predacious one with arms, the former suffering for his respect of the law. It was also found that the police were apt to arrest any quiet citizen on whom they discovered concealed weapons, while they paid little attention to the roughs who were known to carry arms habitually."[8]

198.  Criminals, by definition, do not follow the law. No governmental purpose is served by restricting law-abiding people from carrying their firearms in the manner they feel most comfortable and are better able tactically to protect themselves.

199. "Laws preventing law-abiding citizens from carrying firearms for self-protection… become an abomination in practice…plac[ing] the peaceful citizen completely at the mercy of a class whose offenses against order it was intended to check, but did not, owing to the remissness in duty of the guardians of the law." Sacramento's experience was the immediate cause of the "repealing movement … where bands of armed roughs, scorning the law against carrying concealed weapons, were perpetrating highway robberies on quiet, unarmed citizens, who could not prepare for self-defense without danger of being arrested and fined every day."

200. "The editorial acknowledged that one of the good things hoped for had happened in the intervening months:

---

[8] NRA Institute for Legislative Action, Tuesday January 1, 2013.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

"It was reasoned with much plausibility that if the roughs once knew that quiet citizens might prepare to defend themselves without danger of being punished for misdemeanor, the bare suspicion that such a person had about him a weapon would disarm the roughs and prevent robberies. This has in fact been one of the results."

201. Arguing against the reasons, the State of California repealed the ban on concealed carry. The Daily Alta newspaper editorialized, in part, "To put a thing in its customary and convenient receptacle is not concealment. Concealment is a matter of motive…"[9]

202. California Penal Code §25850 makes it a crime to carry a loaded firearm on one's person or in a vehicle, without regard to whether it is carried concealed or openly, while in any public place or on any public street in an unincorporated city, or any public place or public street in a prohibited area of an unincorporated territory.

203. Plaintiffs seeks to carry their firearms in public in the manner of their choosing, concealed or open, throughout the State of California.

204. By eliminating Plaintiffs' ability to choose how to defend themselves in public and their tactical decision-making ability regarding how to carry their firearms, California's firearm licensing scheme unlawfully burdens and infringes upon Plaintiffs' Second Amendment rights.

205. There is no legitimate, measurable, or quantifiable impact on public safety that justifies California's interference with Plaintiffs' ability to choose how to carry their firearms for self-defense in public.

206. California's firearm licensing scheme stripping law-abiding people, including Plaintiffs, of the ability to choose how to carry their firearms for self-defense in public is unconstitutional and serves no legitimate purpose.

207. California's firearm licensing scheme restricting how Plaintiffs may carry their firearms for self-defense in public unlawfully infringes upon and violates Plaintiffs' Second

---

[9] NRA Institute for Legislative Action, Tuesday January 1, 2013, *citing,* The Daily Alta California, 1869.

Amendment right to bear arms for personal protection.

208.  California's firearm licensing scheme deprives Plaintiffs of the ability to protect and defend themselves from physical harm in the manner they choose.

209.  California's firearm licensing scheme controlling a licensee's manner of carrying his firearm in public should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**Demarcating the Manner of Personal Carry Violates the Fourth Amendment**

210.  The protections of the Fourth Amendment are not limited to privacy interests; its protections encompass possessory and liberty interests even when privacy rights are not implicated. *Soldal v. Cook County*, 506 U.S. 56, 63-64, 113 S. Ct. 538, 121 L. Ed. 2d 450 & n.8 (1992). A reasonable expectation of privacy is not required for Fourth Amendment protections to apply." *United States v. Jones*, 565 U. S. 400, 406, 132 S. Ct. 945, 950 (2012). "[E]ven in the absence of a trespass, a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable…In *Katz*, this Court enlarged its then-prevailing focus on property rights by announcing that the reach of the Fourth Amendment does not turn upon the presence or absence of a physical intrusion." *Jones*, 565 at 414 (internal citations omitted) (Sotomayor, J., concurring).

211.  A seizure for Fourth Amendment purposes may occur when there is some meaningful interference with an individual's possessory interest in property. *Kincaid v City of Fresno*, 2008 US Dist LEXIS 38532, at *10-11 (ED Cal May 12, 2008, No. CV-F-06-1445 OWW) citing, *Soldal v. Cook County, Ill.*, 506 U.S. 56, 63, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992).

