COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BAIRD and RICHARD GALLARDO,<br><br>            Plaintiffs,<br><br>     v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California, and DOES 1-10,<br><br>            Defendants. | Case No. 2:19-CV-00617-KJM-AC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:              September 6, 2019<br>Time:             10:00 a.m.<br>Courtroom:     3<br>Judge:            Hon. Kimberly J. Mueller<br>Trial Date:      None set<br>Action Filed:   April 9, 2019 |

1

# TABLE OF CONTENTS

**page**

Table of Authorities………………………………………………    3

Introduction……………………………………………………….    6

Factual Background……………………………………………….    8

Legal Standard…………………………………………………….    8

Argument………………………………………………………….    9

I. Plaintiffs Are Likely To Succeed On The Merits……………..    9
[Second Amendment Claims]

     A.  Self-Defense is the Core Right Protected by the
     Second Amendment……………………………………    9

     B.  Carrying a Firearm in Public for Self-Defense is a
     Pre-Existing Right Protected by the
     Second Amendment…………………………………..    11

     C.  The Ninth Circuit Has, By Default, Declared
     "Open Carry" a Core Second Amendment Right………..    13

     D. Penal Codes §26150, §26155, §25850, and §26350
     Burden Conduct Protected by the Second Amendment….    14

          i. "Good Cause" Requirement for Open Carry
          Licenses is Unconstitutional *Per Se*………………    15

          ii. "May Issue" Language for Open Carry
          Licenses is Unconstitutional *Per Se*………………    18

          iii. "Geographical Restriction" of Open Carry
          Licenses is Unconstitutional *Per Se*………………    22

     E.  "Open Carry" is *De Facto* Banned in California………    25

II. Plaintiffs Are Suffering, And Will Continue To Suffer,
Irreparable Harm………………………………….………………..    32

III. Balancing The Equities Favors Plaintiffs………………………    35

IV.  A Preliminary Injunction Is In The Public's Interest………….    37

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. Trucking Ass'ns*, Inc. *v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ........................................................................23

*Bowers v. DeVito*,
  686 F.2d 616 (7th Cir. 1982) ................................................................... 17, 31

*Balistreri v Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1988) ................................................................... 17, 31

*County of Santa Clara v Trump*,
  250 F. Supp. 3d 497 (ND Cal 2017) ..............................................................34

*Drake v. Filko*,
  724 F.3d 426 (3d Cir. 2013) ......................................................................... 13

*Duncan v Becerra*,
  265 F. Supp. 3d 1106 (SD Cal 2017) ..................................................... *passim*

*Elk Grove Unified Sch. Dist. v Newdow*,
  542 US 1 (2004) ............................................................................................33

*Grace v. District of Columbia*,
  187 F. Supp. 3d 124 (DDC 2016) .................................................................33

*District of Columbia v. Heller*,
  554 US 570 (2008).................................................................................. *passim*

*Hernandez v Sessions*,
  872 F.3d 976, 989-990 (9th Cir. 2017) ...........................................................8

*Hobby Lobby Stores, Inc. v. Sebelius*,
  723 F.3d 1114 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.
  Ct. 2751, 189 L. Ed. 2d 675 (2014) .............................................................37

*Jackson v City & County of San Francisco*,
  746 F.3d 953 (9th Cir. 2014) ..........................................................................9

*Kachalsky v County of Westchester*,
  701 F.3d 81 (2d Cir. 2012) .....................................................................13, 15

*Ketchum v County of Alameda*,
  811 F.2d 1243 (9th Cir. 1987) ................................................................ 17, 31

*Martinez v. California*,
  444 US 277 (1980) ................................................................................17, 31

*McDonald v City of Chicago*,
  561 US 742 (2010) ................................................................................. *passim*

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ...................................................................33

*Moore v Madigan*,
    702 F.3d 933 (7th Cir. 2012) ............................................... 11, 12, 13, 22

*Muscarello v. United States*,
    524 U.S. 125 (1998) ...........................................................................12

*Nunn v. State*,
    1 Ga. 243 (1846) ................................................................................21

*Palmer v District of Columbia*,
    59 F. Supp. 3d 173 (DDC 2014) ...........................................................6

*Peruta v County of San Diego*,
    742 F.3d 1144 (9th Cir 2014) vacated by, rehearing, en banc, granted by *Peruta v. County of San Diego*, 781 F.3d 1106 (9th Cir 2015) (*Peruta I*) ........................................ 12, 15

*Peruta v County of San Diego*,
    824 F.3d 919 (9th Cir. 2016) (en banc) (cert. den.) (*Peruta II*) ...................................... *passim*

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ..............................................................33

*State v. Reid*,
    1 Ala. 612 (1840) ...............................................................................21

*United States v. Cruikshank*,
    92 US 542 (1876) ........................................................................... 10, 11

*United States v. Robel*,
    389 US 258 (1967) ..............................................................................38

*Winter v. NRDC, Inc.*,
    555 US 7 (2008) ...................................................................................8

*Wrenn v. District of Columbia*,
    864 F.3d 650 (DC Cir. 2017) .............................................................. 17

**Statutes**

United States Constitution, Amendment II ........................................................6

California Penal Code §26225 ........................................................................26

California Penal Code §32310 (c) & (d) ........................................................36

California  Penal Code §26160 .......................................................... 26, 27, 30

California Penal Code §26350 ................................................................ *passim*

California Penal Code §25850 ................................................................ *passim*

California Penal Code §26150 ................................................................ *passim*

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

California Penal Code §26155 ........................................................................ *passim*

California Penal Code §26165 ...................................................................................18

**Other**

*An Analytical Framework and a Research Agenda*,
    56 UCLA L. Rev. 1443, 1515 (2009) ...................................................... 12

*Black's Law Dictionary*
    214 (6th ed. 1998) .................................................................................. 12

5

**INTRODUCTION**

California Penal Codes §26150, §26155, §25850, and §26350, enacted by the State of California, and enforced by Defendant Xavier Becerra in his official capacity as the Attorney General of the State of California, his agents, servants, employees, and those working in active concert with him, violate the pre-existing right of law-abiding individuals to bear arms in public for self-protection. Specifically, California's handgun licensing scheme and corresponding criminal statutes, violate *inter alia,* the Second Amendment protected right to open carriage of a firearm for self-protection in public. The aforementioned statutes are facially unconstitutional and unconstitutional as applied to Plaintiffs.

"A well-regulated militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." *United States Constitution, Amendment II.*

The Second Amendment secures the right to protect oneself against both public and private violence, thus extending the right in some form to wherever a person could become exposed to public or private violence. *Palmer v District of Columbia*, 59 F Supp 3d 173, 180 (DDC 2014), citing, *District of Columbia v Heller*, 554 US 570, 593-595 (2008). (internal quotations omitted).

In *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (*Peruta II*) (cert. den.) the Ninth Circuit upheld California's "good cause" requirement for the issuance of a concealed carry license ("CCW"). Finding that the Second Amendment did not protect *in any degree* the right to carry concealed firearms in public, *any* prohibition or restriction a state might choose to impose on concealed carry, including a requirement of good cause, however defined, was necessarily allowed by the Second Amendment. *Id.* In the opinion of the Ninth Circuit, concealed carry is a mere privilege, not a pre-existing right.

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

The plain language of the Second Amendment mandate "…the right to…bear arms shall not be infringed" codifies the pre-existing right to carry firearms in public in some manner for self-protection. There are only two (2) modalities for carrying a firearm in public for self-protection: concealed carry and open carry.

