COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARK BAIRD and RICHARD GALLARDO, <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Attorney General of the State of California, and DOES 1-10, <br><br> Defendants. | Case No. 2:19-CV-00617-KJM-AC <br><br> **PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:　　　　　September 6, 2019 <br> Time:　　　　　10:00 a.m. <br> Courtroom:　　3 <br> Judge:　　　　Hon. Kimberly J. Mueller <br> Trial Date:　　None set <br> Action Filed:　April 9, 2019 |

# TABLE OF CONTENTS

page

Table of Authorities……………………………………………… i

Introduction…………………………………………………. 1

Factual Background…………………………………………. 2

Legal Standard……………………………………………. 2

Argument……………………………………………. 2

I. Plaintiffs Are Likely To Succeed On The Merits…………….. 2
[Second Amendment Claims]

    A.  The Right to Self-Defense is Inseparable from
the Individual…………………………………………. 2

    B.  Bearing Arms in Public for Self-Defense is a
Pre-Existing Right……………………………………. 3

    C.  The Ninth Circuit, By Default, Declared
"Open Carry" a Core Right……………………………… 4

    D. Penal Codes §26150, §26155, §25850, and §26350
Burden Conduct Protected by the Second Amendment…. 5

        i.  "Good Cause" Requirement for Open Carry
Licenses is Unconstitutional *Per Se*……………… 5

        ii.  "May Issue" Language for Open Carry
Licenses is Unconstitutional *Per Se*……………… 6

        iii. "Geographical Restriction" of Open Carry
Licenses is Unconstitutional *Per Se*……………… 9

    E.  "Open Carry" is *De Facto* Banned in California……… 11

II. Plaintiffs Are Suffering, And Will Continue To Suffer,
Irreparable Harm………………………….……………….. 15

III. Balancing The Equities Favors Plaintiffs……………………… 16

IV.  A Preliminary Injunction Is In The Public's Interest…………. 18

**TABLE OF AUTHORITIES**

**Cases**                                                    **Page(s)**

*Am. Trucking Ass'ns*, Inc. *v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ................................................................ 9-10

*Balistreri v Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988) ................................................................ 14, 19

*Bowers v. DeVito*,
686 F.2d 616 (7th Cir. 1982) ..................................................................... 14

*County of Santa Clara v Trump*,
250 F. Supp. 3d 497 (ND Cal 2017) ........................................................... 15

*District of Columbia v. Heller*,
554 US 570 (2008)................................................................... *passim*

*Drake v. Filko*,
724 F.3d 426 (3d Cir. 2013) .......................................................................4

*Duncan v Becerra*,
265 F. Supp. 3d 1106 (SD Cal 2017) ................................................ *passim*

*Elk Grove Unified Sch. Dist. v Newdow*,
542 US 1 (2004) ........................................................................................ 15

*Grace v. District of Columbia*,
187 F. Supp. 3d 124 (DDC 2016) ......................................................... 15-16

*Hernandez v Sessions*,
872 F.3d 976, 989-990 (9th Cir. 2017) ........................................................2

*Hobby Lobby Stores, Inc. v. Sebelius*,
723 F.3d 1114 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) ..........................................................18

*Kachalsky v County of Westchester*,
701 F.3d 81 (2d Cir. 2012) .........................................................................4

*Ketchum v County of Alameda*,
811 F.2d 1243 (9th Cir. 1987) ................................................................... 14

*Martinez v. California*,
444 US 277 (1980) ......................................................................................14

*McDonald v City of Chicago*,
561 US 742 (2010) .............................................................................3, 5, 17

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ....................................................................15

*Moore v Madigan*,
  702 F.3d 933 (7th Cir. 2012) ........................................................................................ 3, 4, 9

*Muscarello v. United States*,
  524 U.S. 125 (1998) ...................................................................................................... 3

*Nunn v. State*,
  1 Ga. 243 (1846) ........................................................................................................... 8

*Peruta v County of San Diego*,
  742 F.3d 1144 (9th Cir 2014) vacated by, rehearing, en banc, granted by *Peruta v. County of
  San Diego*, 781 F.3d 1106 (9th Cir 2015) (*Peruta I*) .......................................... 3, 5

*Peruta v County of San Diego*,
  824 F.3d 919 (9th Cir. 2016) (en banc) (cert. den.) (*Peruta II*) ...................... *passim*

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) ....................................................................................15

*State v. Reid*,
  1 Ala. 612 (1840) ...........................................................................................................9

*United States v. Cruikshank*,
  92 US 542 (1876) ...........................................................................................................2

*United States v. Robel*,
  389 US 258 (1967) ........................................................................................................20

*Wrenn v. District of Columbia*,
  864 F.3d 650 (DC Cir. 2017) .........................................................................................6

**Statutes**

California Penal Code §26225 ......................................................................................11

California Penal Code §32310 (c) & (d) .......................................................................17

