COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BAIRD and RICHARD GALLARDO,<br><br>   Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California, and DOES 1-10,<br><br>   Defendants. | Case No. 2:19-CV-00617-KJM-AC<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   October 8, 2019<br>Time:   10:00 a.m.<br>Courtroom:  3<br>Judge:   Hon. Kimberly J. Mueller<br>Trial Date:  None set<br>Action Filed:  April 9, 2019 |

# TABLE OF CONTENTS

                                                                        **page**

Table of Authorities……………………………………….  i

I. DEFENDANT CONCEDES OPEN CARRY IS BANNED………  1

II. HELLER SPECIFICALLY RECOGNIZED THE
RIGHT TO PUBLIC CARRY……………………………………..  1

III. STATUTORY EXEMPTIONS DO NOT SHIELD
CRIMINAL PROSECUTION…………………………………..  2

IV. CALIFORNIA'S 164-YEAR TRADITION OF
UNREGULATED OPEN CARRY……………………………..  4

V. CONSTITUTIONAL DEPRIVATIONS CONSTITUTE
IRREPARABLE INJURY………………………………………  4

VI. DEFENDANT MISREPRESENTS HISTORY,
CASELAW, AND STATUTES……………………………………  4

VII. DEFENDANT'S RESEARCH ARTICLES
DO NOT MENTION OPEN CARRY………………………..  7

VIII. PUBLIC SAFETY ARGUMENTS WERE REJECTED
BY JUSTICE SCALIA………………………………………….  7

PLAINTIFFS' REPLY MEMO OF POINTS AND AUTHORITIES IFSO MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Andrews v State*
    50 Tenn. 165 (1871) ........................................................................................................ 7

*County of Santa Clara v Trump*,
    250 F.Supp 3d 497 (ND Cal 2017) .................................................................................. 4

*District of Columbia v Heller*,
    554 US 570 (2008) ................................................................................................... *passim*

*Duncan v Becerra*,
    265 F Supp 3d 1106 (SD Cal 2017) ................................................................................. 4

*McDonald v City of Chicago*,
    561 US 743 (2010) ........................................................................................................... 6

*Nunn v State*,
    1 Ga. 243 (1846) .............................................................................................................. 7

*People v. Olson*
    (1971) 18 Cal.App.3d 592 ............................................................................................... 3

*People v. Overturf*
    (1976) 64 Cal.App.3rd Supp. 2 ....................................................................................... 3

*People v. Strider*
    (2009) 177 Cal.App.4th 1393 ......................................................................................... 2

*People v. Yarbrough*
    (2008) 169 Cal.App.3d 886 ............................................................................................ 3

*Peruta v California*
    _____ US ____, 137 SCt 1995 (2017) ............................................................................ 1

*Peruta v County of San Diego*,
    824 F3d 919 (9th Cir 2016) (en banc) ......................................................................... 8, 9

*State v Chandler*
    5 La. Ann. 489 (1850) ..................................................................................................... 7

*State v Huntly*
    25 N.C. 418 (1843) ......................................................................................................... 6

*Ward v. Colum*
    2016-M-01072 (Miss. May. 4, 2017) ............................................................................ 8

*Wrenn v. District of Columbia*,
    864 F.3d 650 (DC Cir 2017) ................................................................................... 6, 7

**California Penal Code**
§ 25850 ........................................................................................................................... 3, 4
§ 26035 ................................................................................................................................ 3
§ 26045 ................................................................................................................................ 3
§ 26050 ................................................................................................................................ 3
§ 26055 ................................................................................................................................ 3
§ 26225 ................................................................................................................................ 1
§ 26350 ..................................................................................................................... 1, 3, 4

**Other**
Lott and Mustard, *Crime, Deterrence, and Right-to-Carry Concealed Handguns*, University of
    Chicago Law School (1996) .......................................................................................... 7

National Academies Press, *Priorities for Research to Reduce the Threat of Firearm-Related
    Violence* (2013) ............................................................................................................ 10

Perkins, William R. and Thomas L., *The Second Amendment and the Personal Right to Arms*,
    Duke University School of Law ..................................................................................... 9

