UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BAIRD, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>XAVIER BECERRA, et al.,<br><br>       Defendants. | No.  2:19-cv-00617-KJM-AC<br><br>ORDER |

In this case brought under 42 U.S.C. § 1983, plaintiffs challenge the constitutionality of California's open carry licensing regime under the Second, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.  Plaintiffs move for a preliminary injunction on their Second Amendment claim and defendants move to dismiss plaintiffs' other constitutional claims.  The court resolves the motion for a preliminary injunction and the motion to dismiss below.

I.    BACKGROUND

California Penal Code section 26350 criminalizes the act of publicly carrying an unloaded firearm, and section 25850 criminalizes the act of publicly carrying a loaded firearm. There is an exception to these rules that allows an individual to publicly carry a firearm without a license, where the individual "reasonably believes that any person or the property of any person is

1

in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property," and local law enforcement has had a chance to respond. Cal. Pen. Code § 26045;[1] Mot. to Dismiss ("MTD"), ECF No. 10-1, at 9. Additionally, California has established a firearm licensing scheme at Penal Code sections 26150 to 26155. To qualify for a concealed carry[2] permit, the law requires that an applicant demonstrate: (1) good moral character; (2) "good cause exists for issuance of the license"; (3) residency in the county or city to which she is applying; and (4) completion of necessary training. Cal. Penal Code §§ 26150(a) & 26155(a). Where the population of a county is less than 200,000 persons, a county sheriff or head of a municipal police department may issue an open carry permit subject to the same requirements as a concealed carry permit, with the permit valid only in the county of issuance. Cal. Penal Code § 26150(a), (b)(2); *id.* § 26155(a), (b)(2).

Plaintiff Baird is a resident of Siskiyou County, a county with less than 200,000 residents, who meets all the requirements for a concealed carry or open carry license except, he alleges, the "good cause" requirement. Compl. ¶¶ 20, 25. Plaintiff wishes to carry a firearm in public openly, but alleges the Siskiyou County Sheriff has chosen not to make open carry licenses available in that county, exercising his discretion under the "may issue" language in California Penal Code sections 26150(b), 26155(b). *Id*. ¶¶ 39, 40, 43. Because plaintiff resides only in

---

[1] The statute provides, in relevant part:

> Nothing in Section 25850 is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property.

Cal. Pen. Code § 26045(a).

[2] The court uses the terms "concealed carry" and "open carry" to mean, respectively, carrying a concealed firearm on one's person and carrying a firearm on one's person openly and unconcealed. The court uses the term "public carry" to mean carrying a firearm in public, either in a concealed or unconcealed fashion.

2

1  Siskiyou County, he is not eligible to apply for an open carry license in any other county. *Id*.

2  ¶ 47.  Plaintiff Gallardo, a resident of Shasta County, makes similar allegations. *Id*. ¶¶ 53–82.

3          On April 9, 2019, plaintiffs filed the instant suit against the Attorney General

4  challenging the constitutionality of California Penal Code sections 26150, 26155, 26350 and

5  25850 under the dormant Commerce Clause and the Second, Fourth and Fourteenth

6  Amendments. *See* Compl.  As confirmed at hearing, plaintiffs have not named the sheriffs of

7  their respective counties as defendants in this suit.  As violations of the Second Amendment,

8  plaintiffs challenge: (1) the requirement of "good cause" for an open carry license (claim 1), *id*.

9  ¶¶ 254–56; (2) the provision limiting licenses' validity to the county of issuance (claim 2), *id.*

10  ¶¶ 257–259; (3) the restriction of the ability to open carry based on county population size (claim

11  3), *id*. ¶¶ 260–62; (4) the provision that sheriffs "may issue" open carry licenses (claim 4), *id*.

12  ¶¶ 138–42. *See also id.* ¶¶ 284–86 (claim 11)   Plaintiffs also bring several other constitutional

13  claims that derive from these challenges: (5) violation of the dormant Commerce Clause (claim

14  5); violation of the Commerce Clause (claim 6); violation of the right to interstate travel (claims

15  7, 8); violation of the Second, Fourth and Fourteenth Amendments (claims 9, 10); violation of

16  procedural due process (claim 13); and violation of substantive due process (claim 14).

