COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

-------------------------------------------------------x

MARK BAIRD and
RICHARD GALLARDO,

                              Plaintiffs,

            v.

XAVIER BECERRA, in his official capacity
as Attorney General of the State of California,

                              Defendant.

-------------------------------------------------------x

**Case No.: 2:19-cv-00617-KJM-AC**

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

        NOW COME Plaintiffs, MARK BAIRD and RICHARD GALLARDO, by and through

their counsel, and allege against Defendant California Attorney General Xavier Becerra as

follows:

### NATURE OF THE ACTION

        1.  This is an action for declaratory and injunctive relief proximately caused by the actions

of the defendant for violations of Plaintiffs' fundamental human rights under the Second

Amendment to the United States Constitution pursuant to 42 U.S.C. §1983.

1

**JURISDICTION AND VENUE**

2       2.  The Court's jurisdiction over Plaintiffs' federal claims is authorized pursuant to 28

3   U.S.C. § 1331 and § 1343.

4       3.  The Court's jurisdiction over Plaintiffs' claims for injunctive and declaratory relief is

5   authorized by 28 U.S.C. § 2201 and § 2202.

6       4.  The Court's jurisdiction over Plaintiffs' federal claims and for statutory attorney's fees

7   is authorized pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

8       5.  Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a

9   substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

10

**THE PARTIES**

11       6.  Plaintiff, MARK BAIRD ("Plaintiff" or "Mr. Baird") is a United States citizen and a

12   resident of Siskiyou County, California.

13       7.  Plaintiff, RICHARD GALLARDO ("Plaintiff" of "Mr. Gallardo") is a United States

14   citizen and a resident of Shasta County, California.

15       8.  Defendant XAVIER BECERRA ("Defendant" or "Defendant Becerra") is the Attorney

16   General of the State of California. Defendant Becerra is sued herein in his official capacity only.

17   Pursuant to California State Constitution Article V, Section 13, as the Attorney General for the

18   State of California, Defendant is the chief law enforcement officer of the State whose duty it is to

19   ensure that the laws of the State are uniformly and adequately enforced.

20       9.  Defendant Becerra has direct supervision over every district attorney and sheriff and

21   over such other law enforcement officers as may be designated by law, in all matters pertaining to

22   the duties of their respective offices, and may require any of said officers to make reports

23   concerning the investigation, detection, prosecution, and punishment of crime in their respective

24   jurisdictions as to Defendant may seem advisable.

25       10.  Whenever in the opinion of the Defendant any law of the State is not being

26   adequately enforced in any county, it shall be Defendant's duty to prosecute any violations of law

27   of which the superior court shall have jurisdiction. In such cases Defendant shall have all the

28   powers of a district attorney. When required by the public interest or directed by the Governor,

2

1   Defendant shall assist any district attorney in the discharge of the duties of that office.

2   **STATEMENT OF FACTS**

3   *Plaintiff Mark Baird: Siskiyou County*

4   11.  Plaintiff Mark Baird is an individual of unquestionably good moral character, a law-

5   abiding citizen, and has never been charged with, summoned, or arrested for any violation of the

6   California State Penal Code or any other criminal offense.

7   12.  Mr. Baird is not a person prohibited by state or federal law from possessing,

8   receiving, owning, or purchasing a firearm.

9   13.  Mr. Baird does not hold a California firearm license and does not fall within any of

10   the exemptions to the California Penal Code sections criminalizing the possession of firearms,

11   whether loaded or unloaded.

12   14.  Mr. Baird possesses firearms (handguns and long guns) in his home for self-defense.

13   15.  Under California law, no license is required to possess a handgun in one's home for

14   self-protection.

15   16.  Mr. Baird seeks to carry a handgun for self-protection outside of his home.

16   17.  Mr. Baird seeks to carry a firearm for self-protection outside of his home and in

17   public without the need to demonstrate any "cause" or "reason" for the issuance thereof.

18   18.  Mr. Baird seeks to carry a firearm for self-protection outside of his home and in

19   public without the government dictating the manner in which he carries his firearm - loaded and

20   exposed, concealed, and/or unloaded and exposed.

21   19. The County of Siskiyou, California, according to the most recent federal census, has a

22   population of less than 200,000 people.

23   20.  Based on the population of Siskiyou County, its residents are eligible to apply for an

24   open carry firearm license under California's statutory firearms licensing scheme.

25   21.  As a resident of the County of Siskiyou, Mr. Baird is prohibited from applying for a

26   handgun carry license in any other county in California.

27   22.  Mr. Baird intends to carry a handgun outside of his home, open and exposed or

28   otherwise, with or without a carry license.

3

23.  Mr. Baird intends to carry a handgun open and exposed outside of Siskiyou County.

***Siskiyou County Application Process Devoid of "Open Carry" Option***

24.  The Siskiyou County written criteria for the issuance of a carry license does not contain an option for applying for an open carry license.

25.  The Siskiyou County written instructions for a "carry" license only identify an option for concealed carry, not open carry.

26.  The Siskiyou County handgun licensing procedure has no option for individuals not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm to apply for an open carry license.

27.  The Siskiyou County Sheriff's Office Information Form is entitled, "CONCEALED WEAPON LICENSE RENEWAL/CHANGE".

28.  The Siskiyou County Sheriff's Office has no form for an "Open Carry Renewal/ Change".

29.  The second page of the Siskiyou County Sheriff's Office Information Form indicates, "Signature of CCW holder".

30.  There are no forms used by the Siskiyou County Sheriff's Office, or available to the law-abiding residents of Siskiyou County, for the purpose of applying for an "Open Carry" handgun license.

31.  The Siskiyou County Sheriff's website only provides "Concealed Carry Weapon Information", and not "Open Carry Weapon Information". The Siskiyou County Sheriff's website has no information related to obtaining and/or applying for an open carry license.

32.  The Siskiyou County Sheriff's Office provides to carry license applicants an approved firearm application form issued by the State of California Department of Justice (the "DOJ Application"). The DOJ Application contains a section for the applicant to indicate the type of license being applied for, which is to be filled out by the applicant.

33.  The "type of license" section on the DOJ Application handed out by the Siskiyou County Sheriff's Office is pre-populated by the Siskiyou County Sheriff's Office and indicates, "STANDARD CCW".

4

FIRST AMENDED COMPLAINT

34. By filling in the "type of license" section on the DOJ Application, the Siskiyou County Sheriff's Office eliminates the ability for Siskiyou County residents to apply for an open carry license.

35. By filling in the "type of license" section on the DOJ Application, the Siskiyou County Sheriff's Office purposely conceals from its residents their right to choose the type of handgun license to apply for, to wit, open carry.

36. On more than one occasion, Mr. Baird applied to Siskiyou County Sheriff Jon Lopey ("Sheriff Lopey") for an open carry license for self-defense in public pursuant to California Penal Code § 26150.

37. Sheriff Lopey has denied each of Mr. Baird's requests for an open carry firearms license.

38. In Siskiyou County, even where an applicant has met the criteria for the issuance of an open carry license, the "may issue" language of California's licensing scheme gives Sheriff Lopey the authority to deny the application. (Penal Code § 26150(b)).

39. Mr. Baird has met the criteria for the issuance of an open carry license, yet Sheriff Lopey has denied his applications.

40. Sheriff Lopey was authorized to deny Mr. Baird's applications because California's licensing scheme contains the language "may issue".  (Penal Code § 26150(b)).

41. Upon information and belief, Sheriff Lopey's described conduct is performed at the direction of and/or with the knowledge and approval of Defendant Becerra.

42. There is no administrative appeal process available for challenging Sheriff Lopey's denial of Mr. Baird's applications for an open carry license.

43. Even if there were an available administrative appeal process to challenge Sheriff Lopey's denial of Mr. Baird's application for an open carry license, such 'process' would be futile because Sheriff Lopey informed Mr. Baird that he will not issue "open carry" licenses.

44. Upon information and belief, Sheriff Lopey has not issued any open carry firearm licenses during his tenure as Sheriff of Siskiyou County.

FIRST AMENDED COMPLAINT

45.  If the language of California's licensing scheme provided that the Sheriffs "shall issue" an open carry license to applicants who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, Sheriff Lopey would be required by law to issue an open carry license to Mr. Baird.

46. Mr. Baird would apply for an open carry license in a county other than Siskiyou County, but is prohibited by California Penal Code § 26150 (b) (2).

47.  California law requires open carry license applications be made in the county of residence.

48.  Mr. Baird seeks to carry a firearm loaded and exposed for self-protection outside of Siskiyou County, but is precluded by California State Penal Code § 26150 (b) (2), which provides that an open carry license is only valid in the county of issuance.

49.  If issued an open carry license. Mr. Baird's right to self-protection outside of his home will exist only within Siskiyou County.

50.  The moment Mr. Baird steps over the line from Siskiyou County into any other county in California, his open carry license becomes invalid, leaving him subject to criminal prosecution and incarceration. (See, Penal Codes § 25850, § 26350, § 26150, and § 26155).

51.  Mr. Baird, in fact, travels outside of Siskiyou County and intends to carry a handgun loaded and exposed for self-protection during such travels throughout the State of California.

52.  Irrespective of the frequency of Mr. Baird's travels outside of Siskiyou County, his right to open carry while traveling outside of his county of residence is being infringed and violated by California State Law and Defendant who, *inter alia,* enforce and direct the enforcement of such laws.

53.  Mr. Baird intends to exercise his Second Amendment right to carry a handgun outside of his home for self-protection, including carrying loaded and exposed, in Siskiyou County and throughout the State of California, with or without a license to carry, as he is not a person prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm who seeks to exercise a core right protected by the Second Amendment.

FIRST AMENDED COMPLAINT

*Plaintiff Richard Gallardo: Shasta County*

54.  Plaintiff Richard Gallardo is an individual of unquestionably good moral character, a law-abiding citizen, and has never been charged with, summoned, or arrested for any violation of the California State Penal Code or any other criminal offense.

55.  Mr. Gallardo is not a person prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

56.  Mr. Gallardo does not hold a California firearm license and does not fall within any of the exemptions to the California Penal Code sections criminalizing the possession of firearms, whether loaded or unloaded.

57.  Mr. Gallardo possesses firearms in his home for self-defense.

58.  Under California law, no license is required to possess a firearm in one's home for self-defense.

59.  Mr. Gallardo seeks to carry a handgun for self-protection outside of his home.

60.  Mr. Gallardo also seeks to carry a handgun loaded and exposed for self-protection outside of his home and in public.

61.  Mr. Gallardo seeks to carry a firearm for self-protection outside of his home and in public without the need to demonstrate any "cause" or "reason" for the issuance thereof.

62.  Mr. Gallardo seeks to carry a firearm for self-protection outside of his home and in public without the government dictating the manner in which he carries his firearm - loaded and exposed, concealed, and/or unloaded and exposed.

63.  Mr. Gallardo is a resident of Shasta County, California. Shasta County has a population of less than 200,000 people. The residents of Shasta County are eligible to apply for an open carry firearm license under California's statutory firearms licensing scheme.

64.  Based on the population of Shasta County, its residents are eligible to apply for an open carry firearm license under California's statutory firearms licensing scheme.

65.  As a resident of the County of Shasta, Mr. Gallardo is prohibited from applying for a concealed carry or open carry license in any other county in California.

7

66.  Mr. Gallardo intends to carry a handgun outside of his home, open and exposed or otherwise, with or without a carry license.

67.  Mr. Gallardo intends to carry a handgun open and exposed outside of Shasta County.

### Shasta County Application Process Devoid of "Open Carry" Option

68.  The Shasta County written criteria for the issuance of a carry license does not contain an option for applying for an open carry license.

69.  The Shasta County written instructions for a "carry" license identify only "concealed carry".

70.  The Shasta County handgun licensing procedure has no option for individuals not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm to apply for an open carry license.

71.  The Shasta County Sheriff's Office Criteria and Requirements Form only mentions the process for applying for a Concealed Carry License.

72.  The Shasta County Sheriff's Office has no application form for an "Open Carry Renewal/Change".

73.  There are no forms available or used by the Shasta County Sheriff's Office for the purpose of applying for an "Open Carry" handgun license.

74.  The Shasta County Sheriff's website only provides information pertaining to applying for a "Concealed Carry Weapon" license, and no information pertaining to applying for an "Open Carry" license.

75.  The Shasta County application instructions entitled, "Concealed Weapon Permit Application Process" only pertains to applying for a concealed carry license. Shasta County has no instructions pertaining to applying for an open carry license.

76.  The Shasta County Sheriff's Office provides the approved firearm application form issued by the State of California Department of Justice (the "DOJ Application"), which is entitled, "Standard Application for License to Carry a Concealed Weapon (CCW)."

77.  Shasta County Sheriff Tom Bosenko ("Sheriff Bosenko") has not issued any open carry firearm licenses during his tenure in Shasta County.

8

78. Sheriff Bosenko has publicly declared that he will never issue an open carry firearm license because open carry would cause a lot of angst, fear, and concern for his deputies.

79. Sheriff Bosenko stated publicly that, to his knowledge based on his regular meetings with the Sheriffs around the State, none of the Sheriffs serving in § 26150 (b) (2) counties in California have ever issued "open carry" pistol licenses. Upon information and belief, Sheriff Bosenko and all other Sheriffs in the State of California are refusing to issue open carry firearm licenses at the direction of and/or with the knowledge and approval of Defendant Becerra.

80. Mr. Gallardo applied to Sheriff Bosenko's office for an open carry license on more than one occasion. Each of Mr. Gallardo's applications for an open carry license were denied by the Shasta County Sheriff's Office.

81. The Shasta County Sheriff's Office explained, "We don't offer a license to carry loaded and exposed in Shasta County. This type of license is only good in the county issued and we would have to extend this option to all permit holders."

82. Mr. Gallardo has met the criteria for the issuance of an open carry license, yet the "may issue" language of California's licensing scheme gives Sheriff Bosenko the authority to deny the application. (Penal Code §26150 (b)).

83. If the language of California's licensing scheme provided that the Sheriffs "shall issue" an open carry license to applicants who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, Sheriff Lopey would be required by law to issue an open carry license to Mr. Baird.

84. Mr. Gallardo would apply for an open carry license in a county other than Shasta County, but is prohibited by California Penal Code 26150 (b) (2). California law requires open carry license applications be made in the county of residence. Open carry licenses are invalid outside of the county of issuance.

85. Mr. Gallardo does not have a residence outside of Shasta County and is, therefore, ineligible to apply for an open carry license in any other county.

86. There is no administrative appeal process available for challenging Sheriff Bosenko's denial of Mr. Gallardo's applications for an open carry license.

9

FIRST AMENDED COMPLAINT

87.  Even if there were an available administrative appeal process to challenge Sheriff Bosenko's denial of Mr. Gallardo's application for an open carry license, such 'process' would be futile because Sheriff Bosenko admitted that he does not, and will not, issue open carry licenses in Shasta County.

88.  Mr. Gallardo seeks to carry a firearm loaded and exposed for self-protection outside of Shasta County, but is precluded by California State Penal Code § 26150 (b) (2), which provides that an open carry license is only valid in the county of issuance.

89.  If Mr. Gallardo is ultimately issued an open carry license, his right to self-protection outside of his home will exist only within Shasta County. The moment Mr. Gallardo steps over the line from Shasta County into any other county in California, his open carry license would become invalid, leaving him subject to criminal prosecution and incarceration. See, Penal Codes § 25850, § 26350, § 26150, and § 26155.

90.  Mr. Gallardo, in fact, travels outside of Shasta County and intends to carry a handgun loaded and exposed for self-protection during such travels throughout the State of California.

91.  Irrespective of the frequency of Mr. Gallardo's travels outside of Shasta County, his right to open carry while traveling outside of his county of residence is infringed and violated by California State Law.

92.  Mr. Gallardo intends to exercise his Second Amendment right to open carry in Shasta County and throughout the State of California, with or without an open carry license, as he is a law-abiding citizen, with no state or federal prohibitors to the possession of firearms, and seeks to exercise a core right protected by the Second Amendment, to wit, the right to open carry a firearm in public for self-protection.

### *California Penal Codes § 26150 and § 26155*

93.  Under California law, no license is required to possess a firearm, including handguns, in one's home for self-defense.

94.  With limited exceptions, carrying a weapon capable of being concealed (i.e., a handgun) upon the person or in a vehicle outside of one's residence is a crime in the absence of a license to carry issued by the government. Penal Code § 25850.

95.  To obtain a carry license, whether open carry or concealed carry, residents of California are required to apply to the statutory licensing authority, as enumerated in Penal Codes § 26150 and § 26155.

96.  Penal Codes § 26150 and § 26155 were enacted prior to the Supreme Court's holding in *McDonald v. Chicago*, 561 U. S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

97.  Penal Codes § 26150 and § 26155 were enacted under the false belief that the Second Amendment did not apply to the states.

98.  The issuance of a license to possess a handgun outside of one's home is wholly within the subjective discretion of the county sheriff under Penal Code § 26150 and the chief or other head of a municipal police department of any city or city and county under § 26155.

99.  Under each statute, the licensing authority is imbued with unfettered discretion to issue or deny an application possess a handgun outside of one's home by the language, "may issue a license".

100.  The investigation process for a license to carry a handgun involves an investigation by the California Department of Justice, which determines whether the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. See, Penal Code § 26195.

101.  A license to carry a handgun in public "shall not be issued if the Department of Justice determines that the [applicant] is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm." Penal Code § 26195.

102.  Despite the mandatory investigation under § 26195, the licensing authorities are imbued with unfettered discretion under § 26150 and § 26155 to issue or deny an application to possess a handgun outside of the home.

103.  Under § 26150 and § 26155, the licensing authority is imbued with unfettered discretion to subjectively judge whether applicant has proven s/he "is of good moral character" even though the applicant is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

11

FIRST AMENDED COMPLAINT

104. Under § 26150 and § 26155, the licensing authority is imbued with unfettered discretion to judge whether an applicant has proven that "good cause exists for issuance of the license".

105. Under § 26150 and § 26155, even where the above criteria have been satisfied, the licensing authority is imbued with unfettered discretion to issue or deny a (i) license to carry concealed or (ii) where the population of the county is less than 200,000 persons, a license to carry a handgun loaded and exposed.

106. Under § 26150 and § 26155, even where the above criteria have been satisfied, the licensing authority is imbued with unfettered discretion to deny an application for an open carry license.

107. Under § 26150 and § 26155, a license to carry open and exposed ("open carry") is only valid within the issuing county.

108. Under § 26150 and § 26155, a license to carry open and exposed ("open carry") can only be issued in a county with a population of less than 200,000.

109. Under § 26150 and § 26155, the licensing authority is imbued with unfettered discretion to impose whatever restrictions and conditions that s/he deems warranted including, but not limited to, restrictions as to the time, place, manner, and circumstances under which the licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the person, over and above those enumerated by the California State Legislature.

110. Under Penal Code 26175 (a) (1), applications for carry licenses "shall be uniform throughout the state, upon forms to be prescribed by the Attorney General."

111. The California Department of Justice ("DOJ") creates and provides to the state Sheriff's Offices standard Concealed Carry ("CCW") Application Forms. See, Penal Code § 26175.

112. Penal Code § 26175 prohibits the licensing authority from creating or offering an application for an open carry license that was not created by the California DOJ.

113. Under § 26175 (2), a committee composed of one representative of the California State Sheriffs' Association, one representative of the California Police Chiefs Association, and

12

1    one representative of the Department of Justice is convened to review, and, as deemed

2    appropriate, revise the standard application form for carry licenses.

3         114.  The California DOJ has not created, nor does it distribute to the various licensing

4    authorities in the state, a form application for an open carry license.

5         115.  The licensing authorities in this state, along with Defendant Becerra, collectively

6    consented to, and effectuated, a ban on the right to carry a handgun outside of the home for self-

7    defense.

8         116. The licensing authorities in this state, along with Defendant Becerra, collectively

9    consented to, and effectuated, a ban on the open carriage of handguns in this state

10        117.  For the time period encompassing 2012 to the commencement of this action, none of

11   the counties in California that have populations of less than 200,000 people (aka "26150(b)(2)

12   counties") have issued open carry licenses.

13        118.  California Penal Code § 26225 requires that a copy of all firearms licenses issued in

14   each county (open carry and concealed carry) be "filed immediately" with the California

15   Department of Justice ("DOJ").

16        119.  For the time period encompassing 2012 to the commencement of this action, the

17   DOJ's records reflect no open carry licenses have been issued in the State of California.

**STATEMENT OF LAW[1]**

**Public Carry is a Right, Not a Privilege**

20        120. "In short, it would take serious linguistic gymnastics—and a repudiation of this

21   Court's decision in *Heller*—to claim that the phrase 'bear Arms' does not extend the Second

22   Amendment beyond the home." *Rogers v. Grewal*, 140 S. Ct. 1865, 1869, 207 L. Ed. 2d 1059,

23   1063, 2020 U.S. LEXIS 3248, *9, 28 Fla. L. Weekly Fed. S 340 (U.S. June 15, 2020) (Thomas, J.

24   dissenting from denial of certiorari).

25        121.  As Justice Thomas clarified in *Rogers v. Grewal*, "at the time of the founding, as

26   now, to 'bear' meant to 'carry.' When used with 'arms,' . . . the term has a meaning that refers to

27   carrying for a particular purpose—confrontation." *Rogers*, 140 S. Ct. at 1868 citing, *Heller*, 554

28   _____

[1] The Statement of Law is integral to Plaintiffs' claims and prayers for declaratory and injunctive relief.

FIRST AMENDED COMPLAINT

1    U. S., at 584 (internal quotes omitted).

2         122.  "[T]he right to "bear arms" refers to the right to "'wear, bear, or carry upon the

3    person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or

4    defensive action in a case of conflict with another person.'" *Rogers*, 140 S. Ct. at 1868 (quoting

5    *Muscarello v. United States*, 524 U. S. 125, 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998)

6    (Ginsburg, J., dissenting) (alterations and some internal quotation marks omitted).

7         123. "The most natural reading of this definition encompasses public carry." *Rogers*, 140

8    S. Ct. at 1868 citing, *Peruta v. California*, 582 U. S. ___, ___, 137 S. Ct. 1995, 198 L. Ed. 2d

9    746, 748 (2017) (Thomas, J., dissenting from denial of certiorari).

10        124.  The majority of violent confrontations occur outside the home. See, *Rogers*, 140 S.

11   Ct. at 1868 citing, *Moore v Madigan*, 702 F.3d 933, 937 (7th Cir 2012) (noting that "most

12   murders occur outside the home" in Chicago). "Thus, the right to carry arms for self-defense

13   inherently includes the right to carry in public. This conclusion not only flows from the definition

14   of 'bear Arms' but also from the natural use of the language in the text. As I have stated before, it

15   is 'extremely improbable that the Framers understood the Second Amendment to protect little

16   more than carrying a gun from the bedroom to the kitchen.'" *Rogers*, 140 S. Ct. at 1868 citing,

17   *Peruta*, supra, at ___, 137 S. Ct. 1995, 198 L. Ed. 2d 746, 748 (Thomas, J. dissenting from denial

18   of certiorari).

19        125. "The meaning of the term 'bear Arms' is even more evident when read in the context

20   of the phrase 'right . . . to keep and bear Arms. [U. S. Const., Amdt. 2.] To speak of 'bearing'

21   arms solely within one's home would conflate 'bearing' with 'keeping,' in derogation of *Heller*'s

22   holding that the verbs codified distinct rights." Rogers, 140 S. Ct. at 1869 citing, *Drake v Filko*,

23   724 F3d 426, 444 (3d Cir 2013) (Hardiman, J., dissenting); *Moore*, supra, at 936.

24        126. Founding era legal commentators in America understood the Second Amendment

25   right to "bear Arms" to encompass the right to carry in public. *Rogers*, 140 S. Ct. at 1870.

26        127. An individual does not forfeit his right to self-protection by stepping outside of his

27   home. The right to self-protection is as great outside of one's home as it is inside the home.

28   *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012).

14

FIRST AMENDED COMPLAINT

**Multi-Tiered Scrutiny of Second Amendment Violations is "Made Up"**

128. "Many courts have resisted our decisions in *Heller* and *McDonald*. [citing *Silvester v. Becerra*, 583 U. S. ___, ___, 138 S. Ct. 945, 200 L. Ed. 2d 293, 299 (2018) (opinion dissenting from denial of certiorari)]. Instead of following the guidance provided in *Heller*, these courts minimized that decision's framework. [citing, *Gould v. Morgan*, 907 F. 3d 659, 667 (CA1 2018) (concluding that our decisions "did not provide much clarity as to how Second Amendment claims should be analyzed in future cases")]. They then 'filled' the self-created 'analytical vacuum' with a 'two-step inquiry' that incorporates tiers of scrutiny on a sliding scale. [citing *National Rifle Assn. of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F. 3d 185, 194 (CA5 2012); *Powell v. Tompkins*, 783 F. 3d 332, 347, n. 9 (CA1 2015) (compiling Circuit opinions adopting some form of the sliding-scale framework)]." *Rogers*, 140 S Ct 1865at 1866.

129. Of the states that require "good cause" or "proper cause" for the issuance of a carry license, like California and New York, the circuit courts have applied a test for scrutiny that is "**entirely made up**. The Second Amendment provides no hierarchy of 'core' and peripheral rights. And the Constitution does not prescribe tiers of scrutiny." *Rogers*, 140 S. Ct. at 1867 (emphasis added) citing, *Whole Woman's Health v. Hellerstedt*, 579 U. S. ___, ___, 136 S. Ct. 2292, 195 L. Ed. 2d 665, 706 (2016) (Thomas, J., dissenting); *Heller v District of Columbia*, 399 U.S. App DC 314, 670 F.3d 1283, 1247 (2011) (*Heller II*), supra, at 1283 (Kavanaugh, J., dissenting) (listing constitutional rights that are not subject to means-ends scrutiny).

130. "[T]here is nothing in our Second Amendment precedents that supports the application of what has been described as 'a tripartite binary test with a sliding scale and a reasonable fit.'" *Rogers*, 140 S. Ct. at 1867 citing, *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1117 (SD Cal. 2017), aff 'd, 742 Fed. Appx. 218 (CA9 2018).

**Application of the "Made Up" Scrutiny Test Yields Analyses Inconsistent with *Heller***

131. "Even accepting this test on its terms, its application has yielded analyses that are entirely inconsistent with *Heller*. There, we cautioned that "[a] constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all," stating that our

15

1  constitutional rights must be protected "whether or not future legislatures or (yes) even future

2  judges think that scope too broad." *Rogers*, 140 S. Ct. at 1867 citing, *Heller*, 554 U. S. at 634-

3  635.

4      132. While erroneously applying a "made up" test inconsistent with the holding in *Heller,*

5  [see, *Rogers v Grewal*, 140 S Ct at 1867] the Ninth Circuit has held that the "concealed carry" of

6  firearms is merely a 'privilege' and not a core right subject to the protections of the Second

7  Amendment. *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (*Peruta II*)

8  (cert. den.).

9          **"Interest Balancing" Public Safety Inquiries Were Explicitly Rejected by *Heller***

10      133. "The Second Amendment provides no hierarchy of 'core' and peripheral rights. And

11  the Constitution does not prescribe tiers of scrutiny. On that basis, we explicitly rejected the

12  invitation to evaluate Second Amendment challenges under an 'interest-balancing inquiry, with

13  the interests protected by the Second Amendment on one side and the governmental public-safety

14  concerns on the other...But the application of the test adopted by the courts of appeals has

15  devolved into just that." *Rogers*, 140 S. Ct. at 1867.

16      134. "In fact, at least one scholar has contended that this interest-balancing approach has

17  ultimately carried the day, as the lower courts systematically ignore the Court's actual holding in

18  *Heller*. See Rostron, Justice Breyer's Triumph in the Third Battle Over the Second Amendment,

19  80 Geo. Wash. L. Rev. 703 (2012). With what other constitutional right would this Court allow

20  such blatant defiance of its precedent?" *Rogers*, 140 S. Ct. at 1867.

21          **Law Enforcement Has No Duty to Protect Any Individual**

22      135. It is well-settled that law enforcement has no duty to protect the individual. See,

23  *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint

24  where police failed to take steps to respond to the continued threats, harassment and violence by

25  estranged husband because "there is, in general, no constitutional duty of state officials to protect

26  members of the public at large from crime."); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L.

27  Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th

28  Cir 1987); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982).

FIRST AMENDED COMPLAINT

136. Not only does the individual have the right to self-protection, s/he has the duty of self-protection at home and in public because of the absence of law enforcement to protect any individual.

137. The Supreme Court has recognized that the individual's right to self-defense is as critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia v. Heller*, 554 US at 595-599; *McDonald*, 561 U.S. at 776.

**California's Handgun Licensing Scheme**

138. With limited exceptions, carrying a weapon capable of being concealed (i.e., a handgun) upon the person or in a vehicle outside of one's residence is a crime in the absence of a license to carry a handgun issued by the government. Penal Code § 25850.

139. Openly carrying an unloaded handgun upon one's person outside of the home is a crime. See, Penal Code § 26350.

140. To obtain a license to carry a handgun, whether for open carry or concealed carry, residents of California are required to apply to the statutory licensing authority, as enumerated in Penal Codes § 26150 and § 26155.

141. Penal Codes § 26150 and § 26155 were enacted prior to the Supreme Court's holding in *McDonald v. Chicago*, 561 U. S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

142. Penal Codes § 26150 and § 26155 were enacted under the false belief that the Second Amendment did not apply to the states.

143. Under California's licensing scheme, the issuance of a license to possess a handgun outside of one's home is wholly within the subjective discretion of the county sheriff under § 26150 and the chief or other head of a municipal police department of any city or city and county under § 26155.

144. For every carry license issued, each licensing authority is imbued with unfettered discretion to impose whatever restrictions and conditions that s/he deems warranted including, but not limited to, restrictions as to the time, place, manner, and circumstances under which the licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the person, over and above those enumerated by the California State Legislature.

17

FIRST AMENDED COMPLAINT

145. Under Penal Code § 26175 (a) (1), applications for carry licenses "shall be uniform throughout the state, upon forms to be prescribed by the Attorney General."

146. The California Department of Justice ("DOJ") creates and provides to the state Sheriff's Offices standard Concealed Carry ("CCW") Application Forms. See, Penal Code § 26175.

147. Penal Code § 26175 prohibits the licensing authority from creating or offering an application for an open carry license that was not created by the California DOJ.

148. Under § 26175 (2), a committee composed of one representative of the California State Sheriffs' Association, one representative of the California Police Chiefs Association, and one representative of the Department of Justice is convened to review, and, as deemed appropriate, revise the standard application form for carry licenses.

149. The California DOJ has not created, nor does it distribute to the various licensing authorities in the state, a form application for an open carry license.

150. The licensing authorities in this state, along with Defendant Becerra, collectively consented to and effectuated a ban on the open carriage of handguns in this state.

151. For the time period encompassing 2012 to the commencement of this action, none of the counties in California that have populations of less than 200,000 people (aka "26150(b)(2) counties") have issued open carry licenses.

152. California Penal Code § 26225 requires that a copy of all firearms licenses issued in each county (open carry and concealed carry) be "filed immediately" with the California Department of Justice ("DOJ").

153. For the time period encompassing 2012 to the commencement of this action, the DOJ's records reflect no open carry licenses have been issued in the State of California.

**"May Issue" Discretion of § 26150 and § 26155**

**Violates the Second Amendment**

154. Every application for a handgun carry license requires an investigation by the California DOJ to determine whether the applicant is prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. See, Penal Code § 26195.

18

---

FIRST AMENDED COMPLAINT

155. Under § 26150 (a) and § 26155 (a), even where an applicant is not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm, the licensing authority has the discretion to deny the carry application.

156. The language in § 26150 (a) and § 26155 (a) that a licensing authority "may issue a license", authorizes but does not require, the licensing authority to issue, a handgun carry license.

157. This discretionary power subjects the Second Amendment right to carry arms for self-protection outside of the home to the discretionary whims of the government.

**Subjective "Moral Character" Discretion of § 26150 and § 26155**

**Violates the Second Amendment**

158. The licensing authorities are imbued with unfettered discretion to issue or deny an application to possess a handgun outside of one's home even where an applicant has no prohibitors to firearm possession under state or federal law.

159. Under Penal Codes § 26150 and § 26155, the licensing authority has unfettered discretion to deny the issuance of handgun carry license to an applicant who is not otherwise prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm simply because the licensing authority feels that the applicant does not have "good moral character".

160. The subjective and discretionary "moral character" language of § 26150 and § 26155 violates the Second Amendment.

**"Good Cause" Requirement of § 26150 and § 26155**

**Violates the Second Amendment**

161.  Under § 26150 (a) (2) and § 26155 (a) (2), an applicant must demonstrate "good cause" for the issuance of a carry license, whether for open carry or concealed carry.

162. Requiring an individual to prove "good cause" before a license to carry a handgun outside of the home – whether for a concealed carry license or an open carry license - violates the Second Amendment. See, *Rogers*, 140 S. Ct. at 1868 (quoting *Muscarello v. United States*, 524 U. S. 125, 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998) (Ginsburg, J., dissenting) (alterations and some internal quotation marks omitted) ("[T]he right to "bear arms" refers to the right to

19

"'wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person.'"

**The "Good Cause" Requirement Bans an Enumerated Right**

163. "It appears that a handful of States throughout the country prohibit citizens from carrying arms in public unless they can establish 'good cause' or a 'justifiable need' for doing so. The majority of States, while regulating the carrying of arms to varying degrees, have not imposed such a restriction, which amounts to a ban on the ability of most citizens to exercise an enumerated right." *Rogers*, 140 S. Ct. at 1874 citing, *Wrenn v District of Columbia*, 431 US App DC 62, 78, 864 F3d 650, 666 (2017) (internal alterations omitted).

164. The average person cannot establish "good cause", which is commonly defined in the Ninth Circuit and other circuits demonstrating a need for self-protection that is greater than the average person, requiring documented threats of violence that establish the applicant is a target and at risk for specific harm.

165. "Good cause" in California is rarely established because members of the general public have not had specific threats made against them nor can the average person demonstrate that they are being targeted for violent acts.

166. The definition of "good cause" in California does not include the basic human right to self-protection outside of one's home.

167. The subjective nature of what constitutes "good cause" for the issuance of a carry license vary from county to county as determined by the sheriff in office at the time; the definition is subject to change at the whim of the sitting sheriff and/or when a new sheriff is elected.

168. The "good cause" requirement amounts to a total ban on public carry for the typical law-abiding citizen.

169. When the "good cause" requirement is analyzed regarding its effect on the typical law-abiding citizen, it prevents and precludes the typical member of society from self-protection outside of their home. See, *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (DC Cir 2017) ("…the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in

the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen.").

170. The very objective of the "good cause" requirement is to eliminate the public carriage of firearms. Because the average person cannot establish "good cause" as defined under California jurisprudence, few "concealed carry" licenses are issued in this state.

171. The "good cause" requirement has, in fact, prevented the issuance of any open carry license in the State of California since 2012.

172. The "good cause" requirement is *per se* unconstitutional because it requires individuals to distinguish themselves from the typical law-abiding citizen, however, fundamental rights like the right to self-protection are the same for all non-prohibited persons.

173. No individual who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm can be required to prove they are entitled to protect themselves from harm, particularly when law enforcement has no duty to protect the individual.

174. Plaintiffs' right to self-protection exists wherever they are – whether in public or at home – its value and inalienability does not change based on their location.

175. A person does not lose his right to protect himself simply by walking outside of his front door. See, *District of Columbia v. Heller*, 554 US at 595-599 (The basic human right to self-defense is inseparable from the individual. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental outside of the home as it is inside of the home.).

176. By requiring "good cause" for the issuance of any carry license – open or concealed – California's licensing scheme violates the Second Amendment.

177. To the extent that the Ninth Circuit upheld "good cause" requirements for the issuance of a concealed carry license based on the view that the Second Amendment does not extend to the concealed carry of firearms in public by members of the general public, [*Peruta v County of San Diego*, 824 F3d at 939] the "good cause" requirement for the issuance of an open carry license violates the Second Amendment.

FIRST AMENDED COMPLAINT

178. The "good cause" requirement for the issuance of a license to carry a handgun under California Penal Code § 26150 and § 26155 should be declared a violation of the Second Amendment and should be enjoined from enforcement and stricken as unconstitutional.

179. Alternatively, those portions of California Penal Code § 26150 and § 26155 requiring an applicant to show "good cause" for the issuance of an "open carry" firearm license should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**The Government's Authority to Dictate How Handgun is Carried, Possessed, and Worn Violates the Second Amendment**

180.  California's licensing scheme, which creates two separate handgun carry licenses – concealed carry and open carry – violates the Second Amendment by interfering with the manner in which an individual chooses to wear, carry, and possess his/her firearm outside of the house.

181. Under § 26150 (b) and § 26155 (b), the licensing authority, not the individual, decides how his/her handgun will be carried, worn, and possessed for self-protection outside of the home.

182. Via the "may issue" language of § 26150 (b) and § 26155 (b) the licensing authority has unfettered discretion to issue a concealed carry license, an open carry license, or neither, but not both.

183. Conversely, § 26150 (b) and § 26155 (b) grant the government unfettered discretion to deny an application for an open carry license and, instead issue a concealed carry license via the "may issue" language.

184. The government's interference with the manner in which an individual carries, wears, and possesses his/her handgun for self-protection in public violates the Second Amendment.

185.  The term "bears a firearm" refers to an individual "carrying the weapon on or about his person for the purpose of being armed and ready for offensive or defensive action in case of a conflict." *Muscarello v United States*, 524 US 125, 139-140 (1998) (Justice Ginsberg, dissenting opinion), citing, Black's Law Dictionary 214 (6th ed. 1990) (defining the phrase "carry arms or weapons").  "On or about his person" necessarily means one's body or within his area of reach.

FIRST AMENDED COMPLAINT

186. The government's interference with the manner in which a law-abiding individual can bear arms in public unlawfully infringes upon the Second Amendment and fails to promote any significant, substantial, or important government objective. *Pena v Lindley*, 898 F3d 969, 979 (9th Cir 2018), citing, *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 965 (9th Cir. 2014).

187. A firearm in the hands of a person not prohibited under state or federal law from possessing, receiving, or purchasing a firearm, such as Plaintiffs, is a tool for the protection of self and family.

188. A non-prohibited person carrying a firearm, such as Plaintiffs, is no more likely to commit a crime with that firearm than he is likely to commit a crime with the car he drives, the knife in his tackle box, or the axe in his shed.

189. California strives to eliminate the public carry of firearms altogether, as borne out by California's licensing scheme which requires of "good cause" for the issuance of any type of carry license whether for concealed carry or open carry.

190. Defendant Becerra, dubbed "The Enemy of the Second Amendment"[2], has consistently taken steps in his professional capacity to restrict Second Amendment rights.

191. A non-prohibited person should not face criminal prosecution simply because s/he has made the tactical decision to carry a lawfully owned firearm in the small of the back holster, in a pocket, or underneath a sweater or jacket.

192. Concealed carry is the universally preferred method of law-abiding individuals, including Plaintiffs, to carry a firearm, for reasons including tactical advantage over an attacker, convenience of carry location, accessibility to one's firearm for self-defense, and practical considerations relating to one's wardrobe.

193. With the commencement of governmental regulation of the possession of firearms, legislative statutes and judicial case law have unconstitutionally redefined the term "concealed". "Concealment" was historically synonymous with an intention to hide or cover up forbidden conduct and/or objects, denoting malintent and a criminal *mens rea*.

---

[2] NRA-ILA January 7, 2017.

FIRST AMENDED COMPLAINT

194.  An individual who is lawfully carrying a firearm on their person in public – whether openly such that the firearm can be readily seen, or in a waistband holster covered by a winter jacket – is simply "carrying" their firearm. An individual exercising their right to self-protection has no malintent and no intention to use their firearm to commit a crime.

195.  The definition of "open carry" or "exposed carry" cannot be conclusively established and creates an unlawful legal burden and risk of criminal prosecution on the law-abiding individual.  An individual with a duly-issued open carry license who puts on a coat in the wintertime, is now 'concealing' his firearm. A woman wearing a dress upon which it would be impossible to secure a firearm "exposed", will necessarily be stripped of the right to protect herself in public because she will be prosecuted as a criminal if she carries her firearm holstered underneath her dress or in her purse.

196.  In 1863, California passed legislation banning concealed carry of firearms due to the high rate of crime during the Gold Rush.[3] As the San Francisco newspaper The Daily Alta California explained it:

> *"During the thirteen years that California has been a State, there have been more deaths occasioned by sudden assaults with weapons previously concealed about the person of the assailant or assailed, than by all other acts of violence which figure on the criminal calendar.… Heretofore there has been no law passed which would remedy the evil. Public opinion, as expressed through the action of our legislators, seems to have sanctioned the custom, barbarous though it be. For many sessions prior to the last, ineffectual efforts were made to enact some statute which would effectually prohibit this practice of carrying concealed weapons. A radical change of public sentiment demanded it, but the desired law was not passed until the last Legislature, by a handsome majority, enacted the subjoined act, entitled "An Act to prohibit the carrying of concealed weapons."*

197.  Only 7 years later, California repealed the concealed carry ban. The Sacramento Daily Union published an editorial discussing the 1870 repeal of the concealed-carry ban:

---

[3] NRA Institute for Legislative Action, Tuesday January 1, 2013, *citing,* "Three Years in California", Borthwick, J.D. (1857); Gunfighters, Highwaymen, & Vigilantes", McGrath, Roger (1984).

FIRST AMENDED COMPLAINT

*"There is reason to believe it was generally observed by the vast majority of good citizens. There is as good reason to believe it was not observed by the vast majority of roughs, fighting men, and predatory characters. In many cases of assault between quiet citizens and these last named characters, it was found that the good citizen had to defend himself unarmed against the predacious one with arms, the former suffering for his respect of the law. It was also found that the police were apt to arrest any quiet citizen on whom they discovered concealed weapons, while they paid little attention to the roughs who were known to carry arms habitually."*[4]

198.  Criminals, by definition, do not follow the law. No purpose is served by restricting law-abiding people from carrying their firearms in the manner they feel most comfortable and are better able tactically to protect themselves.

199. "Laws preventing law-abiding citizens from carrying firearms for self-protection… become an abomination in practice…plac[ing] the peaceful citizen completely at the mercy of a class whose offenses against order it was intended to check, but did not, owing to the remissness in duty of the guardians of the law." Sacramento's experience was the immediate cause of the "repealing movement … where bands of armed roughs, scorning the law against carrying concealed weapons, were perpetrating highway robberies on quiet, unarmed citizens, who could not prepare for self-defense without danger of being arrested and fined every day."

200. "The editorial acknowledged that one of the good things hoped for had happened in the intervening months:

*"It was reasoned with much plausibility that if the roughs once knew that quiet citizens might prepare to defend themselves without danger of being punished for misdemeanor, the bare suspicion that such a person had about him a weapon would disarm the roughs and prevent robberies. This has in fact been one of the results."*

201.  Arguing against the reasons, the State of California repealed the ban on concealed carry. The Daily Alta newspaper editorialized, in part, "To put a thing in its customary and convenient receptacle is not concealment. Concealment is a matter of motive…"[5]

---

[4] NRA Institute for Legislative Action, Tuesday January 1, 2013.
[5] NRA Institute for Legislative Action, Tuesday January 1, 2013, *citing,* The Daily Alta California, 1869.

25

202.  California Penal Code §25850 makes it a crime to carry a loaded firearm on one's person or in a vehicle, without regard to whether it is carried concealed or openly, while in any public place or on any public street in an unincorporated city, or any public place or public street in a prohibited area of an unincorporated territory.

203.  Plaintiffs seeks to carry their firearms in public in the manner of their choosing, concealed or open, throughout the State of California.

204.  The Second Amendment includes the right to carry a firearm in public. If an individual is not prohibited by state or federal law from possessing firearms, the government violates the Second Amendment by dictating and/or controlling how that person carries, wears, or otherwise possesses his/her firearm in public.

205. By eliminating Plaintiffs' ability to choose how to defend themselves in public and their tactical decision-making ability regarding how to carry their firearms, California's firearm licensing scheme unlawfully burdens and infringes upon Plaintiffs' Second Amendment rights.

206. There is no legitimate, measurable, or quantifiable impact on public safety that justifies California's interference with Plaintiffs' ability to choose how to carry their firearms for self-defense in public – and even of there were, the Supreme Court has conclusively rejected public safety "interest balancing" when it comes to Second Amendment rights. See, *Rogers*, supra.

207. California's firearm licensing scheme interfering with the manner in which non-prohibited people carry his/her firearm in public should be declared a violation of the Second Amendment, enjoined from enforcement, and stricken as unconstitutional.

**Open Carry License Restriction by County of Issuance and Population Size**

**Violates the Second Amendment**

208. A license to carry a handgun loaded and exposed can only be applied for in counties with a population under 200,000. See, § 26150 (b) and §26155 (b).

209. An open carry license issued under § 26150 (b) and § 26155 (b) is only valid in the county of issuance.

FIRST AMENDED COMPLAINT

210. The geographical and population restrictions of § 26150 (b) and § 26155 (b) violate the Second Amendment by forcing Plaintiffs to choose between being criminally prosecuted under § 25820 (carrying a loaded handgun) or § 26350 (if carrying open and unloaded) or exercising their preexisting rights as protected by the Second Amendment.

211. If an individual who is duly issued an open carry license carries his firearm loaded and exposed in a county other than his county of residence (the county of issuance) he will be subject to criminal penalties and sanctions, up to and including imprisonment. (Penal Code § 25850).

212. Individuals who are issued an open carry license in their home county are rendered unarmed and defenseless when traveling to any other part of California.

213. If Plaintiffs are issued an open carry license and thereafter choose to leave their firearms home while traveling to other counties in California, they will be left defenseless and unarmed.

214. While governmental regulations on sensitive areas, such as schools and courthouses have been upheld by the courts as presumptively lawful (*Heller*, 554 US at 626), California's broad and overreaching geographical (1) limitation on the validity of open carry licenses; and (2) ban on the issuance of an open carry license based on population size, eviscerates a core right of the individual to "open carry" for self-protection outside of the home.

215. Restricting the open carry of firearms from entire counties in the state based on population size unlawfully implicates a core Second Amendment right, serves no legitimate governmental interest, and has no provable or quantifiable effect on public safety – and even if it did, the Supreme Court has definitively rejected public safety interest balancing in Second Amendment analyses. See, *Rogers*, supra.

216. To the contrary, the danger to the individual and need for the protections of the Second Amendment increase in direct proportion to the increase in population density, due to the corresponding increase in criminals and criminal activity in highly populated areas. Preventing open carry by law-abiding individuals in high crime/highly populated areas does not increase public safety. To the contrary, the open carry of firearms by law-abiding people in highly

27

1  populated, high crime areas will decrease the rate of criminal activity.

2      217. California's firearm licensing scheme restricting the open carriage of firearms from

3  entire counties in the state based on population size should be declared a violation of the Second

4  Amendment, enjoined from enforcement, and stricken as unconstitutional.

5                  **California's Unloaded Carry Restrictions Are Unconstitutional**

6                                  **(Second Amendment Violation)**

7      218. A core right of the Second Amendment is the right of the law-abiding individual to

8  carry a firearm ("bear arms") outside of the home. See cases cited, *supra.* An open carry license

9  issued under § 26150(b) or § 26155(b) would permit Plaintiffs to carry a firearm in public

10  "loaded and exposed".

11      219. California Penal Code § 26350 makes it a crime to open carry an unloaded handgun,

12  whether on one's person, inside a vehicle, or on a vehicle. A violation of § 26350 carries penalties

13  of imprisonment up to one year and/or fines.

14      220.  Should Plaintiffs be issued open carry licenses and encounter a circumstance

15  wherein their respective handguns are in an unloaded state while in public, Plaintiffs would face

16  criminal prosecution and penalties, including imprisonment.

17      221.  Should Plaintiffs be issued open carry licenses, they may also face circumstances

18  wherein they possess their handgun inside of their respective vehicles in an unloaded state and

19  would therefore face criminal prosecution and penalties including imprisonment under Penal

20  Code § 26350.

21      222. The enforcement of § 26350 against individuals who are licensed to carry a handgun

22  loaded and exposed violates the Second Amendment as an infringement on the manner in which

23  an individual chooses to protect himself/herself outside of the home.

24      223. Likewise, the enforcement of § 26350 against individuals who are not otherwise

25  prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm

26  violates the Second Amendment.

27      224.  California Penal Code § 26350 should be declared unconstitutional as applied to

28  open carry licensees, enjoined from enforcement, and stricken as unconstitutional.

FIRST AMENDED COMPLAINT

1

**Penal Code § 25850**

2

**Violates the Second Amendment**

3      225. Penal Code § 25850 criminalizes the possession of a loaded firearm, open or

4 concealed.

5      226. The prosecution of individuals who are not otherwise prohibited under state or

6 federal law from possessing, receiving, owning, or purchasing a firearm violates the Second

7 Amendment.

8      227. California Penal Code § 25850 should be declared unconstitutional as applied to

9 individuals who are not otherwise prohibited under state or federal law from possessing,

10 receiving, owning, or purchasing a firearm, enjoined from enforcement, and stricken as

11 unconstitutional.

12                    **DECLARATORY JUDGMENT ALLEGATIONS**

13 228.  There is an actual and present controversy between the parties. Plaintiffs contend their

14 Second Amendment rights were violated in that: (1) California Penal Codes § 26150 and § 26155

15 violate the fundamental right to self-protection by carrying handguns outside of the home by (i)

16 imbuing the licensing authorities with discretion to deny handgun carry licenses even where the

17 applicant is not prohibited under state or federal law from possessing, receiving, owning, or

18 purchasing a firearm under the language "may issue"; (ii) empowering licensing authorities to

19 deny handgun carry licenses based on a subjective opinion that an applicant does not possess

20 "good moral character" even where the applicant is not prohibited under state or federal law from

21 possessing, receiving, owning, or purchasing a firearm; (iii) requiring "good cause" for the

22 issuance thereof; (iv) arbitrarily and subjectively demarcating the manner in which individuals

23 choose to carry, wear, and possess their firearms for self-protection outside of the home; (v)

24 empowering the licensing authority to decide for the applicant how s/he can carry, wear, and

25 possess their firearms for self-protection outside of the home; (vi) restricting the authority and

26 validity of open carry licenses to the county of issuance; (vii) restricting open carry to counties

27 based on population size; (viii) imbuing the licensing authorities with discretion to deny an

28 application for an open carry license; (2) California Penal Code § 26350 criminalizes the open

29

1    carriage of an unloaded handgun by non-prohibited persons for self-protection outside of the

2    home; (3) California Penal Code § 25850 violates the right of non-prohibited persons to carry a

3    loaded handgun in public for self-protection, whether open or concealed carry; (4) that California

4    Penal Code § 25850 violates the right of individuals who possess an open carry license to self-

5    protection outside of the county of issuance.

6          229. Defendant denies these contentions.

7          230. Plaintiffs seek a judicial declaration that California Penal Codes § 26150,

8    § 26155, § 25850, and § 26350 violate Plaintiffs' Second Amendment rights in the manner

9    described in detail herein.

10         231. Plaintiffs also seek a judicial declaration that California's licensing scheme violates

11   Plaintiffs' Second Amendment rights to carry a handgun for self-protection outside of the home,

12   whether open or concealed, loaded, or unloaded.

13         232. Plaintiffs should not have to risk criminal prosecution in order to exercise the core

14   fundamental rights detailed herein.

15                          **INJUNCTIVE RELIEF ALLEGATIONS**

16         233.  Plaintiffs are being continuously injured, in fact, by the violation of the preexisting

17   rights protected by the Second Amendment as a result of (1) Defendant's enforcement of the

18   "may issue a license" language of Penal Codes § 26150 (a) and § 26155 (a) leaving issuance of a

19   handgun carry license to the subjective whims of the licensing authority even where an

20   investigation by the California DOJ has determined that the applicant is not prohibited by state or

21   federal law from possessing, receiving, owning, or purchasing a firearm; (2) Defendant's

22   enforcement of the "moral character" language of Penal Codes § 26150 (a) and § 26155 (a)

23   leaving issuance of a handgun carry license to the subjective whims of the licensing authority

24   even where an investigation by the California DOJ has determined that the applicant is not

25   prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm; (3)

26   Defendant's enforcement of the requirement that an applicant demonstrate "good cause" for the

27   issuance of a license to carry a handgun for self-protection outside of the home, whether open

28   carry or concealed carry; (4) Defendant's enforcement of the "may issue a license" language of

30

1  Penal Codes § 26150 (b) and § 26155 (b) imbuing discretion in the licensing authority decide the

2  "format" of a carry license, by which the government dictates how an applicant can and cannot

3  wear, carry, and possess a handgun for self-protection outside of the home; (5) Defendant's

4  enforcement of California Penal Codes § 26150 and § 26155 restricting the authority and validity

5  of open carry licenses to the county of issuance; (6) Defendant's enforcement of California Penal

6  Codes § 26150 and § 26155 banning the open carriage of firearms in counties with a population

7  over 200,000 persons and/or based on population size; (7) Defendant's enforcement of the "may

8  issue" language of California Penal Codes § 26150 (b) (2) and § 26155 (b) (2) leaving the

9  issuance of an open carry license to the discretion of the licensing authority; (8) Defendant's

10  enforcement of California Penal Code § 26350 criminalizing the open carriage of a unloaded

11  handgun by a non-prohibited person for self-protection outside of the home; (9) Defendant's

12  enforcement of California Penal Code § 25850 criminalizing the possession of a loaded firearm,

13  whether concealed or open, by a non-prohibited person; (10) Defendant's enforcement of

14  California Penal Code § 25850 criminalizing the open carriage of a loaded firearm outside of the

15  county of issuance.

16      234. Plaintiffs should not have to risk criminal prosecution in the exercise of their

17  fundamental right to self-protection outside of the home.

18      235. Defendant denies the contentions stated herein.

19                                    **COUNT I**

20                    **"May Issue" Discretionary Authority**

21                       **§ 26150 (a) and § 26155 (a)**

22      236. Repeats and realleges paragraphs "1" through and including "235" as if set forth in

23  their entirety herein.

24      237. The discretionary language "may issue a license" to carry in California Penal Codes

25  § 26150 (a) and § 26155 (a) violates the Second Amendment.

26      238. Under the theory that Defendant is liable to Plaintiffs for violations of their

27  constitutional rights pursuant to 42 U.S.C. §1983.

28

FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

### "Moral Character" Determination

### § 26150 (a) (1) and § 26155 (a) (1)

239. Repeats and realleges paragraphs "1" through and including "238" as if set forth in their entirety herein.

240. The "good moral character" determination by a licensing authority in California Penal Code § 26150 (a) (1) and § 26155 (a) (1) violates the Second Amendment.

241. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT III

### "Good Cause" Requirement

### § 26150 (a) (1) and § 26155 (a) (1)

242. Repeats and realleges paragraphs "1" through and including "241" as if set forth in their entirety herein.

243. The "good cause" requirement of California Penal Codes § 26150 (a) and § 26155 (a) for the issuance of license to carry a handgun for self-protection outside of the home violates the Second Amendment.

244. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT IV

### Discretionary Authority to Dictate How Handgun is Carried, Possessed and Worn

### of § 26150 (b) and § 26155 (b)

245. Repeats and realleges paragraphs "1" through and including "244" as if set forth in their entirety herein.

246. California Penal Codes § 26150 (b) and § 26155 (b) violate the Second Amendment by imbuing the government with the discretion to decide for an individual how they can and cannot carry, wear, and possess a lawfully owned handgun for self-protection outside of the home.

FIRST AMENDED COMPLAINT

1    247. Under the theory that Defendant is liable to Plaintiffs for violations of their

2    constitutional rights pursuant to 42 U.S.C. §1983.

3                                    **COUNT V**

4               **Limitation of the Type of Carry License to be Issued**

5                          **§ 26150 (b) and § 26155 (b)**

6    248. Repeats and realleges paragraphs "1" through and including "247" as if set forth in

7    their entirety herein.

8    249. California Penal Codes § 26150 (b) and § 26155 (b) violate the Second Amendment

9    by issuing a license to carry a handgun "in either of the following formats" - concealed carry or

10   open carry - but not both.

11   250. Under the theory that Defendant is liable to Plaintiffs for violations of their

12   constitutional rights pursuant to 42 U.S.C. §1983.

13                                   **COUNT VI**

14              **Open Carry License Restriction by County**

15                       **§ 26150 (b) (2) and § 26155 (b) (2)**

16   251. Repeats and realleges paragraphs "1" through and including "250" as if set forth in

17   their entirety herein.

18   252. California Penal Codes § 26150 (b) (2) and § 26155 (b) (2) violate the Second

19   Amendment by restricting the validity and authority of an open carry license to the county of

20   issuance.

21   253. Under the theory that Defendant is liable to Plaintiffs for violations of their

22   constitutional rights pursuant to 42 U.S.C. §1983.

23                                   **COUNT VII**

24          **Open Carry License Restriction by Population Size**

25                       **§ 26150 (b) (2) and § 26155 (b) (2)**

26   254. Repeats and realleges paragraphs "1" through and including "253" as if set forth in

27   their entirety herein.

28

FIRST AMENDED COMPLAINT

255. California Penal Codes § 26150 (b) and § 26155 (b) violate the Second Amendment by restricting the open carriage of firearms to counties by population size, to wit, under 200,000 persons.

256. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT III

### "May Issue" Language for Open Carry License

### § 26150 (b) and § 26155 (b)

257. Repeats and realleges paragraphs "1" through and including "258" as if set forth in their entirety herein.

258. The discretionary language of California Penal Codes § 26150 (b) and § 26155 (b) that a license to carry open and exposed "may issue" violates the Second Amendment.

259. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT IX

### Penal Code § 26350 Violates the Second Amendment

260. Repeats and realleges paragraphs "1" through and including "259" as if set forth in their entirety herein.

261. Defendant's enforcement of Penal Code § 26350, criminalizing the open carriage of an unloaded firearm, against individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, violates the Second Amendment.

262. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

## COUNT X

### Penal Code § 25850 Violates the Second Amendment

263. Repeats and realleges paragraphs "1" through and including "262" as if set forth in their entirety herein.

FIRST AMENDED COMPLAINT

264. Defendant's enforcement of Penal Code § 25850, criminalizing the possession of a loaded firearm, open or concealed, against individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, violates the Second Amendment.

265. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

**COUNT XI**

**Penal Code § 25850 Violates the Second Amendment**

266. Repeats and realleges paragraphs "1" through and including "265" as if set forth in their entirety herein.

267. Defendant's enforcement of Penal Code § 25850, criminalizing the licensed open carriage of a loaded firearm outside of the county of issuance, violates the Second Amendment.

268. Under the theory that Defendant is liable to Plaintiffs for violations of their constitutional rights pursuant to 42 U.S.C. §1983.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from exercising any discretion to deny an application for a license to carry a handgun under Penal Codes § 26150 and § 26155 for self-protection outside of the home by an applicant who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from exercising any discretion to deny an application for an open carry license under Penal Codes § 26150 and § 26155 for self-protection

FIRST AMENDED COMPLAINT

outside of the home by an applicant who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing the "may issue", "moral character" and "good cause" language for the issuance of license to carry a handgun for self-protection outside of the home as provided for in California Penal Codes § 26150 (a) and § 26155 (a) by an individual who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing the "may issue", "moral character" and "good cause" language for the issuance of an open carry handgun license for self-protection outside of the home as provided for in California Penal Codes § 26150 (a) and § 26155 (a) by an individual who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing the "county of issuance" limitation of the validity and effectiveness of open carry licenses as provided for in California Penal Codes § 26150 (b) and § 26155 (b);

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing the restriction on the issuance of open carry licenses (i) based on county population size and (ii) to "counties having a population less than 200,000" as provided for in California Penal Codes § 26150 (b) and § 26155 (b);

36

FIRST AMENDED COMPLAINT

- An Order preliminarily and permanently enjoining Defendant, his officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from enforcing California Penal Codes § 25850 and § 26350 against individuals who carry a handgun for self-protection outside of the home who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- An Order preliminarily and permanently enjoining Defendant, their officers, agents, servants, employees, and all persons acting in concert with Defendant who receive actual notice of the injunction, from exercising discretion, interfering with and/or infringing upon the manner in which law-abiding individuals wear, carry, and possess their firearm in public under California Penal Codes § 26150 (b) and § 26155 (b) by delineating between open carry and concealed carry licenses;

- A declaration that the discretionary "moral character", "good cause", and "may issue" language of California Penal Codes § 26150 and § 26155 violates the Second Amendment;

- A declaration that the discretionary "moral character", "good cause", and "may issue" language of Penal Codes § 26150 and § 26155 violates the Second Amendment as applied to open carry licenses;

- A declaration that California Penal Codes § 26150 and § 26155 are unconstitutional and unenforceable as written generally and as applied to Plaintiffs and all individuals are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- A declaration that California Penal Codes § 25850 and § 26350 are unconstitutional as applied to individuals who are not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm;

- A declaration that California Penal Codes § 25850 and § 26350 are unconstitutional as applied to individuals who have been issued a license to carry a handgun;

37

FIRST AMENDED COMPLAINT

1          • A declaration that California Penal Codes § 25850 and § 26350 are unenforceable

2     against law-abiding individuals who have been issued an open carry license;

3          • Reasonable statutory attorney's fees, costs, and disbursements, under 42 USC

4     § 1988 and any other applicable law; and

5          • Grant such further and alternative relief as the Court deems just and proper.

6     Respectfully submitted,

7     Dated: September 20, 2020                    THE BELLANTONI LAW FIRM, PLLC

8

9                                                  ___/s/ Amy L. Bellantoni, Esq._____

10                                                 Amy L. Bellantoni
                                                   *Attorney for Plaintiffs*
11                                                 *Pro Hac Vice*
                                                   Email: abell@bellantoni-law.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT