1

COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

2

3

4

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

5

6

7

8

9

Attorneys for Plaintiffs

10

11

12

**UNITED STATES DISTRICT COURT**

13

**EASTERN DISTRICT OF CALIFORNIA**

14

15

MARK BAIRD and
RICHARD GALLARDO,

Case No. 2:19-CV-00617-KJM-AC

16

                    Plaintiffs,

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND MOTION FOR PRELIMINARY INJUNCTION**

17

       v.

18

XAVIER BECERRA, in his official capacity as Attorney General of the State of California, and DOES 1-10,

19

Date:            June 18, 2021
Time:            10:00 a.m.
Courtroom:   3
Judge:          Hon. Kimberly J. Mueller
Trial Date:     None set
Action Filed:   April 9, 2019

20

21

                    Defendants.

22

23

24

25

26

27

28

1

TABLE OF CONTENTS

2

3

Page(s)

4

TABLE OF AUTHORITIES ................................................................................................. i

5

INTRODUCTION ................................................................................................................ 1

6

FACTUAL BACKGROUND ............................................................................................... 2

7

LEGAL STANDARD .......................................................................................................... 3

8

LEGAL ARGUMENT .......................................................................................................... 3

9

I.PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ..................................... 3

10

    A."Bear Arms" Means to "Carry Weapons" for Self-Protection ..................................... 3

11

    B. The Second Amendment Applies Outside of the Home ............................................... 5

12

    C. Penal Codes §§ 26150, 26155, 25850 and 26350

13

       Violate the Second Amendment ................................................................................. 5

14

          i. "May Issue" Language for Open Carry Licenses

15

           is Unconstitutional *Per Se* ................................................................................ 6

16

          ii. "Good Cause" Requirement for Open Carry Licenses

17

           is Unconstitutional ............................................................................................. 7

18

          iii. "Geographical Restriction" of Open Carry Licenses is

19

           Unconstitutional *Per Se* ................................................................................... 9

20

    D."Open Carry" is *Unilaterally* Banned by Defendant Becerra ......................................... 11

21

II. PLAINTIFFS ARE SUFFERING, AND WILL CONTINUE TO SUFFER,

22

IRREPARABLE HARM ...................................................................................................... 14

23

    A.Violations of the Constitution Are Presumed to Cause Harm ...................................... 14

24

    B.Preventing the "Right to Bear Arms" is Causing Plaintiffs Irreparable Harm .................. 14

25

26

27

28

TABLE OF CONTENTS (con't)

Page(s)

III. BALANCING THE EQUITIES FAVORS PLAINTIFFS ....................................................... 17

IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC'S INTEREST ............................... 18

TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*Am. Trucking Ass'ns v. City of L.A.*,

   559 F.3d 1046 (9th Cir. 2009) ........................................................................... 10, 15

*Balistreri v. Pacifica Police Dep't*,

   901 F.2d 696 (9th Cir. 1988) ........................................................................... 13, 20

*Bowers v. De Vito*,

   686 F.2d 616 (7th Cir. 1982) ........................................................................... 13, 20

*Cnty. of Santa Clara v. Trump*,

   250 F. Supp. 3d 497 (N.D. Cal. 2017) ................................................................... 14

*de Jesus Ortega Melendres v. Arpaio*,

   695 F.3d 990 (9th Cir. 2012) ........................................................................... 14-15

*District of Columbia v. Heller*,

   554 U.S. 570 (2008) ...................................................................................... *passim*

*Drake v. Filko*,

   724 F.3d 426 (3d Cir. 2013) ................................................................................. 4, 5

*Duncan v. Becerra*,

   265 F. Supp. 3d 1106 (S.D. Cal. 2017) ........................................................... *passim*

*Duncan v. Becerra*,

   742 F. App'x 218 (9th Cir. 2018) .......................................................................... 17

*Elk Grove Unified Sch. Dist. v. Newdow*,

   542 U.S. 1 (2004) ................................................................................................... 14

*Elrod v. Burns*,

   427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ................................... 14, 15

*Ezell v. City of Chi.*,

   651 F.3d 684 (7th Cir. 2011) ........................................................................... 14, 16

TABLE OF AUTHORITIES (con't)

**Cases**                                                                                                    Page(s)

*Grace v. District of Columbia*,

    187 F. Supp. 3d 124 (D.D.C. 2016) ........................................................................ 16

*Hernandez v. Sessions*,

    872 F.3d 976 (9th Cir. 2017) ................................................................................... 3

*Hobby Lobby Stores, Inc. v. Sebelius*,

    723 F.3d 1114 (10th Cir. 2013) ............................................................................... 19

*Jones v. Grant County*,

    NO. CV-12-0188-EFS, 2012 U.S. Dist. LEXIS 157070 (E.D. Wash. Oct. 31, 2012) ............ 15

*Kachalsky v. County of Westchester*,

    701 F.3d 81 (2d Cir. 2012) ..................................................................................... 5

*Ketchum v. County of Alameda*,

    811 F.2d 1243 (9th Cir. 1987) ........................................................................... 13, 20

*KH Outdoor, L.L.C. v. Trussville*,

    458 F.3d 1261 (11th Cir. 2006) ............................................................................... 14

*Marbury v. Madison*,

    5 U.S. (1 Cranch) 137 (1803) .................................................................................. 4

*Martinez v. Cal.*,

    444 U.S. 277, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980) ...................................... 13, 20

*McDonald v. City of Chicago*,

    561 U.S. 742 (2010) ...................................................................................... 5, 9, 18

*Miles Christi Religious Order v. Twp. of Northville*,

    629 F.3d 533 (6th Cir. 2010) .................................................................................. 14

*Moore v. Madigan*,

    702 F.3d 933 (7th Cir. 2012) ......................................................................... 4, 5, 10

MEMORANDUM OF POINTS & AUTHORITIES ISO SECOND MOTION FOR PRELIMINARY INJUNCTION

TABLE OF AUTHORITIES (con't)

**Cases** Page(s)

*Morales v. TWA,*

    504 U.S. 374 (1992) ............................................................................................ 15

*Muscarello v. United States,*

    524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998) ......................................... 4

*Nunn v. State,*

    1 Ga. 243 (1846) ................................................................................................ 7

*Oquendo v. City of N.Y.,*

    No. 19-cv-6352 (BMC), 2020 U.S. Dist. LEXIS 184859 (E.D.N.Y. Oct. 5, 2020) .................. 6

*People ex rel. Darling v. Warden of City Prison,*

    154 A.D. 413 (1st Dep't 1913) ............................................................................ 8-9

*Peruta v. Cnty. of San Diego,*

    824 F.3d 919 (9th Cir. 2016) ................................................................................ 8

*Peruta v. County of San Diego,*

    742 F.3d 1144 (9th Cir. 2014) ............................................................................ 4, 8

*Planned Parenthood v. Danforth,*

    428 U.S. 52, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976) ............................................... 3

*Rodriguez v. Robbins,*

    715 F.3d 1127 (9th Cir. 2013) ............................................................................ 15

*State v. Reid,*

    1 Ala. 612 (1840) ................................................................................................ 7

*Town of Castle Rock v. Gonzales,*

    545 U.S. 748, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) ......................................... 6

*United States v. Robel,*

    389 U.S. 258, 88 S. Ct. 419, 19 L. Ed. 2d 508 (1967) ............................................. 19

TABLE OF AUTHORITIES (con't)

**Cases**                                                                                    Page(s)

*Wrenn v. District of Columbia,*

   864 F.3d 650 (D.C. Cir. 2017) ........................................................................ 4, 9, 16

*Young v. Hawaii,*

   No. 12-17808, 2021 U.S. App. LEXIS 8571 (9th Cir., Mar. 24, 2021, No. 12-17808)

   (9th Cir. Mar. 24, 2021) ................................................................................. 4, 8, 11


**Statutes**

   Cal. Penal Code § 25850 ..................................................................................... *passim*

   Cal. Penal Code § 26150........................................................................................ *passim*

   Cal. Penal Code § 26155 ...................................................................................... *passim*

   Cal. Penal Code § 26160 ............................................................................................. 11

   Cal. Penal Code § 26165 ............................................................................................... 6

   Cal. Penal Code § 26225 ............................................................................................. 11

   Cal. Penal Code § 26350 ..................................................................................... *passim*

   Cal. Penal Code § 32310 ............................................................................................. 17

**Other**

*An Analytical Framework and a Research Agenda,*

   56 UCLA L. Rev. 1443, 1515 (2009) ......................................................................... 4

*Black's Law Dictionary*

   (6th ed. 1998) ............................................................................................................... 4

iv

# INTRODUCTION

California Penal Codes §§ 26150, 26155, 25850 and 26350, enacted by the State of California and enforced by Defendant Xavier Becerra violate Plaintiffs' Second Amendment right to bear arms through the open carriage of a firearm for self-protection in public throughout the State of California. California's discretionary handgun licensing scheme under Penal Codes §§ 26150 and 26155 infringes the preexisting right of Plaintiffs, and other non-prohibited Californians, by *inter alia,*[1] (i) containing "may issue" language empowering the licensing authorities to deny applications for an open carry license; (ii) requiring applicants to prove "good cause" before an open carry license will issue; (iii) restricting the issuance of open carry licenses to counties with populations of less than 200,000; and (iv) restricting the validity of an open carry license (if issued) to the county of issuance.

Contrary to the provisions of §§ 26150 and 26155, defendant Becerra refuses to issue open carry application forms for the licensing authorities to offer the public and forecloses any process or procedure throughout the State for applying for, or issuing, open carry licenses. Put differently, defendant Becerra has banned open carry in California despite the Legislature's clear intention.

The discretionary statutes and Defendant Becerra's conduct warrant an order preliminarily enjoining the enforcement of Penal Codes §§ 25850 and 26350 against individuals, with no *per se* prohibitors to firearm possession under state or federal law (i.e., felony convictions, etc.), who exercise the right to bear arms through the open carriage of a handgun throughout California without an open carry license.

Plaintiffs are not prohibited from the possession or purchase of firearms under state or federal law yet are being prevented from exercising their right to bear arms by the discretionary language of §§ 26150 and 26155, defendant Becerra's enforcement of §§ 26150, 26155, 25850 and 26350 and defendant Becerra's statewide open carry ban.

If Plaintiffs exercised their right to bear arms in public through the open carriage of handguns without a license, they would be subject to criminal prosecution under Penal Codes

---

[1] The complained of statutes violate other fundamental, pre-existing rights as detailed in Plaintiffs' Complaint for Declaratory and Injunctive Relief. Plaintiffs assert that constitutional violations not relied upon herein likewise establish their entitlement to the injunctive relief requested.

1 §§ 25850 and 26350. Thus, Plaintiffs are banned from open carry by threat of criminal prosecution.

2 Without the requested injunctive relief, Plaintiffs will continue to suffer irreparable harm.

3 **FACTUAL BACKGROUND[2]**

4 Plaintiffs Mark Baird and Richard Gallardo are residents of Siskiyou County and Shasta

5 County California, respectively. Their complaint for declaratory and injunctive relief alleges

6 violations of the individual right to bear arms caused by (i) the State's discretionary licensing of

7 the open carriage of handguns under Penal Codes §§ 26150 and 26155; (ii) defendant Becerra's *de*

8 *facto* elimination of any process or procedure to obtain such a license; and (iii) the threat of criminal

9 prosecution if they exercise the right to "bear arms" via open carry in the absence of an open carry

10 license, open carry outside of their residential county, and/or open carry in counties with

11 populations of less than 200,00. See, Penal Codes §§ 25850 and 26350.

12 Specifically, Plaintiffs challenge that Penal Codes §§ 26150 and 26155 violate the Second

13 Amendment right to bear arms as related to the issuance of open carry handgun licenses based on

14 (i) the discretionary "may issue" language of the statute; (ii) the requirement that an applicant prove

15 "good cause" as a condition precedent to the issuance of an open carry license; (iii) the geographical

16 restrictions of the validity of an open carry license to the county of issuance; and (iv) the restriction

17 on the open carriage of a handgun to counties that have a population of less than 200,000.

18 Plaintiffs also challenge defendant Becerra's elimination of any process or procedure by

19 which (i) licensing authorities may offer, issue or process applications for open carry licenses; and

20 (ii) non-prohibited members of the public may apply for an open carry license.

21 Plaintiffs seek an order to (i) enjoin the enforcement of Penal Codes §§ 26350 and 25850

22 against individuals who are not prohibited from possessing or purchasing firearms in the first

23 instance from carrying a handgun open and exposed in public throughout the State of California,

24 as there is no process or procedure by which to obtain such a license; (ii) mandate that defendant

25 Becerra issue standard application forms and procedures to the licensing authorities in this State

26 for use by the public to apply for an open carry license under §§ 26150 and 26155, consistent with

27

28

---

[2] The factual details supporting the instant application can be found in the accompanying Declarations of Mark Baird and Richard Gallardo with annexed exhibits in support of their second motion for a preliminary injunction, which are incorporated herein by reference.

MEMORANDUM OF POINTS & AUTHORITIES ISO SECOND MOTION FOR PRELIMINARY INJUNCTION

the ministerial duties of his office; (iii) enjoin the enforcement and implementation of the "may issue" language of Penal Codes §§ 26150 and 26155 pertaining to the issuance of an open carry license; (iv) enjoin the "good cause" language of Penal Codes §§ 26150 and 26155 pertaining to the issuance of an open carry licenses; (v) enjoin the geographical restrictions on the validity of open carry handgun licenses issued under Penal Codes §§ 26150 and 26155; and (vi) enjoin the geographical restrictions throughout the State on the open carriage of firearms based on a county's population size.

## LEGAL STANDARD

To obtain a preliminary injunction a plaintiff must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Hernandez v Sessions*, 872 F3d 976, 989-990 (9th Cir 2017) (internal quotations and citations omitted). Under our "sliding scale" approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *Id.* (citations and quotations omitted).

## LEGAL ARGUMENT

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

#### A. "Bear Arms" Means to "Carry Weapons" for Self-Protection

The Supreme Court holds that the Second Amendment protects the preexisting right of the individual to possess and carry weapons in case of confrontation. *District of Columbia v Heller*, 554 US 570, 592 (2008) ("It has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.'").

Constitutional rights are preexisting rights. See, e.g., *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976) ("Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights.").

3

1   The Supreme Court has recognized that the plain language of the Second Amendment

2   distinguishes between "keeping" arms and "bearing" arms, which categorically includes carrying

3   arms in public. To find otherwise is intellectually dishonest.

4   The Supreme Court made clear: "At the time of the founding, as now, to 'bear' meant to

5   'carry'." *District of Columbia v Heller*, 554 U.S. 570, 584 (2008). The 'natural meaning of 'bear

6   arms' as acknowledged in Justice Ginsburg's dissent in *Muscarello v. United States*, 524 U.S. 125,

7   118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998): to "wear, bear, or carry . . . upon the person or in the

8   clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive

9   action in a case of conflict with another person." *Heller*, 554 U.S. at 584 (quoting *Muscarello*, 524

10   U.S. at 143, 118 S. Ct. 1911) (Ginsburg, J., dissenting) (quoting Black's Law Dictionary 214 (6th

11   ed. 1998)); *Young v Hawaii*, 2021 U.S. App. LEXIS 8571, at *157 (9th Cir Mar. 24, 2021, No. 12-

12   17808) (O'Scannlain, J., joined by Callahan, J., Ikuta, J., and R. Nelson, J., dissenting) ("[T]o deny

13   that the right to 'bear Arms' protects at least some degree of public carry would render it mere

14   surplusage, coextensive with the separately enumerated right to 'keep a gun in the home.") citing,

15   cf. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803) ("It cannot be presumed that any clause

16   in the constitution is intended to be without effect…"); *Drake v. Filko*, 724 F.3d 426, 444 (3d Cir.

17   2013) (Hardiman, J., dissenting) ("[Such a reading] would conflate 'bearing' with 'keeping,' in

18   derogation of [*Heller*'s] holding that the verbs codified distinct rights…").

19   The need for self-defense "necessarily takes place wherever a person happens to be, whether

20   in a back alley or on the back deck." *Peruta v County of San Diego*, 742 F3d 1144, 1154 (9th Cir

21   2014) vacated by, rehearing, en banc, granted by *Peruta v. County of San Diego*, 781 F.3d 1106

22   (9th Cir 2015) (Peruta I) citing, Eugene Volokh, *Implementing the Right to Keep and Bear Arms

23   for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515

24   (2009); see also *Wrenn v. District of Columbia*, 864 F.3d 650, 657 (D.C. Cir. 2017) ("[T]he

25   Amendment's core lawful purpose is self-defense, and the need for that might arise beyond as well

26   as within the home." (internal quotation marks and citation omitted)); *Moore v Madigan*, 702 F.3d

27   933, 937 (7th Cir 2012) ("To confine the right to be armed to the home is to divorce the Second

28   Amendment from the right of self-defense described in *Heller* and *McDonald*.").

4

**B. The Second Amendment Applies Outside of the Home**

From an intellectual and logical perspective, the Second Amendment right to bear arms "could not rationally have been limited to the home." *Moore v Madigan*, 702 F.3d at 936. Though people may "keep Arms" (or, per *Heller*'s definition, "have weapons", 554 U.S. at 582) in the home for defense of self, family, and property, they are more sensibly said to "bear Arms" (or, *Heller*'s gloss: "carry [weapons] . . . upon the person or in the clothing or in a pocket") in nondomestic settings. *Peruta I* at 1153 citing, *Kachalsky v County of Westchester*, 701 F3d 81, 89 n.10 (2d Cir 2012) ("The plain text of the Second Amendment does not limit the right to bear arms to the home."); see also, *Drake v. Filko*, 724 F.3d 426, 444 (3d Cir. 2013) (Hardiman, J., dissenting) ("To speak of bearing arms solely within one's home not only would conflate 'bearing' with 'keeping', in derogation of the Court's holding that the verbs codified distinct rights, but also would be awkward usage given the meaning assigned the terms by the Supreme Court.") (internal quotations omitted).

The "right" protected by the Second Amendment attaches to the individual - whether s/he is located inside of the home or in public. The Supreme Court concurs. *Heller* described the need to defend oneself, family, and property is "most acute" within the home – but it does not exist "exclusively" within the home. *Heller*, 554 US at 628; see also *McDonald*, 561 US at 780. Likewise, *Heller*'s mention of restrictions on "sensitive [public] places" confirms that public carry is a right protected within the scope of the Second Amendment.

**C. Penal Codes §§ 26150, 26155, 25850 and 26350 Violate the Second Amendment**

The restrictions placed on the open carriage of a handgun in California under Penal Codes §§26150 and 26155 - the "may issue", "good cause", and geographical restrictions - violate the Second Amendment and should be enjoined to prevent further violations of Plaintiffs' civil rights.

A statute which, under the pretense of 'regulating' fundamental rights, amounts to a destruction of that right is clearly unconstitutional. *District of Columbia v. Heller*, 554 U.S. 570, 629, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) (internal quotations omitted). The Second Amendment right to keep and bear arms for the purpose of individual self-defense is fully applicable to the states. *McDonald v City of Chicago*, 561 US 742 (2010).

5

i. <u>"May Issue" Language for Open Carry Licenses is Unconstitutional *Per Se*</u>

The "may issue" language of Penal Codes §§ 26150 and 26155 empowers licensing authorities with complete discretion to deny non-prohibited Californians the right to openly carry a handgun in public.[3]

A benefit is not a protected entitlement if government officials may grant or deny it in their discretion. *Oquendo v City of NY*, 2020 U.S. Dist LEXIS 184859, at *8-9 (E.D.N.Y. Oct. 5, 2020, No. 19-cv-6352 (BMC) citing, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005) (citation omitted).   Statutes restricting the right of non-prohibited citizen gun owners to "bear Arms" "reflects an opinion on gun policy. Courts are not free to impose their own policy choices on sovereign states...as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate." *Duncan v Becerra*, 265 F Supp 3d 1106, 1128 (SD Cal 2017).

Mr. Baird meets the eligibility requirements for the issuance of an open carry license – he is of good moral character, resides in Siskiyou County with a population less than 200,000 people, and has fulfilled all training requirements. (See, Declaration of Mark Baird). Mr. Baird has requested the issuance of an open carry license on more than one occasion; each request was denied. The Siskiyou County Sheriff's Office does not even have an open carry license application or a procedure for applying for an open carry license. (See, Baird Dec. and annexed exhibits). There is no administrative appeal process available for challenging such denials. Even if there were an administrative appeal process available, an appeal would be futile because the Sheriffs are required to use only those forms provided by defendant Becerra's Department of Justice, none of which provide a process for applying for an open carry license. (Baird Dec.).

Mr. Gallardo also meets all eligibility requirements for the issuance of an open carry license – he is of good moral character, resides in Shasta County, which has a population less than 200,000 people, and has fulfilled all statutory training requirements. (See, the Declaration of Richard

---

[3] Under §§ 26150 and 26155, the sheriff or chief of police, respectively, "may issue" an open carry license upon proof that the applicant meets all of the following: (1) is of good moral character; (2) 'good cause' exists for issuance of the license; (3) meets the residential requirements; (4) has completed a course of training as described in Section 26165; and (5) lives in a county with a population less than 200,000. The open carry license, however, is only valid in the county of issuance.

1  Gallardo). Mr. Gallardo has requested an open carry license from the Shasta County Sheriff on

2  more than one occasion and has been denied each time. (Gallardo Dec.). The Shasta County

3  Sheriff's Office has no process or procedure for applying for an open carry license. There is no

4  administrative appeal process available for Mr. Gallardo to challenge the denial of an application

5  for an open carry license, but even there were, such 'process' would be futile. Mr. Gallardo has

6  been informed by the Shasta County Sheriff's Office that none of the Sheriffs serving in

7  26150(b)(2) counties in California have ever issued "open carry" pistol licenses.  (Gallardo Dec.).

8       The "may issue" language of §§ 26150 and 26155 reduce the "right" to open carry to a

9  "privilege" because the statute imbues the licensing authority with the discretion to prevent

10  individuals, like Plaintiffs, from carrying a handgun in public.

11       Sections 26150 and 26155 unlawfully implicate and burden a core Second Amendment right

12  and are therefore unconstitutional. See, *Heller,* 554 US at 629 citing, *Nunn v. State*, 1 Ga. 243, 251

13  (1846) (Georgia Supreme Court struck down a prohibition on carrying pistols openly (even though

14  it upheld a prohibition on carrying concealed weapons); *Andrews v. State*, 50 Tenn. at 187

15  (Tennessee Supreme Court held that a statute that forbade openly carrying a pistol "publicly  or

16  privately, without regard to time or place, or circumstances" violated the state constitutional

17  provision, which the court equated with the Second Amendment, even though the statute did not

18  restrict the carrying of long guns); *State v. Reid*, 1 Ala. 612, 616-617 (1840) ("A statute which,

19  under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be

20  so borne as to render them wholly useless for the purpose of defence, would be clearly

21  unconstitutional").

22       By subjecting the right to bear arms to a discretionary "may issue" statute, §§ 26150 and

23  26155 reduce the "right" to bear arms to a "privilege", thus violating Plaintiffs' civil rights.

24              ii. <u>"Good Cause" Requirement for Open Carry Licenses is Unconstitutional</u>

25       California Penal Codes §§ 26150 and 26155 require a showing of "good cause" before a

26  license to carry a firearm may issue – the burden is the same for the issuance of a concealed carry

27  license ("CCW") or an open carry license. Under Penal Codes §§ 26150 and 26155, the licensing

28  authorities have the discretion to define "good cause" as they choose.

7

1    "Good cause" is generally defined in the Ninth Circuit as "demonstrating a need for self-

2    protection that is greater than the average person, requiring documented threats of violence that

3    establish the applicant is a target and at risk for specific harm." See, *Peruta v County of San Diego*,

4    742 F3d 1144, 1193 (9th Cir 2014) (San Diego County's "good cause" requirement only allows

5    issuance only to individuals who will most likely need to defend themselves in public to carry a

6    handgun).

7        In *Peruta II*, an *en banc* decision of the Ninth Circuit upheld California's "good cause"

8    requirement for concealed carry licenses based on the view that concealed carry of a handgun is a

9    "privilege" not a "right" protected by the Second Amendment. *Peruta v County of San Diego*, 824

10   F3d 919, 939 (9th Cir 2016) (*Peruta II*) ("any prohibition or restriction a state may choose to impose

11   on concealed carry - including a requirement of good cause, however defined - is necessarily

12   allowed by the [Second] Amendment.").

13       In *Young v. Haw.*, 2021 U.S. App. LEXIS 8571, *142, __ F.3d __, 2021 WL 1114180 (9th

14   Cir. March 24, 2021) (en banc) this Circuit held that there is no preexisting individual right to open

15   carry either – completely foreclosing the existence of *any* right to carry a firearm in public within

16   the scope of the Second Amendment in spite of the unequivocal language "bear arms".

17       The *Young* decision is based, at least in part, on an examination of the rules of England, not

18   on the plain language of the post-Revolutionary-War Second Amendment. Our Founding Fathers

19   – and this country collectively - affirmatively rejected England's oppressive rules as evidenced by

20   the victory of our independence from England through the Revolutionary War and the subsequent

21   codification of basic, fundamental human rights.

22       Moreover, the Circuit's reliance on pre-*McDonald* state laws ignores the fact that, at the

23   time they were created, the states falsely believed the Second Amendment did not apply to state

24   action. See, *People ex rel. Darling v Warden of City Prison*, 154 AD 413, 414 (1st Dept 1913)

25   (upholding the constitutionality of the Sullivan Law because "[t]he second amendment to the

26   Federal Constitution, providing that the right of the people to keep and bear arms shall not be

27   infringed, is not operative upon the States. In this State the Bill of Rights is contained in the Civil

28   Rights Law not in the Constitution, though the rights therein enumerated are not created by the

8

statute, but are such as necessarily pertain to free men and a free State. Before a statute can be declared null and void as an infringement upon such rights it must clearly appear that it violates some fundamental right of which a citizen may not be deprived by any power.").

*Heller* put to rest the idea that the Second Amendment applied to a militia, holding that it protects a preexisting individual right. *McDonald*[4] foreclosed the idea that the Second Amendment did not apply to state conduct.

Among other reasons, reliance on state statutes and common laws created before *McDonald* is fatal to the holding in *Young*, intellectually dishonest and an affront to Supreme Court precedent.

Even considering the 'history of the state', *Young* is distinguishable from Plaintiffs. Unlike Hawaii, California's Legislature specifically provided a process for the public to exercise the right to open carry; defendant Becerra has unilaterally and unlawfully banned it.

California's "good cause" requirement for both open carry and concealed carry licenses prohibits public carry by requiring non-prohibited individuals to prove their entitlement to exercise a preexisting right. The burden to show "good cause" can rarely be established because most members of the general public have not had specific threats made against them, are not engaged in dangerous employment, and do not transport large sums of money in the course of their occupation. The public does not have a 'crystal ball' to identify when and how they are going to become a victim of a violent criminal attack. See, e.g., *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (DC Cir 2017) ("…the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen.").

### iii. "Geographical Restriction" of Open Carry Licenses is Unconstitutional *Per Se*

The right of the individual to protect himself against both public and private violence was legally recognized as far back as 1689. See, *District of Columbia v Heller*, 554 at 594. The right of the law-abiding individual to possess firearms for the safety, defense, and preservation of one's own body, is as critical and fundamental *outside* of the home as it is *inside* of the home. See, *District of Columbia v. Heller*, 554 US at 595-599. (emphasis added). "[T]o confine the right to be armed

---

[4] *McDonald v City of Chicago*, 561 U.S. 742, 782-783 (2010).

to the home is to divorce the Second Amendment from the right to self-defense described in *Heller* and *McDonald*". *Moore v Madigan*, 702 F3d 933, 941 (7th Cir 2012) (holding that "[a] right to bear arms . . . implies a right to carry a loaded gun outside the home" and striking down the open-and-concealed-carry regulatory regime in Illinois because the state failed to justify "so substantial a curtailment of the right of armed self-defense").

Penal Codes §§ 26150 and 26155 restrict the validity of an open carry license (if issued) to the county of issuance and restrict the right to open carry to counties with populations of less than 200,000. If Plaintiffs carry a handgun open and exposed (whether loaded or unloaded), outside of the geographical boundaries of the county in which they live, even if issued an open carry license, they will be subject to criminal penalties and sanctions, up to and including imprisonment under Penal Codes §§ 25850 and 26350.

Limiting the open carriage of a handgun to the county of residence, to the county of issuance, and/or to counties with populations of less than 200,000 and criminalizing violations of such regulations is presumptively unlawful because it causes the public, including Plaintiffs, to choose between exercising a constitutional right or being subjected to criminal prosecution. See, e.g., *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009) (plaintiffs were injured where they were faced with the choice of signing unconstitutional agreements or facing a loss of customer goodwill and significant business).

Plaintiffs intend to exercise their right to the open carriage of a firearm in public, whether loaded or unloaded, with or without an open carry license, for self-protection within their county of residence and in throughout the State of California including inside counties with populations exceeding 200,000. (Baird Dec.; Gallardo Dec.)

Even if an open carry license were issued to each Plaintiff, the geographical restrictions of §§ 26150 and 26155 unlawfully infringe upon the lawful exercise of their Second Amendment rights because their right to self-defense in the remaining counties of California could not be exercised without the threat of criminal prosecution under Penal Codes § 26350 (unloaded firearm) and § 25850 (loaded firearm) including incarceration, a criminal record, fines, and other sanctions. See. e.g., *Duncan v Becerra*, 265 F Supp 3d 1106, 1113 (SD Cal 2017) (Article III standing analysis

10

1    recognizes that, where threatened action by government is concerned, courts do not require a

2    plaintiff to expose himself to criminal liability before bringing suit."). Plaintiffs' exercise of their

3    right to open carry within their own counties without a license subjects them criminal penalties.

**D. "Open Carry" is *Unilaterally* Banned By Defendant Becerra**

5    Notwithstanding the holding in *Young v. Haw.*, 2021 U.S. App. LEXIS 8571, *1, __ F.3d

6    __, 2021 WL 1114180 (9th Cir. March 24, 2021), the open carry is a protected "right" under the

7    Second Amendment and it is *de facto* banned in California.

8    The "open carry" language of Penal Codes §§ 26150 and 26155 is illusory because the

9    ability to actually apply for and obtain an open carry license has been *de facto* eliminated by

10    defendant Becerra. Under Penal Code § 26175, every sheriff's office in the state is required to use

11    forms approved by the Attorney General for firearm licenses and applications for amendments to

12    licenses, which shall be "uniform throughout the state". Neither the sheriffs nor the DOJ offer any

13    form or process by which to apply for an open carry license. The manner of carrying a handgun in

14    public in California to apply for a concealed carry license, which imposes the same discretionary

15    standards. (Baird Dec.).

16    California Penal Code § 26225 requires that a copy of all firearms licenses issued in each

17    county (open carry and concealed carry) be "filed immediately" with the Attorney General's Office

18    DOJ. The DOJ has ***no records*** of any open carry licenses having been issued in the State of

19    California since 2012 (Baird Dec.), when California enacted Penal Code § 26350 criminalizing the

20    open carriage of an unloaded firearm.

21    A review of the websites of the 58 sheriff's offices in the State of California reveals no

22    process for applying for an open carry handgun license. The San Francisco, Colusa, and Alpine

23    County Sheriff Offices home pages have no reference to carry permits. (Ex. 1). The remaining

24    websites mention CCW licenses only; none of the sheriff websites provide any option for applying

25    for an open carry license, including those counties with less than 200,000 population. (Ex. 1). None

26    of the sheriff's websites publish readily identifiable verbatim text of § 26150 or § 26155 in a readily

27    accessible manner so as to fully inform the public of the right to apply for an open carry license, as

28    required by § 26160. (Baird Dec.).

The majority of the 58 sheriff's offices in this state provide a link on their website to an electronic portal for processing CCW applications, which has no option to apply for an open carry license. (Ex. 1). The Nevada County Sheriff Office website confirms the nexus between the sheriffs and defendant Becerra's control over the licensing processes through the state's sheriff's offices:

> "California Department of Justice - Use this link to access the application process for CCW licenses."

See, https://www.mynevadacounty.com/184/Concealed-Weapon-Permits-CCW-License-to-

The California DOJ link brings the applicant to the DOJ-created and enforced uniform handgun application portal for applying for a CCW license,[5] which contains no option to apply for an open carry license. (Baird Dec.).

By eliminating any process or procedure by which to apply for an open carry license, defendant Becerra has eliminated open carry throughout the state of California. The public website of the Siskiyou County Sheriff's Office only provides information related to applications for a concealed carry license/"CCW". (Baird Dec.). The Siskiyou Sheriff's handgun licensing procedure has no option for applying for an open carry license, all publications, forms, and applications relate solely to CCW licenses. A copy of the application form provided to the public by the Siskiyou County Sheriff's Office are attached to the Declaration of Mark Baird and made part of his Declaration (Baird Dec.).

The Livescan Fingerprinting Form used by the Siskiyou Sheriff is form created by the California DOJ. The Livescan Form contains a section for the applicant to complete entitled, "Authorized Applicant Type"; this section is pre-populated [by the Sheriff or DOJ] to read "STANDARD CCW". In either scenario, both governmental entities endorse concealing from the public the option to apply for an open carry license. (Baird Dec.).

The Siskiyou Sheriff carry license application created by the DOJ is entitled, "Standard Initial and Renewal Application for License to Carry a Concealed Weapon". (Ex. 1). Under the section, "Format of CCW License", the DOJ form incorrectly indicates that a 'concealed carry

---

[5] https://nevadaca.permitium.com/ccw/start

weapon license' to carry 'loaded and exposed' is available to applicants living in a county having less than 200,000 people.  An open carry license is not a 'type' of concealed carry license.  The DOJ application itself is titled as an application "For License to Carry a **Concealed** Weapon". An application to carry a concealed weapon is not, by definition, an application to carry a weapon exposed, and no section of the DOJ CCW application allows the applicant to select "open carry" as an option.  (Baird Dec.).

The revision date of the DOJ CCW License application, administered by the Siskiyou County Sheriff's Office, is November 2012 – the year that Penal Code § 26350 was implemented criminalizing the open carriage of unloaded firearms. (Baird Dec.).

Similarly, the Shasta County Sheriff's Office offers no application to apply for an open carry license. None of the documents provided to the public by the Shasta County Sheriff's Office provide a procedure for applying for an open carry license. A copy of the application form provided by the Shasta County Sheriff's Office is attached to the Declaration of Richard Gallardo and made part of his Declaration. (Gallardo Dec.). Shasta County uses a DOJ created application entitled, "Standard Application for CCW License". Under the section, "Format of CCW License", the DOJ form confusingly indicates that a 'concealed carry weapon license' to carry 'loaded and exposed' is available to applicants living in a county having less than 200,000 people, however, an open carry license is not a 'type' of concealed carry license.  Nothing in the DOJ's application provides the applicant with the ability, instructions, or guidance, to apply for an "open carry" license. The concealed carry license application is the only application provided by the Shasta County Sheriff's Office. There is no procedure available to obtain an open carry license. (Gallardo Dec.).

The California Department of Justice website does not provide to the public with any reference to, forms, or application for an open carry license with the exception of Bureau of Security and Investigative Services ("BSIS") permits for security guards and alarm agents, which reference terms of employment. (Baird Dec.)

Because law enforcement has no constitutional duty to protect members of the public at large from crime[6], every individual is responsible for their protecting themselves from personal

---

[6] *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint where police failed

1   harm and danger at home and in public. With no duty to protect and the government's exclusive

2   and discretionary control over *any* ability to carry a firearm in public, all non-prohibited citizens

3   of California are left exposed and vulnerable to criminal conduct with no adequate equalizer.

4       Based on the above, Plaintiffs have demonstrated a strong likelihood of success on the

5   merits of their Second Amendment claims under all complained-of legal theories.

6   **II. PLAINTIFFS ARE SUFFERING, AND WILL CONTINUE TO SUFFER,**

7   **IRREPARABLE HARM**

8       A. <u>Violations of the Constitution Are Presumed to Cause Harm</u>

9       "There are no *de minimis* violations of the Constitution -- no constitutional harms so slight

10  that the courts are obliged to ignore them. *Elk Grove Unified Sch. Dist. v Newdow*, 542 US 1, 36-

11  37 (2004).

12      Like the First Amendment, the Second Amendment protects "intangible and unquantifiable

13  rights" the infringement of which cannot be compensated by damages. See, *Ezell v City of Chicago*,

14  651 F3d 684, 699 (7th Cir 2011) (comparing the Second Amendment with First Amendment

15  violations, where the "loss of [the] right is frequently presumed to cause irreparable harm based on

16  the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if

17  those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from

18  exercising those rights in the future.")(internal quotation marks omitted) citing, *Miles Christi*

19  *Religious Order v. Twp. of Northville*, 629 F.3d 533, 548 (6th Cir. 2010) (internal alteration and

20  quotation marks omitted); c.f., *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed.

21  2d 547 (1976) (plurality opinion) ("[t]he loss of First Amendment freedoms, for even minimal

22  periods of time, unquestionably constitutes irreparable injury.); *KH Outdoor, LLC v. City of*

23  *Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

24      The Ninth Circuit has repeatedly held that the deprivation of constitutional rights

25  "unquestionably constitutes irreparable injury". *County of Santa Clara v Trump*, 250 F Supp 3d

26  497, 537-538 (ND Cal 2017), quoting, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

27  _____

28  to take steps to respond to the continued threats, harassment and violence by estranged husband); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th Cir 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

14

1 ("It is well established that the deprivation of constitutional rights "unquestionably constitutes

2 irreparable injury.") citing, *Elrod v Burns*, supra; *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45

3 (9th Cir. 2013); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013); see also *Jones v*

4 *Grant County*, 2012 US Dist LEXIS 157070, at *22-23 [ED Wash Oct. 31, 2012, No. CV-12-0188-

5 EFS]) ("[I]t is axiomatic that any constitutional violation causes harm; in fact, in the context of

6 injunctive relief, irreparable harm is presumed if a violation of the Constitution is shown.").

7     "A plaintiff can suffer a constitutional injury by being forced to comply with an

8 unconstitutional law or else face…enforcement action." *Am. Trucking Ass'ns, Inc. v. City of Los*

9 *Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009).

10     The Supreme Court has similarly indicated that plaintiffs suffer irreparable injury under

11 such circumstances. See *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 380-381, 112 S. Ct.

12 2031, 119 L. Ed. 2d 157 (1992) (injunctive relief was available where "respondents were faced

13 with a Hobson's choice: continually violate the Texas law and expose themselves to potentially

14 huge liability; or violate the law once as a test case and suffer the injury of obeying the law during

15 the pendency of the proceedings and any further review").

16     B. <u>Preventing the "Right to Bear Arms" is Causing Plaintiffs Irreparable Harm</u>

17     Preventing Plaintiffs from "bearing arms"- possessing a firearm outside of the home – is

18 causing an intangible and unquantifiable loss of the freedom to protect one's own life and liberty.

19     *Heller* found that the Second Amendment's central component is the individual right to

20 possess firearms for protection; the Court did not limit possession to the home. *Heller*, 554 U.S. at

21 592-95. "Putting all of these textual elements together, we find that they **guarantee the individual**

22 **right to possess and carry weapons in case of confrontation**." *Heller*, 554 US at 592.

23     This Court is bound to adhere to the plain and unambiguous language of the Second

24 Amendment and the guidance and holdings of the United States Supreme Court.

25     "But the fact that the need for self-defense is most pressing in the home doesn't mean that

26 self-defense at home is the only right at the Amendment's core. After all, the Amendment's 'core

27 lawful purpose' is self-defense [*Heller*, 554 US at 630] and the need for that might arise beyond as

28 well as within the home. Moreover, the Amendment's text protects the right to 'bear' as well as

15

1   'keep' arms. For both reasons, it's more natural to view the Amendment's core as including a law-

2   abiding citizen's right to carry common firearms for self-defense beyond the home (subject again

3   to relevant 'longstanding' regulations like bans on carrying 'in sensitive places'). *Id.* at 626.

4   *Wrenn v District of Columbia*, 431 US App DC 62, 69, 864 F3d 650, 657 (2017).

5        The loss of Second Amendment rights constitutes irreparable injury. *Duncan v Becerra*,

6   265 F Supp 3d at 1135. "The right to keep and bear arms protects tangible and intangible interests

7   which cannot be compensated by damages…The right to bear arms enables one to possess not only

8   the means to defend oneself but also the self-confidence — and psychic comfort — that comes with

9   knowing one could protect oneself if necessary…Loss of that peace of mind, the physical

10  magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury."

11  *Duncan*, 265 F Supp 3d at 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150

12  (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of

13  this right cannot be compensated by damages.")

14       Defendant Becerra's enforcement of Penal Codes §§ 26150, 26155, 26350 and 25850, as

15  well as his *de facto* ban on open carry unconstitutionally burden Plaintiffs' Second Amendment

16  right to bear arms in public for self-defense, forcing them to choose between exercising their

17  Second Amendment rights and criminal prosecution. Plaintiffs have been, and will continue to

18  suffer, irreparable harm without the requested injunctive relief.

19       Plaintiffs will continue to suffer irreparable harm even if open carry licenses were issued

20  because Plaintiffs will continue to be subject to (i) the geographical, population-based restrictions

21  of §§26150 and 26155; and (ii) the same "good cause" burden would exist when Plaintiffs are

22  required to renew their open carry licenses.

23       Penal Codes §§ 26350 and 25850 cause irreparable harm to Plaintiffs because they force

24  them to choose between exercising the right to bear arms for self-protection and being subject to

25  criminal prosecution, including incarceration for the open carriage of a handgun, whether loaded

26  or unloaded, whether on their person or inside a vehicle, imposing penalties of imprisonment up to

27  one year and/or fines.

28

Defendant Becerra and those acting in concert with him are further causing irreparable harm to Plaintiffs by refusing to issue to the licensing authorities a form application for the public to apply for an open carry license, and a process and procedure by which to so apply. Defendant Becerra's refusal to perform a ministerial function of his position as Attorney General precludes any avenue for the public to apply for an open carry license, including Plaintiffs. Such harm will continue absent the requested relief. (Ex. 1; Ex. 2).

**III. BALANCING THE EQUITIES FAVORS PLAINTIFFS**

The existence of criminal penalties associated with Plaintiffs' exercise of their pre-existing right to self-protection in public tips the balance of equities in favors of Plaintiffs. See, *Duncan v Becerra*, 265 F Supp 3d 1106, 1135-1136 (SD Cal 2017) ), aff'd *Duncan v Becerra*, 742 F App'x 218, 222 (9th Cir 2018) (affirming district court's decision to grant plaintiffs' motion for preliminary injunction, enjoining defendant Becerra and his agents, et al. "from implementing or enforcing California Penal Code sections 32310 (c) & (d), as enacted by Proposition 63, or from otherwise requiring persons to dispossess themselves of magazines able to hold more than 10 rounds lawfully acquired and possessed.").

[B]ecause [the statutes complained of] impose criminal sanctions for a failure to act it poses the potential for extraordinary harm on Plaintiffs, while discounting their Second Amendment rights. The balance of hardships favors Plaintiffs." *Id.*

"Statutes disarming law-abiding responsible citizen gun owners reflect an opinion on gun policy. Courts are not free to impose their own policy choices on sovereign states. But as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate. Disarming California's law-abiding citizenry is not a constitutionally-permissible policy choice." *Duncan*, 265 F Supp 3d at 1128.

The *per se* irreparable harm caused to Plaintiffs, and all other law-abiding residents of California, by the aforementioned Second Amendment violations, far outweighs any possible inconvenience to defendant Becerra, his licensing agencies, or the state. The requested relief will allow Plaintiffs and other law-abiding people the freedom to exercise the right to open carry, the ability to defend oneself from violent confrontation in public, and the accompanying peace of mind

17

1 it brings, particularly where the exercise of that right does not threaten criminal prosecution.

2 Moreover, the Supreme Court in *Heller* already rejected the idea that constitutional rights

3 are subject to "interest balancing".

4 Public safety interests may not eviscerate the Second Amendment. "The right to keep and

5 bear arms [ ] is not the only constitutional right that has controversial public safety implications.

6 All of the constitutional provisions that impose restrictions on law enforcement and on the

7 prosecution of crimes fall into the same category." *McDonald*, 561 U.S. at 783 (collecting cases

8 where those likely guilty of a crime are set free because of constitutional rights).

9 The government has no rights, so it faces no actual, articulable hardship. Based on the

10 above, the balance of the hardships favors Plaintiffs.

11 **IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC'S INTEREST**

12 Enjoining the prohibited conduct is in the best interests of "we the people" of California –

13 the very individuals who, along with the rest of the American citizenry, the Second Amendment

14 was created to protect. "Once an applicant satisfies the first two factors [likelihood of success on

15 the merits and irreparable harm], the traditional stay inquiry calls for assessing the harm to the

16 opposing party and weighing the public interest. These factors merge when the Government is the

17 opposing party." *Duncan*, 265 F Supp 3d at 1136 (citations omitted).

18 California's non-prohibited residents are being harmed by the government's ban on the right

19 to bear arms – whether they ultimately choose to exercise that right or not is immaterial – right

20 now, they *have no choice*. The rights of the public are, in fact, being violated.

21 A preliminary injunction is in the *public's* best interests because it will unburden and restore

22 the right of Californian citizens to choose whether to openly carry a firearm in public for self-

23 protection without the threat of being criminally prosecuted for exercising such preexisting right.

24 Californian citizens are being disenfranchised from exercising the right to bear arms for

25 self-protection in public without threat of criminal prosecution because (1) defendant Becerra has

26 eliminated any process or procedure to obtain an open carry license; (2) general law-abiding

27 members of society cannot meet the "good cause" requirement; (3) even if open carry is an available

28 option, the licensing agencies have complete discretion to deny the request ("may issue"); and (4)

1  the geographical restrictions based on population size and county of residence restrict the right of

2  the individual to self-defense.

3  　　The public interest favors the exercise of Second Amendment rights by non-prohibited

4  citizens. And it is always in the public interest to prevent the violation of a person's constitutional

5  rights. *Duncan*, 265 F Supp 3d at 1136 citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114,

6  1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189

7  L. Ed. 2d 675 (2014).

8  　　The Second Amendment was created to protect the government from violating the personal

9  and preexisting right to protect and defend oneself; it shields the right to possess an equalizing force

10  when suddenly faced with an unannounced, violent, armed, and/or more powerful attackers.

11  　　The preexisting right to self-protection in public is attached to Plaintiffs and all other non-

12  prohibited Californian citizens – the very "public" whose interests the Court is called on to consider.

13  　　"Defensive gun violence may be the only way a law-abiding citizen can avoid becoming a

14  victim. Put differently, violent gun use is a constitutionally-protected means for law-abiding

15  citizens to protect themselves from criminals. The phrase 'gun violence' may not be invoked as a

16  talismanic incantation to justify any exercise of state power. Implicit in the concept of public safety

17  is the right of law-abiding people to use firearms and the magazines that make them work to protect

18  themselves, their families, their homes, and their state against all armed enemies, foreign and

19  domestic. To borrow a phrase, it would indeed be ironic if, in the name of public safety and reducing

20  gun violence, statutes were permitted to subvert the public's Second Amendment rights — which

21  may repel criminal gun violence and which ultimately ensure the safety of the Republic." *Duncan*,

22  265 F Supp 3d at 1135 citing, cf. *United States v. Robel*, 389 U.S. 258, 264, 88 S. Ct. 419, 19 L.

23  Ed. 2d 508 (1967) ("Implicit in the term 'national defense' is the notion of defending the values

24  and ideals which set this Nation apart. . . . It would indeed be ironic if, in the name of national

25  defense, we would sanction the subversion of one of those liberties — the freedom of association

26  — which makes the defense of the Nation worthwhile.").

27  　　The public's ability to exercise the preexisting right to self-protection under the Second

28  Amendment is paramount, particularly where law enforcement has no legal duty to protect the

19

public from crime. See, *Balistreri v Pacifica Police Dept.*, 901 F2d 696, 699-700 (9th Cir 1988) (dismissing complaint where police failed to take steps to respond to the continued threats, harassment and violence by estranged husband); *Martinez v. California*, 444 U.S. 277, 284-85, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980); *Ketchum v County of Alameda*, 811 F2d 1243, 1244-47 (9th Cir 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

WHEREFORE, it is respectfully requested that an order be issued temporarily enjoining defendant Becerra, his agents, and those who have actual notice of the same (i) from the enforcement of Penal Codes §§ 26350 and 25850 against individuals carrying a handgun open and exposed in public throughout the State of California; (ii)  enjoining defendant Becerra from further refusal to perform his ministerial duty to issue a standard application form, process and procedure to the licensing authorities in this State for use by the public to apply for an open carry license under §§ 26150 and 26155, consistent with the Penal Code and the obligations of his office; (iii) from the enforcement and implementation of the "may issue" language of Penal Codes §§ 26150 and 26155 pertaining to the issuance of an open carry license; (iv) from the enforcement and implementation of the "good cause" language of Penal Codes §§ 26150 and 26155 pertaining to the issuance of an open carry license; and (v) from the enforcement and implementation of the geographical restrictions on the validity of an open carry handgun license issued under Penal Codes §§ 26150 and 26155 by during the pendency of this action.

Dated:  April 12, 2021

Respectfully submitted,

THE BELLANTONI LAW FIRM, PLLC

/s/ Amy L. Bellantoni, Esq.
Amy L. Bellantoni
Counsel for Plaintiffs
Email: abell@bellantoni-law.com
*Pro Hac Vice*

20