COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

MARK BAIRD and
RICHARD GALLARDO,

        Plaintiffs,

v.

ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,

        Defendants.

Case No. 2:19-CV-00617-KJM-AC

**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SECOND MOTION FOR PRELIMINARY INJUNCTION**

Date:        July 19, 2021
Time:       10:00 a.m.
Courtroom:  3
Judge:      Hon. Kimberly J. Mueller
Trial Date:  None set
Action Filed:  April 9, 2019

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................ i

I. THIS COURT IS BOUND TO FOLLOW SUPREME COURT PRECEDENT ........................ 1

II. CRIMINALIZING THE 'MERE POSSESSION' OF A HANDGUN FOR SELF-DEFENSE VIOLATES THE SECOND AMENDMENT ........................................................ 2

    A. The 'Core Right' is Self-Defense ............................................................................ 2

    B. The Free Exercise of Self-Defense - Wherever You Are ....................................... 2

    C. History Confirms the Right to Bear Arms for Self-Defense in Public .................. 3

III. CALIFORNIA DOES NOT "REGULATE" OPEN CARRY, IT BANNED IT ...................... 4

    A. Banning All Manner of Public Carry Violates the Second Amendment .............. 4

    B. Subjecting Carry Licenses to Discretionary Laws
       Violates the Second Amendment ............................................................................ 4

    C. In California, Concealed Carry is a Mere Privilege ............................................... 5

    D. Open Carry is Banned in California ........................................................................ 5

IV. BANNING OPEN CARRY IS NO CALIFORNIAN 'TRADITION' ...................................... 6

    A. California's Tradition – Over 162 Years of the Free Exercise of Open Carry ...... 6

    B. This Case is Distinguishable From *Young* ............................................................ 6

V. *HELLER* FLATLY REJECTED 'INTEREST BALANCING' ............................................... 7

VI. BALANCE OF THE HARDSHIPS FAVORS PLAINTIFFS ................................................ 8

VII. PUBLIC INTEREST FAVORS GRANTING THE REQUESTED RELIEF ........................ 9

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Booster Lodge No. 405, Int. Ass'n of M. & A.W. v. NLRB,
   459 F.2d 1143 .................................................................................................................. 1

Caetano v. Massachusetts,
   577 U.S. 411 (2016)....................................................................................................... 2, 3

D.C. v. Heller,
   554 U.S. 570 (2008)................................................................................................ 1, 2, 3, 7

Duncan v. Becerra,
   265 F. Supp. 3d 1106 (S.D. Cal. 2017), aff'd 742 F. App's 218 (9th Cir. 2018) ........... 8, 9

Elrod v. Burns,
   427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).......................................................... 7

Hill v. State,
   53 Ga. 472 (1874)............................................................................................................... 4

Hutto v. Davis,
   454 U.S. 370 (1982)........................................................................................................... 1

In re Brickey,
   8 Ida. 597 (1902)................................................................................................................ 4

Jaffree v. Wallace,
   705 F.2d 1526 (11th Cir. 1983) .......................................................................................... 1

McDonald v. City of Chicago, Ill.,
   561 U.S. 742 (2010)................................................................................................ 2, 3, 4, 8

Nunn v. State,
   1 Ga. 243 (1846)................................................................................................................ 4

People v. Olson,
   (1971) 18 Cal.App.3d 592 ................................................................................................. 3

People v. Overturf,
   (1976) 64 Cal.App.3rd Supp............................................................................................... 3

People v. Strider,
   (2009) 177 Cal.App.4th 1393 ............................................................................................ 3

**TABLE OF AUTHORITIES (con't)**

Page(s)

*People v. Yarbrough,*
   (2008) 169 Cal.App.3d .................................................................................................. 3

*Peruta v. Cty. of San Diego,*
   824 F.3d 919 (9th Cir. 2016) ...................................................................................... 5, 7

*Rogers v. Grewal,*
   140 S. Ct. 1865 (2020) ................................................................................................. 1

*Shuttlesworth v. City of Birmingham, Ala.,*
   394 U.S. 147, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969) ................................................. 5

*State v. Huntley,*
   25 N.C. 418 (1843) ...................................................................................................... 4

*State v. Reid,*
   1 Ala. 612 (1840) ......................................................................................................... 4

*Staub v. City of Baxley,*
   355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 ................................................................. 5

*Stell v. Savannah-Chatham County Board of Education,*
   333 F.2d 55 (5th Cir.) .................................................................................................. 1

*Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,*
   460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) ............................................... 1

*Young v. Hawaii,*
   992 F.3d 765 (9th Cir. 2021) ....................................................................................... 1

**Statutes**

Cal. Penal Code § 12031 .................................................................................................. 6

Cal. Penal Code § 25850 .................................................................................................. 3

Cal. Penal Code § 26175 .................................................................................................. 5

Cal. Penal Code § 26225 .................................................................................................. 5

Cal. Penal Code § 26350 .......................................................................................... 3, 5, 6

## I. THIS COURT IS BOUND TO FOLLOW SUPREME COURT PRECEDENT

*Heller* confirmed the right to carry firearms in public for self-defense.

Several months prior to the Ninth Circuit's en banc decision in *Young v. Hawaii*[1], Justice Thomas (in the majority in *Heller*) noted, "In short, it would take serious linguistic gymnastics - and a <u>repudiation of this Court's decision in *Heller*</u> - to claim that the phrase "bear Arms" does not extend the Second Amendment beyond the home.[2] Well, the Ninth Circuit did just that.

*Heller* expressly recognized the right to carry weapons in public:

> ***"Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation."***

*D.C. v. Heller*, 554 U.S. 570, 592 (2008).

Federal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court.[3] Justice Rehnquist emphasized the importance of precedent when he observed that "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1984); *Thurston Motor Lines, Inc. v. Jordan K. Rand*, Ltd., 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (the Supreme Court, in a per curiam decision, stated: "Needless to say, only this Court may overrule one of its precedents.").

Notwithstanding the Ninth Circuit's rogue repudiation of *Heller* in *Young,* this Court is bound to adhere to Supreme Court precedent, which confirms that the Second Amendment "**guarantee[**s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592 (emphasis added).

---

[1] *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021).
[2] *Rogers v. Grewal*, 140 S. Ct. 1865, 1869 (2020) (Thomas, J. dissenting from denial of cert.) (emphasis added).
[3] *Jaffree v. Wallace*, 705 F.2d 1526, 1533 (11th Cir. 1983), aff'd in part, 466 U.S. 924, 104 S. Ct. 1704, 80 L. Ed. 2d 178 (1984), and aff'd, 472 U.S. 38, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985) citing, *Hutto v. Davis*, 454 U.S. 370, 375 (1982); *Stell v. Savannah-Chatham County Board of Education*, 333 F.2d 55, 61 (5th Cir.), cert. denied, 379 U.S. 933 (1964); *Booster Lodge No. 405, Int. Ass'n of M. & A.W. v. NLRB*, 459 F.2d 1143, 1150 n. 7 (D.C.Cir.1972).

## II. CRIMINALIZING THE 'MERE POSSESSION' OF A HANDGUN FOR SELF-DEFENSE VIOLATES THE SECOND AMENDMENT

### A. The 'Core Right' is Self-Defense

Imposing criminal sanctions for the mere exercise of a fundamental runs completely afoul of the Constitution. The Supreme Court in *Heller* held the Second Amendment's "core lawful purpose of self-defense". *Heller*, 554 U.S. at 630.

> *"Self-defense is not "merely a 'subsidiary interest' of the right to keep and bear arms…self-defense…was the central component of the right itself."*

*Id.* at 599 (emphasis supplied).

That the "core right" is self-defense was reaffirmed by the Supreme Court two years later in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010) ("Two years ago, in *District of Columbia v. Heller*, 554 U.S. 570 [ ] (2008), this Court held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense.").

### B. The Free Exercise of Self-Defense - Wherever You Are

The plaintiffs in *Heller* and *McDonald* challenged laws that criminalized the possession of a handgun without a license. While those plaintiffs only sought to legally possess handguns in their homes, nothing in any Supreme Court decisions limits the free exercise of the core right to self-defense to a particular building. To the contrary, the right to self-defense attaches to the individual – to possess and to carry arms for self-defense - wherever they are.

In *Caetano v. Massachusetts*, 577 U.S. 411 (2016), the plaintiff - a homeless woman – challenged her conviction under a Massachusetts law criminalizing the possession of stun guns.[4] The stun gun was found in Ms. Caetano's purse when she was detained in a store for shoplifting. Confirming that the Second Amendment protects all weapons in "common use for self-defense", including stun guns, nowhere did the Supreme Court so much as hint that carrying a weapon for self-defense was limited to a house. Ms. Caetano did not have a house – she was homeless. *Everywhere* Ms. Caetano went, she was carrying a weapon in common use for self-defense.

---

[4] Striking the Massachusetts criminal statute as violating the Second Amendment, the Court declared, "The Court has held that the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding…and that this Second Amendment right is fully applicable to the States." *Caetano*, 577 U.S. at 411 citing, *Heller*, 554 U.S. at 582 and *McDonald v. Chicago*, 561 U.S. 742, 750 (2010).

"Under Massachusetts law, however, Caetano's mere possession of the stun gun that may have saved her life made her a criminal." *Caetano*, 577 U.S. 413.

Under California law, Plaintiffs do not require a license to possess handguns at home. Plaintiffs require a license to carry in "in public", which means everywhere outside of their front door. 'Public place' includes any area in which a stranger can walk without challenge. *People v. Strider* (2009) 177 Cal.App.4th 1393 (and cases cited); *People v. Yarbrough* (2008) 169 Cal.App.3d 886 (unenclosed residential driveway); *People v. Overturf*, (1976) 64 Cal.App.3rd Supp. 2 (unfenced business driveway is a public place). One's driveway, lawn, porch, sidewalk – all 'public places.' *Id.* citing, *People v. Olson* (1971) 18 Cal.App.3d 592. One's house is arguably a 'public place' when the front or back door is unlocked.

California law does not simply "generally prohibit" the public carrying of a handgun "in any public place or on any public street" [Def. Memo of P&A at p. 2] it outright prohibits any possession of a handgun under threat of criminal prosecution. California recognizes no constitutional right to carry a handgun, as discussed below. A license is merely a defense.

Defendant's position that the scope of the Second Amendment is limited to a house, an office, or a campground is nonsensical and must be rejected. [Def. Memo of Law at pp. 16-17]. Ms. Caetano possessed an illegal stun gun; Plaintiffs possess legally owned handguns. Like Ms. Caetano, however, Plaintiffs' mere possession of a legally owned handgun[5] in public for self-defense makes them criminals. As with the Massachusetts criminal statutes, Penal Codes § 25850 and § 26350 violate the Second Amendment and must be stricken.

**C. History Confirms the Right to Bear Arms for Self-Defense in Public**

In *McDonald*, the Supreme Court reaffirmed, in *Heller* "we concluded, citizens must be permitted "to use [handguns] for the core lawful purpose of self-defense." *McDonald*, 561 U.S. at 767 (internal citation omitted). "*Heller* makes it clear that this right is deeply rooted in this Nation's history and tradition. *Heller* explored the right's origins, noting that the 1689 English Bill of Rights explicitly protected a right to keep arms for self-defense and that by 1765,

---

[5] It is beyond cavil that the handgun is a weapon in common use for self-defense. *Heller*, 554 U.S. at 629 ("It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon.").

3

Blackstone was able to assert that the right to keep and bear arms was one of the fundamental rights of Englishmen. Blackstone's assessment was shared by the American colonists. As we noted in *Heller*, King George III's attempt to disarm the colonists in the 1760's and 1770's provoked polemical reactions by Americans invoking their rights as Englishmen to keep arms. The right to keep and bear arms was considered no less fundamental by those who drafted and ratified the Bill of Rights." *McDonald*, 561 U.S. at 767 (internal citations and quotations omitted).

### III. CALIFORNIA DOES NOT "REGULATE" OPEN CARRY, IT BANNED IT

#### A. Banning All Manner of Public Carry Violates the Second Amendment

As the right to carry weapons in common use for self-defense is protected by the Second Amendment [Points I, II, supra], banning all forms of public carry – open and concealed - violates the Second Amendment. American jurisprudence so demonstrates. [See, Declaration of Clayton Cramer at p. 22-73] ("Precedents from other states and California have either explicitly or implicitly held that concealed carry could be banned as long as open carry remained lawful.") citing *State v.* Reid, 1 Ala. 612, 614 (1840); *Nunn v. State*, 1 Ga. 243, 125-51 (1846); *Hill v. State*, 53 Ga. 472, 481 (1874); *In re Brickey*, 8 Ida. 597 (1902); *State v. Huntley,* 25 N.C. 418, 422 (1843) ("for any lawful purpose – either of business or amusement – the citizen is at perfect liberty to carry his gun. It is the wicked purpose – and the mischievous result – which essentially constitute the crime."); citing, *inter alia*, Bishop, Commentaries on the Criminal Law § 980, §981 (3d ed. 1865); Statutes of the Territory of Wisconsin 381 (1838); Revised Statutes of the State of Michigan 692, ch. 162 (1846); Acts and Resolves, Passed by the Twenty-First Legislature of the State of Maine 532 (1841); 1851 Minn. Laws 526-528; 1861 Pa. Laws 248, 250.

A complete ban on public carry is also directly contrary to Supreme Court precedent confirming that the Second Amendment protects individual right possess and carry weapons for self-defense. [Points I and II, supra.].

#### B. Subjecting Carry Licenses to Discretionary Laws Violates the Second Amendment

"It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent

4

upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Shuttlesworth v. City of Birmingham*, Ala., 394 U.S. 147, 151, 89 S. Ct. 935, 938–39, 22 L. Ed. 2d 162 (1969) citing, *Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302.

"And our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license. The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands." *Id.*

Under §§ 26150 and 26155, the right to self-defense in public is subject to the discretion of licensing officers under the "may issue" language, which violates the Second Amendment.

### C. In California, Concealed Carry is a Mere Privilege

Concealed carry in California is deemed a mere privilege, unprotected by the Second Amendment. *Peruta v. Cty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016) ("We therefore conclude that the Second Amendment right to keep and bear arms does not include, in any degree, the right of a member of the general public to carry concealed firearms in public.").

### D. Open Carry is Banned in California

Defendant ignores Penal Code § 26175, which requires licensing authorities to only use the application forms issued by Defendant.[6] The only application forms issued by Defendant are for concealed carry licenses. [See, Exhibit 4]. It is uncontested that Defendant does not issue any open carry application forms. Because § 26175 prohibits licensing authorities from using any other form, no open carry license can be either applied for or issued.[7]

---

[6] Under Penal Code § 26175, every sheriff's office in the state is required to use only those forms approved by the Attorney General for firearm licenses and applications for amendments to licenses, which shall be "uniform throughout the state".

[7] Penal Code § 26225 requires that a copy of all firearms licenses issued in each county (open carry and concealed carry) be "filed immediately" with the Attorney General's Office DOJ. Since 2012, no open carry licenses have been issued. Penal Code § 26350. [See, FOIL request response from Department of Justice as Exhibit 3].

**IV. BANNING OPEN CARRY IS NO CALIFORNIAN 'TRADITION'**

    **A. California's Tradition – Over 162 Years of the Free Exercise of Open Carry**

Defendant's claimed 'tradition' of regulating the open carry of firearms is a fallacy, as he turns a blind eye to the preceding 162+ years of actual tradition of California residents enjoying the free exercise of open carry for self-defense.

Even before California became a state in 1850, open carry was a legal and integral part of the longstanding history and tradition in California. Since the Mexican-American War in 1848, California had a tradition of unregulated open carry and its effects on society were largely unremarkable. People exercised their right to open carry; criminal conduct was punished accordingly. In 1856 a ban on <u>concealed</u> carry was debated in the legislature, intended apply only to Mexicans. [Cramer Dec. at 14]. In 1863, California banned <u>concealed</u> carry due to the high rate of crime during the Gold Rush[8]; but repealed the ban 7 years later.[9]  In 1917, after Pancho Villa's cross-border raid in New Mexico, California made it a crime to carry a concealed handgun in cities and required handgun sales to be registered. [Clayton Cramer at 14]. In 1923, concealed carry without a license anywhere in California became a crime. *Id.* at 16.

Not until 1967, when inner-city black residents exercised the right to be armed in response to police brutality in their neighborhoods, was the carrying a loaded firearm criminalized. See, Cal. A.B. 1591 (April 5, 1967) (amending Cal. Penal Code § 12031 to repealing law that allowed for open carry of loaded firearms). Open carry was eliminated altogether in 2012 with the passage of § 26350 banning open carry of an unloaded handgun.

Unregulated open carry was California's history and tradition for 164 years - substantially longer than it has been banned.

    **B. This Case is Distinguishable From *Young***

California's longstanding history and tradition of open carry vastly distinguishes this case from *Young*. The State of Hawaii is an 'extreme outlier', with weapons bans rooted in a

---

[8] NRA Institute for Legislative Action, Tuesday January 1, 2013, citing, "Three Years in California", Borthwick, J.D. (1857); Gunfighters, Highwaymen, & Vigilantes", McGrath, Roger (1984).
[9] NRA Institute for Legislative Action, Tuesday January 1, 2013.

monarchical history long pre-dating its annexation as a territory 1989. [10] Applying the reasoning in *Young* to the challenged California statutes yields an opposite result. Under *Young*, California's longstanding tradition of the free exercise of open carry throughout the State requires not only granting the requested relief, it supports summary judgment in Plaintiffs' favor.

The fact that California has been violating the Second Amendment right to open carry for years does not negate a present finding of actual, ongoing, and irreparable harm warranting granting the requested relief. See, e.g., *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); 11A Charles A. Wright, Arthur R. Miller and Mary Kane, Federal Practice and Procedure, § 2948.1 at 161 (2d ed. 1995) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

By the very nature of their allegations, Plaintiffs have met the first prong of the test.

## V. *HELLER* FLATLY REJECTED 'INTEREST BALANCING'

Defendant's public safety arguments fail. The Supreme Court long ago rejected the idea that constitutional rights are subject to "interest balancing". Rejecting Justice Breyer's balancing of individual rights against "public safety", *Heller* declared, "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all…Like the First [Amendment], it is the very product of an interest balancing by the people - which Justice Breyer would now conduct for them anew." *Heller*, 554 U.S. at 635.

*McDonald* also declared that public safety interests may not eviscerate the Second Amendment: "The right to keep and bear arms [ ] is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category."

---

[10] Brief *Amicus Curiae* of Gun Owners of America, Inc., *et al.* in Support of Petitioner's Petition for a Writ of Certioiari, *Young v Hawaii*, 20-1639 at p. 10-12. ("The Hawaii stranglehold on arms was easy to accomplish, since native Hawaiians had no experience with firearms prior to the arrival of Europeans in the late 1700s… It was (i) not until 1898 that the United States annexed Hawaii as a territory, (ii) not until 1950 that the current state constitution was adopted (including language mirroring the Second Amendment), and (iii) not until 1959 that Hawaii was granted statehood — more than a century after California, whose laws the Court examined in *Peruta v. Cnty. of San Diego*, 824 F.3d 919 (9th Cir. 2016).").

7

*McDonald*, 561 U.S. at 783 (collecting cases where those likely guilty of a crime are set free because of constitutional rights).

Indeed, "violent gun use is a constitutionally-protected means for law-abiding citizens to protect themselves from criminals. The phrase 'gun violence' may not be invoked as a talismanic incantation to justify any exercise of state power. Implicit in the concept of public safety is the right of law-abiding people to use firearms" for self-defense. *Duncan,* 265 F. Supp. 3d at 1135.

Both generally and "as applied" to Plaintiffs, Defendant's "public safety studies" and "peer-reviews" are irrelevant to the protected Second Amendment rights of the individual. That said, it is the lack of proper police training – not open carry itself – that poses a public safety danger. "Banning open carry does not greatly enhance public safety, nor does it cure deficiencies in departmental training of police officers. Police shootings of innocent civilians – whether unarmed, carrying concealed, or carrying exposed – will continue to occur absent proper training or in those situations where the armed person is willfully forcing a confrontation with officers. This can and will happen regardless of the legalities of open or concealed carry." [See, Declaration of Chuck Haggard at ¶ 23].

## VI. BALANCE OF THE HARDSHIPS FAVORS PLAINTIFFS

Where an individual faces criminal sanctions, yet only an affirmative defense is available, there is a potential for extraordinary harm; thus, the balance of hardships favors the plaintiffs. *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1136 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) ("because § 32310 (c) & (d) impose criminal sanctions for a failure to act it poses the potential for extraordinary harm on Plaintiffs, while discounting their Second Amendment rights. The balance of hardships favors Plaintiffs").

Plaintiffs face criminal sanctions for exercising their Second Amendment rights; as such the balance of hardships tips in their favor. Defendant failed to identify any factual basis for claiming the State would suffer a hardship.

**VII. PUBLIC INTEREST FAVORS GRANTING THE REQUESTED RELIEF**

"The public interest favors the exercise of Second Amendment rights by law-abiding responsible citizens. And it is always in the public interest to prevent the violation of a person's constitutional rights." *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1136 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018). As such, the public interest also favors granting the requested relief.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be granted.

Dated: July 9, 2021                                 Respectfully submitted,

                                                    THE BELLANTONI LAW FIRM, PLLC

                                                    /s/ Amy L. Bellantoni, Esq.
                                                    Amy L. Bellantoni
                                                    Counsel for Plaintiffs
                                                    Email: abell@bellantoni-law.com
                                                    *Pro Hac Vice*