ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
R. MATTHEW WISE, State Bar No. 238485
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6046
Fax: (916) 324-8835
E-mail: Matthew.Wise@doj.ca.gov
*Attorneys for Defendant Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK BAIRD and RICHARD GALLARDO,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,**<br><br>Defendants. | Case No. 2:19-cv-00617-KJM-AC<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT ATTORNEY GENERAL ROB BONTA'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: December 17, 2021<br>Time: 10:00 a.m.<br>Dept: 3<br>Judge: Hon. Kimberly J. Mueller<br><br>Trial Date: None set<br>Action Filed: April 9, 2019 |

Under Federal Rule of Evidence 201, Defendant Rob Bonta, in his official capacity as Attorney General of California (Defendant), respectfully requests that the Court take judicial notice of the following documents in support of Defendant's motion for summary judgment.

1. The worksheet for "State/County Population Estimates with Annual Percent Change – January 1, 2020 and 2021," from "E-1, Population Estimates for Cities, Counties, and the State – January 1, 2020 and 2021," which is a spreadsheet published by the California Department of Finance, Demographic Research Unit, described at

http://www.dof.ca.gov/Forecasting/Demographics/Estimates/E-1/. A true and correct copy of this worksheet is attached hereto as Exhibit 1. Exhibit 1 is a public record of the California Department of Finance that was accessed on November 16, 2021, from the California Department of Finance website (https://www.dof.ca.gov/Forecasting/Demographics/Estimates/E-1/documents/E-1_2021_InternetVersion.xlsx).

2. The text of statutes from various U.S. states regulating the carrying of firearms in public. A true and correct copy of these statutes (listed below by state of origin) is attached hereto as Exhibit 2.

| **STATE** | **YEAR** | **PAGES WITHIN EX. 1** |
|---|---|---|
| Virginia | 1786 | 001-004 |
| North Carolina | 1792 | 005-008 |
| Massachusetts | 1795 | 009-010 |
| Tennessee | 1801 | 011-013 |
| Maine | 1821, 1841 | 014-020 |
| Wisconsin | 1838 | 021 |
| Maine | 1841 | 022-025 |
| Michigan | 1846 | 026-029 |
| Virginia | 1847 | 030-033 |
| Minnesota | 1851 | 034-037 |
| Oregon | 1853 | 038-041 |
| Pennsylvania | 1861 | 042-046 |
| South Carolina | 1870 | 047-049 |
| Tennessee | 1870 | 050 |
| West Virginia | 1870 | 051-053 |
| Texas | 1871 | 054-056 |
| Wyoming | 1875 | 057-058 |

| Arkansas | 1881 | 059-060 |
|---|---|---|
| Oklahoma | 1890 | 061 |

3. The report, *2012 Summary: Firearms Reported Lost and Stolen*, published by the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives in 2013, which is described under the heading, "Federal Firearms Licensee Statistics Theft/Loss Reports," at https://www.atf.gov/resource-center/data-statistics. A true and correct copy of this document is attached hereto as Exhibit 3. Exhibit 3 is a public record of the Bureau of Alcohol, Tobacco, Firearms and Explosives that was accessed on November 16, 2021, on the Bureau of Alcohol, Tobacco, Firearms and Explosives website (https://www.atf.gov/file/4721/download).

4. The final, chaptered version of California Assembly Bill No. 144 (2011-2012), which added section 26350 to the Penal Code, and the legislative history of that bill. A true and correct copy of this document is attached hereto as Exhibit 4. Exhibit 4 is a public record of the California Legislature that was accessed on November 16, 2021, from the official California Legislative Information website (https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201120120AB144).

5. The California Senate Committee on Judiciary's analysis dated July 28, 1992, and the California Office of Criminal Justice Planning's Enrolled Bill Report dated September 28, 1992, for California Assembly Bill No. 1180 (1991-1992), which added language to the predecessor statute of Penal Code sections 26150 and 26155 to specify that a permit to carry firearms openly may be issued in a county of less than 200,000 persons. A true and correct copy of this document is attached hereto as Exhibit 5. Exhibit 5 is a public record of the California Legislature that was accessed from the California State Archives.

6. The California Senate Rules Committee's Senate Floor Analyses dated May 15, 1997, for California Senate Bill No. 146 (1997-1998), which amended language in the predecessor statute of Penal Code sections 26150 and 26155 to specify that a county sheriff or chief of policy may only issue an open carry permit within their jurisdiction. A true and correct copy of this

document is attached hereto as Exhibit 6. Exhibit 6 is a public record of the California Legislature that was accessed from the California State Archives.

The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court *shall* take judicial notice of such a fact if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(c)(2).

Here, Defendant requests judicial notice of various public records, including government reports, state statutes, and legislative history. Because the accuracy of these documents cannot reasonably be questioned, judicial notice is appropriate. *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) ("A trial court may presume that public records are authentic and trustworthy."); *BNSF Railway Co. v. Cty. of Alameda*, 7 F.4th 874, 880 n.4 (9th Cir. 2021) (taking judicial notice of publicly available documents explaining the taxation process in San Diego County and in California); *United States v. Lopez*, 4 F.4th 706, 731 (9th Cir. 2021) ("Federal courts may take judicial notice of matters of public record, including statutes."); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (discussing legislative history of California statute). In addition, government reports are independently admissible under Federal Rule of Evidence 803(8).

Dated: November 19, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ R. Matthew Wise*

R. MATTHEW WISE
Deputy Attorney General
*Attorneys for Defendant Attorney General Rob Bonta*

SA2019101934
35634553.docx

# EXHIBIT 1

About the Data

**E-1: State/County Population Estimates with Annual Percent Change**

**January 1, 2020 and 2021**

| | **Total Population** | | **Percent** |
|---|---|---|---|
| **State/County** | **1/1/2020** | **1/1/2021** | **Change** |
| Alpine | 1,146 | 1,135 | -1.0 |
| Sierra | 3,200 | 3,189 | -0.3 |
| Modoc | 9,563 | 9,491 | -0.8 |
| Mono | 13,449 | 13,295 | -1.1 |
| Trinity | 13,551 | 13,535 | -0.1 |
| Mariposa | 18,074 | 18,037 | -0.2 |
| Plumas | 18,256 | 18,116 | -0.8 |
| Inyo | 18,584 | 18,563 | -0.1 |
| Colusa | 22,030 | 22,248 | 1.0 |
| Del Norte | 27,231 | 26,949 | -1.0 |
| Lassen | 28,666 | 27,572 | -3.8 |
| Glenn | 29,582 | 29,679 | 0.3 |
| Amador | 37,673 | 37,377 | -0.8 |
| Siskiyou | 44,463 | 44,330 | -0.3 |
| Calaveras | 45,023 | 45,036 | 0.0 |
| Tuolumne | 54,925 | 53,465 | -2.7 |
| San Benito | 62,486 | 63,526 | 1.7 |
| Lake | 64,005 | 63,940 | -0.1 |
| Tehama | 65,126 | 65,354 | 0.4 |
| Yuba | 78,510 | 79,407 | 1.1 |
| Mendocino | 87,708 | 86,669 | -1.2 |
| Nevada | 97,775 | 97,466 | -0.3 |
| Sutter | 101,339 | 101,289 | 0.0 |
| Humboldt | 132,824 | 130,851 | -1.5 |
| Napa | 139,000 | 137,637 | -1.0 |
| Kings | 153,189 | 152,543 | -0.4 |
| Madera | 158,602 | 158,474 | -0.1 |
| Shasta | 177,536 | 177,797 | 0.1 |
| Imperial | 188,422 | 186,034 | -1.3 |
| El Dorado | 193,519 | 195,362 | 1.0 |
| Butte | 208,951 | 202,669 | -3.0 |
| Yolo | 221,276 | 217,500 | -1.7 |
| Marin | 260,388 | 257,774 | -1.0 |
| Santa Cruz | 270,373 | 261,115 | -3.4 |
| San Luis Obispo | 276,818 | 271,172 | -2.0 |
| Merced | 283,352 | 284,836 | 0.5 |
| Placer | 399,015 | 404,994 | 1.5 |
| Monterey | 440,393 | 437,318 | -0.7 |
| Solano | 439,211 | 438,527 | -0.2 |
| Santa Barbara | 450,511 | 441,172 | -2.1 |
| Tulare | 479,403 | 481,733 | 0.5 |
| Sonoma | 491,354 | 484,207 | -1.5 |
| Stanislaus | 554,931 | 555,968 | 0.2 |
| San Mateo | 771,061 | 765,245 | -0.8 |
| San Joaquin | 773,505 | 783,534 | 1.3 |
| Ventura | 841,219 | 835,223 | -0.7 |
| San Francisco | 889,783 | 875,010 | -1.7 |
| Kern | 916,828 | 914,193 | -0.3 |
| Fresno | 1,020,292 | 1,026,681 | 0.6 |
| Contra Costa | 1,149,853 | 1,153,854 | 0.3 |
| Sacramento | 1,553,157 | 1,561,014 | 0.5 |
| Alameda | 1,663,114 | 1,656,591 | -0.4 |
| Santa Clara | 1,945,166 | 1,934,171 | -0.6 |
| San Bernardino | 2,175,424 | 2,175,909 | 0.0 |
| Riverside | 2,440,719 | 2,454,453 | 0.6 |
| Orange | 3,180,491 | 3,153,764 | -0.8 |
| San Diego | 3,331,279 | 3,315,404 | -0.5 |
| Los Angeles | 10,135,614 | 10,044,458 | -0.9 |
| **California** | 39,648,938 | 39,466,855 | -0.5 |

Department of Finance
Demographic Research Unit
Phone: (916) 323-4086
For more information: http://www.dof.ca.gov/research/demographic/reports/estimates/e-1/view.php
Released on May 7, 2021

# EXHIBIT 2

A

# COLLECTION

OF

ALL SUCH

# ACTS

OF THE

# *GENERAL ASSEMBLY*

OF

# VIRGINIA,

OF A PUBLIC AND PERMANENT NATURE, AS ARE NOW IN FORCE;

---

WITH A

*NEW AND COMPLETE INDEX.*

---

TO WHICH ARE PREFIXED THE DECLARATION OF RIGHTS, AND CONSTITUTION, OR FORM OF GOVERNMENT.

---

PUBLISHED PURSUANT TO AN ACT OF THE GENERAL ASSEMBLY, PASSED ON THE TWENTY-SIXTH DAY OF JANUARY, ONE THOUSAND EIGHT HUNDRED AND TWO.

---

RICHMOND,

*PRINTED BY SAMUEL PLEASANTS, JUN. AND HENRY PACE.*

M,DCCC,III.

Digitized by Google

interpofition difarmed of her natural weapons, free argument and debate, errors ceafing to be dangerous when it is permitted freely to contradict them:

No man compelled to frequent or fupport any religious worfhip. All men free to profefs, and by argument to maintain their religious opinions.

II. *BE it enacted by the General Affembly*, That no man shall be compelled to frequent or fupport any religious worship, place, or Miniftry whatfoever, nor shall be enforced, reftrained, molefted, or burthened in his body or goods, nor shall otherwife fuffer on account of his religious opinions or belief; but that all men shall be free to profefs, and by argument to maintain, their opinions in matters of religion, and that the fame shall in no wife diminish, enlarge, or affect their civil capacities.

Declaration that the rights by this Act afferted, are of the natural rights of mankind.

III. AND though we well know that this Affembly elected by the people for the ordinary purpofes of legiflation only, have no power to reftrain the Acts of fucceeding Affemblies, conftituted with powers equal to our own, and that therefore to declare this Act to be irrevocable, would be of no effect in law; yet we are free to declare, and do declare, that the rights hereby afferted, are of the natural rights of mankind, and that if any Act shall be hereafter paffed to repeal the prefent, or to narrow its operation, fuch Act will be an infringement of natural right.

---

*General Affembly*, begun and held at the Public Buildings, in the City of *Richmond*, on *Monday*, the 16th Day of *October*, in the Year of our Lord, 1786.

---

## CHAP. XXI.

*An Act forbidding and punifhing Affrays.*†

[Paffed the 27th of November, 1786.‡]

Punifhment of perfons going armed before Courts of Juftice, or the Minifters of Juftice, or in fairs or markets in terror of the Country.

BE *it enacted by the General Affembly*, That no man, great nor fmall, of what condition foever he be, except the Minifters of Juftice in executing the precepts of the Courts of Juftice, or in executing of their office, and fuch as be in their company affifting them, be fo hardy to come before the Juftices of any Court, or either of their Minifters of Juftice, doing their office, with force and arms, on pain, to forfeit their armour to the Commonwealth, and their bodies to prifon, at the pleafure of a Court; nor go nor ride armed by night nor by day, in fairs or markets, or in other places, in terror of the Country, upon pain of being arrefted and committed to prifon by any Juftice on his own view, or proof by others, there to abide for fo long a time as a Jury, to be fworn for that purpofe by the faid Juftice, shall direct, and in like manner to forfeit his armour to the Commonwealth; but no perfon shall be imprifoned for fuch offence by a longer fpace of time than one month.

---

## CHAP. XXII.

*An Act againft Confpirators.*

[Paffed the 27th of November, 1786.‖]

Who fhall be deemed Confpirators.

BE *it declared and enacted by the General Affembly*, That Confpirators be they that do confederate and bind themfelves by oath, covenant, or other alliance, that every of them shall aid and bear the other falfely and malicioufly, to move or caufe to be moved any indictment or information againft another on the part of the Commonwealth, and thofe who are convicted thereof at the fuit of the Commonwealth, shall be punished by imprifonment and amercement, at the difcretion of a Jury.

---

## CHAP. XXIII.

*An Act prefcribing the Punifhment of thofe who fell unwholefome Meat or Drink.*

[Paffed the 27th of November, 1786.§]

Punifhment of thofe who fell unwholefome

BE *it enacted by the General Affembly*, That a Butcher or other perfon that felleth the flesh of any animal dying otherwife than by flaughter, or flaugh-

† 1786, *ch.* 49. ‡ *Commenced* 1 *July*, 1787. ‖ 1786, *ch.* 50. § 1786, *ch.* 53.

Digitized by Google

# The Revised Code

OF THE

# LAWS OF VIRGINIA:

BEING

*A COLLECTION OF ALL SUCH ACTS*

OF THE

# GENERAL ASSEMBLY,

OF A PUBLIC AND PERMANENT NATURE, AS ARE NOW IN FORCE;

## WITH A GENERAL INDEX.

TO WHICH ARE PREFIXED,

THE CONSTITUTION OF THE UNITED STATES;

THE DECLARATION OF RIGHTS;

AND

THE CONSTITUTION OF VIRGINIA.

*Published pursuant to an act of the General Assembly, entitled "An act providing for the re-publication of the Laws of this Commonwealth," passed March* 12, 1819.

VOLUME I.

*RICHMOND:*

PRINTED BY THOMAS RITCHIE,

PRINTER TO THE COMMONWEALTH.

1819.

Digitized by Google

## C. 140.

A. D. 1786.
A. R. C. 11.

*An act forbidding and punishing Affrays.**

[Passed November 27, 1786.]

Punishment of persons going armed before courts of justice, or the ministers of justice, or in fairs or markets, in terror of the country.
St. Northamp. 2 Ed. 3, c. 3.

*Be it enacted by the General Assembly*, That no man, great nor small, of what condition soever he be, except the ministers of justice in executing the precepts of the courts of justice, or in executing of their office, and such as be in their company assisting them, be so hardy to come before the justices of any court, or other of their ministers of justice, doing their office, with force and arms, on pain to forfeit their armour to the Commonwealth, and their bodies to prison, at the pleasure of a court; nor go nor ride armed by night nor by day, in fairs or markets, or in other places, in terror of the country, upon pain of being arrested and committed to prison by any justice on his own view, or proof by others, there to abide for so long a time as a jury, to be sworn for that purpose by the said justice, shall direct, and in like manner to forfeit his armour to the Commonwealth; but no person shall be imprisoned for such offence by a longer space of time than one month.

## C. 141.

A. D. 1792.
A. R. C. 17.

*An act for the effectual suppression of vice, and punishing the disturbers of religious worship, and Sabbath Breakers.*†

[Passed December 26, 1792.]

Punishment for profane swearing, cursing, or drunkenness.

1. *Be it enacted by the General Assembly*, That, if any person or persons shall profanely swear or curse, or shall be drunk, he, she or they so offending, for every such offence, being thereof convicted by the oath of one or more witnesses, (which oath any justice of the peace is hereby empowered and required to administer,) or by confession before one or more justice or justices of the peace in the county or corporation where such offence shall be committed, shall forfeit and pay the sum of eighty-three cents for every such offence; or, if the offence or offences be committed in the presence and hearing of one or more justice or justices of the peace, or in any court of record in this Commonwealth, the same shall be a sufficient conviction without any other evidence, and the said offender shall, upon such conviction, forfeit and pay the sum of eighty-three cents for every such offence; and, if any person or persons shall refuse to make present payment, or give sufficient security for the payment of the same in a reasonable time, not

* 1786, c. 49; 1792, edi. 1794, 1803, and '14, c. 21; took effect July 1, 1787; *vid.* acts of 1786, c. 115, § 5; *ante.* c. 43.

† Former general law touching these subjects; 1792, edi. 1794, 1803, and 1814, c. 138.

Digitized by Google

24627
North Carolina. Laws, Statutes, etc., 1792.
A Collection of the Statutes of the Parliament of England in Force in ... North Carolina.
Newbern, 1792. xxvi, 424, [ 3 ] pp.
AAS copy.

ANTIQUARIAN ... WORCESTER, MASS.

# A COLLECTION OF THE STATUTES OF THE PARLIAMENT O. ENGLAND. IN FORCE IN THE STATE OF NORTH-CAROLINA.

PUBLISHED ACCORDING TO A RESOLVE OF THE GENERAL ASSEMBLY.

By FRANCOIS-XAVIER MAR N, Esq.
COUNSELLO LAW.

*NEWBERN:*
FROM THE EDITOR'S PRESS.
1792.

## CHAP. VIII.

*Nothing ſhall be taken for Beaupleader.*

ITEM, Whereas ſome of the realm have grievouſly complained, that they be grieved by Sheriffs, naming themſelves the King's approvers, which take money by extortion for Beaupleader, the King will, that the ſtatute of Marlebridge ſhall be obſerved and kept in this point.

## CHAP. XIV.

*None ſhall commit Maintenance.*

ITEM, Becauſe the King deſireth that common right be adminiſtered to all perſons, as well poor as rich, he commandeth and defendeth, that none of his Counſellors, nor of his houſe, nor none other of his Miniſters, nor no great man of the realm by himſelf, nor by other, by ſending of letters, nor otherwiſe, nor none other in this land, great nor ſmall, ſhall take upon them to maintain quarrels nor parties in the country, to the let and diſturbance of the common law.

# Statutes made at Northampton, tribus Septimanis Paſchae, in the Second Year of the Reign of Edward the Third, and in the Year of our Lord 1328.

## CHAP. I.

*A Confirmation of the Great Charter and the Charter of the Foreſt.*

[*Unneceſſary to be inſerted.*]

## CHAP. III.

*No Man ſhall come before the Juſtices, or go or ride armed.*

ITEM, It is enacted, that no man great nor ſmall, of what condition ſoever he be, except the King's ſervants in his preſence, and his Miniſters in executing of the King's precepts, or of their office, and ſuch as be in their company aſſiſting them, and alſo upon a cry made for arms to keep the peace, and the ſame in ſuch places where ſuch acts happen, be ſo hardy to come before the King's Juſtices, or other of the King's

Ministers doing their office with force and arms, nor bring no force in an affray of peace, nor to go nor ride armed by night nor by day, in fairs, markets, nor in the presence of the King's Justices, or other ministers, nor in no part elsewhere, upon pain to forfeit their ar[illegible]r to the King, and their bodies to prison at the King's pleasure. And that the King's Justices in their presence, Sheriffs and other ministers, in their bailiwicks, Lords of Franchises, and their bailiffs in the same, and Mayors and Bailiffs of cities and boroughs, within the same cities and boroughs, and borough-holders, constables and wardens of the peace within their wards shall have power to execute this act. And that the Justices assigned, at their coming down into the country, shall have power to enquire how such officers and lords have exercised their offices in this case, and to punish them whom they find that have not done that which pertain to their office.

## CHAP. V.

*The Manner how Writs shall be delivered to the Sheriff to be executed.*

ITEM where it was ordained by the statute of Westminster the second, that they which will deliver their writs to the Sheriff shall deliver them in the full county, or in the rere county, and that the Sheriff or Under-Sheriff shall thereupon make a bill: it is accorded and established, that at what time or place in the county a man doth deliver any writ to the Sheriff or to the Under-Sheriff, that they shall receive the same writs, and make a bill after the form contained in the same statute, without taking any thing therefore. And if they refuse to make a bill, others that be present shall set to their seals, and if the Sheriff or Under-Sheriff do not return the said writs, they shall be punished after the form contained in the said statute. And also the Justices of Assize shall have power to enquire thereof at every man's complaint, and to award damages, as having respect to the delay, and to the loss and peril that might happen.

## CHAP. VI.

*Justices shall have Power to punish Breakers of the Peace.*

ITEM, as to the keeping of the peace in time to come, it is ordained and enacted that the statutes made in time past, with the statute of Winchester, shall be observed and kept in every point: and where it is contained in the end of said statute of Winchester, that the Justices assigned shall have power to enquire of defaults, and to report to the King in his next parliament, and the King to remedy it, which no man hath yet seen, the same Justices shall have power to punish the offenders and disobeyers.

THE

# Perpetual Laws

OF THE

## COMMONWEALTH

OF

# MASSACHUSETTS,

From the ESTABLISHMENT of its CONSTITUTION,
IN THE YEAR 1780,
To the END of the YEAR 1800;

WITH THE
CONSTITUTIONS of the UNITED STATES of AMERICA,
and of the COMMONWEALTH, prefixed.

8064

TO WHICH IS ADDED,

## AN APPENDIX,

CONTAINING

*ACTS AND CLAUSES OF ACTS, FROM THE LAWS OF THE LATE COLONY, PROVINCE AND STATE OF MASSACHUSETTS, WHICH EITHER ARE UNREVISED OR RESPECT THE TITLE TO REAL ESTATE.*

IN THREE VOLUMES.

VOL. II.

Containing the LAWS from JUNE, 1788, to JUNE, 1798, inclufively.

*Ignorantia legis neminem excufat.*
The Ignorance of Law is an Excufe for no One.
The Law is the Subject's beft Birthright.

PRINTED AT *BOSTON*,
BY I. THOMAS AND E. T. ANDREWS.
Sold by them, at their Bookftore, No. 45, Newbury-Street; and by faid THOMAS, at his Bookftore, in WORCESTER.
*MARCH*, 1801.

Digitized by Google

Original from
UNIVERSITY OF MICHIGAN

RJN Ex. 2 - 009

## CHAP. XXIII.

An Act to incorporate certain Persons by the name of The Northwest Congregational Society in Northyarmouth. Passed *June* 26, 1794.

[*SPECIAL.*]

## CHAP. XXIV.

An Act for incorporating certain Land in Dedham and Sharon, in the County of Norfolk, into a Common Field. Passed *January* 22, 1795.

[*SPECIAL.*]

## CHAP. XXV.

### An Act for repealing an Act, made and passed in the year of our Lord, one Thousand six Hundred and Ninety two, entitled "An Act for punishing Criminal Offenders," and for reenacting certain Provisions therein.

1. BE *it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same,* That the said act be, and hereby is repealed, and made wholly null and void.

Act repealed.

2. *And be it further enacted by the authority aforesaid,* That every Justice of the Peace, within the county for which he may be commissioned, may cause to be staid and arrested, all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth, or such others as may utter any menaces or threatening speeches, and upon view of such Justice, confession of the delinquent, or other legal conviction of any such offence, shall require of the offender to find sureties for his keeping the Peace, and being of the good behaviour; and in want thereof, to commit him to prison until he shall comply with such requisition: And may further punish the breach of the Peace in any person that shall assault or strike another, by fine to the Commonwealth, not exceeding *twenty shillings*, and require sureties, as aforesaid, or bind the offender, to appear and answer for his offence at the next Court of General Sessions of the Peace, as the nature or circumstances of the case may require.

Justices of the Peace empowered.

[Passed *January* 29, 1795.]

CHAP.

Digitized by Google

Original from UNIVERSITY OF MICHIGAN

THE

# STATUTE LAWS

OF THE

# STATE OF TENNESSEE,

OF A

# PUBLIC AND GENERAL NATURE;

REVISED AND DIGESTED

BY

JOHN HAYWOOD AND ROBERT L. COBBS.

BY ORDER OF THE GENERAL ASSEMBLY.

## VOL. I.

KNOXVILLE, T.
F. S. HEISKELL, PRINTER AND PUBLISHER,
1831.

Digitized by Google

they may require; and it shall be the duty of any constable of the county where such witnesses may reside, to execute and make return thereof, and the witnesses shall receive the same pay, to be paid by the party against whom the award may be made; and they shall be subject to the same penalties for non-attendance as in similar cases; and the officer summoning such witnesses, shall receive the same fees as for summoning witnesses to attend before a justice of the peace.

## ARMIES—STANDING.

Con. art. 11.

§ 24. The sure and certain defence of a free people is a well regulated militia: and as standing armies in time of peace are dangerous to freedom, they ought to be avoided as far as the circumstances and safety of the community will admit: and in all cases the military shall be kept in strict subordination to the civil authority.

## ARMS.

Con. art. 11.

§ 26. The freemen of this state have a right to keep and to bear arms for their common defence.

§ 28. No citizen of this state shall be compelled to bear arms, provided he will pay an equivalent to be ascertained by law.

1801, c. 22. Persons going armed, bound to good behaviour on justice's own view or information

§ 6 If any person or persons shall publicly ride, or go armed to the terror of the people or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person, it shall be the duty of any judge or justice on his own view, or upon the information of any other person on oath, to bind such person or persons to their good behaviour, and if he or they fail to find securities, commit him or them to jail; and if such person or persons shall continue so to offend, he or they shall not only forfeit their recognizance, but be liable to an indictment, and be punished as for a breach of the peace, or riot at common law.

1821, c. 13. Fine for carrying weapons

Each and every person so degrading himself by carrying a dirk, sword-cane, spanish stiletto, belt or pocket pistols, either public or private, shall pay a fine of five dollars for every such offence, which may be recovered by warrant before any justice of the peace, in the name of the county and for its use, in which the offence may have been committed; and it shall be the duty of a justice to issue a warrant on the application, on oath, of any person applying; and it shall be the duty of every judge, justice of the peace, sheriff, coroner and constable within this state, to see that this act shall have its full effect; *provided, nevertheless*, that nothing herein contained shall effect any person that may be on a journey to any place out of his county or state.

1825, c. 19. Sheriff, coroner or constable to arrest persons suspected.

§ 1. When any sheriff, coroner or constable, shall know, of his own knowledge, or upon the representation of any person, or if he or they shall have good reason to suspect any person of being armed with the intention of committing a riot or affray, or of wounding or killing any person, it shall be the duty of all such officers, immediately to arrest all such persons, so suspected, and return them before some justice of the peace, whose duty it shall be, upon proof being made that there was reasonable ground to suspect such person or persons for being armed, with intent to disturb or commit a breach of the peace, to bind such person or persons in a bond, with two or more good and sufficient securities, in a sum of not less than two hundred and fifty dollars, and not exceeding two thousand dollars, conditioned for his or their good behaviour and peaceable deportment for the term of twelve months thereafter.

Justice to bind to good behaviour.

Justice to have arrested, &c.

§ 2. If any justice of the peace shall know of his own knowledge, or have reasonable cause to suspect any person or persons of being armed, with intent to commit a breach of the peace, it shall be the duty of such justice of the peace, to cause such offender or offenders

Digitized by Google

to be arrested and immediately brought before him or some other justice for examination, and upon its being satisfactorily made to appear that such person or persons was armed, or about to be armed, with intent to commit a breach of the peace, such justice shall bind such offender or offenders in bond and security, as specified in the first section of this act.

§ 3. The bonds by this act required to be given, shall be made payable to the chairman of the county court of the county in which the same shall be executed, and his successors in office, and shall be filed in the office of the clerk of said court, and it shall be the duty of the solicitor for the state, when he shall believe such bond to be forfeited, to issue *scière facias* thereon against such offender and his securities, and the amount collected shall be, by the sheriff, paid to the county trustee for county purposes.

Bond payable to chairman.

Solicitors to issue *sci. fa.*

§ 4. Any justice of the peace, sheriff, coroner or constable, when acting under the provisions of this act, shall have power and authority to summon as many persons as they may think proper, to assist in arresting and securing any such offender, and any person so summoned and shall fail or refuse to assist such officer for the purposes aforesaid, shall forfeit and pay the sum of ten dollars and cost, to be recovered before any justice of the peace, for the use of the county; and it shall be the duty of such officer, when he may have summoned any person to assist as aforesaid, and such person shall fail or refuse to obey such summons, to prosecute such defaulter before some justice of the peace, for the above penalty, and give evidence of such summons and default.

Officers to summon persons to assist.

§ 5. When any person shall be brought before any justice of the peace as required by the first and second sections of this act, and shall fail or refuse to give the security required, it shall be the duty of such justice to commit such offender to the nearest sufficient jail, for safe keeping, until such security is given or he shall be discharged by due course of law.

Persons refusing to give bond to be committed.

§ 6. If any sheriff, coroner or constable, shall knowingly fail or refuse to perform any of the duties required by this act, it shall be deemed a misdemeanor in office, and upon conviction thereof, shall be fined, at the discretion of the court, in a sum not exceeding fifty nor less than ten dollars, and shall furthermore be removed from office and be disqualified from holding the same office for five years.

Officers punished for neglect, by fine, removal, &c.

---

## ATTACHMENT.

1794, c. 1.

§ 19. Upon any complaint being made on oath to any of the judges *of the superior courts of this state*, or to any justice of any of the county courts, by any person or persons, his, her or their attorney, agent or factor, that any person hath removed or is removing him or herself out of the county privately, or so absconds or conceals him or herself, that the ordinary process of law cannot be served on such debtor; and if such plaintiff, his, her or their attorney, agent or factor, further swears to the amount of his, her or their debt, or demand, to the best of his, her or their knowledge and belief, it shall be lawful for such judge or justice, and he is hereby empowered and required to grant an attachment against the estate of such debtor, wherever the same may be found, or in the hands of any person or persons indebted to, or having any of the effects of the defendant, or so much thereof as shall be of value sufficient to satisfy the debt or demand and costs of such complaint; which attachment shall be returned to the court where the suit is cognizable, and shall be deemed a leading process in such action; and the same proceedings shall be had thereon as on judicial attachments; *provided always*, that every such judge or justice, before granting such attachment, shall take bond and security of the party for whom the same shall be issued, his, her or their attorney, agent or factor, payable to the defendant, in double the sum

When attachments may issue upon affidavit.

Plaintiff to give bond.

Digitized by Google

Maine. Laws, statutes, etc.

# LAWS

OF THE

# STATE OF MAINE;

TO WHICH ARE PREFIXED

THE

CONSTITUTION OF THE UNITED STATES

AND OF SAID STATE,

## WITH AN APPENDIX.

4952

*HALLOWELL:*
PRINTED AND PUBLISHED BY GLAZIER, MASTERS & CO.
No. 1, Kennebec-Row.

1830.

Digitized by Google

## CHAPTER LXXVI.

An Act describing the power of Justices of the Peace in Civil and Criminal Cases.

SEC. 1. BE *it enacted by the Senate and House of Representatives, in Legislature assembled*, That it shall be within the power, and be the duty of every Justice of the Peace within his county, to punish by fine not exceeding five dollars, all assaults and batteries that are not of a high and aggravated nature, and to examine into all homicides, murders, treasons, and felonies done and committed in his county, and commit to prison all persons guilty, or suspected to be guilty of manslaughter, murder, treason or other capital offence; and to cause to be staid and arrested, all affrayers, rioters, disturbers or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terrour of the good citizens of this State, or such others as may utter any menaces or threatening speeches; and upon view of such Justice, confession of the delinquent, or other legal conviction of any such offence, shall require of the offender to find sureties to appear and answer for his offence, at the Supreme Judicial Court, or Circuit Court of Common Pleas, next to be held within or for the same county, at the discretion of the Justice, and as the nature or circumstances of the case may require; and for his keeping the peace, and being of the good behaviour, until the sitting of the Court he is to appear before; and to hold to bail all persons guilty or suspected to be guilty of lesser offences which are not cognizable by a Justice of the Peace; and require sureties for the good behaviour of dangerous and disorderly persons; and commit all such persons as shall refuse so to recognize, and find such surety or sureties as aforesaid; and take cognizance of, or examine into all other crimes, matters and offences, which by particular laws are put within his jurisdiction.

*General* jurisdiction of Justices of the Peace, and their duty in criminal cases, in *arresting, trying, recognizing* and *committing* offenders.

SEC. 2. *Be it further enacted*, That all fines and forfeitures accruing for the breach of any by-law, in any town within this State, may be prosecuted for, and recovered before any Justice of the Peace in the town or county where the offence shall be committed, by complaint or information, in the same way and manner other criminal offences are prosecuted before the Justices of the Peace within this State.

Breaches of the by-laws of towns may be prosecuted before Justices of the Peace.

SEC. 3. *Be it further enacted*, That any person aggrieved at the sentence given against him, by any justice of the Peace, may appeal therefrom to the next Circuit Court of Common Pleas to be held within the same county, and shall, before his appeal is granted, recognize to the State in such reasonable sum, not less than twenty dollars, as the Justice shall order, with sufficient surety or sureties for his prosecuting his appeal; and shall be held to produce the copy of the whole process, and all writings filed before the Justice, at the Court appeal-

Persons aggrieved may appeal to the C. Court of Com. Pleas.

Must recognize with sureties,

and produce copies of case at C. C. Common Pleas.

Digitized by Google

Failing to prosecute his appeal, his default to be entered.
Court may order such case to be laid before Grand Jury, or arrest appellant, and affirm sentence, &c.

ed to. And if he shall not there prosecute his appeal, and produce the copies as aforesaid, the Court shall order his default to be noted upon their record. And the said Court may order the same case to be laid before the Grand Jury, or may issue an attachment against the body of such appellant, and cause him thereby to be brought before them, and when he is so in Court, shall affirm the sentence of the Justice against him, with all additional costs.

Justices may command assistance of sheriff, deputies and constables at riots, affrays, &c.

SEC. 4. *Be it further enacted*, That each Justice shall have authority to command the assistance of every Sheriff, Deputy Sheriff, Constable, and all other persons present at any affray, riot, assault or battery, and may fine any person refusing such assistance, in a sum not exceeding six dollars; to be disposed of for the use of the town where the offence shall be committed; and levied by warrant of distress on the offender's goods and chattels, and for want thereof on his body.

Justices may, on their own view, (in absence of sheriff, deputies or constables,) require any person to apprehend offenders.
Penalty for refusing to obey such Justice.
If the Justice be *known* or *declared*—plea of ignorance of his office not admissible.

SEC. 5. *Be it further enacted*, That any Justice of the Peace for the preservation thereof, or upon view of the breach thereof, or upon view of any other transgression of law, proper to his cognizance, done or committed by any person or persons whatever, shall have authority, (in the absence of the Sheriff, Deputy Sheriff or Constable,) to require any person or persons to apprehend and bring before him such offender or offenders. And every person so required, who shall refuse or neglect to obey the said Justice, shall be punished in the same manner as for refusing or neglecting to assist any Sheriff, Deputy Sheriff or Constable in the execution of his office as aforesaid. And no person who shall refuse or neglect to obey such Justice, to whom he shall be known, or declare himself to be a Justice of the Peace, shall be admitted to plead excuse on any pretence of ignorance of his office.

Justices may grant subpœnas for witnesses in criminal cases:
But not on behalf of the State without consent of Attorney General, or County Attorney, except before himself.

SEC. 6. *Be it further enacted*, That Justices of the Peace within their respective counties, be, and they are hereby authorized and empowered to grant subpœnas for witnesses in all criminal causes pending before the Supreme Judicial Court and Circuit Court of Common Pleas, and before themselves or any other Justice: *Provided*, That no Justice of the Peace shall grant subpœnas for witnesses to appear in any Court, except before himself, to testify on behalf of the State, unless by the request of the Attorney General or County Attorney. And all Sheriffs, Constables and other officers are directed and empowered to serve any warrant issuing from a Justice of the Peace.

Justices to account annually to State, County and Town Treasurers for all fines, &c.
Penalty for neglect.

SEC. 7. *Be it further enacted*, That the Justices of the Peace shall account annually with the Treasurer of the State, the Treasurer of their respective counties, and the town Treasurer, as the case may be, for all fines by them received or imposed, upon pain of forfeiting the sum of thirty dollars, to be sued for and recovered by the Treasurer of the State, the county or town Treasurer for the time being, to which the said fines may respectively belong.

Digitized by Google

SEC. 8. *Be it further enacted*, That all civil actions, wherein the debt or damage does not exceed twenty dollars, (and wherein the title of real estate is not in question, and specially pleaded by the defendant,) shall, and may be heard, tried, adjudged and determined by any Justice of the Peace within his county; and the Justices are severally empowered to grant summons, capias and attachment, at the request of any person applying for the same, directed to some proper officer within the same county, empowered by law to execute the same. And such sommons or capias and attachment shall be duly served by such officer, seven days at the least before the day therein set for trial, otherwise the party sued shall not be held to answer thereon; and if after such process shall be duly served, the party sued, after being duly called, shall not appear to answer to the same suit, the charge against him in the declaration shall be taken to be true, and the Justice shall give judgment against him for such damages as he shall find the plaintiff to have sustained, with costs; and if the person sued shall appear to defend the suit or oppose the same, the Justice shall award such damages as he shall find the plaintiff to have sustained: *Provided*, That no more damages than the sum of twenty dollars shall be awarded in any action originally brought or tried before a Justice of the Peace; but if the plaintiff shall not support his action, shall fail to prosecute, or become nonsuit, the Justice shall award to the party sued, his reasonable costs, taxed as the law directs. And upon all judgments given by a Justice of the Peace in civil actions, he shall award execution thereon in form by law prescribed.

Justice's jurisdiction in civil actions, (where title to real estate is not in question,) to extend to 20 dollars.

Justices may issue summons, capias, attachment, &c.

—to be served seven days before trial.

Proceedings before Justice.

Judgment, &c. if plaintiff prevail.

Damages not to exceed 20 dollars.

Judgment in case defendant prevail.

Execution.

SEC. 9. *Be it further enacted*, That the amount of the sum or several sums, specified, expressed or supposed to be demanded by the plaintiff in his declaration, shall not be considered as any objection against the Justice's jurisdiction, provided the ad damnum, or damage is not laid or stated to exceed twenty dollars.

Justice to have jurisdiction where the *ad damnum* does not exceed 20 dollars.

SEC. 10. *Be it further enacted*, That any party aggrieved at the judgment of any Justice of the Peace, in a civil action, where both parties have appeared and plead, may appeal therefrom to the next Circuit Court of Common Pleas to be held within the same county; and shall, before his appeal is allowed, recognize with a surety or sureties, in such reasonable sum as the Justice shall order, not exceeding thirty dollars, to pay all intervening damages and costs, and to prosecute his appeal with effect; and shall be held to produce a copy of the whole case, at the Court appealed to, and both parties shall be allowed to offer any evidence upon the trial at the Circuit Court of Common Pleas, in the same manner as if the cause had been originally commenced there. And no other appeal shall be had on such action after one trial at the Circuit Court of Common Pleas. And the Circuit Court of Common Pleas, when any person recognized as before men-

Party aggrieved may appeal to C. C. Com. Pleas.

—Must recognize to prosecute.

and produce copies at C. C. C. Pleas.

Proceedings in that Court.

No further appeal.

Defendant in trespass failing to bring for-

Digitized by Google

ward the action according to his recognizance.—Plaintiff to have his damages.

tioned to bring forward an action of trespass, doth neglect to do it, upon complaint thereof made in writing by the plaintiff, shall give judgment for such sum in damages, as the plaintiff hath declared for, together with all reasonable costs which accrued both in the same Court and before the Justice.

Appellant failing to prosecute, on complaint judgment may be affirmed.

And the Circuit Court of Common Pleas shall, when any appellant thereto shall fail to prosecute his appeal, or if he shall neglect to produce a copy of the case, affirm the former judgment upon the appellee's complaint, and award such additional damages as shall have arisen in consequence of the said appeal, and cost.

In action of trespass when defendant *pleads title to real estate*—mode of proceeding before Justice.

SEC. 11. *Be it further enacted*, That when an action of trespass shall be brought before any Justice of the Peace, and the defendant shall plead the general issue, he shall not be allowed to offer any evidence that may bring the title of real estate in question. And when the defendant in any such action shall plead the title of himself or any other person in justification, the Justice upon having such plea plead, shall order the defendant to recognize to the adverse party in a reasonable sum, with sufficient surety or sureties to enter the said action at the next Circuit Court of Commom Pleas to be holden within the same county, and to prosecute the same in the same manner as upon an appeal from a Justice's judgment; and if such pleader shall refuse so to recognize, the Justice shall render judgment against him, in the same manner as if he had refused to make answer to the same suit.

Appeal allowed in such cases from C. C. C. Pleas to S. J. Court.

And either party in such cause, shall be allowed to appeal from the judgment of the Circuit Court of Common Pleas, in the same manner as if the suit had been originally commenced there.

General issue may be plead in all actions before Justices and special matter given in evidence except where *title* to real estate is relied on by defendant.

SEC. 12. *Be it further enacted*, That in all civil actions triable before a Justice of the Peace, except such actions of trespass wherein the defendant means to avail himself, by pleading the title of himself or any other person under whom he claims in justification of the trespass or trespasses alleged to be committed on real estate; the defendant shall be entitled to all evidence, under the general issue, which by law he might avail himself of under any special plea in excuse or justification, any law, usage or custom to the contrary notwithstanding.

Justices may grant subpœnas in *all* civil actions.

SEC. 13. *Be it further enacted*, That each Justice of the Peace may grant subpœnas for witnesses in all civil actions and causes pending before the Supreme Judicial Court, Circuit Court of Common Pleas. Court of Sessions, and before him or any other Justices, and in all civil actions and causes pending before arbitrators or referees.

May adjourn their Courts by proclamation:

And every Justice of the Peace shall have power by public proclamation to adjourn the trial of any action brought before him, from time to time, when equity may require it;

No Justice to be of counsel in any suit before himself.

but he shall not be of counsel to either party, or undertake to advise or assist any party in suit before him.

Digitized by Google

SEC. 14. *Be it further enacted*, That when an executor or administrator shall be guilty of committing waste, whereby he is rendered unable to pay the judgment recovered before any Justice of the Peace, against the goods and estate of the deceased in his hands, out of the same, the Justice may proceed against the proper goods and estate of such executor or administrator, in the same manner as the Circuit Court of Common Pleas are empowered to do.

In case of waste by executor or administrator, Justice may proceed as C. C. C. Pleas may in such cases.

SEC. 15. *Be it further enacted*, That each Justice of the Peace shall keep a fair record of all his proceedings; and when any Justice of the Peace shall die before a judgment given by him is paid and satisfied, it shall be in the power of any Justice of the Peace in the same county to grant a scire facias upon the same judgment, to the party against whom such judgment was rendered up, for him to show cause if any he hath, why execution should not be issued against him. And although the costs and debt awarded by the deceased Justice when added together, shall amount to more than twenty dollars, it shall be no bar upon such scire facias, but judgment shall be given thereon for the whole debt and cost, together with the cost arising upon the scire facias. *Provided always*, That either party may appeal from the judgment as in other personal actions, where judgment is given by a Justice of the Peace. And every Justice of the Peace who shall have complaint made to him, that a judgment given by a Justice of the same county then deceased, remains unsatisfied, shall issue his summons to the person in whose possession the record of the same judgment is, directing him to bring and to produce to him the same record; and if such person shall contemptuously refuse to produce the same record, or shall refuse to be examined respecting the same, upon oath, the Justice may punish the contempt by imprisonment, until he shall produce the same, or until he submits to be examined as aforesaid; and when the Justice is possessed of such record, he shall transcribe the same upon his own book of records, before he shall issue his scire facias; and shall deliver the original back again to the person who shall have produced it, and a copy of such transcription, attested by the transcribing Justice, shall be allowed in evidence in all cases, where an authenticated copy of the original might be received.

Justice to keep record of his proceedings.

When Justice shall die before a judgment given by him is satisfied, what proceedings to be had.

Appeal allowed to either party.

Justice to whom complaint is made in such cases, may summon the person possessing the record to produce it.

Punishment for refusal so to do.

Duty of the Justice when the record is produced, to transcribe it into his own records.

Copy of such transcript to be evidence.

SEC. 16. *Be it further enacted*, That all Justices of the Peace before whom actions may be commenced under former commissions, and such commissions shall expire before judgment shall be rendered thereon, or judgment being rendered, the same remains in whole or in part unsatisfied, such Justices of the Peace who shall hereafter have their said commissions seasonably renewed, and being duly qualified agreeably to the Constitution of this State, to act under such commissions, be and they hereby are authorized and empowered to render judgment, and issue execution on all such

Justices, whose commissions expire before judgment or satisfaction, may proceed, under a new commission, seasonably obtained, to render judgment, &c.

Digitized by Google

actions, commenced as aforesaid, in the same manner as if the commissions under which such actions may be commenced, were in full force.

[*Approved March* 15, 1821.]

## CHAPTER LXXVII.

An Act providing a speedy Method of recovering Debts, and for preventing unnecessary costs attending the same.

Justices may take recognizances for debts.

SEC. 1. BE *it enacted by the Senate and House of Representatives, in Legislature assembled*, That every Justice of the Peace in this State shall have power within his county to take recognizances for the payment of debts of any person who shall come before him for that purpose: which recognizance may be in substance as follows:—

Form of recognizance.

Know all men, that I, A. B. of , in the County of , do owe unto C. D. of , the sum of , to be paid to the said C. D. on the day of ; and if I shall fail of the payment of the debt aforesaid, by the time aforesaid, I will and grant that the said debt shall be levied of my goods and chattels, lands and tenements, and in want thereof of my body. Dated at , this day of , in the year of our Lord . Witness, my hand and seal. A. B.

ss. Acknowledged the day and year last abovesaid. Before E. F. Justice of the Peace.

To be recorded by the Justice.

Execution may issue thereon within 3 years.

SEC. 2. *Be it further enacted*, That every Justice of the Peace taking any such recognizance, shall immediately record the same at large in a book to be kept by him for that purpose; and after the same is recorded, may deliver it to the Conusee; and upon the Conusee's lodging the same with the said Justice, at any time within three years from the time when the same is payable, and requesting a writ of execution, it shall be the duty of such Justice to issue a writ of execution thereon for such sum as shall appear to be due on the same; which writ of execution shall be in substance as follows:

State of Maine.

(SEAL.) To the Sheriff of the County of , or his depty, or either of the Constables of the town of , in said County, Greeting.

Form of execution.

Because A. B. of , in the County of , on the day of , in the year of our Lord , before E. F. Esq. one of the Justices of the Peace for the said County of , acknowledged that he was indebted to C. D. of , in the county of in the sum of which he ought to have paid on the day of , and remains unpaid as it is said : We command you therefore, that of the goods, chattels or real estate of the said A. B. within your precinct, you cause to be paid and satisfied unto the said C. D. at the value

Digitized by Google

Case 2:19-cv-00617-KJM-AC Document 56-2 Filed 11/19/21 Page 28 of 146

the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

§ 13. Any person committed for not finding sureties, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required.

Not recognizing, how discharged.

§ 14. Every recognizance taken in pursuance of the foregoing provisions shall be transmitted by the magistrate to the district court for the county on or before the first day of the next term, and shall be there filed of record by the clerk.

Recognizances transmitted to court.

§ 15. Any person who shall, in the presence of any magistrate mentioned in the first section of this statute, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend, with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace and being of good behavior, for a term not exceeding six months, and in case of refusal may be committed as before directed.

When required on view of court, &c.

§ 16. If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family, or property, he may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided.

Persons going armed to give security, &c.

§ 17. Whenever, upon a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Part of penalty remitted.

§ 18. Any surety in a recognizance to keep the peace or for good behavior or both, shall have the same authority and right to take and surrender his principal as if he had been bail for him in a civil cause, and upon such surrender shall be discharged and exempt from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged.

Surety may surrender principal.

## AN ACT making general provisions concerning crimes and punishments.

§ 1. That every person who shall be aiding in the commission of any offence, which shall be a felony either at common law or by any statute now made, or which shall be hereafter made, or who shall be accessory thereto before the fact, by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the same manner as is or shall be prescribed for the punishment of the principal felon.

Accessory to felony before the fact, how punished.

THE

# REVISED STATUTES

OF THE

# STATE OF MAINE,

PASSED OCTOBER 22, 1840;

TO WHICH ARE PREFIXED

# THE CONSTITUTIONS

OF THE

## United States and of the State of Maine,

AND TO WHICH ARE SUBJOINED THE OTHER

## PUBLIC LAWS OF 1840 AND 1841,

WITH AN

## APPENDIX.

SECOND EDITION.

PRINTED AND PUBLISHED IN COMPLIANCE WITH A RESOLVE OF JUNE 22, 1846.

HALLOWELL:
GLAZIER, MASTERS & SMITH.
1847.

65

Original from
HARVARD UNIVERSITY

Generated on 2016-08-25 17:36 GMT / http://hdl.handle.net/2027/hvd.32044086336039
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

shall place the same on file with the indictment, and subjoin to the record of the sentence a brief abstract of the sheriff's return on the warrant.

CHAP. 168.

[*See additional act, Stat.* 1844, *ch.* 101.]

# CHAPTER 169.

## OF PROCEEDINGS FOR PREVENTION OF CRIMES.

SECT. 1. Of the commencement of criminal proceedings.
2. Magistrates may require sureties for the peace and good behavior.
3. Of the examination of the complainant.
4. When a warrant may issue.
5. In certain cases sureties required, for keeping the peace, &c. without binding to appear at any court.
6. Party to be discharged, on complying.
7. On refusal, to be committed to the county jail; but still entitled to a hearing on his appeal.
8. Proceedings, if the complaint be not sustained. Costs, if malicious or frivolous.
SECT. 9. When party, complained of, shall pay costs.
10. Appeal to the next district court.
11. Proceedings upon the appeal.
12. Consequences, if the appellant fail to prosecute.
13. Recognizance may be taken, after commitment.
14. Return of such recognizance.
15. When magistrate may require sureties, without a formal complaint.
16. Persons going armed, without reasonable cause.
17. Power of court, to remit the penalty of a recognizance.
18. Sureties on recognizances may surrender their principals, as in case of bail in civil actions.

Of the commencement of criminal proceedings.

SECTION 1. No person shall be held to answer in any court for an alleged crime or offence, other than contempt of court, unless upon an indictment by a grand jury, except in the following cases;

*First.* When a prosecution by information is expressly authorized by statute.

*Second.* In proceedings before a municipal or police court, or a justice of the peace.

*Third.* In proceedings before courts martial.

Magistrates may require sureties for the peace and good behavior.

SECT. 2. The justices of the supreme judicial court, of the district court, justices of municipal courts and police courts in vacation, as well as in open court, and justices of the peace, in their respective counties, shall have power to cause all laws made for the preservation of the public peace to be kept; and, in the execution of that power, may require persons to give security to keep the peace, or be of the good behavior, or both, in the manner provided in this chapter.

Of the examination of the complainant.

SECT. 3. Any such magistrate, on complaint made to him, that any person has threatened to commit an offence against the person or property of another, shall examine the complainant on oath, and also any witnesses who are produced, and reduce the complaint to writing, and cause the complainant to subscribe the same.

When a warrant may issue. 1821, 76. § 1.

SECT. 4. If there should appear to such magistrate, on an examination of the facts, that there is just cause to apprehend and fear the commission of such offence, he shall issue a warrant under his hand and seal, containing a recital of the substance of the com-

Generated on 2016-08-25 17:38 GMT / http://hdl.handle.net/2027/hvd.32044086336039 Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google Original from HARVARD UNIVERSITY

CHAP. 169. plaint, and commanding the officer to whom the same may be directed, forthwith to arrest the person complained of, and bring him before such magistrate or court, having jurisdiction of the case.

In certain cases, sureties required, for keeping the peace, &c. without binding to appear at any court. 1821, 76, § 1. 1 Fairf. 325.

SECT. 5. When the person, complained of, is brought before the magistrate, he may be required, after his defence has been heard, to enter into a recognizance with sufficient sureties, in such sum as shall be ordered, to keep the peace towards all the people of the state, and especially towards the person requiring the security, for such term as the magistrate may order, not exceeding one year, but shall not be bound over to any court, unless he is also charged with some specific and other offence, for which he ought to be held to answer at such court.

Party to be discharged, on complying. 1821, 76, § 1.

SECT. 6. If the person complained of shall comply with the order of such magistrate, he shall be discharged.

On refusal, to be committed to the county jail, but still entitled to a hearing on his appeal. 1821, 76, § 1.

SECT. 7. If the person shall refuse or neglect so to recognize, the magistrate shall commit him to the county jail during the period for which he was required to find sureties, or till he shall so recognize; and the magistrate shall state in the warrant the cause of commitment, and also the time and the sum for which security was required. The magistrate shall also return a copy of the warrant to the district court, next to be holden in the same county, and such court shall have cognizance of the case in the same manner, as if the party accused had appealed to said court.

Proceedings, if the complaint be not sustained. Costs, if malicious or frivolous.

SECT. 8. When the magistrate, on examination of the facts, shall not be satisfied, that there is just cause to fear the commission of any such offence, he shall immediately discharge the party complained of; and, if the magistrate shall judge the complaint unfounded, malicious, or frivolous, he may order the complainant to pay the costs of prosecution, who shall thereupon be answerable to the magistrate and officer for their fees, as for his own debt.

When party, complained of, shall pay costs.

SECT. 9. When the person complained of is required to give security for the peace, or for his good behavior, the court or magistrate may further order, that the costs of prosecution, or any part thereof, shall be paid by such person, who shall stand committed until such costs are paid, or he is otherwise discharged.

Appeal, to the next district court.

SECT. 10. Any person, aggrieved by the order of such judge of a municipal or police court, or justice of the peace, in requiring him to recognize as aforesaid, may, on giving the security required, appeal to the next district court in the same county.

Proceedings upon the appeal.

SECT. 11. When an appeal is taken from an order of such justice or court, the magistrate shall require such witnesses, as he may think necessary, to recognize for their appearance at the court appealed to; and such court may affirm the order of the judge or justice, or discharge the appellant, or require him to recognize anew with sufficient sureties, as the court may deem proper; and make such order as to the costs, as may be deemed reasonable.

Consequences, if the appellant fail to prosecute.

SECT. 12. If the appellant shall fail to prosecute his appeal, his recognizance shall remain in full force, as to any breach of the condition, without an affirmation of the judgment or order, and stand as a security for any costs which may be ordered by the court to be paid by the appellant.

Recognizance

SECT. 13. Any person committed for not finding sureties or

Original from HARVARD UNIVERSITY

Generated on 2016-08-25 17:38 GMT / http://hdl.handle.net/2027/hvd.32044086336039 Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

refusing to recognize, as required by the court or magistrate, may be discharged by any judge or justice of the peace, on giving such security, as was required.

may be taken after commitment.

Return of such recognizance.

SECT. 14. Every recognizance, taken pursuant to the foregoing provisions, shall be transmitted to the district court, on or before the first day of the next ensuing term, and shall there be filed by the clerk, as of record.

When magistrate may require sureties, without a formal complaint, &c.

SECT. 15. Whoever, in the presence of any magistrate, mentioned in the second section of this chapter, or before any court of record, shall make any affray or threaten to kill or beat another, or commit any violence against his person or property, or shall contend, with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, or being of the good behavior for a term, not exceeding three months, and, in case of refusal, may be committed to prison as before directed.

Persons going armed, without reasonable cause. 1821, 76, § 1.

SECT. 16. Any person, going armed with any dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without a reasonable cause to fear an assault on himself, or any of his family or property, may, on the complaint of any person having cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term, not exceeding one year, with the right of appeal as before provided.

Power of court, to remit the penalty of a recognizance. 1821, 50, § 4.

SECT. 17. In a suit, on such recognizance taken in a criminal case, if a forfeiture is found or confessed, the court, on petition, may remit the penalty, or such part of it as they may think proper, on such terms as they may think right.

Sureties on recognizances may surrender their principals as in case of bail in civil actions.

SECT. 18. Any surety in a recognizance may surrender the principal in the same manner, as if he had been his bail in a civil cause, and, on such surrender, shall be discharged from all liability for any act of the principal after such surrender, which would be a breach of the recognizance; and, upon such surrender, the principal may recognize anew with sufficient surety or sureties for the residue of the term, before any justice of the peace, and shall thereupon be discharged.

---

## CHAPTER 170.

### OF THE POWER AND PROCEEDINGS OF JUSTICES OF THE PEACE IN CRIMINAL CASES.

SECT. 1. Justices may require aid, on view, without a warrant.
2. Their jurisdiction.
3. When a justice shall issue his warrant.
4. Examination, on trial, of the party accused.
5. Of commitment or binding over to a higher court.
SECT. 6. Duty of justices, as to arrests, and examinations into treasons, felonies, &c.
7. Trial and sentence within their jurisdiction.
8. Respondent may appeal; but required to recognize.
9. To carry up copies of the case.

Original from HARVARD UNIVERSITY

Generated on 2016-08-25 17:39 GMT / http://hdl.handle.net/2027/hvd.32044086336039 Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google


Michigan, Laws, Statutes, etc.

16712

THE

# REVISED STATUTES

OF THE

# STATE OF MICHIGAN,

PASSED AND APPROVED MAY 18, 1846.

Printed and published in pursuance of an Act of the Legislature, approved May 18, 1846, under the superintendence of

SANFORD M. GREEN.

DETROIT:

BAGG & HARMON, PRINTERS TO THE STATE.

1846.

Digitized by Google

# TITLE XXXI.

## OF PROCEEDINGS IN CRIMINAL CASES.

Chapter 162. Of Proceedings to prevent the Commission of Crime.
Chapter 163. Of the Arrest and Examination of Offenders, commitment for Trial and taking Bail.
Chapter 164. Of Indictments and Proceedings before Trial.
Chapter 165. Of Trials in Criminal Cases.
Chapter 166. Of new Trials and Exceptions in Criminal Cases.
Chapter 167. Of Coroners' Inquests.
Chapter 168. Of Judgments in Criminal Cases and the Execution thereof.
Chapter 169. Of Fees of Officers and Ministers of Justice in Criminal Cases.
Chapter 170. Miscellaneous Provisions concerning Proceedings in Criminal Cases.

## CHAPTER 162.

### OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIME.

Officers authorized to keep the peace.

SECTION 1. The justices of the supreme court, judges of county courts, circuit court commissioners, all mayors and recorders of cities, and all justices of the peace, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, in the manner provided in this chapter.

Complaint, how made.

SEC. 2. Whenever complaint shall be made in writing and on oath, to any such magistrate, that any person has threatened to commit any offence against the person or property of another, it shall be the duty of such magistrate to examine such complainant, and any witnesses who may be produced, on oath, to reduce such examination to writing, and to cause the same to be subscribed by the parties so examined.

Arrest.

SEC. 3. If it shall appear from such examination, that there is just reason to fear the commission of any such offence, such magistrate shall issue a warrant under his hand, directed to the sheriff or any constable of the county, reciting the substance of the complaint, and commanding him forthwith to apprehend the person so complained of, and bring him before such magistrate.

Trial, recognizance.
4 Mass., 497.
8 do., 73.
2 B. & A., 278.

SEC. 4. When the party complained of is brought before the magistrate, he shall be heard in his defence, and he may be required to enter into a recognizance with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of

Digitized by Google

Case 2:19-cv-00617-KJM-AC Document 56-2 Filed 11/19/21 Page 35 of 146

this state, and especially towards the person requiring such security, for such term as the magistrate may order, not exceeding one year, but shall not be bound over to the next court, unless he is also charged with some other offence, for which he ought by law to be held to answer at such court.

Party, when discharged.

SEC. 5. Upon complying with the order of the magistrate, the party complained of shall be discharged.

Refusing to recognize, to be committed.

SEC. 6. If the person so ordered to recognize, shall refuse or neglect to comply with such order, the magistrate shall commit him to the county jail, during the period for which he was required to give security, or until he shall so recognize; stating in the warrant the cause of commitment, with the sum and the time for which such security was required.

Complainant, when to pay costs.

SEC. 7. If, upon examination, it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he shall order the complainant to pay the costs of the prosecution, who shall thereupon be answerable to the magistrate and the officer *(officers)* for their fees, as for his own debt.

Payment of cost in other cases.

SEC. 8. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security to keep the peace, the court or magistrate may further order that the costs of prosecution, or any part thereof, shall be paid by such person, who shall stand committed, until such costs are paid, or he is otherwise legally discharged.

Appeal allowed.

SEC. 9. Any person aggrieved by the order of any justice of the peace, requiring him to recognize as aforesaid, may, on giving the recognizance to keep the peace required by such order, appeal to the circuit court for the same county.

Witnesses to recognize.

SEC. 10. The justice from whose order an appeal is taken, shall require such witnesses as he may think necessary to support the complaint, to recognize for their appearance at the court to which the appeal is made.

Court may affirm order of justice, or discharge appellant, &c.

SEC. 11. The court before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum, and for such time, not exceeding one year, as the court shall think proper, and may also make such order in relation to the costs of prosecution, as may be deemed just.

Recognizance, when to remain in force.

SEC. 12. If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without an affirmation of the judgment or order of the justice, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

Person committed how discharged.

SEC. 13. Any person committed for not finding sureties, or refusing to recognize, as required by the court or magistrate, may be discharged by any judge, circuit court commissioner or justice of the peace, on giving such security as was required.

Recognizance to be transmitted to clerk of court.

SEC. 14. Every recognizance, taken pursuant to the foregoing provisions, shall be transmitted by the magistrate to the clerk of the circuit court for the county, within twenty days after the taking thereof, and on or before the next term of such court, and shall be filed by such clerk.

Digitized by Google

TITLE XXXI. CHAPTER 163.

Breach of peace in presence of magistrate, &c.

SEC. 15. Every person who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, for a term not exceeding six months, and in case of refusal, may be committed as before directed.

Person going armed to find sureties for the peace.

SEC. 16. If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

Court may remit part of penalty. 7 Mass., 397.

SEC. 17. Whenever upon a suit brought on any recognizance entered into in pursuance of this chapter, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty, on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Surety may surrender his principal, effect of surrender.

SEC. 18. Any surety in a recognizance to keep the peace, shall have the same authority and right to take and surrender his principal as in other criminal cases, and upon such surrender shall be discharged and exempt from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace or circuit court commissioner for the residue of the term, and shall thereupon be discharged.

---

## CHAPTER 163.

### OF THE ARREST AND EXAMINATION OF OFFENDERS, COMMITMENT FOR TRIAL AND TAKING BAIL.

What officers may issue process for the arrest of offenders, &c.

SECTION 1. For the apprehension of persons charged with offences, excepting such offences as are cognizable by justices of the peace, the justices of the supreme court, judges of the county courts, circiuit court commissioners, mayors and recorders of cities, and all justices of the peace, shall have power to issue process and to carry into effect the provisions of this chapter.

Complainant, &c. to be examined.

SEC. 2. Whenever complaint shall be made to any such magistrate, that a criminal offence, not cognizable by a justice of the peace, has been committed, he shall examine on oath the complainant, and any witnesses who may be produced by him.

Proceedings if it appear that an offence has been committed.

SEC. 3. If it shall appear from such examination, that any criminal offence, not cognizable by a justice of the peace, has been committed, the magistrate shall issue a warrant, directed to the sheriff or any constable of the county, reciting the substance of the accusation, and

Digitized by Google

A

# COLLECTION

OF

ALL SUCH

# ACTS

OF THE

# *GENERAL ASSEMBLY*

OF

# VIRGINIA,

OF A PUBLIC AND PERMANENT NATURE, AS ARE NOW IN FORCE;

---

WITH A

## *NEW AND COMPLETE INDEX.*

---

TO WHICH ARE PREFIXED THE DECLARATION OF RIGHTS, AND CONSTITUTION, OR FORM OF GOVERNMENT.

---

PUBLISHED PURSUANT TO AN ACT OF THE GENERAL ASSEMBLY, PASSED ON THE TWENTY-SIXTH DAY OF JANUARY, ONE THOUSAND EIGHT HUNDRED AND TWO.

---

RICHMOND,

*PRINTED BY SAMUEL PLEASANTS, JUN. AND HENRY PACE.*

M,DCCC,III.

Digitized by Google

# TITLE III.

## OF PROCEEDINGS IN CRIMINAL CASES.

CHAP. 14. Of proceedings to prevent the commission of crimes.
15. Of arrest and commitment.
16. Of coroners' inquests.
17. Of bail in criminal cases.
18. Of examining courts.
19. Of grand juries.
20. Of indictments, presentments and informations, and process thereon.
21. Of trial and its incidents.
22. Of exceptions, writs of error and execution of judgment.
23. Of taxation and allowance of costs.
24. Of contempts of court.
25. Of general provisions concerning proceedings in criminal cases.
26. Of criminal proceedings against slaves, free negroes and mulattoes.

## CHAP. XIV.

### OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIMES.

SECTION
1. Officers authorized to keep the peace.
2. Complaint, how made.
3. Arrest.
4. Trial. Recognizance to keep the peace.
5. Party, when discharged.
6. Refusing to recognize, to be committed.
7. Complainant when to pay costs.
8. Payment of costs in other cases.
9. Appeal allowed.
10. On appeal, witnesses to recognize.
11. Proceedings on appeal.

SECTION
12. Recognizance, when to remain in force.
13. Persons committed for not recognizing, how discharged.
14. Recognizances to be transmitted to court.
15. Recognizances, when to be required on view of the court or magistrate.
16. Persons who go armed may be required to find sureties of the peace, &c.
17. Persons not of good fame to give surety for good behaviour.

1. The judges of the supreme court of appeals, the judges of the general court throughout the commonwealth, all justices of the peace and commissioners in chancery within their respective jurisdictions, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behaviour, or both, in the manner hereinafter provided.

*Officers authorized to keep the peace.*

*Power to require security for behaviour.*

2. Whenever complaint shall be made to any such magistrate that there is good cause for fear that any person intends to commit an offence against the person or property of another, the magistrate shall examine the complainant and any witnesses who may be produced on oath, and reduce such complaint to writing, and cause the same to be subscribed by the complainant.

*Complaint how made.*

3. If upon examination, it shall appear that there is just cause to fear that any such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate, or some other magistrate having jurisdiction of the cause.

*Arrest.*

Trial.

Recognizance to keep peace.

4. When the party complained of is brought before the magistrate, he shall be heard in his defence, and he may be required to enter into a recognizance, with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this commonwealth, and especially towards the person making the complaint, for such term as the magistrate may order, not exceeding twelve months, but shall not be bound over to the next court, unless he is also charged with some other offence, for which he ought to be held to answer at such court.

Party when discharged.

5. Upon complying with the order of the magistrate, the party complained of shall be discharged.

Refusing to recognize, to be committed.

6. If the person so ordered to recognize shall refuse or neglect to comply with such order, the magistrate shall commit him to the jail during the period for which he was required to give security, or until he shall so recognize, stating in the warrant the cause of commitment, with the sum and the time for which security was required.

Defendant when discharged.

Complainant when to pay costs.

7. If upon examination it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he may order the complainant to pay the costs of the prosecution, and thereupon award execution against him for the same.

Payment of costs in other cases.

8. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security for the peace, or for his good behaviour, the court or magistrate may further order that the costs of prosecution, or any part thereof, shall be paid by such person, who shall stand committed until such costs are paid, or he is otherwise legally discharged.

Appeal against order to recognize allowed.

9. Any person aggrieved by the order of any justice of the peace requiring him to recognize as aforesaid, may, on giving the security required, appeal to the county or corporation court next to be holden for the said county or corporation.

On appeal, witnesses to recognize.

10. The magistrate from whose order an appeal is taken, shall require such witnesses as he may think necessary to support the complaint, to recognize for their appearance at the court to which the appeal is made.

Proceedings on appeal.

Costs.

11. The court before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require him to enter into a new recognizance, with sufficient sureties, in such sum, and for such time, as the court shall think proper; and may also make such order in relation to the costs of prosecution as may be deemed just and reasonable.

Recognizance to be valid unless appeal prosecuted.

12. If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without any affirmation of the order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

Persons committed for not recognizing, how discharged.

13. Any person committed for not finding securities, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required, or by the county court, on such terms as the court may deem reasonable.

Recognizances returned to court.

14. Every recognizance taken pursuant to the foregoing provisions, shall be transmitted by the magistrate to the court of the county on or before the first day of the next term thereof, and shall be there filed of record by the clerk.

15. Every person who shall, in the presence of any magistrate, mentioned in the first section of this act, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered without process or any other proof, to recognize for keeping the peace, or being of good behaviour, for a term not exceeding six months, and in case of refusal may be committed as before directed.

Recognizances required for offences in presence of magistrate or court.

16. If any person shall go armed with any offensive or dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may be required to find sureties for keeping the peace for a term not exceeding twelve months, with the right of appealing as before provided.

Persons armed, required to find sureties.

Appeal allowed.

17. Such persons as are not of good fame may be required to give sufficient surety of their good behaviour for such term, not exceeding twelve months, as the magistrate requiring it may order.

Persons not of good fame to give surety.

---

## CHAP. XV.

### OF ARREST AND COMMITMENT.

SECTION
1. Officers empowered to act.
2. Complaints, warrants and summonses.
3. Offence committed in another county.
4. In what county warrant may be executed.
5. Prisoner, when to be brought before magistrate on arrest.
6. Magistrate, if he take bail, to return recognizance, &c.
7. Officer, how to proceed if prisoner not bailed.
8. Prisoner, when to be carried to county whence warrant issued.
9. Same subject.
10. Magistrate may adjourn examination.
11. In case of default, recognizance to be certified.
12. Proceedings when party fails to recognize.
13. 14. 15. Manner of conducting examination.
16. Testimony to be reduced to writing.

SECTION
17. When prisoner to be discharged.
18. When to be bailed or committed.
19. If party entitled to examination, &c.
20. If not so entitled, and triable on indictment, &c.
21. If party charged be free negro, &c.
22. Duty of magistrate, &c.
23. Witnesses to recognize.
24. Witnesses, when to recognize with sureties.
25. Recognizances of minors, &c.
26. Witnesses refusing to recognize.
27. Magistrate may associate others.
28. Prisoner by whom let to bail.
29. Recognizances, &c. to be returned.
30. Commitments, &c. when to be discharged.
31. Orders therefor, how to be filed &c.
32. 33. 34. 35. Proceedings on forfeited recognizances.
36. Right of surety to surrender principal.
37. To whom to be surrendered.
38. When to the court.

1. For the apprehension of persons charged with offences, the judges of the general court, and all justices of the peace in vacation as well as in term time, are authorized to issue process to carry into effect the provisions of this act.

Process to arrest for offences, by whom issued.

2. Upon complaint made to any such magistrate that a criminal offence has been committed, he shall examine on oath the complainant and any witnesses produced by him, and shall reduce the complaint to writing, and cause the same to be subscribed by the complainant; and if it shall appear that any such offence has been com-

Examination on complaint.

Case 2:19-cv-00617-KJM-AC Document 56-2 Filed 11/19/21 Page 41 of 146

as are necessary to bring the case within the provisions of law, issue a warrant to bring the person so charged before the same, or some other court or magistrate within the territory, to answer such complaint as in other cases.

When person charged to give recognizance.

SEC. 4. If, upon examination of the person charged, it shall appear to the court or magistrate, that there is reasonable cause to believe that the complaint is true, and that such person may be lawfully demanded of the governor, he shall, if not charged with a capital crime, be required to recognize with sufficient sureties, in a reasonable sum, to appear before such court or magistrate at a future day, allowing a reasonable time to obtain the warrant of the executive, and to abide the order of the court or magistrate; and if such person shall not so recognize, he shall be committed to prison, and be there detained until such day, in like manner as if the offence charged had been committed within this territory; and if the person so recognizing shall fail to appear according to the condition of his recognizance, he shall be defaulted, and the like proceedings shall be had as in the case of other recognizances entered into before such court or magistrate; but if such person be charged with a capital crime, he shall be committed to prison, and there detained until the day so appointed for his appearance before the court or magistrate.

When to be committed.

Forfeiture of recognizance.

When discharged.

SEC. 5. If the person so recognized or committed, shall appear before the court or magistrate upon the day ordered, he shall be discharged unless he be demanded by some person authorized by the warrant of the executive to receive him, or unless the court or magistrate shall see cause to commit him, or to require him to recognize anew, for his appearance at some other day and if, when ordered, he shall not so recognize, he shall be committed and detained as before provided; whether the person so discharged shall be recognized, committed, or discharged, any person authorized by the warrant of the executive, may at all times, take him into custody, and the same shall be a discharge of the recognizance, if any, and shall not be deemed an escape.

May be delivered on warrant of executive, &c.

Complainant liable for costs, &c.

SEC. 6. The complainant in such case, shall be answerable for the actual costs and charges, and for the support in prison, of any person so committed, and shall advance to the jailor one week's board, at the time of commitment, and so from week to week, so long as such person shall remain in jail, and if he fail so to do, the jailor may forthwith discharge such person from his custody.

---

# CHAPTER 112.

## OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIMES.

SECTION
1. What officers to cause public peace to be kept.
2. Proceedings when complaint is made to magistrate.

SECTION
3. Magistrate when to issue warrant.
4. Proceedings upon examination, before magistrate.
5. Defendant may have counsel.

SECTION
6. Defendant when to enter into recognizance.
7. Defendant when to be discharged.
8. Defendant when to be committed.
9. Defendant when to be discharged.
10. Costs by whom paid.
11. Appeal when allowed.
12. When magistrate may require witnesses to recognize.
13. District court how to proceed upon such appeal.
14. When appellant fails to prosecute appeal, recognizance to be in force.
15. After commitment, how defendant may be discharged.
16. Recognizance to be transmitted to district court.
17. When person may be ordered to recognize without warrant.
18. Persons carrying offensive weapons, how punished.
19. Suit brought on recognizance.
20. Surety may take and surrender principal in recognizance.

What officers to cause public peace to be kept.

SEC. 1. The judges of the several courts of record, in vacation as well as in open court, and all justices of the peace, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behavior, or both, in the manner provided in this chapter.

Proceedings when complaint is made to magistrate.

SEC. 2. Whenever complaint shall be made to any such magistrate, that any person has threatened to commit an offence against the person or property of another, the magistrate shall examine the complainant and any witness who may be produced, on oath, and reduce such complaint to writing and cause the same to be subscribed by the complainant.

Magistrate when to issue warrant.

SEC. 3. If upon examination, it shall appear that there is just cause to fear that any such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate or some other magistrate or court, having jurisdiction of the cause.

Proceedings upon examination before magistrate.

SEC. 4. The magistrate before whom any person is brought upon charge of having made threats as aforesaid, shall as soon as may be, examine the complainant and the witnesses to support the prosecution, on oath, in the presence of the party charged, in relation to any matters connected with such charge, which may be deemed pertinent.

Defendant may have counsel.

SEC. 5. After the testimony to support the prosecution, the witnesses for the prisoner, if he have any, shall be sworn and examined, and he may be assisted by counsel in such examination, and also in the cross examination of the witnesses in support of the prosecution.

Defendant when to enter into recognizance.

SEC. 6. If upon examination it shall appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be required to enter into a recognizance and with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this territory, and especially towards the persons requiring such security, for such term as the magistrate shall order, not exceeding six months; but he shall not be ordered to recognize for his appearance at the district court, unless he is charged with some offence for which he ought to be held to answer at said court.

Defendant when to be discharged.

SEC. 7. Upon complying with the order of the magistrate, the party complained of shall be discharged.

Defendant when to be committed.

SEC. 8. If the person so ordered to recognize shall refuse or neglect to comply with such order, the magistrate shall commit him to the county jail during the period for which he was required to give security, or until he shall so recognize, stating in the warrant the cause of commitment, with the sum and time for which security was required.

Defendant when to be discharged.

SEC. 9. If, upon examination, it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall

deem the complaint unfounded, frivolous, or malicious, he shall order the complainant to pay the costs of prosecution, who shall thereupon be answerable to the magistrate and the officer for their fees as for his own debt.

Costs by whom paid

SEC. 10. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security for the peace or for his good behavior, the magistrate may further order the costs of prosecution or any part thereof to be paid by such person, who shall stand committed until such costs are paid, or he is otherwise legally discharged.

Appeal when allowed.

SEC. 11. Any person aggrieved by the order of any justice of the peace requiring him to recognize as aforesaid, may, on giving the security required, appeal to the district court next to be holden in the same county, or that county to which said county is attached for judicial purposes.

When magistrate may require witness to recognize.

SEC. 12. The magistrate from whose order an appeal is so taken, shall require such witnesses as he may think necessary to support the complaint, to recognize for their appearance at the court to which appeal is made.

District court how to proceed upon such appeal.

SEC. 13. The court before which such appeal is prosecuted, may affirm the order of the justice or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum and for such time as the court shall think proper, and may also make such order in relation to the costs of prosecution as he may deem just and reasonable.

When appellant fails to prosecute appeal, recognizance to be in force.

SEC. 14. If any party appealing, shall fail to prosecute his appeal, his recognizance shall remain in full force and effect as to any breach of the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

After commitment, how defendant may be discharged.

SEC. 15. Any person committed for not finding sureties, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required.

Recognizance to be transmitted to district court.

SEC. 16. Every recognizance taken in pursuance of the foregoing provision, shall be transmitted by the magistrate to the district court for the county, on or before the first day of the next term, and shall be there filed of record by the clerk.

When person may be ordered to recognize without warrant.

SEC. 17. Any person who shall in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person, who, in the presence of such court or magistate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered without process or any other proof, to recognize for keeping the peace, and being of good behavior, for a term not exceeding six months, and in case of a refusal, may be committed as before directed.

Persons carrying offensive weapons how punished.

SEC. 18. If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person, or to his family, or property, he may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

Suit brought on recognizance.

SEC. 19. Whenever upon a suit brought on any such recognizances, the penalty thereof shall be adjudged forfeited, the court may remit such

portion of the penalty, on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Surety may take and surrender principal in recognizance.

SEC. 20. Any surety in a recognizance to keep the peace, or for good behavior, or both, shall have the same authority and right to take and surrender his principal, as if he had been bail for him in a civil case, and upon such surrender, shall be discharged and exempt from all liability for any act of the principal, subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged.

---

# CHAPTER 113.

## OF ARRESTS.

SECTION
1. Arrest defined.
2. Arrest how and by whom made.
3. Every person must aid officer in making arrest.
4. Arrest for felony or misdemeanor how made.
5. Arrest for felony or misdemeanor how made.
6. Defendant how to be restrained.
7. Officer must inform defendant that he acts under authority.
8. Officer may use necessary force.
9. Officer may break outer door to make arrest.
10. Officer may break outer door to make arrest.
11. When officer may arrest person without warrant.
12. Officer may break open door.
13. Arrest may be made at night.
14. Officer must inform person of the cause of arrest.
15. Person breaking peace to be taken before justice.
16. Offences in presence of magistrate.
17. When private person may arrest person.
18. Must inform person the cause of arrest.
19. Person making such arrest may break open door.
20. Person arrested must be taken before magistrate.
21. Defendant may be retaken if he escape.
22. Person pursuing may break open door, &c.

Arrest defined.

SEC. 1. Arrest is the taking of a person into custody, that he may be held to answer for a public offence.

Arrest how and by whom made.

SEC. 2. An arrest may be either,

1. By a peace officer under a warrant:
2. By a peace officer without a warrant:
3. By a private person.

Every person must aid officer in making arrest.

SEC. 3. Every person must aid an officer in the execution of a warrant, if the officer require his aid, and be present and acting in its execution.

Arrest for felony or misdemeanor how made.

SEC. 4. If the offence charged be a felony, the arrest may be made on any day and at any time of the day or night; if it be a misdemeanor, the arrest cannot be made on Sunday, or at night, unless upon the direction of the magistrate indorsed upon the warrant.

Arrest for felony or misdemeanor how made.

SEC. 5. An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer.

Defendant how to be restrained.

SEC. 6. The defendant is not to be subjected to any more restraint than is necessary for his arrest and detention.

THE

# STATUTES

OF

# OREGON,

ENACTED AND CONTINUED IN FORCE BY THE

## LEGISLATIVE ASSEMBLY,

AT THE SESSION COMMENCING

**5th December, 1853.**

OREGON:

ASAHEL BUSH, PUBLIC PRINTER.

1854.

Digitized by Google

# CHAPTER XVI.

## PROCEEDINGS TO PREVENT COMMISSION OF CRIMES.

SEC. 1. Certain officers conservators of the public peace.
    2. Proceedings when complaint is made to magistrate.
    3. Magistrate when to issue warrant.
    4. Proceedings on examination before magistrate.
    5. Privilege of defendant.
    6. Recognizance, when required.
    7. Defendant, when to be committed.
    8. Discharge of defendant; complainant, when to pay costs.
    9. In other cases, costs, how and when paid.
   10. Appeal, when allowed.
   11. When magistrate may require witnesses to recognize.
   12. Proceedings on appeal by district court.
   13. Consequence of appellant failing to prosecute appeal.
   14. After commitment, defendant may be discharged on giving security.
   15. Recognizance to be transmitted to district court.
   16. When person may be ordered to recognize without warrant.
   17. Armed persons, when required to find sureties.
   18. Suit on recognizance.
   19. Surety may surrender principal.

Keeping the peace.

SEC. 1. The judges of the several courts of record, in vacation as well as in open court, and all justices of the peace, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behavior, or both, in the manner provided in this chapter.

When sureties may be required. 17 Wen. 181; 23 do. 689.

SEC. 2. Whenever complaint shall be made to any such magistrate, that any person has threatened to commit an offence against the person or property of another, the magistrate shall examine the complainant, and any witness who may be produced on oath, and reduce such complaint to writing, and cause the same to be subscribed by the complainant.

Warrant to issue.

SEC. 3. If, upon examination, it shall appear that there is just cause to fear that such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate, or some other magistrate or court having jurisdiction of the cause.

Examination

SEC. 4. The magistrate before whom any person is brought upon charge of having made threats as aforesaid, shall, as soon as may be, examine the complainant, and the witnesses to support the prosecution, on oath, in the presence of the party charged, in relation to any matters connected with such charge, which may be deemed pertinent.

Privilege of defendant.

SEC. 5. After the testimony to support the prosecution, the witnesses for the prisoner, if he have any, shall be sworn and examined, and he may be assisted by counsel in such examination, and also in the cross-examination of the witnesses in support of the prosecution.

Recognizance when required.

SEC. 6. If, upon examination, it shall appear that there is just cause to fear that any such offence will be committed by the party

Digitized by Google

complained of, he shall be required to enter into recognizance with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this territory, and especially towards the person requiring such security, for such term as the magistrate shall order, not exceeding six months; but he shall not be ordered to recognize for his appearance at the district court, unless he is charged with some offence for which he ought to be held to answer at said court.

When to be committed. 23 Wen. 689.

SEC. 7. If the person so ordered to recognize, shall refuse or neglect to comply with such order, the magistrate shall commit him to the county jail during the period for which he was required to give security, or until he shall so recognize, stating in the warrant the cause of commitment, with the sum and time for which security was required.

Complainant when to pay costs.

SEC. 8. If, upon examination, it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he shall order the complainant to pay the costs of prosecution, who shall thereupon be answerable to the magistrate and the officer for their fees, as for his own debt.

Costs.

SEC. 9. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security for the peace, or for his good behavior, the magistrate may further order the costs of prosecution, or any part thereof, to be paid by such person, who shall stand committed until such costs are paid, or he is otherwise legally discharged.

Appeal.

SEC. 10. Any person aggrieved by the order of any justice of the peace, requiring him to recognize as aforesaid, may, within ten days after the decision of the justice, on giving the security required, appeal to the district court, next to be holden in the same county, or that county to which said county is attached for judicial purposes.

Witnesses when to recognize.

SEC. 11. The magistrate, from whose order an appeal is to be taken, shall require such witnesses as he may deem necessary to support the complaint, to recognize for their appearance at the court to which appeal is made.

Power of appellate court

SEC. 12. The court before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum and for such time as the court shall think proper, and may also make such order in relation to the costs of prosecution, as it may deem just and reasonable.

Failing to prosecute appeal.

SEC. 13. If any party appealing, shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as security for any cost which shall be ordered by the court appealed to, to be paid by the appellant.

Discharge of party committed.

SEC. 14. Any person committed for not finding sureties, or refusing to recognise as required by the court or magistrate, may be dis-

Digitized by Google

CHAP. 17. charged by any judge or justice of the peace, on giving such security as was required.

Recognizances when to be transmitted.

SEC. 15. Every recognizance taken in pursuance of the foregoing provisions, shall be transmitted by the magistrate to the district court for the county, on or before the first day of the next term, and shall be there filed of record by the clerk.

Order to recognize without warrant.

SEC. 16. Any person, who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill, or beat another, or to commit any violence or outrage against his person or property, and every person, who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, and being of good behavior for a term not exceeding six months, and in case of a refusal, may be committed as before directed.

Armed persons, when required to find sureties.

SEC. 17. If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault, injury, or other violence to his person, or to his family or property, he may, on complaint of any other person, having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided.

Suit on recognizance.

SEC. 18. Whenever on a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Surety may surrender principal.

SEC. 19. Any surety in a recognizance to keep the peace, or for good behavior, or both, shall have the same authority and right to take and surrender his principal, as if he had been bail for him in a civil case, and upon such surrender, shall be discharged and exempted from all liability for any act of the principal, subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered, may recognize anew with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged.

---

# CHAPTER XVII.

## ARRESTS.

SEC. 1. Arrest defined.
2. Arrest, how and by whom made.
3. Every person must aid officer in making arrest, if required.
4. Arrest for felony and misdemeanor, when may be made.
5. As to what constitutes arrest.
6. Officer may pursue fugitive into other counties.
7. When an officer or private person may arrest without warrant.
8. Arrest, how made in such case.
9. Escape and capture of prisoner.

Arrest.

SEC. 1. Arrest is the taking a person into custody, that he may be held to answer for a public offence.

Digitized by Google

Penn. Laws, statutes, etc.

# A DIGEST

OF THE

# LAWS OF PENNSYLVANIA,

FROM THE

YEAR ONE THOUSAND SEVEN HUNDRED

TO THE

TWENTY-FIRST DAY OF MAY, ONE THOUSAND EIGHT HUNDRED AND SIXTY-ONE.

ORIGINALLY COMPILED BY
JOHN PURDON, ESQ.

NINTH EDITION.

**Revised, with Marginal References; Foot Notes to the Judicial Decisions; Analytical Contents; a Digested Syllabus of each Title; and a New, Full and Exhaustive Index.**

BY

FREDERICK C. BRIGHTLY, ESQ.,

AUTHOR OF "EQUITY JURISPRUDENCE;" "UNITED STATES DIGEST," ETC.

PHILADELPHIA:
KAY & BROTHER, 19 SOUTH SIXTH STREET,
LAW BOOKSELLERS, PUBLISHERS & IMPORTERS.
1862.

Digitized by Google

Original from
THE OHIO STATE UNIVERSITY

Case 2:19-cv-00617-KJM-AC Document 56-2 Filed 11/19/21 Page 50 of 146

Acts of assembly to be strictly pursued.

192. In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect.(a)

Meaning of general terms.

193. Wherever anything is forbidden or directed by the provisions of this code, by using the general terms, any one, any person, the person, every person and such person, or the relative pronoun he, referring to such general term, the same prohibition or direction, if the contrary be not expressed, is extended to more persons than one, and to females as well as males doing or omitting the same act.(b)

# Criminal Procedure.

A. PROCEEDINGS TO DETECT THE COMMISSION OF CRIMES.

1. Writs of arrest, &c. Subpœnas. Expenses.
2. Escapes into another county.
3. Backing warrants. Bail. Removal.
4. Magistrates backing such warrants to be indemnified.
5. Disposition of property supposed to be stolen, found in the possession of one accused.
6. Surety of the peace.
7. Bail.
8. Surrender of bail.
9. Settlement of criminal cases.

B. INDICTMENTS AND PLEADINGS.

10. Grand jurors authorized to administer oaths.
11. Form of indictments. Formal objections to indictment to be made before the jury is sworn. Amendments on demurrer, &c.
12. Variances between written instruments, as produced and laid in the indictment, amendable.
13. Immaterial variances between indictment and proof amendable.
14. Manner of laying the ownership of property in cases of partners and joint owners.
15. Manner of charging frauds against partners and joint owners.
16. Manner of laying property of counties, cities, townships, &c.
17. Forms of indictment in cases of forging, stealing and embezzling, or cheating by false pretences.
18. Forms in other cases.
19. Intent to defraud particular persons need not be alleged or proven in cases of forging, uttering or false pretences.
20. In indictments for murder and manslaughter, means by which the injury was inflicted need not be specified.
21. Requisites of an indictment for perjury.
22. Requisites of an indictment for subornation of perjury.
23. Indictment for duelling.
24. Counts for receiving and stealing may be joined.
25. Issue and trial in criminal cases.
26. Prisoners standing mute.
27. Prosecutor's name to be indorsed on the indictment.
28. Distinct acts of embezzlement may be charged in the same indictment.
29. Nolle prosequi.
30. Pleas of autrefois convict or autrefois acquit.

C. COURTS OF CRIMINAL JURISDICTION.

31. Courts of oyer and terminer.
32. Quarter sessions. When causes to be certified to the oyer and terminer. Powers of the courts.
33. Writs of error and certiorari.

D. OF THE TRIAL.

34. Persons under bail not to be placed in the criminal bar.
35. Persons indicted for treason to have a copy of the indictment.
36. Peremptory challenges.
37. Challenges by the commonwealth.
38. How challenges are to be conducted.
39. How challenges are to be determined.
40. Of the trial of persons jointly indicted, and joint challenges.
41. How tales may be awarded and juries summoned.
42. Of juries de medietate linguæ.
43. Of the place of trial of treason.
44. Of the place of trial of accessories before the fact.
45. Of the place of trial of accessories after the fact.
46. Of felonious striking or poisoning in one county, and death in another.
47. Of felonious striking or poisoning in the state, and death out of the state.
48. Proof of offences committed near county lines.
49. Proof of offences committed during journeys.
50. Party indicted for felony or misdemeanor may be found guilty of attempt to commit the same.
51. Persons tried for misdemeanor not to be acquitted if the offence turn out to be felony.
52. Witnesses entitled to restitution to be competent.
53. Cure of defects in jury process by verdict.
54. Of the trial of prisoners committed.
55. Witnesses in forgeries.
56. Witnesses not to be imprisoned except in certain cases.
57. Bills of exceptions and writs of error allowed.
58. Written opinions to be filed.
59. Granting of writs of error regulated.
60. From whence writ of error shall issue.
61. Proceedings after affirmance or reversal of judgment.

E. OF COSTS.

62. Power of grand and petit jurors over costs.
63. Of the defendant's costs.
64. Of payment of costs generally.
65. Costs where separate bills are presented against joint offenders.

F. GENERAL PROVISIONS.

66. Insane prisoners. Jury to find the fact of insanity. Defendant to be detained in custody.
67. Where defendant is found insane upon arraignment.
68. Where prisoner brought up to be discharged appears to be insane.
69. Insane defendant to be delivered up to his friends or to the overseers, on security being given.
70. How expenses to be paid in such cases.
71. Civil actions against felons.
72. Executions upon sentences of restitution.
73. Outlawry.
74. Sentences of separate or solitary confinement.
75. Sentences of separate or solitary confinement of less than one year, and simple imprisonment.
76. Executions in capital cases.
77. Limitation of prosecutions.
78. Fines to be decreed to be paid to the state for the use of the county.

## A. PROCEEDINGS TO DETECT THE COMMISSION OF CRIMES.

Warrants of arrest, &c.

Subpœnas.

1. The judges of the supreme court, of the court of oyer and terminer and jail delivery, of the courts of quarter sessions, or any of them, shall and may direct their writs and precepts to the sheriffs and coroners of the several counties within this commonwealth, when need shall be, to take persons indicted for felonies, or other offences, before them, who may dwell, remove or be received into another county; and it shall and may be lawful to and for the said judges, or any of them, to issue subpœnas into any county of the commonwealth, for summoning and bringing any person to give evidence in any matter or cause before them, or any of them, and to compel obedience to such writs, precepts or subpœnas, by attachment or otherwise, and under such pains and

192. Act 31 March 1860, § 183. P. L. 426. 193. Ibid. § 184. 1. Act 31 March 1860, § 1. P. L. 428.

system by the 13th section of the act of 22d April 1794, 3 Sm. 190; it will also be found in the punishments provided by the act of 23d April 1829, 10 Sm. 430. Report on the Penal Code 38.

(a) This section is taken from the 13th section of the act of 21st March 1806, 4 Sm. 332. Report on the Penal Code 38. See 6 S. & R. 289. 11 S. & R. 345. Bright. R. 69. 13 S. & R. 426. 1 R. 457. 5 R. 64. 1 Ash. 46. 7 Am. L. R. 620.

(b) This section explains the meanings of general terms which have been used for the sake of brevity. Report on the Penal Code 39.

Digitized by Google

Original from THE OHIO STATE UNIVERSITY

penalties as other writs or subpœnas are or ought by law to be granted and awarded; and that it shall be lawful for said judges, or any of them, if they see fit to direct such writ, precept, summons, subpœna or attachments, to be executed by the sheriff of the county in which the same is awarded, which said writ, precept, summons or subpœna, shall be the sufficient warrant of such sheriff for executing the same throughout this commonwealth, as fully and effectually as if directed to, and executed by the sheriff of the proper county where issued: *Provided*, That the reasonable expenses of executing such process, when issued on behalf of the commonwealth, shall be paid out of the funds of the county where issued; and the expenses of removing any person charged with having committed an offence in one county into another county, or of transporting any person charged with having committed any offence in this state from another state into this state for trial, or for conveying any person, after conviction, to the penitentiary, shall be paid out of the treasury of the county where the offence is charged to have been committed.(*a*)

Expenses.

2. Where any person charged with having committed any felony,(*b*) in any city or county of this commonweath, shall go or escape into any other county thereof, it shall and may be lawful for the president, or any judge of the court of common pleas in the county where the said person may be found, to issue his warrant, authorizing and requiring the sheriff of the said county, to take the said person and conduct him to the proper county, where the said felony is alleged to have been committed, the expenses of which shall be paid to the said sheriff by the county to which the said person is conducted.(*c*)

Escapes into another county.

3. In case any person against whom a warrant may be issued by any judge or alderman of any city, or justice of the peace of any county in this commonwealth, for any offence there committed, shall escape, go into, reside or be in any other city or county out of the jurisdiction of the judge, alderman, justice or justices of the city or county granting such warrant as aforesaid, it shall and may be lawful for, and it is hereby declared to be the duty of any alderman, justice or justices of the city or county where such person shall escape, go into, reside or be, upon proof being made, upon oath or affirmation, of the handwriting of the judge, alderman, justice or justices granting such warrant, to indorse his or their name or names on such warrant, which shall be sufficient authority to the person or persons bringing such warrant, and to all other persons to whom such warrant was originally directed, to execute the same in such other city or county, out of the jurisdiction of the alderman, justice or justices, granting such warrant as aforesaid, and to apprehend and carry such offender before the alderman, justice or justices who indorsed such warrant, or some other alderman, justice or justices of such other city and county where such warrant was indorsed. And in case the offence for which such offender shall be so apprehended, shall be bailable in law by an alderman or justice of the peace, and such offender shall be willing and ready to give bail for his appearance at the next court of general jail delivery or quarter sessions, to be held in and for the city and county where the offence was committed, such alderman, justice or justices shall and may take such bail for his appearance, in the same manner as the alderman or justice of the peace of the proper city or county might have done; and the said alderman, justice or justices of the peace of such other city or county so taking bail, shall deliver or transmit such recognisance and other proceeding to the clerk of the court of general jail delivery or quarter sessions, where such offender is required to appear by virtue of such recognisance, and such recognisance and other proceedings shall be as good and effectual in law as if the same had been entered into, taken or acknowledged in the proper county where the offence was committed, and the same proceedings shall be had therein. And in case the offence for which such offender shall be apprehended in any other city or county, shall not be bailable in law by an alderman or justice of the peace, or such offender shall not give bail for his appearance at the proper court having cognisance of his crime, to the satisfaction of the alderman or justice before whom he shall be brought, then the constable or other person so apprehending such offender, shall carry and convey him before one of the aldermen or justices of the peace of the proper city or county where such offence was committed, there to be dealt with according to law.(*d*)

Backing warrants.

Bail.

Removal.

4. No action of trespass, or false imprisonment, or information, or indictment, shall be brought, sued, commenced, exhibited or prosecuted by any person, against the alderman, justice or justices, who shall indorse such warrant, for or by reason of his or their indorsing the same, but such person shall be at liberty to bring or prosecute his or their action or suit against the alderman or justice who originally granted the warrant.(*e*)

Magistrates backing such warrants to be indemnified.

5. When any person shall be accused before a magistrate, upon oath or affirma-

Disposition of property

2. Act 11 March 1860, § 2. P. L. 428. 3. Ibid. § 3. 4. Ibid. § 4. 5. Ibid. § 5.

(*a*) This section is composed of the 8th section of the act of 22d May 1722, 1 Sm. 138; of the 14th section of the act of 23d September 1791, 3 Sm. 43; and of the 2d section of the act of 25th April 1846, P. L. 406. It is not proposed to repeal all the 8th section of the act of 1722, because part of it equally applies to civil as well as criminal proceedings. Report on the Penal Code 39. The county is not liable for the expenses incurred in an unsuccessful attempt to arrest a fugitive from justice, who has taken refuge in another state. 8 C. 540.

(*b*) This does not extend to misdemeanors; a fugitive charged with having committed a misdemeanor in another county can only be arrested under the provisions of the succeeding section. Grant 218.

(*c*) This section is taken from the 3d section of the act of 4th of April 1807, 4 Sm. 393. Report on the Penal Code 39.

(*d*) A warrant issued by a justice of the peace in one county, and indorsed by a justice of another county, charging a misdemeanor to have been committed in the county whence the warrant issued, will not justify the detention of the offender in the jail of the county where the warrant was indorsed. Grant 218.

(*e*) The 3d and 4th sections are taken from the act of 10th April 1827, 9 Sm. 424. Report on the Penal Code 39.

Digitized by Google

Original from THE OHIO STATE UNIVERSITY

Supposed to be stolen, found in the possession of one accused. tion, of the crime of burglary, robbery or larceny, and the said magistrate shall have issued his warrant to apprehend such person or persons, or to search for such goods as have been described, on oath or affirmation, to have been stolen goods, if any shall be found in the custody or possession of such person or persons, or in the custody or possession of any other person or persons, for his, her or their use, and there is probable cause, supported by oath or affirmation, to suspect that other goods, which may be discovered on such search, are stolen, it shall and may be lawful for the said magistrate to direct the said goods to be seized, and to secure the same in his own custody, unless the person in whose possession the same were found shall give sufficient surety to produce the same at the time of his or her trial. Inventory. And the said magistrate shall forthwith cause an inventory to be taken of the said goods, and shall file the same with the clerk of that court in which the accused person is intended to be prosecuted, and shall give public Notice. notice in the newspapers, or otherwise by advertising the same in three or more public places in the city or county where the offence is charged to have been committed, before the time of trial, noting in such advertisement the said inventory, the person charged Restitution. and time of trial. And if, on such trial, the accused party shall be acquitted, and no other claimant shall appear or suit be commenced, then, at the expiration of three months, such goods shall be delivered to the party accused, and he, she or they shall be discharged, and the county be liable to the costs of prosecution; but if he be convicted of larceny only, and, after restitution made to the owner and the sentence of the court being fully complied with, shall claim a right in the residue of the said goods, and no other shall appear or claim the said goods, or any part of them, then it shall be lawful, notwithstanding the claim of the said party accused, to detain such goods for the term of nine months, to the end that all persons having any claim thereto may have full opportunity to come, and to the satisfaction of the court, prove their property in them; on which proof the said owner or owners, respectively, shall receive the said goods, or the value thereof, if from their perishable nature it shall have been found necessary to make sale thereof, upon paying the reasonable charges incurred by the securing the said goods and establishing their property in the same; but if no such claim shall be brought and duly supported, then the person so convicted shall be entitled to the remainder of the said goods, or the value thereof, in case the same shall have been sold agreeably to When to be delivered to county commissioners. the original inventory. But if, upon an attainder of burglary or robbery, the court shall, after due inquiry, be of opinion that the said goods were not the property of such burglar or robber, they shall be delivered, together with a certified copy of the said inventory, to the commissioners of the county, who shall indorse a receipt therefor on the original inventory, register the said inventory in a book, and also cause the same to be publicly advertised, giving notice to all persons claiming the said goods to prove their property therein to the said commissioners; and unless such proof shall be made within three months from the date of such advertisement, the said goods shall be publicly sold, and the net moneys arising from such sale shall be paid into the county treasury for the use Disposition of proceeds. of the commonwealth: *Provided always*, That if any claimant shall appear within one year, and prove his or her property in the said goods to the satisfaction of the commissioners, or in the case of dispute, shall obtain the verdict of a jury in favor of such claim, the said claimant shall be entitled to recover, and receive from the said commissioners, or treasurer, the net amount of the moneys paid as aforesaid into the hands of the said commissioners, or by them paid into the treasury of this commonwealth.(a)

Surety of the peace. 6. If any person shall threaten the person of another to wound, kill or destroy him, or to do him any harm in person or estate,(b) and the person threatened shall appear before a justice of the peace, and attest, on oath or affirmation, that he believes that by such threatening he is in danger of being hurt in body or estate, such person so threatening as aforesaid, shall be bound over, with one sufficient surety, to appear at the next sessions,(c) according to law, and in the meantime to be of his good behavior, and keep the peace toward all citizens of this commonwealth.(d) If any person, not being an officer on duty in the military or naval service of the state or of the United States, shall go armed with a dirk, dagger, sword or pistol, or other offensive or dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his family, person or property, he may, on complaint of any person having reasonable cause to fear a breach of the peace therefrom, be required to find surety of the peace as aforesaid.(e)

Bail. 7. In all cases the party accused, on oath or affirmation, of any crime or misdemeanor against the laws, shall be admitted to bail by one or more sufficient sureties, to be taken before any judge, justice, mayor, recorder or alderman where the offence charged has been committed, except such persons as are precluded from being bailed by the constitution of this commonwealth:(g) *Provided also*, That persons accused as aforesaid, of

6. Act 31 March 1860, § 6. P. L. 431.

7. Ibid. § 7.

(a) This section is taken from the 10th section of the act 23d September 1791, 3 Sm. 42. Report on the Penal Code 30.

(b) Surety of the peace is demandable of right by any individual who will make the necessary oath. 1 B. 102, n. See 1 Ash. 40. 2 P. 458.

(c) A committing magistrate has no authority to bind a person to keep the peace, or for his good behavior, longer than the next term of the court. 2 P. 458

(d) Surety for good behavior may be ordered by the court, after the acquittal of a prisoner, in such sum, and for such length of time, as the public safety requires. 2 Y. 437. 10 Barr 339. 2 Hayw. 73-4. See 12 Eng. L. & Eq. 402.

(e) This section is partly taken from the act of 1700, 1 Sm. 5; the addition thereto provided by this section, against the unnecessarily carrying deadly weapons, is introduced from an obvious necessity, arising from daily experience and observation. Report on the Penal Code 30.

(g) A justice may take bail after commitment for trial. 6 W. & S. 314. 2 P. 458. And see 7 W. 454. 5 B. 512. 1 Sm. 57, n. A recognizance taken by a justice to answer the charge of arson is *coram non judice*, and void. Com. v. Phillips, 2 U. S. Law Mag. 310.

Digitized by Google

Original from THE OHIO STATE UNIVERSITY

Case 2:19-cv-00617-KJM-AC Document 56-2 Filed 11/19/21 Page 53 of 146

murder or manslaughter, shall only be admitted to bail by the supreme court or one of the judges thereof, or a president or associate law judge of a court of common pleas: persons accused, as aforesaid, of arson, rape, mayhem, sodomy, buggery, robbery or burglary, shall only be bailable by the supreme court, the court of common pleas, or any of the judges thereof, or a mayor or recorder of a city.(*a*)

*Surrender of bail.*

8. All sureties, mainpernors, and bail in criminal cases, whether bound in recognisances for a particular matter or for all charges whatsoever, shall be entitled to have a bail-piece, duly certified by the proper officer or person before whom or in whose office the recognisance of such surety, mainpernors or bail shall be or remain, and upon such bail-piece, by themselves, or their agents, to arrest and detain, and surrender their principals, with the like effect as in cases of bail in civil actions;(*b*) and such bail-piece shall be a sufficient warrant or authority for the proper sheriff or jailor to receive the said principal, and have him forthcoming to answer the matter or matters alleged against him: *Provided*, That nothing herein contained shall prevent the person thus arrested and detained from giving new bail or sureties for his appearance, who shall have the same right of surrender hereinbefore provided.(*c*)

*Settlement of criminal cases.*

9. In all cases where a person shall, on the complaint of another, be bound by recognisance to appear, or shall, for want of security, be committed, or shall be indicted for an assault and battery or other misdemeanor, to the injury and damage of the party complaining, and not charged to have been done with intent to commit a felony, or not being an infamous crime, and for which there shall also be a remedy, by action, if the party complaining shall appear before the magistrate who may have taken recognisance or made the commitment, or before the court in which the indictment shall be, and acknowledge to have received satisfaction for such injury and damage, it shall be lawful for the magistrate, in his discretion, to discharge the recognisance which may have been taken for the appearance of the defendant, or in case of committal, to discharge the prisoner, or for the court also where such proceeding has been returned to the court, in their discretion, to order a *nolle prosequi* to be entered on the indictment, as the case may require, upon payment of costs: *Provided*, That this act shall not extend to any assault and battery, or other misdemeanor, committed by or on any officer or minister of justice.(*d*)

### B. INDICTMENTS AND PLEADINGS.

*Grand jurors may administer oaths.*

10. The foreman of any grand jury, or any member thereof, is hereby authorized and empowered to administer the requisite oaths or affirmations to any witness whose name may be marked by the district attorney on the bill of indictment.(*e*)

*Form of indictments.*

11. Every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of the assembly prohibiting the crime, and prescribing the punishment, if any such there be, or, if at common law, so plainly that the nature of the offence charged may be easily understood by the jury. Every objection to any indictment for any formal defect, apparent on the face thereof, shall be taken by demurrer, or on motion to quash such indictment, before the jury shall be sworn, and not afterward; and every court, before whom any such objection shall be taken for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended in such particular, by the clerk or other officer of the court, and thereupon the trial shall proceed as if no such defect appeared.(*g*)

*Formal objections to indictments.*

*Amendments on demurrer, &c.*

8. Act 31 March 1860, § 8 P. L. 432. 9. Ibid. § 9. 10. Ibid. § 10. 11. Ibid. § 11.

(*a*) This section is a consolidation of the first clause of the act of 1705, 1 Sm. 58; and the first section of the act of 30th April 1832, P. L. 348. Report on the Penal Code 39.

(*b*) See 1 T. & H. Pr. 303-10.

(*c*) This section is taken from the 3d section of the act of 10th April 1848, P. L. 449. Report on the Penal Code 40.

(*d*) This section is an extension of the existing law of the 17th March 1806, 4 Sm. 318. Report on the Penal Code 40.

(*e*) This is taken from the 1st section of the act 5th April 1826, 9 Sm. 136. That witnesses, whose names had not been marked by the district attorney on the bill of indictment, were sworn and examined by the foreman of the grand jury, is not pleadable in bar; at most, it is only ground for a motion to quash. Tillard *v.* Com., 13 Leg. Int. 132.

(*g*) Sections 11 to 22 are all new, and are certainly not the least important in the proposed amendments of our penal system. The history of criminal administration abounds with instances in which the guilty have escaped, by reason of the apparently unreasonable nicety required in indictments. Lord Hale, one of the best, and most humane of English judges, long since remarked, that such niceties were "grown to be a blemish and an inconvenience in the law, and the administration thereof; that more offenders escaped by the easy ear given to exceptions to indictments, than by the manifestations of their innocence, and that the grossest crimes had gone unpunished, by reason of these unseemly niceties." The reason for recognising these subtilties by the common law, no doubt arose from the humanity of the judges, who, in administering a system in which the punishment of death followed almost every conviction of felony, were naturally disposed, in favor of life, to hold the crown to the strictest rules. Since, however, the reform of the penal laws, and the just apportionment of punishment to crimes according to their intrinsic atrocity and danger, the reason which led to the adoption of these technical niceties has ceased and with the cessation of the reason, the technicalities themselves should be expunged from our system. The 11th section of this act proposes what the commissioners believe will be an effective remedy to this reproach of the common law, without depriving the accused of any proper privilege; it leaves him, at the outset of his trial, to determine whether he will question the relevancy of his accusation, or take issue on the merits of the charge; if he elects the latter, and is condemned, there seems neither moral nor legal fitness in permitting him to urge formal exceptions, which, if suggested, at an early period, would have been promptly corrected. The 12th and 13th sections are intended to meet cases of frequent occurrence, in which, although an indictment is strictly formal, yet, owing to some accidental slip in its preparation, it is found on the trial that the proofs do not entirely tally with the description of the instrument set forth in the indictment, or in the names of persons or places described therein. By the law as it now stands, where written instruments enter into the gist of the offence, as in forgery, passing counterfeit money, selling lottery tickets, sending threatening letters, &c., they are required to be set out in words and figures; the omission of a figure in an indictment for forgery is fatal. In the case of Com. *v.* Gillespie, 7 S. & R. 469, a mistake in spelling the name of "Burrall," which in the indictment was spelled "Burrill," was adjudged fatal after verdict. So, a variance between the names of the persons aggrieved, and places described in the indictment, and the proofs thereof on trial, will entitle the defendant to an acquittal, on the ground of the want of agreement between the allegata and the probata. The proposed sections authorize the courts to amend such verbal errors, if objected to; and thus terminate a class of technical niceties, which are a reproach to the rational administration of justice. The 14th and 15th sections avoid the existing necessity of setting forth, in indictments, the names of numerous individuals, owners of property feloniously or fraudulently taken, or maliciously injured or destroyed; it will serve to reduce the voluminousness of such indictments, and can do no possible injury to the defendant, who cannot be interested in the fact, whether one person is, or one hundred persons are the owners of property in regard to

Digitized by Google

Original from
THE OHIO STATE UNIVERSITY

A. D. 1870.

of the Court of General Sessions for the County. The appellant shall be committed, to abide the sentence of said Court, until he recognizes to the State in such reasonable sum, and with such sureties, as the Court requires, with condition to appear at the Court appealed to, and at any subsequent term to which the case is continued, if not previously surrendered and discharged, and so, from term to term, until the final decree, sentence or order of the Court thereon; and to abide such final sentence, order or decree, and not depart without leave; and, in the meantime, to keep the peace, and be of good behavior.

SEC. 13. All Acts and parts of Acts inconsistent or supplied by this Act are hereby repealed.

Approved March 1, 1870.

---

No. 289. AN ACT TO AUTHORIZE TRUSTEES TO INVEST FUNDS IN THE BONDS OF THE STATE OF SOUTH CAROLINA.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That Guardians, Trustees, Administrators, Executors, Probate Judges, and Clerks of Courts, and all other persons holding funds in trust for investment, are hereby authorized to invest the same in bonds of the State of South Carolina. And they are hereby relieved from all responsibility for said investment, except for the safe keeping of the bonds: Provided, That as to officers of the Court, there be no order of the Court directing a different investment.

Approved March 1, 1870.

---

No. 290. AN ACT TO FIX THE PER DIEM AND MILEAGE OF THE MEMBERS OF THE GENERAL ASSEMBLY.

*Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That the members of the next General Assembly shall receive the same mileage and per diem as now allowed the members of the present General Assembly by the provisions of the Constitution of this State, as ratified by the people on the 14th, 15th and 16th days of April, 1868.

Approved March 1, 1870.

---

No. 291. AN ACT TO INCORPORATE THE COMET LIGHT INFANTRY, AND THE RANDOLPH RIFLEMEN, BOTH OF THE CITY OF CHARLESTON, AND, ALSO, THE LINCOLN GUARDS, OF SAINT STEPHENS, AND THE SANTEE NATIONAL GUARDS.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That Samuel Dickerson, P. L.

Corporators.

A. D. 1870.

dred dollars, and one per cent. for all sums over that amount; for search for each paper, fifteen cents; for certificate and seal, fifty cents; for copying papers on file in office, per copy sheet of one hundred words, twenty-five cents; for final discharge of executor, administrator or guardian, two dollars; for proceedings in dower, inclusive of all charges, twenty dollars; for proceedings in lunacy, inclusive, five dollars.

Approved March 1, 1870.

---

No. 287. AN ACT TO INCORPORATE THE COOPERS' TRADES-UNION, OF CHARLESTON.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That A. R. Mitchell, A. F. Gregorie, Edward Jones, James Chapman, and such other persons as may now, or hereafter shall be, associated with them, are hereby made and declared to be a body politic and corporate by the name and style of the Coopers' Trades-Union, of Charleston.

Corporators.

SEC. 2. That said Coopers' Trades-Union, of Charleston, shall have succession of officers and members according to its by-laws, and shall have power to make by-laws, not repugnant to the laws of the land, and to have, use and keep a common seal, and the same to alter at will, to sue and be sued, plead and be impleaded, in any Court in this State. It is hereby empowered to retain, possess, and enjoy all such property, real and personal, as it may possess or be entitled to, or which shall hereafter be given, bequeathed to, or in any manner acquired by it, and to sell, alien, or transfer the same.

Powers and privileges.

SEC. 3. That this Act shall be a public Act, and continue in force for the term of twelve years from the date of its ratification.

Approved March 1, 1870.

---

No. 288. AN ACT TO DEFINE THE CRIMINAL JURISDICTION OF TRIAL JUSTICES.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authortiy of the same, That Trial Justices shall have and exercise within their respective Counties all the powers, authority and jurisdiction, in criminal cases, hereinafter set forth.

SEC. 2. Trial Justices shall have jurisdiction of all offences which may be subject to the penalties of either fine or forfeiture not exceeding one hundred dollars, or imprisonment in the Jail or Work House not exceeding thirty days, and may impose any sentence within those limits, singly or in the alternative.

Penalties not exceeding $100.

SEC. 3. They may punish by fine not exceeding one hundred dollars, or imprisonment in the Jail or House of Correction not exceeding thirty days, all assault and batteries, and other breaches of the peace, when the offence is not of a high and aggravated nature, requiring, in their judgment, greater punishment.

Assault and battery.

Rioters, &c.

SEC. 4. They may cause to be arrested all affrayers, rioters, disturbers

and breakers of the peace, and all who go armed offensively, to the terror of the people, and such as utter menaces or threatening speeches, or otherwise dangerous and disorderly persons.

Persons arrested for any of said offences shall be examined by the Trial Justice before whom they are brought, and may be tried before him, and, if found guilty, may be required to find sureties of the peace, and be punished within the limits prescribed in Section 2, or, when the offence is of a high and aggravated nature, they may be committed or bound over for trial before the Court of General Sessions.

Sureties.

SEC. 5. They shall have jurisdiction of larcenies, by stealing of the property of another, of money, goods or chattels, or any bank note, bond, promissory note, bill of exchange, or other bill, order or certificate; or any book of accounts for or concerning money or goods due, or to become due, or to be delivered; or any deed or writing containing a conveyance of land or any other valuable contract in force; or any receipt, release or defeasance; or any writ, process or public record, if the property stolen does not exceed twenty dollars in value.

Larceny.

SEC. 6. They shall have jurisdiction of the offences of buying, receiving or aiding in the concealment of stolen goods or other property, where they would have jurisdiction of the larceny of the same goods or property.

Stolen Goods.

SEC. 7. They shall have jurisdiction of the offences of obtaining property by any false pretence, or by any privy or false token, or by any game, device, slight of hand, pretensions to fortune telling, trick or other means, by the use of cards or other implements or instruments, where they would have jurisdiction of a larceny of the same property, and may punish said offences the same as larceny.

False pretence.

SEC. 8. They shall cause to be arrested all persons, found within their Counties, charged with any offence, and persons who, after committing any offence within the County, escape out of the same; examine into treasons, felonies, grand larcenies, high crimes and misdemeanors; and commit or bind over for trial those who appear to be guilty of crimes or offences not within their jurisdiction, and punish those guilty of such offences within their jurisdiction.

SEC. 9. All proceedings before Trial Justices, in criminal cases, shall be commenced on information, under oath, plainly and substantially setting forth the offence charged, upon which, and only which, shall a warrant of arrest issue.

When proceedings to commence.

The information may be amended at any time before trial.

All proceedings before Trial Justices shall be summary, or with only such delay as a fair and just examination of the case requires.

SEC. 10. Every person arrested and brought before a Trial Justice charged with an offence within his jurisdiction, shall be entitled, on demand, to a trial by jury, to be selected in the manner indicated by Section 6 of the Act entitled "An Act to provide for the temporary appointment of Magistrates, and to define their powers and duties," ratified 24th day of September, A. D. 1868.

Trial by Jury.

SEC. 11. Trial Justices are authorized to issue all necessary processes to carry their powers into effect, and may exercise all the powers heretofore conferred by law upon Magistrates.

SEC. 12. Every person convicted before a Trial Justice of any offence whatever, and sentenced, may appeal from the sentence to the next term

Appeal.

# 1869-1870 Tenn. Pub. Acts, 2d. Sess., An Act to Preserve the Peace and Prevent Homicide, ch. 13, § 1.

**Text:**
That it shall not be lawful for any person to publicly or privately carry a dirk, swordcane, Spanish stiletto, belt or pocket pistol or revolver. Any person guilty of a violation of this section shall be subject to presentment or indictment, and on conviction, shall pay a fine of not less than ten, nor more than fifty dollars, and be imprisoned at the discretion of the court, for a period of not less than thirty days, nor more than six months; and shall give bond in a sum not exceeding one thousand dollars, to keep the peace for the next six months after such conviction.
**Year:** 1870
**Subject:** Carrying Weapons
**Jurisdiction:** Tennessee

for the like offense, he shall be sentenced to be confined in the penitentiary for one year.

Id. § 28. 1 Va. Cas. 151-2.

26. When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous terms of confinement.

Code Va., p. 815, § 29. 10 Gratt. 755.

27. When a person is convicted of selling, or offering or exposing for sale, at retail, spirituous liquors, wine, porter, ale, or beer, or drink of like nature, and it is alleged in the indictment or presentment on which he is convicted, and admitted, or by the jury found, that he has been before convicted of the like offense, he shall be fined as provided in the third section of chapter thirty-two, and may, at the discretion of the court, be confined in jail not exceeding six months.

Acts of 1868, p. 124, ch. 149, § 1.

28. No criminal prosecution for any felony or misdemeanor shall be maintained in the courts of this state against any person for any act done in the suppression of the late rebellion; and it shall be a sufficient defense to such prosecution, to show that such act was done in obedience to the orders, or by the authority, of any civil or military officer of this state, or of the re-organized government of Virginia, or of the government of the United States; or that said act was done in aid of the purposes and policy of said authorities, in retarding, checking, and suppressing the said rebellion.

---

# CHAPTER CLIII.

## FOR PREVENTING THE COMMISSION OF CRIMES.

SEC.
1. Conservators of the peace; power to bind to good behavior.
2. } Duty of, on complaint that a crime is in-
3. } tended.
4. Proceedings when accused appears.
5. Right of accused to appeal.
6. } Power of court upon such appeal, and when
7. } the accused is committed.

SEC.
8. Person going armed with deadly weapon, when required to give recognizance, etc.
9. Affray, etc., in the presence of constable.
10. In presence of justice; duty of justice where person brought before him, etc.
11. Proceedings where person suspected of unlawful retailing of spirituous liquors.

Code of Va., p. 817, § 1. Const. art. 7, § 9. Acts of 1863, p. 234, ch. 132, § 1.

1. Every justice and constable shall be a conservator of the peace, within his county. As such conservator, every justice shall have power to require from persons not of good fame, security for their good behavior for a term not exceeding one year.

Code Va., p. 817, § 2.

2. If complaint be made to any justice, as such conservator, that there is good cause to fear that a person intends to commit an offense against the person or property of another, he shall examine on oath the complainant, and any witnesses who may be produced, reduce the complaint to writing, and cause it to be signed by the complainant.

Id. p. 818, § 3. Munf. 458.

3. If it appear proper, such justice shall issue a warrant, reciting the complaint, and requiring the person complained of forthwith to be apprehended and brought before him or some other justice.

4. When such person appears, if the justice, on hearing the parties, consider that there is not good cause for the complaint, he shall discharge the said person, and may give judgment in his favor against the complainant for his costs. If he consider that there is good cause therefor, he may require a recognizance of the person against whom it is, and give judgment against him for the costs of the prosecution, or any part thereof; and, unless such recognizance be given, he shall commit him to jail, by a warrant, stating the sum and time in and for which the recognizance is directed. The justice giving judgment under this section for costs may issue a writ of fieri facias thereon, if an appeal be not allowed; and proceedings thereupon may be according to the two hundred and twenty-seventh section of chapter fifty.

Code Va., p. 818, § 4.

5. A person from whom such recognizance is required may, on giving it, appeal to the circuit court of the county; and in such case the officer from whose judgment the appeal is taken shall recognize such of the witnesses as he thinks proper.

Id. § 5.

6. The court may dismiss the complaint, or affirm the judgment, and make what order it sees fit as to the costs. If it award costs against the appellant, the recognizance which he may have given shall stand as a security therefor. When there is a failure to prosecute the appeal, such recognizance shall remain in force, although there be no order of affirmance. On any appeal the court may require of the appellant a new recognizance, if it see fit.

Id. § 6.

7. Any person committed to jail under this chapter may be discharged by the circuit court, or the judge thereof in vacation, upon such terms as may be deemed reasonable.

Id. § 7.

8. If any person go armed with a deadly or dangerous weapon, without reasonable cause to fear violence to his person, family, or property, he may be required to give a recognizance, with the right of appeal, as before provided, and like proceedings shall be had on such appeal.

Id. § 8.

9. If any person shall, in the presence of a constable and within his county, make an affray, or threaten to beat, wound, or kill another, or to commit violence against his person or property; or contend with angry words to the disturbance of the peace; or improperly or indecently expose his person; or appear in a state of gross intoxication in a public place; such constable, as such conservator, may, without warrant or other process, or further proof, arrest such offending person and carry him before some justice of the township in which such offense is committed, who, upon hearing the testimony of such constable and other witnesses, if any are then and there produced, if, in his opinion the offense charged be proved, shall require the offender to give a bond or recognizance, with security, to keep the peace and be of good behavior for a term not exceeding one year.

Id. § 9. Acts of 1863, p. 234–5, § 1.

10. If any offense enumerated in the preceding section be com-

Id. p. 235, § 2.

mitted in the presence of a justice within his county, or the offender being brought before him, the commission thereof be proved to his satisfaction, he may, besides requiring a bond or recognizance with security, as provided in the preceding section, impose a fine upon the offender not exceeding five dollars. If such bond or recognizance be not then and there given, or such fine be not then and there paid, the said justice shall commit the offender to the jail of his county, there to remain until such bond or recognizance be given, and such fine be paid; but no imprisonment under this section shall continue more than ten days, at the end of which the sheriff or jailor shall discharge the prisoner, unless he has been commanded by sufficient authority to detain him for some other cause.

Code of Va., p. 818, § 10. Acts of 1865, p. 57, ch. 61.

11. If any justice suspect any person of selling, by retail, wine, or ardent spirits, or a mixture thereof, contrary to law; or of selling, or offering or exposing for sale, any intoxicating liquor, or keeping open any distillery, bar, office, stall, or room in his possession, or under his control, at which such liquor had theretofore usually been sold, or permitting any person to drink any intoxicating liquor at the same, on the day of an election, and within two miles of the place of such election, or during the night succeeding such day, contrary to the eleventh section of chapter five, such justice shall summon the person suspected of such offense, and such witnesses as he may think proper, to appear before him; and upon the person so suspected appearing, or failing to appear, if the justice, on examining the witnesses under oath, find sufficient cause, he shall direct the prosecuting attorney for the county to institute a prosecution against the person so suspected, and shall recognize the material witnesses, or cause them to be summoned, to appear at the next term of the circuit court of the county. Such justice may also require the person suspected to enter into recognizance to keep the peace and be of good behavior for a time not exceeding one year. If recognizance be given by the person so suspected, the condition thereof shall be deemed to be broken, if during the time for which it is given, such person shall sell, by retail, wine, or ardent spirits, or a mixture thereof, contrary to law, or violate in any particular the eleventh section of chapter five.

---

# CHAPTER CLIV.

## OF INQUESTS UPON DEAD BODIES.

SEC.
1. Duty of justice upon being notified of death by violence, etc.
2. Warrant and summons, how executed.
3. Jury formed; their oath.
4. How witnesses compelled to attend; how evidence taken.
5. Inquisition.
6. Inquisition, evidence, etc., returned; witnesses recognized.

SEC.
7. Justice to issue warrant for the arrest of accused, if not in custody.
8. When deceased a stranger, body to be buried, etc.; costs, how paid.
9. Justice may require physicians to attend inquest.
10. Penalty on justice for neglect of duty.
11. Inquest may be taken on Sunday.

days' imprisonment.

jail nor less than one day nor more than ten days, or both, in the discretion of the court or jury before whom the trial is had.

12 Aug., 1870; took effect 12 Oct., 1870. Vol. 21, part 1, p. 63. Persons not to bear arms at public assemblies. Social intercourse and elections not to be made dangerous.

AN ACT REGULATING THE RIGHT TO KEEP AND BEAR ARMS.

Art. 6512.

ART. 6511. [1] If any person shall go into any church or religious assembly, any school-room or other place where persons are assembled for educational, literary, or scientific purposes, or into a ball room, social party, or other social gathering, composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly, and shall have about his person a bowie-knife, dirk, or butcher-knife, or firearms, whether known as a six-shooter, gun, or pistol of any kind, such person so offending shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than fifty or more than five hundred dollars, at the discretion of the court or jury trying the same: *Provided,* That nothing contained in this section shall apply to locations subject to Indian depredations: *And provided further,* That this act shall not apply to any person or persons whose duty it is to bear arms on such occasions in discharge of duties imposed by law.

Kinds of weapons prohibited.

Fine $50 to $500. Notes, 111, 167.

Scalp-lifting country excepted.

Armed officials.

12 April, 1871; took effect 12 June, 1871. Vol. 21, part 2, p. 25. Carrying arms a misdemeanor, punishable by fine and forfeiture, unless, &c. Patriots and militiamen excepted. Art. 6511.

AN ACT TO REGULATE THE KEEPING AND BEARING OF DEADLY WEAPONS.

ART. 6512. [1] Any person carrying on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purpose of offense or defense, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense the state, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by fine of not less than twenty-five nor more than one hundred dollars, and shall forfeit to the county the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fines imposed and collected shall go into the treasury of the county in which they may have been imposed: *Provided,* That this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the state from keeping or carrying arms with their baggage: *Provided further,* That members of the legislature shall not be included under the term "civil officers" as used in this act.

Fine $25 to $100 for first offense.

Imprisonment for second offense. Notes 111, 167.

People at home and officials excepted.

Legislators not "civil officers."

Art. 6512. Justification must be immedi-

ART. 6513. [2] Any person charged under the first section of this act, who may offer to prove, by way of defense, that he was

in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage; and that the weapon so carried was borne openly and not concealed beneath the clothing; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense.

ate and pressing danger;

and weapon not concealed.

Impending danger.

ART. 6514. [3] If any person shall go into any church or religious assembly, any school-room, or other place where persons are assembled for amusement, or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball-room, social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, (except as may be required or permitted by law,) or to any other public assembly, and shall have or carry about his person a pistol, or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured and sold for the purposes of offense and defense, unless an officer of the peace, he shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by a fine of not less than fifty, nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term of not more than ninety days.

Attending public meetings armed an offense to be punished in like manner. Society protected and attempted civilization.

Character of arms prohibited.

Fine $50 to $100 for first offense, and imprisonment for perseverance.

ART. 6515. [4] This act shall not apply to nor be enforced in any county of the state which may be designated in a proclamation of the governor as a frontier county, and liable to incursions of hostile Indians.

Governor may exempt frontier counties by proclamation.

ART. 6516. [5] All fines collected under the provisions of this act shall be paid into the treasury of the county, and appropriated exclusively to the keeping in repair and maintenance of public roads, and all weapons forfeited to the county under the provisions of this act shall be sold as may be prescribed by the county court, and the proceeds appropriated to the same purpose.

Art. 6517. All fines under this act must be paid into county treasury.

ART. 6517. [6] It shall be the duty of all sheriffs, constables, marshals, and their deputies, and all policemen and other peace officers, to arrest any person violating the first or third sections of this act, and to take such person immediately before a justice of the peace of the county where the offense is committed, or before a mayor or recorder of the town or city in which the offense is committed, who shall investigate and try the case without delay. On all such trials the accused shall have the right of a trial by jury, and of appeal to the district court; but, in case of appeal, the accused shall be required to give bond, with two or more good and sufficient sureties, in a sum of not less than one hundred, nor more than two hundred dollars, if convicted under the first section, and in a sum of not less than two hundred, nor more than one thousand dollars, if convicted under the third section of this act; said bond to be payable to the state of Texas, and approved by the magistrate, and conditioned that the defendant will abide the judgment of the district court that may be rendered

Peace officers to arrest offenders, &c.

Jury trial and appeal allowed. Appeal bond.

Payable to State.

Forfeiture.

in the case; and in case of forfeiture the proceedings thereon shall be as is or may be prescribed by law in similar cases; and all moneys collected on any bond or judgment upon the same, shall be paid over and appropriated as provided in the fifth section of this act.

Art. 6516.

Art. 6517. Officer failing to arrest to be discharged. Arts. 6512, 6514.

ART. 6518. [7] Any officer named in the sixth section of this act who shall refuse or fail to arrest any person whom he is required to arrest by said section on his own information, or where knowledge is conveyed to him of any violation of the first or third sections of this act, shall be dismissed from his office on conviction in the district court, on indictment or information, or by such other proceedings or tribunal as may be provided by law, and, in addition, shall be fined in any sum not exceeding five hundred dollars, at the discretion of the court or jury.

And fined not more than $500.

District courts to have concurrent jurisdiction.

ART. 6519. [8] The district courts shall have concurrent jurisdiction under this act, and it is hereby made the duty of the several judges of the district courts of this state to give this act especially in charge to the grand juries of their respective counties.

Governor to publish the act.

ART. 6520. [9] It is hereby made the duty of the governor to publish this act throughout the state; and this act shall take effect and be in force from and after the expiration of sixty days after its passage.

## TITLE XIII.—OF OFFENSES AGAINST PUBLIC POLICY AND ECONOMY.

Arts. 2035–2038.

### CHAPTER I.—ILLEGAL BANKING AND PASSING SPURIOUS MONEY.

### AN ACT CONCERNING PRIVATE CORPORATIONS.

2 Dec., 1871; took effect from passage. Vol. 21, part 3. p. 82. Officers to publish semi-annual returns; punishment for failure. Arts. 5932–6011.

ART. 6521. [79] Every such corporation shall semi-annually, in the months of July and January, publish in one or more newspapers in the county where such corporation shall have its place of business, a statement, verified by the oath of its president or secretary, setting forth its actual financial condition, and the amount of its property and liabilities, under a penalty of five hundred dollars to the state, to be recovered by indictment against the president, cashier, or directors, and shall also deposit a copy of said statement, verified as aforesaid, in the office of the secretary of state.

How recovered.

Arts. 2043.

### CHAPTER III.—OF SELLING TO INDIANS.

31 Aug., 1866. Art. 6347 for caption. Selling liquor to Indians.

ART. 6522. [408] If any person shall give or barter, or cause to be sold, given, or bartered, any ardent spirits, or any spirituous or intoxicating liquors, or firearms, or ammunition, to any Indian of the wild or unfriendly tribes, he shall be fined not less than ten nor more than one hundred dollars. Justices of the peace and mayors shall have jurisdiction under this article.

Who may punish.

### CHAPTER IV.—GAMING.

11 May, 1871; took effect from passage. Vol. 21, part 2, p. 84. Arts. 2046, 2054.

AN ACT TO AMEND AN ACT ENTITLED "AN ACT TO ADOPT AND ESTABLISH A PENAL CODE FOR THE STATE OF TEXAS," APPROVED AUGUST 26, A. D. 1856, AND TO REPEAL AN ACT ENTITLED "AN ACT TO AMEND ARTICLES 412 AND 418 OF AN ACT TO ADOPT AND ESTABLISH A PENAL CODE FOR THE STATE OF TEXAS," APPROVED DECEMBER 16, A. D. 1863.

Keeping a gaming table or bank punished.

ART. 6523. [412] If any person shall keep or exhibit, for the purpose of gaming, any gaming table or bank, of any name or

# THE COMPILED

# LAWS OF WYOMING

INCLUDING ALL THE

LAWS IN FORCE IN SAID TERRITORY AT THE CLOSE OF THE FOURTH SESSION OF THE LEGISLATIVE ASSEMBLY OF SAID TERRITORY, TOGETHER WITH SUCH LAWS OF THE UNITED STATES AS ARE APPLICABLE TO SAID TERRITORY; ALSO THE TREATIES MADE WITH THE SIOUX AND SHOSHONE TRIBES OF INDIANS IN THE YEAR 1868; WITH A SYNOPSIS OF THE PRE-EMPTION, HOMESTEAD AND MINING LAWS OF THE UNITED STATES.

---

PUBLISHED BY AUTHORITY OF THE ACT OF THE FOURTH LEGISLATIVE ASSEMBLY OF SAID TERRITORY, ENTITLED
"AN ACT TO COMPILE AND PUBLISH THE LAWS OF WYOMING IN ONE VOLUME."

J. R. WHITEHEAD, SUPERINTENDENT OF COMPILATION.

---

H. GLAFCKE:
LEADER STEAM BOOK AND JOB PRINT, CHEYENNE, WYOMING.
1876.

Digitized by Google

Case 2:19-cv-00617-KJM-AC Document 56-2 Filed 11/19/21 Page 65 of 146

# CHAPTER 52.

AN ACT to Prevent the Carrying of Fire Arms and Other Deadly Weapons.

*Be it enacted by the Council and House of Representatives of the Territory of Wyoming:*

Carrying weapons within city, town or village limits, prohibited.

SECTION. 1. That hereafter it shall be unlawful for any resident of any city, town or village, or for any one not a resident of any city, town or village, in said Territory, but a sojourner therein, to bear upon his person, concealed or openly, any fire arm or other deadly weapon, within the limits of any city, town or village.

Non-resident to be first notified.

SEC. 2. That if any person not a resident of any town, city or village of Wyoming Territory, shall, after being notified of the existence of this act by a proper peace officer, continue to carry or bear upon his person any fire arm or other deadly weapon, he or she, shall be deemed to be guilty of a violation of the provisions of this act and shall be punished accordingly.

Violation of this act a misdemeanor.

Penalty.

SEC. 3. Any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five dollars nor more than fifty dollars, and, in the default of the payment of any fine which may be assessed against him, shall be imprisoned in the county jail for not less than five days nor more than twenty days.

In force.

SEC. 4. This act shall take effect and be in force from and after its passage.

Approved, December 2nd, 1875.

Digitized by Google

Sending threatening letter.

(2430) § 6. Every person who, with intent to extort any money or other property from another, sends to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat, such as is specified in the second section of this article, is punishable in the same manner as if such money or property were actually obtained by means of such threat.

Attempting to export money.

(2431) § 7. Every person who unsuccessfully attempts by means of any verbal threat such as is specified in the second section of this article, to extort money or other property from another is guilty of a misdemeanor.

## ARTICLE 47.—CONCEALED WEAPONS.

SECTION.
1. Prohibited weapons enumerated.
2. Same.
3. Minors.
4. Public officials, when privileged.
5. Arms, when lawful to carry.

SECTION.
6. Degree of punishment.
7. Public buildings and gatherings.
8. Intent of persons carrying weapons.
9. Pointing weapon at another.
10. Violation of certain sections.

Prohibited weapons enumerated.

(2432) § 1. It shall be unlawful for any person in the Territory of Oklahoma to carry concealed on or about his person, saddle, or saddle bags, any pistol, revolver, bowie knife, dirk, dagger, slung-shot, sword cane, spear, metal knuckles, or any other kind of knife or instrument manufactured or sold for the purpose of defense except as in this article provided.

Same.

(2433) § 2. It shall be unlawful for any person in the Territory of Oklahoma, to carry upon or about his person any pistol, revolver, bowie knife, dirk knife, loaded cane, billy, metal knuckles, or any other offensive or defensive weapon, except as in this article provided.

Minors.

(2434) § 3. It shall be unlawful for any person within this Territory, to sell or give to any minor any of the arms or weapons designated in sections one and two of this article.

Public officials, when privleged.

(2435) § 4. Public officers while in the discharge of their duties or while going from their homes to their place of duty, or returning therefrom, shall be permitted to carry arms, but at no other time and under no other circumstances: *Provided, however*, That if any public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person.

Arms, when lawful to carry.

(2436) § 5. Persons shall be permitted to carry shot-guns or rifles for the purpose of hunting, having them repaired, or for killing animals, or for the purpose of using the same in public muster or military drills, or while travelling or removing from one place to another, and not otherwise.

Degree of punishment.

(2437) § 6. Any person violating the provisions of any one of the foregoing sections, shall on the first conviction be adjudged guilty of a misdemeanor and be punished by a fine of not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not to exceed thirty days or both at the discretion of the court. On the second and every subsequent con-

Chap. 25.

viction, the party offending shall on conviction be fined not less than fifty dollars nor more than two hundred and fifty dollars or be imprisoned in the county jail not less than thirty days nor more than three months or both, at the discretion of the court.

Public buildings and gatherings.

(2438) § 7. It shall be unlawful for any person, except a peace officer, to carry into any church or religious assembly, any school room or other place where persons are assembled for public worship, for amusement, or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or into any ball room, or to any social party or social gathering, or to any election, or to any place where intoxicating liquors are sold, or to any political convention, or to any other public assembly, any of the weapons designated in sections one and two of this article.

Intent of persons carrying weapons.

(2439) § 8. It shall be unlawful for any person in this Territory to carry or wear any deadly weapons or dangerous instrument whatsoever, openly or secretly, with the intent or for the avowed purpose of injuring his fellow man.

Pointing weapons at another.

(2440) § 9. It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise.

Violation of section seven.

(2441) § 10. Any person violating the provisions of section seven, eight or nine of this article; shall on conviction, be punished by a fine of not less than fifty dollars, nor more than five hundred and shall be imprisoned in the county jail for not less than three not more than twelve months.

## ARTICLE 48.—FALSE PERSONATION AND CHEATS.

SECTION.
1. False impersonation, punishment for.
2. False impersonation and receiving money.
3. Personating officers and others.
4. Unlawful wearing of grand army badge.
5. Fines, how paid.
6. Obtaining property under false pretenses.

SECTION.
7. False representation of charitable purposes.
8. Falsely representing banking corporations.
9. Using false check.
10. Holding mock auction.

Punishment for false impersonation.

(2442) § 1. Every person who falsely personates another, and in such assumed character, either:

First. Marries or pretends to marry, or to sustain the marriage relation toward another, with or without the connivance of such other person; or,

Second. Becomes bail or surety for any party, in any proceeding whatever, before any court or officer authorized to take such bail or surety; or,

Third. Subscribes, verifies, publishes, acknowledges or proves, in the name of another person, any written instrument, with intent that the same may be delivered or used as true; or,

Fourth. Does any other act whereby, if it were done by the person falsely personated, he might in any event become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture or penalty, or whereby any benefit might accrue to the party personating, or to any other person.

## LIII.—CARRYING WEAPONS.

SECTION
1907. Of what kind prohibited; exceptions.
1908. Weapons excepted, how to be carried; unlawful carrying a misdemeanor.
1909. Sale of weapons a misdemeanor; exception.
1910. Unlawful sale or carrying, how punished.

SECTION
1911. Justices failing to proceed against offenders, how punished.
1912. Officer failing to make arrest, how punished.
1913. In what courts offenders to be prosecuted.

SECTION 1907. Any person who shall wear or carry in any manner whatever as a weapon any dirk or bowie knife, or a sword, or a spear in a cane, brass or metal knucks, razor, or any pistol of any kind whatever, except such pistols as are used in the army or navy of the United States (jjj), shall be guilty of a misdemeanor. *Provided*, that officers whose duties require them to make arrests, or to keep and guard prisoners, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this act. *Provided, further*, that nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey or upon his own premises (**).

SEC. 1908. Any person, excepting such officers or persons on a journey and on their premises as are mentioned in section 1907, who shall wear or carry any such pistol as is used in the army or navy of the United States, in any manner except uncovered and in his hand, shall be deemed guilty of a misdemeanor (kkk).

SEC. 1909. Any person who shall sell, barter or exchange, or otherwise dispose of, or in any manner furnish to any person, any dirk or bowie knife, or a sword or a spear in a cane, brass or metal knucks, or any pistol of any kind whatever, except such as are used in the army or navy of the United States, and known as the navy pistol, or any kind of cartridge for any pistol, or any person who shall keep any such arms or cartridges for sale, shall be guilty of a misdemeanor.

SEC. 1910. Any person convicted of a violation of any of the provisions of this act shall be punished by a fine of not less than fifty nor more than two hundred dollars.

SEC. 1911. Any justice of the peace in this state, who, from his own knowledge or from legal information, knows, or has reasonable grounds to believe, any person guilty of a violation of the provisions of this act, and shall fail or refuse to proceed against such person, shall be deemed guilty of a non-feasance in office, and, upon conviction thereof, shall be punished by the same fine and penalty provided in section 1910, and shall be removed from office (*).

SEC. 1912. Any officer in this state whose duty it is to make arrests, who may have personal knowledge of any person carrying arms contrary to the pro-

(jjj) See *Wilson v. State*, 33—557; *Holland v. State, Ib.*, 560.
(**) An indictment need not negative the exceptions. *Walker v. State*, 35—386.
(kkk) SECS. 1907 and 1908 are not unconstitutional. *Haile v. State*, 38—561.
(*) See *State v. Graham*, 38—519.

# EXHIBIT 3

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
Office of the Director - Strategic Management

# 2012 Summary: Firearms Reported Lost and Stolen



**BACKGROUND**

On January 16, 2013, President Obama announced a plan to reduce gun violence in the United States. This plan included 23 executive actions, one of which called on the Department of Justice to prepare a report analyzing information on lost and stolen guns and to make that report widely available to law enforcement. The following report was generated by ATF in response to the President's directive. The report gives an overview, for calendar year 2012, of the lost and stolen gun file entries in the National Crime Information Center (NCIC), and of the lost and stolen firearm reports submitted by Federal Firearms Licensees (FFLs) to ATF. This report will be updated and published annually.

Lost and stolen firearms pose a substantial threat to public safety and to law enforcement. Those that steal firearms commit violent crimes with stolen guns, transfer stolen firearms to others who commit crimes, and create an unregulated secondary market for firearms, including a market for those who are prohibited by law from possessing a gun. Moreover, thieves and illicit traffickers often obliterate the serial numbers of stolen firearms so that if a stolen firearm is later recovered by law enforcement, it cannot identified as stolen or traced to the original purchaser. Lost firearms pose a similar threat. Like stolen firearms, they are most often bought and sold in an unregulated secondary market where law enforcement is unable to trace transactions. As a result, when a lost or stolen gun is later recovered from a crime scene, tracing (which only identifies the original manufacturer, the licensed dealer who sold the firearm, and the original purchaser) will not provide a direct link to the perpetrator of the crime.

While law enforcement is keenly aware that lost and stolen firearms represent a substantial public safety problem, the scope of the problem is difficult to quantify. Several factors impair ATF's ability to determine accurately the number of firearms lost and stolen from private citizens each year. Reporting by law enforcement is voluntary, not mandatory, and thus the statistics in this report likely reveal only a fraction of the problem. Additionally, even where state and local law enforcement are consistently reporting statistics, many states do not require private citizens to report the loss or theft of a firearm to local law enforcement in the first place. As such, many lost and stolen firearms go entirely unreported. Moreover, even if a firearm is reported as lost or stolen, individuals often are unable to report the serial number to law enforcement because they are not required to record the serial number or maintain other records of the firearms they own for identification purposes. As a result, many lost and stolen firearms enter secondary and illicit markets with their status undocumented and undetectable.

ATF's accounting of firearms lost or stolen from FFLs is more accurate. In 1994, Congress enacted requirements that FFLs report the theft or loss of any firearm from their inventories to both ATF and local police within 48 hours of discovery. This mandatory reporting requirement accounts for lost inventory and allows law enforcement to respond expeditiously to thefts from FFLs. Most often, these reports provide law enforcement with serial numbers and reliable descriptions. This information is closely managed to ensure that whenever law enforcement recovers a firearm lost by or stolen from a federally-licensed dealer, the recovery data is promptly provided to ATF and local authorities. In the case of theft, this information assists in the identification, apprehension, and prosecution of the thieves.

**METHODOLOGY**

*Firearms lost or stolen by private individuals*

To determine the number of firearms reported lost or stolen by private individuals in 2012, ATF consulted the FBI NCIC Gun File. The NCIC Gun File was developed to assist law enforcement agencies in communicating the theft, loss, and recoveries of firearms through a shared database and communications system. As noted above, however, the statistical value of the database is limited. Not all firearm thefts and losses are reported to law enforcement and, while virtually every law enforcement agency in the United States has access to NCIC, not all law enforcement agencies enter into the Gun File the firearm theft, loss, and recovery information reported to them.

FBI provided NCIC Gun File data to ATF on January 24, 2013. The data consists of counts of law enforcement entries made in 2012 into the NCIC Gun File regarding lost and stolen guns. This is raw data that has not been substantively reviewed by the FBI, has not been screened for duplicates or other data entry issues, and does not account for firearms that were subsequently found or recovered.

*Firearms lost or stolen from FFLs*

Federal Firearms Licensees (FFLs) are required to report lost and stolen firearms within 48 hours of observed loss/theft, and that information is entered into ATF's Firearms Tracing System.[1] To determine the number of firearms reported as Federal Firearms Licensee Thefts/Losses in 2012, ATF conducted queries of the Firearms Tracing System on January 23, 2013. The fact that an FFL reports a firearm lost in a specific calendar year, however, does not necessarily mean that the firearm was physically lost in that calendar year. Inventory reconciliations conducted as part of the ATF inspection process (or conducted by an FFL independent of the ATF inspection process) often reveal that firearms taken into inventory by an FFL in years prior to the reconciliation are unaccounted for in the FFL's records in the year of inventory. Although some of these firearms may have been transferred to lawful purchasers, they are reported as lost because the FFL has not accounted for the disposition of the firearm in their business records. In these instances, the year of actual loss may not be known and is reported in the year that the inventory was conducted.

[1]ATF's National Tracing Center maintains FFL theft/loss reports in accordance with Title 18, United States Code Section 923(g)(6). *ATF Firearms Trace Data Disclaimer- Public L. No. 112-55, Consolidated and Further Continuing Appropriations Act of 2012, Sec. 516*: Firearms submitted for tracing are not entered into the tracing system for purposes of determining which types, makes or models of firearms are used for illicit purposes. Traced firearms do not constitute a random sample and should not be considered representative of the larger universe of all firearms used by criminals, or any subset of that universe.

**SUMMARY OF FINDINGS**

In 2012, NCIC received reports reflecting 190,342 lost and stolen firearms nationwide. Of those 190,342 lost and stolen firearms reported, 16,667 (9% of the total reported) were the result of thefts/losses from FFLs. Of the 16,667 firearms reported as lost or stolen from a FFL, a total of 10,915 firearms were reported as lost. The remaining 5,762 were reported as stolen.

Texas was the top state for total firearms reported lost and stolen in 2012, with 18,874 firearms, which was 10% of all firearms reported lost or stolen in the country. Pennsylvania was the top state for firearms reported lost or stolen from a FFL in 2012 with 1,502 firearms, which was 9% of all firearms reported lost or stolen from a FFL in that year. Pistols were the most common type of firearm reported stolen from a FFL in 2012 with 3,322 reported, while rifles were the most common type of firearm reported lost from a FFL in 2012 with 4,068 reported.

**LOST/STOLEN FIREARMS ENTERED INTO NCIC**

The five states with the greatest number of firearms reported lost or stolen in 2012, as reflected by NCIC entries, were as follows:

| STATE | TOTAL FIREARMS REPORTED AS LOST/STOLEN IN NCIC |
|---|---|
| TEXAS | 18,874 |
| GEORGIA | 12,906 |
| FLORIDA | 12,571 |
| CALIFORNIA | 10,639 |
| NORTH CAROLINA | 9,320 |

**Table 1-** provides a breakdown of the NCIC Gun File Entries of Lost or Stolen Firearms, arranged in alphabetical order by state:

***NCIC Lost or Stolen Firearms by State***

| STATE | TOTAL FIREARMS REPORTED AS LOST OR STOLEN IN NCIC | NUMBER OF FIREARMS REPORTED AS STOLEN IN NCIC | NUMBER OF FIREARMS REPORTED AS LOST IN NCIC |
|---|---|---|---|
| ALABAMA | 6,084 | 5,989 | 95 |
| ALASKA | 717 | 646 | 71 |
| ARIZONA | 5,431 | 5,175 | 256 |
| ARKANSAS | 4,091 | 4,049 | 42 |
| CALIFORNIA | 10,639 | 10,114 | 525 |
| COLORADO | 2,609 | 2,575 | 34 |
| CONNECTICUT | 974 | 811 | 163 |
| DELAWARE | 344 | 337 | 7 |
| FLORIDA | 12,571 | 11,756 | 815 |
| GEORGIA | 12,906 | 12,602 | 304 |
| GUAM | 0 | 0 | 0 |
| HAWAII | 148 | 141 | 7 |
| IDAHO | 1,087 | 959 | 128 |
| ILLINOIS | 3,302 | 3,302 | 0 |
| INDIANA | 4,774 | 4,728 | 46 |
| IOWA | 922 | 903 | 19 |
| KANSAS | 1,788 | 1,762 | 26 |

| | | | |
|---|---|---|---|
| **KENTUCKY** | 3,719 | 3673 | 46 |
| **LOUISIANA** | 5,163 | 5,073 | 90 |
| **MAINE** | 450 | 429 | 21 |
| **MARYLAND** | 1,964 | 1,895 | 69 |
| **MASSACHUSETTS** | 690 | 686 | 4 |
| **MICHIGAN** | 4,962 | 4,542 | 420 |
| **MINNESOTA** | 1,353 | 1,303 | 50 |
| **MISSISSIPPI** | 3,439 | 3,378 | 61 |
| **MISSOURI** | 4,662 | 4,539 | 123 |
| **MONTANA** | 911 | 852 | 59 |
| **NEBRASKA** | 670 | 662 | 8 |
| **NEVADA** | 2,288 | 2,089 | 199 |
| **NEW HAMPSHIRE** | 435 | 426 | 9 |
| **NEW JERSEY** | 1,604 | 1,562 | 42 |
| **NEW MEXICO** | 2,198 | 2,143 | 55 |
| **NEW YORK** | 2,839 | 2,387 | 452 |
| **NORTH CAROLINA** | 9,320 | 8,940 | 380 |
| **NORTH DAKOTA** | 273 | 268 | 5 |
| **OHIO** | 6,860 | 6,782 | 78 |
| **OKLAHOMA** | 4,695 | 4,683 | 12 |
| **OREGON** | 2491 | 2,367 | 124 |
| **PENNSYLVANIA** | 6,566 | 6,268 | 298 |
| **PUERTO RICO** | 837 | 739 | 98 |
| **RHODE ISLAND** | 226 | 222 | 4 |
| **SOUTH CAROLINA** | 5,839 | 5,718 | 121 |
| **SOUTH DAKOTA** | 314 | 308 | 6 |
| **TENNESSEE** | 6,101 | 5,996 | 105 |
| **TEXAS** | 18,874 | 18,435 | 439 |
| **UTAH** | 1,185 | 1,055 | 130 |
| **VERMONT** | 298 | 284 | 14 |
| **VIRGIN ISLANDS** | 22 | 20 | 2 |
| **VIRGINIA** | 4,062 | 3,926 | 136 |
| **WASHINGTON** | 5,053 | 4,857 | 196 |
| **WASHINGTON DC** | 7,324 | 7,165 | 159 |
| **WEST VIRGINIA** | 1,966 | 1,957 | 9 |
| **WISCONSIN** | 1,944 | 1,882 | 62 |
| **WYOMING** | 358 | 300 | 58 |
| **GRAND TOTALS** | **190,342** | **183,660** | **6,682** |

For an interactive map reflecting this data, please click here.

## FIREARMS THAT WERE LOST OR STOLEN FROM A FFL

The five states with the greatest number of firearms reported lost or stolen from FFLs in 2012 were as follows:

| STATE | NUMBER OF FIREARMS REPORTED AS FFL THEFT/LOSS |
|---|---|
| PENNSYLVANIA | 1,502 |
| TEXAS | 1,263 |
| MARYLAND | 984 |
| NEW YORK | 775 |
| GEORGIA | 738 |

**Table 2-** provides a breakdown of ATF Federal Firearms Licensee Theft/Loss reports, arranged in alphabetical order by state:

***ATF FFL Theft/Loss by State***

| STATE | FFL THEFT /LOSS TOTALS | FFL THEFT TOTALS | FFL LOSS TOTALS |
|---|---|---|---|
| ALABAMA | 350 | 231 | 119 |
| ALASKA | 57 | 11 | 46 |
| ARIZONA | 391 | 201 | 190 |
| ARKANSAS | 300 | 132 | 168 |
| CALIFORNIA | 636 | 298 | 338 |
| COLORADO | 362 | 109 | 253 |
| CONNECTICUT | 152 | 4 | 148 |
| DELAWARE | 30 | 28 | 2 |
| FLORIDA | 719 | 233 | 486 |
| GEORGIA | 738 | 389 | 349 |
| GUAM | 6 | 0 | 6 |
| HAWAII | 0 | 0 | 0 |
| IDAHO | 348 | 6 | 342 |
| ILLINOIS | 370 | 282 | 88 |
| INDIANA | 240 | 148 | 92 |
| IOWA | 377 | 58 | 319 |

| STATE | FFL THEFT /LOSS TOTALS | FFL THEFT TOTALS | FFL LOSS TOTALS |
|---|---|---|---|
| KANSAS | 155 | 54 | 101 |
| KENTUCKY | 303 | 48 | 255 |
| LOUISIANA | 130 | 107 | 23 |
| MAINE | 223 | 23 | 200 |
| MARYLAND | 984 | 98 | 886 |
| MASSACHUSETTS | 416 | 197 | 219 |
| MICHIGAN | 369 | 295 | 74 |
| MINNESOTA | 169 | 88 | 81 |
| MISSISSIPPI | 592 | 148 | 444 |
| MISSOURI | 461 | 161 | 300 |
| MONTANA | 99 | 13 | 86 |
| NEBRASKA | 284 | 6 | 278 |
| NEVADA | 57 | 12 | 45 |
| NEW HAMPSHIRE | 28 | 7 | 21 |
| NEW JERSEY | 2 | 0 | 2 |
| NEW MEXICO | 494 | 111 | 383 |
| NEW YORK | 775 | 99 | 676 |
| NORTH CAROLINA | 687 | 192 | 495 |
| NORTH DAKOTA | 27 | 23 | 4 |
| OKLAHOMA | 240 | 72 | 168 |
| OREGON | 95 | 17 | 78 |
| PENNSYLVANIA | 1,502 | 191 | 1,311 |
| PUERTO RICO | 1 | 1 | 0 |
| RHODE ISLAND | 68 | 15 | 53 |
| SOUTH CAROLINA | 299 | 210 | 89 |
| SOUTH DAKOTA | 28 | 1 | 27 |
| TENNESSEE | 208 | 101 | 107 |
| TEXAS | 1,263 | 688 | 575 |
| UTAH | 177 | 8 | 169 |
| VERMONT | 45 | 17 | 28 |
| VIRGIN ISLANDS | 4 | 0 | 4 |
| VIRGINIA | 272 | 116 | 156 |
| WASHINGTON | 200 | 14 | 186 |
| WASHINGTON DC | 0 | 0 | 0 |
| WEST VIRGINIA | 155 | 77 | 78 |
| WISCONSIN | 157 | 120 | 37 |
| WYOMING | 131 | 20 | 111 |
| **GRAND TOTALS** | **16,677** | **5,762** | **10,915** |

For an interactive map reflecting this data, please click here.

**Table 3-** provides a breakdown of firearms reported lost or stolen by FFLs in 2012 by theft/loss type, arranged in alphabetical order by state:

***FFL Lost/Stolen Weapons by State, Type***

| STATE / TERRITORY NAME | ALL REPORTS | ALL REPORTS FIREARM COUNT | BURGLARY REPORTS | BURGLARY FIREARM COUNT | LARCENY REPORTS | LARCENY FIREARM COUNT | ROBBERY REPORTS | ROBBERY FIREARM COUNT | LOSS REPORTS | LOSS FIREARM COUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| ALABAMA | 65 | 350 | 13 | 211 | 13 | 20 | 0 | 0 | 39 | 119 |
| ALASKA | 14 | 57 | 0 | 0 | 6 | 11 | 0 | 0 | 8 | 46 |
| ARIZONA | 82 | 391 | 8 | 140 | 28 | 61 | 0 | 0 | 46 | 190 |
| ARKANSAS | 61 | 300 | 10 | 110 | 15 | 22 | 0 | 0 | 36 | 168 |
| CALIFORNIA | 75 | 636 | 11 | 177 | 22 | 101 | 1 | 20 | 41 | 338 |
| COLORADO | 61 | 362 | 11 | 92 | 15 | 17 | 0 | 0 | 35 | 253 |
| CONNECTICUT | 26 | 152 | 0 | 0 | 4 | 4 | 0 | 0 | 22 | 148 |
| DELAWARE | 5 | 30 | 2 | 27 | 1 | 1 | 0 | 0 | 2 | 2 |
| FLORIDA | 162 | 719 | 22 | 135 | 72 | 96 | 2 | 2 | 66 | 486 |
| GEORGIA | 114 | 738 | 21 | 311 | 20 | 42 | 1 | 36 | 72 | 349 |
| GUAM | 2 | 6 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 6 |
| HAWAII | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| IDAHO | 16 | 348 | 0 | 0 | 6 | 6 | 0 | 0 | 10 | 342 |
| ILLINOIS | 31 | 370 | 8 | 272 | 5 | 10 | 0 | 0 | 18 | 88 |
| INDIANA | 38 | 240 | 6 | 103 | 12 | 22 | 1 | 23 | 19 | 92 |
| IOWA | 18 | 377 | 5 | 43 | 5 | 5 | 1 | 10 | 7 | 319 |
| KANSAS | 42 | 155 | 6 | 34 | 15 | 20 | 0 | 0 | 21 | 101 |
| KENTUCKY | 57 | 303 | 4 | 24 | 17 | 24 | 0 | 0 | 36 | 255 |
| LOUISIANA | 28 | 130 | 5 | 84 | 9 | 23 | 0 | 0 | 14 | 23 |
| MAINE | 14 | 223 | 3 | 20 | 2 | 3 | 0 | 0 | 9 | 200 |
| MARYLAND | 23 | 984 | 3 | 90 | 6 | 8 | 0 | 0 | 14 | 886 |
| MASSACHUSETTS | 36 | 416 | 2 | 19 | 9 | 178 | 0 | 0 | 25 | 219 |
| MICHIGAN | 54 | 369 | 22 | 219 | 11 | 76 | 0 | 0 | 21 | 74 |
| MINNESOTA | 31 | 169 | 6 | 82 | 6 | 6 | 0 | 0 | 19 | 81 |
| MISSISSIPPI | 65 | 592 | 15 | 125 | 12 | 14 | 2 | 9 | 36 | 444 |
| MISSOURI | 75 | 461 | 19 | 143 | 16 | 18 | 0 | 0 | 40 | 300 |
| MONTANA | 16 | 99 | 2 | 10 | 3 | 3 | 0 | 0 | 11 | 86 |
| NEBRASKA | 17 | 284 | 0 | 0 | 6 | 6 | 0 | 0 | 11 | 278 |
| NEVADA | 16 | 57 | 0 | 0 | 3 | 4 | 1 | 8 | 12 | 45 |
| NEW HAMPSHIRE | 14 | 28 | 2 | 4 | 3 | 3 | 0 | 0 | 9 | 21 |
| NEW JERSEY | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| NEW MEXICO | 40 | 494 | 9 | 93 | 14 | 18 | 0 | 0 | 17 | 383 |
| NEW YORK | 38 | 775 | 4 | 93 | 5 | 6 | 0 | 0 | 29 | 676 |
| NORTH CAROLINA | 84 | 687 | 18 | 148 | 23 | 44 | 0 | 0 | 43 | 495 |
| NORTH DAKOTA | 11 | 27 | 7 | 22 | 1 | 1 | 0 | 0 | 3 | 4 |
| OHIO | 83 | 501 | 15 | 253 | 27 | 29 | 0 | 0 | 41 | 219 |
| OKLAHOMA | 56 | 240 | 9 | 43 | 21 | 29 | 0 | 0 | 26 | 168 |

| STATE / TERRITORY NAME | ALL REPORTS | ALL REPORTS FIREARM COUNT | BURGLARY REPORTS | BURGLARY FIREARM COUNT | LARCENY REPORTS | LARCENY FIREARM COUNT | ROBBERY REPORTS | ROBBERY FIREARM COUNT | LOSS REPORTS | LOSS FIREARM COUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| OREGON | 19 | 95 | 3 | 8 | 6 | 9 | 0 | 0 | 10 | 78 |
| PENNSYLVANIA | 87 | 1,502 | 11 | 134 | 22 | 57 | 0 | 0 | 54 | 1,311 |
| PUERTO RICO | 1 | 1 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 |
| RHODE ISLAND | 3 | 68 | 1 | 15 | 0 | 0 | 0 | 0 | 2 | 53 |
| SOUTH CAROLINA | 51 | 299 | 16 | 194 | 11 | 16 | 0 | 0 | 24 | 89 |
| SOUTH DAKOTA | 3 | 28 | 0 | 0 | 1 | 1 | 0 | 0 | 2 | 27 |
| TENNESSEE | 61 | 208 | 9 | 75 | 26 | 26 | 0 | 0 | 26 | 107 |
| TEXAS | 234 | 1,263 | 33 | 541 | 89 | 137 | 3 | 10 | 109 | 575 |
| US VIRGIN ISLANDS | 2 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 4 |
| UTAH | 34 | 177 | 2 | 4 | 4 | 4 | 0 | 0 | 28 | 169 |
| VERMONT | 15 | 45 | 3 | 14 | 3 | 3 | 0 | 0 | 9 | 28 |
| VIRGINIA | 77 | 272 | 13 | 59 | 39 | 57 | 0 | 0 | 25 | 156 |
| WASHINGTON | 31 | 200 | 3 | 6 | 6 | 8 | 0 | 0 | 22 | 186 |
| WASHINGTON, D.C. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| WEST VIRGINIA | 32 | 155 | 5 | 59 | 11 | 18 | 0 | 0 | 16 | 78 |
| WISCONSIN | 34 | 157 | 8 | 85 | 9 | 35 | 0 | 0 | 17 | 37 |
| WYOMING | 13 | 131 | 2 | 19 | 1 | 1 | 0 | 0 | 10 | 111 |
| TOTALS | 2,269 | 16,677 | 377 | 4,340 | 662 | 1,304 | 12 | 118 | 1,218 | 10,915 |

**Table 4-** provides a breakdown of firearms reported lost or stolen by FFLs in 2012 by theft/loss type, arranged by firearm type:

***Firearm Types for FFL Thefts/Losses***

| FIREARM TYPES | TOTALS | BURGLARY FIREARM COUNT | LARCENY FIREARM COUNT | ROBBERY FIREARM COUNT | LOSS FIREARM COUNT |
|---|---|---|---|---|---|
| PISTOLS | 6,041 | 2,453 | 779 | 90 | 2,719 |
| RIFLES | 4,905 | 662 | 162 | 13 | 4,068 |
| SHOTGUNS | 2,415 | 357 | 55 | 3 | 2,000 |
| REVOLVERS | 2,228 | 749 | 253 | 9 | 1,217 |
| RECEIVER/FRAMES | 688 | 23 | 15 | 0 | 650 |
| SILENCERS | 123 | 33 | 22 | 2 | 66 |
| DERRINGERS | 114 | 28 | 15 | 1 | 70 |
| MACHINEGUNS | 59 | 17 | 2 | 0 | 40 |
| UNKNOWN TYPES | 42 | 0 | 0 | 0 | 42 |
| DESTRUCTIVE DEVICES | 40 | 17 | 1 | 0 | 22 |
| COMBINATION GUNS | 19 | 1 | 0 | 0 | 18 |
| ANY OTHER WEAPONS | 3 | 0 | 0 | 0 | 3 |
| TOTALS | 16,677 | 4,340 | 1,304 | 118 | 10,915 |

# EXHIBIT 4



**AB-144 Firearms.** (2011-2012)

**SHARE THIS:**  

## Assembly Bill No. 144

## CHAPTER 725

An act to amend Sections 7574.14 and 7582.2 of the Business and Professions Code, and to amend Sections 16520, 16750, 16850, 25595, and 25605 of, to add Sections 626.92, 16950, 17040, 17295, 17512, and 25590 to, and to add Chapter 6 (commencing with Section 26350) to Division 5 of Title 4 of Part 6 of, the Penal Code, relating to firearms.

[ Approved by Governor October 09, 2011. Filed with Secretary of State October 09, 2011. ]

## LEGISLATIVE COUNSEL'S DIGEST

AB 144, Portantino. Firearms.

Existing law, subject to certain exceptions, makes it an offense to carry a concealed handgun on the person or in a vehicle, as specified. Existing law provides that firearms carried openly in belt holsters are not concealed within the meaning of those provisions.

This bill would establish an exemption to the offense for transportation of a firearm between certain areas where the firearm may be carried concealed, or loaded, or openly carried unloaded, as specified.

Existing law prohibits, with exceptions, a person from possessing a firearm in a place that the person knows or reasonably should know is a school zone, as defined.

This bill would additionally exempt a security guard authorized to openly carry an unloaded handgun and an honorably retired peace officer authorized to openly carry an unloaded handgun from that prohibition.

Existing law, subject to certain exceptions, makes it an offense to carry a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

The bill would, subject to exceptions, make it a misdemeanor to openly carry an unloaded handgun on the person or openly and exposed in a motor vehicle in specified public areas and would make it a misdemeanor with specified penalties to openly carry an exposed handgun in a public place or public street, as specified, if the person at the same time possesses ammunition capable of being discharged from the handgun, and the person is not in lawful possession of the handgun, as specified.

Existing law makes it a misdemeanor for any driver or owner of a motor vehicle to allow a person to bring a loaded firearm into the motor vehicle in a public place, as specified.

This bill would expand the scope of that crime to include allowing a person to bring an open and exposed unloaded handgun into the vehicle, as specified.

By creating a new offense, and expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The bill would make conforming and nonsubstantive technical changes.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority Appropriation: no Fiscal Committee: yes Local Program: yes

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 7574.14 of the Business and Professions Code is amended to read:

**7574.14.** This chapter shall not apply to the following:

(a) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(b) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(c) A charitable philanthropic society or association incorporated under the laws of this state that is organized and duly maintained for the public good and not for private profit.

(d) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(e) An attorney at law in performing his or her duties as an attorney at law.

(f) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(g) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(h) Any bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(i) A person engaged solely in the business of securing information about persons or property from public records.

(j) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt such a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(k) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and

exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Sections 25450 to 25475, inclusive, of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(l) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(m) Any savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(n) Any secured creditor engaged in the repossession of the creditor's collateral and any lessor engaged in the repossession of leased property in which it claims an interest.

(o) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(p) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(q) An armored contract carrier operating armored vehicles pursuant to the authority of the Department of the California Highway Patrol or the Public Utilities Commission, or an armored vehicle guard employed by an armored contract carrier.

**SEC. 2.** Section 7582.2 of the Business and Professions Code is amended to read:

**7582.2.** This chapter does not apply to the following:

(a) A person who does not meet the requirements to be a proprietary private security officer, as defined in Section 7574.1, and is employed exclusively and regularly by any employer who does not provide contract security services for other entities or persons, in connection with the affairs of the employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon in the performance of his or her duties. For purposes of this subdivision, "deadly weapon" is defined to include any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than five inches, any razor with an unguarded blade and any metal pipe or bar used or intended to be used as a club.

(b) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(c) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(d) A charitable philanthropic society or association duly incorporated under the laws of this state that is organized and maintained for the public good and not for private profit.

(e) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or

dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(f) An attorney at law in performing his or her duties as an attorney at law.

(g) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(h) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(i) Any bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(j) A person engaged solely in the business of securing information about persons or property from public records.

(k) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(l) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6 of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(m) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(n) Any savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(o) Any secured creditor engaged in the repossession of the creditor's collateral and any lessor engaged in the repossession of leased property in which it claims an interest.

(p) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(q) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(r) The changes made to this section by the act adding this subdivision during the 2005–06 Regular Session of the Legislature shall apply as follows:

(1) On and after July 1, 2006, to a person hired as a security officer on and after January 1, 2006.

(2) On and after January 1, 2007, to a person hired as a security officer before January 1, 2006.

**SEC. 3.** Section 626.92 is added to the Penal Code, to read:

**626.92.** Section 626.9 does not apply to or affect any of the following:

(a) A security guard authorized to openly carry an unloaded handgun pursuant to Chapter 6 (commencing with Section 26350) of Division 5 of Title 4 of Part 6.

(b) An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to Section 26361.

**SEC. 4.** Section 16520 of the Penal Code is amended to read:

**16520.** (a) As used in this part, "firearm" means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes any rocket, rocket propelled projectile launcher, or similar device containing any explosive or incendiary material whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) Sections 26500 to 26588, inclusive.

(7) Sections 26700 to 26915, inclusive.

(8) Section 27510.

(9) Section 27530.

(10) Section 27540.

(11) Section 27545.

(12) Sections 27555 to 27570, inclusive.

(13) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

**SEC. 5.** Section 16750 of the Penal Code is amended to read:

**16750.** (a) As used in Section 25400, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(b) As used in Article 2 (commencing with Section 25850), Article 3 (commencing with Section 25900), and Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4, and Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

**SEC. 6.** Section 16850 of the Penal Code is amended to read:

**16850.** As used in Sections 17740, 23925, 25105, 25205, and 25610, in Article 3 (commencing with Section 25505) of Chapter 2 of Division 5 of Title 4, and in Chapter 6 (commencing with Section 26350) of Division 5 of

Title 4, "locked container" means a secure container that is fully enclosed and locked by a padlock, keylock, combination lock, or similar locking device. The term "locked container" does not include the utility or glove compartment of a motor vehicle.

**SEC. 7.** Section 16950 is added to the Penal Code, to read:

**16950.** As used in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed to be carried openly or exposed if the handgun is not carried concealed within the meaning of Section 25400.

**SEC. 8.** Section 17040 is added to the Penal Code, to read:

**17040.** As used in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "public place" has the same meaning as in Section 25850.

**SEC. 9.** Section 17295 is added to the Penal Code, to read:

**17295.** For purposes of Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

**SEC. 10.** Section 17512 is added to the Penal Code, to read:

**17512.** It is a misdemeanor for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, to knowingly permit any other person to carry into or bring into the vehicle a firearm in violation of Section 26350.

**SEC. 11.** Section 25590 is added to the Penal Code, to read:

**25590.** Section 25400 does not apply to, or affect, the transportation of a firearm by a person if done directly between any of the places set forth below:

(a) A place where the person may carry that firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 25400.

(b) A place where that person may carry that firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 25850, or a place where the prohibition set forth in subdivision (a) of Section 25850 does not apply.

(c) A place where that person may carry a firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 26350, or a place where the prohibition set forth in subdivision (a) of Section 26350 does not apply.

**SEC. 12.** Section 25595 of the Penal Code is amended to read:

**25595.** This article does not prohibit or limit the otherwise lawful carrying or transportation of any handgun in accordance with the provisions listed in Section 16580.

**SEC. 13.** Section 25605 of the Penal Code is amended to read:

**25605.** (a) Section 25400 and Chapter 6 (commencing with Section 26350) of Division 5 shall not apply to or affect any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, who carries, either openly or concealed, anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, any handgun.

(b) No permit or license to purchase, own, possess, keep, or carry, either openly or concealed, shall be required of any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, to purchase, own, possess, keep, or carry, either openly or concealed, a handgun within

the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident.

(c) Nothing in this section shall be construed as affecting the application of Sections 25850 to 26055, inclusive.

**SEC. 14.** Chapter 6 (commencing with Section 26350) is added to Division 5 of Title 4 of Part 6 of the Penal Code, to read:

**CHAPTER 6. Openly Carrying an Unloaded Handgun**
**Article 1. Crime of Openly Carrying an Unloaded Handgun**

**26350.** (a) (1) A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:

(A) A public place or public street in an incorporated city or city and county.

(B) A public street in a prohibited area of an unincorporated area of a county or city and county.

(C) A public place in a prohibited area of a county or city and county.

(2) A person is guilty of openly carrying an unloaded handgun when that person carries an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in or on any of the following:

(A) A public place or public street in an incorporated city or city and county.

(B) A public street in a prohibited area of an unincorporated area of a county or city and county.

(C) A public place in a prohibited area of a county or city and county.

(b) (1) Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2) A violation of subparagraph (A) of paragraph (1) of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if both of the following conditions exist:

(A) The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.

(B) The person is not in lawful possession of that handgun.

(c) (1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a distinct and separate offense under this section.

**Article 2. Exemptions**

**26361.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any peace officer or any honorably retired peace officer if that officer may carry a concealed firearm pursuant to Article 2 (commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3.

**26362.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person to the extent that person may openly carry a loaded handgun pursuant to Article 4 (commencing with Section 26000) of Chapter 3.

**26363.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

**26364.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.

**26365.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

**26366.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while engaged in hunting or while transporting that handgun when going to or returning from that hunting expedition.

**26367.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.

**26368.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.

**26369.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6.

**26370.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a school zone, as defined in Section 626.9, with the written permission of the school district superintendent, the superintendent’s designee, or equivalent school authority.

**26371.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when in accordance with the provisions of Section 171b.

**26372.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest.

**26373.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to loaning, selling, or transferring that handgun in accordance with Article 1 (commencing with Section 27500) of Chapter 4 of Division 6, or in accordance with any of the exemptions from Section 27545, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property.

**26374.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

**26375.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.

**26376.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice pursuant to Section 23910.

**26377.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an

unloaded handgun at any established target range, whether public or private, while the person is using the handgun upon the target range.

**26378.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer.

**26379.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to any of the following:

(a) Complying with Section 27560 or 27565, as it pertains to that handgun.

(b) Section 28000, as it pertains to that handgun.

(c) Section 27850 or 31725, as it pertains to that handgun.

(d) Complying with Section 27870 or 27875, as it pertains to that handgun.

(e) Complying with Section 27915, 27920, or 27925, as it pertains to that handgun.

**26380.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training.

**26381.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter.

**26382.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to and at the request of a sheriff or chief or other head of a municipal police department.

**26383.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of subdivision (a) of Section 25605, may carry openly an unloaded handgun within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

**26384.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun if all of the following conditions are satisfied:

(a) The open carrying occurs at an auction or similar event of a nonprofit public benefit or mutual benefit corporation, at which firearms are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation.

(b) The unloaded handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation.

(c) The unloaded handgun is to be delivered by a person licensed pursuant to, and operating in accordance with, Sections 26700 to 26925, inclusive.

**26385.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to paragraph (3) of subdivision (b) of Section 171c.

**26386.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to Section 171d.

**26387.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to subparagraph (F) of paragraph (1) subdivision (c) of Section 171.7.

**26388.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying that handgun is in lawful possession of that handgun.

**26389.** Section 26350 does not apply to, or affect, the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

**SEC. 15.** No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.



California
LEGISLATIVE INFORMATION

**AB-144 Firearms.** (2011-2012)

| Date | Action |
|---|---|
| 10/09/11 | Chaptered by Secretary of State - Chapter 725, Statutes of 2011. |
| 10/09/11 | Approved by the Governor. |
| 09/21/11 | Enrolled and presented to the Governor at 3:30 p.m. |
| 09/09/11 | Senate amendments concurred in. To Engrossing and Enrolling. (Ayes 48. Noes 30. Page 3208.). |
| 09/09/11 | In Assembly. Concurrence in Senate amendments pending. |
| 09/08/11 | Read third time. Passed. Ordered to the Assembly. (Ayes 21. Noes 18. Page 2398.). |
| 09/06/11 | Read second time. Ordered to third reading. |
| 09/02/11 | Ordered to second reading. |
| 09/02/11 | From inactive file. |
| 08/30/11 | Ordered to inactive file at the request of Senator De León. |
| 06/28/11 | Read second time. Ordered to third reading. |
| 06/27/11 | From committee: Be placed on second reading file pursuant to Senate Rule 28.8. |
| 06/07/11 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 4. Noes 2.) (June 7). Re-referred to Com. on APPR. |
| 06/01/11 | From committee chair, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on PUB. S. |
| 05/26/11 | Referred to Com. on PUB. S. |
| 05/16/11 | In Senate. Read first time. To Com. on RLS. for assignment. |
| 05/16/11 | Read third time. Passed. Ordered to the Senate. (Ayes 46. Noes 29. Page 1389.) |
| 05/09/11 | Read second time. Ordered to third reading. |
| 05/05/11 | From committee: Do pass. (Ayes 12. Noes 5.) (May 4). |
| 05/03/11 | Re-referred to Com. on APPR. |
| 05/02/11 | From committee chair, with author's amendments: Amend, and re-refer to Com. on APPR. Read second time and amended. |
| 04/13/11 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 5. Noes 2.) (April 12). Re-referred to Com. on APPR. |
| 04/05/11 | In committee: Set, first hearing. Hearing canceled at the request of author. |
| 02/03/11 | Referred to Com. on PUB. S. |
| 01/14/11 | From printer. May be heard in committee February 13. |
| 01/13/11 | Read first time. To print. |



Bill Analysis https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=...

California
LEGISLATIVE INFORMATION

Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites

**AB-144 Firearms.** (2011-2012)

| Bill Analysis |
| --- |
| 09/09/11- Assembly Floor Analysis |
| 06/28/11- Senate Floor Analyses |
| 06/06/11- Senate Public Safety |
| 05/11/11- Assembly Floor Analysis |
| 05/03/11- Assembly Appropriations |
| 04/11/11- Assembly Public Safety |

RJN Ex. 4 -013

1 of 1 11/16/2021, 9:50 AM

CONCURRENCE IN SENATE AMENDMENTS
AB 144 (Portantino and Ammiano)
As Amended June 1, 2011
Majority vote

ASSEMBLY: 46-29 (May 16, 2011) SENATE: 21-18 (September 8, 2011)

Original Committee Reference: PUB. S.

SUMMARY: Makes it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.

The Senate amendments exempt a security guard authorized to openly carry an unloaded handgun and an honorably retired peace officer authorized to openly carry an unloaded handgun from prohibitions against a firearm in a school zone.

AS PASSED BY THE ASSEMBLY, this bill made it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. Specifically, this bill:

1) Made it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or by both a fine and imprisonment for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person, or when that person carries an exposed and unlocked handgun inside or on a vehicle, whether or not is in on his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.

2) Made the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.

3) Stated that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

4) Provided that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

5) Stated that notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a separate and distinct offense.

6) Stated that the open carrying of an unloaded handgun does not apply to the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in

a locked container.

7) Provided that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

   a) The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun;

   b) The open carrying of an unloaded handgun by any person authorized to carry a loaded handgun;

   c) The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business;

   d) The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading, or the members thereof when at the meeting places of their respective organizations;

   e) The open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

   f) The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting;

   g) The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

   h) The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

   i) The open carrying of an unloaded handgun within a gun show;

   j) The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

   k) The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

   l) The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest;

m) The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property;

n) The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;

o) The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

p) The open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

q) The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

r) The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

s) The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;

t) The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;

u) The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;

v) The open carrying of an unloaded handgun within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property; and,

w) The open carrying of an unloaded handgun when all of the following conditions are satisfied:

   i)   The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii)  The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation;

iii) The unloaded  handgun  is delivered  by a licensed  dealer;

iv) The open carrying  of an unloaded  handgun  does not apply to person  authorized  to carry handguns  in the State Capitol  or residences  of the Governor  or other constitutional  officers;  and,

v) The open carrying  of an unloaded  handgun  on publicly  owned land, if the possession and use of a handgun  is specifically  permitted  by the managing  agency of the land and the person carrying  the handgun  is the registered  owner of the handgun.

8)  Made conforming  and non-substantive  technical  changes.

FISCAL EFFECT:  According  to the Senate Appropriations  Committee,  pursuant  to Senate Rule 28.8, negligible  state costs.

COMMENTS:  According  to the author, "The absence of a prohibition  on 'open carry' has created an increase  in problematic  instances  of guns carried in public,  alarming  unsuspecting individuals  causing  issues for law enforcement.

"Open carry creates a potentially  dangerous  situation.  In most cases when a person is openly carrying  a firearm,  law enforcement  is called to the scene with few details other than one or more people are present at a location  and are armed.

"In these tense situations,  the slightest  wrong move by the gun carrier could be construed  as threatening  by the responding  officer,  who may feel compelled  to respond  in a manner that could be lethal.  In this situation,  the practice  of 'open carry' creates an unsafe  environment  for all parties involved:  the officer,  the gun-carrying  individual,  and for any other individuals  nearby as well.

"Additionally,  the increase  in "open carry" calls placed to law enforcement  has taxed departments  dealing  with under-staffing  and cutbacks due to the current fiscal climate  in California,  preventing  them from protecting  the public  in other ways."

Please see the policy committee  analysis  for a full discussion  of this bill.

Analysis  Prepared by:   Gregory  Pagan / PUB. S. / (916) 319-3744

FN:  0001386

**SENATE RULES COMMITTEE**                                     AB 144
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520      Fax: (916) 327-4478

---

THIRD READING

---

Bill No:    AB 144
Author:     Portantino (D), et al
Amended:    6/1/11 in Senate
Vote:       21

---

SENATE PUBLIC SAFETY COMMITTEE: 4-2, 6/7/11
AYES:  Hancock, Liu, Price, Steinberg
NOES:  Anderson, Harman
NO VOTE RECORDED:  Calderon

SENATE APPROPRIATIONS COMMITTEE: Senate Rule 28.8

ASSEMBLY FLOOR: 46-29, 5/16/11 - See last page for vote

---

**SUBJECT:**   Open Carrying of unloaded handguns

**SOURCE:**    California Police Chiefs Association

---

**DIGEST:**   This bill (1) makes it a misdemeanor punishable by up to six months in jail and a $1,000 fine to openly carry an unloaded handgun on one's person or in a vehicle; (2) makes it a misdemeanor punishable by up to one year in county jail and a $1,000 fine to openly carry an unlawfully possessed unloaded handgun and ammunition in public in an incorporated city; (3) establishes specified exceptions to this prohibition; (4) makes it a misdemeanor, punishable by up to six months in jail and a fine of up to $1,000 for the driver of a vehicle to knowingly allow a person to bring an openly carried, unloaded handgun into the vehicle; and (5) makes conforming and nonsubstantive technical changes to affected statutes.

CONTINUED

**ANALYSIS:**    Existing law defines "handgun" as any "pistol," "revolver," or "firearm capable of being concealed upon the person." (Penal Code Section 16640(a).)

Existing law prohibits carrying a concealed weapon, loaded or unloaded, unless granted a permit to do so.  Except as otherwise provided, a person is guilty of carrying a concealed firearm when he/she:

- Carries concealed within any vehicle which is under his/her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

- Causes to be concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

- Carries concealed upon his/her person any pistol, revolver, or other firearm capable of being concealed upon the person.  (Penal Code Section 25400(a).)

Existing law provides that carrying a concealed firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both.  However, there are several circumstances in which carrying a concealed weapon may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law.

- A felony where the firearm is stolen and the person knew, or had reasonable cause to believe, that the firearm was stolen.

- A felony where the person is an active participant in a criminal street gang.

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm.

CONTINUED

- An alternate felony-misdemeanor where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor where:

  - Both the concealable firearm and the unexpended ammunition for that firearm are either in the immediate possession of the person or readily available to that person or where the firearm is loaded.

  - The person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm. (Penal Code Section 25400(c).)

Existing law provides a number of exceptions and limitations to the prohibition on carrying a concealed firearm including methods to lawfully carry firearms in a vehicle, a home, or a business, etc. (Penal Code Sections 25600, 25605, 25610, 25505-25595, 25450-25475, 25615-25655, and 26150-26255.)

Existing law authorizes the sheriff of a county, or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of specified conditions, and has completed a course of training, as specified, to issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

- A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

- Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(Penal Code Sections 26150-26255.)

Existing law prohibits the carrying of a loaded firearm on his/her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory. The penalty provisions for this prohibition are substantially similar to those

provided in Penal Code Section 25400(c) and provide numerous exceptions and limitation to this prohibition. (Penal Code Section 25850.)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of Penal Code Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Penal Code Section 16840(b).)

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code Section 2006.)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine.

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law.

- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen.

- A felony where the person is an active participant in a criminal street gang.

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm.

CONTINUED

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the registered owner of the firearm.

(Penal Code Section 25858(c).)

Existing law, the "Gun-Free School Zone Act," prohibits a person, without appropriate permission, as specified, from possessing a firearm within an area that the person knew or reasonably should have known was a "school zone," defined as an area in or on the grounds of or within 1,000 feet of the grounds of any public or private K-12 school. (Penal Code Section 626.9.)

Existing law provides that any person who has ever been convicted of a felony and who owns or has in his/her possession or under his/her custody or control a firearm is guilty of a felony, punishable by 16 months, two or three years in prison. (Penal Code Section 29800(b).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm in public, loaded or unloaded, in the presence of another person, in a rude, angry or threatening manner is guilty of a misdemeanor and shall be imprisoned for not less than three months nor more than one year in the county jail; fined $1,000; or both. (Penal Code Section 417(a).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm, loaded or unloaded, in a rude, angry or threatening manner in public, in the presence of a peace officer, who a reasonable person would know was in the performance of his/her duty, is guilty of an alternate misdemeanor/felony and shall be imprisoned for not less than nine months and up to one year in the county jail or in the state prison for 16 months, two or three years. (Penal Code Section 417(c).)

CONTINUED

This bill provides that it shall be a misdemeanor, punishable by up to six months in the county jail, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun outside a vehicle upon his/her person or inside or on a vehicle, whether or not on his/her person, while in:

- A public place or public street in an incorporated city or city and county.
- A public street in a prohibited area of an unincorporated area of a county or city and county.
- A public place in a prohibited area of a county or city and county.

This bill provides that it shall be a misdemeanor punishable by imprisonment in a county jail for up to one year, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun inside or on a vehicle, whether or not on his/her person, while in a public place or public street in an incorporated city or city and county is, if both of the following conditions exist:

- The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.
- The person is not in lawful possession of that handgun.

This bill provides that the above-stated provisions shall not preclude prosecution under any other law with a penalty that is greater.

This bill provides that the above-stated provisions are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that, notwithstanding the fact that the term “an unloaded handgun” is used in this section; each handgun shall constitute a separate and distinct offense.

This bill provides that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

CONTINUED

- The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun, as specified.

- The open carrying of an unloaded handgun by any person authorized to openly carry a loaded handgun, as specified.

- The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business.

- The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading or the members thereof when at the meeting places of their respective organizations.

- The open carrying of an unloaded handgun upon the person by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

- The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting.

- The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

- The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

- The open carrying of an unloaded handgun upon the person within a gun show, as specified.

CONTINUED

- The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his/her designee, or equivalent school authority.

- The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

- The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest.

- The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, as specified, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property.

- The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

- The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while rehearsing or practicing, or while the participant or authorized employee or agent is at that production event or rehearsal or practice.

- The open carrying of an unloaded handgun upon the person incident to obtaining an identification number or mark assigned for that handgun from the DOJ.

- The open carrying of an unloaded handgun upon the person at any established target range, whether public or private, while the person is using the handgun upon the target range.

- The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he/she is actually engaged in assisting that officer.

CONTINUED

- The open carrying of an unloaded handgun upon the person incident to any of the following:
  - Complying with requirements for importing that handgun or curio or relic into California.
  - Reporting disposition of a handgun to DOJ, as specified.
  - The sale or transfer of that firearm to a government entity, as specified.
  - Complying with requirements related to the transfer of a handgun obtained by gift or inheritance.
  - Complying with requirements for taking possession or title of that handgun.
- The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer.
- The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer.
- The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon.
- The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department.
- The open carrying of an unloaded handgun upon the person within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property.
- The open carrying of an unloaded handgun upon the person when all of the following conditions are satisfied:
  - The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities.

CONTINUED

- The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation.

- The unloaded handgun is delivered by a licensed dealer.

- The open carrying of an unloaded handgun by a person authorized to carry a handgun in the State Capitol or residences of the Governor or other constitutional officers.
- The open carrying of an unloaded handgun by authorized public transit officials, as specified.
- The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is in lawful possession of that handgun.
- The carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

This bill provides that the "Gun Free School Zones Act" described above does not apply to or affect the following persons:

- A security guard authorized to openly carry an unloaded handgun pursuant to the provisions of this bill.
- An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to the provisions of this bill.

This bill provides that it shall be a misdemeanor, punishable by up to 6 months in county jail, a fine of up to $1,000, or both, for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, to knowingly permit any other person to carry into or bring into the vehicle an openly carried unloaded handgun, as specified.

This bill makes conforming and nonsubstantive technical changes.

Related/Prior Legislation

CONTINUED

AB 1934 (Saldana, 2010) passed the Senate Floor (21-16) on August 31, 2010.  This bill died on Assembly Concurrence; AB 98 (Cohn, 2005) was held on Suspense in the Assembly Appropriations Committee; AB 2501(Horton, 2004) failed passage in the Assembly Public Safety Committee; AB 2828 (Cohn, 2004) failed passage in the Assembly Public Safety Committee

**FISCAL EFFECT**:   Appropriation:  No   Fiscal Com.:  Yes   Local:  Yes

**SUPPORT:**  (Verified   6/28/11)

California Police Chiefs Association (source)
Brady Campaign to Prevent Gun Violence (California Chapters)
City of Beverly Hills
City of Los Angeles
City of West Hollywood
Coalition Against Gun Violence
Friends Committee on Legislation
Legal Community Against Violence
Los Angeles Sheriff's Department
Peace Officers Research Association of California

**OPPOSITION:**  (Verified   6/28/11)

California Rifle and Pistol Association
California Right To Carry
Capitol Resource Family Impact
Contra Costa Open Carry
Diablo Valley Gun Works
Gun Owners of California
National Rifle Association
Open Carry Organization
Redline Ballistic
Responsible Citizens of California
South Bay Open Carry

**ARGUMENTS IN SUPPORT:**   According to the author's office, the absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals and causing issues for law enforcement.  Simply put, open carry creates a potentially dangerous situation for the Citizens of California.

CONTINUED

Often, when an individual is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more armed individuals are present at a location.

In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal.  In this situation the practice of "open carry" creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other people who happen to be in the line of fire.

Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.

**ARGUMENTS IN OPPOSITION:**   The National Rifle Association and the California Rifle and Pistol Association state:

> By denying individuals the ability to carry an unloaded firearm, SB 144 directly violates the constitutional right to keep and bear arms for self-defense. We urge you to oppose this attack on the rights of the law abiding population to carry a firearm in case of a self-defense emergency should they so choose.
>
> In addition, we write to notify you that the problems facing SB 144 are compounded by the current state of California's concealed carry weapons (CCW) permitting system. Should AB 144 pass, it will wreak havoc on California's CCW permitting system. In most areas of California, CCW permits are rarely issued, and are usually reserved for those with political clout and the wealthy elite. Because of this reality, "open carrying" is the only method available to the overwhelming majority of law-abiding individuals who wish to carry a firearm for self-defense. Accordingly, by banning the open carrying of even unloaded firearms, SB 144 effectively shuts the door on the ability of law-abiding Californians to carry a firearm for self-defense at all.

**ASSEMBLY FLOOR**:
AYES: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bonilla, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos,

CONTINUED

Carter, Cedillo, Chesbro, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Furutani, Gatto, Gordon, Hall, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mitchell, Monning, Pan, V. Manuel Pérez, Portantino, Skinner, Solorio, Swanson, Wieckowski, Williams, Yamada, John A. Pérez

NOES: Achadjian, Bill Berryhill, Conway, Cook, Donnelly, Fletcher, Beth Gaines, Garrick, Grove, Hagman, Halderman, Harkey, Roger Hernández, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Olsen, Perea, Silva, Smyth, Valadao, Wagner

NO VOTE RECORDED: Galgiani, Gorell, Mendoza, Norby, Torres

RJG:do 6/28/11 Senate Floor Analyses

SUPPORT/OPPOSITION: SEE ABOVE

****** END ******

# SENATE COMMITTEE ON PUBLIC SAFETY

Senator Loni Hancock, Chair
2011-2012 Regular Session

A
B

1
4
4

AB 144 (Portantino)
As Amended June 1, 2011
Hearing date: June 7, 2011
Business and Professions Code and
Penal Code
SM:dl

## OPEN CARRYING OF UNLOADED HANDGUNS

### HISTORY

Source: California Police Chiefs Association

Prior Legislation: AB 1934 (Saldana) - 2010, died on Assembly Concurrence
AB 98 (Cohn) - 2005, held on Suspense in Assembly Appropriations
AB 2501(Horton) - 2004, failed passage in Assembly Public Safety
AB 2828 (Cohn) - 2004, failed passage in Assembly Public Safety

Support: Brady Campaign to Prevent Gun Violence (California Chapters); City of Beverly Hills; City of Los Angeles; City of West Hollywood; Coalition Against Gun Violence; Friends Committee on Legislation; Legal Community Against Violence; Los Angeles Sheriff's Department; Peace Officers Research Association of California (PORAC); over 200 individual citizens

Opposition: California Rifle and Pistol Association; Capitol Resource Family Impact; Diablo Valley Gun Works; Gun Owners of California; National Rifle Association; Responsible Citizens of California; 20 individual citizens

Assembly Floor Vote: Ayes 46 - Noes 29

### KEY ISSUES

SHOULD IT BE A MISDEMEANOR PUNISHABLE BY UP TO SIX MONTHS IN COUNTY JAIL AND A $1,000 FINE TO OPENLY CARRY AN UNLOADED HANDGUN ON ONE'S PERSON OR IN A VEHICLE?

(Continued)

(More)

SHOULD IT BE A MISDEMEANOR PUNISHABLE BY UP TO ONE YEAR IN COUNTY JAIL AND A $1,000 FINE TO OPENLY CARRY AN UNLAWFULLY POSSESSED UNLOADED HANDGUN AND AMMUNITION IN PUBLIC IN AN INCORPORATED CITY?

SHOULD SPECIFIED EXCEPTIONS TO THIS PROHIBITION BE ESTABLISHED?

SHOULD IT BE A MISDEMEANOR, PUNISHABLE BY UP TO SIX MONTHS IN JAIL AND A FINE OF UP TO $1,000 FOR THE DRIVER OF A VEHICLE TO KNOWINGLY ALLOW A PERSON TO BRING AN OPENLY CARRIED, UNLOADED HANDGUN INTO THE VEHICLE?

## *PURPOSE*

***The purpose of this bill is to (1) make it a misdemeanor punishable by up to 6 months in jail and a $1,000 fine to openly carry an unloaded handgun on one's person or in a vehicle; (2) make it a misdemeanor punishable by up to one year in county jail and a $1,000 fine to openly carry an unlawfully possessed unloaded handgun and ammunition in public in an incorporated city; (3) establish specified exceptions to this prohibition; (4) make it a misdemeanor, punishable by up to six months in jail and a fine of up to $1,000 for the driver of a vehicle to knowingly allow a person to bring an openly carried, unloaded handgun into the vehicle; and (5) make conforming and nonsubstantive technical changes to affected statutes.***

Existing law defines "handgun" as any "pistol," "revolver," or "firearm capable of being concealed upon the person." (Penal Code § 16640(a).)[1]

Existing law prohibits carrying a concealed weapon, loaded or unloaded, unless granted a permit to do so. Except as otherwise provided, a person is guilty of carrying a concealed firearm when he or she:

- Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person;
- Causes to be concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person; or,

[1] SB 1080, Chap. 711, Stats. 2010, and SB 1115, Chap. 178, Stats. 2010, recast and renumbered most statutes relating to deadly weapons without any substantive change to those statutes. Those changes will become operative January 1, 2012. All references to affected code sections will be to the revised version unless otherwise indicated.

- Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person.  (Penal Code § 25400(a).)

Existing law provides that carrying a concealed firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both.  However, there are several circumstances in which carrying a concealed weapon may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;
- A felony where the firearm is stolen and the person knew, or had reasonable cause to believe, that the firearm was stolen;
- A felony where the person is an active participant in a criminal street gang;
- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;
- An alternate felony-misdemeanor where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation; and,
- An alternate felony-misdemeanor where:
  - Both the concealable firearm and the unexpended ammunition for that firearm are either in the immediate possession of the person or readily available to that person or where the firearm is loaded; and,
  - The person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm.  (Penal Code § 25400(c).)

Existing law provides a number of exceptions and limitations to the prohibition on carrying a concealed firearm including methods to lawfully carry firearms in a vehicle, a home, or a business, etc. (Penal Code §§ 25600, 25605, 25610, 25505-25595, 25450-25475, 25615-25655, and 26150-26255.)

Existing law authorizes the sheriff of a county, or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of specified conditions, and has completed a course of training, as specified, to issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

- A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.
- Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(Pen Code § 26150-26255.)

Existing law prohibits the carrying of a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory. The penalty provisions for this prohibition are substantially similar to those provided in Penal Code Section 25400(c) and provide numerous exceptions and limitation to this prohibition. (Penal Code § 25850.)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of Penal Code Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Penal Code § 16840(b).)

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code § 2006.)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (*Id*.)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;
- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen ;
- A felony where the person is an active participant in a criminal street gang;
- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the registered owner of the firearm.

(Penal Code § 25858(c).)

(More)

Existing law, the "Gun-Free School Zone Act," prohibits a person, without appropriate permission, as specified, from possessing a firearm within an area that the person knew or reasonably should have known was a "school zone," defined as an area in or on the grounds of or within 1,000 feet of the grounds of any public or private K-12 school. (Penal Code § 626.9.)

Existing law provides that any person who has ever been convicted of a felony and who owns or has in his or her possession or under his or her custody or control a firearm is guilty of a felony, punishable by 16 months, 2 or 3 years in prison. (Penal Code § 29800(b).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm in public, loaded or unloaded, in the presence of another person, in a rude, angry or threatening manner is guilty of a misdemeanor and shall be imprisoned for not less than three months nor more than one year in the county jail; fined $1,000; or both. (Penal Code § 417(a).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm, loaded or unloaded, in a rude, angry or threatening manner in public, in the presence of a peace officer, who a reasonable person would know was in the performance of his or her duty, is guilty of an alternate misdemeanor/felony and shall be imprisoned for not less than nine months and up to one year in the county jail or in the state prison for 16 months, 2 or 3 years. (Penal Code § 417(c).)

This bill provides that it shall be a misdemeanor, punishable by up to 6 months in the county jail, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person or inside or on a vehicle, whether or not on his or her person, while in:

- A public place or public street in an incorporated city or city and county.
- A public street in a prohibited area of an unincorporated area of a county or city and county.
- A public place in a prohibited area of a county or city and county.

This bill provides that it shall be a misdemeanor punishable by imprisonment in a county jail for up to one year, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in a public place or public street in an incorporated city or city and county is, if both of the following conditions exist:

- The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.
- The person is not in lawful possession of that handgun.

This bill provides that the above-stated provisions shall not preclude prosecution under any other law with a penalty that is greater.

<u>This bill</u> provides that the above-stated provisions are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

<u>This bill</u> provides that, notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a separate and distinct offense.

<u>This bill</u> provides that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

- The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun, as specified;
- The open carrying of an unloaded handgun by any person authorized to openly carry a loaded handgun, as specified;
- The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business;
- The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading, or the members thereof when at the meeting places of their respective organizations;
- The open carrying of an unloaded handgun upon the person by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;
- The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting;
- The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;
- The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;
- The open carrying of an unloaded handgun upon the person within a gun show, as specified;
- The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

- The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;
- The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest;
- The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, as specified, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property;
- The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;
- The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while rehearsing or practicing, or while the participant or authorized employee or agent is at that production event or rehearsal or practice;
- The open carrying of an unloaded handgun upon the person incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);
- The open carrying of an unloaded handgun upon the person at any established target range, whether public or private, while the person is using the handgun upon the target range.
- The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;
- The open carrying of an unloaded handgun upon the person incident to any of the following:

    - Complying with requirements for importing that handgun or curio or relic into California;
    - Reporting disposition of a handgun to DOJ, as specified;
    - The sale or transfer of that firearm to a government entity, as specified;
    - Complying with requirements related to the transfer of a handgun obtained by gift or inheritance;
    - Complying with requirements for taking possession or title of that handgun;

- The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

- The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;
- The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;
- The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;
- The open carrying of an unloaded handgun upon the person within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property;
- The open carrying of an unloaded handgun upon the person when all of the following conditions are satisfied:
    - The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities.
    - The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation.
    - The unloaded handgun is delivered by a licensed dealer.
- The open carrying of an unloaded handgun by a person authorized to carry a handgun in the State Capitol or residences of the Governor or other constitutional officers;
- The open carrying of an unloaded handgun by authorized public transit officials, as specified;
- The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is in lawful possession of that handgun;
- The carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

<u>This bill</u> provides that the "Gun Free School Zones Act" described above does not apply to or affect the following persons:

- A security guard authorized to openly carry an unloaded handgun pursuant to the provisions of this bill;
- An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to the provisions of this bill.

<u>This bill</u> provides that it shall be a misdemeanor, punishable by up to 6 months in county jail, a fine of up to $1,000, or both, for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, to knowingly permit any other person to carry into or bring into the vehicle an openly carried unloaded handgun, as specified.

This bill makes conforming and nonsubstantive technical changes.

### *RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION*

For the last several years, severe overcrowding in California's prisons has been the focus of evolving and expensive litigation. As these cases have progressed, prison conditions have continued to be assailed, and the scrutiny of the federal courts over California's prisons has intensified.

On June 30, 2005, in a class action lawsuit filed four years earlier, the United States District Court for the Northern District of California established a Receivership to take control of the delivery of medical services to all California state prisoners confined by the California Department of Corrections and Rehabilitation ("CDCR"). In December of 2006, plaintiffs in two federal lawsuits against CDCR sought a court-ordered limit on the prison population pursuant to the federal Prison Litigation Reform Act. On January 12, 2010, a three-judge federal panel issued an order requiring California to reduce its inmate population to 137.5 percent of design capacity -- a reduction at that time of roughly 40,000 inmates -- within two years. The court stayed implementation of its ruling pending the state's appeal to the U.S. Supreme Court.

On May 23, 2011, the United States Supreme Court upheld the decision of the three-judge panel in its entirety, giving California two years from the date of its ruling to reduce its prison population to 137.5 percent of design capacity, subject to the right of the state to seek modifications in appropriate circumstances.

In response to the unresolved prison capacity crisis, in early 2007 the Senate Committee on Public Safety began holding legislative proposals which could further exacerbate prison overcrowding through new or expanded felony prosecutions.

This bill does not appear to aggravate the prison overcrowding crisis described above.

### COMMENTS

1. Need for This Bill

According to the author:

> The absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals and causing issues for law enforcement. Simply put, open carry creates a potentially dangerous situation for the Citizens of California.

Often, when an individual is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more armed individuals are present at a location.

In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation the practice of "open carry" creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other people who happen to be in the line of fire.

Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.

2. Background – The "Open Carry Movement" in California

California has some of the nation's strictest regulations regarding gun ownership. One practice that has remained unregulated is carrying an unconcealed, unloaded handgun. In 2004 and 2005, and then again last year there were unsuccessful attempts to prohibit this practice. (AB 2828 (Cohn) (2004); AB 2501 (Horton) (2004); AB 98 (Cohn) (2005), AB 1934 (Saldana) (2010).) A new movement to promote the open carrying of firearms in California and around the country has heightened debate around the issue, as reported in the New York Times:

> For years, being able to carry a concealed handgun has been a sacred right for many gun enthusiasts. In defending it, Charlton Heston, the actor and former president of the National Rifle Association, used to say that the flock is safer when the wolves cannot tell the difference between the lions and the lambs. But a grass-roots effort among some gun rights advocates is shifting attention to a different goal: exercising the right to carry unconcealed weapons in the 38 or more states that have so-called open-carry laws allowing guns to be carried in public view with little or no restrictions. The movement is not only raising alarm among gun control proponents but also exposing rifts among gun rights advocates.
>
> The call for gun owners to carry their guns openly in the normal course of business first drew broad attention last summer, when opponents of the Obama administration's health care overhaul began appearing at town-hall-style meetings wearing sidearms. But in recent weeks, the practice has expanded as gun owners in California and other states that allow guns to be openly carried have tested the law by showing up at so-called meet-ups, in which gun owners appear at Starbucks, pizza parlors and other businesses openly bearing their weapons.

> "Our point is to do the same thing that concealed carriers do," said Mike Stollenwerk, a co-founder of OpenCarry.org, which serves as a national forum. "We're just taking off our jackets."
>
> The goal, at least in part, is to make the case for liberalized concealed weapon laws by demonstrating how uncomfortable many people are with publicly displayed guns. The tactic has startled many business owners like Peet's Coffee and Tea and California Pizza Kitchen, which forbid guns at their establishments. So far, Starbucks has resisted doing the same. (*Locked, Loaded, and Ready to Caffeinate*, New York Times, March 7, 2010. http://www.nytimes.com/2010/03/08/us/08guns.html?pagewanted=print.)

3. <u>Is Banning Open Carrying of Handguns Unconstitutional?</u>

The Second Amendment to the United States Constitution states, "A well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed". (U.S. Const., Second Amend.) For many years, courts have wrestled with the question of whether the Second Amendment protects the individual's right to own a weapon. In *United States vs. Cruikshank* (1875) 92 U.S. 542, the Supreme Court held that the Second Amendment guaranteed states the right to maintain militias but did not guarantee to individuals the right to possess guns. Subsequently, in *United States vs. Miller* (1939), the Court upheld a federal law banning the interstate transportation of certain firearms. Miller, who had been arrested for transporting a double-barreled sawed-off shotgun from Oklahoma to Arkansas, claimed the law was a violation of the Second Amendment.

The Court rejected Miller's argument, stating:

> In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. (*United States* v. *Miller*, 307 U.S. 174, 178 (1939).)
>
> For many years following the Supreme Court's decision in *United States vs. Miller*, the orthodox opinion among academics and federal appeals courts alike was that the Second Amendment to the United States Constitution did not protect possession of firearms unrelated to service in the lawfully established militia. (Merkel, *Parker v. District of Columbia and the Hollowness of the Originalist Claims to Principled Neutrality*, 18 Geo. Mason U. Civil Right L. Journal, 251, 251.)

That changed in June 2008, when the United States Supreme Court ruled in *District of Columbia vs. Heller* that a District of Columbia complete ban on possession of a handgun in the home was an unconstitutional violation of the Second Amendment. (*District of Columbia v. Heller* (2008) 128 S. Ct. 2783, 2797.) After a lengthy discussion of the historical context and meaning of the Second Amendment, the Court stated:

> Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank* [citation omitted] '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The Second Amendment declares that it shall not be infringed ...' " (*Heller* at 2797.)

However, in the *Heller* decision, the Supreme Court also stated:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. n26
>
> FOOTNOTES
> n26 We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive. (*District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2816-2817 (2008), citations omitted.)

Therefore, while the *Heller* decision established that the right to own a firearm is a personal right, not one limited to ownership while serving in a "well-regulated militia," it also held that the government may place reasonable restrictions on that right such as restricting "carrying

firearms in sensitive places." It is not clear whether the Supreme Court would include in its list of lawful regulatory measures prohibiting the open carrying of unloaded handguns in public.

IS A BAN ON OPEN CARRYING OF HANDGUNS IN PUBLIC CONSTITUTIONAL?

4. Arguments in Support

The Peace Officer Research Association of California states:

> The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearm statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possibly dangerous situation. Most often, law enforcement is called to the scene based on a citizen or merchant complaint. When the officer arrives at the scene, it is their obligation to question those persons carrying the firearms and to inquire as to whether the firearm is loaded. Until that officer has physically seen if the firearm is loaded, that officer must assume that their lives and the lives of those around them may be in danger.
>
> Again, these situations are potentially dangerous and should not occur in a public place wherein any number of things could go wrong. We believe this bill will be very helpful in preventing these potentially unsafe incidents from happening.

5. Arguments in Opposition

The National Rifle Association and the California Rifle and Pistol Association state:

> By denying individuals the ability to carry an unloaded firearm, SB 144 directly violates the constitutional right to keep and bear arms for self-defense. We urge you to oppose this attack on the rights of the law abiding population to carry a firearm in case of a self-defense emergency should they so choose.
>
> In addition, we write to notify you that the problems facing SB 144 are compounded by the current state of California's concealed carry weapons (CCW) permitting system. Should AB 144 pass, it will wreak havoc on California's CCW permitting system. In most areas of California, CCW permits are rarely issued, and are usually reserved for those with political clout and the wealthy elite. Because of this reality, "open carrying" is the only method available to the overwhelming majority of law-abiding individuals who wish to carry a firearm for self-defense. Accordingly, by banning the open carrying of even unloaded firearms, SB 144 effectively shuts the door on the ability of law-abiding Californians to carry a firearm for self-defense at all.

***************

ASSEMBLY THIRD READING
AB 144 (Portantino and Ammiano)
As Amended May 2, 2011
Majority vote

| PUBLIC SAFETY | 5-2 | APPROPRIATIONS | 12-5 |
|---|---|---|---|
| Ayes: | Ammiano, Cedillo, Hill, Mitchell, Yamada | Ayes: | Fuentes, Blumenfield, Bradford, Charles Calderon, Campos, Davis, Gatto, Hall, Hill, Lara, Mitchell, Solorio |
| Nays: | Knight, Hagman | Nays: | Harkey, Donnelly, Nielsen, Norby, Wagner |

SUMMARY: Makes it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. Specifically, this bill:

1) Makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or by both a fine and imprisonment for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person, or when that person carries and exposed and unlocked handgun inside or on a vehicle, whether or not is in on his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.

2) Makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.

3) States that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

4) Provides that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

5) States that notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a separate and distinct offense.

6) States that the open carrying of an unloaded handgun does not apply to the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

7) Provides that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

   a) The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun;

   b) The open carrying of an unloaded handgun by any person authorized to carry a loaded handgun;

   c) The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business;

   d) The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading, or the members thereof when at the meeting places of their respective organizations;

   e) The open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

   f) The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting;

   g) The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

   h) The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

   i) The open carrying of an unloaded handgun within a gun show;

   j) The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

   k) The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

   l) The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest;

   m) The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, so long as that handgun is possessed within private property and the possession and

carrying is with the permission of the owner or lessee of that private property;

n) The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;

o) The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

p) The open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

q) The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

r) The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

s) The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;

t) The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;

u) The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;

v) The open carrying of an unloaded handgun within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property; and,

w) The open carrying of an unloaded handgun when all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation;

   iii) The unloaded handgun is delivered by a licensed dealer;

iv) The open carrying of an unloaded handgun does not apply to person authorized to carry handguns in the State Capitol or residences of the Governor or other constitutional officers; and,

v) The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

8) Makes conforming and nonsubstantive technical changes.

FISCAL EFFECT:   According to the Assembly Appropriations Committee, unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

COMMENTS:  According to the author, "The absence of a prohibition on 'open carry' has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals causing issues for law enforcement.

"Open carry creates a potentially dangerous situation.  In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal.  In this situation, the practice of 'open carry' creates an unsafe environment for all parties involved:  the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

Please see the policy committee for a full discussion of this bill.

Analysis Prepared by:   Gregory Pagan / PUB. S. / (916) 319-3744

FN: 0000523

Date of Hearing: May 4, 2011

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Felipe Fuentes, Chair

AB 144 (Portantino) – As Amended: May 2, 2011

Policy Committee: Public Safety Vote: 5-2

Urgency: No State Mandated Local Program: Yes Reimbursable: No

## SUMMARY

This bill makes it a misdemeanor to carry an exposed and unloaded handgun in a public place ('open carry'). Specifically, this bill:

1) Makes it a misdemeanor punishable by up to six months in county jail and/or a fine of up to $1,000, to carry an exposed and unloaded handgun while in a public place.

2) Creates a lengthy series of exceptions to the prohibition on open carry, including peace officers, range shooting, hunters engaged in lawful hunting, incidental transport, gun shows, entertainment props, etc.

3) Makes a series of conforming and nonsubstantive changes.

## FISCAL EFFECT

Unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

## COMMENTS

1) Rationale. The author and proponents contend the absence of a prohibition on open carry has created a surge in problematic instances of guns carried in public, alarming people and causing issues for law enforcement. According to the author:

   "Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

   "In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of 'open carry' creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well.

   "Additionally, the increase in 'open carry' calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

2) Current law specifies that carrying a loaded gun or a concealed gun is generally a misdemeanor, punishable by up to one year in a county jail and/or a fine of up to $1,000. There are circumstances, however, where the penalty may be a wobbler if the offender has a specified prior conviction.

3) Supporters, including the Police Chiefs Association, the Peace Officer Research Association of CA (PORAC), the CA chapters of the Brady Campaign to Prevent Gun Violence, and the Legal Community Against Violence, contend that in recent years, members of the so-called 'open carry movement' have held open carry events in public places such as coffee shops, restaurants, and public parks. Open carry intimidates the public, wastes law enforcement resources, and increases the potential for death and injury.

   According to the Legal Community Against Violence, "Although California law requires openly carried firearms to remain unloaded, this does little to improve public safety, since state law also permits the carrying of ammunition. The ability to carry firearms and ammunition makes the distinction between loaded and unloaded weapons almost meaningless, as open carry advocates have boasted about their abilities to load their weapons in a matter of seconds."

4) Opponents, including various gun owner organizations, contend this bill is part of a continuing effort to disarm the public. According to the Gun Owners of California in their opposition to a similar bill last year, "We believe that a ban on 'open carrying' of unloaded handguns will bring a chilling effect on the constitutional rights of all citizens. Since the Second Amendment includes both the right to keep and bear arms, the government of California is going to have to come to grips as to how bearing will take place. As long as Carry Concealed Weapons Permits (CCWs) are not available to the vast majority of law-abiding citizens in California, the only other option is open carry.

   "The argument that citizens legally expressing their rights causes some to be intimidated or uncomfortable is a vapid excuse for curtailing both the First and Second Amendment rights of any citizen. It may make some people feel uncomfortable or intimidated to hear someone espousing communist or nazi or racist beliefs in the public square, but as long as they are not breaking the law by exercising their hate-filled beliefs into actual subversion of the country, their rights of free speech, no matter how detestable, are protected even if it makes some people uncomfortable. That is freedom!"

5) Similar legislation, AB 1934 (Saldana), 2010, passed the Assembly 46-30, passed the Senate 21-16, and died on the Assembly floor on concurrence when the 2009-10 session expired.

Analysis Prepared by: Geoff Long / APPR. / (916) 319-2081

Date of Hearing:    April 12, 2011
Chief Counsel:      Gregory  Pagan


ASSEMBLY  COMMITTEE  ON PUBLIC SAFETY
Tom Ammiano,  Chair

AB 144 (Portantino)  – As Introduced:  January 13, 2011


SUMMARY:   Makes it a misdemeanor  for any person to carry an exposed and unloaded
handgun  outside a vehicle  upon his or her person while  in any public  place or on any public
street in an incorporated city, or in any public  place or public  street in a prohibited  area of an
unincorporated  county.   Specifically,  this bill:

1) Makes it a misdemeanor  punishable  by imprisonment  in the county  jail not to exceed six
   months,  by a fine  not to exceed $1,000, or by both a fine  and imprisonment  for any person to
   carry an exposed and unloaded  handgun  outside a vehicle  upon his or her person while  in any
   public  place or on any public  street in an incorporated city, or in any public  place or public
   street in a prohibited  area of an unincorporated  county.

2) Makes the crime of openly carrying an unloaded  handgun  punishable  by imprisonment  in the
   county  jail not to exceed one year, or by a fine  not to exceed $1,000, or by that fine  and
   imprisonment  if the handgun  and unexpended  ammunition  capable  of being  discharged  from
   that firearm  are in the immediate  possession  of the person and the person is not the registered
   owner of the firearm.

3) States that the sentencing  provisions  of this prohibition  shall not preclude prosecution  under
   other specified  provisions  of law with a penalty  that is greater.

4) Provides that the provisions  of this prohibition  are cumulative,  and shall not be construed  as
   restricting  the application  of any other law.  However, an act or omission  punishable  in
   different  ways by different  provisions  of law shall not be punished  under more than one
   provision.

5) States that notwithstanding  the fact that the term "an unloaded  handgun"  is used in this
   section, each handgun  shall constitute  a separate and distinct  offense.

6) Provides that the crime of openly carrying an unloaded  handgun  does not apply to, or affect,
   the following:

   a) The open carrying  of an unloaded  handgun  by any peace officer  or by an honorably
      retired peace officer  authorized  to carry a handgun;

   b) The open carrying  of an unloaded  handgun  by any person authorized  to carry a loaded
      handgun;

   c) The open carrying  of an unloaded  handgun  as merchandise  by a person who is engaged in
      the business of manufacturing,  wholesaling,  repairing  or dealing  in firearms  and who is

licensed  to engaged  in that business  or an authorized  representative  of that business;

d)  The open carrying  of an unloaded  handgun  by duly authorized  military  or civil
organizations  while  parading,  or the members  thereof  when at the meeting  places of their
respective  organizations;

e)  The open carrying  of an unloaded  handgun  by a member  of any club or organization
organized  for the purpose of practicing  shooting  at targets upon established  target ranges,
whether  public  or private,  while  the members  are using handguns  upon the target ranges
or incident  to the use of a handgun  at that target range;

f)  The open carrying  of an unloaded  handgun  by a licensed  hunter  while  engaged  in lawful
hunting;

g)  The open carrying  of an unloaded  handgun  incident  to transportation  of a handgun  by a
person operating  a licensed  common  carrier  or an authorized  agent  or employee  thereof
when transported  in conformance  with applicable  federal law;

h)  The open carrying  of an unloaded  handgun  by a member  of an organization  chartered  by
the Congress of the United  States or nonprofit  mutual  or public  benefit  corporation
organized  and recognized  as a nonprofit  tax-exempt  organization  by the Internal  Revenue
Service  while  an official  parade duty or ceremonial  occasions  of that organization;

i)  The open carrying  of an unloaded  handgun  within  a gun show;

j)  The open carrying  of an unloaded  handgun  within  a school zone, as defined,  with the
written  permission  of the school district  superintendent,  his or her designee,  or equivalent
school authority;

k)  The open carrying  of an unloaded  handgun  when in accordance  with the provisions
relating  to the possession  of a weapon  in a public  building  or State Capitol;

l)  The open carrying  of an unloaded  handgun  by any person while  engaged  in the act of
making  or attempting  to make a lawful  arrest;

m)  The open carrying  of an unloaded  handgun  incident  to loaning,  selling,  or transferring  the
same, so long as that handgun  is possessed  within  private  property  and the possession  and
carrying  is with the permission  of the owner or lessee of that private  property;

n)  The open carrying  of an unloaded  handgun  by a person engaged  in firearms-related
activities,  while  on the premises  of a fixed place of business  which  is licensed  to conduct
and conducts,  as a regular  course of its business,  activities  related  to the sale, making,
repair, transfer,  pawn,  or the use of firearms,  or related  to firearms  training;

o)  The open carrying  of an unloaded  handgun  by an authorized  participant  in, or an
authorized  employee  or agent  of a supplier  of firearms  for, a motion  picture,  television,  or
video production  or entertainment  event when the participant  lawfully  uses the handgun
as part of that production  or event or while  the participant  or authorized  employee  or

agent is at that production event;

p) The open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

q) The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer; or,

r) The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

s) The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;

t) The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;

u) The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;

v) The open carrying of an unloaded handgun within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property;

w) The open carrying of an unloaded handgun when all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities.

   ii) The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation.

   iii) The unloaded handgun is delivered by a licensed dealer.

   iv) The open carrying of an unloaded handgun does not apply to person authorized to carry handguns in the State Capitol or residences of the Governor or other constitutional officers.

   v) The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

7) The offense of openly carrying an unloaded handgun if all of the following apply:

a) The handgun is carried on a public street or in a public place in a prohibited area of an unincorporated area of a county that is less than 200,000 persons, as specified.

b) The person carrying the handgun is the registered owner of the handgun.

c) The area where that person is carrying that handgun is not a public street or a public place in a prohibited area of an unincorporated territory of a county where that unincorporated area is completely bordered by an incorporated city.

8) Makes conforming and nonsubstantive technical changes.

EXISTING LAW:

1) Defines "handgun" as any "pistol," "revolver," or "firearm capable of being concealed upon the person." [Penal Code Section 12001(a)(2).]

2) Provides, except as otherwise provided, that a person is guilty of carrying a concealed firearm when he or she:

a) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person;

b) Causes to be concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person; or,

c) Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person. [Penal Code Section 12025(a).]

3) Provides that carrying a concealed firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or by both the fine and imprisonment. However, there are six circumstances where the penalty may be punishable as a felony or alternate felony-misdemeanor:

a) A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

b) A felony where the firearm is stolen and the person knew, or had reasonable cause to believe, that the firearm was stolen;

c) A felony where the person is an active participant in a criminal street gang;

d) A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

e) An alternate felony-misdemeanor where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation; and,

f) An alternate felony-misdemeanor where:

i)   Both the concealable firearm and the unexpended ammunition for that firearm are either in the immediate possession of the person or readily available to that person or where the firearm is loaded; and,

ii)  The person is not listed with the DOJ as the registered owner of the firearm.  [Penal Code Section 12025(b).]

4)  Provides a number of exceptions and limitations to the prohibition on carrying a concealed firearm including methods to lawfully carry firearms in a vehicle, a home, or a business, etc. (Penal Code Sections 12025.5, 12026, 12026.1, 12026.2, 12027, and 12050.)

5)  Defines a "loaded firearm" as "when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder."  [Penal Code Section 12031(g).]

6)  Prohibits the carrying of a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory.  The penalty provisions for this prohibition are substantially similar to those provided in Penal Code Section 12025(b) and provide numerous exceptions and limitation to this prohibition.  (Penal Code Section 12031.)

7)  Provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or by both the fine and imprisonment. However, there are six circumstances where the penalty may be punishable as a felony or alternate felony-misdemeanor:

a)   A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

b)   A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen;

c)   A felony where the person is an active participant in a criminal street gang;

d)   A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

e)   An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

f)   An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the

registered owner of the firearm.   [Penal Code Section 12031(b).]

8) Prohibits a person, without appropriate permission, as specified, from possessing a firearm within an area that the person knew or reasonably should have known was a "school zone", defined as an area in or on the grounds of or within 1,000 feet of the grounds of any public or private K-12 school.  (Penal Code Section 629.9.)

9) Provides that any person who has ever been convicted of a felony and who owns or has in his or her possession or under his or her custody or control a firearm is guilty of a felony, punishable by 16 months, 2 or 3 years in prison.  [Penal Code Section 12021(b).]

10) Provides that every person who, except in self-defense, draws or exhibits any firearm in public, loaded or unloaded, in the presence of another person, in a rude, angry or threatening manner is guilty of a misdemeanor and shall be imprisoned for not less than three months nor more than one year in the county jail; fined $1,000; or both.  [Penal Code Section 417(a).]

11) Provides that every person who, except in self-defense, draws or exhibits any firearm, loaded or unloaded, in a rude, angry or threatening manner in public, in the presence of a peace officer, who a reasonable person would know was in the performance of his or her duty, is guilty of an alternate misdemeanor/felony and shall be imprisoned for not less than nine months and up to one year in the county jail or in the state prison for 16 months, 2 or 3 years. [Penal Code Section 417(c).]

FISCAL EFFECT:   Unknown

COMMENTS:

1) Author' Statement:  According to the author, "The absence of a prohibition on 'open carry' has created an increase in problematic instances of guns carried in public, alarming unsuspecting ting individuals causing issues for law enforcement.

   "Open carry creates a potentially dangerous situation.  In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

   "In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal.  In this situation, the practice of 'open carry' creates an unsafe environment for all parties involved:  the officer, the gun-carrying individual, and for any other individuals nearby as well.

   "Additionally, the increase in 'open carry' calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

2) Argument in Support:  According to the Legal Community Against Violence, "Over the past two years, members of the so-called 'open carry movement' have held numerous carrying events in public places like coffee shops, restaurants, and public parks. These events have shocked Californians statewide, because the open carrying of handguns creates serious public

safety concerns. Open carrying intimidates the public, wastes law enforcement resources, and presents opportunities for injury and death due to the accidental or intentional use of firearms. This conduct needlessly increases the likelihood that everyday interpersonal conflicts will turn into deadly shootouts.

"Open carrying poses particular challenges for law enforcement officers who must respond to 911 calls from concerned citizens about people carrying guns in public. A state issued by the San Mateo County Sheriff's Office described the significant dangers that open carrying creates:

" 'Open carry create a potentially very dangerous situation. When police are called to a "man with a gun" call they typically are responding to a situation about which they have few details other than that one or more people are present at a location and are armed. . . . Consequently, the law enforcement response is one of "hypervigilant urgency" in order to protect the public from an armed threat. Should the gun carrying person fail to comply with a law enforcement instruction or move in a way that could be construed as threatening, the police are forced to respond in kind for their own protection. . . . Simply put, it is not recommended to open carry firearms.'

"Although California law requires openly carried firearms to remain unloaded, this does little to improve public safety, since state law also permits the carrying of ammunition. The ability to carry firearms and ammunition makes the distinction between loaded and unloaded weapons almost meaningless, as open carry advocates have boasted about their abilities to load their weapons in a matter of seconds."

3) Argument in Opposition: According to the National Rifle Association, "Should AB 144 pass, it will wreak havoc on CA's California's concealed weapons (CCW) permitting system. In most areas of California, CCW permits are rarely issued, and are a usually reserved for those with political clout and the wealthy elite. Because of this reality, 'open carrying' is the only method available to the overwhelming majority of law-abiding individuals who wish to carry a firearm for self-defense. Accordingly, by banning the open carrying of even unloaded firearms, AB 144 effectively shuts the door on the ability of law-abiding Californians to carry a firearm for self-defense at all.

"In fact, a recent 9th Circuit District Court decision expressly relied on the ability to 'open carry' as the basis for its decision to uphold the government's current policy denying CCW application unless the applicant demonstrates some special need or 'good cause' beyond that of general self-defense.

"In that case, *Peruta v. County of San Diego*, several Plaintiffs challenged the government's CCW permitting scheme. The suit alleged that the permitting scheme violated the Second Amendment because CCW applications are typically denied where the applicant identifies only a generalized self-defense need as the 'good cause' required by Cal. Pen. Code section 12050. And even though the Second Amendment requires the government to afford law abiding citizens the ability to 'bear' or 'carry' firearms for self-defense – without discretion as to who may be qualified to exercise that right – the Court ruled that the County's policy of requiring specific threats of harm, as opposed to general 'self-defense' need, did not violate the Second Amendment because the state *already* authorizes constitutional means of carrying a firearm for self-defense. That means of carry is found in section 12031, which permits the

carrying of an unloaded firearm that may be loaded by the individual in a self-defense emergency.

" '[A]s a practical matter, should the need for self-defense arise, nothing in section 12031[(j)] restricts the open carry of unloaded firearms and ammunition for instant loading.' . . . 'As a consequence, the Court declines to assume that section 12031 places an unlawful burden on the right to carry a firearm for self-defense…"

" '(Order Denying Plaintiff's Motion for Partial Summary Adjudication and Granting Defendant's Motion for Summary Judgment at 8:8-10, 8:21-22, *Peruta v. County of San Diego*, No. 09-2371 (S.D. Cal. 2010).'

"If not for the lawful ability to openly carry a firearm that may be loaded for self-defense, the County's entire CCW scheme of requiring 'good cause' beyond that of self-defense would have been ruled unconstitutional in *Peruta*."

REGISTERED SUPPORT / OPPOSITION:

Support

California Chapters of the Brady Campaign to Prevent Gun Violence
California Police Chiefs Association, Inc.
City of West Hollywood
Friends Committee on Legislation of California
Legal Community Against Violence
Peace Officer Research Association of California

Opposition

Bay Area Open Carry Movement
California Rifle and Pistol Association
Californians for Natural Rights
Capitol Resource Family Impact
Contra Costa Open Carry
Gun Owners of California
Intelligent Recycling Solutions
National Rifle Association
Responsible Citizens of California
South Bay Open Carry
131 private individuals

Analysis Prepared by: Gregory Pagan / PUB. S. / (916) 319-3744

# EXHIBIT 5

SENATE COMMITTEE ON JUDICIARY
Bill Lockyer, Chairman
1991-92 Regular Session

AB 1180 (Murray)
As amended July 17, 1992
Hearing date: July 28, 1992
Business and Professions, Penal Codes
GPS/elm

## CONCEALABLE FIREARMS

### HISTORY

Source: Author

Prior Legislation: AB 1904 (1991) - Chaptered
AB 582 (1983) - Chaptered

Support: Peace Officers Research Association of California; California Union of Safety Employees; California Rifle And Pistol Association

Opposition: No known

Assembly Floor vote: Ayes 55 - Noes 13

### KEY ISSUE

SHOULD LOCAL LAW ENFORCEMENT AUTHORITIES BE AUTHORIZED TO ISSUE A PERMIT PERMITTING A CONCEALABLE FIREARM TO BE CARRIED LOADED AND EXPOSED, IN ADDITION TO THE EXISTING PERMIT TO CARRY CONCEALED?

SHOULD THE PENALTY PROVISIONS REGARDING CARRYING A CONCEALABLE FIREARM ON THE PERSON OR IN A VEHICLE BE RECAST FOR PURPOSES OF CLARIFICATION, WITH THE BASIC PENALTY FOR CARRYING CONCEALED WITHIN A VEHICLE RAISED TO ONE YEAR IN COUNTY JAIL AS CURRENTLY PROVIDED FOR CARRYING CONCEALED ON THE PERSON?

SHOULD THOSE HOLDING A CONCEALED FIREARM PERMIT BE EXPRESSLY EXEMPT FROM PROVISIONS AGAINST CARRYING CONCEALED ON A PERSON OR IN A VEHICLE?

(More)

SHOULD THE VARIOUS EXEMPTIONS TO PROHIBITIONS AGAINST CARRYING WEAPONS NOW APPLICABLE TO RETIRED PEACE OFFICERS OF SPECIFIED CLASSES EXTEND TO ALL HONORABLY RETIRED PEACE OFFICERS?

SHOULD INDIVIDUALS HOLDING A CONCEALABLE FIREARMS PERMIT FROM ONE JURISDICTION BE PERMITTED TO APPLY FOR A PERMIT FROM ANOTHER JURISDICTION WITHOUT SUBMITTING A NEW SET OF FINGERPRINTS TO THE DEPARTMENT OF JUSTICE?

PURPOSE

Existing law generally establishes the conditions under which a concealable firearm may be carried. In most cases, a permit must be issued by the local sheriff or chief of police upon a showing of good cause and determination of good moral character; applications for licenses include identification of the applicant, his or her fingerprints, reasons for carrying, and a description of the weapons to be carried, which are forwarded to the Attorney General for background clearance (P.C. Sec. 12050).

Exemptions to the permit requirement are extensive, including active or specified retired police officers, members of the military, bank or common carrier guards, individuals in the course of an organized parade, sportsmen on the way to or from clubs or hunting or fishing expeditions, common carriers delivering firearm merchandise, and retired federal officers if approved by the local sheriff (P.C. Sec. 12027).

Carrying a concealed firearm on the person or in a vehicle without a permit or exemption, or in public if the firearm is loaded, constitutes a misdemeanor (P.C. Sec. 12025, 12031). While the standard penalty of up to six months in jail applies when the offense is carrying in a vehicle or carrying loaded, carrying on the person imposes a specific penalty of up to one year in jail. Higher penalties are provided for carrying with a prior felony, with a prior misdemeanor conviction for drugs or offenses against person or property; minimum mandatory jail time is imposed if priors involve assault, discharge or brandishing a weapon, or if the offense was committed while on probation.

This bill as amended proposes a series of clarifications and substantive adjustments to statutes relating to the carrying of concealable firearms, and to the permit process.

Until 1983, the basic penalties for carrying concealed on the person or in a vehicle were identical; however, AB 582 (O'Connell) of that year imposed a special one-year jail term for carrying on the person. This bill would re-equalize the penalties to the higher sentence, and would restructure the penalty provisions for greater clarity.

The permit which local law enforcement officers are authorized to issue is specific to carrying a pistol, revolver, or other firearm "concealed." This bill would additionally authorize the issuance of permits to carry "loaded and exposed."

Exemptions to the prohibition against carrying on the person or in a vehicle would be extended to all honorably retired peace officers authorized to carry during employment, to importers possessing or transferring firearms as merchandised, and to those holding a concealed weapons permit. The latter is essentially a clarification: under People v. Ross, 60 Cal.App. 163 (1922) and People v. Williams, 134 Cal.App.2nd 673, the existence of a permit is to be offered as a defense against a "carrying" charge. This bill would make the permit an exemption from the charge.

Under existing law, individuals applying for renewal of a concealable firearms permit from a particular jurisdiction are not required to resubmit a set of fingerprints if such are already on file with the Department of Justice. This bill would additionally exempt from the fingerprint requirement individuals holding a permit from one jurisdiction who seek a new permit from another if the prints are already on file.

This bill would make a number of technical changes in the interests of clarity, including changes in references to carrying concealed reflective of the establishment of a "loaded and exposed" category and more accurate grammatically.

The purpose of this measure is to clarify statute, simplify permit procedures, ensure sentence proportionality, and extend the right to carry firearms in meritorious situations.

COMMENT

1. An omnibus measure in the matter of carrying concealed

   This bill as extensively amended now poses few compelling public policy issues; its volume is primarily a function of the turgid structure of existing statute which SB 1740 (Lockyer) seeks to simplify. What is presented are a number of proposals from various groups similar only in their impact upon the matter of carrying concealable weapons.

2. Permits for carrying loaded and exposed addresses situations characteristic of rural areas

   Rural sheriffs note a constraint in existing law which they seek to remedy. The permit which law enforcement is authorized to issue involves carrying firearms "concealed." However, in the rural environment, many individuals do not seek to conceal

a firearm on the person or in a vehicle but to carry them loaded and openly. The "concealed" permit, which may allow an activity of perhaps greater significance to public safety, is not exactly appropriate to the situation. By authorizing a permit for "loaded and exposed," contortions of purpose and intent may be avoided.

3. Adjustments to penalty provisions raise questions as to increased sentence

Recasting the penalty provisions regarding the unlawful carrying of firearms is a laudable exercise. However, eliminating the six-month disparity in sentencing between carrying on the person and carrying in a vehicle raises a genuine issue. Regardless of whether the penalties were formerly equal, the question remains whether they should be equal.

At present the offense of carrying in a vehicle carries the lesser penalty of a six-month maximum; carrying on the person carries a year. If the penalties are to be equal, the fundamental consideration is proximity and accessibility. In both cases, does the potential for swift access pose an equal threat to public safety? Is carrying under a car seat any less dangerous than carrying in a pocket? If one believes that the potential for damage is equal in both cases, the adjustment proposed is appropriate.

One might also consider an upward adjustment for the misdemeanor of carrying loaded in a public place (P.C. Sec. 12031), currently a six-month offense. Carrying a loaded pistol on the street, even if not brandished, is surely as objectionable in terms of public safety as carrying a weapon within a car.

Perhaps these matters are moot in reality. Considering the overburdened condition of the local penal system, it is unlikely that the maximum sentences are ever imposed without notable extenuating circumstances.

4. Blanket exemptions for all honorably retired peace officers

Including all honorably retired peace officers in the exemptions pertaining to carrying firearms seems reasonable on its face; certainly, the vast majority are honorable people. Sufficient provisions exist to retract the privilege from those who prove otherwise. But a broad net is cast by this measure. Under the provisions now extended to full officers (e.g., police and sheriffs, highway patrol, state police) and correctional peace officers, it would be expanded to include retired regulatory investigators, park rangers, welfare fraud

investigators, school district police, etc., if they have previously been authorized to carry by their empowering agencies while active. This may increase significantly the number of individuals armed in public to the confusion of local law enforcement, which would not find them readily identifiable by virtue of the permit process.

5. <u>Accommodating permit holders who move to new locations</u>

Waiving the requirement that a new set of fingerprints be submitted by individuals holding a permit but seeking a new one from a different jurisdiction makes sense. Characteristically, the waiver would apply when individuals move their place of residence and seek renewal from a different sheriff. What is proposed is similar to the procedure now operative for renewal in the same county: prints on file, submittal of identification that would permit retrieval, etc.

********

(More)

STATE OF CALIFORNIA
OCJP 855 (4/92)

OFFICE OF CRIMINAL JUSTICE PLANNING

# ENROLLED BILL REPORT

| Department | Author | Bill Number |
|---|---|---|
| OFFICE OF CRIMINAL JUSTICE PLANNING | Murray | AB 1180 |

Summary

Will make a number of technical and conforming changes to the state's firearms statutes.

Specific Findings

Existing law specifies the conditions under which a concealable firearm may be carried.

Among other things, this bill will make two significant amendments to the Penal Code with respect to concealable firearms.

- Penal Code Section 12050 will allow sheriffs or police chiefs to issue a license to a person to enable that person to carry a "loaded and exposed" pistol, revolver, or other firearm capable of being concealed upon the person. This provision will only apply to counties with populations of less than 200,000 persons according to the most recent federal decennial census.

- Penal Code Section 12052 will specify that if a firearm license applicant has previously had his or her fingerprints forwarded to the Department of Justice (DOJ), no additional fingerprints will be needed. This will eliminate the submission of a new set of fingerprints to DOJ for the renewal of a concealable firearms permit.

This bill will also make other conforming changes to simplify various firearms statutes.

Lastly, AB 1180 contains double-joining language that incorporates amendments proposed by both AB 3552 and AB 2917. If AB 3552 becomes law, the act of importing and wholesaling will be added to the concealed weapons exempt list. If AB 2917 becomes law, it will require that additional information regarding a firearms license applicant be furnished to the licensing authority, as specified.

Recommendation

SIGN

| Legislative Analyst | Date | Deputy Director | Date |
|---|---|---|---|
| KATHY MCKEEVER | 9/25/92 | [signature] | 9-28-92 |

| Executive Director | Date |
|---|---|
| [signature] | 9-28-92 |

Analysis

The majority of this bill deals with technical and conforming changes to accommodate the new "loaded and exposed" permit provision. The only other significant provision of this bill will remove the requirement that another set of fingerprints be taken when a permit holder seeks to renew or reissue a "carry" permit in another jurisdiction. This change does not appear to be of concern since DOJ already has the person's fingerprints on file.

According to the California Peace Officers Association, there were several Northern County sheriffs who pursued this measure in order to enable cattle ranchers to carry concealable firearms in a "loaded and exposed" manner.

The Department of Justice has no major concerns regarding the provisions of this bill.

Fiscal Findings

This is a non-fiscal bill; there are no known costs that will be associated with the implementation of this legislative change.

Appropriation: No State-Mandated Local Program: No

Support

Peace Officers Research Association of California
California Union of Safety Employees
California Rifle and Pistol Association

Opposition

Unknown

Status

- 3/06/91 Introduced
- 5/08/91 Passed by Assembly Committee on Consumer Protection, Governmental Protection, Governmental Efficiency (8-2)
- 6/14/91 Passed by Assembly Committee on Ways and Means (18-1)
- 6/18/91 Passed by Assembly (55-13)
- 7/28/92 Passed by Senate Committee on Judiciary (6-0)
- 8/13/92 Passed by Senate Floor (26-4)
- 8/20/92 Passed by Assembly Floor, Concurrence (62-2)

Recommendation

The Office of Criminal Justice Planning recommends that AB 1180 be **signed.** This measure appears to simply make technical and conforming changes to the state's existing firearms statutes, the most significant of which will enable a person to carry a "loaded and exposed" pistol, revolver, or other concealable weapon in counties with populations of less than 200,000.