COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BAIRD and RICHARD GALLARDO, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10, <br><br> Defendants. | Case No. 2:19-CV-00617-KJM-AC <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:  October 21, 2022 <br> Time:  10:00 a.m. <br> Courtroom:  3 <br> Judge:  Hon. Kimberly J. Mueller <br> Trial Date:  None set <br> Action Filed:  April 9, 2019 |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................... i

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................ 2

LEGAL STANDARD .......................................................................................... 3

LEGAL ARGUMENT ......................................................................................... 3

I. PLAINTIFFS HAVE A SUBSTANTIALLY HIGH LIKELIHOOD OF SUCCESS................. 4

    A. Carrying Weapon in Public for Self-Defense is a "Guaranteed Individual Right"............ 4

    B. Penal Codes §§ 25850 and 26350 Absolutely Prohibit Protected Activity........................ 4

    C. Bruen Mandates the Test to Be Applied to Second Amendment Challenges ..................... 5

    D. Penal Codes §§ 25850, 26350 Cannot Survive the Bruen Test ........................................ 6

    E. The Ninth Circuit's Holding in *Peruta II* Supports Plaintiffs' Position.............................. 7

    F. Sacramento Superior Court Supports Plaintiffs' Position ................................................ 7

II. PLAINTIFFS ARE SUFFERING, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM ................................................................................ 8

III. BALANCING THE EQUITIES FAVORS PLAINTIFFS ..................................................... 10

IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC'S INTEREST ............................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Municipal Court,*
   73 Cal.App.3d 596 (1977) ................................................................................. 8

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) .......................................................................... 4

*Am. Trucking Associations, Inc. v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) .......................................................................... 9

*Arizona Dream Act Coalition v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014) .......................................................................... 3

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey,*
   910 F.3d 106 (3d Cir. 2018), abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   142 S. Ct. 2111 (2022) ..................................................................................... 6

*Bay Area Addiction Research and Treatment, Inc. v. City of Antioch,*
   179 F.3d 725 (9th Cir. 1999) ......................................................................... 3, 4

*Citizens United v. Fed. Election Comm'n,*
   558 U.S. 310 (2010) ......................................................................................... 5

*County of Santa Clara v Trump,*
   250 F Supp 3d 497 (ND Cal 2017) .................................................................. 9

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) .................................................................................. 4, 5, 7

*Duncan v Bonta,*
   265 F Supp 3d 1106, 1128, 1135-1136 (SD Cal 2017) ), aff'd *Duncan v Bonta,* 742 F App'x
   218, 222 (9th Cir 2018)......................................................................... 9, 10, 11

*Ezell v City of Chicago,*
   651 F3d 684 (7th Cir 2011) ............................................................................ 10

*Faison v. Jones,*
   440 F. Supp. 3d 1123 (E.D. Cal. 2020) ........................................................... 3

*Freedman v. Maryland,*
   380 U.S. 51 (1965)........................................................................................... 8

*GoTo.com, Inc. v. Walt Disney Co.,*
   202 F.3d 1199 (9th Cir. 2000) ...................................................................... 3, 4

i

**TABLE OF AUTHORITIES (con't)**

Page(s)

**Cases**

*Grace v. District of Columbia*,
    187 F. Supp. 3d 124 (DDC 2016) ................................................................ 10

*Harley v. Wilkinson*,
    988 F. 3d 766 (4th Cir. 2021) ...................................................................... 6

*Harman v. City of Santa Cruz, California*,
    261 F. Supp. 3d 1031 (N.D. Cal. 2017) ......................................................... 4

*Hernandez v Sessions*,
    872 F3d 976 (9th Cir 2017) ......................................................................... 3

*Hobby Lobby Stores, Inc. v. Sebelius*,
    723 F.3d 1114 (10th Cir. 2013) .................................................................... 11

*Jones v Grant County*,
    2012 US Dist LEXIS 157070, at *22-23 [ED Wash Oct. 31, 2012, No. CV-12-0188-EFS] ...... 9

*Kanter v. Barr*,
    919 F.3d 437 (7th Cir. 2019) ...................................................................... 6

*Kolbe v. Hogan*,
    849 F. 3d 114 (4th Cir. 2022) ...................................................................... 6

*Leiva–Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ...................................................................... 4

*Libertarian Party of Erie County v. Cuomo*,
    970 F.3d 106 (2d Cit. 2022) ......................................................................... 6

*McCormack v. Hiedeman*,
    694 F.3d 1004 (9th Cir. 2012) .................................................................... 3

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ...................................................................... 9

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ................................................................................. 9

*National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
    700 F.3d 185 (5th Cir. 2012) ...................................................................... 6

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) ......................................................................... Passim

**TABLE OF AUTHORITIES (con't)**

**Page(s)**

**Cases**

*Peruta v County of San Diego*,
824 F3d 919 (9th Cir 2016) .......................................................................................... 7

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ..................................................................................... 9

*Shuttlesworth v. City of Birmingham, Ala.*,
394 U.S. 147 (1969)...................................................................................................... 8

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981)...................................................................................................... 4

*Worman v. Healey*,
922 F.3d 26 (1st Cir. 2019)........................................................................................... 6

**Other Authorities**

42 Am. Jur. 2d Injunctions § 5 (2017) ........................................................................... 3

**INTRODUCTION**

In *NYSRPA v. Bruen*, the Supreme Court reaffirmed that the right to carry firearms outside of the home is protected by the Second and Fourteenth Amendments. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

> "In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Bruen*, 142 S. Ct. at 2122.[1]

Laws that criminalize the mere possession of firearms outside of the home are, therefore, unconstitutional.

California Penal Codes §§ 25850 and 26350 criminalize the mere possession of firearms outside of the home for self-defense. Ordinary citizens, like Plaintiffs, cannot lawfully carry a firearm in public for self-defense without risking arrest, prosecution, incarceration, and fines.

Sections 25850 and 26350 are unconstitutional, facially and as applied to Plaintiffs. Facially, because the challenged regulations criminalize the exercise of a guaranteed right. See, *Bruen*, supra. As applied, because even if it has some application consistent with the Second Amendment, when applied to ordinary citizens with no prohibitors to the possession, purchase, transfer, or receipt of firearms, like Plaintiffs and most other Californians, the regulations violate their Second Amendment rights.

Under either scenario, the State's criminalization of conduct plainly protected by the Second Amendment ("keep and bear arms") violates the Second and Fourteenth Amendments to the U.S. Constitution and must be enjoined.

The challenged regulations are causing irreparable harm to the constitutional rights of Plaintiffs and all other ordinary Californians; without the requested relief, they will continue to suffer irreparable harm.

---

[1] Nothing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms. *Bruen*, 142 S. Ct. at 2134.

1

**FACTUAL BACKGROUND**

In California, the possession of a handgun in one's home is lawful. An average citizen who steps outside of his home armed with a handgun for self-defense, loaded or unloaded, risks arrest, incarceration, prosecution, fines, and other criminal penalties.

Under Penal Code § 25850, a person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while <u>in any public place</u> or <u>on any public street</u> in an incorporated city or in a prohibited area of unincorporated territory.

Section 25850 also allows the police the unfettered ability to stop an individual to inspect their firearm to determine whether the firearm is or is not loaded; refusal to allow a peace officer to inspect a firearm constitutes probable cause for arrest.

Under § 26350, a person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in a <u>public place or public street</u> in an incorporated city or city and county, a <u>public street</u> in a prohibited area of an unincorporated area of a county or city and county, or a <u>public place</u> in a prohibited area of a county or city and county.

Plaintiffs Mark Baird and Richard Gallardo are residents of Siskiyou County and Shasta County, California who carry, and intend to carry, a firearm open and exposed on their person, outside of their home for self-defense. Neither Plaintiff has a prohibitor/disqualification to the possession or purchase of firearms under state or federal law. Like many other similarly situated Californians - average, ordinary citizens - Plaintiffs are prevented from the free exercise of their right to open carry in public by the existence, by Defendant Bonta's enforcement, of Penal Codes §§ 25850 and 26350. [See, Declarations of Mark Baird and Richard Gallardo[2]].

Plaintiffs seek an order enjoining the enforcement of Penal Codes §§ 25850 and 26350 against individuals for carrying a handgun open and exposed, loaded or unloaded, for self-defense in public throughout the State of California. Without the requested injunctive relief, Plaintiffs and all similarly situated Californians will continue to suffer irreparable harm.

---

[2] The factual details supporting the instant application can be found in the accompanying Declarations of Mark Baird and Richard Gallardo support of their third motion for a preliminary injunction, which are incorporated fully herein by reference.

**LEGAL STANDARD**

To obtain a preliminary injunction a plaintiff must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Hernandez v Sessions*, 872 F3d 976, 989-990 (9th Cir 2017) (internal quotations and citations omitted). Under our "sliding scale" approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *Id.* (citations and quotations omitted).

**LEGAL ARGUMENT**

A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits. *Faison v. Jones*, 440 F. Supp. 3d 1123, 1131 (E.D. Cal. 2020). See, e.g., *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1060–61 (9th Cir. 2014) (holding that an injunction against enforcement of a likely unconstitutional state policy was prohibitory rather than mandatory); *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 728, 732 n.13 (9th Cir. 1999) (holding that an injunction against enforcement of a local ordinance that likely violated federal law was prohibitory rather than mandatory); *McCormack v. Hiedeman*, 694 F.3d 1004, 1009, 1020, 1022 (9th Cir. 2012) (affirming a preliminary injunction barring enforcement against the plaintiff of a longstanding Idaho anti-abortion criminal statute); 42 Am. Jur. 2d Injunctions § 5 (2017) ("An injunction is considered prohibitory when the thing complained of results from present and continuing affirmative acts and the injunction merely orders the defendant to refrain from doing those acts.").

The "status quo ante litem" refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy. *Faison*, at 1131 citing, *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). A plaintiff seeking a prohibitory injunction, rather than a mandatory injunction, does not have a heightened burden of proof. *Id.*

Serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that

3

there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* citing, *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). This articulation represents "one alternative on a continuum" under the "sliding scale" approach to preliminary injunctions employed by the Ninth Circuit. *Id.*

## I. PLAINTIFFS HAVE A SUBSTANTIALLY HIGH LIKELIHOOD OF SUCCESS

To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to prove his case in full or show that he is more likely than not to prevail. *Harman v. City of Santa Cruz, California*, 261 F. Supp. 3d 1031, 1041 (N.D. Cal. 2017) quoting, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (internal quotation marks omitted). Rather, the moving party must demonstrate a fair chance of success on the merits or raise questions serious enough to require litigation. *Id.*

Plaintiffs have a high probability of succeeding on the merits of their claims. The Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home. *Bruen*, 142 S. Ct. at 2122. Imposing criminal sanctions upon citizens for the mere exercise of the right to possess and carry firearms for self-defense their constitutional rights.

A. Carrying Weapon in Public for Self-Defense is a "Guaranteed Individual Right"

In *Bruen*, the Supreme Court reiterated that the right to possess and carry weapons for self-defense is a "guaranteed individual right."

> "As we explained in *Heller*, the textual elements of the Second Amendment's operative clause - the right of the people to keep and bear Arms, shall not be infringed - **guarantee** the **individual right** to **possess and carry weapons** in case of confrontation. 554 U.S. at 592, 128 S.Ct. 2783. *Heller* further confirmed that the right to bear arms refers to the right to wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person."

*Ibid*. (emphasis added) (internal citations and quotation marks omitted).

B. Penal Codes §§ 25850 and 26350 Absolutely Prohibit Protected Activity

"The Second Amendment's plain text thus presumptively guarantees [the plaintiffs] a right

4

to 'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135. "When the Second Amendment's plain text covers an individual's conduct, the Constitution <u>presumptively protects that conduct</u>." *Id.* at 2129–30. (emphasis added). "[O]ur earlier historical analysis sufficed to show that the Second Amendment did not countenance a "complete prohibition" on the use of "the most popular weapon chosen by Americans for self-defense…" *Bruen*, at 2128 quoting *Heller*, at 629.

Plaintiffs are <u>presumptively guaranteed</u> the right to carry a firearm in public for self-defense.

Penal Codes §§ 25850 and 26350 are "outright bans, backed by criminal sanctions." C.f., *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 337 (2010) ("If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech.").

Criminalizing the exercise of the guaranteed right to carry a firearm in public for self-defense violates the Second and Fourteenth Amendments.[3]

C. <u>*Bruen* Mandates the Test to Be Applied to Second Amendment Challenges</u>

Flatly rejecting the test applied in the Ninth Circuit, the Supreme Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment:

> "We reiterate that the standard for applying the Second Amendment is as follows:
>
> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller's* historical approach and its rejection of means-end scrutiny.") (citation omitted).[4]

---

[3] The existence of a licensing scheme and/or exemptions to the challenged criminal statutes, is no basis to deny Plaintiff's motion; there is also no longstanding American history or tradition of requiring citizens to seek and obtain the permission of the government before exercising the individual right to carry a firearm for self-defense, nor does the plain text of the Second Amendment, which mandates that it "shall not be infringed", permit any such encroachment.

[4] Abrogating *Harley v. Wilkinson*, 988 F. 3d 766, *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, *Worman v. Healey*, 922 F.3d 26, *Kanter v. Barr*, 919 F.3d 437, *Association of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney General New Jersey*, 910 F.3d 106, *Kolbe v. Hogan*, 849 F. 3d 114, *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185.

5

D. Penal Codes §§ 25850, 26350 Cannot Survive the *Bruen* Test

Defendant Bonta has an affirmative obligation to prove that §§ 25850 and 26350 are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2126. Only then may a court conclude that Plaintiffs' conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2126-2127. ("the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

Defendants cannot meet that burden. The challenged regulations fail because there is no American historical tradition of imposing criminal sanctions for the open carriage of handgun. Indeed, even California has no historical tradition of criminalizing open carry or even requiring individuals to seek and obtain permission from a government employee through a licensing scheme. The free exercise of the right to open carry existed in California for close to 120 years. It was not until modern times - 1967 – that the Mulford Act outlawed carrying a loaded firearm in public. Open carry of an unloaded handgun was not banned until 2012.

Sections 25850 and 26350 are contemporary control measures that fly in the face of the plain text of the Second Amendment. "[Where] later history contradicts what the text says, the text controls. *Bruen*, 142 S. Ct. at 2137.

Sections 25850 and 26350 also improperly turn the entire state into a 'sensitive place' where no firearms can be possessed for self-defense.[5] See, *Bruen*, at 2134 ("But expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly.").

"Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." Bruen, at 2136 citing, *Heller*, 554 U.S. at 634–635 (emphasis supplied). "The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Bruen*, 142 S. Ct. at 2136.

---

[5] California Penal Codes §§ 25850 and 26350 ban the possession of a firearm in a public place or public street in an incorporated city or city and county, a public street in a prohibited area of an unincorporated area of a county or city and county, or a public place in a prohibited area of a county or city or county.

Defendant Bonta cannot meet his affirmative obligation to prove that Penal Codes §§ 25850 and 26350 are "consistent with the Nation's historical tradition of firearm regulation." Only history and tradition – not public safety, means-end, or interest-balancing[6] – can establish the constitutionality of a government regulation.

E. The Ninth Circuit's Holding in *Peruta II* Supports Plaintiffs' Position

In *Peruta II*, an *en banc* decision of the Ninth Circuit held that the concealed carriage of a handgun is a "privilege" not a "right" protected by the Second Amendment. *Peruta v County of San Diego*, 824 F3d 919, 939 (9th Cir 2016) (*Peruta II*) ("any prohibition or restriction a state may choose to impose on concealed carry - including a requirement of good cause, however defined - is necessarily allowed by the [Second] Amendment.").

*Peruta II* was not abrogated by *Bruen*. This is so because during the relevant time period annunciated in *Heller*, *McDonald*, and *Bruen*, "concealed carry" was regulated, whereas the free exercise of open carry in public was accepted.

Unlike *Peruta II*, the Ninth Circuit's *en banc* holding in *Young v Hawaii*[7] - that there is no preexisting individual right to open carry – was abrogated, and vacated, by *Bruen*. Clearly, the right to open carry is deeply engrained in America's history and tradition, unlike the later-regulated concealed carry.

F. Sacramento Superior Court Supports Plaintiffs' Position

So far, at least one California Superior Court has sustained the demurrer of felony firearm charges post-*Bruen*. In *People v. Tony Diaz*, (Case No. 21FE019850, Sup. Ct. Sacramento), defendant was one of three individuals in a vehicle smoking marijuana when they were contacted by law enforcement. Defendant was patted down and a loaded unregistered handgun was found in his waistband. Officers also located a key on defendant's person, which opened a safe that contained

---

[6] Defendant's position throughout this action has been rooted in 'means-end', public safety arguments – which were explicitly and flatly rejected in *Bruen* – as it was previously rejected in *Heller* and *McDonald* - and can longer be used to justify a challenged regulation. *Bruen*, 142 S. Ct. at 2127 ("…*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

[7] *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021), cert. granted, judgment vacated, No. 20-1639, 2022 WL 2347578 (U.S. June 30, 2022), and abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, No. 20-843, 2022 WL 2251305 (U.S. June 23, 2022).

two more unregistered firearms, one of which was reported stolen. The defendant was charged with violating Penal Codes §§ 25850 and 25400. (See attached Order Sustaining Demurrer).

The defendant filed a demurrer challenging the charges, arguing that under *Bruen*, §§ 25850 and 25400 are "no longer public offenses." Hon. Steve White agreed and sustained the demurrer.

Judge White found that the People's argument that 25850 and 25400 are 'constitutional' was "impossible to square with the statute's plain language" particularly because § 25850 "subjects anyone in a public place carrying a loaded firearm on the person or in a vehicle to criminal prosecution. This amounts to a total ban on public carry", which "cannot survive *Bruen's* holding that public carry is presumptively legal." (see attached).

According to Judge White, the "[d]efendant may exercise his right with impunity." Relying on *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147 (1969), *Freedman v. Maryland*, 380 U.S. 51 (1965), and at least one California appellate court, *Aaron v. Municipal Court*, 73 Cal.App.3d 596 (1977), Judge White held that "an individual cannot be prosecuted for exercising a constitutionally protected right." While those cases involved First Amendment violations, "there is no reason to believe these holdings do not apply when the Second Amendment is at issue. As *Bruen* stated: The constitutional right to bear arms in public for self-defense is not a 'second-class right, subject to an entirely different body of rules than other Bill of Rights Guarantees'." (see attached).

Plaintiffs have demonstrated a substantially high probability of success on the merits of their Second and Fourteenth Amendment claims.

**II. PLAINTIFFS ARE SUFFERING, AND WILL CONTINUE TO SUFFER, IRREPARABLE HARM**

The Ninth Circuit has repeatedly held that the deprivation of constitutional rights "unquestionably constitutes irreparable injury". *County of Santa Clara v Trump*, 250 F Supp 3d 497, 537-538 (ND Cal 2017), quoting, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury.") citing, *Elrod v Burns*, supra; *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013); see also *Jones v*

1    *Grant County*, 2012 US Dist LEXIS 157070, at \*22-23 [ED Wash Oct. 31, 2012, No. CV-12-0188-

2    EFS]) ("[I]t is axiomatic that any constitutional violation causes harm; in fact, in the context of

3    injunctive relief, irreparable harm is presumed if a violation of the Constitution is shown.").

4       "A plaintiff can suffer a constitutional injury by being forced to comply with an

5    unconstitutional law or else face…enforcement action." *Am. Trucking Ass'ns, Inc. v. City of Los*

6    *Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009).

7       The Supreme Court has similarly indicated that plaintiffs suffer irreparable injury under

8    such circumstances. See *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 380-381, 112 S. Ct.

9    2031, 119 L. Ed. 2d 157 (1992) (injunctive relief was available where "respondents were faced

10    with a Hobson's choice: continually violate the Texas law and expose themselves to potentially

11    huge liability; or violate the law once as a test case and suffer the injury of obeying the law during

12    the pendency of the proceedings and any further review").

13       The loss of Second Amendment rights constitutes irreparable injury. *Duncan v Bonta*, 265

14    F.Supp 3d 1106, 1135. "The right to keep and bear arms protects tangible and intangible interests

15    which cannot be compensated by damages…The right to bear arms enables one to possess not only

16    the means to defend oneself but also the self-confidence — and psychic comfort — that comes with

17    knowing one could protect oneself if necessary…Loss of that peace of mind, the physical

18    magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury."

19    *Duncan*, 265 F Supp 3d at 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150

20    (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of

21    this right cannot be compensated by damages.")

22       Sections 25850 and 26350 violate the right to bear arms for self-defense, forcing ordinary

23    citizens to choose between exercising a protected right and suffering criminal penalties. Plaintiffs

24    and all similarly situated people are suffering, and will continue to suffer, irreparable harm without

25    the requested injunctive relief. Enjoining Penal Codes §§ 25850 and 26350 will restore the citizens

26    of California to the Constitutionally aligned position that existed prior to the Mulford Act of 1967.

27

28

**III. BALANCING THE EQUITIES FAVORS PLAINTIFFS**

Defendant's enforcement of criminal penalties against average citizens for merely exercising a protected and guaranteed constitutional right <u>sharply</u> tips the balance of equities in favors of Plaintiffs.

"Statutes disarming law-abiding responsible citizen gun owners reflect an opinion on gun policy. Courts are not free to impose their own policy choices on sovereign states. But as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate. Disarming California's law-abiding citizenry is not a constitutionally-permissible policy choice." *Duncan v Bonta*, 265 F Supp 3d 1106, 1128, 1135-1136 (SD Cal 2017) ), aff'd *Duncan v Bonta*, 742 F App'x 218, 222 (9th Cir 2018).

Notwithstanding the 'balancing of equities' factor, the Supreme Court in *Heller*, *McDonald*, and *Bruen* <u>flatly rejected</u> "interest balancing" in the context of Second Amendment challenges.

**IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC'S INTEREST**

Enjoining the enforcement of §§ 25850 and 26350 against individuals for carrying a firearm, loaded or unloaded, open and exposed in public is in the best interests of the citizens of California – the very individuals who, along with the rest of the American citizenry, the Second Amendment was created to protect.

"Once an applicant satisfies the first two factors [likelihood of success on the merits and irreparable harm], the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." *Duncan*, 265 F Supp 3d at 1136 (citations omitted).

Plaintiffs and all other similarly situated individuals are suffering irreparable harm by the criminalization of open carry – a historically unregulated protected right. A preliminary injunction is in the *public's* best interests because it will restore the right of Californian citizens to openly carry a firearm in public for self-protection without the threat of being criminally prosecuted for exercising that right.

The public interest favors the exercise of Second Amendment rights by non-prohibited citizens. And it is always in the public interest to prevent the violation of a person's constitutional

10

rights. *Duncan*, 265 F Supp 3d at 1136 citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014).

WHEREFORE, it is respectfully requested that an order be issued enjoining defendant Bonta, his agents, and those who have actual notice of the same from the enforcement of Penal Codes §§ 26350 and 25850 against individuals who carry a handgun open and exposed in public throughout the State of California during the pendency of this action.

Dated:  August 8, 2022

Respectfully submitted,

THE BELLANTONI LAW FIRM, PLLC

/s/ Amy L. Bellantoni, Esq.
Amy L. Bellantoni
Counsel for Plaintiffs
Email: abell@bellantoni-law.com
*Pro Hac Vice*

11

1
2
3
4
5
6
7

FILED/ENDORSED

JUL 27 2022

By J. Bredberg, Deputy Clerk

8                    **SUPERIOR COURT OF CALIFORNIA**

9                        **COUNTY OF SACRAMENTO**

10

11   The People of the State of California,

         Plaintiff,                          Case No. 21FE019850   Dept. 40
12
     v.                                      **ORDER SUSTAINING DEMURRER**
13
     **TONY DIAZ,**
14
         Defendant.
15

16          The defense demurs to four felony firearm charges, including three alleged violations of

17   Penal Code section 25400, subdivision (a)(3)[1] and one alleged violation of section 25850,

18   subdivision (a). After careful review, the Court concludes the demurrer must be sustained.

19                                      *I. Introduction*

20          The facts of the case are largely irrelevant to the legal analysis, so the Court will provide

21   only a brief synopsis.

22          Defendant was one of three individuals in a vehicle smoking marijuana when they were

23   contacted by law enforcement. Defendant was patted down and a loaded unregistered handgun

24   was found in his waistband. Officers also located a key on defendant's person. The key opened a

25   safe that contained two more firearms. Both were unregistered and one was reported stolen.

26

27

28   _____
     [1] All future statutory references are to the Penal Code unless otherwise noted.

                                                    1

1

*II. The Demurrer and the People's Response*

2          On July 11, 2022, the defense filed a demurrer challenging the charges. The defense

3   maintains that in light of *New York State Rifle & Pistol Assoc., Inc. v. Bruen* (2022) 142 S.Ct.

4   2111 (*Bruen*), violations of sections 25400 and 25850 are no longer public offenses. (§ 1004,

5   subd. (4).) The defense maintains *Bruen* invalidated California's concealed carry licensing

6   statutes (§§ 26150, 26155), meaning individuals can no longer be punished for concealed carry of

7   a firearm. Critically, the defense argues an individual need not have attempted to obtain a

8   concealed carry license before invoking *Bruen*. The People disagree.

9          The People make several arguments that attempt to distinguish *Bruen* and demonstrate the

10   defense's interpretation of *Bruen* is overbroad. The People argue that, under *Bruen*, a state may

11   impose statutory prohibitions so long as those prohibitions do not "altogether prohibit the *public*

12   carry of arms protected by the Second Amendment or state analogues." (Peop. Resp. at p. 5 citing

13   *Bruen*.) The People then point out that sections 25400 and 25850 do not "contain any language

14   regarding a licensing scheme" and that section 25400 prohibits various forms of concealed carry

15   but that *Bruen* was concerned with "licensing scheme that involved public or open carry laws."

16   The People contend section 25850 is still valid because "it does not ban, altogether, public carry."

17   The People go on to cite pre-*Bruen* cases holding sections 25400 and 25850 are constitutional.

18   Finally, the People maintain defendant is not the "law-abiding" citizen that *Bruen* approved for

19   public carry.

20

*III. California's Public Carry Laws*

21          Section 25400, read by itself, completely prohibits carrying a concealed firearm in a

22   vehicle or on one's person. The offense is either a misdemeanor or a felony depending on the

23   circumstances. Section 25850, read by itself, completely prohibits carrying a loaded firearm on

24   one's person or in a vehicle "while in any public place." Like section 25400, the offense is a

25   misdemeanor or a felony depending on the circumstances. Per sections 25655 and 26010, an

26   individual may, however, avoid prosecution for these offenses by obtaining a license under

27   section 26150 or section 26155.

28          Sections 26150 and 26155 outline the requirements for obtaining a concealed carry

2

1     license.[2] The two statutes are essentially identical with one (§ 26150) applying when the sheriff is

2     the licensing authority and the other (§ 26155) applying when the city chief of police is the

3     licensing authority. For the remainder of this order the Court will refer to section 26150 as the

4     relevant statute. To obtain a license an applicant must meet four criteria:

5          (1)     The applicant is of good moral character;

6          (2)     Good cause exists for issuance of the license;

7          (3)     The applicant is a resident of the county, or the applicant's principal place of

8                  employment is in the county and the applicant spends a substantial period of time

9                  in that place of employment;

10         (4)     The applicant has completed a course of training as described in Section 26165.

11     Compliance with section 26150 is the only legal means by which the majority of

12     individuals can legally carry a concealed firearm[3].

13                *IV. Bruen and its Effect on California Law*

14                         *a. Bruen*

15     *Bruen* holds that the "Second and Fourteenth Amendments protect an individual's right to

16     carry a handgun for self-defense outside the home." (*Bruen, supra,* 142 S. Ct. at p. 2122.) The

17     "Second Amendment's plain text [] presumptively guarantees" the right to " 'bear' arms in public

18     for self-defense." (*Id.* at p. 2635.) The decision allows for objective regulations only if they are

19     "consistent with the Nation's historical tradition of firearm regulation." (*Id.*)

20     *Bruen* addressed New York's concealed carry licensing law, which required an applicant

21     to convince a licensing officer that he is "of good moral character" and that "proper cause" exists

22

---

23   [2] Sections 26150 and 26155 provide a narrow exception that allows open carry in counties with populations under 200,000 people. Other than this exception, open carry is completely banned in California.

24   [3] Obtaining a license under section 26150 is not the *only* exemption from prosecution for carrying a concealed

25   firearm. Other exemptions, however, depend on a person's place of employment, or the activity they are engaged in. For the vast majority of individuals, compliance with section 26150 is their only legal path to exercising their right to public carry. (§ 25620 [members of the Armed Forces permitted to public carry when on duty] § 25645

26   [transportation of unloaded firearms permitted for a person operating a licensed common carrier]; § 25640 [licensed hunters and fisherman permitted to carry concealed weapon while engaged in hunting or fishing]; § 25630

27   [exemption for any guard or messenger of any common carrier, bank, or other financial institution].)

28

1   to issue it. An individual caught with a concealed firearm and without a license, was punishable

2   by four years in prison for a felony or one year in jail for a misdemeanor. Possession of a loaded

3   firearm without a license was punishable by up to 15 years in prison. The two petitioners in *Bruen*

4   each sought a license to carry a concealed weapon and each was denied. The petitioners sued for

5   declaratory and injunctive relief, alleging New York's statute violated the Second Amendment by

6   denying their license applications on the basis that they had failed to show "proper cause."

7   (*Bruen, supra,* at pp. 2122-2126.) The Supreme Court agreed.

8          The Court began its analysis by rejecting the two-step approach appellate courts had taken

9   to analyze firearm regulations in the wake of *District of Columbia v. Heller* (2008) 554 U.S. 570

10  (*Heller*) and *McDonald v. City of Chicago* (2010) 561 U.S. 742. The specifics of the two-step

11  approach are not relevant here. Suffice it to say, the Court rejected the two-step analysis and

12  concluded that to justify a regulation of the Second Amendment, the state must demonstrate that

13  the regulation "is consistent with this Nation's historical tradition." Only then, will the

14  individual's conduct fall "outside the Second Amendment's 'unqualified command.' [Citation.]"

15  (*Bruen, supra,* at p. 2126.) The Court then conducted a painstaking review of historical firearm

16  regulations. At the end of their journey, the Court concluded New York did not meet "their

17  burden to identify an American tradition justifying the State's proper-cause requirement." (*Id.* at

18  p. 2156.) The Court stated, "we know of no other constitutional right that an individual may

19  exercise only after demonstrating to government officers some special need." (*Id.*) Though it

20  struck down New York's licensing statute, the Court made it clear that regulations consistent with

21  historical precedent are permitted.

22                              *b. Effect on California Law*

23          California's concealed carry licensing scheme is the same as New York's. *Bruen*

24  specifically identified California as one of seven states (including New York) that utilize a

25  "proper cause" standard. (*Bruen, supra,* 142 S. Ct. at p. 2124.) In a "Legal Alert," the California

26  Attorney General expressed his view that "that the Court's decision renders California's 'good

27  cause' standard to secure a permit to carry a concealed weapon in most public places

28                                          4

1  unconstitutional." [4] The Attorney General also states he believes the other requirements of section

2  26150 remain valid and recommends licensing authorities should "continue to apply and enforce

3  all other aspects of California law with respect to public-carry licenses and carrying of firearms in

4  public." The Legislature is currently considering a bill that would amend California's licensing

5  scheme to comply with *Bruen*. (Sen. Bill 918, 2021-2022 Reg. Sess.)

6                                      *V. Discussion*

7                                *a. The People's Arguments*

8         The Court recognizes that *Bruen* addressed a licensing statute, but the demurrer challenges

9  a punishment/criminal statute. But the People's attempt to separate the licensing scheme from the

10  criminal statutes is untenable. The licensing scheme (§ 26150) and criminal statutes (§§ 25400,

11  25850) are two sides of the same coin. Charging a violation of either section 25400 or 25850 is

12  implicitly and functionally an allegation that the defendant failed to comply with section 26150.

13  When the licensing statute and criminal statutes are considered together, and in light of the

14  caselaw cited by defense, the defendant cannot be punished for exercising his right to public

15  carry.

16         *Bruen* unequivocally holds that public carry is *presumptively legal*. States may regulate

17  public carry, but the regulation must be rooted in our Nation's history of gun regulation as

18  interpreted by *Bruen*. If the regulation is not constitutional, then the state returns to the default

19  position – that public carry is legal, at least until the unconstitutional portions of the licensing

20  scheme are excised or amended. The People's arguments do not counter this conclusion.

21         The Court identified five arguments in the People's response. First, the People contend

22  section 25400 "specifically prohibits various forms of *concealed* carry," but that *Bruen* "was

23  concerned with a licensing scheme that involved public or open carry laws." (Peop. Resp. at p. 5

24  (Italics in original).) The People are incorrect.   The opening paragraphs of *Bruen* cite the New

25  York law prohibiting concealed carry. The Court observed: "If he wants to carry a

26  firearm outside his home or place of business for self-defense, the applicant must obtain an

27

28  [4] The Legal Alert can be found at https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf

1   unrestricted license to 'have and carry' a *concealed* 'pistol or revolver.' § 400.00(2)(f). To secure

2   that license, the applicant must prove that 'proper cause exists' to issue it." (*Bruen, supra,* 142 S.

3   Ct. at p. 2123 (Italics added).) Clearly, *Bruen* is as applicable to laws related to concealed carry as

4   it is laws concerning open carry.

5       Related to their first argument, the People's second argument posits that section 25850 "is

6   also appropriate under the *Bruen* analysis as it does not ban, altogether, public carry. Therefore,

7   contrary to Defendant's best efforts to incorrectly expand *Bruen*, Penal Code sections 25400 and

8   25850 are constitutional statutory prohibitions." (Peop. Resp. at p. 5.) This argument is

9   impossible to square with the statute's plain language. Section 25850 subjects anyone in a public

10   place "carrying a loaded firearm" on the person or in a vehicle to criminal prosecution. This

11   amounts to a total ban on public carry. The validity of the statute depends on individuals having a

12   legal means to exercise their right to public carry. This argument is emblematic of the People's

13   failure to connect the licensing scheme to criminal statutes.

14       The People's third argument is that *Bruen* only applies to the licensing statutes. To

15   support this argument, the People cite a footnote in a United States District Court case that states

16   "the Supreme Court decision in [*Bruen*], calls into question the constitutionality of California

17   Penal Code § 26150." The Court fails to see the relevance of this case. As noted above and

18   explained more fully below, the invalidation of the only legal means by which an individual can

19   exercise the right to public carry has significant ramifications on the ability to punish an

20   individual for the exercise of this constitutional right. The People's fourth argument is that two

21   pre-*Bruen* California decisions have already found sections 25400 and 25850 are constitutional.

22   *Bruen*, however, renders both of these decisions obsolete.

23       In *People v. Yarbrough* (2008) 169 Cal.App.4th 303, the defendant was convicted of

24   carrying a concealed and loaded firearm (fmr. §§ 12025 (now § 25400), § 12031 (now § 25850)).

25   The defendant argued these convictions violated the Second Amendment. Relying on *Heller*, the

26   court held the two statutes do "not broadly prohibit or even regulate the possession of a gun in the

27   home for lawful purposes of confrontation or self-defense, as did the law declared constitutionally

28   infirmed in *Heller*." (*Id.* at p. 313.) The court also found that "carrying a firearm concealed on the

6

1    person or in a vehicle in violation of section 12025, subdivision (a), is not in the nature of a

2    common use of a gun for lawful purposes which the court declared to be protected by the Second

3    Amendment in *Heller*." (*Id.* at p. 313-314.) The court's conclusions do not survive *Bruen*'s

4    holding that public carry is presumptively legal. Further, the court's reliance on *Heller* (a case

5    that decided whether possession of firearms in the home was protected by the Second

6    Amendment), is superseded by *Bruen*. As it was with *Yarbrough*, the People's faith in *People v.*

7    *Flores* (2008) 169 Cal.App.4th 568 (*Flores*) is misplaced.

8         In *Flores*, the defendant was convicted of being a felon in possession of a firearm,

9    carrying a concealed firearm and carrying a loaded firearm in a public place. The defendant

10   argued the convictions violated his Second Amendment rights under *Heller*. The court found that

11   "[g]iven [*Heller's*] implicit approval of concealed firearm prohibitions, we cannot read *Heller* to

12   have altered the courts' longstanding understanding that such prohibitions are constitutional."

13   (*Flores, supra,* at p. 575.)

14        *Flores'* conclusion that *Heller* approved concealed firearm prohibitions turned out to be

15   erroneous. *Heller* stated, "the majority of the 19th-century courts to consider the question held

16   that prohibitions on carrying concealed weapons were lawful under the Second Amendment or

17   state analogues." (*Heller, supra,* 554 U.S. at p. 626.) However, *Heller* also made clear they "do

18   not undertake an exhaustive historical analysis today of the full scope of the Second

19   Amendment." (*Ibid.*)  The Supreme Court completed its exhaustive analysis in *Bruen*. The *Bruen*

20   court acknowledged *Heller's* dicta on concealed carry laws and stated, "we cautioned that we

21   were not 'undertak[ing] an exhaustive historical analysis today of the full scope of the Second

22   Amendment' and moved on to considering the constitutionality of the District of Columbia's

23   handgun ban." (*Bruen, supra,* 142 S. Ct. at p. 2128.) *Flores* is no longer good law.

24        The People's fifth, and final argument, is that the facts of the present case distinguish it

25   from *Bruen*. The People argue (1) the charges involve unregistered firearms; (2) "these statutory

26   prohibitions fall short of the blanket bans discussed in *Bruen*; and (3) defendant is not the "law-

27   abiding" citizen using the firearm for self-defense that the Supreme Court approved for concealed

28   carry. The Court fails to see the import of the firearms not being registered, or even stolen. The

7

1    defendant is not charged with possession of an unregistered firearm and is not charged with

2    possession of stolen property. The question is whether the charges defendant is facing are still

3    public offenses, and those charges do not depend on whether the gun was registered or stolen.

4    The Court acknowledges sections 25400 and 25850 have provisions that affect the *punishment* for

5    public carry of an unregistered or stolen firearm, but those provisions do not change the

6    fundamental question before the Court. The People's contention that *Bruen* does not apply

7    because defendant is not the type of person entitled to public carry under *Bruen* is similarly

8    unpersuasive.

9          None of the People's arguments find traction. The People are correct that the Supreme

10    Court repeatedly states the Second Amendment protects the right of "law-abiding" citizens to

11    public carry for "self-defense." However, *Bruen* does not define law-abiding or give any guidance

12    on how lower courts should determine whether a weapon is carried for self-defense or for some

13    other purpose. The People also decline to offer a definition of these ambiguous terms, and the

14    Legislature has not yet addressed these questions. Do the criminal allegations themselves mean

15    someone is not law-abiding? Does carrying a concealed firearm while possibly engaged in

16    uncharged criminal conduct mean someone is no longer law-abiding? Does a prior conviction of

17    any kind mean someone is no longer law-abiding? What if the prior conviction is stale? How does

18    a court determine whether a firearm in a waistband is possessed for self-defense or not? Is a

19    firearm locked in a safe possessed for self-defense or some other purpose? Denying someone's

20    constitutional right by teasing through nebulous questions like these is not the Court's role.

21          The best argument for sustaining the demurrer is found in caselaw cited by the defense.

22    The People never address these cases in their brief.

23                    *b. Defendant May Exercise his Right with Impunity*

24          A critical question in deciding whether to overrule or sustain the demurrer is whether

25    defendant needed to attempt to comply with section 26150 before possessing the firearm in

26    public. The petitioners in *Bruen* chose to challenge the licensing law *after* they applied and were

27    denied, but did they *have to* apply for the license first? The cases cited by the defense are

28    unequivocal – the answer is no.

1    In *Shuttlesworth v. City of Birmingham, Ala.* (1969) 394 U.S. 147 (*Shuttlesworth*), the

2    petitioner was convicted of violating a city ordinance that prohibited participation in a "parade or

3    procession or any other public demonstration" without first obtaining a permit. The defendant

4    was sentenced to 90 days imprisonment at hard labor and fined. The Alabama Court of Appeals

5    initially reversed the conviction, but it was reinstated by the Alabama Supreme Court. The

6    Supreme Court then reviewed the ordinance and easily determined it was unconstitutional.

7    *Shuttlesworth* stated the ordinance was an unlawful prior restraint on the First Amendment

8    because it "conferred upon the City Commission virtually unbridled and absolute power to

9    prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways."

10   (*Shuttlesworth, supra,* at p. 150.) Critically, the Court then stated:

11

12       *And our decisions have made clear that a person faced with such an unconstitutional
     licensing law may ignore it and engage with impunity in the exercise of the right of free*

13       *expression for which the law purports to require a license.*

14   (*Id.* at p. 151.) The Court cited six prior opinions in support of this conclusion, including *Staub v.*

15   *City of Baxley* (1958) 355 U.S. 313 and *Freedman v. Maryland* (1965) 380 U.S. 51. The defense

16   cites both cases in the demurrer. At least one California appellate court has also held that

17   individuals faced with an unconstitutional license scheme may exercise their right without fear of

18   prosecution.

19   In *Aaron v. Municipal Court* (1977) 73 Cal.App.3d 596, the petitioners sought a writ of

20   prohibition to prevent their prosecution for violation of a municipal ordinance which outlawed

21   soliciting without a license. The petitioners argued the ordinance violated their First Amendment

22   rights. Application for the writ was necessary because the trial court had overruled the petitioners'

23   demurrers. The appellate court agreed, and reversed the judgment of the trial court and

24   "remanded with directions to issue a peremptory writ of prohibition commanding the respondent

25   municipal court to refrain from further proceedings in the actions specified in the petition,

26   pending against petitioners, *other than to dismiss the same*." (*Id.* at p. 610 (Italics added).)

27                                    *c. Conclusions*

28

1    *Aaron* and *Shuttlesworth* provide a powerful argument for sustaining the demurrer. In

2    *Shuttlesworth*, the defendant's conviction was overturned because the licensing scheme was

3    unconstitutional. In *Aaron*, the court did not even allow the prosecution to proceed because it was

4    based on an invalid restraint on a constitutional right. Read together, the cases hold that an

5    individual cannot be prosecuted for exercising a constitutionally protected right. There is no

6    reason to believe these holdings do not apply when the Second Amendment is at issue. As *Bruen*

7    stated: "The constitutional right to bear arms in public for self-defense is not a 'second-class

8    right, subject to an entirely different body of rules than the other Bill of Rights Guarantees.'

9    [Citation.]" (*Bruen, supra,* 142 S. Ct. at p. 2156.)

10    At the time of defendant's arrest California provided one legal means by which an

11    individual could exercise their right to public carry – to get a license under section 26150. That

12    path was unconstitutional. According to *Shuttlesworth,* faced with an unconstitutional restriction

13    on his constitutional right, defendant was free to engage "with impunity in the exercise of the

14    right..."

15    The Court does not relish the conclusion reached here and understands its ramifications.

16    But this result cannot be avoided in light of *Bruen* and *Shuttlesworth* and the arguments presented

17    by the parties.

18    *VI. Disposition*

19    The demurrer is SUSTAINED. The People may attempt to remedy the complaint by filing

20    an amended complaint within ten calendar days of the issuance of this order. (§ 1007.) If an

21    amended complaint is not timely filed, the case will be dismissed. (§ 1008.)

22    DATED: 7/27/22

23

24

25    HON. STEVE WHITE
      JUDGE OF THE SUPERIOR COURT

26

27

28

10