COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile: 888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK BAIRD and RICHARD GALLARDO,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,<br><br>Defendants. | Case No. 2:19-CV-00617-KJM-AC<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THIRD MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:         November 4, 2022<br>Time:         10:00 a.m.<br>Courtroom: 3<br>Judge:        Hon. Kimberly J. Mueller<br>Trial Date:  None set<br>Action Filed: April 9, 2019 |

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................................i

I. PLAINTIFFS WILL SUCCEED ON THE MERITS OF THEIR CLAIMS............................... 1

    A. Open Carry Falls Within the Plain Text of the Second Amendment ............................... 1

    B. Plaintiffs Have No Burden to Provide Historical Evidence ............................................. 1

    C. Defendant Concedes, and History Reveals, that the 'Manner of Carry' 'Limited' by the Government Was Concealed Carry, Not Open Carry........................... 1

    D. Defendant Failed to Provide Any Historical Tradition of Limiting, Criminalizing, or Licensing the Open Carriage of Weapons/Firearms. ...................................................... 3

    E. California's Licensing Scheme is Irrelevant to the Right to Open Carry ...................... 4

II. IRREPARABLE HARM TO PLAINTIFFS IS *PRESUMED*........................................................ 6

III. PUBLIC INTEREST FAVORS THE PRE-MULFORD ACT of 1967 EXERCISE OF OPEN CARRY .................................................................................................. 6

IV. BALANCING THE EQUITIES TIPS SHARPLY IN PLAINTIFFS' FAVOR ....................... 8

V. DEFENDANT'S PUBLIC SAFETY ARGUMENTS AND ACCOMPANYING SUBMISSIONS SHOULD BE SUMMARILY REJECTED.................................................... 9

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) ........................................................................................... 6

*Andrews v. State,*
   50 Tenn. 165 (1871) .......................................................................................................... 5

*Chatteaux v. State,*
   52 Ala. 388 (1875) ............................................................................................................ 2

*County of Santa Clara v Trump,*
   250 F Supp 3d 497 (ND Cal 2017) ................................................................................... 6

*Daniels Sharpsmart, Inc. v. Smith,*
   889 F.3d 608 (9th Cir. 2018) ............................................................................................ 8

*D.C. v. Heller,*
   554 U.S. 570 (2008) ................................................................................................... Passim

*Duncan v Bonta,*
   265 F Supp 3d 1106 (SD Cal 2017) aff'd Duncan v. Bonta, 742 F App'x 218, 222 (9th Cir 2018) ................................................................................................................................ 8

*Elrod v. Burns,*
   427 U.S. 347 (1976) .......................................................................................................... 6

*Eslava v. State,*
   49 Ala. 355 (1873) ............................................................................................................ 2

*Ex parte Luening,*
   3 Cal.App. 76 (1906) ........................................................................................................ 3

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ............................................................................................. 6, 7, 8, 9

*Melendres v. Arpaio,*
   695 F.3d 990 (9th Cir. 2012) ............................................................................................ 6

*New York State Rifle & Pistol Ass'n v. Bruen,*
   142 S.Ct. 2111 (2022) ................................................................................................ Passim

*Nunn v. State,*
   1 Ga. 243 (1846) ............................................................................................................... 4

i

REPLY MEMORANDUM OF POINTS & AUTHORITIES ISO THIRD MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF AUTHORITIES (con't)**

**Page(s)**

**Cases**

*Robertson v. Baldwin*,
   165 U.S. 275 (1897) .................................................................................................. 1, 2

*State v. Shelby*,
   90 Mo. 302, 2 S.W. 468 (1886) ....................................................................................... 2

*State v. Speller*,
   86 N.C. 697 (1882) .......................................................................................................... 2

**Statutes**

California Penal Code § 25850 ............................................................................... Passim
California Penal Code § 26350 ............................................................................... Passim

## I. PLAINTIFFS WILL SUCCEED ON THE MERITS OF THEIR CLAIMS

*The Bruen Test: "When the regulated conduct falls within the plain text of the Second Amendment, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.*

*Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" Bruen, 142 S.Ct. at 2126.*

### A. Open Carry Falls Within the Plain Text of the Second Amendment

The test that all courts must now follow begins with the question, 'Does the regulated conduct fall within the plain language of the Second Amendment?' *Bruen*, at 2126.

The plain text of the Second Amendment guarantees the individual right to possess and carry weapons. *Bruen*, 142 S.Ct. at 2122 citing, *Heller*, 554 U.S. at 592.

Open carry – 'bearing arms' – falls within the plain text of the Second Amendment.

Open carry is, therefore, "presumptively guarantee[d]" by the Constitution. *Bruen*, 142 S.Ct. at 2129-30 ("The Second Amendment's plain text thus presumptively guarantees a right to 'bear' arms in public for self-defense."). *Bruen*, 142 S.Ct. at 2135.

### B. Plaintiffs Have No Burden to Provide Historical Evidence

Right out of the gate, Defendant articulates the wrong standard. [Def. MOL at p. 6]. Plaintiffs have no burden to provide historical evidence in support of their motion, 'scant' or otherwise. [Def. MOL at p. 6]. Under the *Bruen* test quoted directly above, Plaintiffs need only show that the conduct being regulated by the government falls within the plain language of the Second Amendment, which is does.

The burden now lies *entirely* on Defendant (the government) to show that the challenged regulations are consistent with this Nation's historical traditions of firearm regulation, which they are not.

### C. Defendant Concedes, and History Reveals, that the 'Manner of Carry' 'Limited' by the Government Was *Concealed* Carry, Not Open Carry

Quoting *Bruen,* Defendant highlights the "Antebellum tradition" of upholding laws that limit *concealed* carry. [Def. MOL at p. 10] citing, *Bruen*, at 2155 n.30. *Bruen's* footnote 30 cites *Robertson v. Baldwin*, 165 U.S. 275 (1897), a case originating in California which confirmed

> "The law is perfectly well settled that the first 10 amendments to the constitution, commonly known as the 'Bill of Rights,' were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors, and which had, from time immemorial, been subject to certain well-recognized exceptions, arising from the necessities of the case. In incorporating these principles into the fundamental law, there was no intention of disregarding the exceptions, which continued to be recognized as if they had been formally expressed. Thus, the freedom of speech and of the press (article 1) does not permit the publication of libels, blasphemous or indecent articles..[and] **the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons…**"[1]

The state court decisions limiting and/or prohibiting *concealed* carry cited in *Bruen*, arise from the historical norm that carrying a firearm in open and exposed in public was a widely accepted practice – but carrying a weapon *concealed* was looked upon with contempt, disdain, and generally not regarded as falling within the scope of the Right to keep and bear arms under the Constitution. "Secret carrying" of weapons was unlawful in certain states[2] – even where the defendant was law-abiding and reasonably feared for his life. See, *State v. Speller*, 86 N.C. 697, 700 (1882) ("The distinction between the '*right to keep and bear arms*,' and '*the practice of carrying concealed weapons*' is plainly observed in the constitution of this state. The first, it is declared, shall not be infringed, while the latter may be prohibited. Art. I., § 24.") (emphasis supplied); *Chatteaux v. State*, 52 Ala. 388 (1875) (no right to carrying a firearm *concealed* absent 'good reason to fear attack); *Eslava v. State*, 49 Ala. 355, 356 (1873) ("If the necessity [to carry concealed] existed only while he was travelling, then, if after he reached the city and had a reasonable opportunity of divesting himself of the weapon, *or of changing the manner of carrying it so as not to offend the statute*, he continued to bear it concealed about his person, he is guilty as charged.").

---

[1] The Court continued to recognize that the protection against double jeopardy in Article 5 "does not prevent a second trial, if upon the first trial the jury failed to agree, or if the verdict was set aside upon the defendant's motion…Nor does the provision that an accused person shall be confronted with the witnesses against him prevent the admission of dying declarations, or the depositions of witnesses who have died since the former trial." *Robertson,* at 281-282 (emphasis added).

[2] Such states also operated under the view that the Bill of Rights did not apply to the states. See, e.g., *State v. Shelby*, 90 Mo. 302, 2 S.W. 468, 469 (1886) ("The second amendment to the constitution of the United States is a restriction upon the powers of the national government only, and is not a restriction upon state legislation.").

### D. Defendant Failed to Provide *Any* Historical Tradition of Limiting, Criminalizing, or Licensing the Open Carriage of Weapons/Firearms

Defendant has failed to identify any National historical tradition supporting enforcement of Penal Code sections 25850 and/or 26350 against individuals who open carry a handgun in public for self-defense. Open carry was the 'manner of carry' recognized as the protected Right, bearing out this Nation's historical tradition of the free exercise of the right to carry handguns open and holstered in public. The Antebellum era cases referenced by Defendant and *Bruen*[3] evidence state regulations against *concealed* carry – and the reasons for limiting or banning *concealed* carry were clear: "The habit of carrying concealed weapons is one of the most fruitful sources of crime, and, in our opinion, may be entirely prohibited by the proper authorities." *Ex parte Luening*, 3 Cal.App. 76, 78 (1906). Concealed carry was cowardly, secretive, and unmanly.

The criminalization of *concealed* carry by a handful of states in the 1800s is no historical analogue to the enforcement of Penal Code sections 25850 and 26350 against those who open carry. Even if the few examples cited were representative of a nationwide tradition[4], which they are not, all that Defendant has shown is that *concealed* carry was subject to government control.

Defendant's burden was to present evidence that this Nation historically held traditions that supported banning *open* carry, criminalized *open* carry, licensed *open* carry, and placed intrastate geographical restrictions on *open* carry.

Defendant failed.

There are no such historical traditions, nationally or within the State of California, of banning, criminalizing, or licensing the open carriage of handguns or placing intrastate geographical and/or population-based restrictions on the open carriage of handguns.

---

[3] *Bruen*, at 2146.
[4] The *Bruen* court specifically forbade hanging the proverbial hat on some random occurrences in a handful of jurisdictions, as Defendant does here regarding concealed carry.

### E. California's Licensing Scheme is Irrelevant to the Right to Open Carry[5]

Defendant spills much ink over California's licensing scheme. Not only is there no *National* tradition requiring government permission or a license to open carry – something even California did not require until 1967 (2012 for unloaded open carry), which is well past the relevant historical timeframe in *Bruen* – **no open carry licenses have been issued in California since 2012.** [Dkt. 47-3]. Open carry is not an option, even under California's "may issue" scheme.

Most importantly, Defendant fails to point to any historical tradition – or **any** law between 1791 and 1868 - that required a license or government permission to open carry.[6]

*Bruen* established the three categories of public carry restrictions that proliferated after the ratification of the Second Amendment in 1791[7]: (i) common law offenses; (ii) statutory prohibitions, which did not arise until the mid-19th century; and (iii) surety statutes.

The 'statutory prohibitions' lack any mention of statutes requiring government permission or a "license" before exercising the right to carry a weapon in public, only the criminalization of *concealed* weapons.

What would be the point of the Second Amendment if its exercise required government permission? The Right, "shall not be infringed." For sure, it was not a *crime* – the Second Amendment codified individual, self-evident freedoms, not criminal acts. It should not be treated as one.

Those few statutory prohibitions affecting open carry were blanket prohibitions on *any* form of public carry – and were overturned. In *Nunn v. State*, 1 Ga. 243 (1846), the Georgia Supreme Court held that the prohibition on open carry was *inconsistent* with the Second Amendment. *Bruen*,

---

[5] The "good moral character" requirements may be relevant to the issue of *concealed* carry, which was generally viewed as untowardly and criminal. Nevertheless, "good moral character" perpetuates a discretionary, permission-based licensing scheme – wholly inconsistent with the free exercise of the right to open carry and the Second Amendment.

[6] Defendant's mention of S.B.918 'evidencing' the 'Legislature's preference' underscores the warped mindset with which the State's arguments are advanced. The Constitution does not care what the legislature or judges 'want' or 'would prefer'. "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Heller*, at 634. Every public official takes an oath to uphold the Constitution. If the plain language of the 27 words of the Second Amendment is confusing, the Supreme Court has laid out its scope and the test to be applied. Any public official that cannot in good conscience uphold every part of the Constitution should step down; dishonest subversion of the Constitution's guaranteed protections is a violation of that oath.

[7] *Bruen*, at 2145 (Only after the ratification of the Second Amendment in 1791 did public-carry restrictions proliferate", going on to enumerate the 3 categories of regulations: common-law offenses, statutory prohibitions, and "surety" statutes).

at 2147, n. 16; and the Tennessee Supreme Court in *Andrews v. State*, 50 Tenn. 165, 187 (1871) interpreted the statute to "allow larger, military-style pistols" – those carried openly – "because any categorical prohibition on their carry would violate the constitutional right to keep arms." *Bruen*, at 2147 (bracket omitted), citing *Heller*, at 629 (discussing *Andrews*). Other state statutes during the relevant time-period criminalized *concealed* carry.[8]

America's historical tradition reveals 2 things relevant to open carry: 1. it "was "beyond the constitutional pale in antebellum America to altogether prohibit public carry"[9] and 2. the only manner of carry that was either upheld as banned or limited was *concealed* carry.

With regard to Defendant's 'theory of alternatives' – the idea that, because concealed carry is an option, the Constitution requires no more: No part of *Bruen*, *Heller*, *Caetano*, or *McDonald* so much intimated that open carry could be banned so long as concealed carry was 'available.'

The test is: (i) does the regulated conduct fall within the text of the Second Amendment?; if so (ii) has the government shown a historical analogue? There is no historical analogue preferring concealed carry over open carry; quite the opposite. This is a historical "inquiry [that is] fairly straightforward." *Bruen*, at 2131.

No intellectually honest court could find that the enforcement of California Penal Code sections 25850 and/or 26350 against an individual for merely carrying a handgun open and exposed in public for self-defense is consistent with this Nation's historical traditions of firearm regulation.

---

[8] *Id.* "Beginning in 1813 with Kentucky, six States (five of which were in the South) enacted laws prohibiting the concealed carry of pistols by 1846. See 1813 Ky. Acts § 1, p. 100; 1813 La. Acts p. 172; 1820 Ind. Acts p. 39; Ark. Rev. Stat. § 13, p. 280 (1838); 1838 Va. Acts ch. 101, § 1, p. 76; 1839 Ala. Acts no. 77, § 1. During this period, Georgia enacted a law that appeared to prohibit both concealed and open carry, see 1837 Ga. Acts §§ 1, 4, p. 90, but the Georgia Supreme Court later held that the prohibition could not extend to open carry consistent with the Second Amendment. See infra, at 2146 - 2147. Between 1846 and 1859, only one other State, Ohio, joined this group. 1859 Ohio Laws § 1, p. 56. Tennessee, meanwhile, enacted in 1821 a broader law that prohibited carrying, among other things, "belt or pocket pistols, either public or private," except while traveling. 1821 Tenn. Acts ch. 13, § 1, p. 15. And the Territory of Florida prohibited concealed carry during this same timeframe. See 1835 Terr. of Fla. Laws p. 423.
[9] *Bruen*, at 2147.

## II.   IRREPARABLE HARM TO PLAINTIFFS IS *PRESUMED*

The Ninth Circuit has repeatedly held that the deprivation of constitutional rights "unquestionably constitutes irreparable injury". *County of Santa Clara v Trump*, 250 F Supp 3d 497, 537-538 (ND Cal 2017), quoting, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights "unquestionably constitutes irreparable injury."); see also, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780.

A plaintiff can also suffer a constitutional injury by being forced to comply with an unconstitutional law or else face enforcement action. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009).

For years, Plaintiffs have been deprived of the ability to exercise their Right to open carry a handgun in public for self-defense because of the unconstitutional enforcement of Penal Code §§ 25850 and 26350. Sections 25850 and 26350 violate the right to bear arms for self-defense, forcing ordinary citizens to choose between exercising a protected right and suffering criminal penalties. Plaintiffs and all similarly situated people are suffering, and will continue to suffer, irreparable harm without the requested injunctive relief. Enjoining Penal Codes §§ 25850 and 26350 will restore the citizens of California to the Constitutionally aligned position that existed prior to the Mulford Act of 1967.

Plaintiffs are ***presumed*** to have suffered irreparable harm because they have demonstrated a violation of their rights as guaranteed and protected by the Second and Fourteenth Amendments.

## III.   PUBLIC INTEREST FAVORS THE PRE-MULFORD ACT of 1967 EXERCISE OF OPEN CARRY

> "But when it comes to interpreting the Constitution, not all history is created equal. "Constitutional rights are enshrined with the scope

> they were understood to have when the people adopted them." Heller, 554 U.S. at 634–635, 128 S.Ct. 2783. The Second Amendment was adopted in 1791; the Fourteenth in 1868.
>
> Historical evidence that long predates or postdates either time may not illuminate the scope of the right."

*Bruen*, at 2136.

The Mulford Act of 1967 is a "localized restriction"[10] that long postdates the adoption of the Second and Fourteenth Amendment. The motives behind its enactment were racial discrimination and public safety fears, neither of which are acceptable grounds for depriving people of the individual right to be armed in case of confrontation. The 2012 enactment of Penal Code section 26350 fares no better.

The open carriage of handguns in California was largely unremarkable for close to 120 years; its practice was not criminalized, banned, and no license was required. Sections 25850 and 26350 are contemporary control measures that fly in the face of the plain text of the Second Amendment. "[Where] later history contradicts what the text says, the text controls. *Bruen*, at 2137.

Sections 25850 and 26350 are *per se* constitutional violations - they contradict the plain text of the Second Amendment right to "bear Arms" which "shall not be infringed."

Defendant is not representing the 'public' interest; the State's political *agenda* is in conflict with the *public* interest. The *public* interest is served when the *public* – "the People" covered by the protections of the Bill of Rights – are free to exercise their *presumptively* guaranteed and protected God-given Rights. The *public* is suffering from the State's criminalization of the fundamental Right to carry a weapon in public in case of confrontation.

While 'public interest' is a necessary prong for injunctive relief, the State can no longer rely on the 'public safety' chant that has been flatly rejected by the Supreme Court in *Heller*, *McDonald* and *Bruen*. "The Second Amendment does not permit - let alone require - judges to assess the costs and benefits of firearms restrictions." *Bruen*, at 2129 (quoting, *McDonald*, at 790-791); *Heller*, at 634 ( "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really

---

[10] *Bruen,* at 2121.

worth insisting upon.").

## IV. BALANCING THE EQUITIES TIPS SHARPLY IN PLAINTIFFS' FAVOR

"We have explained that the first and third of the factors interact so that serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018).

"Statutes disarming law-abiding responsible citizen gun owners reflect an opinion on gun policy. Courts are not free to impose their own policy choices on sovereign states. But as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate. Disarming California's law-abiding citizenry is not a constitutionally-permissible policy choice." *Duncan v Bonta*, 265 F Supp 3d 1106, 1128, 1135-1136 (SD Cal 2017), aff'd *Duncan v Bonta*, 742 F App'x 218, 222 (9th Cir 2018).

*Bruen*, *Heller* and *McDonald*, flatly rejected the same 'public safety' arguments advanced by Defendant and his expert.[11] There can be no 'balancing' of the government's interests against the individual rights guaranteed by the Second and Fourteenth Amendments.

> "Rather than begin with its view of the governing legal framework, the dissent chronicles, in painstaking detail, evidence of crimes committed by individuals with firearms. See post, at 2163 - 2168 (opinion of BREYER, J.). The dissent invokes all of these statistics presumably to justify granting States greater leeway in restricting firearm ownership and use. But, as Members of the Court have already explained, "[t]he right to keep and bear arms ... is not the only constitutional right that has controversial public safety implications." McDonald v. Chicago, 561 U.S. 742, 783, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion). The Right to keep and bear arms is not the only constitutional Right that has

---

[11] Defendant's law enforcement 'expert', Kim Raney, has never served as a law enforcement officer in an open carry jurisdiction. [Ex. 1, at 19]. Plaintiffs' expert, Chuck Haggard, is a law enforcement officer in an open carry jurisdiction and was so employed when the State of Kansas legalized open carry. [Ex. 2]. Haggard averred, "The implementation of laws that allow open carry in public do not have a negative impact on public safety. The act itself – a lawful person openly carrying a firearm in public – does not have a negative or detrimental effect on public safety, does not itself create a 'safety hazard', and is not the cause of accidental or mistake of fact shootings of civilians by police officers." [Dkt. 49-1; Ex. 2, 53-71]. "Mr. Raney's opinions are based on speculation…" [*Id*].

8

REPLY MEMORANDUM OF POINTS & AUTHORITIES ISO THIRD MOTION FOR PRELIMINARY INJUNCTION

controversial public safety implications." *Bruen*, at 2126, n. 3.

## V. DEFENDANT'S PUBLIC SAFETY ARGUMENTS AND ACCOMPANYING SUBMISSIONS SHOULD BE SUMMARILY REJECTED

The Supreme Court has, more than once, flatly rejected any manner of 'public safety', means-end scrutiny as a response to Second Amendment challenges. See, *D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022).

In obtuse fashion, Defendant continues to improperly push a means-end, 'public safety' agenda. Apart from improperly addressing public safety and crime statistics – having nothing to do with Plaintiffs - Defendant's exhibits deal exclusively with *concealed* carry[12]: Exhibit 4 deals exclusively with "states adopt[ing] right-to-carry (RTC) *concealed* handgun laws", not open carry (emphasis added); Exhibit 5 is about "the impact on crime of state laws that confer on citizens a right to carry *concealed* weapons"; and Exhibit 6 concerns the "Easiness of Legal Access to *Concealed* Firearm Permits and Homicide Rates in the United States." See, Declaration of Matthew Wise.[13]

The only permissible consideration for this Court is whether there is a historical analogue consistent with the challenged regulations. There is not. Accordingly, the requested injunction should issue.

Dated:  October 11, 2022                    Respectfully submitted,

                                            THE BELLANTONI LAW FIRM, PLLC
                                            /s/ Amy L. Bellantoni, Esq.
                                            Amy L. Bellantoni
                                            Counsel for Plaintiffs
                                            Email: abell@bellantoni-law.com
                                            *Pro Hac Vice*

---

[12] Defendant's Exhibit 3-the revocation of Mr. Gallardo's concealed carry license- is a prime example of the problem with subjective, discretionary licensing schemes. See, Bellantoni Declaration at ¶ 13.

[13] The 3 footnotes in Defendant's Ex. 4 referencing articles about open carry speak to poor police training, not any historical tradition justifying California Penal Code sections 25850 and/or 26350.

9