COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BAIRD and RICHARD GALLARDO,<br><br>Plaintiffs,<br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>Defendant. | Case No. 2:19-CV-00617<br><br>**REPLY DECLARATION OF AMY L. BELLANTONI IN SUPPORT OF PLAINTIFFS' THIRD MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  November 4, 2022<br>Time:  10:00 a.m.<br>Room:  3<br>Judge:  Hon. Kimberly J. Mueller |

1

**DECLARATION OF AMY L. BELLANTONI**

1. I am an attorney with The Bellantoni Law Firm, PLLC, attorneys for Plaintiffs, Mark Baird and Richard Gallardo. I am admitted to practice law before the United States District Court for the Eastern District of California, *pro hac vice*. I am also admitted to practice law before the United States District Courts for the Southern, Eastern, and Northern Districts of New York, the District of Columbia, the Second Circuit Court of Appeals, and the United States Supreme Court. I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, could and would testify competently thereto.

2. This Third Motion for a Preliminary Injunction[1] is made to enjoin, during the pendency of these proceedings, Defendant Bonta, his agents, servants, employees, and those working in active concert with him, from enforcing and/or giving effect to California Penal Code sections 25850 and 26350 as they relate to the mere possession of a handgun by manner of open carry in public.

3. The instant motion for a preliminary injunction is made based on the irreparable and continued harm to Plaintiffs resulting from the enforcement and effect of California Penal Code Sections 25850 and 26350, which will continue absent an injunction of the statutes. The plain language of the aforementioned statutes, as well as the *de facto* ban on open carry in the State of California enforced by defendant Attorney General Rob Bonta through the California Department of Justice, his agents, employees, servants, including the respective state's firearms licensing agencies, to wit, the sheriffs and chiefs of police throughout the state, constitutes a violation of the Second Amendment.

---

[1] During the parties' July 28, 2022 Status Conference with the Court, held by videoconference, the Court granted Plaintiffs' oral application to withdraw their Second Motion for a Preliminary Injunction, filed on April 13, 2021, which was pending decision.

4.      It is the opinion of the Ninth Circuit that the concealed carry of a firearm does not fall within the scope of the protections provided by the Second Amendment. Upholding a challenge to California's "good cause" requirement for the issuance of a CCW license in *Peruta v County of San Diego*, 824 F3d 919, 942 (9th Cir 2016) (en banc) (*Peruta II*) (cert. den.), the Ninth Circuit held that the Second Amendment did not protect *in any degree* the right to carry a concealed firearm in public and that *any* prohibition or restriction a state might choose to impose on concealed carry, was not unconstitutional. (emphasis added). Concealed carry, the Circuit reasoned, was a mere privilege, not a 'right'.

5.      As set forth in the accompanying Memorandum of Points and Authorities and Reply Memorandum of Points and Authorities, with accompanying Declarations, the Supreme Court and history of this nation and the State of California bear out that the open carriage of handguns for self-defense falls squarely within Second Amendment protected activity. A contrary view is irrational and in conflict with the plain text of the Amendment.

6.      As detailed in the accompanying Memoranda, the complained of statutes preclude non-prohibited, regular people, including Plaintiffs, from the free exercise of the right to open carry a firearm for self-defense in public by criminalizing the "mere possession" of a handgun carried open and exposed outside of one's home, which exposes ordinary individuals to criminal penalties for exercising the right to open carry, whether loaded or unloaded.

7.      Defendant, who alone has the burden, has failed to forth *any evidence* that the challenged regulations – Penal Code sections 25850 and/or 26350 - are consistent with this Nation's historical traditions of regulating firearms.

8.      The Supreme Court has, more than once, flatly rejected any manner of 'public safety', means-end scrutiny as a response to Second Amendment challenges. See, *D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 562 U.S. 742 (2010); *NYSRPA v. Bruen*, 142

S.Ct. 2111 (2022).

9. Yet, defiantly, Defendant continues to offer 'public safety' arguments, like those espoused by his law enforcement 'expert', former Covina Chief of Police Kim Raney, speculating about how open carry will affect public safety. Attached hereto as Exhibit 1 is Mr. Raney's deposition testimony.

10. Mr. Raney has never served as a law enforcement officer in an open carry jurisdiction. [Ex. 1 at 19:1-3]. Everything Mr. Raney testified to regarding 'public safety' in an open carry jurisdiction is based on speculation.

11. While 'public safety' is an *improper consideration* when it comes to Second Amendment challenges[2], Plaintiffs' law enforcement expert, Chuck Haggard, *does* serve in an open carry jurisdiction and was employed as a police officer when the state of Kansas legalized open carry overnight. No "instant mayhem" occurred, as Raney hypothesizes. [See, the deposition testimony of Chuck Haggard attached hereto as Ex. 2 at pp. 46-48; 61-62].

12. "So, just the mere fact that somebody's carrying a gun - - and I'll go with a holstered handgun, let's say, in and of itself. It just is what it is. It isn't a negative or doesn't have an effect on public safety. The idea that the police would show up and be, "Oh, my God, that guy's got a gun, we better shoot him" borders on the ridiculous in my mind, that- -  and a bunch of that is personal observation." [Ex. 2 at p. 53]. Mr. Haggard's observation is based on his personal observation as a police officer and civilian firearms trainer in Kansas, as well as in other states where he has either conducted training or been involved in training including Texas, Oklahoma, Missouri, Utah, and Wyoming, where carrying a firearm open and exposed would garner the reaction, "It's a sunny day out, that guy's carrying a gun. It's not a positive, it's not a negative, it

---

[2] *D.C. v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 562 U.S. 742 (2010); *NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022).

REPLY DECLARATION OF AMY L. BELLANTONI ISO
THIRD MOTION FOR PRELIMINARY INJUNCTION

just is." [Ex. 2 at pp. 53-54]. "I can tell you I've walked up on car stops where I've had people with shotguns and rifles in the back window of a pickup truck, guns in consoles, guns laying on seats, I've dealt with people who are wearing holstered guns on their hip, that sort of thing, and, quite frankly, the guns that I can see, the weapons that I can see, I was never very worried about. I was worried about the behavior of the people who were, you know, literally being furtive, who were trying to conceal what they were up to. It was more behavior-focused…It's what you don't know that is a problem." [Ex. 2 at p. 70-71].

13. Attached hereto as Exhibit 3 is the deposition testimony of Richard Gallardo, which indicates that he was compliant with California Penal Code 171 (b)(B)(3) when he had his firearm on the CAL FIRE property in his locked vehicle; the statute allowed him to have his concealed weapon on CAL FIRE property with the concealed weapons permit that he had at the time. [Ex. 3 at 19]. Mr. Gallardo further showed a co-worker his handgun at the co-worker's request, he did 'display' it in any sort of threatening manner as Defendant would have the Court believe. "Working at CAL FIRE, we were there anywhere from three days a week to two to three weeks in a row. And so, you know, lunchtime or evening hours or whenever we were not on the formal clock, what's called hard time, we're allowed to talk about that kind of stuff, so we talked about it often. And one of my fellow employees at the time was thinking about getting his concealed weapons permit, and he asked me what kind of gun I carried, and so I showed it to him." Mr. Gallardo was compliant with the law. [Ex. 3 at 38-40]. Revoking his permit because he disagreed with an officer during a traffic stop also demonstrates the problem with California's subjective, discretionary licensing scheme. [Ex. 3 at 24].

14. The within Declaration, exhibits, and accompanying Memoranda of Points and Authorities warrant the requested relief and issuance of an order enjoining defendant Bonta, his agents, servants, employees, and those working in active concert with him, from enforcing and/or

5

giving effect to California Penal Code sections 25850 and 26350 as they relate to merely carrying a handgun open and exposed on one's person in public during the pendency of this proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  October 11, 2022              *Amy L. Bellantoni*
                                          Amy L. Bellantoni, Esq.
*Attorney for Plaintiffs*
*Pro Hac Vice*
abell@bellantoni-law.com

REPLY DECLARATION OF AMY L. BELLANTONI ISO
THIRD MOTION FOR PRELIMINARY INJUNCTION