**EXHIBIT   3**

1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE EASTERN DISTRICT OF CALIFORNIA

3                               --oOo--

4     MARK BAIRD and RICHARD
      GALLARDO,

5
            Plaintiffs,

6
      vs.                              No. 2:19-cv-00617-KJM-AC

7
      ROB BONTA, in his official

8     capacity as Attorney General
      of the State of California,

9     and DOES 1-10,

10          Defendants.
                                       /

11

12

13

14          VIDEOCONFERENCE DEPOSITION OF RICHARD GALLARDO

15                       August 31, 2021

16

17

18

19

20

21

22    Stenographically Reported by:

23    Janice L. Belcher, CSR No. 12342

24    Job No. 4782562

25    Pages 1 - 45

                                                     Page 1

1                          I N D E X

2                                                    PAGE

3     EXAMINATION BY MR. WISE                          4

4

5

6

7

8

9

10                        E X H I B I T S

11                                                   PAGE

12    EXHIBIT 1    9/17/19 Letter                     16

13    EXHIBIT 2    12/20/17 Special Alert Bulletin    18

14    EXHIBIT 3    9/2/19 Letter                      20

15    EXHIBIT 4    11/19/19 Letter                    25

16    EXHIBIT 5    12/11/18 Letter                    32

17    EXHIBIT 6    2/3/19 Email                       34

18    EXHIBIT 7    3/13/19 Email                      35

19

20

21

22

23

24

25

```
1            VIDEOCONFERENCE DEPOSITION OF RICHARD GALLARDO
 2
 3       BE IT REMEMBERED, that pursuant to Notice, and on
 4   the 31st day of August, 2021, commencing at the hour of
 5   10:04 a.m., Pacific Standard Time, via videoconference
 6   before me, JANICE L. BELCHER, a Certified Shorthand
 7   Reporter, appeared RICHARD GALLARDO, produced as a
 8   witness in said action, and being by me first duly
 9   sworn, was thereupon examined as a witness in said
10   cause.
11                           --o0o--
12
13   APPEARANCES VIA VIDEOCONFERENCE:
14   For Plaintiffs:
15           AMY BELLANTONI
             Bellantoni Law Firm
16           2 Overhill Road, Suite 400
             Scarsdale, New York  10583
17           (914)367-0090
             info@bellantoni-law.com
18
19   For Defendant Attorney General Rob Bonta:
20           R. MATTHEW WISE
             Deputy Attorney General
21           1300 I Street, Suite 125
             P.O. Box 944255
22           Sacramento, California  94244
             (916)210-6046
23           matthew.wise@doj.ca.gov
24   Also Present:
25           MARK BAIRD
```

Page  3

```
 1                        RICHARD GALLARDO,

 2                       sworn as a witness,

 3                      testified as follows:

 4

 5                         EXAMINATION

 6    BY MR. WISE:

 7        Q   Good morning.  My name is Matthew Wise, and I

 8    represent the California Attorney General in this case,

 9    which is Baird vs. Bonta.

10            Would you state your full name and spell your

11    last name for the record.

12        A   Richard Jason Gallardo; last name

13    G-A-L-L-A-R-D-O.

14        Q   Do you understand that you're testifying here

15    today under the same oath that you would take if you

16    were testifying in a courtroom?

17        A   Yes.

18        Q   Have you ever had your deposition taken?

19        A   I've had it done a couple of times, yes.

20        Q   Are you familiar with the rules of taking a

21    deposition?

22        A   Vaguely.  It's been a while.

23        Q   When was the last time you were deposed,

24    approximately?

25        A   Oh wow.  It's been so long ago, I don't
```

Page 4

1    remember.  Probably 10-plus years.  I don't think we've

2    had a deposition in this case yet, but I could be --

3    it's been a while, I can't recall.

4         Q   The court reporter is recording everything we

5    say, so we need to try to have only one person speak at

6    a time.  I'll try to let you finish your answer before I

7    ask another question, and I just ask that you let me ask

8    my question before you start to give your answer.

9         A   Okay.

10        Q   If you need to take a break at any time, just

11   let me know.  I would just ask that you finish your

12   answer to the pending question before we take our break.

13        A   Okay.  And just excuse my allergies, the fire

14   smoke up here is really bad.

15        Q   After I ask a question, it's possible that your

16   attorney may have an objection.  You should still answer

17   the question that I've asked, unless your attorney

18   advises you not to answer the question.

19            Do you understand?

20        A   I do.

21        Q   If you don't understand a question, just let me

22   know and I'll try to rephrase that question.

23        A   Okay.

24        Q   You will have an opportunity to -- after the

25   deposition to receive and review the transcript that was

1   made here today by the court reporter.  You will be able

2   to make any corrections to that transcript, but you

3   should know that there will be a record of the

4   corrections that were made, and I'll be allowed to

5   comment on any corrections that you make.

6           Do you understand?

7       A   I do.

8       Q   Is there anything affecting you today that

9   would prevent you from thinking clearly and testifying

10  truthfully?

11      A   No.

12      Q   How did you prepare for today's deposition?

13      A   I reviewed some of my documents, not all, just

14  the ones that I believe -- issues that I might need to

15  be better prepared for.  So just a little bit of

16  document review, but not everything.

17      Q   And when you said you reviewed your documents,

18  what did you mean by your documents?

19      A   I reviewed my concealed weapons file.  That's

20  it.

21      Q   Okay.  And I don't want you to get into the

22  private conversation you had with your attorney, but did

23  you speak with anyone about the deposition?

24      A   Your audio was cut off like the first five or

25  six words, something about speaking with anybody.

1       Q    Let me ask that question again then so

2    everybody can hear it clearly.

3            I'm not asking you to respond with anything you

4    discussed with your attorney, but I am interested in

5    whether you spoke with anybody before your deposition

6    about -- about the deposition?

7       A    No.

8       Q    What is your current job?

9       A    I work for a local propane company.

10      Q    How long have you had that job?

11      A    Oh, a little over three years.

12      Q    Are you eligible to possess a firearm in the

13   state of California?

14      A    All I heard was "state of California"; the

15   first part was cut off.

16      Q    Are you eligible to possess a firearm in

17   California?

18      A    Yes, I am.

19      Q    Have you ever been informed by anyone that you

20   were not eligible to possess a firearm in California?

21      A    I have not.

22      Q    Have you ever applied for a license to carry a

23   firearm and been denied?

24      A    No.

25      Q    Have you ever been convicted of a felony?

Page 7

1        A    No.

2        Q    Have you ever been convicted of a misdemeanor

3    that would prohibit you from legally owning a firearm?

4        A    No.

5        Q    Are there any other grounds that you're aware

6    of such as being involuntarily committed to a mental

7    health facility that would prevent you from legally

8    owning a firearm?

9        A    No.

10       Q    Have you received training on how to use a

11   firearm?

12       A    Yes.

13       Q    Would you describe what kind of training that

14   you have received?

15       A    21 years in the military, 19 of that training

16   carrying firearms, long guns, et cetera.  And then I'm

17   also -- I -- I'm also an NRA pistol instructor, so I had

18   to have training and qualifications to gain that

19   instructor certification, so that's the generic of it

20   all.

21       Q    Approximately when was the last time that you

22   received training?

23       A    My last class was about a year or two ago, one

24   to two years ago, formal training.

25       Q    What was the nature of that training, that

Page 8

1   class?

2        A    My last class?

3        Q    Yes.

4        A    It was an advanced concealed weapons class

5   given by one of our local private companies that

6   certified through the sheriff's department to give such

7   classes.

8        Q    When was the last time that you fired a

9   firearm?

10       A    A couple of months.

11       Q    What county do you live in?

12       A    County is Shasta.

13       Q    Approximately when did you move to Shasta

14   County?

15       A    I moved here about 1985.  I was in the middle

16   of high school.

17       Q    And you've lived in Shasta County ever since?

18       A    Barring my military service, yes.

19       Q    Are you familiar with Shasta County's policy on

20   carrying firearms?

21       A    I am.

22       Q    Would you tell us what your understanding is of

23   that policy?

24       A    It's what I've read right off of the sheriff's

25   website with regards to -- your question was about

1    carrying firearms, so I don't want to make an

2    assumption.  Can I ask you if your question refers to

3    carrying outside of your home?

4         Q    Sure.  That's fine.  Let me rephrase my

5    question, so:  What is your understanding of Shasta

6    County's policy on carrying firearms as opposed to just

7    possessing firearms?

8         A    Well, the policy is relating to carrying

9    outside the home, and that would be via the concealed

10   weapons permit process, the application process.  It's

11   all spelled out on their website, so I'm not going to go

12   over it here.  We can all read that later, if you have

13   not already.

14              So their process is very detailed on how to

15   apply and be granted that permit.

16        Q    Does Shasta County, specifically the Shasta

17   County sheriff, issue licenses to carry a firearm

18   concealed?

19        A    Yes, they have a concealed weapons permit

20   process.

21        Q    As far as you understand, is the Shasta County

22   sheriff permitted by state law to issue licenses to

23   carry firearms openly?

24        A    As far as I'm aware, there is a Penal Code

25   section that allows the issuance of an open carry permit

                                              Page 10

1   if the county has under 200,000 population.  That's my

2   understanding of that Penal Code.

3       Q   As you understand it, does Shasta County

4   qualify for that provision based on its population size?

5       A   Your audio cut out before "qualified."  Can you

6   repeat.

7       Q   Of course.  Does Shasta County have less than

8   200,000 people?

9       A   Yes.  Approximately 180,000.

10      Q   So would that Penal Code provision that you

11  just mentioned apply in Shasta County allowing the

12  county to issue open carry licenses?

13      A   That's my understanding.  We meet that, that

14  section of that law.

15      Q   As far as you know, does the Shasta County

16  sheriff issue open carry licenses?

17      A   As far as I know, I don't believe he does.  I

18  personally was denied such a request.

19      Q   Do you know why the Shasta County sheriff does

20  not issue open carry licenses?

21      A   I don't.  I do not know why.  We would have to

22  ask the sheriff at the time.  We have a different

23  sheriff now.  We would have to ask the sheriff at the

24  time why they did not do that.

25      Q   Let's just get into that for a moment.  So when

Page 11

1   you're saying the sheriff at the time, which sheriff is

2   that that you are referring to?

3       A    That was Sheriff Bosenko.

4       Q    Okay.  And so what is your understanding of

5   Sheriff Bosenko's policy as to open carry licenses?

6       A    I have it in writing, and my attorney has it,

7   hopefully it's in the record, the answer to my question

8   of regarding open carry request, their answer, I'll

9   paraphrase, was:  We do not issue those permits.

10          That was the only reasoning I was given.

11      Q    And I think you were just saying that there's a

12  new sheriff in Shasta County?

13      A    We have gone through two sheriffs now since

14  Bosenko, Magrini and now we have a new sheriff as of

15  about three weeks ago, Johnson.  I don't remember his

16  first name.  He's a brand new sheriff, just appointed.

17      Q    Did either of those two new sheriffs have a

18  different policy on open carry as far as you understand

19  it?

20      A    Let me unplug my external speaker, because the

21  first half of your question was cut off.  Let me see if

22  it fixes it.

23      Q    Okay.

24      A    And then can you repeat also.

25      Q    Of course.

Veritext Legal Solutions
866 299-5127

1        A    Okay.  One more time if you don't mind.  I've

2    got everything unplugged.  I'm on computer speakers now.

3        Q    Great.  Did either of the new two most recent

4    Shasta County sheriffs, the current one, Johnson, and

5    the last one, Magrini, have a different policy on open

6    carry licenses from Sheriff Bosenko?

7        A    That I don't know.

8        Q    Did you ever try to determine that?

9        A    I did not.

10        Q    Okay.  Did you ever contact Shasta County to

11    determine whether Shasta County has ever issued an open

12    carry license?

13        A    I have not asked that question of Shasta

14    County.

15        Q    Did you ask that question of any other county

16    in the state of California?

17        A    I don't believe I did.

18        Q    Have you ever applied in a county other than

19    Shasta County for a permit to carry a concealed firearm?

20        A    It's not a permit.  I currently possess a Law

21    Enforcement Officers Safety Act credential.  It's not a

22    permit, but it basically acts the same manner where I

23    have a federal credential to carry concealed, so I did

24    apply for that a few years ago, and I still maintain

25    that.

                                                    Page 13

1     Q   Approximately when did you apply for that?

2     A   Approximately four years, maybe five.

3     Q   Have you ever applied to the Shasta County

4 sheriff for a permit to carry a concealed firearm?

5     A   Yes.

6     Q   How many times?

7     A   Well, I applied once.  The way it works, you do

8 the application, and then you do renewals every, about

9 two years.

10    Q   Do you know approximately when you did that

11 first application?

12    A   I would be guessing.  I have to go back to my

13 notes which would take a couple minutes.  But I probably

14 first applied approximately six, seven years ago.  Maybe

15 eight.

16    Q   Do you know approximately when you last got

17 that license renewed?

18    A   I would have to go back to my notes, which

19 would take me about probably a couple of minutes to

20 answer that question, so I did apply originally.  I did

21 renewals after that.  I can't answer your questions

22 specifically right at the moment without referring to

23 notes.

24    Q   That's fine.  What was the result of your

25 application to carry a concealed firearm?

1        A    It was approved for the sheriff.  I'm assuming

2    we're still talking about Shasta County, it was

3    approved.

4        Q    Yes, that's correct.  Why did you apply for

5    that license?

6        A    At the time, the LEOSA credential was still in

7    flux, so I did not have that LEOSA at the time.  So I

8    wanted the ability to carry a concealed away from my

9    home for my personal protection and my family

10   protection.

11       Q    And when you say "LEOSA," just to be clear for

12   the record, you're referring to L-E-O-S-A; and what does

13   that mean, just so we're clear?

14       A    Federal law passed in 2003, Law Enforcement

15   Officer Safety Act.  It's basically a nationwide

16   concealed carry permit.  It's not a permit though, it's

17   called a credential, but that's what LEOSA is.

18       Q    Some when you were applying for a license in

19   Shasta County, did you need to give a reason for wanting

20   to carry a firearm?

21       A    I did.

22       Q    What was that reason?

23       A    Personal protection.

24       Q    Can you elaborate on why you would need a

25   firearm for personal protection?

Veritext Legal Solutions
866 299-5127

1          MR. BELLANTONI:  Objection.

2          You can answer.

3          THE WITNESS:  At the time that was the only

4   reason that Mr. Bosenko was asking for.  He was very

5   liberal in that portion of the application.  People

6   could put Second Amendment down if they wanted to, and

7   he was granting them at times, so I just put personal

8   protection.  I did not elaborate any further.

9   BY MR. WISE:

10     Q   What is the reason that you would like to be

11  able to carry a firearm concealed?

12     A   Well, and again, I am carrying concealed under

13  LEOSA, so I carry concealed for personal protection.

14  Protection of my family is utmost.

15     Q   Do you still have a valid concealed carry

16  permit in Shasta County?

17     A   I do not.

18          MR. WISE:  Okay.  Let's look at Exhibit 1.

19          (Exhibit 1 marked for identification.)

20  BY MR. WISE:

21     Q   Mr. Gallardo, are you able to see Exhibit 1?

22     A   Let me go full screen here.

23          Yes.  I can see it.

24     Q   Thank you.  Do you recognize this document?

25     A   Yes.

                                            Page 16

1      Q    What is it?

2      A    I'm sorry, your question?

3      Q    What is this document?

4      A    This is a document where Sheriff Bosenko

5    revoked my concealed carry permit.  That's what that

6    document is.

7      Q    What is the date of the letter?

8      A    September of 2019.

9      Q    Did Sheriff Bosenko sign this letter?

10     A    It appears so.  I don't know what his original

11   signature looks like, but it looks like his signature

12   there.

13     Q    Let's look at the first paragraph of the

14   letter.  It states that you were terminated from

15   CAL FIRE for bringing a firearm onto state property.  Is

16   it true that you were terminated from CAL FIRE?

17     A    I was, yes.

18     Q    Was bringing a firearm onto state property the

19   reason that CAL FIRE gave for terminating you?

20     A    Yes.

21     Q    Let's look at the second paragraph of the

22   letter.  It begins by stating that CAL FIRE issued a

23   special alert bulletin as a result of statements that

24   you made; is that right?

25     A    Yeah, we can read this, this document together,

Page 17

1    but I think we can all see it.  So if you want me to

2    stipulate that this is the document, I will stipulate to

3    the entire contents of this document, save us all some

4    time.

5           But there are a couple issues in here that need

6    to be put on the record regarding this document.

7       Q   We'll get there.

8           MR. WISE:  Let's look at Exhibit 2.

9           (Exhibit 2 marked for identification.)

10   BY MR. WISE:

11      Q   Can you see Exhibit 2?

12      A   I can.

13      Q   Do you recognize this document?

14      A   I'm sorry, one more time, your question?

15      Q   Of course.  Do you recognize this document?

16      A   I do.

17      Q   What is it?

18      A   It looks like the special alert bulletin put

19   out by CAL FIRE CDF.

20      Q   Is this the special alert bulletin referenced

21   in Sheriff Bosenko's letter?

22      A   I'm not sure if it -- I'm just summarizing what

23   I'm reading here on this document, it just says that I

24   brought a firearm on -- on state property, displayed it

25   in a nonthreatening manner.  I mean, we can all read

Veritext Legal Solutions
866 299-5127

1    this, so I want to save us some time.  So did you have

2    any other specific questions on this document?

3         Q    Yeah.  I was just wondering if you understand

4    this to be the alert bulletin that Sheriff Bosenko was

5    referencing in Sheriff Bosenko's letter?

6         A    I believe it is.  It's the only special alert

7    bulletin I know that was put out on me.

8         Q    What's the date of the bulletin?

9         A    At the top it looks like December 20 of 2017.

10        Q    The bulletin states that you believe that

11   CAL FIRE violated your Second Amendment rights by

12   disciplining you for bringing a firearm for the

13   workplace.  Is that your belief?

14        A    Absolutely that's my belief.

15        Q    Could you elaborate on that belief?

16        A    I will.  So I was explicitly following state

17   law when I had my firearm on the CAL FIRE property,

18   California Penal Code 171, little letter B, parentheses

19   B, parentheses 3, and that law explicitly allowed me to

20   have my concealed weapon on CAL FIRE property with the

21   concealed weapons permit that I had at the time.  So I

22   was explicitly following state law when I had my firearm

23   on that property in my vehicle, and so that's where I

24   believe my Second Amendment rights, as extended, the

25   Second Amendment extended via the permit process, I

                                              Page 19

1    believe my rights were violated, yep.

2        Q    The bulletin states that you said, quote:  I

3    did not issue threats.  I fight for what is right, just,

4    moral and lawful.  I am a staunch believer that an

5    individual has an inherent God-given right to

6    self-defense, unquote.

7            Did you make that statement?

8        A    Yes.

9        Q    Is that your belief?

10       A    Absolutely, yes.

11       Q    Could you elaborate on that?

12       A    No.  I think that's pretty self-explanatory.

13       Q    Okay let's go back to Exhibit 1.  The second

14   paragraph of Sheriff Bosenko's letter continues by

15   stating that you sent a letter dated September 2nd,

16   2019, to CAL FIRE employees and others; is that right?

17       A    Correct.

18           MR. WISE:  Let's look at Exhibit 3.

19           (Exhibit 3 marked for identification.)

20   BY MR. WISE:

21       Q    Do you recognize this document?

22       A    Yes.

23       Q    Is this the letter that Sheriff Bosenko is

24   referencing?

25       A    I believe it is.

Veritext Legal Solutions
866 299-5127

1      Q    Your letter is dated September 2nd, 2019,

2   correct?

3      A    Yes.

4      Q    Is that when you wrote that letter?

5      A    That's likely the date that I sent it out so

6   that it would have a current date.

7      Q    Did you send this letter out to CAL FIRE

8   employees and others?

9      A    Yes, I did.

10      Q    And I guess the others would be the -- those

11   referenced in the "to" line of this letter; is that

12   right?

13      A    Correct.

14      Q    Why did you write this letter?

15      A    In short, it's because there's a lot of

16   corruption in CAL FIRE, and 18 years I worked for that

17   department.  And I saw personally a lot of corruption in

18   that department, and I fought that corruption for many

19   years through the union.  And they blacklisted me, and

20   they basically were able to use my incident of having my

21   firearm on state property as a reason to get rid of me.

22   And so I felt the absolute compulsion to expose all that

23   corruption, and that is the reason for this letter.

24      Q    And this letter is approximately 13 pages; do

25   you recall that?

Veritext Legal Solutions
866 299-5127

1      A    Approximately, sure.

2      Q    Okay.  Let's go to page 7 of 13.  We'll just

3  focus on just one area of this letter.

4           Okay.  I'm focusing on the paragraph that

5  starts:  There is nothing.  "Nothing" is all capital

6  letters.

7           Would you read that paragraph?

8      A    You want me to read the entire paragraph that

9  starts:  There is nothing?

10     Q    Sure.

11     A    There is nothing in place that prevents current

12 or former CF employee or a crazed maniac from taking any

13 type of weapon to a fire station and slaughtering

14 everyone there.  Only you can be dependent upon to

15 provide for your own self-defense.  CF policy severely

16 restricts to provide for your own self-defense while at

17 work.

18     Q    By "CF," were you talking about CAL FIRE?

19     A    Yes.

20     Q    Okay.  Does that paragraph accurately summarize

21 the reason that you brought a firearm onto state

22 property?

23     A    No.  No, it does not.  No.

24     Q    What is the reason you brought a firearm onto

25 state property?

Page 22

1       A    For self- -- to have it with me, anybody that

2   caries a firearm for self-defense, they would prefer to

3   have that firearm with them or accessible to them at as

4   many times possible throughout the day.  And I was also

5   explicitly following that state law I referenced

6   earlier.

7       Q    So what did you mean by that paragraph, what

8   were you trying to convey to the reader?

9       A    I was trying to convey only the words that I

10  put on paper, nothing more.

11      Q    Let's look back at Exhibit 1.  Sheriff

12  Bosenko's letter states that he received information

13  that you were being investigated as a result of your

14  September 2nd, 2019 letter.  Are you aware that you were

15  being investigated?

16      A    No.  And to this day, several years later, I

17  have never been contacted by CAL FIRE or any law

18  enforcement or any government entity regarding that said

19  reference to investigation.  It is my personal opinion

20  that that is a false statement that they never did start

21  an investigation.  Years later I have never been

22  contacted regarding that letter, ever.

23      Q    Other than not being contacted, is there any

24  other reason that you don't believe that that

25  investigation occurred?

1        A    Is there any other reason?  The reason is as a

2    retired military police officer, if somebody is subject

3    of an investigation, eventually they're going to be

4    contacted, interviewed, whether it be by consent,

5    doesn't matter.  A letter, certified letter.  I have

6    received nothing, no contact, no letters, zero.  So I

7    believe that's a false statement that there was

8    investigation.  I have never been contacted.

9        Q    In the last sentence of the second paragraph,

10   of that paragraph we've been reading, Sheriff Bosenko

11   states that he was briefed by the CHP about an

12   August 2nd, 2019 incident involving a traffic citation.

13            Do you know what incident he's referring to?

14       A    Yes, I do.

15       Q    Can you describe what happened in that

16   incident?

17       A    I can describe it.  I was pulled over for an

18   infraction, traffic violation.  I disagreed with what

19   the officer did, and I verbally stated my disagreement

20   on the side of the road there with the officer.  And

21   then he filled out the citation, I signed it, and then I

22   left -- and I left.

23       Q    Why do you think that Sheriff Bosenko mentioned

24   that incident in the letter?

25       A    Interesting question.  I believe Sheriff

Page 24

1    Bosenko just used that as fodder to further justify my

2    revocation of my license; that's why I think he

3    mentioned that.

4         Q    Sheriff Bosenko concludes by stating that a

5    concealed carry weapons permit can only be granted to a

6    person of good moral character who obeys all laws.  And

7    then he states that he's revoking your concealed carry

8    permit; is that correct?

9         A    That's what the letter reads, yes.

10             MR. WISE:  Can we just go off the record for

11   just a moment?

12             MR. BELLANTONI:  Sorry, yes.

13             (Discussion of the record.)

14   BY MR. WISE:

15        Q    Okay.  We're back on the record.

16             Mr. Gallardo, did you respond to Sheriff

17   Bosenko's letter?

18        A    I believe I did send him a written response.

19             MR. WISE:  Okay.  Let's look at Exhibit 4.

20             (Exhibit 4 marked for identification.)

21   BY MR. WISE:

22        Q    What is this document?

23        A    Yeah, it looks like a document I created.

24        Q    What's the date of the letter?

25        A    November 19 of 2019.

Veritext Legal Solutions
866 299-5127

1    Q   Is this a letter that you wrote?

2    A   Yes.

3    Q   Why did you write this letter?

4    A   To gain public documents and to gain other

5   records.

6    Q   And why did you want public documents?

7    A   I believe the government should be as

8   transparent as legally allowed and required, no matter

9   what the situation is.  I do records acq requests all

10   the time, up to and including this week, other matters

11   not related here.  So the fact that I asked for these

12   public documents in '19 is nothing out of the ordinary

13   for me.

14    Q   Was this a request in response to Sheriff

15   Bosenko's letter, Exhibit 1, that we just reviewed?

16    A   Well, once I was revoked then, yes, I wanted

17   the documents that they had in their possession; that's

18   why I wrote this letter.

19    Q   Did Sheriff Bosenko respond to your letter?

20    A   Yes.

21    Q   What was Sheriff Bosenko's response?

22    A   I got my entire concealed weapons file.

23    Q   Did anyone in the Shasta County sheriff's

24   department send you any response, or was it Sheriff

25   Bosenko?  Who was it who responded?

1       A    Well, typically, Sean Pasley is the employee

2    at, or was the employee, I don't know if he's still

3    there, Sean Pasley was the employee at the time that

4    normally took care of all the correspondence for

5    Mr. Bosenko regarding these matters.  That's why you see

6    Sean Pasley's name is there.

7       Q    As of today, does your concealed carry permit

8    in Shasta County remain revoked?

9       A    Yes.

10      Q    Are you legally permitted to carry a firearm

11   concealed?

12      A    I am through the LEOSA credential I mentioned

13   earlier.

14      Q    Okay.  Without sharing private conversations

15   with your attorney, would you tell me how you became a

16   plaintiff in this case?

17      A    I don't remember how I heard about the case.  I

18   do listen to Mark Baird quite a bit, he's on our local

19   radio shows quite a bit regarding a lot of patriotic

20   matters.  I may have heard it through him.  I may have

21   seen a social media post, so I can't exactly say how I

22   heard about it.  But once I heard of the case I thought,

23   you know, this is kind of down my alley.  And I

24   discussed it with Mark, and from there, and then I have

25   been at it as a co-plaintiff.

1    Q   Do you know or did you know Mr. Baird

2    personally before this lawsuit was filed?

3    A   Yes, I did.

4    Q   And when you're saying that he's on the radio

5    about patriotic matters, could you just describe what

6    you're talking about?

7    A   No.  That's something you need to ask Mr. Baird

8    about.  I don't want to speak for him or about him.  I

9    would rather you ask him about that.

10    Q   I wasn't looking for Mr. Baird's

11    characterization, only what you -- you had used the

12    word, and so I was just trying to understand what you

13    were -- what your understanding is of, of that?

14    A   Well, similar to this lawsuit, sorry to

15    interrupt, similar to this lawsuit, he's fighting for

16    patriotic manners, and that's exactly what this lawsuit

17    is about, and he talks about very similar manners.

18    Q   Can you elaborate on that when you're saying

19    "what this lawsuit is about," what is this lawsuit

20    about?

21    A   I believe it's about the right to carry openly

22    without government permission using the Second Amendment

23    as originally written to keep and bear arms, that's what

24    I believe this lawsuit is about.

25    Q   What are you hoping to achieve through this

Page 28

1   lawsuit?

2       A    I hope to achieve the ability to open carry

3   without government permission; that's what I hope to

4   achieve.

5       Q    Are you seeking the right to carry a firearm

6   openly in public without any limitations?

7       A    There's always going to be limitations, so the

8   question I think -- so the answer to that is going to be

9   no, because there's always going to be limitations,

10   whether they be legal or societal or civil limitations.

11       Q    Would there be any places where you think it

12   would be okay to you not to be able to openly carry a

13   firearm?

14       A    Possibly.  Possibly maybe a courthouse, but

15   there's already armed bailiffs there.  There's security

16   measures usually in courthouses.  They're fair.

17   Certainly not entirely adequate, but they're fair.  So

18   maybe that's an example.

19       Q    Anywhere else that comes to mind?

20       A    Not off the top of my head now, no.

21       Q    Would it be okay to you not to be able to

22   openly carry a firearm when visiting an elementary

23   school?

24       A    So you're asking for my opinion?

25       Q    Yes.

                                            Page  29

1     A   I believe anybody lawfully carrying should be

2  able to carry on public school grounds.

3     Q   Are you seeking the right to carry a firearm

4  openly in public even if the Shasta County sheriff were

5  to determine that you did not have good moral character?

6     A   I'm always seeking for the ability to carry a

7  firearm in any manner without any individual determining

8  what my moral character is.  That's not for them to --

9  not for any individual to do that.

10     Q   So the answer to my question is yes?

11     A   Can you repeat the question?

12     Q   Sure.  Are you seeking the right to carry a

13  firearm openly in public, even if the Shasta County

14  sheriff were to determine that you did not have good

15  moral character?

16     A   Yes, I am seeking that.

17     Q   Are you seeking the right to carry a firearm

18  openly in public even if the Shasta County sheriff were

19  to determine that you did not have cause to do so?

20     A   Yes, I am.

21     Q   Are you seeking the right to carry a firearm

22  openly in public outside Shasta County?

23     A   Yes, absolutely.

24     Q   So if you happen to visit the City of

25  Sacramento, would you be seeking the right to carry a

Veritext Legal Solutions
866 299-5127

1    firearm openly in that city?

2         A    Yes.

3         Q    Why do you want to carry a firearm openly?

4         A    I would like the option to carry openly.  There

5    are times when open carry is a sound manner of carry,

6    specifically for deterrence.  And that's why law

7    enforcement officers carry openly; that's one of the

8    reasons they carry openly is deterrence.

9         Q    So if you have a valid concealed carry permit,

10   would you need to be able to carry openly?

11        A    Well, the question.  You had the word "need" in

12   there.  So I want the option to carry concealed or

13   openly at my discretion, nobody else's discretion.

14        Q    If it were legal to carry a firearm concealed

15   throughout California, would you still be seeking the

16   right to carry openly throughout California?

17        A    Yes, absolutely.

18        Q    Why?

19        A    Same reasons that we have already covered.

20        Q    That you would like the option to do so?

21        A    Like the option?  It's a deterrence and I would

22   like that choice.

23        Q    Have you applied in Shasta County for a permit

24   to carry firearms openly?

25        A    I have applied via -- the answer is yes.  I

1   sent the letter to Sheriff Bosenko at the time asking

2   for such a permit.

3           MR. WISE:  Okay.  Let's look at Exhibit 5.

4           (Exhibit 5 marked for identification.)

5   BY MR. WISE:

6       Q   Do you recognize this document?

7       A   Yes.

8       Q   What is it?

9       A   That's my request for two different types of

10  permits.  One is a retired federal five-year concealed

11  permit, and the other one is a request for an open carry

12  permit.

13      Q   And this is a request to Sheriff Bosenko?

14      A   Correct.

15      Q   What is the date of the letter?

16      A   December 11th, 2018.

17      Q   And I think you maybe just told me, but what

18  was the purpose of the letter?  Why did you write the

19  letter?

20      A   Correct.  Two purposes, one was for a retired

21  law enforcement five-year concealed permit, and the

22  second was for an open carry permit.

23      Q   Let me just dig into that a little bit.  So why

24  did you want those permits?

25      A   The retired federal permit, No. 1 -- excuse me

                                              Page 32

1    yes, 25650 permit, it's a five-year permit as opposed to

2    a two-year.  Then also you will see in that very same

3    letter, there's an exception to the gun-free school

4    zones that allows somebody with that particular permit

5    being retired law enforcement, to carry on school

6    property.

7         Q    And why would you want to be able to carry on

8    school property?

9         A    To protect myself and my son, who goes to

10   public school.

11        Q    And then the -- let's see here.

12             Then as you're saying, you also requested a

13   license to open carry a firearm in Shasta County; is

14   that right?

15        A    Yes.

16        Q    Okay.  And why were you seeking that open carry

17   license?

18        A    The same reasons we have already covered in

19   some of your earlier questions.  I mean, I can repeat

20   the answers if you need me to.

21        Q    Sure, go ahead.

22        A    For personal protection, to have the option for

23   deterrence purposes, those are the generic reasons.

24        Q    Did you receive a response from Sheriff Bosenko

25   to your letter?

                                              Page 33

1          A    I did receive a response; yes, I did.

2               MR. WISE:  Okay.  Let's go to Exhibit 6.

3               (Exhibit 6 marked for identification.)

4     BY MR. WISE:

5          Q    Do you recognize this document?

6          A    Yes.  That looks like -- yes, I do.

7          Q    What is it?

8          A    It's basically the similar -- this is the email

9     version of the letter we just went over just prior.

10         Q    And what's the date on this email?

11         A    Oh, this is in February, I actually had -- let

12    me get ahead of you, so the -- all right, it's

13    February 3rd of '19.  I have multiple requests into

14    Sheriff Bosenko for open carry.  That's why you're

15    seeing different letters with different dates.

16         Q    And so just so I understand this, was this a

17    follow-up email to the letter that you had sent

18    Sheriff Bosenko?

19         A    My first open carry request was December of

20    '18.  My second open carry request was February of '19;

21    that would be this one.

22         Q    Did you receive a response?

23         A    I eventually did get a response to my open

24    carry request.

25              MR. WISE:  Okay.  Let's go to Exhibit 7.

1          (Exhibit 7 marked for identification.)

2    BY MR. WISE:

3          Q    Do you recognize this document?

4          A    Yes, I do.

5          Q    What is it?

6          A    It looks like it's the response to my LEOSA or

7    my federal and my open carry request.

8          Q    And what is the date of this email?

9          A    Looks like March 11 of 2019.

10         Q    Who sent it to you?

11         A    That came from Sean Pasley; he's one of the

12   sheriff's department employees.

13         Q    That's the sheriff's department employee you

14   were referencing earlier that often responds to

15   requests, records requests for the County of Shasta?

16         A    Mr. Pasley is, was at the time, one of the main

17   processors of anything having to do with firearms

18   permits in Shasta County at the time.

19         Q    And Mr. Pasley states that Shasta County does

20   not offer a permit to carry a firearm openly; is that

21   right?

22         A    That was his response to me, yes.

23         Q    And he has a couple of explanations here,

24   right?  He says an open carry license would only allow

25   you to carry openly in Shasta County; is that correct?

                                        Page 35

1       A    That's what I'm reading also, yes.

2       Q    And then he further explains that Shasta County

3   was not inclined to extend the option to carry openly to

4   all permit holders?

5       A    Well, literally it says we would have to extend

6   this option to all permit holders, so --

7       Q    How did you understand that statement?

8       A    I understand this statement as not being a

9   valid reason to deny my open carry request.  That's how

10  I understand it.

11      Q    Did you follow up with the sheriff's department

12  to indicate that you disagreed with the basis for

13  denying you an open carry license?

14      A    I don't believe I did.

15      Q    Why not?

16      A    Well, they have already denied me knowing I was

17  retired military police, and at the time I had a current

18  concealed weapons permit through their office, so if

19  they didn't think that I was qualified and eligible to

20  carry at that point, I don't think I was going to be

21  able to change their mind, so I doubt I followed up with

22  it.

23      Q    Did you make any further attempts to obtain an

24  open carry permit in Shasta County?

25      A    No, I have not.

1    Q   Have you applied in counties other than Shasta

2    County for a permit to carry a firearm openly?

3    A   No.

4    Q   Why not?

5    A   Again, I was denied here, and then once I

6    became a co-plaintiff in this case, I'm hoping we can

7    get some good results out of this case, so I'm kind of

8    waiting.

9    Q   Have you taken any other actions to try to

10   obtain an open carry license in a county other than

11   Shasta County?

12   A   No, I have not reapplied for open carry in any

13   other county.

14        MR. WISE:  Those are all the questions that I

15   have.

16        MR. BELLANTONI:  I just have a couple of

17   questions for Mr. Gallardo to follow up on some of your

18   earlier points.

19        THE WITNESS:  Okay.

20                        EXAMINATION

21   BY MR. BELLANTONI:

22   Q   Mr. Gallardo, did you ever bring a firearm into

23   your job at CAL FIRE?

24   A   I never brought it into any of the residents'

25   halls, the sleeping quarters, the kitchen area, if

Page 37

1  that's -- if that's what your question is referring to.

2       Q   And where was your handgun stored while you

3  were at work on the particular date that was referenced

4  by Mr. Wise earlier?

5       A   In my locked car in the parking lot.

6       Q   And under what circumstances was your handgun,

7  quote, displayed, as referenced in the letter from

8  Sheriff Bosenko?

9       A   Well, up here in Shasta County at the time,

10  probably half to two-thirds of the CAL FIRE employees

11  had concealed weapons permits, so we talked a lot about

12  Second Amendment issues, what kind of firearms people

13  owned, carried, all the accessories, what's, you know,

14  what's bad as far as, you know, gear, what's called

15  carry gear.  We talked about Second Amendment and

16  firearms issues all the time.  Working at CAL FIRE, we

17  were there anywhere from three days a week to two to

18  three weeks in a row.  And so, you know, lunchtime or

19  evening hours or whenever we were not on the formal

20  clock, what's called hard time, we're allowed to talk

21  about that kind of stuff, so we talked about it often.

22  And one of my fellow employees at the time was thinking

23  about getting his concealed weapons permit, and he asked

24  me what kind of gun I carried, and so I showed it to

25  him.

                                              Page 38

1      Q   Can you describe what your position was at

2  CAL FIRE or, for the record, what CAL FIRE is?

3      A   So my position was a fire apparatus engineer,

4  and then can you repeat the second half?

5      Q   Yes.  What is CAL FIRE?

6      A   It's basically the State's fire department for

7  the State of California, and then a lot of counties

8  within the state also contract for fire protection with

9  CAL FIRE.

10     Q   And bringing your handgun onto the property and

11  keeping it locked in your car at CAL FIRE, what, if any,

12  statute or law were you violating?

13     A   I was not violating any -- any law or

14  regulation.  And earlier in this call, I described the

15  Penal Code section that explicitly allowed me to do

16  that.

17     Q   So what did CAL FIRE -- I'm sorry, what did CAL

18  FIRE allege that you had broken when it terminated you

19  for having your handgun in the parking lot in your car?

20     A   A policy.

21     Q   A handbook policy?

22     A   Yes.

23     Q   Have you ever been accused of threatening the

24  use of your firearm?

25     A   No, absolutely not.  And, in fact, in that one

Page 39

 1    bulletin that we looked at earlier today, it even says I

 2    displayed my weapon in a nonthreatening manner, so

 3    that's never been an issue with me and firearms ever.

 4         Q    And you understand that phrase that you

 5    displayed your handgun in a nonthreatening manner to be

 6    the point in time where you were showing your coworker

 7    what type of firearm you carry?

 8         A    Correct, yes.

 9              MR. BELLANTONI:  I have nothing further.

10              MR. WISE:  I don't have any additional

11    questions.

12              MS. BELLANTONI:  And, Mr. Wise, I would ask

13    also for a copy of Mr. Gallardo's deposition under the

14    federal rules so he has an opportunity to take a look at

15    it and make any corrections, if necessary.

16              MR. WISE:  Okay.  That's all.

17              (Off the record at 10:59 a.m.)

18                           --o0o--

19

20

21

22

23

24

25

                                              Page  40

```
1                    SIGNATURE OF DEPONENT

2

3        I, the undersigned, RICHARD GALLARDO, do hereby

4    certify that I have read the foregoing deposition and

5    find it to be a true and accurate transcription of my

6    testimony, with the following corrections, if any:

7    PAGE     LINE                    CHANGE

8    ____     ____     _____

9    ____     ____     _____

10   ____     ____     _____

11   ____     ____     _____

12   ____     ____     _____

13   ____     ____     _____

14   ____     ____     _____

15   ____     ____     _____

16   ____     ____     _____

17   ____     ____     _____

18   ____     ____     _____

19   ____     ____     _____

20   ____     ____     _____

21   ____     ____     _____

22   ____     ____     _____

23   ____     ____     _____

24

                          _____

25                        RICHARD GALLARDO, Date

                                               Page 41
```

```
 1                    REPORTER'S CERTIFICATE

 2

 3        I, JANICE L. BELCHER, do hereby certify:

 4        That RICHARD GALLARDO, in the foregoing deposition

 5   named, was present and by me sworn as a witness in the

 6   above-entitled action at the time therein specified;

 7        That said deposition was taken before me at said

 8   time, and was taken down in shorthand by me, a

 9   Certified Shorthand Reporter of the State of California,

10   and was thereafter transcribed into typewriting, and

11   that the foregoing transcript constitutes a full, true

12   and correct report of said deposition and of the

13   proceedings that took place;

14        That before completion of the proceedings, review

15   of the transcript was requested.

16        IN WITNESS WHEREOF, I have hereunder subscribed my

17   hand this 22nd day of September, 2021.

18

19

20

21

22        JANICE L. BELCHER, CSR No. 12342
              State of California

23

24

25
```

Page 42

1    AMY BELLANTONI

2    info@bellantoni-law.com

3                                    SEPTEMBER 22, 2021

4    RE: MARK BAIRD v. ROB BONTA

5    AUGUST 31, 2021, RICHARD GALLARDO, JOB NO. 4782562

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, notating the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                                Page 43

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2        Transcript – The witness should review the transcript and

3        make any necessary corrections on the errata pages included

4        below, noting the page and line number of the corrections.

5        The witness should then sign and date the errata and penalty

6        of perjury pages and return the completed pages to all

7        appearing counsel within the period of time determined at

8        the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested – Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 44

```
 1  MARK BAIRD v. ROB BONTA

 2  RICHARD GALLARDO, JOB NO. 4782562

 3                  E R R A T A   S H E E T

 4  PAGE_____ LINE_____ CHANGE_____

 5  _____

 6  REASON_____

 7  PAGE_____ LINE_____ CHANGE_____

 8  _____

 9  REASON_____

10  PAGE_____ LINE_____ CHANGE_____

11  _____

12  REASON_____

13  PAGE_____ LINE_____ CHANGE_____

14  _____

15  REASON_____

16  PAGE_____ LINE_____ CHANGE_____

17  _____

18  REASON_____

19  PAGE_____ LINE_____ CHANGE_____

20  _____

21  REASON_____

22

23  _____    _____

24  WITNESS                              Date

25
```

Page 45

**[& - apply]**

| & |
| --- |
| **&**   43:23 44:9 |

| 0 |
| --- |
| **00617**   1:6 |

| 1 |
| --- |
| **1**   1:25 2:12 16:18 |
| 16:19,21 20:13 |
| 23:11 26:15 32:25 |
| 44:1 |
| **1-10**   1:9 |
| **10**   5:1 |
| **10583**   3:16 |
| **10:04**   3:5 |
| **10:59**   40:17 |
| **11**   35:9 |
| **11/19/19**   2:15 |
| **11th**   32:16 |
| **12/11/18**   2:16 |
| **12/20/17**   2:13 |
| **12163**   42:21 |
| **12342**   1:23 42:22 |
| **125**   3:21 |
| **13**   21:24 22:2 |
| **1300**   3:21 |
| **16**   2:12 |
| **171**   19:18 |
| **18**   2:13 21:16 |
| 34:20 |
| **180,000**   11:9 |
| **19**   8:15 25:25 |
| 26:12 34:13,20 |
| **1985**   9:15 |

| 2 |
| --- |
| **2**   2:13 3:16 18:8,9 |
| 18:11 |
| **2/3/19**   2:17 |
| **20**   2:14 19:9 |
| **200,000**   11:1,8 |
| **2003**   15:14 |

**2017**   19:9
**2018**   32:16
**2019**   17:8 20:16
21:1 23:14 24:12
25:25 35:9
**2021**   1:15 3:4
42:17 43:3,5
**2025.520**   43:9,12
**21**   8:15
**210-6046**   3:22
**22**   43:3
**22nd**   42:17
**25**   2:15
**25650**   33:1
**2:19**   1:6
**2nd**   20:15 21:1
23:14 24:12

| 3 |
| --- |
| **3**   2:14 19:19 20:18 |
| 20:19 |
| **3/13/19**   2:18 |
| **30**   44:1 |
| **31**   1:15 43:5 |
| **31st**   3:4 |
| **32**   2:16 |
| **34**   2:17 |
| **35**   2:18 |
| **367-0090**   3:17 |
| **3rd**   34:13 |

| 4 |
| --- |
| **4**   2:3,15 25:19,20 |
| **400**   3:16 |
| **45**   1:25 |
| **4782562**   1:24 43:5 |
| 45:2 |

| 5 |
| --- |
| **5**   2:16 32:3,4 |

| 6 |
| --- |
| **6**   2:17 34:2,3 |

| 7 |
| --- |
| **7**   2:18 22:2 34:25 |
| 35:1 |

| 9 |
| --- |
| **9/17/19**   2:12 |
| **9/2/19**   2:14 |
| **914**   3:17 |
| **916**   3:22 |
| **94244**   3:22 |
| **944255**   3:21 |

| a |
| --- |
| **a.m.**   3:5 40:17 |
| **ability**   15:8 29:2 |
| 30:6 |
| **able**   6:1 16:11,21 |
| 21:20 29:12,21 |
| 30:2 31:10 33:7 |
| 36:21 |
| **absolute**   21:22 |
| **absolutely**   19:14 |
| 20:10 30:23 31:17 |
| 39:25 |
| **ac**   1:6 |
| **accessible**   23:3 |
| **accessories**   38:13 |
| **accurate**   41:5 |
| **accurately**   22:20 |
| **accused**   39:23 |
| **achieve**   28:25 29:2 |
| 29:4 |
| **acq**   26:9 |
| **act**   13:21 15:15 |
| **action**   3:8 42:6 |
| **actions**   37:9 |
| **acts**   13:22 |
| **additional**   40:10 |
| **adequate**   29:17 |

**advanced**   9:4
**advises**   5:18
**ago**   4:25 8:23,24
12:15 13:24 14:14
**ahead**   33:21 34:12
**alert**   2:13 17:23
18:18,20 19:4,6
**allege**   39:18
**allergies**   5:13
**alley**   27:23
**allow**   35:24
**allowed**   6:4 19:19
26:8 38:20 39:15
**allowing**   11:11
**allows**   10:25 33:4
**amendment**   16:6
19:11,24,25 28:22
38:12,15
**amy**   3:15 43:1
**answer**   5:6,8,12
5:16,18 12:7,8
14:20,21 16:2
29:8 30:10 31:25
**answers**   33:20
**anybody**   6:25 7:5
23:1 30:1
**apparatus**   39:3
**appearances**   3:13
**appeared**   3:7
**appearing**   43:18
44:7
**appears**   17:10
**application**   10:10
14:8,11,25 16:5
**applied**   7:22 13:18
14:3,7,14 31:23,25
37:1
**apply**   10:15 11:11
13:24 14:1,20
15:4

**applying**  15:18
**appointed**  12:16
**approved**  15:1,3
**approximately**
  4:24 8:21 9:13
  11:9 14:1,2,10,14
  14:16 21:24 22:1
**area**  22:3 37:25
**armed**  29:15
**arms**  28:23
**asked**  5:17 13:13
  26:11 38:23
**asking**  7:3 16:4
  29:24 32:1
**assuming**  15:1
**assumption**  10:2
**attempts**  36:23
**attorney**  1:8 3:19
  3:20 4:8 5:16,17
  6:22 7:4 12:6
  27:15
**audio**  6:24 11:5
**august**  1:15 3:4
  24:12 43:5
**aware**  8:5 10:24
  23:14

**b**

**b**  2:10 19:18,19
  44:1
**back**  14:12,18
  20:13 23:11 25:15
**bad**  5:14 38:14
**bailiffs**  29:15
**baird**  1:4 3:25 4:9
  27:18 28:1,7 43:4
  45:1
**baird's**  28:10
**barring**  9:18
**based**  11:4
**basically**  13:22
  15:15 21:20 34:8

39:6
**basis**  36:12
**bear**  28:23
**begins**  17:22
**belcher**  1:23 3:6
  42:3,22
**belief**  19:13,14,15
  20:9
**believe**  6:14 11:17
  13:17 19:6,10,24
  20:1,25 23:24
  24:7,25 25:18
  26:7 28:21,24
  30:1 36:14
**believer**  20:4
**bellantoni**  3:15,15
  3:17 16:1 25:12
  37:16,21 40:9,12
  43:1,2
**better**  6:15
**bit**  6:15 27:18,19
  32:23
**blacklisted**  21:19
**bonta**  1:7 3:19 4:9
  43:4 45:1
**bosenko**  12:3,14
  13:6 16:4 17:4,9
  19:4 20:23 24:10
  24:23 25:1,4
  26:19,25 27:5
  32:1,13 33:24
  34:14,18 38:8
**bosenko's**  12:5
  18:21 19:5 20:14
  23:12 25:17 26:15
  26:21
**box**  3:21
**brand**  12:16
**break**  5:10,12
**briefed**  24:11

**bring**  37:22
**bringing**  17:15,18
  19:12 39:10
**broken**  39:18
**brought**  18:24
  22:21,24 37:24
**bulletin**  2:13
  17:23 18:18,20
  19:4,7,8,10 20:2
  40:1

**c**

**ca**  43:9,12,20
**cal**  17:15,16,19,22
  18:19 19:11,17,20
  20:16 21:7,16
  22:18 23:17 37:23
  38:10,16 39:2,2,5
  39:9,11,17,17
**california**  1:2,8
  3:22 4:8 7:13,14
  7:17,20 13:16
  19:18 31:15,16
  39:7 42:9,22
**call**  39:14
**called**  15:17 38:14
  38:20
**capacity**  1:8
**capital**  22:5
**car**  38:5 39:11,19
**care**  27:4
**caries**  23:2
**carried**  38:13,24
**carry**  7:22 10:17
  10:23,25 11:12,16
  11:20 12:5,8,18
  13:6,12,19,23 14:4
  14:25 15:8,16,20
  16:11,13,15 17:5
  25:5,7 27:7,10
  28:21 29:2,5,12,22
  30:2,3,6,12,17,21

30:25 31:3,4,5,5,7
  31:8,9,10,12,14,16
  31:24 32:11,22
  33:5,7,13,16 34:14
  34:19,20,24 35:7
  35:20,24,25 36:3,9
  36:13,20,24 37:2
  37:10,12 38:15
  40:7
**carrying**  8:16 9:20
  10:1,3,6,8 16:12
  30:1
**case**  4:8 5:2 27:16
  27:17,22 37:6,7
**cause**  3:10 30:19
**ccp**  43:9,12
**cdf**  18:19
**certainly**  29:17
**certificate**  42:1
**certification**  8:19
**certified**  3:6 9:6
  24:5 42:9
**certify**  41:4 42:3
**cetera**  8:16
**cf**  22:12,15,18
**change**  36:21 41:7
  45:4,7,10,13,16,19
**character**  25:6
  30:5,8,15
**characterization**
  28:11
**choice**  31:22
**chp**  24:11
**circumstances**
  38:6
**citation**  24:12,21
**city**  30:24 31:1
**civil**  29:10 43:19
  43:20
**class**  8:23 9:1,2,4

[classes - district]

**classes**  9:7
**clear**  15:11,13
**clearly**  6:9 7:2
**clock**  38:20
**code**  10:24 11:2,10
  19:18 39:15 43:9
  43:12,19,20
**comes**  29:19
**commencing**  3:4
**comment**  6:5
**committed**  8:6
**companies**  9:5
**company**  7:9
**completed**  43:7,17
  44:6
**completion**  42:14
  44:10
**compulsion**  21:22
**computer**  13:2
**concealed**  6:19 9:4
  10:9,18,19 13:19
  13:23 14:4,25
  15:8,16 16:11,12
  16:13,15 17:5
  19:20,21 25:5,7
  26:22 27:7,11
  31:9,12,14 32:10
  32:21 36:18 38:11
  38:23
**concludes**  25:4
**consent**  24:4
**constitutes**  42:11
**contact**  13:10 24:6
  43:9
**contacted**  23:17
  23:22,23 24:4,8
**contents**  18:3
**continues**  20:14
**contract**  39:8
**conversation**  6:22

**conversations**
  27:14
**convey**  23:8,9
**convicted**  7:25 8:2
**copy**  40:13
**correct**  15:4 20:17
  21:2,13 25:8
  32:14,20 35:25
  40:8 42:12
**corrections**  6:2,4,5
  40:15 41:6 43:14
  43:15 44:3,4
**correspondence**
  27:4
**corruption**  21:16
  21:17,18,23
**counsel**  43:18,21
  44:7
**counties**  37:1 39:7
**county**  9:11,12,14
  9:17 10:16,17,21
  11:1,3,7,11,12,15
  11:19 12:12 13:4
  13:10,11,14,15,18
  13:19 14:3 15:2
  15:19 16:16 26:23
  27:8 30:4,13,18,22
  31:23 33:13 35:15
  35:18,19,25 36:2
  36:24 37:2,10,11
  37:13 38:9
**county's**  9:19 10:6
**couple**  4:19 9:10
  14:13,19 18:5
  35:23 37:16
**course**  11:7 12:25
  18:15
**court**  1:1 5:4 6:1
**courthouse**  29:14
**courthouses**  29:16

**courtroom**  4:16
**covered**  31:19
  33:18
**coworker**  40:6
**crazed**  22:12
**created**  25:23
**credential**  13:21
  13:23 15:6,17
  27:12
**csr**  1:23 42:22
**current**  7:8 13:4
  21:6 22:11 36:17
**currently**  13:20
**cut**  6:24 7:15 11:5
  12:21
**cv**  1:6

**d**

**d**  2:1 4:13
**date**  17:7 19:8
  21:5,6 25:24
  32:15 34:10 35:8
  38:3 41:25 43:16
  44:5 45:24
**dated**  20:15 21:1
**dates**  34:15
**day**  3:4 23:4,16
  42:17
**days**  38:17
**december**  19:9
  32:16 34:19
**defendant**  3:19
**defendants**  1:10
**defense**  20:6 22:15
  22:16 23:2
**denied**  7:23 11:18
  36:16 37:5
**deny**  36:9
**denying**  36:13
**department**  9:6
  21:17,18 26:24
  35:12,13 36:11

39:6
**dependent**  22:14
**deponent**  41:1
**deposed**  4:23
**deposition**  1:14
  3:1 4:18,21 5:2,25
  6:12,23 7:5,6
  40:13 41:4 42:4,7
  42:12 43:19,22,24
  44:8,10
**deputy**  3:20
**describe**  8:13
  24:15,17 28:5
  39:1
**described**  39:14
**detailed**  10:14
**determine**  13:8,11
  30:5,14,19
**determined**  43:18
  43:22 44:7
**determining**  30:7
**deterrence**  31:6,8
  31:21 33:23
**different**  11:22
  12:18 13:5 32:9
  34:15,15
**dig**  32:23
**disagreed**  24:18
  36:12
**disagreement**
  24:19
**disciplining**  19:12
**discretion**  31:13
  31:13
**discussed**  7:4
  27:24
**discussion**  25:13
**displayed**  18:24
  38:7 40:2,5
**district**  1:1,2

**[document - gallardo]**

**document** 6:16
16:24 17:3,4,6,25
18:2,3,6,13,15,23
19:2 20:21 25:22
25:23 32:6 34:5
35:3
**documents** 6:13
6:17,18 26:4,6,12
26:17
**doj.ca.gov** 3:23
**doubt** 36:21
**duly** 3:8

**e**

**e** 2:1,10 15:12 43:9
43:12 44:1 45:3,3
45:3
**earlier** 23:6 27:13
33:19 35:14 37:18
38:4 39:14 40:1
**eastern** 1:2
**eight** 14:15
**either** 12:17 13:3
**elaborate** 15:24
16:8 19:15 20:11
28:18
**elementary** 29:22
**eligible** 7:12,16,20
36:19
**else's** 31:13
**email** 2:17,18 34:8
34:10,17 35:8
**employee** 22:12
27:1,2,3 35:13
**employees** 20:16
21:8 35:12 38:10
38:22
**enforcement**
13:21 15:14 23:18
31:7 32:21 33:5
**engineer** 39:3

**entire** 18:3 22:8
26:22
**entirely** 29:17
**entitled** 42:6
**entity** 23:18
**errata** 43:14,16
44:3,5
**et** 8:16
**evening** 38:19
**eventually** 24:3
34:23
**everybody** 7:2
**exactly** 27:21
28:16
**examination** 2:3
4:5 37:20
**examined** 3:9
**example** 29:18
**exception** 33:3
**excuse** 5:13 32:25
**exhibit** 2:12,13,14
2:15,16,17,18
16:18,19,21 18:8,9
18:11 20:13,18,19
23:11 25:19,20
26:15 32:3,4 34:2
34:3,25 35:1
**explains** 36:2
**explanations**
35:23
**explanatory** 20:12
**explicitly** 19:16,19
19:22 23:5 39:15
**expose** 21:22
**extend** 36:3,5
**extended** 19:24,25
**external** 12:20

**f**

**facility** 8:7
**fact** 26:11 39:25

**fair** 29:16,17
**false** 23:20 24:7
**familiar** 4:20 9:19
**family** 15:9 16:14
**far** 10:21,24 11:15
11:17 12:18 38:14
**february** 34:11,13
34:20
**federal** 13:23
15:14 32:10,25
35:7 40:14 44:1,8
44:9
**fellow** 38:22
**felony** 7:25
**felt** 21:22
**fight** 20:3
**fighting** 28:15
**file** 6:19 26:22
**filed** 28:2
**filled** 24:21
**find** 41:5
**fine** 10:4 14:24
**finish** 5:6,11
**fire** 5:13 17:15,16
17:19,22 18:19
19:11,17,20 20:16
21:7,16 22:13,18
23:17 37:23 38:10
38:16 39:2,2,3,5,6
39:8,9,11,17,18
**firearm** 7:12,16,20
7:23 8:3,8,11 9:9
10:17 13:19 14:4
14:25 15:20,25
16:11 17:15,18
18:24 19:12,17,22
21:21 22:21,24
23:2,3 27:10 29:5
29:13,22 30:3,7,13
30:17,21 31:1,3,14
33:13 35:20 37:2

37:22 39:24 40:7
**firearms** 8:16 9:20
10:1,6,7,23 31:24
35:17 38:12,16
40:3
**fired** 9:8
**firm** 3:15
**first** 3:8 6:24 7:15
12:16,21 14:11,14
17:13 34:19
**five** 6:24 14:2
32:10,21 33:1
**fixes** 12:22
**flux** 15:7
**focus** 22:3
**focusing** 22:4
**fodder** 25:1
**follow** 34:17 36:11
37:17
**followed** 36:21
**following** 19:16,22
23:5 41:6
**follows** 4:3 43:8
**foregoing** 41:4
42:4,11
**formal** 8:24 38:19
**former** 22:12
**fought** 21:18
**four** 14:2
**frcp** 44:1
**free** 33:3
**full** 4:10 16:22
42:11
**further** 16:8 25:1
36:2,23 40:9

**g**

**g** 4:13
**gain** 8:18 26:4,4
**gallardo** 1:4,14
3:1,7 4:1,12 16:21
25:16 37:17,22

[gallardo - license]

41:3,25 42:4 43:5
45:2
**gallardo's** 40:13
**gear** 38:14,15
**general** 1:8 3:19
3:20 4:8
**generic** 8:19 33:23
**getting** 38:23
**give** 5:8 9:6 15:19
**given** 9:5 12:10
20:5
**go** 10:11 14:12,18
16:22 20:13 22:2
25:10 33:21 34:2
34:25
**god** 20:5
**goes** 33:9
**going** 10:11 24:3
29:7,8,9 36:20
**good** 4:7 25:6 30:5
30:14 37:7
**government** 23:18
26:7 28:22 29:3
**granted** 10:15
25:5
**granting** 16:7
**great** 13:3
**grounds** 8:5 30:2
**guess** 21:10
**guessing** 14:12
**gun** 33:3 38:24
**guns** 8:16

**h**

**h** 2:10 45:3
**half** 12:21 38:10
39:4
**halls** 37:25
**hand** 42:17
**handbook** 39:21
**handgun** 38:2,6
39:10,19 40:5

**handled** 43:8
**happen** 30:24
**happened** 24:15
**hard** 38:20
**head** 29:20
**health** 8:7
**hear** 7:2
**heard** 7:14 27:17
27:20,22,22
**hereunder** 42:16
**high** 9:16
**holders** 36:4,6
**home** 10:3,9 15:9
**hope** 29:2,3
**hopefully** 12:7
**hoping** 28:25 37:6
**hour** 3:4
**hours** 38:19

**i**

**identification**
16:19 18:9 20:19
25:20 32:4 34:3
35:1
**incident** 21:20
24:12,13,16,24
**inclined** 36:3
**included** 43:14
44:3
**including** 26:10
**indicate** 36:12
**individual** 20:5
30:7,9
**info** 3:17 43:2
**information** 23:12
**informed** 7:19
**infraction** 24:18
**inherent** 20:5
**instructor** 8:17,19
**interested** 7:4
**interesting** 24:25

**interrupt** 28:15
**interviewed** 24:4
**investigated** 23:13
23:15
**investigation**
23:19,21,25 24:3,8
**involuntarily** 8:6
**involving** 24:12
**issuance** 10:25
**issue** 10:17,22
11:12,16,20 12:9
20:3 40:3
**issued** 13:11 17:22
**issues** 6:14 18:5
38:12,16

**j**

**janice** 1:23 3:6
42:3,22
**jason** 4:12
**job** 1:24 7:8,10
37:23 43:5 45:2
**johnson** 12:15
13:4
**justify** 25:1

**k**

**keep** 28:23
**keeping** 39:11
**kind** 8:13 27:23
37:7 38:12,21,24
**kitchen** 37:25
**kjm** 1:6
**know** 5:11,22 6:3
11:15,17,19,21
13:7 14:10,16
17:10 19:7 24:13
27:2,23 28:1,1
38:13,14,18
**knowing** 36:16

**l**

**l** 1:23 3:6 4:13,13
15:12 42:3,22
**law** 3:15 10:22
11:14 13:20 15:14
15:14 19:17,19,22
23:5,17 31:6
32:21 33:5 39:12
39:13
**law.com** 3:17 43:2
**lawful** 20:4
**lawfully** 30:1
**laws** 25:6
**lawsuit** 28:2,14,15
28:16,19,19,24
29:1
**left** 24:22,22
**legal** 29:10 31:14
43:7
**legally** 8:3,7 26:8
27:10
**leosa** 15:6,7,11,17
16:13 27:12 35:6
**letter** 2:12,14,15
2:16 17:7,9,14,22
18:21 19:5,18
20:14,15,23 21:1,4
21:7,11,14,23,24
22:3 23:12,14,22
24:5,5,24 25:9,17
25:24 26:1,3,15,18
26:19 32:1,15,18
32:19 33:3,25
34:9,17 38:7
**letters** 22:6 24:6
34:15
**liberal** 16:5
**license** 7:22 13:12
14:17 15:5,18
25:2 33:13,17
35:24 36:13 37:10

Page 5

[licenses - originally]

**licenses**   10:17,22
11:12,16,20 12:5
13:6
**limitations**   29:6,7
29:9,10
**line**   21:11 41:7
43:15 44:4 45:4,7
45:10,13,16,19
**listen**   27:18
**literally**   36:5
**little**   6:15 7:11
19:18 32:23
**live**   9:11
**lived**   9:17
**local**   7:9 9:5 27:18
**locked**   38:5 39:11
43:12 44:1
**long**   4:25 7:10
8:16
**look**   16:18 17:13
17:21 18:8 20:18
23:11 25:19 32:3
40:14
**looked**   40:1
**looking**   28:10
**looks**   17:11,11
18:18 19:9 25:23
34:6 35:6,9
**lot**   21:15,17 27:19
38:5,11 39:7,19
**lunchtime**   38:18

**m**

**magrini**   12:14
13:5
**main**   35:16
**maintain**   13:24
**maniac**   22:12
**manner**   13:22
18:25 30:7 31:5
40:2,5

**manners**   28:16,17
**march**   35:9
**mark**   1:4 3:25
27:18,24 43:4
45:1
**marked**   16:19
18:9 20:19 25:20
32:4 34:3 35:1
**matter**   24:5 26:8
**matters**   26:10
27:5,20 28:5
**matthew**   3:20 4:7
**matthew.wise**
3:23
**mean**   6:18 15:13
18:25 23:7 33:19
**measures**   29:16
**media**   27:21
**meet**   11:13
**mental**   8:6
**mentioned**   11:11
24:23 25:3 27:12
**middle**   9:15
**military**   8:15 9:18
24:2 36:17
**mind**   13:1 29:19
36:21
**minutes**   14:13,19
**misdemeanor**   8:2
**moment**   11:25
14:22 25:11
**months**   9:10
**moral**   20:4 25:6
30:5,8,15
**morning**   4:7
**move**   9:13
**moved**   9:15
**multiple**   34:13

**n**

**n**   2:1
**name**   4:7,10,11,12
12:16 27:6
**named**   42:5
**nationwide**   15:15
**nature**   8:25
**necessary**   40:15
43:14 44:3
**need**   5:5,10 6:14
15:19,24 18:5
28:7 31:10,11
33:20
**never**   23:17,20,21
24:8 37:24 40:3
**new**   3:16 12:12,14
12:16,17 13:3
**nonthreatening**
18:25 40:2,5
**normally**   27:4
**notating**   43:15
44:4
**notes**   14:13,18,23
**notice**   3:3
**november**   25:25
**nra**   8:17
**number**   43:15
44:4

**o**

**o**   4:13 15:12
**o0o**   1:3 3:11 40:18
**oath**   4:15
**obeys**   25:6
**objection**   5:16
16:1
**obtain**   36:23 37:10
**occurred**   23:25
**offer**   35:20
**office**   36:18 43:11

**officer**   15:15 24:2
24:19,20
**officers**   13:21 31:7
**official**   1:7
**oh**   4:25 7:11 34:11
**okay**   5:9,13,23
6:21 12:4,23 13:1
13:10 16:18 20:13
22:2,4,20 25:15,19
27:14 29:12,21
32:3 33:16 34:2
34:25 37:19 40:16
**once**   14:7 26:16
27:22 37:5
**ones**   6:14
**open**   10:25 11:12
11:16,20 12:5,8,18
13:5,11 29:2 31:5
32:11,22 33:13,16
34:14,19,20,23
35:7,24 36:9,13,24
37:10,12
**openly**   10:23
28:21 29:6,12,22
30:4,13,18,22 31:1
31:3,4,7,8,10,13
31:16,24 35:20,25
36:3 37:2
**opinion**   23:19
29:24
**opportunity**   5:24
40:14
**opposed**   10:6 33:1
**option**   31:4,12,20
31:21 33:22 36:3
36:6
**ordinary**   26:12
**original**   17:10
43:10,21
**originally**   14:20
28:23

**[outside - read]**

**outside**  10:3,9
  30:22
**overhill**  3:16
**owned**  38:13
**owning**  8:3,8

**p**

**p.o.**  3:21
**pacific**  3:5
**page**  2:2,11 22:2
  41:7 43:15 44:4
  45:4,7,10,13,16,19
**pages**  1:25 21:24
  43:14,17,17 44:3,6
  44:6
**paper**  23:10
**paragraph**  17:13
  17:21 20:14 22:4
  22:7,8,20 23:7
  24:9,10
**paraphrase**  12:9
**parentheses**  19:18
  19:19
**parking**  38:5
  39:19
**part**  7:15
**particular**  33:4
  38:3
**pasley**  27:1,3
  35:11,16,19
**pasley's**  27:6
**passed**  15:14
**patriotic**  27:19
  28:5,16
**pdf**  43:12 44:1
**penal**  10:24 11:2
  11:10 19:18 39:15
**penalty**  43:16 44:5
**pending**  5:12
**people**  11:8 16:5
  38:12

**period**  43:18 44:7
**perjury**  43:17
  44:6
**permission**  28:22
  29:3
**permit**  10:10,15
  10:19,25 13:19,20
  13:22 14:4 15:16
  15:16 16:16 17:5
  19:21,25 25:5,8
  27:7 31:9,23 32:2
  32:11,12,21,22,25
  33:1,1,4 35:20
  36:4,6,18,24 37:2
  38:23
**permits**  12:9
  32:10,24 35:18
  38:11
**permitted**  10:22
  27:10
**person**  5:5 25:6
**personal**  15:9,23
  15:25 16:7,13
  23:19 33:22
**personally**  11:18
  21:17 28:2
**phrase**  40:4
**pistol**  8:17
**place**  22:11 42:13
**places**  29:11
**plaintiff**  27:16,25
  37:6
**plaintiffs**  1:5 3:14
**plus**  5:1
**point**  36:20 40:6
**points**  37:18
**police**  24:2 36:17
**policy**  9:19,23
  10:6,8 12:5,18
  13:5 22:15 39:20
  39:21

**population**  11:1,4
**portion**  16:5
**position**  39:1,3
**possess**  7:12,16,20
  13:20
**possessing**  10:7
**possession**  26:17
**possible**  5:15 23:4
**possibly**  29:14,14
**post**  27:21
**prefer**  23:2
**prepare**  6:12
**prepared**  6:15
**present**  3:24 42:5
**pretty**  20:12
**prevent**  6:9 8:7
**prevents**  22:11
**prior**  34:9
**private**  6:22 9:5
  27:14
**probably**  5:1
  14:13,19 38:10
**procedure**  43:19
  43:20
**proceedings**  42:13
  42:14
**process**  10:10,10
  10:14,20 19:25
**processors**  35:17
**produced**  3:7
**prohibit**  8:3
**propane**  7:9
**property**  17:15,18
  18:24 19:17,20,23
  21:21 22:22,25
  33:6,8 39:10
**protect**  33:9
**protection**  15:9,10
  15:23,25 16:8,13
  16:14 33:22 39:8

**provide**  22:15,16
**provided**  43:19
  44:8
**provision**  11:4,10
**public**  26:4,6,12
  29:6 30:2,4,13,18
  30:22 33:10
**pulled**  24:17
**purpose**  32:18
**purposes**  32:20
  33:23
**pursuant**  3:3
**put**  16:6,7 18:6,18
  19:7 23:10

**q**

**qualifications**  8:18
**qualified**  11:5
  36:19
**qualify**  11:4
**quarters**  37:25
**question**  5:7,8,12
  5:15,17,18,21,22
  7:1 9:25 10:2,5
  12:7,21 13:13,15
  14:20 17:2 18:14
  24:25 29:8 30:10
  30:11 31:11 38:1
**questions**  14:21
  19:2 33:19 37:14
  37:17 40:11
**quite**  27:18,19
**quote**  20:2 38:7

**r**

**r**  3:20 4:13 45:3,3
**r&s**  44:1,9
**radio**  27:19 28:4
**read**  9:24 10:12
  17:25 18:25 22:7
  22:8 41:4

Veritext Legal Solutions
866 299-5127

**[reader - service]**

**reader** 23:8

**reading** 18:23
24:10 36:1 43:23
44:9

**reads** 25:9

**really** 5:14

**reapplied** 37:12

**reason** 15:19,22
16:4,10 17:19
21:21,23 22:21,24
23:24 24:1,1 36:9
45:6,9,12,15,18,21

**reasoning** 12:10

**reasons** 31:8,19
33:18,23

**recall** 5:3 21:25

**receive** 5:25 33:24
34:1,22

**received** 8:10,14
8:22 23:12 24:6

**recognize** 16:24
18:13,15 20:21
32:6 34:5 35:3

**record** 4:11 6:3
12:7 15:12 18:6
25:10,13,15 39:2
40:17

**recording** 5:4

**records** 26:5,9
35:15

**reference** 23:19

**referenced** 18:20
21:11 23:5 38:3,7
43:6

**referencing** 19:5
20:24 35:14

**referring** 12:2
14:22 15:12 24:13
38:1

**refers** 10:2

**regarding** 12:8
18:6 23:18,22
27:5,19

**regards** 9:25

**regulation** 39:14

**related** 26:11

**relating** 10:8

**released** 43:21

**remain** 27:8

**remember** 5:1
12:15 27:17

**remembered** 3:3

**renewals** 14:8,21

**renewed** 14:17

**repeat** 11:6 12:24
30:11 33:19 39:4

**rephrase** 5:22
10:4

**report** 42:12

**reported** 1:22

**reporter** 3:7 5:4
6:1 42:9

**reporter's** 42:1

**represent** 4:8

**request** 11:18 12:8
26:14 32:9,11,13
34:19,20,24 35:7
36:9

**requested** 33:12
42:15 44:1,9,10

**requests** 26:9
34:13 35:15,15

**required** 26:8

**residents** 37:24

**respond** 7:3 25:16
26:19

**responded** 26:25

**responds** 35:14

**response** 25:18
26:14,21,24 33:24
34:1,22,23 35:6,22

**restricts** 22:16

**result** 14:24 17:23
23:13

**results** 37:7

**retired** 24:2 32:10
32:20,25 33:5
36:17

**return** 43:17 44:6

**review** 5:25 6:16
42:14 43:8,10,13
44:2

**reviewed** 6:13,17
6:19 26:15

**revocation** 25:2

**revoked** 17:5
26:16 27:8

**revoking** 25:7

**richard** 1:4,14 3:1
3:7 4:1,12 41:3,25
42:4 43:5 45:2

**rid** 21:21

**right** 9:24 14:22
17:24 20:3,5,16
21:12 28:21 29:5
30:3,12,17,21,25
31:16 33:14 34:12
35:21,24

**rights** 19:11,24
20:1

**road** 3:16 24:20

**rob** 1:7 3:19 43:4
45:1

**row** 38:18

**rules** 4:20 40:14
44:8

**s**

**s** 2:10 15:12 45:3

**sacramento** 3:22
30:25

**safety** 13:21 15:15

**save** 18:3 19:1

**saw** 21:17

**saying** 12:1,11
28:4,18 33:12

**says** 18:23 35:24
36:5 40:1

**scarsdale** 3:16

**schedule** 43:10

**school** 9:16 29:23
30:2 33:3,5,8,10

**screen** 16:22

**sean** 27:1,3,6
35:11

**second** 16:6 17:21
19:11,24,25 20:13
24:9 28:22 32:22
34:20 38:12,15
39:4

**section** 10:25
11:14 39:15

**security** 29:15

**see** 12:21 16:21,23
18:1,11 27:5 33:2
33:11

**seeing** 34:15

**seeking** 29:5 30:3
30:6,12,16,17,21
30:25 31:15 33:16

**seen** 27:21

**self** 20:6,12 22:15
22:16 23:1,2

**send** 21:7 25:18
26:24

**sent** 20:15 21:5
32:1 34:17 35:10

**sentence** 24:9

**september** 17:8
20:15 21:1 23:14
42:17 43:3

**service** 9:18

Veritext Legal Solutions
866 299-5127

[seven - today's]

seven  14:14
severely  22:15
sharing  27:14
shasta  9:12,13,17
  9:19 10:5,16,16,21
  11:3,7,11,15,19
  12:12 13:4,10,11
  13:13,19 14:3
  15:2,19 16:16
  26:23 27:8 30:4
  30:13,18,22 31:23
  33:13 35:15,18,19
  35:25 36:2,24
  37:1,11 38:9
sheriff  10:17,22
  11:16,19,22,23,23
  12:1,1,3,5,12,14
  12:16 13:6 14:4
  15:1 17:4,9 18:21
  19:4,5 20:14,23
  23:11 24:10,23,25
  25:4,16 26:14,19
  26:21,24 30:4,14
  30:18 32:1,13
  33:24 34:14,18
  38:8
sheriff's  9:6,24
  26:23 35:12,13
  36:11
sheriffs  12:13,17
  13:4
short  21:15
shorthand  3:6
  42:8,9
showed  38:24
showing  40:6
shows  27:19
side  24:20
sign  17:9 43:16
  44:5

signature  17:11,11
  41:1 42:21 43:21
  43:23,23 44:9
signed  24:21
similar  28:14,15
  28:17 34:8
situation  26:9
six  6:25 14:14
size  11:4
slaughtering
  22:13
sleeping  37:25
smoke  5:14
social  27:21
societal  29:10
solutions  43:7
somebody  24:2
  33:4
son  33:9
sorry  17:2 18:14
  25:12 28:14 39:17
sound  31:5
speak  5:5 6:23
  28:8
speaker  12:20
speakers  13:2
speaking  6:25
special  2:13 17:23
  18:18,20 19:6
specific  19:2
specifically  10:16
  14:22 31:6
specified  42:6
spell  4:10
spelled  10:11
spoke  7:5
standard  3:5
start  5:8 23:20
starts  22:5,9
state  1:8 4:10 7:13
  7:14 10:22 13:16

17:15,18 18:24
  19:16,22 21:21
  22:21,25 23:5
  39:7,8 42:9,22
  43:9,12
state's  39:6
stated  24:19
statement  20:7
  23:20 24:7 36:7,8
statements  17:23
states  1:1 17:14
  19:10 20:2 23:12
  24:11 25:7 35:19
stating  17:22
  20:15 25:4
station  22:13
statute  39:12
staunch  20:4
stenographically
  1:22
stipulate  18:2,2
stipulation  43:20
stored  38:2
street  3:21
stuff  38:21
subject  24:2
subscribed  42:16
suite  3:16,21
summarize  22:20
summarizing
  18:22
sure  10:4 18:22
  22:1,10 30:12
  33:21
sworn  3:9 4:2 42:5

t

t  2:10 45:3,3
take  4:15 5:10,12
  14:13,19 40:14
taken  4:18 37:9
  42:7,8

talk  38:20
talked  38:11,15,21
talking  15:2 22:18
  28:6
talks  28:17
tell  9:22 27:15
terminated  17:14
  17:16 39:18
terminating  17:19
testified  4:3
testifying  4:14,16
  6:9
testimony  41:6
thank  16:24
think  5:1 12:11
  18:1 20:12 24:23
  25:2 29:8,11
  32:17 36:19,20
thinking  6:9 38:22
thirds  38:10
thought  27:22
threatening  39:23
threats  20:3
three  7:11 12:15
  38:17,18
time  3:5 4:23 5:6
  5:10 8:21 9:8
  11:22,24 12:1
  13:1 15:6,7 16:3
  18:4,14 19:1,21
  26:10 27:3 32:1
  35:16,18 36:17
  38:9,16,20,22 40:6
  42:6,8 43:10,18,24
  44:7
times  4:19 14:6
  16:7 23:4 31:5
today  4:15 6:1,8
  27:7 40:1
today's  6:12

[told - zones]

**told**  32:17
**top**  19:9 29:20
**traffic**  24:12,18
**training**  8:10,13
  8:15,18,22,24,25
**transcribed**  42:10
**transcript**  5:25
  6:2 42:11,15 43:6
  43:8,10,13,13,21
  44:2,2
**transcription**  41:5
**transparent**  26:8
**true**  17:16 41:5
  42:11
**truthfully**  6:10
**try**  5:5,6,22 13:8
  37:9
**trying**  23:8,9
  28:12
**two**  8:23,24 12:13
  12:17 13:3 14:9
  32:9,20 33:2
  38:10,17
**type**  22:13 40:7
**types**  32:9
**typewriting**  42:10
**typically**  27:1

### u

**undersigned**  41:3
**understand**  4:14
  5:19,21 6:6 10:21
  11:3 12:18 19:3
  28:12 34:16 36:7
  36:8,10 40:4
**understanding**
  9:22 10:5 11:2,13
  12:4 28:13
**union**  21:19
**united**  1:1
**unplug**  12:20

**unplugged**  13:2
**unquote**  20:6
**use**  8:10 21:20
  39:24
**usually**  29:16
**utmost**  16:14

### v

**v**  43:4 45:1
**vaguely**  4:22
**valid**  16:15 31:9
  36:9
**vehicle**  19:23
**verbally**  24:19
**veritext**  43:7,9,11
**version**  34:9
**videoconference**
  1:14 3:1,5,13
**violated**  19:11
  20:1
**violating**  39:12,13
**violation**  24:18
**visit**  30:24
**visiting**  29:22
**vs**  1:6 4:9

### w

**waiting**  37:8
**waived**  43:23,23
**waiving**  43:20
**want**  6:21 10:1
  18:1 19:1 22:8
  26:6 28:8 31:3,12
  32:24 33:7
**wanted**  15:8 16:6
  26:16
**wanting**  15:19
**way**  14:7
**we've**  5:1 24:10
**weapon**  19:20
  22:13 40:2

**weapons**  6:19 9:4
  10:10,19 19:21
  25:5 26:22 36:18
  38:11,23
**website**  9:25 10:11
**week**  26:10 38:17
**weeks**  12:15 38:18
**went**  34:9
**whereof**  42:16
**wise**  2:3 3:20 4:6,7
  16:9,18,20 18:8,10
  20:18,20 25:10,14
  25:19,21 32:3,5
  34:2,4,25 35:2
  37:14 38:4 40:10
  40:12,16
**witness**  3:8,9 4:2
  16:3 37:19 42:5
  42:16 43:13,16
  44:2,5 45:24
**wondering**  19:3
**word**  28:12 31:11
**words**  6:25 23:9
**work**  7:9 22:17
  38:3
**worked**  21:16
**working**  38:16
**workplace**  19:13
**works**  14:7
**wow**  4:25
**write**  21:14 26:3
  32:18
**writing**  12:6
**written**  25:18
  28:23
**wrote**  21:4 26:1,18

### x

**x**  2:1,10 44:1

### y

**yeah**  17:25 19:3
  25:23
**year**  8:23 32:10,21
  33:1,2
**years**  5:1 7:11
  8:15,24 13:24
  14:2,9,14 21:16,19
  23:16,21
**yep**  20:1
**york**  3:16

### z

**zero**  24:6
**zones**  33:4

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.