CHRIS COSCA   CA SBN 144546
COSCA LAW CORPORATION
1007 7th Street, Suite 210
Sacramento, CA 95814
(916) 440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
(914) 367-0090
*Pro Hac Vice*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--------------------------------------------------------x

MARK BAIRD and
RICHARD GALLARDO,

                     Plaintiffs,

        v.

ROB BONTA, in his official capacity

                     Defendant.

--------------------------------------------------------x

Case No.: 2:19-cv-00617KJM-AC

**PLAINTIFFS' OBJECTIONS TO THE COURT'S PRE-TRIAL CASE SCHEDULE [ECF NO. 77]**

Judge:      Kimberly J. Miller
Courtroom:  3
Trial Date:  None set
Action Filed: April 9, 2019

1

2

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................... i

Procedural Background (Abridged) ............................................................................................. 2

ARGUMENT ................................................................................................................................ 5

I. DEFENDANT FAILED TO ESTABLISH 'GOOD CAUSE' TO REOPEN
EXPERT DISCOVERY ............................................................................................................... 5

Legal Standard to Reopen Discovery ......................................................................................... 5

     A. Defendant Failed to Exercise Diligence .......................................................................... 6

     B. Plaintiffs Opposed the Request ........................................................................................ 7

     C. Trial Has Not Been Scheduled ......................................................................................... 8

     D. The Foreseeability Factor Forecloses Reopening Expert Discovery ............................ 8

     E. Discovery Will Not Lead to Relevant Evidence .............................................................. 9

     F. Defendant Cannot Have a 'Second Bite at the Apple' .................................................. 10

II. REOPENING <u>FACT</u> DISCOVERY WAS IMPROPER,
AN ABUSE OF DISCRETION, AND PREJUDICIAL TO PLAINTIFFS ................................. 10

III. BRUEN 'REITERATED' THE STANDARD – IT DID NOT CREATE NEW LAW .......... 10

     A. Under *Bruen*, Experts Are Unwarranted and Improper in This Case .......................... 11

     B. The Meaning of the Second Amendment is "Historically Fixed" ................................ 12

     C. Ninth Circuit Precedent Also Requires the Court Look No Further ............................ 12

IV. THIS CASE TURNS ON LEGAL, NOT FACTUAL, ISSUES ........................................... 13

V. SUMMARY JUDGMENT MOTIONS SHOULD HAVE BEEN SCHEDULED ................... 15

CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Enloe Med. Ctr.*,
2022 WL 4134833 (E.D. Cal. Aug. 17, 2022)........................................................................ 5, 6

*Caetano v.  Massachusetts*,
577 U.S. 411 (2016).............................................................................................................. 8, 14

*Crawford v. Washington*,
541 U.S. 36 (2004)................................................................................................................. 14

*Dimitre v. California State Univ. Employees' Union*,
2019 WL 4670827 (E.D. Cal. Sept. 25, 2019)...................................................................... 5

*District of Columbia v. Heller*,
554 U.S. 570 (2008).............................................................................................................. 11, 14

*Estate of Barabin v. Asten Johnson, Inc.*,
740 F.3d 457 (9th Cir. 2014) ................................................................................................ 13

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ................................................................................................ 13

*In re Asbestos Prod. Liab. Litig. (No. VI*,
278 F.R.D. 126 (E.D. Pa. 2011)............................................................................................ 8

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ................................................................................................ 5

*Johnson v. Merck & Co.*,
2022 WL 229860 (E.D. Cal. Jan. 26, 2022) ........................................................................ 5, 6

*Katen & Sons, Inc. v. Allegheny Trucks, Inc.*,
2018 WL 3159822 (N.D.N.Y. May 17, 2018)...................................................................... 8

*McDonald v. City of Chicago*,
561 U.S. 742 (2010).............................................................................................................. 8, 11

*Mukhtar v. Cal. State Univ.*,
299 F.3d 1053 (9th Cir. 2002) .............................................................................................. 13

*Nevada Comm'n on Ethics v. Carrigan*,
564 U.S. 117 (2011).............................................................................................................. 14

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022)..........................................................................................................Passim

i

# TABLE OF AUTHORITIES (con't)

**Page(s)**

**Cases**

*Noyes v. Kelly Servs.*,
  488 F.3d 1163 (9th Cir.2007) ................................................................................. 6

*Peruta v. County of San Diego*,
  824 F. 3d 919 (9th Cir.2016) ................................................................................ 12

*Sheridan v. Reinke*,
  611 F. App'x 381 (9th Cir. 2015) ........................................................................... 5

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017) ................................................................................ 13

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017) .............................................................................. 13

*Virginia v. Moore*,
  553 U.S. 164 (2008) .............................................................................................. 14

*Yeager v. Yeager*,
  2009 WL 1159175 (E.D. Cal. Apr. 29, 2009) ......................................................... 5

**Statutes**

California Penal Code section 25850 .............................................................. 10, 11, 15
California Penal Code section 26350 .............................................................. 10, 11, 15

**Rules**

Fed. R. Civ. P. 16 ....................................................................................................... 5, 6

ii

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs Mark Baird and Richard Gallardo hereby object to the November 4, 2022 Pre-Trial Case Schedule[1] in which the Court *sua sponte* reopened fact discovery, reopened expert discovery upon the request of Defendant[2], denied Plaintiffs' request that dispositive motions be scheduled[3], and otherwise extended the resolution and final adjudication of Plaintiffs' claims by almost 1 year, causing substantial prejudice to Plaintiffs, continued irreparable harm, and the unnecessary delay of the adjudication of the merits of Plaintiffs' Second and Fourteenth Amendment claims, as clearly erroneous and contrary to law.

Procedural Background (Abridged)

The Complaint in this action was filed on April 9, 2019. [ECF No. 1]. Defendant filed a motion to dismiss, which was fully submitted on October 1, 2019 [ECF No. 26] and decided on August 31, 2020. [ECF No. 33]. The parties filed an Amended Status Report with a proposed discovery plan on September 28, 2020. [ECF No. 35].[4]

Approximately 7 months later, and on April 12, 2021, the Court Ordered the first discovery schedule. [ECF No. 39].  The Court's April 12, 2021 Scheduling Order provided:

- Initial disclosures are due April 30, 2021;
- Fact discovery must be completed by August 27, 2021;[5]
- Expert opinions must be disclosed by August 27, 2021;
- Rebuttal expert opinions must be disclosed by September 24, 2021;
- Expert discovery must be completed by October 29, 2021; and
- The last day for hearing dispositive motions is December 17, 2021.

---

[1] ECF No. 77.
[2] ECF No. 72.
[3] ECF No. 72.
[4] Defendant's Answer was filed on November 2, 2020. [ECF No. 38].
[5] The deadline for fact discovery was extended to September 3, 2021. [ECF No. 53].

2

Fact and expert discovery were conducted and concluded on or before November 30, 2021. [ECF No. 55]. During discovery, Plaintiffs retained a historical expert, Clayton Cramer, on the issue of the history and tradition of the open carriage of handguns in this Nation, including the State of California. Mr. Cramer's expert report was submitted in support of Plaintiffs' First and Second Motions for a Preliminary Injunction. [ECF Nos. 27, 46].

Defendant retained expert Kim Raney, former Covina Chief of Police; Defendant relied on Mr. Raney's expert report, the expert publications and studies from John Donohue, Abhay Aneja, and Kyle Weber, Dr. Michael Seigel, among others, and the voluminous publications cited therein (over 7 pages of citations) in reaching their conclusions, in submitting his oppositions to Plaintiffs' First and Second Motions for a Preliminary Injunction. [ECF Nos. 20, 40].

During expert discovery, Defendant retained a historical expert – Professor Saul Cornell – whose expert report was produced to Plaintiffs on August 27, 2021. [Exhibit 1].

Professor Cornell was retained by Defendant to provide, "an expert opinion on the history of firearms regulation in the Anglo-American legal tradition, with a particular emphasis on the regulation of public (also referred to as "open") carry of arms at the national, and state level, with specific attention to California's regulatory history." [ECF No. 56-3, page 4 of 148].

Mr. Cornell's expert report provides Defendant with numerous citations, references, and other voluminous historical accounts for Defendant to research, rely upon, and/or pursue. [ECF No. 56-3].

Defendant had a full and fair opportunity to depose Plaintiffs' historical expert, Clayton Cramer, which was conducted on October 21, 2021.

Defendant did not seek to extend expert discovery to identify any additional historical experts.  [See, ECF Docket, generally].

On November 19, 2021, Defendant filed a Motion for Summary Judgment [ECF No. 56], in which he submitted the expert reports of the State's historian Professor Saul Cornell, former Covina Police Chief Kim Raney, as well as the various publications of John Donohue, Abhay Aneja, and Kyle Weber, Dr. Michael Seigel and the copious references cited therein. [ECF No. 56-3].[6]

A Second Amended Complaint ("SAC") was filed on September 27, 2022 [ECF No. 68], which *narrowed* the claims asserted. Plaintiffs no longer challenge California's licensing statutes - Penal Code sections 26150 and 26155. [ECF No. 68]. California's licensing regulations for the concealed carriage of handguns are not on the table in this action; the SAC only challenges the criminal penalties for the open carriage of a handgun. [ECF No. 68].

A Third Amended Status Report was filed on October 7, 2022. [ECF No. 72]. In the "Scheduling Anticipated Discovery" section, Plaintiffs represented that "[f]act and expert discovery were complete" and reminded the Court that a "schedule for summary judgment motions was set by the Court" prior to the stay of the proceedings. [ECF No. 72 at p. 5]. Plaintiffs objected to and opposed Defendant's request to reopen discovery, indicating that "further delay will cause [Plaintiffs] substantial prejudice, there is no good faith justification for Defendant's request, and reopening discovery will not lead to new and relevant evidence. [*Ibid.*]. Defendant requested that expert discovery be reopened. [ECF No. 72 at pp. 6-7].

Defendants have never requested that fact discovery be reopened. [ECF No. 72; See, Transcript of November 4, 2022 proceedings].

---

[6] The proceedings were stayed upon stipulation of the parties on December 2, 2021 pending the decision in *NYSRPA v. Bruen* [ECF Nos. 57, 58] and thereafter lifted on July 7, 2022. [ECF No. 59]. Plaintiffs filed a Third Motion for a Preliminary Injunction [ECF No. 65], which was fully submitted on October 11, 2022. [ECF No. 73]. Plaintiffs' Second Amended Complaint was filed on September 27, 2022 [ECF No. 68] and Defendant's Answer on October 31, 2022. [ECF No. 76].

After oral argument on Plaintiffs' Third Motion for a Preliminary Injunction, the Court *sua sponte* reopened fact discovery, granted Defendant's request to reopen expert discovery over Plaintiffs' objections, and delayed the hearing of summary judgment motions until September 22, 2023. [ECF No. 77; See, Transcript of November 4, 2022 Proceedings].

## ARGUMENT

## I. DEFENDANT FAILED TO ESTABLISH 'GOOD CAUSE' TO REOPEN EXPERT DISCOVERY

### Legal Standard to Reopen Discovery

The central purposes of Federal Rule 16 are to expedite the disposition of an action, eliminate protracted litigation, and discouragement of wasteful pretrial activities.

A moving party must show good cause to modify a scheduling order. This standard applies to requests to reopen discovery. *Bailey v. Enloe Med. Ctr.*, No. 218CV00055 (KJM) (DMC), 2022 WL 4134833, at *3 (E.D. Cal. Aug. 17, 2022) citing, Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *Sheridan v. Reinke*, 611 F. App'x 381, 384 (9th Cir. 2015) (unpublished) (applying *Johnson* "good cause" requirement to motions to reopen discovery); accord, *Johnson v. Merck & Co.*, No. 2:20-CV-00138(KJM) (DB), 2022 WL 229860, at *1 (E.D. Cal. Jan. 26, 2022) (denying motion to reopen expert discovery for lack of good cause), citing, *Yeager v. Yeager*, No. 2:06-001196, 2009 WL 1159175, at *2 (E.D. Cal. Apr. 29, 2009) (moving party must show good cause to reopen discovery); accord, *Dimitre v. California State Univ. Employees' Union*, No. 2:17-CV-01698-(KJM) (DB), 2019 WL 4670827, at *1 (E.D. Cal. Sept. 25, 2019).

Specific factors courts consider when analyzing a motion to reopen discovery include (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in

5

light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence. *Merck,* at *1.

A.  Defendant Failed to Exercise Diligence

In *Johnson v. Merck*, this Court recognized, "[o]f these six factors, the primary factor is the fourth: whether the moving party was diligent in its attempts to complete discovery in a timely manner…If the moving party was not diligent, the inquiry should end, and the request should be denied." *Merck*, at * 1; see also, *Bailey*, at *3 (the 'good cause' inquiry focuses primarily on the diligence of the requesting party) quoting, *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1173–74 (9th Cir.2007).

In *Merck*, this Court denied the defendants' motion to reopen expert discovery due to their failure to exercise diligence. The defendants took no steps to assist the court in creating a workable Rule 16 Order, act on "reasonably foreseen or anticipated" events, or an amendment to the Rule 16 scheduling order.

Likewise, Defendant's failure to exercise diligence required the denial of his request to reopen expert discovery.

Expert discovery concluded on November 17, 2021.[7] During the course of this litigation, Plaintiffs[8] and Defendant[9] retained historical experts specifically to address the history and tradition of 'open carry' in this Nation.

On November 19, 2021, Defendant filed a Motion for Summary Judgment, which included the expert report of his historical expert, Professor Saul Cornell, as well as other purported expert publications and references.[10]

Defendant posits that, because of the *Bruen* decision, he needs 'more time here to continue the historical analysis'[11], 'compil[e] the historical record' and identify 'trained historians' to undergo 'painstaking efforts just to identify the sources available to answer a

---

[7] ECF No. 55.
[8] ECF Nos. 27, 46.
[9] ECF Nos. 20, 40; ECF No. 56-3, page 4 of 148; Exhibit 1.
[10] ECF No. 56.
[11] Transcript of November 4, 2022 Proceedings at p. 27.

6

particular historical inquiry' – because even identifying such sources 'does not necessarily mean that those sources are available to be accessed, read, and analyzed'; and, of course, 'the process of putting together findings is also incredibly time consuming, comprising potentially hundreds or even thousands of hours depending on the inquiry.' [ECF No. 72 at p. 8 of 9].

Defendant's position must be summarily rejected.

The Supreme Court decision in *Bruen* was published on June 23, 2022.

Leaving aside the fact that 'the historical analysis' Defendant seeks to undertake on the issue of bearing arms in public has already been compiled, completed, and laid to rest by *Bruen* itself, **and** the fact that Defendant ***already retained an historical expert on this issue*** who was the subject of expert discovery in this litigation, Defendant has presented ***zero*** evidence that he took ***any*** steps to identify, compile, and analyze any additional history between June 23, 2022 and now.

Once *Bruen* was published, Defendant took no steps to file a motion to reopen discovery; instead, his belated and informal request to reopen expert discovery was made via an updated Status Report, in which he also fails to inform the Court that he ***already retained*** Professor Saul Cornell, to provide, "an expert opinion on the history of firearms regulation in the Anglo-American legal tradition, with a particular emphasis on the regulation of public (also referred to as "open") carry of arms at the national, and state level, with specific attention to California's regulatory history." [ECF No. 56-3, page 4 of 148].

B. Plaintiffs Opposed the Request[12]

This action was filed in 2019. The challenged regulations are an objectively obvious violation of the Second and Fourteenth Amendments. No injunction has issued[13]; Plaintiffs and other similarly situated individuals are suffering irreparable harm resulting from the continued violation of their the "constitutional right to bear arms in public for self-defense [which] is not "a

---

[12] See also, ECF No. 72 at pp. 5-6.

[13] Plaintiffs' first motion for a preliminary injunction filed on July 8, 2019 [ECF No. 14] was denied on August 31, 2020 [ECF No. 33]; Plaintiffs' second motion for a preliminary injunction filed on April 13, 2021 [ECF No. 40], oral argument was heard on July 16, 2021 [ECF No. 50]; no decision was rendered on the motion and this action was stayed on December 2, 2021 pending a determination in *Bruen*. [ECF No. 58]. Plaintiffs' third motion for a preliminary injunction was filed on August 8, 2022. [ECF No. 65].

second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, at 2156, quoting, *McDonald*, 561 U.S. at 780 (plurality opinion).

In addition to the other grounds set forth herein for Plaintiffs' objections, continued delay will continue to cause them presumed[14] constitutional harm.

C. Trial Has Not Been Scheduled

While 'trial has not been scheduled', which may weigh in favor of granting Defendant's request, this Court has found that the fact that the request to reopen discovery is opposed "weighs against" a finding of good cause. *Dimitre*, at *2. ("Defendant will suffer at least some prejudice due to the delay that would be caused by reopening discovery") citing, *Katen & Sons, Inc. v. Allegheny Trucks, Inc.*, No. 316CV01124BKSDEP, 2018 WL 3159822, at *1 (N.D.N.Y. May 17, 2018) (noting court found defendant would be prejudiced by delay if court amended scheduling order); cf. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 278 F.R.D. 126, 130 (E.D. Pa. 2011), adhered to, No. MDL 875, 2012 WL 10929213 (E.D. Pa. Mar. 12, 2012), and aff'd, 718 F.3d 236 (3d Cir. 2013) ("[I]f Plaintiffs' counsel fails to comply with the Court's roadmap without justification, as in this case, not only will the Court not reach the merits in a timely fashion, but the progress of other cases waiting in the queue will also be delayed.").

In the case at bar, Plaintiffs are substantially prejudiced by the Court's reopening of expert discovery, which further delays the filing of dispositive motions in these proceedings for close to one year – pushing a meritorious adjudication of Plaintiffs' claims into yonder pastures.

D. The Foreseeability Factor Forecloses Reopening Expert Discovery

The framework for analyzing Second Amendment challenges did not change with *Bruen*. The Supreme Court laid out the framework in *Heller* – text, history, and tradition. *Caetano v. Massachusetts*, 577 U.S. 411 (2016) expressly relied on *Heller*'s historical analysis. *Bruen* reiterated, consistent with *Heller*, that text, history, and tradition are the test. *Bruen*, at 2130.[15]

---

[14] See, *Bruen*, at 2126 ("In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct.").
[15] Noting that this standard of review "accords with how we protect other constitutional rights." *Bruen*, 2130.

1    Defendant quite obviously foresaw the need for historical analysis as borne out by his
2    retention of Professor Saul Cornell as an expert in this litigation. Defendant has been provided
3    with an ample, full, and fair opportunity for his 'trained historian' to 'identify the sources
4    available to answer' *this* particular historical inquiry and undertake the purportedly 'incredibly
5    time consuming' feat of spending 'potentially hundreds or even thousands of hours' 'putting
6    together [his] findings.' [see, ECF No. 72 at p. 6].

7    E. Discovery Will Not Lead to Relevant Evidence

8    There is no likelihood that reopening expert discovery will lead to any additional relevant
9    evidence. *Heller* and *Bruen* have already established the history and tradition in the Founding Era
10   of carrying weapons in public. And because the plain text of the Second Amendment itself -
11   "keep and bear" – presumptively protects the right to carry arms in public, is no evidence that will
12   support the idea that criminal statutes penalizing the exercise of that right are, somehow,
13   consistent with the Second Amendment.

14   F.  Defendant Cannot Have a 'Second Bite at the Apple'

15   As set forth in Part IA, *supra*, Defendant retained an expert of his choosing to provide, "an
16   expert opinion on the history of firearms regulation in the Anglo-American legal tradition, with a
17   particular emphasis on the regulation of public (also referred to as "open") carry of arms at the
18   national, and state level, with specific attention to California's regulatory history." [ECF No. 56-
19   3, page 4 of 148].

20   The legal issue to be decided by this Court remains the same. Reopening expert discovery
21   improperly provided Defendant with a second bite at the apple and unduly prejudiced Plaintiffs.

22   Given the above, including Defendant's lack of diligence, primarily, taking account of
23   Plaintiffs' opposition to the request to reopen, and the foreseeability of Defendant's situation,[16]
24   and the fact that Defendant has already retained and used an expert on the history and tradition of
25   open carry in this litigation, the Court should vacate its decision to reopen expert discovery.

26

27   _____

[16] *Dimitre*, at *3.
28

9

1
2

## II. REOPENING <u>FACT</u> DISCOVERY WAS IMPROPER,
## AN ABUSE OF DISCRETION, AND PREJUDICIAL TO PLAINTIFFS

3      Plaintiffs also object to the Court's *sua sponte* reopening of <u>fact</u> discovery.

4      Defendant made no request for fact discovery to be reopened.[17] To the contrary, in the

5      parties' Third Amended Status Report, Defendant specifically represented that he "does not

6      anticipate further fact discovery." [18] No request to reopen fact discovery was made at the parties'

7      oral argument/scheduling conference on November 4, 2022. [Ex.2].

8      No facts have changed, and the record does not give rise to good cause – or any

9      cognizable ground - for fact discovery to be reopened; the Court's decision was an abuse of

10     discretion and clearly erroneous.

11     Moreover, the issues here – whether criminal penalties against ordinary people who open

12     carry for self-defense violate the Second and Fourteenth Amendments – are not fact driven.

13     Anyone who carries a handgun open and holstered in public is guilty of a crime in violation of

14     California Penal Code sections 25850 and 26350. The government must show that Penal Code

15     sections 25850 and 26350 - the criminalization of open carry – are consistent with this Nation's

16     historical traditions. This is a purely legal issue.

17     There is no purpose for reopening fact discovery except to cause unnecessary delay in

18     adjudicating the merits of Plaintiff's claims, undue prejudice, and protracted exacerbation of their

19     constitutional harms.

20     That part of the Court's Order reopening fact discovery should be vacated.

21   ### III. *BRUEN* 'REITERATED' THE STANDARD – IT DID NOT CREATE NEW LAW

22     In deciding *Bruen*, the Supreme Court did not create a new standard of review – it

23     reiterated the same standard that was used to evaluate Second Amendment challenges in *Heller*

24     and *McDonald* – text, history and tradition. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,

25
26

27     ---
       [17] Fact discovery closed on September 3, 2021. [ECF No. 53].
       [18] ECF No. 72 at p. 7.
28

1   142 S. Ct. 2111, 2127-2130 (2022) (confirming that *Heller* "declined to engage in means-end

2   scrutiny generally, but it also specifically ruled out the intermediate-scrutiny test.")

3          "We reiterate that the standard for applying the Second Amendment
           is as follows: When the Second Amendment's plain text covers an

4          individual's conduct, the Constitution ***presumptively protects*** that
           conduct.

5
           The government must then justify its regulation by demonstrating

6          that it is consistent with the Nation's historical tradition of firearm
           regulation. Only then may a court conclude that the individual's

7          conduct falls outside the Second Amendment's "unqualified
           command."

8

9   *Bruen*, at 2129–30 (emphasis added) (*Heller* and *McDonald* expressly rejected judge-empowering

10  interest-balancing inquiry that weighs a protected right against governmental interests) (cleaned

11  up) citing, *Heller*, 554 U.S. at 634, *McDonald*, 561 U.S. at 790–791 (plurality opinion).

12
           A.  Under *Bruen*, Experts Are Unwarranted and Improper in This Case

13
           The text, tradition, and historical record are straightforward and within the ken of the

14  Court. Like *Heller*, Plaintiffs are challenging an absolute ban on a Second Amendment right. See,

15  *Bruen*, at 2131 ("One of the District's regulations challenged in *Heller* totally banned handgun

16  possession in the home.") (citing, *Heller* at 628) (quotation marks omitted). Penal Code sections

17  25850 and 26350 ban the open carriage of a handgun in public for self-defense.

18
           Like *Heller*, California is attempting to "address[] a perceived societal problem - firearm

19  violence in densely populated communities - and [is] employ[ing] a regulation - a flat ban on

20  [open carry] -  that the Founders themselves could have adopted to confront that problem." *Bruen,*

21  at 2131.

22
           Like *Heller* and the case at bar, New York's "proper cause" requirement concerned the

23  same alleged societal problems -  "handgun violence," primarily in "urban area[s]." *Bruen,* at

24  2131.

25
           Like the District of Columbia (*Heller*) and New York (*Bruen*), throughout this litigation,

26  Defendant has pressed the same public safety, interest balancing justifications for their

27  regulations that have now been *thrice* rejected by the Supreme Court.

28

11

1   Like *Bruen*, this Court need only look to the plain text and well-established historical
2   record to determine whether laws imposing criminal penalties upon individuals who open carry
3   for self-defense in public violate the Second Amendment.

4   The Second Amendment's plain text presumptively guarantees the right to "bear" arms in
5   public for self-defense. *Bruen*, at 2135.

6   B. The Meaning of the Second Amendment is "Historically Fixed"

7   In determining whether the statutes are consistent with the scope of the right to bear arms
8   when the Bill of Rights was passed [*Bruen*, at 2129-30], the meaning of the Second Amendment
9   is "historically fixed." *Bruen*, at 2132. *Bruen* – a public carry case – forecloses any
10   reinterpretation of the history and tradition of public carry during the Founding Era. And, "to the
11   extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

12   This is not a case involving unique or modern conduct or new circumstances where the
13   Court would be called upon to try to find an analogous regulation from the Founding Era – a
14   comparable justification for regulating modern technology, for instance.

15   In the case before this Court – there is nothing new under the sun. The conduct being
16   regulated is a central part of the Second Amendment - "bearing arms."

17   *Bruen* concluded:

18   "Apart from a few late-19th-century outlier jurisdictions, American
19   governments simply have not broadly prohibited the public carry of
    commonly used firearms for personal defense."

20   *Bruen*, at 2121.

21   C. Ninth Circuit Precedent Also Requires the Court Look No Further

22   *Peruta v. County of San Diego*, 824 F. 3d 919 (9th Cir.2016) (en banc) made clear that in
23   the Ninth Circuit "the Second Amendment does not protect in any degree the right to carry
24   *concealed* firearms in public." *Peruta*, at 939 (emphasis added).

25   The Second Amendment protects the right to carry a handgun for self-defense in public.

26   "We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and
27   Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside
28   the home." *Bruen*, at 2122.

12

In the Ninth Circuit, therefore, the Right presumptively protected and guaranteed by the Second and Fourteenth Amendments is the Right to open carry.

Banning open carry and subjecting ordinary people, like Plaintiffs, to criminal penalties for exercising that Right, therefore, violates the Second and Fourteenth Amendments.

No 'expert' is required to reach that uncomplicated conclusion.

## IV.  THIS CASE TURNS ON LEGAL, NOT FACTUAL, ISSUES

It is the sole province of the Court to interpret the laws and pass on their constitutionality. Consistent with Rule 704(a), an expert witness cannot give an opinion as to a legal conclusion. *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017); see also, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002), overruled on other grounds by *Estate of Barabin v. Asten Johnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 337 (9th Cir. 2017).

The issue to be decided – whether criminal penalties against ordinary people for exercising the right to open carry a handgun in public for self-defense violates the Second and Fourteenth Amendments – is solely a matter of law for the Court to decide. No expert can make that determination for the Court. While *Bruen* has conclusively made that determination, *Heller* and *Bruen* also demonstrate that the historical record and secondary sources are in the public domain and do not necessitate an historian.

*Bruen* and *Heller* require courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, at 2131. Here, the inquiry is straightforward.[19]

Because "not all history is created equal", *Bruen* reiterated that "Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Id.* at

---

[19] Even where the court encounters challenges to 'modern regulations', 'unprecedented societal concerns or dramatic technological changes', Bruen directs courts to reason by historical analogy: "When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy—a commonplace task for any lawyer or judge. Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, at 2132.

2136, citing, *Heller*, at 634–635 (emphasis supplied). As the Supreme Court did in *Heller*, *Caetano*[20], and *Bruen*, this Court must look to the Founding Era (1791) to determine the scope and meaning of the Second Amendment.

"The scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791. *Bruen*, at 2137-38 citing, e.g., *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

The extensive historical analysis conducted in *Heller* and *Bruen* reveal that in the century leading up to the Second Amendment and in the first decade after its adoption, there is no historical basis for concluding that a ban on public carry is consistent with the plain text of the Second Amendment or the Nation's historical traditions. *Bruen*, at 2145.

Statutory prohibitions on public carry did not begin to arise until the mid-19th Century – already past the relevant time period for review. *Bruen*, at 2148. Even then, the only manner of carry that was banned was concealed carry. Even surety statutes *presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of "reasonable cause to fear an injury, or breach of the peace. *Bruen*, at 2148. There is no founding-era historical precedent, including the various restrictive laws in the colonial period, that is analogous to the State's ban on open carry.

Under *Bruen*, this Court is bound to find that there is no such tradition in the Founding Era of banning the public carriage of firearms. Any 'expert' opinion contrary to that conclusion would be *inconsistent* with the plain text of the Second Amendment. See, *Bruen*, ("to the extent later history contradicts what the text says, the text controls." *Bruen*, at 2137.

---

[20] See, *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curium) expressly relying on *Heller*'s historical analysis and reasoning.

1   Based on the above, the use of expert opinion to reach the issue of whether Penal Code

2   sections 25850 and 26350 violate the Second and Fourteenth Amendments is unwarranted and

3   would be improper.

4   **V. SUMMARY JUDGMENT MOTIONS SHOULD HAVE BEEN SCHEDULED**

5   In the Third Amended Status Report, Plaintiffs requested that the Court set an immediate

6   schedule for summary judgment motions. Plaintiffs' request was effectively denied by the

7   schedule created by the Court on November 4, 2022.

8   Plaintiffs object to the delay in scheduling summary judgment motions. Plaintiffs seek an

9   immediate adjudication of their claims and request that the Court set a motion schedule that

10   allows for summary judgment motions to be heard no later than 60 days from the date the within

11   Objections are decided.

**CONCLUSION**

12

13   For the foregoing reasons, Plaintiffs' Objections should be sustained in their entirety.

14

15   Respectfully submitted,

16   Dated: November 18, 2022                    THE BELLANTONI LAW FIRM, PLLC

17

18   /s/ Amy L. Bellantoni, Esq.
     Amy L. Bellantoni
19   Counsel for Plaintiffs
     Email: abell@bellantoni-law.com
20

21

22

23

24

25

26

27

28