212.  A reasonable expectation of privacy is not required to trigger Fourth Amendment protection against seizures. See, e,g, *Miranda v. City of Cornelius*, 429 F.3d 858, 862 n.2 (9th Cir.

38

2005) (the city's seizure/impoundment of parked car was subject to the Fourth Amendment's reasonableness standard based on its interference with plaintiff's property interests regardless of whether there is an invasion of privacy"); *United States v. Paige*, 136 F.3d 1012, 1021 (5th Cir. 1998) ("The Supreme Court recently made clear that the protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even if his expectation of privacy in that property has been completely extinguished.") (citing *Soldal*)); *Lenz v. Winburn*, 51 F.3d 1540, 1550 n.10 (11th Cir. 1995) ("It is true that a possessory interest is all that is needed for the Fourth Amendment's reasonableness requirement to apply to a seizure.") (citing *Soldal*); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) ("[O]ur finding that Bonds had no reasonable expectation of privacy in the house at 4174 Dunn Avenue does not affect our conclusion that Bonds has standing to challenge the seizure of her property.").

213. Plaintiffs have a possessory interest in their firearms, inside of their homes and in public.

214. California's firearm licensing scheme unreasonably interferes with Plaintiffs' possession and use of their personal property.

215. Analogous to a "prior restraint" of free speech, California's firearms licensing scheme unnecessarily restricts Plaintiffs' right to enjoyment and use of their personal property in public.

216. California has enacted this statutory scheme because of the *type* of property that is involved, in the absence of any inherent danger related to the manner of carry.

217. There is no inherent danger created by the manner in which Plaintiffs carry their firearm in public for self-defense because they are law-abiding individuals with no statutory prohibitors to firearms possession.

218. California has no legitimate governmental interest in controlling and/or interfering

with the way law-abiding individuals, including Plaintiffs, carry their firearms in public.

219. California's interference with Plaintiffs' ability to choose how to carry their firearms for self-defense in public is not substantially related to any legitimate governmental interest.

220. California's firearm licensing scheme interference with, and restriction on, how a licensee can carry his firearms in public should be declared a violation of the Fourth Amendment, enjoined from enforcement, and stricken as unconstitutional.

**Demarcating the Manner of Personal Carry Violates the Fourteenth Amendment (Procedural Due Process)**

221. Plaintiffs have a demonstrated property interest in their firearms.

222. California's firearm licensing scheme deprives Plaintiffs of the right to enjoyment of their property without due process, which interferes with and restricts the use and enjoyment of their personal property.

223. There is no valid governmental interest is at stake that justifies the statutory interference with Plaintiffs' use and enjoyment of their property outside of their home and in public.

224. California has no procedure in place to address the due process violations caused by its statutory scheme prior to the actual interference with the property rights of law-abiding individuals, including Plaintiffs.

225. California has no additional or substitute procedural safeguards to prevent this due process violation.

226. The only purpose of California's statutory scheme is to deprive its law-abiding residents of the right to carry firearms in public by creating a "good cause" requirement for concealed carry, deemed by the state to be a mere 'privilege', a standard that the general member of the public cannot attain, including Plaintiffs.

227. It is unconstitutional to require Plaintiffs to demonstrate "good cause" before being

40

able to use and enjoy their property.

228. California's licensing scheme unlawfully interferes with and restricts the constitutional right to the use and enjoyment of property and should be declared a violation of the Fourteenth Amendment right to due process, enjoined from enforcement, and stricken as unconstitutional.

**Demarcating the Manner of Personal Carry Violates the Fourteenth Amendment (Substantive Due Process)**

229. The Constitution does not explicitly mention any right of privacy. In a line of decisions, going back as far as *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251 (1891), the Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution. *Roe v Wade*, 410 US 113, 152-153 (1973) (citing the "roots of that right" in the First Amendment, *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); in the Fourth and Fifth Amendments, *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968), *Katz v. United States*, 389 U.S. 347, 350 (1967), *Boyd v. United States*, 116 U.S. 616 (1886), *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting); in the penumbras of the Bill of Rights, *Griswold v. Connecticut*, 381 U.S., at 484-485; in the Ninth Amendment (Goldberg, J., concurring); or in the concept of liberty guaranteed by the first section of the Fourteenth Amendment, see *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)) (internal quotations omitted).

230. The Supreme Court has a long history of recognizing unenumerated fundamental rights as protected by substantive due process, even before the term evolved into its modern usage. *Raich v Gonzales*, 500 F3d 850, 863 (9th Cir 2007) citing, *Casey*, 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (to have an abortion); *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973) (same); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972) (to use contraception); *Griswold*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (to use contraception, to marital privacy); *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d

41

1010 (1967) (to marry); *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952) (to bodily integrity); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S. Ct. 1110, 86 L. Ed. 1655 (1942) (to have children); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (to direct the education and upbringing of one's children); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (same); *Lawrence v. Texas*, 539 U.S. 558, 578, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003) (recognizing narrowly defined fundamental right to engage in consensual sexual activity, including homosexual sodomy, in the home without government intrusion).

231. "The above decisions make it clear that …personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty' are included in this guarantee of personal privacy." *Roe v. Wade*, 410 US at 152.

232. Abortion is a recognized, but unenumerated, fundamental right protected by substantive due process. *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973).

233. Abortion is believed to be the right of a woman to choose what happens to her own body during pregnancy.

234. Abortion is *not* an enumerated fundamental right under the Bill of Rights.

235. The right to bear arms *is* a "fundamental" "personal right". The right to self-protection with a firearm inside and outside of one's home is "fundamental" by the very fact that it is *enumerated* in the Bill of Rights and protected by the Second Amendment.

236. The right to bears arms, therefore, is more fundamental and more inalienable, than the unenumerated right to have an abortion.

237. The right to bear arms is a right protected by substantive due process.

238. As a woman is free to choose the manner in which she handles her pregnancy based on an unenumerated right, the law-abiding individual has a greater right to choose the manner in

42

which s/he carries a firearm to protect her/his body in public, which is an enumerated right.

239. How could the right to decide what happens to one's body in one circumstance, which has been argued to be for the protection of the life of the mother, be more fundamental than the right of the individual to decide how to protect her/his life and preserve her/his body *in the first instance*?

240. Forcing the law-abiding general member of the public, who cannot meet the "good cause" criteria, to carry openly, thereby stripping her/him of any element of surprise or tactical advantage s/he may have over a criminal assailant, violates the individual's right to personal liberty.

241. The Second Amendment provides that the right to keep and bear arms "*shall not be infringed*". Whatever historical reasons or infringements on the manner of carry have occurred throughout the years, the "we've always done it that way" excuse fails.

242. There is no "compelling state interest" justifying California's interference with how an individual carries her/his firearm for self-protection in public. *Cf., Roe v Wade*, 410 US at 156 (1973) (internal citations omitted). Unlike an abortion, which affects the rights of two beings - the woman and her unborn baby, the right to bear arms *only* affects the individual and her/his right to self-protection.

243. There is no compelling state interest justifying such an intrusion into the very personal choice of how one carries, and trains mentally and physically to carry, a firearm and the circumstances under which it is employed for self-preservation.

244. California's licensing scheme should be declared a violation of the Fourteenth Amendment right to substantive due process, enjoined from enforcement, and stricken as unconstitutional.

## DECLARATORY JUDGMENT ALLEGATIONS

245.  There is an actual and present controversy between the parties. Plaintiffs contend that: (1) California Penal Codes §26150 and §26155 violate Plaintiffs' fundamental right to open carry, a core right protected by the Second Amendment, by requiring "good cause" for the issuance thereof; (2) California Penal Codes §26150 and §26155 violate Plaintiffs' fundamental right to open carry, a core right protected by the Second Amendment, by restricting the authority and validity of open carry licenses to the county of issuance; (3) California Penal Codes §26150 and §26155 violate Plaintiffs' fundamental right to open carry, a core right protected by the Second Amendment, by geographically restricting open carry licensees from carrying firearms in various counties based on the population size of the county; (4) the "may issue" language of California Penal Codes §26150 and §26155 is unconstitutional because open carry is a core and fundamental right protected by the Second Amendment, not subject to the subjective whims of a licensing authority; (5) the geographical and population restrictions on open carry licenses set forth in California Penal Codes §26150 and §26155 violate the Dormant Commerce Clause; (6) the geographical and population restrictions on open carry licenses set forth in California Penal Codes §26150 and §26155 violate Plaintiffs' Fourteenth Amendment right to interstate and intrastate travel; (7) California Penal Code §26350 violates Plaintiffs' Second, Fourth, and Fourteenth Amendment rights to open carry of an unloaded handgun outside of their homes; (8) California Penal Code §25850 criminalizing the open carry of a loaded firearm violates Plaintiffs' rights under the Second Amendment, Fourth Amendment, and Fourteenth Amendment; and that (9) California's statutory licensing scheme unconstitutionally interferes with Plaintiffs' Second, Fourth, and Fourteenth Amendment (substantive and procedural) rights by artificially and subjectively demarcating the manner in which they choose to carry their property, to wit, firearms, in public. Defendants deny these contentions.

246. Plaintiffs are seeking a judicial declaration that California Penal Codes §26150, §26155, §25850, and §26350 are (a) facially unconstitutional, and (b) as applied to Plaintiffs violate their constitutional rights in the manner described in detail herein.

247. Plaintiffs also seek a judicial declaration that California's licensing scheme violates Plaintiffs' Second Amendment right to open carry, Fourth Amendment right to the use and enjoyment of their personal property without unlawful governmental interference, Fourteenth Amendment right to travel, Fourteenth Amendment right to procedural due process, and Fourteenth Amendment right to substantive due process.

248. Plaintiffs should not have to risk criminal prosecution in order to exercise their core and fundamental human rights, as detailed above, and they should not have to choose between their fundamental rights and criminal prosecution.

## INJUNCTIVE RELIEF ALLEGATIONS

249. Injunctive relief is necessary to prevent Defendant from enforcing California's carry restrictions and corresponding criminal penalties. Plaintiffs are being continuously injured, in fact, by (1) Defendants' enforcement of California Penal Codes §26150 and §26155 requiring "good cause" for the issuance of an open carry license, a core fundamental right protected by the Second Amendment; (2) Defendants' enforcement of California Penal Codes §26150 and §26155 restricting the authority and validity of open carry licenses to the county of issuance, in violation of the Second Amendment; (3) Defendants' enforcement of California Penal Codes §26150 and §26155 banning open carry licensees from carrying firearms in certain counties based on population size, in violation of the Second Amendment; (4) Defendants' enforcement of the "may issue" language of California Penal Codes §26150 and §26155 leaving the open carry licensing process to the subjective whims of the licensing authority, in violation of the Second Amendment; (5) Defendants' enforcement of the geographical and population restrictions of open carry set

forth in California Penal Codes §26150 and §26155, in violation of the Dormant Commerce Clause; (6) Defendants' enforcement of the geographical and population restrictions of open carry set forth in California Penal Codes §26150 and §26155, in violation of the Fourteenth Amendment right to interstate and intrastate travel; (7) Defendants' enforcement of California Penal Code §26350, which violates Plaintiffs' Second, Fourth, and Fourteenth Amendment rights to open carry unloaded handguns in public; (8) Defendants' enforcement of California Penal Code §25850 criminalizing the open carry of a loaded firearm where an open licensee carries in public outside of the county of issuance, which violates Plaintiffs' rights under the Second Amendment, Fourth Amendment, and Fourteenth Amendment; and (9) Defendants' enforcement of California's statutory licensing scheme, which unconstitutionally interferes with Plaintiffs' Second, Fourth, and Fourteenth Amendment (a) substantive and (b) procedural Due Process rights by artificially and subjectively demarcating the manner in which they choose to carry their personal property, to wit, firearms, in public.

250.  The aforementioned statutes, customs, and policies prohibit Plaintiffs from openly carrying a firearm in public for self-defense. If an injunction does not issue, Plaintiffs will continue to be irreparably harmed by the continued violation of their fundamental rights as guaranteed and protected by the United States Constitution. Plaintiffs should not have to risk criminal prosecution in order to exercise the core fundamental rights detailed above and they should not have to choose between exercising their fundamental rights and being subject to criminal prosecution, incarceration, and other legal penalties.

251.  If not enjoined, Defendants will continue to enforce theses statutes, policies, and customs in derogation of Plaintiffs' constitutional rights. Plaintiffs have no speedy and adequate remedy at law. Damages are indeterminate and/or unascertainable and would not fully redress any harm suffered by Plaintiffs as a result of being unable to engage in activity protected by, *inter*

46

*alia,* the Second, Fourth, and Fourteenth Amendments.

252.  The injunctive relief sought herein would eliminate the irreparable harm and allow Plaintiffs to exercise their core, fundamental rights as described herein, to wit, open carry of a firearm throughout the State of California, loaded or unloaded, and the ability to choose the manner in which they carry their personal property, to wit, firearms for self-defense in public. Accordingly, injunctive relief is appropriate.

253.  Upon information and belief, Defendants deny the contentions stated herein.

## COUNT I
### Second Amendment "Good Cause" Requirement

254. Repeat and reallege paragraphs "1" through and including "253" as if set forth in their entirety herein.

255.  Defendants have violated a core right protected by the Second Amendment, to wit, Plaintiffs' right to bear arms publicly by means of open carry by the enforcement of Penal Codes §26150 and §26155 requiring "good cause" for the issuance of an open carry license. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

256.  Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

## COUNT II
### Second Amendment Open Carry License Restriction by County

257. Repeat and reallege paragraphs "1" through and including "256" as if set forth in their entirety herein.

258.  Defendants have violated a core right protected by the Second Amendment, to wit,

47

Plaintiffs' right to bear arms publicly by means of open carry by the enforcement of Penal Codes §26150 and §26155 which restrict the validity and authority of an open carry license to the county of issuance. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

259.  Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

**COUNT III**
**Second Amendment Open Carry License Restriction by Population Size**

260.  Repeat and reallege paragraphs "1" through and including "259" as if set forth in their entirety herein.

261.  Defendants have violated a core right protected by the Second Amendment, to wit, Plaintiffs' right to bear arms publicly by means of open carry by the enforcement of Penal Code §26150 and §26155 which restricts Plaintiffs' ability to open carry based on county population size. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

262.  Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

**COUNT IV**
**Second Amendment "May Issue" Language for Open Carry License**

48

263.  Repeat and reallege paragraphs "1" through and including "262" as if set forth in their entirety herein.

264.  Defendants have violated a core right protected by the Second Amendment, to wit, Plaintiffs' right to bear arms publicly by means of open carry by enforcing the "may issue" language of Penal Codes §26150 and §26155 permits the subjective and unconstitutional denial of open carry license applications by law-abiding individuals. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

265.  Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

## COUNT V
### Dormant Commerce Clause Violation – County of Issuance

266.  Repeat and reallege paragraphs "1" through and including "265" as if set forth in their entirety herein.

267.  Defendants' enforcement of Penal Codes §26150 and §26155 restricting the open carry of a loaded firearm to the county of issuance violates the [Dormant] Commerce Clause, U.S. Const. art. I, §8, cl. 3. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

268.  Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

49

## COUNT VI
### Commerce Clause Violation – County Population Size

269. Repeat and reallege paragraphs "1" through and including "268" as if set forth in their entirety herein.

270. Defendants' enforcement of Penal Codes §26150 and §26155 restricting open carry of a loaded firearm to counties having a population under 200,000 violates the [Dormant] Commerce Clause, U.S. Const. art. I, §8, cl. 3. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

271. Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

## COUNT VII
### Fourteenth Amendment Violation – County of Issuance
### (Right to Intrastate Travel)

272. Repeat and reallege paragraphs "1" through and including "271" as if set forth in their entirety herein.

273. Defendants' enforcement of Penal Codes §26150 and §26155 restricting the open carry of a loaded firearm to the county of issuance violates Plaintiffs' Fourteenth Amendment right to intrastate travel. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

274. Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set

50

forth herein and in Plaintiffs' Prayer for relief.

**COUNT VIII**
**Fourteenth Amendment Violation – County Population Size**
**(Right to Intrastate Travel)**

275. Repeat and reallege paragraphs "1" through and including "274" as if set forth in their entirety herein.

276. Defendants' enforcement of Penal Codes §26150 and §26155 restricting open carry of a loaded firearm to the county of issuance violates Plaintiffs' Fourteenth Amendment rights to intrastate travel. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

277. Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

**COUNT IX**
**Second, Fourth, and Fourteenth Amendment Violation**
**(Penal Code §25850)**

278. Repeat and reallege paragraphs "1" through and including "277" as if set forth in their entirety herein.

279. Defendants' enforcement of California Penal Code §25850, to the extent that the statute criminalizes the open carry of a loaded firearm by an open carry licensee in a county other than the county of issuance, whether on one's person or in a vehicle while in any public place or on any public street in an unincorporated city, or any public place or public street in a prohibited area of an unincorporated territory, violates Plaintiffs' Second, Fourth, and Fourteenth Amendment rights. Defendants, who bear the burden of justifying the restrictions placed on the

51

exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

280. Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

## COUNT X
### Second, Fourth, and Fourteenth Amendment Violation
### (Penal Code §26350)

281. Repeat and reallege paragraphs "1" through and including "280" as if set forth in their entirety herein.

282. Defendants' enforcement of California Penal Code §26350, to the extent that the statute criminalizes the open carry of an unloaded firearm by an open carry licensee on one's person or in a vehicle while in any public place or on any public street in an unincorporated city, or any public place or public street in a prohibited area of an unincorporated territory, violates Plaintiffs' Second, Fourth, and Fourteenth Amendment rights. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

283. Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

## COUNT XI
### Second Amendment Violation
### Demarcation of Manner of Carry

284. Repeat and reallege paragraphs "1" through and including "283" as if set forth in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

their entirety herein.

285.  Defendants have violated a core right protected by the Second Amendment, to wit, Plaintiffs' right to carry their firearms in public for self-protection in a manner of their choosing by dictating the manner in which they carry their firearms while in public through a statutory licensing scheme, including Penal Codes §26150 and §26155, and criminal statutes §26350 and §25850, which are based on artificial and speculative beliefs and ideas having no actual effect on a legitimate governmental interest. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

286.  Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

**COUNT XII**
**Fourth Amendment Interference with Property and Possessory Interests**

287.  Repeat and reallege paragraphs "1" through and including "286" as if set forth in their entirety herein.


288.  Defendants have violated a core right protected by the Fourth Amendment, to wit, Plaintiffs' fundamental possessory right to their private property by dictating the manner in which they carry their firearms in public through a statutory licensing scheme, including Penal Codes §26150 and §26155, and criminal statutes §26350 and §25850, which are based on artificial and speculative beliefs and ideas having no actual effect on a legitimate governmental interest. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed

53

herein.

289. Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

**COUNT XIII**
**Fourteenth Amendment Violation – Procedural Due Process**
**Demarcation of Manner of Carry**

290. Repeat and reallege paragraphs "1" through and including "289" as if set forth in their entirety herein.

291. Defendants are violating a core right protected by the Fourteenth Amendment, to wit, Plaintiffs' right to procedural due process by enacting and enforcing a statutory scheme having criminal penalties that interfere with and extinguish their ability to decide how to carry their private property while in public through a statutory licensing scheme, including Penal Codes §26150 and §26155, and criminal statutes §26350 and §25850, which are based on artificial and speculative beliefs and ideas having no actual effect on a legitimate governmental interest, without the opportunity to be heard.

292. Defendants' actions constitutes an unreasonable, unjustified and unlawful interference with, and deprivation of, the full use and enjoyment of Plaintiffs' property. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

293. Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set

forth herein and in Plaintiffs' Prayer for relief.

**COUNT XIV**
**Fourteenth Amendment Violation – Substantive Due Process**
**Demarcation of Manner of Carry**

294.  Repeat and reallege paragraphs "1" through and including "293" as if set forth in their entirety herein.

295.  Defendants are violating a core fundamental human right protected by the Fourteenth Amendment, to wit, Plaintiffs' substantive right to due process by enacting and enforcing a statutory scheme having criminal penalties that removes Plaintiffs' ability to decide how to carry their private property while in public through a statutory licensing scheme, including Penal Codes §26150 and §26155, and criminal statutes §26350 and §25850, which are based on artificial and speculative beliefs and ideas having no actual effect on a legitimate governmental interest. Defendants, who bear the burden of justifying the restrictions placed on the exercise of fundamental rights, have no viable legal justification for the constitutional violations detailed herein.

296.  Under the theory that Defendants are liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and preliminary injunctive relief against such unconstitutional statutes, customs and policies as set forth herein and in Plaintiffs' Prayer for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.  A declaration that the open carriage of firearms by law-abiding individuals for self-defense in public is a core and fundamental right protected by the Second Amendment.

2.  A declaration that state laws prohibiting the open carriage of firearms in public by law-

55

abiding individuals for self-defense is facially unconstitutional and as applied to Plaintiffs.

3.  A declaration that the "good cause" language of California Penal Codes §26150 and §26155 for the issuance of an open carry firearm license is facially unconstitutional and as applied to Plaintiffs as it violates the Second Amendment.

4.  A declaration that the "may issue" language of California Penal Codes §26150 and §26155 for the issuance of an open carry firearm license is facially unconstitutional and as applied to Plaintiffs as it violates the Second Amendment.

5.  A declaration that the ability of law-abiding individuals to choose the manner in which they possess and/or carry their property [firearms] in public for self-defense is a fundamental right protected by the Second, Fourth and Fourteenth Amendments.

6.  A declaration that state laws demarcating and/or interfering with the manner in which law-abiding individuals possess and/or carry their property [firearms] in public for self-defense are facially unconstitutional and as applied to Plaintiffs.

7.  A declaration that California Penal Codes §26150 and §26155 are facially unconstitutional and as applied to Plaintiffs because they unlawfully and unjustifiably interfere with Plaintiffs' use and enjoyment of their property, to wit, firearms in violation of the Second, Fourth, and Fourteenth Amendments.

8.  A declaration that California's restrictions on the geographical validity of a carry license to the county of issuance violates the Second, Fourth, and Fourteenth Amendments, and the Dormant Commerce Clause.

9.  A declaration that restricting the validity of a carry license to a particular county/counties based on their population size the Second, Fourth, and Fourteenth Amendments, and the Dormant Commerce Clause.

10.  A declaration that Penal Codes §26150, §26155, §26350, and §25850 are facially

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

unconstitutional and as applied to Plaintiffs as they preclude law-abiding individuals from openly carrying a firearm in public for self-defense.

11. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority from enforcing the "good cause" requirement for the issuance of open carry license as provided for in California Penal Codes §26150 and §26155.

12. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority from enforcing the "may issue" language for the issuance of open carry license as provided for in California Penal Codes §26150 and §26155.

13. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority from enforcing the "county of issuance" limitation of the validity and effectiveness of open carry licenses as provided for in California Penal Codes §26150 and §26155.

14. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority from enforcing geographical restrictions on the issuance of open carry licenses based on the population of the county as provided for in California Penal Codes §26150 and §26155.

15. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority from enforcing California Penal Codes §25850 and §26350 against open carry licensees for openly carrying loaded and/or unloaded firearms.

16. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority

from interfering with and/or infringing upon the manner in which law-abiding individuals carry their firearm in public as provided for in California Penal Codes §26150 and §26155.

17. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority from enforcing any other laws that interfere with and/or deny the fundamental right of Plaintiffs and other law-abiding individuals to openly carry a firearm in public for self-defense.

18. An Order preliminarily and permanently enjoining the Attorney General of California and all officers, agents, servants, employees, and persons acting in concert and under his authority from enforcing any other laws that interfere with and/or deny the fundamental right of Plaintiffs and other law-abiding individuals to choose the manner in which they possess and/or carry a firearm in public for self-defense.

19. Reasonable statutory attorney's fees, costs of suit, and disbursements pursuant to 42 U.S.C. § 1988.

20. Any such further or alternative relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 9, 2019                    COSCA LAW CORPORATION

/s/ Chris Cosca
Chris Cosca
Counsel for Plaintiffs
Email: coscalaw@gmail.com


Amy L. Bellantoni (AB3061)
The Bellantoni Law Firm, PLLC
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com
(914) 367-0090 (t)
(914) 367-0095 (f)
*Pro Hac Vice Application Forthcoming

58