By removing concealed carry from the equation, the Ninth Circuit *de facto* classified the open carriage of firearms in public – the sole remaining modality of bearing arms in public for self-defense - as the pre-existing right referred to by the founding fathers and protected by the Second Amendment. The open carriage of firearms falls squarely within Second Amendment protected activity. A contrary view irrationally eviscerates 50% of the Second Amendment.

The complained of statutes, as well as the policies and conduct of defendant Becerra and the licensing authorities in this state, have *de facto* eliminated the ability of Plaintiffs and other law-abiding residents of California, to exercise their right to open carry without the threat and fear of criminal prosecution.

California's handgun licensing scheme, enumerated in Penal Codes §26150 and §26155, unconstitutionally infringes on the pre-existing right of Plaintiffs, and other law-abiding residents of California, by *inter alia,*[1] (i) requiring "good cause" for the issuance of an open carry license; (ii) containing "may issue" language empowering the sheriffs and chiefs of police to deny open carry applications to law-abiding individuals such as Plaintiffs, who are otherwise eligible for its issuance; and (iii) restricting the validity of duly-issued open carry licenses to the county of issuance.  As such, Penal Codes § 26150 and § 26155 unconstitutionally burden the pre-existing right to open carry, causing Plaintiffs and other law-abiding otherwise eligible residents of

---

[1] The complained of statutes violate other fundamental, pre-existing rights protected by the Bill of Rights as detailed in the Complaint for Declaratory and Injunctive Relief. The instant motion for a preliminary injunction is based solely on the violations of Plaintiffs' Second Amendment rights. Plaintiffs assert that the constitutional violations claimed in their Complaint but not specifically relied upon herein would, likewise, establish their entitlement to the injunctive relief requested.

7

1  California, irreparable harm, as well as all.

2      California Penal Codes §25850 and §26350 criminalize the possession of loaded and

3  unloaded firearms in public, respectively. As such, if Plaintiffs exercised their pre-existing right

4  to open carry for self-protection in public, they would be subject to criminal prosecution,

5  including incarceration, fines, and penalties.

6

7      Based on the within Memorandum of Points and Authorities, accompanying Declarations

8  of Amy L. Bellantoni, Mark Baird, Richard Gallardo, and all accompanying exhibits, Plaintiffs'

9  motion to enjoin Attorney General Xavier Becerra, his agents, servants, employees, and those

10  working in active concert with him, from enforcing and/or giving effect to California Penal Codes

11  §26150, §26155, §26350, and §25850 as they relate to the open carriage of a firearm in public,

12  whether loaded or unloaded, during the pendency of this action should respectfully be granted in

13  its entirety. If Plaintiffs' motion is not granted, they will continue to suffer irreparable harm that

14  cannot be remedied economically.

15

16                    **FACTUAL BACKGROUND**
17                    **LEGAL STANDARD**

18      In order to obtain a preliminary injunction a plaintiff must establish that (1) he is likely to

19  succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary

20  relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.

21  *Hernandez v Sessions*, 872 F3d 976, 989-990 (9th Cir 2017) (internal quotations omitted) citing,

22  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). Under our

23  "sliding scale" approach, the elements of the preliminary injunction test are balanced, so that a

24  stronger showing of one element may offset a weaker showing of another.  *Id.* (citations and

25  quotations omitted).

26

27

28

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

**ARGUMENT**

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS [SECOND AMENDMENT CLAIMS]

Plaintiffs are likely to succeed on the merits of their Second Amendment claims because the challenged laws and governmental conduct burdens the pre-existing right to bear arms in public for self-protection, to wit, open carry; a right that falls squarely within the scope of Second Amendment protections.

### A.  Self-Defense is the Core Right Protected by the Second Amendment

Self-defense is a basic human right, recognized by many legal systems from ancient times to the present day. *McDonald v City of Chicago*, 561 US 742, 768 (2010).

The fundamental right to self-defense is inseparable from the individual. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia v. Heller*, 554 US 570, 595-599 (2008).

The Second Amendment protects the pre-existing and fundamental right of the individual to bear arms. "It was not necessary that the right to bear arms should be granted in the Constitution, for it had always existed." *District of Columbia v. Heller*, 554 US at 619, *citing*, J. Ordronaux, Constitutional Legislation in the United States 241-242 (1891).

"Individual self-defense is the central component of the Second Amendment right." *McDonald v City of Chicago*, 561 US at 767, citing, *District of Columbia v. Heller*, 554 U.S. at 599, 628. (internal quotations omitted); see also, *Jackson v City & County of San Francisco*, 746 F3d 953, 959 (9th Cir 2014) citing *Heller*, 554 U.S. at 595, 628 ("After undertaking a lengthy analysis of the original public meaning of the Second Amendment, the [*Heller*] Court concluded that it confers an individual right to keep and bear arms. [ ] Guided by the same historical inquiry, the Court emphasized that the inherent right of self-defense has been central to the Second

9

Amendment right.").

The individual's right to self-defense is **the core** Second Amendment right identified by the Supreme Court in *Heller.  District of Columbia v. Heller*, 554 US at 630.  Nowhere in *Heller* did the Supreme Court hold that the scope of the Second Amendment was limited to the possession of firearms in the home for self-defense. While holding in *Heller* was limited to the facts before the Court – that the government's statutory prohibition of firearm possession in the home violated the Second Amendment - the Supreme Court pronounced clearly that the right of the people to keep arms (possess) and bear arms (carry in public), are both central and integral to the **core right to self-defense** that is protected by the Second Amendment and they are of equal importance.

The detailed analysis conducted by the Supreme Court in *Heller* bears out the Supreme Court's desire to emphasize the existence the pre-existing right of the individual to self-protection – at home or in public. The narrow issue before the Court in *Heller* could have been resolved without the Justices taking the time to call attention to the fact that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L. Ed. 588 (1876), '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it *shall not be infringed*…" *District of Columbia v Heller*, 554 US at 592 (emphasis in the original).

10

The framers of the Constitution made clear that the core right to self-defense protected by the Second Amendment "*shall not be infringed*". The Second Amendment mandates that the pre-existing right of the individual to possess firearms to protect himself, at home and in public, shall not be interfered with by the government to any extent; thus, an infringement of that right is *per se* unconstitutional.

**B.  Carrying a Firearm in Public for Self-Defense is a Pre-Existing Right Protected by the Second Amendment**

Self-defense at home and self-defense in public are equally important rights because keeping arms and bearing arms are necessary to the individual's basic human right of self-defense. The Supreme Court recognized that the individual's right to self-defense is as critical and fundamental outside of the home as it is inside of the home. See, *Heller*, 554 US at 595-599; *McDonald v City of Chicago*, 561 US 742, 776; see also, *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012) (An individual does not forfeit his right to self-protection by stepping outside of his home. The right to self-protection is as great outside of one's home as it is inside the home.).

In *Heller* the Supreme Court examined the historical background and meaning of the term "bear arms" reasoning that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L. Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed . . . ." *District of Columbia v Heller*, 554 US 570, 592 (2008).

Were the right to bear arms restricted to the home, the language "bear arms" would be rendered superfluous. "At the time of the founding, as now, to 'bear' meant to 'carry'." *District of Columbia v Heller*, 554 U.S. at 584. The 'natural meaning of 'bear arms' was the one that Justice Ginsburg provided in her dissent in *Muscarello v. United States*, 524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998): to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584 (quoting *Muscarello*, 524 U.S. at 143, 118 S. Ct. 1911) (Ginsburg, J., dissenting) (quoting Black's Law Dictionary 214 (6th ed. 1998)).

"Bearing a weapon inside the home does not exhaust this definition of 'carry'. For one thing, the very risk occasioning such carriage, 'confrontation', is not limited to the home." *Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012)). "The prospect of conflict at least, the sort of conflict for which one would wish to be 'armed and ready' is just as menacing (and likely more so) beyond the front porch as it is in the living room…to speak of 'bearing' arms within one's home would at all times have been an awkward usage." *Id.*

Both *Heller* and *McDonald* identify the "core component" of the Second Amendment right as self-defense, "which necessarily takes place wherever a person happens to be, whether in a back alley or on the back deck." *Peruta v County of San Diego*, 742 F3d 1144, 1154 (9th Cir 2014) vacated by, rehearing, en banc, granted by *Peruta v. County of San Diego*, 781 F.3d 1106 (9th Cir 2015) (*Peruta I*) citing, Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009); see also *Moore v Madigan*, 702 F.3d at 937 ("To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*.").

The Second Amendment right to bear arms "could not rationally have been limited to the home." *Moore v Madigan*, 702 F.3d at 936. Though people may "keep Arms" (or, per *Heller's* definition, "have weapons", 554 U.S. at 582) in the home for defense of self, family, and property, they are more sensibly said to "bear Arms" (or, *Heller's* gloss: "carry [weapons] . . . upon the person or in the clothing or in a pocket") in nondomestic settings. *Peruta I* at 1153 citing, *Kachalsky v County of Westchester*, 701 F3d 81, 89 n.10 (2d Cir 2012) ("The plain text of the Second Amendment does not limit the right to bear arms to the home."); see also, *Drake v. Filko*, 724 F.3d 426, 444 (3d Cir. 2013) (Hardiman, J., dissenting) ("To speak of bearing arms solely within one's home not only would conflate 'bearing' with 'keeping', in derogation of the Court's holding that the verbs codified distinct rights, but also would be awkward usage given the meaning assigned the terms by the Supreme Court.") (internal quotations omitted).

### C. The Ninth Circuit Has, By Default, Declared "Open Carry" a Core Second Amendment Right

The plain language of the Second Amendment confirms the pre-existing right of the people to carry weapons in public for self-defense.

Carrying a firearm in public for self-protection can be exercised in two modalities: concealed carry and open carry. The Ninth Circuit ruled that the concealed carry of a firearm is not a right protected by the Second Amendment, but a mere 'privilege' to be granted or denied at the whim of the government. "Because the Second Amendment does not protect *in any degree* the right to carry concealed firearms in public, *any* prohibition or restriction a state may choose to impose on concealed carry - including a requirement of 'good cause', however defined - is necessarily allowed by the [Second] Amendment." *Peruta v County of San Diego*, 824 F3d 939 (9th Cir 2016) (*Peruta II*) (emphasis added) ("The protection of the Second Amendment - whatever the scope of that protection may be - simply does not extend to the carrying of concealed firearms in public by members of the general public.").

13

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

Desperate to conclusively deny the law-abiding person the right to carry her weapon concealed so as to have a tactical advantage over a violent criminal attacker, the Ninth Circuit tacitly confirmed that "open carry" is a pre-existing right, protected from governmental infringement by the Second Amendment. *Peruta II*, 824 F3d at 942 ("If the Second Amendment does protect the right of a member of the general public to carry a firearm in public, it is the right to open carry.").

After *Peruta II,* viewing open carry as anything less than a fundamental, pre-existing right falling within the scope of Second Amendment protections flies in the face of common sense. A plain reading of the Second Amendment: "…the right of the people to…bear arms shall not be infringed" so demonstrates.

A contrary view is irrational and intellectually dishonest. If every manner of bearing arms - open carry and concealed carry - is reduced to mere 'privilege' status, subject to the whims of governmental control, the law-abiding individual is left in exactly the position that the Bill of Rights was created to prevent - at the mercy of the government with no 'right' to possess a firearm for self-protection against a violent attack outside of one's home.

**D. Penal Codes §26150, §26155, §25850, and §26350 Burden Conduct Protected by the Second Amendment**

The Second Amendment right to keep and bear arms for the purpose of individual self-defense is fully applicable to the states. *McDonald v City of Chicago*, 561 US 742 (2010).

A statute which, under the pretense of 'regulating' fundamental rights, amounts to a destruction of that right is clearly unconstitutional. *District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) (internal quotations omitted).

California Penal Codes §26150, §26155, §26350, and §25850 place an unconstitutional burden on the pre-existing rights of Plaintiffs, and all law-abiding residents of California, to bear arms in public for self-protection.

14

i. <u>"Good Cause" Requirement for Open Carry Licenses is Unconstitutional *Per Se*</u>

California Penal Codes §26150 and §26155 require a showing of "good cause" before a license to carry a firearm may issue – the burden is the same for the issuance of a concealed carry license ("CCW") or open carry license.

"Good cause" is generally defined in the Ninth Circuit as "demonstrating a need for self-protection that is greater than the average person, requiring documented threats of violence that establish the applicant is a target and at risk for specific harm." See, *Peruta v County of San Diego*, 742 F3d 1144, 1193 (9th Cir 2014) (San Diego County's "good cause" requirement only allows issuance only to individuals who will most likely need to defend themselves in public to carry a handgun); see also, *Kachalsky v County of Westchester*, 701 F3d 81, 98 (2d Cir 2012) ("'proper cause' is met …when a person has an actual and articulable—rather than merely speculative or specious—need for self-defense").

The complained of statutes authorize each city and county to define "good cause" as they see fit. (Penal Codes §26150, §26155). For instance, the Amador County Sheriff considers "good cause" as: specific evidence that there has been or likely will be an attempt on the part of a second party to do great bodily harm to the applicant; the nature of the business or occupation of the applicant is such that it is subject to high personal risk and/or criminal attack far greater risk than the general population; employment that requires frequent transportation of large sums of money or other valuables and alternative protective measures or security cannot be employed; employment is of a high-risk nature and requires the applicant's presence in a dangerous environment; employment is such that no means of protection, security or risk avoidance can mitigate the threat; and/or personal protection is warranted to mitigate a threat to the applicant and the applicant is able to substantiate the threat.

15

"Good cause", therefore, can rarely be established because members of the general public have not had specific threats made against them, are not engaged in dangerous employment, and do not transport large sums of money in the course of their occupation. Indeed, most victims have no 'crystal ball' informing them that they are about to become victims of a violent criminal attack.

The Ninth Circuit upheld California's "good cause" requirement for the issuance of concealed carry licenses, reasoning that because the ability to carry firearms concealed in public is merely privilege and not a right, "any prohibition or restriction a state may choose to impose on concealed carry - including a requirement of good cause, however defined - is necessarily allowed by the [Second] Amendment." *Peruta v County of San Diego*, 824 F3d at 939 (*Peruta II*).

Open carry is not a privilege subject to governmental hoops; it is a pre-existing right. The government cannot tether the issuance of an open carry license to a demonstration of "good cause". In other words, the law-abiding individual has no burden to justify his entitlement to exercise the pre-existing right to open carry.

The "good cause" requirements of Penal Codes §26150 and §26155 are *per se* unconstitutional. While the "good cause" burden may be acceptable in the eyes of the Ninth Circuit as applied to a privilege, such as a CCW license, its legal acceptability was tethered to the classification of CCW as a privilege. Such burdens are unacceptable, indeed unconstitutional, when applied to the right to open carry.

The enforcement of §26150 and §26155 must be enjoined because the "good cause" requirement unconstitutionally infringes on a fundamental Second Amendment right (open carry), treating it in the same manner as a mere 'privilege' (concealed carry).

The "good cause" requirement is not only unlawful when applied to open carry licenses, it also amounts to a total ban on the issuance of open carry licenses. When the "good cause"

16

requirement is analyzed regarding its effect on the typical law-abiding citizen, it prevents the general public from self-protection outside of the home. See, *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (DC Cir 2017) ("…the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen.").

The "good cause" burden requires law-abiding individuals to distinguish themselves from the typical law-abiding citizen. By definition, the pre-existing right to bear arms for self-protection in public exists for, and attaches to, *every law-abiding individual*. The right to bear arms is attached to the individual, wherever s/he is.  See, e.g., *District of Columbia v. Heller*, 554 US at 619, *citing,* J. Ordronaux, Constitutional Legislation in the United States 241-242 (1891) ("It was not necessary that the right to bear arms should be granted in the Constitution, for it had always existed."). Requiring the open carry applicant to distinguish himself from other law-abiding members of society or to establish the need for self-defense greater than the average person in order to exercise a pre-existing right to self-defense is an unconstitutional burden on the law-abiding person and violates the Second Amendment right to bear arms.

The government cannot force Plaintiffs, or any other law-abiding residents of California, to prove their entitlement to exercise a pre-existing right to defend themselves in public from an attacker - particularly when law enforcement has no duty to protect the individual. C.f., *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th  Cir 1988) (dismissing complaint where police failed to take steps to respond to the continued threats, harassment and violence by estranged husband because "there is, in general, no constitutional duty of state officials to protect members of the public at large from crime."); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th Cir 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs desire to exercise their right to the open carriage of firearms and cannot be forced by the government to demonstrate "good cause" before exercising their right to open carry. Plaintiffs have no burden to justify the exercise of a pre-existing and fundamental right to possess a firearm for self-defense in public.

Based on the above, Plaintiffs have demonstrated a strong likelihood of success on the merits of their Second Amendment claims regarding the "good cause" requirements under Penal Codes §26150 and §26155 as applied to open carry licenses, warranting an order granting the requested injunctive relief.

ii. "May Issue" Language for Open Carry Licenses is Unconstitutional *Per Se*

Penal Codes §26150 and §26155 authorizes the licensing authority (the sheriff under §26150 and the chief or other head of a municipal police department of any city or city and county under §26155) complete discretion to issue or deny an application for an open carry license, even where the law-abiding applicant otherwise satisfies all other statutory criteria.

The "may issue" language of §26150 and §26155 unlawfully empowers the licensing authority to divest a law-abiding individual, eligible under the licensing statutes[2], of a protected constitutional right.

The open carriage of a firearm in public is a pre-existing right protected by the Second Amendment. Where an individual meets the requirements[3] of §26150 and §26155, there is no further governmental determination to be made.

---

[2] Under §26150 and §26155, the sheriff or chief of police, respectively, "may issue" an open carry license upon proof that the applicant meets all of the following: (1) is of good moral character; (2) 'good cause' exists for issuance of the license; (3) meets the residential requirements; (4) has completed a course of training as described in Section 26165; and (5) lives in a county with a population less than 200,000. The open carry license, however, is only valid in the county of issuance.

[3] Plaintiffs accept for purposes of this motion, but do not generally concede and specifically reserve their right to challenge, the "moral character" and residency requirements of the above statutes.

18

1  The government is not "free to impose [its] own policy choices" on the public… as *Heller*

2  explains, the Second Amendment takes certain policy choices and removes them beyond the

3  realm of debate. Disarming California's law-abiding citizenry is not a constitutionally-permissible

4  policy choice." See, *Duncan v Becerra*, 265 F Supp 3d 1106, 1128 (SD Cal 2017).

5  Empowering any government actor with the ability to strip a law-abiding person of the

6  fundamental right to self-protection in public, is an unlawful burden on the right to bear arms as

7  protected by the Second Amendment. The "may issue" language of §26150 and §26155

8  emboldens arrogance, instilling unfettered discretion in the licensing authority and an abrogation

9  of basic fundamental rights to self-protection.

10  The Bill of Rights does not *give* any rights to the people – the first ten amendments were

11  created to protect pre-existing rights; to restrict government action and prevent the government

12  from interfering with the people's fundamental rights.

13  The right of the law-abiding person to carry a firearm exposed in public for self-protection

14  mandates that the government issue open carry licenses to all eligible applicants. As such, the

15  "may issue" language of California's handgun licensing statutes infringes upon, interferes with,

16  and violates the Second Amendment.

17  Mr. Baird meets the eligibility requirements for the issuance of an open carry license – he

18  is of good moral character, resides in Siskiyou County with a population less than 200,000

19  people, and has fulfilled all training requirements. (See, p. 2-4 of the Declaration of Mark Baird

20  as Exhibit 1 annexed to the Declaration of Amy L. Bellantoni). Mr. Baird applied to Siskiyou

21  County Sheriff Jon Lopey ("Sheriff Lopey") for an open carry license on more than one occasion.

22  Each of his requests was denied in spite of the fact that Mr. Baird is a law-abiding individual who

23  meets all other statutory criteria.

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

Sheriff Lopey informed Mr. Baird that he will not issue any open carry licenses. (Ex. 1 at p. 2-5). The Siskiyou County Sheriff's Office does not even have an open carry license application or a procedure for applying for an open carry license. (Ex. 1 at p. 2-5 and annexed exhibits). There is no administrative appeal process available for challenging Sheriff Lopey's denial of Mr. Baird's open carry applications. Even if there were an administrative appeal process available, an appeal would be futile because Sheriff Lopey personally confirmed to Mr. Baird that he *will not issue any* open carry licenses. (Ex. 1 at p. 4).

The statutory "may issue" language authorizes Sheriff Lopey to flagrantly and arbitrarily violate Mr. Baird's Second Amendment rights, as well as the rights of all other law-abiding residents of Siskiyou County seeking to exercise their right to open carry.

Likewise, Mr. Gallardo meets all eligibility requirements for the issuance of an open carry license – he is of good moral character, resides in Shasta County, which has a population less than 200,000 people, and has fulfilled all statutory training requirements. (See, p. 2-4 of the Declaration of Richard Gallardo as Exhibit 2 annexed to the Bellantoni Declaration).

Mr. Gallardo has applied to Shasta County Sheriff Tom Bosenko ("Sheriff Bosenko") for an open carry license on more than one occasion. (Ex. 2 at p. 3-4). Each of Mr. Gallardo's applications has been denied. The Shasta County Sheriff's Office informed Mr. Gallardo, "We don't offer a license to carry loaded and exposed in Shasta County. This type of license is only good in the county issued and we would have to extend this option to all permit holders." (Ex. 2 at p. 3-4). There is no administrative appeal process available for Mr. Gallardo to challenge Sheriff Bosenko's denial of his applications for an open carry license, but even there were, such 'process' would be futile because Sheriff Bosenko has stated publicly that he *will not issue any* "open carry" licenses. (Ex. 2 at p. 4). Sheriff Bosenko stated publicly that, to his knowledge based on his regular meetings with the Sheriffs around the State, none of the Sheriffs serving in

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

26150(b)(2) counties in California have ever issued "open carry" pistol licenses.  (Ex. 2 at p. 4-5).

By subjecting the constitutional right to open carry to the discretionary, arbitrary, and capricious decision making of governmental actors, the "may issue" language of §26150 and §26155 unlawfully implicates and burdens a core Second Amendment right and is therefore unconstitutional. See, *Heller,* 554 US at 629 citing, *Nunn v. State*, 1 Ga. 243, 251 (1846) (Georgia Supreme Court struck down a prohibition on carrying pistols openly (even though it upheld a prohibition on carrying concealed weapons); *Andrews v. State*, 50 Tenn. at 187 (Tennessee Supreme Court held that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances" violated the state constitutional provision, which the court equated with the Second Amendment, even though the statute did not restrict the carrying of long guns); *State v. Reid*, 1 Ala. 612, 616-617 (1840) ("A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional").

If the language of California's licensing statutes mandated the issuance of open carry licenses to otherwise eligible law-abiding applicants, by e.g., "shall issue" language, Sheriff Bosenko would be required to issue Mr. Gallardo an open carry license.

The "may issue" language of §26150 and §26155 and defendant Becerra's enforcement of such statutes, unlawfully burdens the Second Amendment rights of Plaintiffs and other otherwise eligible individuals in California. Based on the above, Plaintiffs have demonstrated a strong likelihood of success on the merits of their Second Amendment claims regarding the "may issue" language of Penal Codes §26150 and §26155 as applied to open carry licenses, warranting an order granting the requested injunctive relief.

iii. "Geographical Restriction" of Open Carry Licenses is Unconstitutional *Per Se*

"Individual self-defense is the central component of the Second Amendment right." *McDonald v City of Chicago*, 561 US at 767, citing, *District of Columbia v. Heller*, 554 U.S. at 599 (emphasis added) (internal quotations omitted). The Second Amendment protects the core right of the individual to self-protection. *Heller*, 554 US at 595-599, 628.

The fundamental right to self-defense is inseparable from the individual. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia v. Heller*, 554 US at 595-599. (emphasis added).

An individual does not forfeit his right to self-protection by stepping outside of his home. The right to self-protection is as great outside of one's home as it is inside the home. *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012) (holding that "[a] right to bear arms . . . implies a right to carry a loaded gun outside the home" and striking down the open-and-concealed-carry regulatory regime in Illinois because the state failed to justify "so substantial a curtailment of the right of armed self-defense"). The right of the individual to protect himself against both public and private violence was legally recognized as far back as 1689. See, *District of Columbia v Heller*, 554 at 594.

Indeed, "to confine the right to be armed to the home is to divorce the Second Amendment from the right to self-defense described in *Heller* and *McDonald*". *Moore v. Madigan*, supra.

Under Penal Codes §26150 and §26155, open carry licenses are only valid in the licensee's county of residence (the county of issuance). Thus, if an open carry licensee carries his firearm loaded and exposed in a county other than his county of residence (the county of issuance) he will be subject to criminal penalties and sanctions, up to and including imprisonment under Penal Code §25850.

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

Similarly, if an open carry licensee carries his handgun exposed and unloaded on his person, outside of the county of issuance, he will be subject to criminal penalties and sanctions, up to and including fines and imprisonment under Penal Code §26350

California's limitations on the validity of open carry licenses requires its residents to choose between exercising their fundamental right to self-protection in public or being subjected to criminal prosecution and imprisonment – a despotic choice that conditions the exercise of one fundamental right upon the surrender of the equally fundamental right to liberty and freedom.

While governmental regulations on sensitive areas, such as schools and courthouses have been upheld by the courts as presumptively lawful (see, *Heller*, 554 US at 626), California's broad and overreaching geographical limitation on the validity of open carry licenses eviscerates the fundamental right of the individual self-protection outside of the home. The fundamental right to protect one's self does not end when one steps outside of his home, nor does it end when he crosses over county lines. See, e.g., *Heller*, 554 US at 595-599 (The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body is as critical and fundamental outside of the home as it is inside of the home).

Limiting the authority of an open carry license to the county of residence and criminalizing open carry outside of one's county of residence is presumptively unlawful because it causes the individual, including Plaintiffs, to choose between exercising a constitutional right or be subject to criminal prosecution. See, e.g., *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009) (plaintiffs were injured where they were faced with the choice of signing unconstitutional agreements or facing a loss of customer goodwill and significant business).

As borne out in their respective Declarations attached as Exhibits 1 and 2 respectively, Mr. Baird and Mr. Gallardo intend to exercise their right to the open carriage of a firearm in

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

public, whether loaded or unloaded, for self-protection within their county of residence and throughout the State of California. (Ex. 1 at p. 2; Ex. 2 at p. 2).

Assuming that Plaintiffs were able to exercise their right to open carry by way of a duly issued open carry license in their respective counties, the geographical restrictions of §26150 and §26155 unlawfully restrict their lawful exercise of such right in California's remaining counties. In other words, even with an open carry license, Plaintiffs cannot truly exercise the right to open carry within the entire State of California, which they intend to do, without being subjected to criminal penalties under Penal Codes §26350 (unloaded firearm) and §25850 (loaded firearm) including incarceration, a criminal record, fines, and other sanctions. See. e.g., *Duncan v Becerra*, 265 F Supp 3d 1106, 1113 (SD Cal 2017) (Article III standing analysis recognizes that, where threatened action by government is concerned, courts do not require a plaintiff to expose himself to criminal liability before bringing suit.").

Under the present circumstances, if Plaintiffs were to exercise the right to open carry *inside* of their own counties without an open carry license, which they intend to do (Ex. 1 at p. 2; Ex. 2 at p. 2), they will be subjected to criminal penalties under Penal Codes §26350 (unloaded firearm) and §25850 (loaded firearm) including incarceration, a criminal record, fines, and other sanctions.

Plaintiffs should not have to choose between exercising their Second Amendment rights or being criminally prosecuted. Restricting the open carriage of firearms to the issuing county unlawfully violates Plaintiffs' right to self-defense. Acknowledging the exceptions on firearm possession in specific sensitive places, such as courthouses and schools, the geographical restriction on the validity of open carry licenses is unconstitutional as it unlawfully implicates and burdens a core Second Amendment right – the right of the individual to self-protection in public.

24

The Second Amendment does not protect the right to defend a particular geographical location; it protects the rights of actual, living people. The right to self-protection is attached to the individual, not some particular location – it follows you inside of your home and out into the public domain. The right identified in *Heller*, to right possess firearms for self-defense when you are in your home, does not disappear when you leave your home and enter into the public domain, nor does it terminate because you have traveled into another county.

The geographical restrictions on the validity of open carry licenses of §26150 and §26155 to the county of issuance unlawfully burden the Second Amendment rights of Plaintiffs and other otherwise eligible residents of California. Indeed, even the privilege of having a CCW license provides greater protections than the right to open carry because a CCW license is valid in the entire state [acknowledging the exception of sensitive places], but the validity of an open carry license (if one were ever issued) terminates at the county line.

Defendant Becerra's enforcement of §25850 and §26350 unlawfully criminalize the exercise of the pre-existing right to open carry, forcing Plaintiffs to choose between exercising the right or being criminally prosecuted.

Plaintiffs' right to open carry is irrefutably violated by §26150, §26155, §25850, §26350, and defendant Becerra's enforcement of said statutes. Based on the above, Plaintiffs have demonstrated a strong likelihood of success on the merits of their Second Amendment claims regarding the geographical restrictions of the open carry licenses in Penal Codes §26150 and §26155, as well as defendant Becerra's blanket elimination of the right to open carry in California, warranting an order granting the requested injunctive relief.

**E.  "Open Carry" is *De Facto* Banned in California**

The "open carry" language of Penal Codes §26150 and §26155 is illusory. The ability to actually obtain an open carry license in the State of California does not exist - open carry is not an

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

option. California Penal Code §26225 requires that a copy of all firearms licenses issued in each county (open carry and concealed carry) be "filed immediately" with the DOJ. In January 2012, California enacted Penal Code §26350, which criminalized the open carriage of an unloaded firearm.

Upon inquiry by Mr. Baird into the number of open carry licenses that have been issued in California since the passage of §26350 in 2012, copies of which are required by law to be forwarded to defendant Becerra's DOJ by every licensing authority in the state under §26225 (as are copies of every CCW license issued in the state), Mr. Baird was informed by the DOJ that they have **no records** of any open carry licenses having been issued in the State of California since 2012. (Ex. 1 at p. 10). Thus, even though Plaintiffs are statutorily precluded from applying for an open carry in a county other than their county of residence, such application would be futile because according to the official records of the DOJ, no open carry licenses have been issued in the State of California since 2012. (Ex. 1 at p. 10).

Mr. Baird has reviewed the websites of the 58 sheriff offices in the State of California. Some of the sheriff websites do not even mention firearm licensing on their home page.[4] The San Francisco, Colusa, and Alpine County Sheriff Offices home pages have no reference to carry permits at all. The remaining websites mention CCW licenses only; none of the sheriff websites mention an option to apply for an open carry license, including those counties with less than 200,000 population.  (Ex. 1 at p. 8). None of the sheriff's webs pages published readily identifiable verbatim text of §26150 or §26155 in a readily accessible manner so as to fully inform the public of the right to apply for an open carry license, as required by §26160. Even a

---

[4] http://www.alpinecountyca.gov/index.aspx?nid=204; http://www.countyofcolusa.org/index.aspx?nid=156; https://www.countyofglenn.net/dept/sheriff/welcome; https://tehamaso.org/; https://www.solanocounty.com/depts/sheriff/

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

cursory summary as required by §26160 – even mentioning the availability of the public to apply for an open carry license - would articulate to the public that there are two carry options under §26150 and §26155, which would  to enable the public to make an informed choice as to which best suits their needs, i.e., the right to open carry or the privilege of concealed carry.  (Ex. 1 at p. 8).

From the totality of the circumstances presented, defendant Becerra and the licensing authorities in the state, have intentionally engaged in a coordinated and effort to eliminate the concept of open carry from the public domain in order to exercise complete control over the public's ability to carry a firearm for self-defense. (Ex. 1 at p. 8).  In the absence of an open carry license, the government has unfettered control over all carry licensing because, as *Peruta II* made clear, CCW is not a right – it is a privilege subject to the whims of the government to which no member of the public is entitled. (Ex. 1 at p. 8).

The majority of the 58 sheriff's offices in this state provide a link on their website to an electronic portal for processing CCW applications, which does not provide an option to apply for an open carry license. The Nevada County Sheriff Office website confirms the nexus between the sheriffs and defendant Becerra's control over the licensing processes through the state's sheriff's offices:

> "California Department of Justice - Use this link to access the application process for CCW licenses."

See, https://www.mynevadacounty.com/184/Concealed-Weapon-Permits-CCW-License-to- (Ex. 1 at p. 9).

The California DOJ link provided by the Nevada County Sheriff website brings the applicant to the DOJ-created and DOJ-enforced uniform handgun application portal for applying

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

for a CCW license.[5] The DOJ provides no option to apply for an open carry license either through DOJ's electronic portal or through the California sheriff's offices where a hard-copy application is available. By controlling the type of carry license that residents can apply for, defendant Becerra has effectively eliminated the option of open carry throughout the state of California. (Ex. 1 at p. 9-10).

Every sheriff office in the state is required to use DOJ-approved firearm license applications. Neither the sheriffs of this state nor the DOJ offer an option for Californian residents to apply for an open carry license. The only carry license California residents are able to apply for is a concealed carry license. (Ex. 1 at p. 7).

Those sheriff offices and police agencies that do not utilize a paper application direct their county's applicants to an on-line application portal. The on-line application portal is provided by and/or connected to defendant Becerra's DOJ. The DOJ's on-line application portal contains no option to apply for an open carry license. The only carry license available by the DOJ is the CCW license. (Ex. 1 at p. 7-8).

The public website of the Siskiyou County Sheriff's Office only provides information related to applications for a concealed carry license/"CCW".[6] (Ex. 1 at p. 4). The Siskiyou Sheriff's handgun licensing procedure has no option for applying for an open carry license. All publications, forms, and applications provided by the Siskiyou County Sheriff for obtaining a firearm carry license relate solely to CCW licenses. Copies of the documents provided to the public by the Siskiyou County Sheriff's Office are attached to the Declaration of Mark Baird and made part of his Declaration (Ex. 1): "Concealed Carry Weapon Permits", "Instruction for CCW

---

[5] https://nevadaca.permitium.com/ccw/start
[6] https://www.co.siskiyou.ca.us/sheriff; https://www.co.siskiyou.ca.us/sheriff/page/concealed-carry-weapon-permits-ccw

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

Permit Application", "CCW Criteria and Requirements for Application", "CCW Process and Fees", "CCW New Applicant Packet", "CCW Renewal Application Form", "CCW Instructor List", "CCW Livescan Fingerprinting Form for Applicants", and "Siskiyou County Sheriff CCW Policy 218". (Ex. 1 at p. 4-5).

The Livescan Fingerprinting Form used by the Siskiyou Sheriff is form created by the California DOJ. The Livescan Form contains a section for the applicant to complete entitled, "Authorized Applicant Type"; this section is pre-populated [by the Sheriff or DOJ] to read "STANDARD CCW". In either scenario, both governmental entities endorse concealing from the public the option to apply for an open carry license. (Ex. 1 at p. 4-5).

The application for a carry license provided by the Siskiyou Sheriff but created by the DOJ, is entitled, "Standard Initial and Renewal Application for License to Carry a Concealed Weapon". (DOJ CCW Application attached to Ex. 1). Under the section, "Format of CCW License", the DOJ form confusingly indicates that a 'concealed carry weapon license' to carry 'loaded and exposed' is available to applicants living in a county having less than 200,000 people. An open carry license is not a 'type' of concealed carry license.  The DOJ application itself is titled as an application "For License to Carry a ***Concealed*** Weapon". An application to carry a concealed weapon is not, by definition, an application to carry a weapon exposed. No section of the DOJ CCW application allows the applicant to select "open carry" as an option.  (Ex. 1 at p. 5).

The revision date of the DOJ CCW License application, administered by the Siskiyou County Sheriff's Office, is January 1, 2012 – the date that Penal Code §26350 was implemented criminalizing the open carriage of unloaded firearms. (Ex. 1 at p. 5).

Neither the Siskiyou County Sheriff's Office, nor the DOJ, provide an application for an open carry license or guidance for the public to apply for an open carry license. (Ex. 1 at p. 6).

29

Penal Code §26160 provides, "Each Licensing Authority shall publish and make available a written policy summarizing the provisions of Section 26150, and subdivisions of Section 26155." Consistent with Penal Code §26160, Siskiyou Sheriff Policy No. 218 mentions the open carry license only in the context of its automatic revocation where a licensee changes residency to another county.  (Policy 218 at 218.6.3(e)). (Ex. 1 at p. 6).

Similarly, the Shasta County Sheriff's Office offers no application to apply for an open carry license. None of the documents provided to the public by the Shasta County Sheriff's Office provide a procedure for applying for an open carry license. Copies of the following documents provided by the Shasta County Sheriff's Office are attached to the Declaration of Richard Gallardo and made part of his Declaration (Ex. 2): Shasta County Sheriff's Office CCW Page, "Sheriff's Office CCW Policy", "CCW application", CCW Qualification Information", "CCW Renewal Form", "Criteria and Requirements", "Permit Application Process", "Process and Fees", CCW Instructor List", and "Personal Firearms Record". (Ex. 2).

The application for a firearm carry license provided by the Shasta County Sheriff indicates that it was created by the DOJ and is entitled, "Standard Application for CCW License". (Ex. 2). Under the section, "Format of CCW License", the DOJ form confusingly indicates that a 'concealed carry weapon license' to carry 'loaded and exposed' is available to applicants living in a county having less than 200,000 people.  An open carry license is not a 'type' of concealed carry license.  The DOJ application itself is titled as an application for a "License to Carry a Concealed Weapon (CCW)". An application to carry a concealed weapon is not, by definition, an application to carry a weapon exposed. Every page of the Shasta County application, and all attachments thereto, contain the heading "State of California, Department of Justice, Standard Application for CCW License". Nothing in the DOJ CCW application, administered by the Shasta County Sheriff's Office, provides the applicant with the ability, instructions, or guidance, to apply

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

for an "open carry" license.  The concealed carry license application is the only application provided by the Shasta County Sheriff's Office. There is no open carry license application available. (Ex. 2 at p. 6).

The California Department of Justice website does not provide to the public, and does not offer to the various sheriffs and police chiefs in the state, an application for an open carry license. Mr. Baird conducted a search of the DOJ websites but found no reference, applications, or forms regarding open carry licenses with the exception of Bureau of Security and Investigative Services ("BSIS") permits for security guards and alarm agents, which reference terms of employment. No DOJ form readily accessible to the public referenced an option to apply for an open carry license. (Ex. 1 at p. 10).

Despite the common misconception that law enforcement is required to "Serve and Protect", police officers have no duty to protect any individual from physical harm caused by a third person. Citizens have no constitutional right to be protected by the state from a violent physical attack by private third parties, absent some special relationship between the state and the victim or the criminal and the victim that distinguishes the victim from the general public. *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint where police failed to take steps to respond to the continued threats, harassment and violence by estranged husband because "there is, in general, no constitutional duty of state officials to protect members of the public at large from crime."); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th Cir 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

Because law enforcement has no duty, legal or otherwise, to protect any individual from a violent attack, each and every individual is responsible for their protecting themselves from personal harm and danger at home and in public. With no duty to protect, exclusive government

31

control over the 'privilege' to carry a firearm concealed[7], and the elimination of the protected right to open carry, the law-abiding Californian is left exposed and vulnerable to criminal conduct with no adequate equalizer. Preventing the law-abiding individual from obtaining an open carry license forces Plaintiffs and other law-abiding residents of California to either abandon their pre-existing Second Amendment right to bear arms in public for self-defense or carry their firearm openly to protect themselves without a license and risk criminal prosecution.

The Second Amendment right to bear arms for self-protection in public is *de facto* banned by defendant Becerra, and his agents, servants, employees, and those working in active concert with him through the DOJ policies and procedures, and his enforcement of Penal Codes §26150, §26155, §26350, and §25850 as they relate to the open carriage of a firearm in public, whether loaded or unloaded.

Based on the above, Plaintiffs have demonstrated a strong likelihood of success on the merits of their Second Amendment claims regarding the *de facto* prohibition of the right to open carry in the State of California, warranting an order granting the requested injunctive relief.

## II. PLAINTIFFS ARE SUFFERING, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM
## [SECOND AMENDMENT CLAIMS]

The loss of Second Amendment rights constitutes irreparable injury. *Duncan v Becerra*, 265 F Supp 3d at 1135. "The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable

---

[7] *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (Peruta II) (cert. den.).

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

injury." *Duncan*, 265 F Supp 3d at 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (DDC 2016).

California's constitutional deprivation of fundamental rights protected within the scope of the Second Amendment 'unquestionably constitutes irreparable injury'. See, e.g., *County of Santa Clara v Trump*, 250 F Supp 3d 497, 537-538 (ND Cal 2017) quoting, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013).

"There are no *de minimis* violations of the Constitution -- no constitutional harms so slight that the courts are obliged to ignore them. *Elk Grove Unified Sch. Dist. v Newdow*, 542 US 1, 36-37 (2004). Indeed, the Ninth Circuit has repeatedly held that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'. *County of Santa Clara v Trump*, 250 F Supp 3d 497, 537-538 (ND Cal 2017), quoting, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013).

Even if open carry licenses were issued by the licensing authorities, Penal Codes §26150 and §26155 should be enjoined because they deprive Plaintiffs, and all law-abiding residents of California, of the pre-existing right to protect themselves in public by way of: (a) placing the burden on the law-abiding individual (Plaintiffs) to demonstrate why the government should let them exercise the fundamental right to protect themselves outside of their homes ("good cause" requirement); (b) authorizing the government to deny the open carry applications of law-abiding individuals (Plaintiffs) ("may issue"); (c) *de facto* classifying open carry as a 'privilege' by treating open carry in the same manner as concealed carry - subject to any governmental whim and unprotected by the Second Amendment ("good cause" requirement and "may issue"); and (d) eliminating the law-abiding individual's (Plaintiffs') right to self-protection throughout each county in California ("geographical limitation" of open carry license to the county of issuance).

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

Penal Code §26350 causes irreparable harm to Plaintiffs because it severely burdens the Second Amendment right to open carry by criminalizing the open carriage of an unloaded handgun, whether on one's person, inside a vehicle, or on a vehicle, imposing penalties of imprisonment up to one year and/or fines. Thus, if an open carry licensee travels outside of his county of issuance carrying his handgun exposed and unloaded, he is committing a criminal act and is subject to incarceration and penalties.

Under the same scenario, if the handgun were loaded, the licensee would also be committing a crime and subject to incarceration and penalties under Penal Code § 25850, which also causes Plaintiffs irreparable harm by forcing them to choose between exercising their Second Amendment right to self-protection in public or being subjected to criminal prosecution.

Again, the statutorily imposed geographical restrictions complained of presume that an open carry license has been issued. Plaintiffs, and all other law-abiding residents of California, are suffering irreparable harm defendant Becerra and those acting in concert with him, provide no avenue to apply for an open carry license, and patently refuse to issue open carry licenses.

Plaintiffs will continue to suffer irreparable harm unless defendant Becerra's enforcement of the aforementioned statutes and his anti-Second Amendment policies and procedures are enjoined, because Plaintiffs are forced to choose between exercising rights protected by the Second Amendment or being prosecuted criminally under §25850 and §26350. (Ex. 1 at p. 10-11; Ex. 2 at p. 7).

The Second Amendment was created to protect the government from violating the personal and pre-existing right to protect and defend one's life. The Second Amendment shields the right to possess an equalizing force when suddenly faced with violent, armed, and/or more powerful attackers. Violent crime occurs unannounced. Criminals are predatory in nature; their choice of the time, place, and victim are intentionally designed to most benefit them. Rarely does

34

a victim have prior knowledge of an impending attack.

Law enforcement is reactive and has no legal duty to protect any individual from being the victim private violence. By the time the police arrive, the crime (rape, murder, robbery, assault) has already occurred. The victim has already suffered permanent physical and/or emotional harm. People have a basic fundamental right to possess and carry weapons for use in defense of a physical attack, which cannot be stripped away by the government.

Plaintiffs have sufficiently demonstrated the existence of irreparable harm for the ongoing and continuous Second Amendment violations described herein, warranting the issuance of an order temporarily enjoining Defendant Attorney General Xavier Becerra and his agents, servants, employees, and those working in active concert with him, from enforcing and/or giving effect to California Penal Codes §26150, §26155, §26350, and §25850 as they relate to the open carriage of a firearm in public, whether loaded or unloaded, by law-abiding residents of California, including Plaintiffs, during the pendency of this action.

**III. BALANCING THE EQUITIES FAVORS PLAINTIFFS**

"Some may fear that the right to keep and bear arms means citizens hold a right to possess a deadly implement and thus has implications for public safety, and that there is intense disagreement on the question whether the private possession of guns in the home increases or decreases gun deaths and injuries. True enough. But, public safety interests may not eviscerate the Second Amendment. The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *Duncan v Becerra*, 265 F Supp 3d 1106, 1115 (SD Cal 2017) (internal quotations omitted) citing, *McDonald v City of Chicago*, 561 U.S. 742 at 782-783 (2010) (collecting cases where those likely guilty of a crime are set free because of constitutional rights).

35

"Statutes disarming law-abiding responsible citizen gun owners reflect an opinion on gun policy. Courts are not free to impose their own policy choices on sovereign states. But as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate. Disarming California's law-abiding citizenry is not a constitutionally-permissible policy choice." *Duncan v Becerra*, 265 F Supp 3d 1106, 1128 (SD Cal 2017) (granting plaintiffs' motion for preliminary injunction, enjoining defendant Becerra and his agents, et al. "from implementing or enforcing California Penal Code sections 32310 (c) & (d), as enacted by Proposition 63, or from otherwise requiring persons to dispossess themselves of magazines able to hold more than 10 rounds lawfully acquired and possessed.").

Public safety interests may not eviscerate the Second Amendment. "The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, 561 U.S. at 783 (collecting cases where those likely guilty of a crime are set free because of constitutional rights).

Moreover, because there are criminal penalties associated with Plaintiffs' exercise of their pre-existing rights to self-protection via open carry, the balance of equities favors Plaintiffs. See, *Duncan v Becerra*, 265 F Supp 3d 1106, 1135-1136 (SD Cal 2017) ("While a preliminary injunction is pending, there will be some hardship on the State. Nevertheless, because [the statutes complained of] impose criminal sanctions for a failure to act it poses the potential for extraordinary harm on Plaintiffs, while discounting their Second Amendment rights. The balance of hardships favors Plaintiffs.").

The blatant constitutional violations committed by defendant Becerra and the licensing authorities in this state are causing irreparable harm to Plaintiffs and other law-abiding residents of California. The irreparable harm caused by defendant Becerra far outweighs any possible

36

inconvenience to him, his licensing agencies, or the state.

Granting the requested relief will not suddenly turn Plaintiffs, or any other law-abiding individual, into a public safety hazard. The requested relief will allow Plaintiffs and other law-abiding people the freedom to exercise the right to open carry, the ability to defend one's self in the face of danger, and the accompanying peace of mind it brings, particularly where the exercise of that right does not threaten criminal prosecution.

Enjoining the enforcement of the complained of statutes will force the government to adhere to the constitutional rights of its residents, as it should have done in the first instance. The government faces no actual, articulable hardship other than loss of control over the constitutionally protected rights of others. Based on the above, the balance of the hardships favors Plaintiffs.

**IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC'S INTEREST**

"Once an applicant satisfies the first two factors [likelihood of success on the merits and irreparable harm], the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." *Duncan v Becerra*, 265 F Supp 3d 1106, 1136 (SD Cal 2017) (citations omitted).

The public interest favors the exercise of Second Amendment rights by law-abiding responsible citizens. And it is always in the public interest to prevent the violation of a person's constitutional rights. *Duncan v Becerra*, 265 F Supp 3d at 1136, citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014).

At present, the pre-existing right to self-protection by the open carriage of firearms in public, attached to the law-abiding residents of California – the very public whose interests the Court is called on to consider – has been *de facto* banned. Open carry is not an option in

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

California without subjecting one's self to criminal prosecution because (1) open carry licenses are not issued and will not be issued because the government has eliminated any such option; (2) regular people cannot meet the "good cause" requirement; (3) even if available, the statutes empower licensing agencies with total discretion over whether or not to issue an open carry license ("may issue"); and (4) open carry licenses are confined to the county of issuance.

The pre-existing right to self-protection is attached to the individual law-abiding residents of California who constitute "the public".

"Defensive gun violence may be the only way a law-abiding citizen can avoid becoming a victim. Put differently, violent gun use is a constitutionally-protected means for law-abiding citizens to protect themselves from criminals. The phrase 'gun violence' may not be invoked as a talismanic incantation to justify any exercise of state power. Implicit in the concept of public safety is the right of law-abiding people to use firearms and the magazines that make them work to protect themselves, their families, their homes, and their state against all armed enemies, foreign and domestic. To borrow a phrase, it would indeed be ironic if, in the name of public safety and reducing gun violence, statutes were permitted to subvert the public's Second Amendment rights — which may repel criminal gun violence and which ultimately ensure the safety of the Republic." *Duncan v Becerra*, 265 F Supp 3d 1106, 1135 (SD Cal 2017) (granting preliminary injunction of California statute banning magazines capable of holding over 10 rounds) citing, cf. *United States v. Robel*, 389 U.S. 258, 264, 88 S. Ct. 419, 19 L. Ed. 2d 508 (1967) ("Implicit in the term 'national defense' is the notion of defending the values and ideals which set this Nation apart. . . . It would indeed be ironic if, in the name of national defense, we would sanction the subversion of one of those liberties — the freedom of association — which makes the defense of the Nation worthwhile.").

MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

Enjoining the aforementioned statutes and defendant Becerra's anti-Second Amendment policies and procedures, will greatly benefit "the public" of law-abiding Californians, including Plaintiffs. Denial of Plaintiffs' motion will ensure the continued violation of the public's Second Amendment right to the open carriage of firearms for self-protection in public, and continuing irreparable harm until the aforementioned statues are declared unconstitutional and permanently enjoined.

WHEREFORE, it is respectfully requested that Plaintiffs' motion for an order temporarily enjoining Defendant Attorney General Xavier Becerra and his agents, servants, employees, and those working in active concert with him, from enforcing and/or giving effect to California Penal Codes §26150, §26155, §26350, and §25850 as they relate to the open carriage of a firearm in public, whether loaded or unloaded, by law-abiding residents of California, including Plaintiffs, during the pendency of this action be granted in its entirety.

Dated:  July 8, 2019                            Respectfully submitted,

THE BELLANTONI LAW FIRM, PLLC

/s/ Amy L. Bellantoni, Esq.
Amy L. Bellantoni
Counsel for Plaintiffs
Email: abell@bellantoni-law.com
*Pro Hac Vice*