California Penal Code §26160 .................................................................................... 11

California Penal Code §26350 .............................................................................. *passim*

California Penal Code §25850 .............................................................................. *passim*

California Penal Code §26150 .............................................................................. *passim*

California Penal Code §26155 .............................................................................. *passim*

California Penal Code §26165 ........................................................................................7

**Other**

*An Analytical Framework and a Research Agenda*,
  56 UCLA L. Rev. 1443, 1515 (2009) ........................................................................ 3

*Black's Law Dictionary*
  214 (6th ed. 1998) ........................................................................................................ 3

**INTRODUCTION**

California Penal Codes §26150, §26155, §25850, and §26350, enacted by the State of California, and enforced by Defendant Xavier Becerra in his official capacity as the Attorney General of the State of California, his agents, servants, employees, and those working in active concert with him, violate Plaintiffs' Second Amendment right to the open carriage of a firearm for self-protection in public.

In *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (*Peruta II*) (cert. den.) the Ninth Circuit held that the Second Amendment did not protect *in any degree* the right to carry concealed firearms in public; thus, any prohibition or restriction a state might choose to impose on concealed carry, including a requirement of "good cause" was necessarily allowed by the Second Amendment. *Id.* The removal of concealed carry from the scope of Second Amendment protections, by default, identifies open carry as the protected right to "bear arms" enumerated by our founding father. A contrary view would irrationally eviscerate 50% of Second Amendment protected activity.

California Penal Codes §26150 and §26155 unconstitutionally infringe upon the pre-existing right of Plaintiffs, and other law-abiding residents of California, by *inter alia,*[1] (i) requiring "good cause" for the issuance of an open carry license; (ii) containing "may issue" language empowering the licensing authorities to deny open carry applications to otherwise eligible applicants, such as Plaintiffs; and (iii) restricting open carry licenses to one county.

Plaintiffs are law-abiding residents of California prevented from exercising their right to open carry by the language of the above statutes, defendant Becerra's enforcement of the statutes, and his *de facto* ban on open carry in the State of California, as discussed below. If Plaintiffs were

---

[1] The complained of statutes violate other fundamental, pre-existing rights as detailed in Plaintiffs' Complaint for Declaratory and Injunctive Relief. Plaintiffs assert that constitutional violations not relied upon herein likewise establish their entitlement to the injunctive relief requested.

to exercise their right to open carry, they would be subject to criminal prosecution under Penal Codes §25850 and §26350, thus they cannot exercise of their right to bear arms without threat of criminal prosecution. Without the requested injunctive relief, Plaintiffs will continue to suffer irreparable harm.

## FACTUAL BACKGROUND
## LEGAL STANDARD

In order to obtain a preliminary injunction a plaintiff must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Hernandez v Sessions*, 872 F3d 976, 989-990 (9th Cir 2017) (internal quotations and citations omitted). Under our "sliding scale" approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *Id.* (citations and quotations omitted).

## ARGUMENT

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS
   [SECOND AMENDMENT CLAIMS]

### A.  The Right to Self-Defense is Inseparable from the Individual

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L. Ed. 588 (1876), '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares

AMENDED MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PRELIMINARY INJUNCTION

that it *shall not be infringed…" District of Columbia v Heller*, 554 US at 592 (emphasis in the original).

**B. Bearing Arms in Public for Self-Defense is a Pre-Existing Right**

The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental outside of the home as it is inside of the home. See, *District of Columbia v. Heller*, 554 US at 595-599; *McDonald v City of Chicago*, 561 US 742, 776; see also, *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012) (An individual does not forfeit his right to self-protection by stepping outside of his home. The right to self-protection is as great outside of one's home as it is inside the home.).

Were the right to bear arms restricted to the home, the language "bear arms" would be rendered superfluous. "At the time of the founding, as now, to 'bear' meant to 'carry'." *District of Columbia v Heller*, 554 U.S. at 584. The 'natural meaning of 'bear arms' was the one that Justice Ginsburg provided in her dissent in *Muscarello v. United States*, 524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998): to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584 (quoting *Muscarello*, 524 U.S. at 143, 118 S. Ct. 1911) (Ginsburg, J., dissenting) (quoting Black's Law Dictionary 214 (6th ed. 1998)).

Both *Heller* and *McDonald* identify the "core component" of the Second Amendment right as self-defense, "which necessarily takes place wherever a person happens to be, whether in a back alley or on the back deck." *Peruta v County of San Diego*, 742 F3d 1144, 1154 (9th Cir 2014) vacated by, rehearing, en banc, granted by *Peruta v. County of San Diego*, 781 F.3d 1106 (9th Cir 2015) (*Peruta I*) citing, Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009); see also *Moore v Madigan*, 702 F.3d at 937 ("To confine the right to be armed to the

3

home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald*.").

The Second Amendment right to bear arms "could not rationally have been limited to the home." *Moore v Madigan*, 702 F.3d at 936. Though people may "keep Arms" (or, per *Heller's* definition, "have weapons", 554 U.S. at 582) in the home for defense of self, family, and property, they are more sensibly said to "bear Arms" (or, *Heller's* gloss: "carry [weapons] . . . upon the person or in the clothing or in a pocket") in nondomestic settings. *Peruta I* at 1153 citing, *Kachalsky v County of Westchester*, 701 F3d 81, 89 n.10 (2d Cir 2012) ("The plain text of the Second Amendment does not limit the right to bear arms to the home."); see also, *Drake v. Filko*, 724 F.3d 426, 444 (3d Cir. 2013) (Hardiman, J., dissenting) ("To speak of bearing arms solely within one's home not only would conflate 'bearing' with 'keeping', in derogation of the Court's holding that the verbs codified distinct rights, but also would be awkward usage given the meaning assigned the terms by the Supreme Court.") (internal quotations omitted).

### C. The Ninth Circuit, By Default, Declared "Open Carry" a Core Right

Carrying a firearm in public for self-protection can be exercised in two modalities: concealed carry and open carry. By holding that concealed carry was a privilege, not a protected right, the Ninth Circuit removed concealed carry from the scope of Second Amendment protected conduct. *Peruta v County of San Diego*, 824 F3d 939 (9th Cir 2016) (*Peruta II*).

As bearing arms in public for self-defense is a pre-existing right codified in the Second Amendment, open carry [the only remaining method of bearing arms in public] necessarily falls within the scope of its protections. After *Peruta II*, viewing open carry as anything less than a core Second Amendment right would be intellectually dishonest. A plain reading of the Second Amendment: "…the right of the people to…bear arms shall not be infringed" so demonstrates. If both open carry and concealed carry are a mere 'privilege', the law-abiding individual is left in

4

exactly the position that the Bill of Rights was created to prevent - at the mercy of the government, with no right to self-protection outside of one's home.

**D. Penal Codes §26150, §26155, §25850, and §26350 Burden Conduct Protected by the Second Amendment**

A statute which, under the pretense of 'regulating' fundamental rights, amounts to a destruction of that right is clearly unconstitutional. *District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) (internal quotations omitted). The Second Amendment right to keep and bear arms for the purpose of individual self-defense is fully applicable to the states. *McDonald v City of Chicago*, 561 US 742 (2010).

California Penal Codes §26150, §26155, §26350, and §25850 place an unconstitutional burden on the pre-existing rights of Plaintiffs, and all law-abiding residents of California, to the open carriage of firearms in public for self-protection.

      i. "Good Cause" Requirement for Open Carry Licenses is Unconstitutional *Per Se*

California Penal Codes §26150 and §26155 require a showing of "good cause" before a license to carry a firearm may issue – the burden is the same for the issuance of a concealed carry license ("CCW") or an open carry license. Penal Codes §26150 and §26155 permit the licensing authority to define "good cause" as they choose.

"Good cause" is generally defined in the Ninth Circuit as "demonstrating a need for self-protection that is greater than the average person, requiring documented threats of violence that establish the applicant is a target and at risk for specific harm." See, *Peruta v County of San Diego*, 742 F3d 1144, 1193 (9th Cir 2014) (San Diego County's "good cause" requirement only allows issuance only to individuals who will most likely need to defend themselves in public to carry a handgun).

The *Peruta II* decision upheld California's "good cause" requirement for concealed carry licenses based on their view that CCW was only a privilege. *Peruta v County of San Diego*, 824

5

F3d at 939 (*Peruta II)* ("any prohibition or restriction a state may choose to impose on concealed carry - including a requirement of good cause, however defined - is necessarily allowed by the [Second] Amendment.").

Tethering the burden of proving "good cause" to the protected right to open carry is an unconstitutional burden. The law-abiding person cannot be forced to prove their entitlement to exercise a pre-existing right. The right to bear arms for self-protection in public is attached to every law-abiding individual. See, e.g., *District of Columbia v. Heller*, 554 US at 619, *citing,* J. Ordronaux, Constitutional Legislation in the United States 241-242 (1891) ("It was not necessary that the right to bear arms should be granted in the Constitution, for it had always existed.").

The "good cause" requirement also amounts to a total ban on open carry licenses because it requires law-abiding individuals to distinguish themselves from every other law-abiding person. The burden to show "good cause" can rarely be established because most members of the general public have not had specific threats made against them, are not engaged in dangerous employment, and do not transport large sums of money in the course of their occupation. Indeed, the general public does not have a 'crystal ball' to identify when and how they are going to become a victim of a violent criminal attack. See, e.g., *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (DC Cir 2017) ("…the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen.").

ii. "May Issue" Language for Open Carry Licenses is Unconstitutional *Per Se*

The "may issue" language of Penal Codes §26150 and §26155 empower licensing authorities with complete discretion to deny requests for an open carry license to otherwise eligible individuals.[2]

---

[2] Under §26150 and §26155, the sheriff or chief of police, respectively, "may issue" an open carry license upon proof

The Bill of Rights does not *give* any rights to the people; it was created to protect pre-existing rights from government interference. The government is not "free to impose [its] own policy choices" on the public… as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate. Disarming California's law-abiding citizenry is not a constitutionally-permissible policy choice." See, *Duncan v Becerra*, 265 F Supp 3d 1106, 1128 (SD Cal 2017).

Where an individual meets the requirements[3] of §26150 and §26155, there is no further governmental determination to be made. Permitting the government to strip a law-abiding person of a Second Amendment right unlawfully burdens the right to bear arms. The "may issue" language of §26150 and §26155 emboldens arrogance and instils unfettered discretion in the licensing authority to abrogate the basic, fundamental right to self-protection.

Mr. Baird meets the eligibility requirements for the issuance of an open carry license – he is of good moral character, resides in Siskiyou County with a population less than 200,000 people, and has fulfilled all training requirements. (See, p. 2-4 of the Declaration of Mark Baird as Exhibit 1 annexed to the Declaration of Amy L. Bellantoni). Mr. Baird applied to Siskiyou County Sheriff Jon Lopey ("Sheriff Lopey") for an open carry license on more than one occasion. Each of his requests was denied in spite of the fact that Mr. Baird is a law-abiding individual who meets all other statutory criteria. Sheriff Lopey informed Mr. Baird that he will not issue any open carry licenses. (Ex. 1 at p. 2-5). The Siskiyou County Sheriff's Office does not even have an open carry license application or a procedure for applying for an open carry license. (Ex. 1 at p. 2-5 and annexed exhibits). There is no administrative appeal process available for challenging

---

that the applicant meets all of the following: (1) is of good moral character; (2) 'good cause' exists for issuance of the license; (3) meets the residential requirements; (4) has completed a course of training as described in Section 26165; and (5) lives in a county with a population less than 200,000. The open carry license, however, is only valid in the county of issuance.

[3] Plaintiffs accept for purposes of this motion, but do not generally concede and specifically reserve their right to challenge, the "moral character" and residency requirements of the above statutes.

Sheriff Lopey's denial of Mr. Baird's open carry applications. Even if there were an administrative appeal process available, an appeal would be futile because Sheriff Lopey personally confirmed to Mr. Baird that he *will not issue any* open carry licenses. (Ex. 1 at p. 4).

Likewise, Mr. Gallardo meets all eligibility requirements for the issuance of an open carry license – he is of good moral character, resides in Shasta County, which has a population less than 200,000 people, and has fulfilled all statutory training requirements. (See, p. 2-4 of the Declaration of Richard Gallardo as Exhibit 2 annexed to the Bellantoni Declaration).

Mr. Gallardo has requested an open carry license from Shasta County Sheriff Tom Bosenko ("Sheriff Bosenko") on more than one occasion and has been denied each time. (Ex. 2 at p. 3-4). The Shasta County Sheriff's Office informed Mr. Gallardo, "We don't offer a license to carry loaded and exposed in Shasta County. This type of license is only good in the county issued and we would have to extend this option to all permit holders." (Ex. 2 at p. 3-4). There is no administrative appeal process available for Mr. Gallardo to challenge Sheriff Bosenko's denial of his applications for an open carry license, but even there were, such 'process' would be futile. Sheriff Bosenko has stated publicly that he *will not issue any* "open carry" licenses, and that, to his knowledge based on his regular meetings with the Sheriffs around the State, none of the Sheriffs serving in 26150(b)(2) counties in California have ever issued "open carry" pistol licenses. (Ex. 2 at p. 4-5).

The "may issue" language of §26150 and §26155 unlawfully implicates and burdens a core Second Amendment right and is therefore unconstitutional. See, *Heller,* 554 US at 629 citing, *Nunn v. State*, 1 Ga. 243, 251 (1846) (Georgia Supreme Court struck down a prohibition on carrying pistols openly (even though it upheld a prohibition on carrying concealed weapons); *Andrews v. State*, 50 Tenn. at 187 (Tennessee Supreme Court held that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances"

8

violated the state constitutional provision, which the court equated with the Second Amendment, even though the statute did not restrict the carrying of long guns); *State v. Reid*, 1 Ala. 612, 616-617 (1840) ("A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional").

### iii. "Geographical Restriction" of Open Carry Licenses is Unconstitutional *Per Se*

The right of the individual to protect himself against both public and private violence was legally recognized as far back as 1689. See, *District of Columbia v Heller*, 554 at 594. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia v. Heller*, 554 US at 595-599. (emphasis added). "[T]o confine the right to be armed to the home is to divorce the Second Amendment from the right to self-defense described in *Heller* and *McDonald*". *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012) (holding that "[a] right to bear arms . . . implies a right to carry a loaded gun outside the home" and striking down the open-and-concealed-carry regulatory regime in Illinois because the state failed to justify "so substantial a curtailment of the right of armed self-defense").

Penal Codes §26150 and §26155 restrict the validity of open carry licenses to the county of issuance. Thus, if an open carry licensee openly carries his firearm, loaded or unloaded, outside of the geographical boundaries of his county, he will be subject to criminal penalties and sanctions, up to and including imprisonment under Penal Codes §25850 and/or §26350.

Limiting the authority of an open carry license to the county of residence and criminalizing open carry outside of one's county of residence is presumptively unlawful because it causes the individual, including Plaintiffs, to choose between exercising a constitutional right or be subject to criminal prosecution. See, e.g., *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559

9

F.3d 1046, 1058-59 (9th Cir. 2009) (plaintiffs were injured where they were faced with the choice of signing unconstitutional agreements or facing a loss of customer goodwill and significant business).

Mr. Baird and Mr. Gallardo intend to exercise their right to the open carriage of a firearm in public, whether loaded or unloaded, with or without an open carry license, for self-protection within their county of residence and in throughout the State of California. (Ex. 1 at p. 2; Ex. 2 at p. 2). Even if an open carry license was issued to each Plaintiff, the geographical restrictions of §26150 and §26155 unlawfully infringe upon the lawful exercise of their Second Amendment rights because their right to self-defense in the remaining counties of California could not be exercised without the threat of criminal prosecution under Penal Codes §26350 (unloaded firearm) and §25850 (loaded firearm) including incarceration, a criminal record, fines, and other sanctions. See. e.g., *Duncan v Becerra*, 265 F Supp 3d 1106, 1113 (SD Cal 2017) (Article III standing analysis recognizes that, where threatened action by government is concerned, courts do not require a plaintiff to expose himself to criminal liability before bringing suit.").

Plaintiffs' exercise of their right to open carry *inside* of their own counties in the absence of an open carry license, which they intend to do (Ex. 1 at p. 2; Ex. 2 at p. 2), likewise subjects them criminal penalties under Penal Codes §26350 and §25850.

The geographical limitations open carry licenses force a despotic choice that conditions the exercise of the right to self-defense upon the surrender of the equally fundamental right to liberty and freedom. Even the concealed carry license – a mere privilege - provides greater self-defense protections than the right to open carry because a CCW license is valid in the entire state [except in sensitive places], but validity of the open carry license terminates at the county line.

The Second Amendment right to self-protection is attached to the individual, not some particular place or building. The right to self-defense while inside of one's home identified in

*Heller* does not disappear when you exit your home, nor does it end by crossing the county line.

### E. "Open Carry" is *De Facto* Banned in California

The "open carry" language of Penal Codes §26150 and §26155 is illusory because the ability to obtain an open carry license has been *de facto* eliminated by defendant Becerra.

California Penal Code §26225 requires that a copy of all firearms licenses issued in each county (open carry and concealed carry) be "filed immediately" with the Attorney General's Office DOJ. The DOJ has **no records** of any open carry licenses having been issued in the State of California since 2012 (Ex. 1 at p. 10), when California enacted Penal Code §26350 criminalizing the open carriage of an unloaded firearm.

Under Penal Code §26175, every sheriff office in the state is required to use forms approved by the Attorney General for firearm licenses and applications for amendments to licenses, which shall be "uniform throughout the state". Neither the sheriffs nor the DOJ offer any form to apply for an open carry license. The only carry license available to California residents is a concealed carry license. (Ex. 1 at p. 7). Mr. Baird has reviewed the websites of the 58 sheriff offices in the State of California. The San Francisco, Colusa, and Alpine County Sheriff Offices home pages have no reference to carry permits at all. [4] The remaining websites mention CCW licenses only; none of the sheriff websites mention an option to apply for an open carry license, including those counties with less than 200,000 population. (Ex. 1 at p. 8). None of the sheriff's webs pages published readily identifiable verbatim text of §26150 or §26155 in a readily accessible manner so as to fully inform the public of the right to apply for an open carry license, as required by §26160. Thus, the general public is unaware that there is an option for apply for an

---

[4] http://www.alpinecountyca.gov/index.aspx?nid=204; http://www.countyofcolusa.org/index.aspx?nid=156; https://www.countyofglenn.net/dept/sheriff/welcome; https://tehamaso.org/; https://www.solanocounty.com/depts/sheriff/

open carry license. (Ex. 1 at p. 8).

The majority of the 58 sheriff's offices in this state provide a link on their website to an electronic portal for processing CCW applications, which does not provide an option to apply for an open carry license. (Ex. 1 at p. 7-8). The Nevada County Sheriff Office website confirms the nexus between the sheriffs and defendant Becerra's control over the licensing processes through the state's sheriff's offices:

> "California Department of Justice - Use this link to access the application process for CCW licenses."

See, https://www.mynevadacounty.com/184/Concealed-Weapon-Permits-CCW-License-to-(Ex. 1 at p. 9).

The California DOJ link brings the applicant to the DOJ-created and enforced uniform handgun application portal for applying for a CCW license,[5] which contains no option to apply for an open carry license. By controlling the type of carry license that residents can apply for, defendant Becerra has effectively eliminated the option of open carry throughout the state of California. (Ex. 1 at p. 9-10).

The public website of the Siskiyou County Sheriff's Office only provides information related to applications for a concealed carry license/"CCW".[6] (Ex. 1 at p. 4). The Siskiyou Sheriff's handgun licensing procedure has no option for applying for an open carry license, all publications, forms, and applications relate solely to CCW licenses. Copies of the documents provided to the public by the Siskiyou County Sheriff's Office are attached to the Declaration of Mark Baird and made part of his Declaration (Ex. 1): "Concealed Carry Weapon Permits", "Instruction for CCW Permit Application", "CCW Criteria and Requirements for Application",

---

[5] https://nevadaca.permitium.com/ccw/start
[6] https://www.co.siskiyou.ca.us/sheriff; https://www.co.siskiyou.ca.us/sheriff/page/concealed-carry-weapon-permits-ccw

"CCW Process and Fees", "CCW New Applicant Packet", "CCW Renewal Application Form", "CCW Instructor List", "CCW Livescan Fingerprinting Form for Applicants", and "Siskiyou County Sheriff CCW Policy 218". (Ex. 1 at p. 4-5).

The Livescan Fingerprinting Form used by the Siskiyou Sheriff is form created by the California DOJ. The Livescan Form contains a section for the applicant to complete entitled, "Authorized Applicant Type"; this section is pre-populated [by the Sheriff or DOJ] to read "STANDARD CCW". In either scenario, both governmental entities endorse concealing from the public the option to apply for an open carry license. (Ex. 1 at p. 4-5).

The Siskiyou Sheriff carry license application created by the DOJ is entitled, "Standard Initial and Renewal Application for License to Carry a Concealed Weapon". (DOJ CCW Application attached to Ex. 1). Under the section, "Format of CCW License", the DOJ form confusingly indicates that a 'concealed carry weapon license' to carry 'loaded and exposed' is available to applicants living in a county having less than 200,000 people.  An open carry license is not a 'type' of concealed carry license.  The DOJ application itself is titled as an application "For License to Carry a ***Concealed*** Weapon". An application to carry a concealed weapon is not, by definition, an application to carry a weapon exposed, and no section of the DOJ CCW application allows the applicant to select "open carry" as an option.  (Ex. 1 at p. 5).

The revision date of the DOJ CCW License application, administered by the Siskiyou County Sheriff's Office, is January 1, 2012 – the date that Penal Code §26350 was implemented criminalizing the open carriage of unloaded firearms. (Ex. 1 at p. 5).

Similarly, the Shasta County Sheriff's Office offers no application to apply for an open carry license. None of the documents provided to the public by the Shasta County Sheriff's Office provide a procedure for applying for an open carry license. Copies of the following documents provided by the Shasta County Sheriff's Office are attached to the Declaration of Richard

Gallardo and made part of his Declaration (Ex. 2): Shasta County Sheriff's Office CCW Page, "Sheriff's Office CCW Policy", "CCW application", CCW Qualification Information", "CCW Renewal Form", "Criteria and Requirements", "Permit Application Process", "Process and Fees", CCW Instructor List", and "Personal Firearms Record". (Ex. 2).

Shasta County uses a DOJ created application entitled, "Standard Application for CCW License". (Ex. 2). Under the section, "Format of CCW License", the DOJ form confusingly indicates that a 'concealed carry weapon license' to carry 'loaded and exposed' is available to applicants living in a county having less than 200,000 people, however, an open carry license is not a 'type' of concealed carry license. Nothing in the DOJ's application provides the applicant with the ability, instructions, or guidance, to apply for an "open carry" license. The concealed carry license application is the only application provided by the Shasta County Sheriff's Office. There is no open carry license application available. (Ex. 2 at p. 6).

The California Department of Justice website does not provide to the public with any reference to, forms, or application for an open carry license with the exception of Bureau of Security and Investigative Services ("BSIS") permits for security guards and alarm agents, which reference terms of employment. (Ex. 1 at p. 10).

Law enforcement has no constitutional duty to protect members of the public at large from crime. *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint where police failed to take steps to respond to the continued threats, harassment and violence by estranged husband); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th Cir 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982). As such, every individual is responsible for their protecting themselves from personal harm and danger at home and in public. With no

duty to protect, exclusive government control over the 'privilege' to carry a firearm concealed[7],

and the elimination of the protected right to open carry, the law-abiding Californian is left

exposed and vulnerable to criminal conduct with no adequate equalizer.

The Second Amendment right to open carry for self-protection in public is *de facto*

banned by defendant Becerra, and his agents, servants, employees, and those working in active

concert with him through the DOJ policies and procedures.

Based on the above, Plaintiffs have demonstrated a strong likelihood of success on the

merits of their Second Amendment claims under all complained-of legal theories.

## II. PLAINTIFFS ARE SUFFERING, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM
## [SECOND AMENDMENT CLAIMS]

"There are no *de minimis* violations of the Constitution -- no constitutional harms so slight

that the courts are obliged to ignore them. *Elk Grove Unified Sch. Dist. v Newdow*, 542 US 1, 36-

37 (2004). Indeed, the Ninth Circuit has repeatedly held that the deprivation of constitutional

rights 'unquestionably constitutes irreparable injury'. *County of Santa Clara v Trump*, 250 F

Supp 3d 497, 537-538 (ND Cal 2017), quoting, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

Cir. 2012); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013).

The loss of Second Amendment rights constitutes irreparable injury. *Duncan v Becerra*,

265 F Supp 3d at 1135. "The right to keep and bear arms protects tangible and intangible interests

which cannot be compensated by damages…The right to bear arms enables one to possess not

only the means to defend oneself but also the self-confidence — and psychic comfort — that

comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the

physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable

injury." *Duncan*, 265 F Supp 3d at 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d

---

[7] *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (Peruta II) (cert. den.).

124, 150 (DDC 2016).

Defendant Becerra's enforcement of Penal Codes §26150, §26155, §26350, and §25850, as well as his *de facto* ban on the issuance of open carry licenses unconstitutionally burden Plaintiffs' Second Amendment right to bear arms in public for self-defense, forcing them to choose between exercising their Second Amendment rights and criminal prosecution. Plaintiffs have been, and will continue to suffer, irreparable harm without the requested injunctive relief.

Plaintiffs would continue to suffer irreparable harm even if open carry licenses were issued because the same burdens and restrictions would exist when Plaintiffs are required to renew their open carry licenses. Penal Codes §26350 and §25850 cause irreparable harm to Plaintiffs because they severely burden Plaintiffs' Second Amendment right to open carry by criminalizing the open carriage of a handgun, whether loaded or unloaded, by law-abiding persons otherwise eligible for the issuance of an open carry license, whether on one's person, inside a vehicle, or on a vehicle, imposing penalties of imprisonment up to one year and/or fines.

Defendant Becerra and those acting in concert with him are causing irreparable harm to Plaintiffs by preventing the application for, and issuance of, open carry licenses. Such harm will continue absent the requested relief. (Ex. 1 at p. 10-11; Ex. 2 at p. 7).

**III. BALANCING THE EQUITIES FAVORS PLAINTIFFS**

"Some may fear that the right to keep and bear arms means citizens hold a right to possess a deadly implement and thus has implications for public safety, and that there is intense disagreement on the question whether the private possession of guns in the home increases or decreases gun deaths and injuries. True enough. But, public safety interests may not eviscerate the Second Amendment. The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same

category." *Duncan v Becerra*, 265 F Supp 3d 1106, 1115 (SD Cal 2017) (internal quotations omitted) citing, *McDonald v City of Chicago*, 561 U.S. 742 at 782-783 (2010) (collecting cases where those likely guilty of a crime are set free because of constitutional rights).

"Statutes disarming law-abiding responsible citizen gun owners reflect an opinion on gun policy. Courts are not free to impose their own policy choices on sovereign states. But as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate. Disarming California's law-abiding citizenry is not a constitutionally-permissible policy choice." *Duncan v Becerra*, 265 F Supp 3d 1106, 1128 (SD Cal 2017) (granting plaintiffs' motion for preliminary injunction, enjoining defendant Becerra and his agents, et al. "from implementing or enforcing California Penal Code sections 32310 (c) & (d), as enacted by Proposition 63, or from otherwise requiring persons to dispossess themselves of magazines able to hold more than 10 rounds lawfully acquired and possessed.").

Public safety interests may not eviscerate the Second Amendment. "The right to keep and bear arms [ ] is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, 561 U.S. at 783 (collecting cases where those likely guilty of a crime are set free because of constitutional rights).

Because there are criminal penalties associated with Plaintiffs' exercise of their pre-existing rights to self-protection via open carry, the balance of equities favors Plaintiffs. See, *Duncan v Becerra*, 265 F Supp 3d 1106, 1135-1136 (SD Cal 2017) ("While a preliminary injunction is pending, there will be some hardship on the State. Nevertheless, because [the statutes complained of] impose criminal sanctions for a failure to act it poses the potential for extraordinary harm on Plaintiffs, while discounting their Second Amendment rights. The balance of hardships favors Plaintiffs.").

17

Moreover, the *per se* irreparable harm caused to Plaintiffs, and all other law-abiding residents of California, by the aforementioned Second Amendment violations, far outweighs any possible inconvenience to defendant Becerra, his licensing agencies, or the state. The requested relief will allow Plaintiffs and other law-abiding people the freedom to exercise the right to open carry, the ability to defend one's self in the face of danger, and the accompanying peace of mind it brings, particularly where the exercise of that right does not threaten criminal prosecution.

Enjoining the enforcement of the complained of statutes will force the government to adhere to the constitutional rights of its residents, as it should have done in the first instance. The government faces no actual, articulable hardship other than loss of control over the constitutionally protected rights of others. Based on the above, the balance of the hardships favors Plaintiffs.

**IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC'S INTEREST**

"Once an applicant satisfies the first two factors [likelihood of success on the merits and irreparable harm], the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." *Duncan v Becerra*, 265 F Supp 3d 1106, 1136 (SD Cal 2017) (citations omitted).

The public interest favors the exercise of Second Amendment rights by law-abiding responsible citizens. And it is always in the public interest to prevent the violation of a person's constitutional rights. *Duncan v Becerra*, 265 F Supp 3d at 1136, citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014).

The Second Amendment was created to protect the government from violating the personal and pre-existing right to protect and defend one's life; it shields the right to possess an equalizing force when suddenly faced with an unannounced, violent, armed, and/or more

18

powerful attackers. Criminals are predatory; their choice of the time, place, and victim are intentionally designed to most benefit them. Rarely does a victim have prior knowledge of an impending attack.

Law enforcement is reactive and has no legal duty to protect the public from crime. *Balistreri v Pacifica Police Dept.*, supra. By the time the police arrive, the crime (rape, murder, robbery, assault) has already occurred and the victim has already been harmed.

The pre-existing right to self-protection in public is attached to Plaintiffs and all other law-abiding residents of California – the very "public" whose interests the Court is called on to consider. The rights of the public are affirmatively being violated.

A preliminary injunction is *de facto* in the public's best interests because it will unburden and restore the right of all law-abiding residents of Californian to choose whether or not to openly carry a firearm in public for self-protection without the threat of being criminally prosecuted for exercising that pre-existing right.

The law-abiding public is presently disenfranchised from exercising the right to bear arms for self-protection in public without threat of criminal prosecution because (1) open carry licenses are not issued and will not be issued because the defendant Becerra has eliminated any such option; (2) general law-abiding members of society cannot meet the "good cause" requirement; (3) even if open carry is an available option, the licensing agencies have complete discretion to deny the request ("may issue"); and (4) the public is left vulnerable and defenseless outside of their county of residence.

"Defensive gun violence may be the only way a law-abiding citizen can avoid becoming a victim. Put differently, violent gun use is a constitutionally-protected means for law-abiding citizens to protect themselves from criminals. The phrase 'gun violence' may not be invoked as a talismanic incantation to justify any exercise of state power. Implicit in the concept of public

19

safety is the right of law-abiding people to use firearms and the magazines that make them work to protect themselves, their families, their homes, and their state against all armed enemies, foreign and domestic. To borrow a phrase, it would indeed be ironic if, in the name of public safety and reducing gun violence, statutes were permitted to subvert the public's Second Amendment rights — which may repel criminal gun violence and which ultimately ensure the safety of the Republic." *Duncan v Becerra*, 265 F Supp 3d 1106, 1135 (SD Cal 2017) (granting preliminary injunction of California statute banning magazines capable of holding over 10 rounds) citing, cf. *United States v. Robel*, 389 U.S. 258, 264, 88 S. Ct. 419, 19 L. Ed. 2d 508 (1967) ("Implicit in the term 'national defense' is the notion of defending the values and ideals which set this Nation apart. . . . It would indeed be ironic if, in the name of national defense, we would sanction the subversion of one of those liberties — the freedom of association — which makes the defense of the Nation worthwhile.").

WHEREFORE, it is respectfully requested that Plaintiffs' motion for an order temporarily enjoining Defendant Attorney General Xavier Becerra and his agents, servants, employees, and those working in active concert with him, from enforcing and/or giving effect to California Penal Codes §26150, §26155, §26350, and §25850 relating to the open carriage of a firearm in public, loaded or unloaded, by law-abiding residents of California, including Plaintiffs, during the pendency of this action be granted in its entirety.

Dated: July 11, 2019                                    Respectfully submitted,

                                                        THE BELLANTONI LAW FIRM, PLLC

                                                        /s/ Amy L. Bellantoni, Esq.
                                                        Amy L. Bellantoni
                                                        Counsel for Plaintiffs
                                                        Email: abell@bellantoni-law.com
                                                        *Pro Hac Vice*