Pomeroy, Ross, Review: *'Strongest' Research Shows No Link Between Gun Ownership Rates
    and Higher Crime*, RealClear Science (March 10, 2015) ............................................. 7

Volokh, Eugene, *Testimony of Eugene Volokh on the Second Amendment, Senate Subcommittee
on the Constitution, September 23, 1998* .................................................................. 5, 6

**I. DEFENDANT CONCEDES OPEN CARRY IS BANNED**

Defendant readily admits, "California's open carry laws restrict most individuals from engaging in specific conduct - openly carrying firearms in public." [Def. Memo of P&A at p. 6]. The only people not restricted are law enforcement and security guards. Defendant fails to respond to Plaintiffs' assertion that no open carry permits have been issued in the State since 2012[1] and offers no reason for the absence of a procedure to apply for an "open carry" permit.[2]

**II. *HELLER* SPECIFICALLY RECOGNIZED THE RIGHT TO PUBLIC CARRY**

Plaintiffs have a high likelihood of success on the merits. "We should have granted certiorari in this case. The approach taken by the en banc court is indefensible, and the petition raises important questions that this Court should address." *Peruta v California*, ___US___ ,137 S Ct 1995, 1996 (2017) (cert. den.) (Thomas, J. dissenting). Justices Thomas and Gorsuch in *Peruta* reaffirmed that "the Second Amendment's core purpose further supports this conclusion that the right to bear arms extends to public carry. The Court in *Heller* emphasized that 'self-defense' is 'the central component of the [Second Amendment] right itself.'" Indeed, *Heller*'s endorsement of laws forbidding carrying firearms in sensitive places [schools and government buildings] confirms that there are non-sensitive places where the right to public carry cannot be suppressed. *District of Columbia v Heller*, 554 US 570, 626 (2008).

This case does not involve 'less restrictive regulations' than *Heller* [Def. Memo of P&A at p. 6]. As with D.C.'s ban of handgun possession in the home, California's ban on open carry in public violates a core Second Amendment right, requiring strict scrutiny analysis.

---

[1] California Penal Code §26225 requires a copy of all firearms licenses issued in each county (open carry and concealed carry) be "filed immediately" with the Attorney General's Office DOJ. DOJ has no record of any open carry licenses having been issued in the State since California enacted Penal Code §26350 criminalizing the open carriage of an unloaded firearm in January 2012. (Dec. of Mark Baird at ¶45 submitted ISO motion).
[2] *Id.* at ¶42-¶43.

1

A Constitutional originalist, Justice Scalia's thorough and learned interpretation of the Second Amendment in *Heller* was guided by 'textualism'. "[The] Constitution is not a living document. It's like having a mini-Constitutional Convention every time you appoint someone to the Supreme Court. The result is a Constitution whose meaning is determined by the majority of the people, but the Constitution is supposed to protect us from the majority…[t]he Constitution is not an empty bottle to be filled up by each generation."[3] "It's the job of the judge to give the text - whether it's the Constitution or a statute - it's fair meaning…the meaning that the people to whom it was prescribed, who ratified the Constitution or the people to whom the statutes were promulgated, would understand them to mean."[4]

Justice Scalia confirmed the right of the individual to carry firearms in public for self-protection, determining that 'keep arms' means to 'possess weapons' and 'bear' means to 'carry in case of confrontation'. *Heller*, 554 US at 579, 582-584. "When used with 'arms,'...the term ['bear'] has a meaning that refers to carrying for a particular purpose - confrontation." *Heller*, 554 US at 584 (citation omitted). To interpret the phrase 'bear arms' to mean carrying a firearm around inside of your house in case of confrontation is not only redundant of the right to 'keep arms', it is a definition 'worthy of the Mad Hatter'. *Heller*, 554 US at 589.

### III. STATUTORY EXEMPTIONS DO NOT SHIELD CRIMINAL PROSECUTION

Defendant's referenced 'exemptions' do not grant permission for open carry in public. The exemptions are affirmative defenses to criminal charges – not immunity from prosecution. Open carry in a 'public place' is a crime[5]. 'Public place' includes any area in which a stranger can walk without challenge. *People v. Strider* (2009) 177 Cal.App.4th 1393 (and cases cited); *People v. Yarbrough* (2008) 169 Cal.App.3d 886 (unenclosed residential driveway); *People v. Overturf*,

---

[3] https://www.archbalt.org/scalia-constitution-is-not-a-living-document/
[4] Justice Antonin Scalia, *Scalia: How to Interpret the Constitution*, https://www.baxterbulletin.com/story/news/local/2015/04/17/constitution-interpreted/25961537/.
[5] Penal Code §26055, §26035, §25850, §26350.

(1976) 64 Cal.App.3rd Supp. 2 (unfenced business driveway is a public place). One's driveway, lawn, porch, sidewalk – all 'public places.' *Id.* citing, *People v. Olson* (1971) 18 Cal.App.3d 592. One's house is arguably a 'public place' when the front or back door is unlocked.

Mr. Baird's property is not enclosed. Mr. Gallardo's properties are not enclosed, and the existing border is easily overcome by animals or human predators. Plaintiffs are subject to criminal prosecution the moment they step outside of their house with an exposed handgun. (Reply Declarations of Mark Baird and Richard Gallardo).

Defendant's 'focused self-defense exception' is a façade. (§26045, §26050). One may carry a loaded firearm under a reasonable belief that it is necessary to protect one's person or property from 'immediate, grave danger' or when making a lawful arrest. But, if open carry outside of one's house is a crime, when faced with immediate confrontation and grave danger in public, where would one access a handgun?

Adhering to the 'exemption' language does not confer immunity from prosecution; the law-abiding must still prove their innocence. Believing he and his property were in 'immediate, grave danger', the defendant in *People v Overturf* called the police and went outside armed with his firearm. His **conviction** for firearm possession was affirmed because two purported exemptions **failed.** Having a firearm in a place of business (§26035) failed because his private property was not fenced, thus he was carrying in a 'public place'. The 'focused self-defense exception' in a public place (§26045) failed, despite his adherence to the language of the statute.

Exposure to criminal prosecution is not a free exercise of one's core Second Amendment rights.

**IV. CALIFORNIA'S 164-YEAR TRADITION OF UNREGULATED OPEN CARRY**

Defendant's claimed 'tradition' of regulating the open carry of firearms is a fallacy. Since the Mexican-American War in 1848, California had a tradition of unregulated open carry and its

3

effects on society were largely unremarkable. People exercised their right to open carry; criminal conduct was punished accordingly. The Mulford Act (1967) regulated open carry, criminalizing public carry of loaded firearms, spurred by black residents patrolling their communities in the face of ongoing police brutality[6]. (§25850). In 2012, California criminalized public carry of unloaded firearms. (§26350). Unregulated open carry was an integral part of California's history for 164 years - substantially longer than it has been regulated.

## V. CONSTITUTIONAL DEPRIVATIONS CONSTITUTE IRREPARABLE INJURY

This Circuit has repeatedly held that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'. *County of Santa Clara v Trump*, 250 F.Supp 3d 497, 537-538 (ND Cal 2017) (citations omitted). The violation of Plaintiffs' Second Amendment rights constitutes irreparable injury. *Duncan v Becerra*, 265 F Supp 3d 1106, 1135 (SD Cal 2017). "The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…" *Duncan*, 265 F Supp 3d at 1135.

## VI. DEFENDANT MISREPRESENTS HISTORY, CASELAW, AND STATUTES

The Declaration of Second Amendment historian Clayton Cramer exposes Defendant's numerous errors of fact, false descriptions of actual laws, and citations to non-existent laws. (Dec. of Clayton Cramer at ¶11; Points 2 and 4). Defendant's references to public carry restrictions in England are irrelevant. English history is replete with the governmental oppression of its subjects – banning hunting, banning firearms[7], and monopolizing gun powder to keep the citizens

---

[6] https://www.huffpost.com/entry/black-panthers-california-1967_n_568accfce4b014efe0db2f40; https://en.wikipedia.org/wiki/Mulford_Act;
[7] Except when the King required an armed civilian force to save money instead of funding a conscripted army. Citizens were required to purchase and maintain guns, but the King forbid firearms from any other use for fear of rebellion and loss of hunting game for the wealthy. Joyce Lee Malcolm, *To Keep And Bear Arms: The Origins of an Anglo-American Right*, p. 1-53.

4

unarmed and submissive to classist oppression.[8] By 1780, London's Chief Legal Officer confirmed that the English Declaration of Rights protected the right of the subjects "to have arms for their own defence, and to **use** them for lawful purposes…[which is] not only as a right, but as a duty; for all the subjects of the realm, who are able to **bear arms**, are bound to be ready, at all times, to assist the sheriff, and other civil magistrates, in the execution of the laws and the preservation of the public peace." (Cramer Dec. at Section 2) [emphasis supplied].[9]

The Bill of Rights was created to restrict government conduct as a 'protest against arbitrary action of the overturned dynasty in disarming the people…a pledge of the new rulers that this tyrannical action should cease.[10] The Second Amendment was penned to prevent the government from disarming its citizens – exactly what the English soldiers attempted to do and what California is doing now. The Bill of Rights does not *grant* rights, it prohibits the government from violating pre-existing rights – a necessary safeguard of individual liberty. Indeed, unlike the Fourth Amendment prohibitions on "*unreasonable*" conduct, the Second Amendment prohibits the mere *infringement* of the right to possess and carry weapons. "[H]istory showed that the way tyrants had eliminated a militia consisting of all the able-bodied men was not by banning the militia but simply by taking away the people's arms, enabling a select militia or standing army to suppress political opponents." *Heller*, 554 US at 598.

The Colonial Period (1607-1776) *required* free men to carry firearms. (Cramer Dec. at Point 3). State laws limiting carry rights during the Antebellum Period (1812-1861) arose from the misconception that the Constitution only applied to the federal government. (Cramer Dec. at Point 3-5). *McDonald v City of Chicago*, 561 US 743 (2010) has revolved that misconception.

---

[8] Malcolm, p. 1-53.
[9] Despite England's ban on handgun possession in 1996 by civilians and the general police force, the rate of gun violence rose 42% in 2017-2018 along with a rise in knife-related crimes. https://www.bbc.com/news/uk-england-london-39578500; https://www.theguardian.com/uk-news/2018/apr/26/surge-in-knife-offences-fuels-rise-in-violent
[10] *Testimony of Eugene Volokh on the Second Amendment, Senate Subcommittee on the Constitution*, September 23, 1998.

Even state constitutions recognized the right to bear arms for self-defense. *Volokh*, supra.

Defendant misrepresents the Statutes of Northampton, which forbade the wearing of ***armor*** in public**, *not firearms***, because the sight of armor caused panic and fear in those not wearing armor. (Cramer Dec. at Point 2). The Statutes of Northampton were specifically ***rejected***, not adopted, by North Carolina in *State v Huntly*, 25 N.C. 418 (1843), as Defendant claims. *Id. Huntley* also did not declare guns 'unusual weapons'. Just the opposite: "a double-barrelled gun (sic), or any other gun, cannot in this country come under the description of 'unusual weapons,' for there is scarcely a man in the community who does not own and occasionally use a gun of some sort." *Id.*

The statutes cited by Defendant[11] only regulated disruptive, terrifying conduct, not the public carriage of firearms as he claims. (Cramer Dec. at Point 2). The act of carrying a firearm, without more, was insufficient to face punishment under a state-enacted Northampton analogue. It was the terrorizing conduct by the carrier that was unlawful. *Id.* Regulations on public carry were narrow and conduct-driven, revealing the fundamental right of ordinary citizens under ordinary circumstances to carry guns in public. Plaintiffs relied upon the very cases cited by Justice Scalia in *Heller*: *Nunn v State*, 1 Ga. 243 (striking ban on open carry), *State v Chandler*, 5 La. Ann. 489 (1850) (citizens have a constitutional right to carry arms openly), *Andrews v. State*, 50 Tenn. 165 (1871) (statute banning open carry violated the constitution).

## VII. DEFENDANT'S RESEARCH ARTICLES DO NOT MENTION OPEN CARRY

Defendant freely interchanges the terms 'open' carry, 'concealed' carry, and 'public' carry, in manipulative fashion. Adding to the confusion, all three (3) of Defendant's articles deal

---

[11] Defendant also misrepresents 'surety' requirements of the time. (See, Def. Memo of P&A at p. 11). There was no requirement that a surety be posted simply for carrying a firearm in public. A surety was only required when a complaint was filed alleging that the carrier "threatened injury or a breach of the peace"; but, if the carrier showed 'good cause' for the need to continue carrying his firearm, he was exempted from having to pay the surety. *Wrenn v. District of Columbia*, 864 F.3d 650, 661 (DC Cir 2017). Thus, the 'good cause' requirement did not apply to public carry for the responsible; it shrank the penalty to the reckless carrier. (Cramer Dec. at Point 2).

6

solely with concealed carry, with no mention of open carry. Exhibit 1 "estimate[s] the impact on violent crime when states adopt right-to-carry (RTC) **_concealed handgun_** laws" (emphasis added), Exhibit 3 only discussed concealed carry, and Exhibit 2, an attempt to disprove a prior study on concealed carry, concedes it "does not prove that RTC (right-to-carry) laws increase crime simply because RTC states experience a worse post-passage crime pattern." (Wise Dec. at p. 214, or ECF p. 20 of 80). Contrary studies abound.[12] The Articles are irrelevant, immaterial, and lack probative value. As such, they should be disregarded.

**VIII. PUBLIC SAFETY ARGUMENTS WERE REJECTED BY JUSTICE SCALIA**

Justice Scalia rejected the dissent's 'interest-balancing' test, yet Defendant relies on the same failed arguments offered in Justice Stevens' dissent in *Heller* – rewritten history and public safety claims. The government cannot have it both ways. "The very enumeration of the right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, at 634. If the Ninth Circuit deems concealed carry a 'privilege' subject to governmental whims[13], then open carry is a core right protected by the Second Amendment subject to strict scrutiny. A contrary finding would render the phrase 'bear arms' meaningless.

No matter how well-intentioned, judges are without the power to limit rights guaranteed by the Constitution. "Personal fears and opinions do not trump, and cannot negate, constitutional guarantees…Courts must give more than lip service to the rule of law; they must insist upon its lawful application. Judges cannot allow their sense of superior knowledge, perceptions, or

---

[12] Lott and Mustard, *Crime, Deterrence, and Right-to-Carry Concealed Handguns*, University of Chicago Law School (1996); https://www.nraila.org/articles/20181206/surprise-study-finds-no-rise-in-violent-crime-attributable-to-adopting-right-to-carry-laws; *The Myth That Australia's Gun Laws Reduced Gun Homicides*, https://fee.org/articles/the-myth-that-australias-gun-laws-reduced-gun-homicides/; Pomeroy, Ross, *Review: 'Strongest' Research Shows No Link Between Gun Ownership Rates and Higher Crime*, RealClear Science (March 10, 2015) https://www.realclearscience.com/blog/2015/03/review_strongest_research_shows_no_link_between_gun_ownership_rates_and_higher_crime.html
[13] *Peruta v County of San Diego*, 824 F3d 919, 924 (9th Cir 2016) (en banc).

PLAINTIFFS' REPLY MEMO OF POINTS AND AUTHORITIES IFSO MOTION FOR A PRELIMINARY INJUNCTION

understandings to justify open defiance of the very laws that they are called upon to uphold [as] courts are guardians of the Constitution…" *Ward v. Colom*, 2016-M-01072 (Miss. May. 4, 2017) (vacating judicial orders prohibiting firearm possession by CCW licensees in court buildings).

Defense witness Kim Raney offers no facts, evidence, or law enforcement experience with open carry - only speculation and fearmongering and hypothetical scenarios arising from poorly trained officers, not lawful people exercising their civil rights. Plaintiffs' expert, Charles "Chuck" Haggard offers actual law enforcement experience in a jurisdiction that transitioned to open carry overnight. "The implementation of laws that allow open carry in public do not have a negative impact on public safety…a lawful person openly carrying a firearm in public [ ]does not have a negative or detrimental effect on public safety, does not itself create a 'safety hazard', and is not the cause of accidental or mistake of fact shootings of civilians by police officers. The lack of proper police training creates or can lead to a public safety hazard and the accidental shooting of civilians – whether unarmed, carrying concealed, or carrying exposed (open carry)." (Dec. of Charles "Chuck" Haggard).

"Banning open carry does not greatly enhance public safety, nor does it cure deficiencies in departmental training of police officers. Police shootings of innocent civilians – whether unarmed, carrying concealed, or carrying exposed – will continue to occur absent proper training or in those situations where the armed person is willfully forcing a confrontation with officers. This can and will happen regardless of the legalities of open or concealed carry." (*Id.*). When Kansas went from being a state with no legal method of concealed or open carry… to a state where open and concealed carry was allowed with no license…no 'instant mayhem' was created. Police officers were not spontaneously shooting members of the public they observed carrying a firearm exposed on their body in public…." (*Id*).

The Second Amendment's answer to criminal use of firearms "is to support such laws as

8

are directed to those who threaten or demonstrate such abuse and to no one else…those who neither commit crimes nor threaten such crimes are entitled to be left alone."[14]

Defendant claims that crime increases when the government removes bars to public carry. On its face, this claim is illogical. It requires believing that people with a history of lawful behavior suddenly abandoned their moral compass upon the enactment of open carry laws.

The theory that right-to-carry laws cause an increase in crime is defeated by real-life facts, not studies that employ synthetic data controls [Def. Articles 1 and 2] or speculation [Dec. of Kim Raney]. Four years after Maine allowed open carry without a license, its crime rate is the lowest in the nation.[15] The second-safest state is Vermont and the third safest, New Hampshire - each allow open carry without a license.[16] 46 out of 50 states recognize the right to open carry[17] and 32 of our 50 states [over half of the country] do not require a permit.[18]

There are "a range of factors…related to high levels of gun use…includ[ing] high rates of poverty, illicit drug trafficking, and substance use. For example, increased firearm violence has been associated with drug markets. A number of situational level factors are also associated with increased risk of violence in general and firearm violence in particular. For example, the presence of drugs or alcohol increases the risk of firearm violence."[19] "Unauthorized gun possession or use is associated with higher rates of firearm violence than legal possession of guns." (*Id.* at p. 6). "Studies that directly assessed the effect of actual defensive uses of guns (i.e., incidents in which a gun was "used" by the crime victim in the sense of attacking or threatening an offender) have

---

[14] William R. and Thomas L. Perkins, *The Second Amendment and the Personal Right to Arms,* Duke University School of Law, p. 1250.
[15] Open Carry States Population. (2019-08-27), retrieved 2019-09-09 from http://worldpopulationreview.com/open-carry-states/
[16] https://www.usnews.com/news/best-states/rankings/crime-and-corrections/public-safety
[17] Oklahoma's Constitutional Carry laws go into effect on November 1, 2019.
[18] Open Carry States Population. (2019-08-27). Retrieved 2019-09-09, from http://worldpopulationreview.com/open-carry-states/
[19] *Priorities for Research to Reduce the Threat of Firearm-Related Violence*, National Academies Press (2013) at p. 4-5.

9

found consistently ***lower injury rates among gun-using crime victims*** compared with victims who used other self-protective strategies. *Id.* at p. 16. (emphasis added).

Law-abiding individuals, like Plaintiffs, play no part in crime statistics. Banning open carry because criminals use guns to commit crime makes as much sense as banning alcoholic beverages because people drive drunk. The ***relevant*** statistics to consider are those where law-abiding gun owners defended themselves and/or others from violent criminals.[20]

WHEREFORE, it is respectfully requested that Plaintiffs' motion for a preliminary injunction be granted in its entirety.

Dated: October 1, 2019                          Respectfully submitted,

                                                THE BELLANTONI LAW FIRM, PLLC
                                                */s/* Amy L. Bellantoni, Esq.
                                                Amy L. Bellantoni, Esq.
                                                *Counsel for Plaintiffs*
                                                *Pro Hac Vice*
                                                abell@bellantoni-law.com

---

[20] One website alone provided 2270 incidents of self-defense by law-abiding people against violent criminal attacker(s) using a lawfully owned firearm. https://foac-pac.org/index.php?pageName=Defense-Stories

PLAINTIFFS' REPLY MEMO OF POINTS AND AUTHORITIES IFSO MOTION FOR A PRELIMINARY INJUNCTION