17          Defendants move to dismiss plaintiffs' claims based on the dormant Commerce

18  Clause and the Fourth and Fourteenth Amendments.  MTD, ECF No. 10-1.  Plaintiffs oppose,

19  MTD Opp'n, ECF No. 19, and defendants have replied, MTD Reply, ECF No. 26.  Plaintiffs also

20  move for a preliminary injunction to prevent the enforcement of the aforementioned statutes,

21  Prelim. Inj. Mot. ("PI Mot."), ECF No. 14, defendants oppose, PI Opp'n, ECF No. 20, and

22  plaintiffs have replied, PI Reply, ECF Nos. 27–28.

23  II.    <u>MOTION FOR PRELIMINARY INJUNCTION</u>

24          Plaintiffs move for a preliminary injunction enjoining defendants from enforcing

25  California Penal Codes sections 26150, 26155, 26350 and 25850, on the basis that the statutes

26  violate the Second Amendment.[3]  PI Mot. at 5.

---

[3] In a footnote, plaintiffs assert their preliminary injunction request is also based on "constitutional violations not relied upon herein," but detailed in their complaint.  Mot. Prelim.

A. <u>Legal Standard</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right[,]" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted), and should not be granted unless the movant carries the burden of proving this extraordinary remedy is warranted by clear and convincing evidence, *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction . . . should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997))). In determining whether to issue a preliminary injunction, federal courts must consider whether the moving party "[1] is likely to succeed on the merits, . . . [2] is likely to suffer irreparable harm in the absence of preliminary relief, . . . [3] the balance of equities tips in [the movant's] favor, and . . . [4] an injunction is in the public interest." *Winter*, 555 U.S. at 20.

The Ninth Circuit has "also articulated an alternate formulation of the *Winter* test[.]" *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). That formulation is referred to as the "serious questions" or the "sliding scale" approach: "'serious questions' going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011) ("[T]he 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test."). Under the "serious questions" approach to a preliminary injunction, "[t]he elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072. In each case and irrespective of the approach to a preliminary injunction, a court must balance the competing alleged harms while considering the effects on the parties of the granting or withholding of the injunctive relief. *Winter*, 555 U.S. at 24. In exercising that discretion, a court must also consider the public consequences of the extraordinary remedy. *Id.*

/////

---

Inj. at 5 n.1. Plaintiffs' counsel clarified at hearing that the motion relies on the Second Amendment claim.

4

B. <u>Discussion</u>

1. <u>Likelihood of Success on the Merits</u>

In order to show a likelihood of success on the merits, plaintiffs must show the California's regime likely violates the Second Amendment. Plaintiffs argue that strict scrutiny applies to any law that burdens one's right to openly carry a firearm, based on their reading of the Supreme Court's holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010). Namely, plaintiffs argue, those cases define the "core component" of the Second Amendment right as "self-defense," and therefore the right to carry a weapon in self-defense, even outside the home, is protected by the Second Amendment. PI Mot. at 7 (citing *Peruta v. County of San Diego*, 742 F.3d 1144, 1154 (9th Cir 2014) (*Peruta I*), *vacated en banc by Peruta v. Cty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) (en banc) (*Peruta II*), *pet. for cert. denied*, 137 S. Ct. 1995 (2017)). Because the Second Amendment does not protect concealed carry, plaintiffs argue, open carry must be protected, and therefore, strict scrutiny should apply to any law that burdens one's right to open carry. PI Mot. at 8–9 (citing *Peruta II*, 824 F.3d 939). No controlling authority expressly supports this reading, and therefore plaintiffs cannot show a likelihood of success on the merits of their Second Amendment claims, as explained below.

In *Heller*, the Supreme Court held the core protection of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. In *McDonald*, the Court held the Second Amendment applied to the states through the Fourteenth Amendment and explained that *Heller* stands for the proposition that "individual self-defense is 'the *central component*' of the Second Amendment right." 561 U.S. at 767–68 (emphasis in original) (quoting *Heller*, 554 U.S. at 599). The Ninth Circuit has interpreted these two cases to mean the Second Amendment's "core purpose" is to provide "self-defense in the home," and has developed a two-step inquiry for reviewing Second Amendment challenges based on the degree to which a law burdens that "core" right. *Silvester v. Harris*, 843 F.3d 816, 820–21 (9th Cir. 2016). To determine the proper level of scrutiny with which to review a challenged law that is subject to Second Amendment protection, the court must consider: (1)

"how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id.* at 821 (citation omitted).

In *Peruta I*, the Ninth Circuit addressed the issue of whether the right to "bear arms" included the right to carry a firearm outside the home in the context of a challenge to the "good cause" requirement for a concealed carry permit in California. 742 F.3d at 1147–48 (citing Cal. Penal Code §§ 26150, 26155). The court concluded the Second Amendment protects the right to carry a firearm "in public for the lawful purpose of self-defense[.]" 742 F.3d at 1175 (citing *Moore,* 702 F.3d at 941). However, two years later, in *Peruta II*, the court vacated and reversed *Peruta I* and held "the protection of the Second Amendment . . . simply does not extend to the carrying of concealed firearms in public by members of the general public." 824 F.3d at 927. Therefore, the court concluded, a "good cause" requirement for a concealed carry license does not violate the Second Amendment. *Id.* at 939. The court explicitly left open the "question whether the Second Amendment protects some ability to carry firearms in public, such as open carry." *Id.* at 927.

In *Young v. Hawaii*, 896 F.3d 1044, 1068 (9th Cir. 2018), the court answered that question in part, holding "the Second Amendment encompasses a right to carry a firearm openly in public for self-defense" and that right is at the "core" of the Amendment. *Id.* at 1068, 1071. The Ninth Circuit has since granted rehearing en banc, *Young v. Hawaii*, 915 F.3d 681, 682 (9th Cir. 2019), and had stayed the en banc proceedings pending resolution of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 152 (2020).[4] *Young v. Hawaii* (9th Cir.), No. 12-17808, ECF No. 219, 308 (scheduling oral argument September 24, 2020). As such, the original opinion in *Young v. Hawaii* is no longer precedential. *Young,* 915 F.3d at 682 ("The three-judge panel disposition in this case shall not be cited as precedent by or to any court of the Ninth Circuit.").

/////

---

[4] *New York State Rifle* was recently remanded after the Supreme Court found the plaintiff's claims for injunctive relief were mooted by a change in the New York statute. *New York State Rifle*, 140 S. Ct. at 152.

6

Thus, no controlling authority has held that the Second Amendment right protects an individual's right to open carry.  However, where "difficult legal questions require more deliberate investigation," the court may grant a preliminary injunction to preserve the status quo so long as plaintiff demonstrates "that serious questions going to the merits were raised," the balance of the hardships tips sharply in the plaintiff's favor," and plaintiff meets the other *Winter* requirements.

Upon review of the legal landscape relevant to plaintiffs' constitutional argument, the court finds plaintiffs do raise "serious questions" going to the merits of their Second Amendment claim, and that this complex legal question requires further deliberation.  The court makes this finding particularly in light of the likelihood that the Ninth Circuit will further clarify the scope of the Second Amendment as it applies to plaintiffs' claims, in the relatively near future.  For example, a similar dispute is the subject of another stayed appeal in *Nichols v. Newsom* (9th Cir.), No. 14-55873, ECF No. 119, which may soon be resolved in light of the Supreme Court's *New York Rifle* decision.  *See Nichols v. Harris*, 17 F. Supp. 3d 989 (C.D. Cal. 2014) (rejecting similar challenge to California regime, based on *Peruta I*), *appeal pending sub nom., Nichols v. Newsom* (9th Cir.), No. 14-55873; *see id.* at ECF No. 1199 (March 11, 2019) (submission of case remains vacated pending issuance of mandate in *Young v. Hawaii*); *see also*, *Flanagan v. Harris*, No. LACV1606164 JAK ASX, 2018 WL 2138462, at *6 (C.D. Cal. May 7, 2018) (rejecting challenge to same "good cause" requirement for open carry license), *appeal pending,* No. 18-55717 (9th Cir.); *see id.* at ECF No. 57 (July 30, 2019) (staying appeal pending resolution of *New York State Rifle*).

Furthermore, there is some support in the case law to suggest plaintiffs' legal arguments have merit.  For example, in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), the Seventh Circuit struck down a law banning all public carry, concealed or open, finding that the Second Amendment "confers a right to bear arms for self-defense, which is as important outside the home as inside."  *Id.* at 935–36, 942; *see also Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 WL 5508998, at *23 (D. N. Mar. I. Sept. 28, 2016) (following *Moore* and finding Second Amendment applies to some degree outside the home).

7

In sum, "Second Amendment law is evolving." *Silvester v. Harris*, No. 1:11-CV-2137 AWI SAB, 2014 WL 6611592, at *3 (E.D. Cal. Nov. 20, 2014). Taking plaintiffs' allegations as true, the challenged statutes effectively ban open carry in California, except in the case of immediate danger occurring directly outside one's home. *See* Cal. Pen. Code § 26045. In light of the original holding in *Young*, the pending appeals in the Ninth Circuit, and the still-open question of whether and to what extent the Second Amendment protects a right to carry a firearm openly in public, the court finds plaintiffs' Second Amendment claim raises serious questions going to the merits of their Second Amendment claim. Given this landscape and the existing authority in support of plaintiffs' arguments, which is persuasive though not controlling, these questions are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation," and plaintiffs have a chance if not a "fair chance of success on the merits." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).

C. Balance of Equities & Public Interest

Having found plaintiffs raise "serious questions going to the merits" of their Second Amendment claim, the court next considers the balance of equities and whether the public interest favors an injunction. These two factors merge when the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs do not address this prong in depth, arguing the balance of hardships weighs in their favor, because they risk criminal penalties if they exercise their "right to self-protection via open carry." PI Mot. at 21. The government argues the public interest "favors preserving the State's duly enacted laws designed to protect the public safety and reduce gun violence." PI Opp'n at 28 (citing *Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193–94 (E.D. Cal. 2015)).

When balancing the hardships "of the public interest against a private interest, the public interest should receive greater weight." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (internal quotation marks omitted). In assessing the burden on plaintiffs, the court considers the following: that plaintiffs are able keep guns in their homes without a license, *see* Baird Decl. ¶ 6, ECF No. 27-3; Gallardo Decl. ¶ 7, ECF No. 27-4; they would apparently be eligible for a concealed carry license if they could establish "good cause," Cal. Pen. Code

8

1  § 26045; and California law allows them to carry a firearm near the home, if they are in
2  immediate danger and local law enforcement does not respond, *see* Cal. Pen. Code § 26045(a).
3  Moreover, as plaintiffs' counsel represented at hearing, the harm plaintiffs suffer from the lack of
4  an injunction has been ongoing since the Mulford Act was signed in 1967, suggesting the harm is
5  not imminent or life-threatening. *See* Cal. A.B. 1591 (April 5, 1967) (amending Cal. Penal Code
6  § 12031 to repealing law that allowed for open carry of loaded firearms). Plaintiffs' hardship is
7  weighed against the hardship to defendant, who will be prevented from enforcing a law intended
8  to "protect public safety and reduce gun violence." Opp'n at 28.

9  The court in *Rupp v. Becerra*, No. 817CV00746 JLS JDE, 2018 WL 2138452, at
10 *13 (C.D. Cal. May 9, 2018), conducted a similar balancing exercise when it considered a
11 challenge to the Assault Weapons Control Act, which banned certain weapons in California.
12 2018 WL 2138452, at *1–3 (assessing Cal. Penal Code §§ 30510, 30680, 30900(b)(1), 30915).
13 The court found the balance of hardships weighed in the state's favor, even though plaintiff's
14 Second Amendment rights were implicated, because the state would suffer harm from being
15 "enjoined from enforcing a law intended to increase public safety." *Id.,* at *13. In contrast, in
16 addressing a preliminary injunction motion challenging a state law that criminalized the
17 possession of high-capacity magazines, the court in *Duncan v. Becerra*, 265 F. Supp. 3d 1106,
18 1136 (S.D. Cal. 2017), *aff'd*, 742 F. App'x 218 (9th Cir. 2018), did not discuss the hardship on
19 the state. Rather, the court focused on the possible criminal sanctions plaintiff would face for
20 failure to dispossess themselves of the newly-banned magazines and found the balance of
21 hardships weighed in plaintiffs' favor. Here, plaintiffs do not face any criminal sanctions for
22 failure to act, making the reasoning in *Duncan* less persuasive in the context of this case.

23 Furthermore, the potential harm to the government and the public interest here is
24 significant. *See* PI Opp'n at 28 (citing *Tracy Rifle & Pistol,* 118 F. Supp. 3d at 1193–94). As the
25 court in *Tracy Rifle* explained, "[t]he costs of being mistaken, on the issue of whether the
26 injunction would have a detrimental effect on handgun crime, violence, and suicide, would be
27 grave. These costs would affect members of the public, and they would affect the Government
28 which is tasked with managing handgun violence." 118 F. Supp. 3d at 1193–94. By contrast, the

harm from complying with the challenged laws "appears to render little harm to Plaintiffs, outside of the inherent harm imposed by a violation of their [Second] Amendment Rights." *Id.*

For these reasons, following the Ninth Circuit's guidance in *F.T.C.* and considering plaintiffs' available options for self-defense, plaintiffs have not shown the "balance of hardships . . . tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies*, 632 F.3d at 1131–35 (9th Cir. 2011)

    D.    Conclusion

Though plaintiffs have raised "serious questions" going to the merits of their Second Amendment claim, the balance of equities does not tip "sharply" in their favor. Accordingly, the court declines to issue a preliminary injunction. The motion is DENIED without prejudice to plaintiff's re-filing their request after the Ninth Circuit decides one of the aforementioned stayed appeals, if that decision affects plaintiffs' legal grounds for an injunction such that reconsideration is warranted, and assuming an operative complaint asserts claims on which an injunction can rest.

III.    MOTION TO DISMISS

    A.    Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

10

1  *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss
2  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on
3  its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the
4  interplay between the factual allegations of the complaint and the dispositive issues of law in the
5  action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

6        In making this context-specific evaluation, this court must construe the complaint
7  in the light most favorable to the plaintiffs and accept as true the factual allegations of the
8  complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal
9  conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted*
10 *in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to
11 judicial notice" or to material attached to or incorporated by reference into the complaint.
12 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001), *as amended on denial*
13 *of rehearing at* 275 F.3d 1187 (9th Cir. 2001). A court's consideration of documents attached to
14 a complaint or incorporated by reference or matter of judicial notice will not convert a motion to
15 dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08
16 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare*
17 *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even
18 though court may look beyond pleadings on motion to dismiss, generally court is limited to face
19 of the complaint on 12(b)(6) motion).

20       Defendants move to dismiss claims 5 through 8 and 12 through 14 on the grounds
21 plaintiffs fail to state a claim for relief. In addition, defendants move to dismiss plaintiffs' Fourth
22 and Fourteenth Amendment allegations in claims 9 and 10. The court addresses each of these
23 claims of plaintiffs below.

24       B.    <u>Dormant Commerce Claims (Claims 5 & 6)</u>

25       Plaintiffs bring two claims based on the dormant Commerce Clause: claims 5 and
26 6. In their opposition, plaintiffs withdraw their Dormant Commerce Clause claims. MTD Opp'n
27 at 6 n.1; *see also Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 737 (9th Cir. 2017)
28 ("[I]ntrastate commerce is beyond the scope of the Dormant Commerce Clause[.]"), *cert. denied*

1   *sub nom. Nationwide Biweekly Admin., Inc. v. Hubanks*, 138 S. Ct. 1698 (2018).  Accordingly,
2   claims 5 and 6 are DISMISSED with prejudice.

3           C.        <u>Intrastate Travel Claims (Claims 7 & 8)</u>

4           "The Supreme Court has recognized a fundamental right to interstate travel."  *See*
5   *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) (citing *Attorney General of New York v.*
6   *Soto–Lopez*, 476 U.S. 898, 903 (1986) (Brennan, J., plurality opinion)); *see also United States v.*
7   *Guest*, 383 U.S. 745, 759 (1966) ("Although there have been recurring differences in emphasis
8   within the Court as to the source of the constitutional right of interstate travel . . . .  All have
9   agreed that the right exists.").  As plaintiffs admit, "[n]either the Supreme Court nor the Ninth
10  Circuit have yet decided the issue of the right to intra-state travel."  MTD Opp'n at 18.
11  Nevertheless, plaintiffs argue it is "plausible" that the Constitution protects the "right of the law-
12  abiding person to travel freely within [] his/her own state" unrestricted.  *Id.* at 18–19.

13          Claims 7 and 8 respectively allege that California has banned open carry
14  (1) outside of one's own county and (2) in counties with populations over 200,000.  *Id.* at 19.
15  According to plaintiffs, these requirements are unconstitutional because they force plaintiffs to
16  choose between their Second Amendment right to carry a weapon openly and their right to travel
17  outside their county of residence.  *Id.*  Therefore, the success of plaintiffs' claim depends on the
18  resolution of two open questions of constitutional law: whether there is a Second Amendment
19  right to open carry and whether there is a constitutional right to intrastate travel.

20          Even assuming the Constitution protects both rights, plaintiffs would have to show
21  the statutes they challenge penalize travel by denying a "very important benefit [or] right" to
22  those who travel outside their counties.  *See Attorney Gen. of New York v. Soto-Lopez*, 476 U.S.
23  898, 907 (1986).  The "very important . . . right" plaintiffs argue is threatened is the right to bear
24  arms unconcealed for self-defense in public.  However, the right recognized by the existing case
25  law is the right to "bear" arms in public for self-defense, *McDonald*, 561 U.S. at 767; that right is
26  not denied as a result of plaintiffs' traveling outside their home counties, because a concealed
27  carry permit is not limited to one's county of residence, but is valid throughout California.  *See*
28  Cal. Pen. Code § 26150 (a).  Only open carry licenses are limited to the county of issuance.  *Id.*

§ 26150(b)(2). In other words, by traveling outside their counties, plaintiffs are "penalized" only by having to switch from openly carrying their weapons to carrying them concealed. Plaintiffs have not cited, nor has the court located any viable authority suggesting there is a right to one method of "bearing" arms over another, with the possible exception of the vacated decision in *Young v. Hawaii*, 896 F.3d at 1070, which is not authoritative. *Peruta II*, 824 F.3d at 946 (Callahan, J., dissenting) ("While states may choose between different manners of bearing arms for self-defense, the right [to bear arms for self-defense] must be accommodated.").

Assuming the right to open carry is an "important right," plaintiffs' right to travel argument is still untenable. The basis of plaintiffs' Second Amendment, Fourth Amendment and Fourteenth Amendment claims is that they are unable to obtain an open carry license because the sheriff in each of their counties refuses to issue them. *See* Compl.¶¶ 39, 68–70. Plaintiffs do not plead they have obtained or could obtain an open carry license within their counties. *See generally* Compl. Plaintiffs cannot be deprived of an open carry license as a result of travel if they have never had a license or cannot obtain one in the first place. Therefore, plaintiffs have not pled facts showing they have been or will be penalized for traveling outside their counties, and thus have not sufficiently pled they have standing to bring their intrastate travel claims. Claims 7 and 8 are DISMISSED. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (requiring "actual or imminent" injury).

D. <u>Fourth Amendment Unreasonable Seizure Claim (Claims 9, 10 & 12)</u>

Plaintiffs allege the challenged statutes violate their Fourth Amendment rights because the statutes interfere with their "possessory and liberty interests" in their firearms by controlling how plaintiffs "wear, carry, or possess their handgun in public" and preventing them from "fully us[ing] and enjoy[ing] their property." MTD Opp'n at 9.

The Fourth Amendment protects against "unreasonable searches and seizures." *Virginia v. Moore*, 553 U.S. 164, 168 (2008). A "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984). One can have a legitimate possessory interest in a lawfully owned handgun. *See Stutes v. Parrish*, No. 14-CV-02016-LHK, 2015 WL 8770720, at

13

\*6 (N.D. Cal. Dec. 15, 2015); *but see United States v. Janik*, 723 F.2d 537, 547 (7th Cir. 1983) (no lawful property interest in unregistered gun); *United States v. Uu*, 293 F. Supp. 3d 1209, 1214 (D. Haw. 2017) (defendant has diminished possessory interest in "contraband (such as the firearm)"); *cf. Nichols v. Harris*, 17 F. Supp. 3d 989, 1008–09 (C.D. Cal. 2014) (finding no reasonable expectation of privacy in one's publicly carried firearm). Plaintiffs allege they own their firearms lawfully, but challenge the state's ability to regulate how they use those firearms.

Plaintiffs' Fourth Amendment claim is atypical in that it does not challenge a state actors' physical interference with plaintiffs' firearms, but rather a regulation forbidding certain ways of using a firearm. The parties have identified one controlling case involving a Fourth Amendment challenge to a regulation; it does not support plaintiffs' claims. In *Cedar Point Nursery v. Shiroma*, 923 F.3d 524 (9th Cir. 2019), plaintiff brought a Fourth Amendment challenge against a regulation allowing union organizers access to the plaintiff company's property under certain, limited circumstances. Plaintiffs argued the regulation constituted a meaningful interference with their possessory interests in their property. *Id.* at 535. The court found the "controlled, non-disruptive visits" limited "in time, place, and number of union organizers" at issue there did not constitute a meaningful interference in plaintiffs' possessory interest in the property. *Id.* at 536. By contrast, the Ninth Circuit has recognized that "constant physical occupation" such as when a regulation allows the public to "freely and regularly" trespass on one's land would constitute a meaningful interference with one's possessory interest in one's property such that a seizure occurs. *Presley v. City of Charlottesville*, 464 F.3d 480, 487 (4th Cir. 2006) (quoted in *Cedar Point Nursery*, 923 F.3d at 535); *see also Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 72 (1992) (removing mobile home from its foundation and towing to another location was seizure); *Freeman v. City of Dallas*, 242 F.3d 642, 647 (5th Cir. 2001) (demolition of plaintiffs' apartment buildings was seizure); *Severance v. Patterson,* 566 F.3d 490, 502 (5th Cir. 2009) (plaintiff's allegation that State appropriated an easement over her beachfront property sufficiently alleged potential seizure to survive motion to dismiss)). Even assuming the regulations at issue effectively ban open carry in California, the factual allegations here are

still more like those underlying *Cedar Point Nursery* than *Presley*. Plaintiffs are still able to "possess" their licensed firearms in a limited manner; they are limited to keeping them in their home and, when they can meet the requirements for concealed carry, they may possess them concealed in public. The challenged statutes do not "deprive[] [plaintiffs] of the use of [their] property" *Presley*, 464 F.3d at 487, such that they meaningfully interfere with their possessory interest in the firearms.

This conclusion is bolstered by the Supreme Court's decision in *Heller*, in which the Court explained that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. "For example," the Court goes on, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* The Court endorsed certain regulations on the possession of firearms, such as "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27. Such an endorsement can be fairly read to imply one's constitutionally protected property interest in a firearm, including one's Second Amendment right to keep a firearm, is necessarily limited. *Id.*

Therefore, a Fourth Amendment challenge is not legally cognizable here, because plaintiffs have not alleged a search or seizure has occurred. Defendants' motion to dismiss plaintiffs' ninth, tenth and twelfth claims are DISMISSED, to the extent they rely on a claim under the Fourth Amendment. *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1082 (C.D. Cal. 2011) (court may dismiss portion of claim, while allowing remainder to proceed).

E.   <u>Substantive Due Process Claim (Claims 9, 10 and 14)</u>

Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government

15

deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).

Plaintiffs allege defendants "are violating a core fundamental human right protected by the Fourteenth Amendment, to wit, Plaintiffs' substantive right to due process by enacting and enforcing a statutory scheme having criminal penalties that removes Plaintiffs' ability to decide how to carry their private property while in public." Compl. ¶ 295.  Plaintiffs do not identify any authority to support the proposition that there is a substantive due process right to "decide how to carry [one's] private property while in public." *Id.*; MTD Opp'n at 11–15.  In their opposition and at hearing, plaintiffs conceded that their substantive due process claim is, in part, derivative of their Fourth Amendment claim.  MTD Opp'n at 12 (statutes "constitute a blanket deprivation of Fourth and Fourteenth Amendment rights").  The balance of plaintiffs' argument relies on a right to self-defense, which plaintiffs confirmed at hearing is essentially a claim based on the Second Amendment.  *See, e.g.*, *id.* ("The basic human right of survival encompasses the right to make tactical decisions for yourself regarding how to carry, wear, and possess your handgun for the preservation of your own life, liberty, safety, and bodily integrity."); *id.* at 13 ("How to carry one's firearm outside of the home is a daily, personal, decision entered into intentionally . . . the effects of which will have a measurable impact on one's ability to . . . effectively protect one's life, liberty, personal safety, and bodily integrity.").  In other words, plaintiffs attempt to shoehorn their Fourth and Second Amendment claims into a substantive due process claim.

"The Supreme Court has long foreclosed this type of claim." *Wilson v. Holder*, 7 F. Supp. 3d 1104, 1122 (D. Nev. 2014), *aff'd sub nom.* Wilson v. Lynch, 835 F.3d 1083 (9th Cir. 2016).  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (internal quotation marks omitted) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)); *see also Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001) ("If a constitutional claim is covered by a specific constitutional

provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998))).

Claim 14 is therefore DISMISSED without prejudice. To the extent claims 9 and 10 are also based on the substantive due process element of the Fourteenth Amendment, these claims are also DISMISSED in part without prejudice.

F.     Procedural Due Process Claim (Claim 13)

"When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." *Salerno*, 481 U.S. at 746. To successfully allege a procedural due process claim, plaintiffs must provide sufficient facts establishing the plausible existence of two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Given that whether plaintiffs have a constitutionally protected right to open carry is still an open question, the court assumes without deciding that plaintiffs have adequately alleged a deprivation of a constitutionally protected liberty or property interest for the purpose of a procedural due process claim, and finds plaintiffs have adequately pled "a denial of adequate procedural protections." Though it is unclear from plaintiffs' briefing and oral argument what procedure plaintiffs believe should be afforded, the complaint's general allegations suggest the claim is based on the lack of a meaningful "administrative appeal process available for challenging [the sheriffs'] denial of [plaintiffs'] applications for an open carry license." Compl. ¶¶ 42–43.[5]

---

[5] The court cautions the parties against attempting to cure deficiencies in the briefing by "incorporate[ing] the Complaint fully by reference" in a footnote. *See* MTD Opp'n at 7 n.3. Nonetheless, the court is careful to review the allegations in the complaint itself when adjudicating a motion to dismiss and disregards any argument that substantively departs from those allegations.

The court finds plaintiffs have sufficiently stated a claim for a violation of procedural due process at this stage. *See Fisher v. Kealoha*, 869 F. Supp. 2d 1203, 1217, 1223 (D. Haw. 2012) (denying motion to dismiss where plaintiff alleged violation of Second Amendment right to "bear operational firearms and ammunition" without "minimal due process protections such as the opportunity to participate in the decision-making process, and a means to seek review of the denial of his application"). Therefore, defendants' motion to dismiss Claim 13 is DENIED. However, to the extent plaintiffs amend their complaint as provided by this order, they may also amend to clarify the basis of Claim 13.

IV.     CONCLUSION

Plaintiffs' motion for a preliminary injunction is DENIED without prejudice, as described above. Defendants' motion to dismiss is GRANTED in part and denied in part as follows:

1. Claims 5 and 6 are DISMISSED;
2. Claims 7 and 8 are DISMISSED;
3. Claims 9, 10, 12 and 14 are DISMISSED to the extent they rely on the Fourth or Fourteenth Amendments; and
4. The motion to dismiss is DENIED as to claim 13.

Plaintiffs shall file any amended complaint within 21 days of this order. The parties shall file a joint status report regarding the future scheduling of this case within 30 days of this order. *See* E.D. L.R. 240.

This order resolves ECF Nos. 10 and 14.

IT IS SO ORDERED.

DATED: August 28, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE