1

2

3

4

5

6

7

8                                 UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    Mark Baird and Richard Gallardo,                     No. 2:19-cv-00617-KJM-AC

12                          Plaintiffs,                     ORDER

13          v.

14
      Rob Bonta in his official capacity as Attorney
15    General of the State of California, et al.,

16                          Defendants.

17

18          While this case is pending, plaintiffs Mark Baird and Richard Gallardo ask the court to

19    enjoin two California laws that impose criminal liability on people who carry handguns openly in

20    public.  To obtain that relief, they must show the balance of equities tips in their favor and a

21    preliminary injunction is in the public interest, among other things.  *Winter v. Nat. Res. Def.*

22    *Council, Inc.*, 555 U.S. 7, 20 (2008).  They have not, so **their motion is denied**.  In addition, they

23    have not shown they have standing to pursue all of the claims in their complaint.  Their complaint

24    is **dismissed in part for lack of jurisdiction on the court's own motion**, as explained in detail

25    below.

26    **I.      BACKGROUND**

27          Baird and Gallardo would like to carry loaded handguns openly for self-defense outside

28    their homes.  *See* Second Am. Compl. ¶ 3, ECF No. 68; Baird Decl. ¶ 5, ECF No. 65-1; Gallardo

1   Decl. ¶ 6, ECF No. 65-2.  In this action they challenge two California criminal statutes imposing

2   criminal liability on those who carry handguns openly in public.  First, California Penal Code

3   section 25850 makes it a crime to carry "a loaded firearm on the person or in a vehicle while in

4   any public place or on any public street in an incorporated city or in any public place or on any

5   public street in a prohibited area of unincorporated territory."  Cal. Penal Code § 25850(a).

6   Second, Penal Code section 26350 makes it a crime to carry "an exposed and unloaded handgun"

7   on the person or in a vehicle in several public places, such as on a "public street in an

8   incorporated city or city and county."  *Id.* §§ 26350(a)(1), (a)(2).[1]

9        These general prohibitions are subject to several exceptions.  For example, a "peace

10   officer or any honorably retired peace officer" can openly carry a handgun in many

11   circumstances.  *Id.* §§ 25900, 26361.  A licensed hunter can openly carry unloaded handguns to

12   and from a "hunting expedition."  *Id.* § 26366.  People can also keep firearms in their homes and

13   businesses.  *See Peruta v. Cty. of San Diego*, 824 F.3d 919, 925 (9th Cir. 2016) (en banc),

14   *abrogated in part on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct.

15   2111 (2022).  These are, again, just examples; there are several other exceptions in the Penal

16   Code.  *See, e.g.*, Cal. Penal Code §§ 26361–26392; *see also Peruta*, 824 F.3d at 925–26

17   (summarizing several exceptions).  Federal laws also exempt certain current and former federal

18   officers from some of California's prohibitions.  *See* 18 U.S.C. §§ 926B, 926C.

19        In addition to these exceptions, a person can apply "for a license to carry a pistol,

20   revolver, or other firearm capable of being concealed upon the person."  Cal. Penal Code

21   § 26155(a); *see also* Cal. Penal Code § 26150.  Local city and county law enforcement agencies

22   administer this licensing regime.  *See id.* §§ 26150, 26155.  Applicants must live in the relevant

23   city or county, complete a training course, and be "of good moral character."  *Id.* §§ 26150(a)(1)–

24   (4); 26155(a)(1)–(4).  The statutes formerly imposed a "good cause" requirement as well, but

25   earlier this year, after the Supreme Court struck down a similar requirement in New York, the

---

[1] The Penal Code lists three places: "(A) A public place or public street in an incorporated city or city and county. (B) A public street in a prohibited area of an unincorporated area of a county or city and county. (C) A public place in a prohibited area of a county or city and county." Cal. Penal Code §§ 26350(a)(1)(A)–(C), (a)(2)(A)–(C).

California Attorney General—the defendant in this case—instructed prosecutors not to enforce that part of the licensing statute.  *See* Office of the Attorney General, Legal Alert (June 24, 2022) (citing *Bruen*, 142 S. Ct. 2111).[2]

The Penal Code sections giving local authorities the power to issue licenses define a two-part system.  *See id.* §§ 26150(b), 26155(b).  City and county law enforcement agencies in any California county can issue licenses to carry a concealed handgun on the person.  *Id.* §§ 26150(b)(1), 26155(b)(1).  But in counties with a population of less than 200,000, authorities can also issue licenses to carry handguns "loaded and exposed in only that county."  *See id.* §§ 26150(b)(2), 26155(b)(2).

Baird and Gallardo filed this case in 2019.  *See generally* Compl., ECF No. 1.  They sought declaratory and injunctive relief and moved for a preliminary injunction.  *See* Compl. at 55–58 (prayer for relief); First Mot. Prelim. Inj., ECF No. 14.  The court denied that motion.  *See generally* Prev. Order, ECF No. 33.  Although Baird and Gallardo then raised serious questions about whether California's firearms regime violated the Second Amendment, they did not show the balance of interests tipped sharply in their favor, as the court found would have been necessary to obtain a preliminary injunction.  *See id.* at 5–10.  The court noted, however, that a number of appeals pending in the Ninth Circuit raised similar questions, so the court permitted Baird and Gallardo to renew their motion if the circuit eventually issued a decision favoring their position.  *See id.* at 10.  The court also dismissed several of their claims with leave to amend.  *See id.* at 10–18.

The Ninth Circuit then issued its opinion in *Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021) (en banc), which upheld a Hawaii firearm licensing scheme against a similar constitutional challenge.  The plaintiffs amended their complaint.  *See generally* Am. Compl., ECF No. 34. They also moved again for a preliminary injunction.  Mot. Prelim. Inj., ECF No. 40.  In response, the state moved for summary judgment.  ECF No. 56.  Before the court could resolve those motions, however, the Supreme Court granted the petition for certiorari in *Bruen*, so the parties

---

[2] https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf (last visited Dec. 7, 2022).

1  jointly requested a stay while *Bruen* was pending.  ECF No. 58.  After the Supreme Court issued

2  its decision in *Bruen*, it also vacated the Ninth Circuit's decision in *Young*, *see* 142 S. Ct. 2895

3  (2022), and the Ninth Circuit then remanded the case to the district court for further proceedings,

4  45 F.4th 1087 (2022).  This court then lifted the stay here, the plaintiffs renewed their motion for

5  a preliminary injunction, and amended their complaint.  *See generally* Second Am. Compl., ECF

6  No. 68; Mot., ECF No. 65.[3]

7       In both their complaint and motion, Baird and Gallardo ask the court to enjoin the

8  enforcement of Penal Code sections 26350 and 25850 "against individuals who carry a handgun

9  open and exposed in public throughout the State of California."  Mot. at 2; *see also* Second Am.

10 Compl. at 17.  They do not ask for any relief related to concealed handguns.  The state opposes

11 their motion, *see generally* Opp'n, ECF No. 69, which is now fully briefed, *see generally* Reply,

12 ECF No. 73.  The court submitted the motion after hearing oral arguments on November 4, 2022.

13 At the hearing, Amy Bellantoni appeared for Baird and Gallardo.  Ryan Davis and R. Matthew

14 Wise appeared for the state.

15 **II.    JURISDICTION**

16      "The first question, as always, is whether this court has jurisdiction."  *Tomer v. Gates*,

17 811 F.2d 1240, 1242 (9th Cir. 1987) (per curiam).  The state does not argue this court lacks

18 jurisdiction.  *See* Status Rep. at 5, ECF No. 72.  But a federal court must ensure it has jurisdiction

19 even if the parties voice no doubts.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

20      Several limits on this court's jurisdiction are derived from the Constitution's references to

21 "Cases" and "Controversies" in Article III.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332,

22 352 (2006).  One of these limits is constitutional standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330,

23 338 (2016).  To have standing, plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly

24 traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

---

[3] The parties agree the pending motion for a preliminary injunction should be evaluated on the basis of the claims and allegations in the operative Second Amended Complaint.  The court treats the operative complaint as the controlling pleading.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) ("[T]he general rule is that an amended complaint super[s]edes the original complaint and renders it without legal effect . . . .").

favorable judicial decision." *Id.*  They must satisfy these requirements for each claim they assert and for each form of relief they seek.  *DaimlerChrysler*, 547 U.S. at 352.

Baird and Gallardo have standing to contest the state law generally in a facial challenge.  *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (describing facial challenges).  They contend the Second Amendment countenances no limitations on their right to carry handguns openly in public, and they claim the Second Amendment precludes California's scheme of prohibitions, exceptions, and licenses for carrying handguns openly in public.  *See* Second Am. Compl. ¶ 8; Baird Decl. ¶ 7; Gallardo Decl. ¶ 7.  They describe their right to carry loaded handguns openly in public as "God-bestowed," as a right they can exercise without "permission from the government, licensing, registration, or any other action," and as a right the Second Amendment to the United States Constitution protects against "any encroachment."  Second Am. Compl. ¶ 8 (emphasis omitted).  At hearing, their counsel described this facial challenge as their principal or primary claim.  Baird and Gallardo have standing to assert this facial claim: they are subject to the challenged Penal Code sections, and an injunction or declaration would relieve them of these constraints.

Although Baird and Gallardo have standing to assert these broad facial challenges, and although their counsel focused on their challenges at the hearing on their current motion, their complaint can also be interpreted as asserting claims that are more specific to their personal circumstances.  Each lives in a county with a population of less than 200,000, meaning the local permitting authorities have authority to issue permits to carry loaded handguns openly in those jurisdictions.  *See* Baird Decl. ¶¶ 2, 7; Gallardo Decl. ¶¶ 2, 7; Cal. Penal Code §§ 26155(b)(2), 26150(b)(2).  Baird and Gallardo argue, however, that there is no way to apply for such a permit in practice.  *See* Baird Decl. ¶ 7; Gallardo Decl. ¶ 7.  They also suspect their local sheriffs' offices would deny their applications outright even if they could apply.  *See* Baird Decl. ¶ 7; Gallardo Decl. ¶ 7.  In this sense, their complaint raises a challenge to the state's statutes as applied.  *See Calvary Chapel Bible Fellowship v. Cty. of Riverside*, 948 F.3d 1172, 1177 (9th Cir. 2020) ("How the statute has been interpreted and applied by local officials is the province of an as-applied challenge . . . .").

5

1    The court does not have jurisdiction over an as-applied challenge along these lines.  Baird

2    and Gallardo have not shown they have standing to assert claims on behalf of people who live in

3    larger counties.  *Cf., e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343–44

4    (1977) (discussing third-party standing); *Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir.

5    2017) (per curiam) (same).  As for their claim that licensing authorities would reflexively deny all

6    open-carry permit applications, they have brought this case against the wrong defendant.  They

7    have sued the state's Attorney General, but California does not give its Attorney General

8    authority to issue permits.  As a result, Baird and Gallardo have not shown a favorable decision

9    would redress their alleged injury.  They do not have standing to assert any as-applied challenges.

10   *See Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.*, 606 F.3d 1058, 1074 (9th Cir.

11   2010) (reaching same conclusion in case against wrong agency).  Their complaint is dismissed to

12   this extent.  Plaintiffs may seek to amend their complaint to bring an as-applied challenge if they

13   choose, but only if the amendment would show at least one plaintiff had standing to challenge the

14   statutes as applied at the time the case began.  *See Northstar Fin. Advisors Inc. v. Schwab Invs.*,

15   779 F.3d 1036, 1043–48 (9th Cir. 2015).

16   **III.   PRELIMINARY INJUNCTION**

17          **A.     Legal Standard**

18          To obtain a preliminary injunction, Baird and Gallardo must establish four things "by a

19   clear showing": they are "likely to succeed on the merits," they are "likely to suffer irreparable

20   harm in the absence of preliminary relief," "the balance of equities tips in [their] favor," and "an

21   injunction is in the public interest."  *City & Cty. of San Francisco v. United States Citizenship &*

22   *Immigr. Servs.*, 944 F.3d 773, 788–89 (9th Cir. 2019) (emphasis omitted) (first quoting *Mazurek*

23   *v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); then quoting *Winter*, 555 U.S. at 20).

24   "Alternatively, 'serious questions going to the merits and a balance of hardships that tips sharply

25   towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also

26   shows that there is a likelihood of irreparable injury and that the injunction is in the public

27   interest.'"  *Id.* at 789 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.

28   2011)).  When the party opposing an injunction is the state, as is true in this case, the balance of

1    equities and public interests "merge."  *E.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v.*

2    *Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020) (per curiam).

3         Preliminary injunctions are ordinarily intended "merely to preserve the relative positions

4    of the parties until a trial on the merits can be held."  *Univ. of Texas v. Camenisch*, 451 U.S. 390,

5    395 (1981).  When a plaintiff asks to change the status quo rather than preserve it, district courts

6    exercise greater caution.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

7    To obtain an injunction that instructs an opposing party to change its behavior, thus altering the

8    status quo, a plaintiff must show "extreme or very serious damage" will occur unless the

9    requested injunction is granted.  *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (quoting

10   *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).

11   Such affirmative pretrial relief is not appropriate in "doubtful" cases.  *Garcia*, 786 F.3d at 740

12   (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th

13   Cir. 2011)).

14        The parties advance conflicting arguments about their respective burdens.  For the first

15   part of the *Winter* test, showing a likelihood of success on the merits, Baird and Gallardo argue

16   their only burden is to prove their conduct "falls within the plain language of the Second

17   Amendment."  Reply at 1.  If so, then in their view, the state must "show that the challenged

18   regulations are consistent with this Nation's historical traditions of firearm regulation."  *Id.*  The

19   state acknowledges it must ultimately "put forth the relevant historical evidence to prevail at final

20   judgment."  Opp'n at 12.  It also argues, however, that Baird and Gallardo must "show that they

21   are likely to prevail on the merits," a task the state describes as impossible given the uncertainties

22   of history, the expertise and time required to study that history, and how fundamentally *Bruen*

23   changes Second Amendment law.  *See id.* at 12–13.

24        The parties cite no Ninth Circuit or Supreme Court authority allocating the parties'

25   burdens for preliminary injunction motions in a post-*Bruen* Second Amendment challenge.  This

26   court is aware of no such authority.  The Supreme Court did not reach that question in *Bruen*

27   because the district court had dismissed the complaint for failure to state a claim.  *See generally*

1  354 F. Supp. 3d 143 (N.D.N.Y. 2018), *aff'd*, 818 F. App'x 99 (2d Cir. 2020), *rev'd*, 142 S. Ct.

2  2111.

3      The Supreme Court's opinion in *Bruen* does, however, signal the path forward.  The Court

4  first rejected the two-part test lower courts had previously adopted.  *See* 142 S. Ct. at 2126–30.  It

5  settled instead on an historical test: "When the Second Amendment's plain text covers an

6  individual's conduct, the Constitution presumptively protects that conduct.  The government must

7  then justify its regulation by demonstrating that it is consistent with the Nation's historical

8  tradition of firearm regulation."  *Id.* at 2129–30.  The Court justified this rule in part by

9  comparing it to the rules it has adopted for First Amendment claims.  *See id.* at 2130.  By drawing

10  this connection, the Supreme Court was not broadly pronouncing that the government's burdens

11  in Second Amendment cases mirror its burdens in First Amendment cases.  The Court's analogy

12  nevertheless suggests First Amendment cases can offer insights about the parties' burdens when a

13  plaintiff alleges a law or regulation violates the Second Amendment.

14      Federal appellate decisions in First Amendment cases do in fact offer useful insights.

15  When a plaintiff moves for a preliminary injunction in a First Amendment case, there is a tension

16  between the plaintiff's burden of showing it is likely to succeed on the merits and the

17  government's ultimate burden "of justifying its speech-restrictive law" at trial.  *Thalheimer v.*

18  *City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011), *overruled in part on other grounds by*

19  *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) (en

20  banc); *see also Ashcroft v. A.C.L.U.*, 542 U.S. 656, 666 (2004).  Under the Supreme Court's

21  decision in *Bruen*, the parties' burdens create the same tension: the plaintiff must show it is likely

22  to succeed on the merits, but the government must ultimately "justify its regulation by

23  demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."

24  142 S. Ct. at 2129–30.  The Supreme Court and the Ninth Circuit have alleviated this tension in

25  First Amendment cases by essentially accelerating the government's obligations.  *See A.C.L.U.*,

26  542 U.S. at 666; *Thalheimer*, 645 F.3d at 1116.  Unless the government "justifies the restriction"

27  under the standard that would apply at trial, the plaintiff is "deemed likely to prevail," *A.C.L.U.*,

28  542 U.S. at 666.  In this limited way, "the burdens at the preliminary injunction stage track the

1    burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418,

2    429 (2006).

3        The similarities between the test adopted in *Bruen* and the government's burden in First

4    Amendment cases suggest strongly that the Supreme Court would require the government, not the

5    plaintiffs, to identify historical analogs in response to a motion for a preliminary injunction in

6    Second Amendment cases.  Other district courts have assumed this is so.  *See, e.g.*, *Rigby v.*

7    *Jennings*, ___ F. Supp. 3d ___, No. 21-1523, 2022 WL 4448220, at *8 (D. Del. Sept. 23, 2022)

8    (finding plaintiffs were likely to succeed on the merits after finding defendants had not

9    demonstrated challenged statutes were consistent with historical tradition); *Nat'l Ass'n for Gun*

10   *Rts., Inc. v. City of San Jose*, ___ F. Supp. 3d ___, No. 22-00501, 2022 WL 3083715, at *4 (N.D.

11   Cal. Aug. 3, 2022) (generalizing rule to all "cases where the government bears the burden as to

12   the ultimate question of the challenged law's constitutionality" in Second Amendment challenge);

13   *see also Antonyuk v. Hochul*, ___ F. Supp. ___, No. 22-0986, 2022 WL 5239895, at *12

14   (N.D.N.Y. Oct. 6, 2022) (adopting this scheme in response to motion for temporary restraining

15   order).

16       California argues otherwise, citing *Ramos v. Wolf*.  *See* Opp'n at 12 (citing 975 F.3d 872

17   (9th Cir. 2020)).  In *Ramos*, the plaintiffs alleged the President had adopted a racially

18   discriminatory immigration policy in violation of the Equal Protection Clause.  *See id.* at 883.

19   The district court granted the plaintiffs' motion for a preliminary injunction, *see id.* at 884–87, but

20   the Ninth Circuit reversed, *id.* at 899.  In the Circuit's assessment, there was "no evidentiary

21   support for the conclusion" that the policy change "was motivated by racial animus."  *Id.*  The

22   Circuit emphasized that the plaintiffs could succeed on their Equal Protection Clause challenge at

23   trial only by offering "proof of racially discriminatory intent or purpose." *Id.* at 896 (alterations

24   omitted) (quoting *Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S.

25   252, 265 (1977)).  Here, by contrast, the government would bear the burden of proof at trial to

26   show its regulations are justified by history and tradition.  *See Bruen*, 142 S. Ct. at 2130.  *Ramos*

27   is not controlling, and the plaintiffs' differing burdens at trial in that case deprive the Circuit's

28   reasoning of persuasive force.

1    In sum, for the first part of the preliminary injunction test, Baird and Gallardo must show

2    they are likely to prove "the Second Amendment's plain text covers" conduct regulated by

3    California Penal Code sections 25850 and 26350.  *Bruen*, 142 S. Ct. at 2129–30.  If they do, the

4    state bears the burden to show it is likely to "justify its regulation by demonstrating that it is

5    consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2130.  In all other

6    respects, the plaintiffs bear the burden of proof: they must show they are likely to suffer

7    irreparable harm absent a preliminary injunction, and they must show the balance of harms and

8    public interests favor a preliminary injunction.  *See Winter*, 555 U.S. at 20.

9        **B.    Discussion**

10    It is not necessary to decide whether California's Penal Code restricts conduct within the

11    Second Amendment's plain text under *Bruen* or whether the challenged Penal Code sections are

12    within the nation's historical tradition of firearms regulation.  Nor is it necessary to decide

13    whether Baird and Gallardo would suffer irreparable harm if the court does not enter a

14    preliminary injunction.  As explained below, they have not shown the balance of harms and

15    public interest favor a preliminary injunction.

16    A court cannot enter a preliminary injunction if the moving party does not show "the

17    balance of equities tips in [its] favor," and "an injunction is in the public interest."  *Winter*,

18    555 U.S. at 20.  *Winter* itself illustrates this point forcefully.  The plaintiffs alleged the U.S. Navy

19    had not adequately considered how harmful its training exercises were to marine mammals.  *See*

20    *id.* at 15–17.  They brought claims under a collection of federal environmental protection laws.

21    *See id.* at 16–17.  When the case reached the Supreme Court, it turned on one question: how to

22    balance the harms and public interest.  *See id.* at 20–31.  The Supreme Court did not "address the

23    underlying merits."  *Id.* at 31.  It also assumed without deciding the plaintiffs would suffer an

24    irreparable harm.  *See id.* at 23–24.  The Court vacated the preliminary injunction because the

25    district and circuit courts had "significantly understated the burden the preliminary injunction

26    would impose on the Navy's ability to conduct realistic training exercises, and the injunction's

27    consequent adverse impact on the public interest in national defense."  *Id.* at 24.  The Court also

1  concluded a permanent injunction along the same lines would have been an abuse of discretion as

2  well, even if the plaintiffs eventually prevailed on the merits.  *See id.* at 32.

3      Turning back to this case, Baird and Gallardo argue that without an injunction, they and

4  others in California will be denied the constitutional right to carry handguns openly in public.  *See*

5  Mem. at 9; Reply at 6.  They claim that without an injunction, they cannot defend themselves

6  with handguns in public and will lose the peace of mind that comes with carrying a handgun.  *See*

7  Mem. at 9.  These arguments overstate the harms they will likely suffer without a preliminary

8  injunction.  Baird and Gallardo will not be without a means to defend themselves with handguns

9  in public while the case is pending.  They and others in California may carry concealed handguns

10  in public.  If a person cannot rely on one of the many exceptions to the Penal Code's general

11  prohibitions, as Baird and Gallardo each can, then that person may apply for a license, which

12  California now issues under objective criteria.

13      The Supreme Court left no doubt in *Bruen* that it was not deciding whether states could

14  regulate firearms using objective criteria like those California now imposes.  The Court strongly

15  implied that objective criteria and "shall-issue" licensing regimes are constitutional.  The majority

16  explained in the margin that "nothing" in the Court's opinion "should be interpreted to suggest

17  the unconstitutionality of the 43 States' 'shall-issue' licensing regimes."  142 S. Ct. at 2138 n.9.

18  "[I]t appears that these shall-issue regimes, which often require applicants to undergo a

19  background check or pass a firearms safety course, are designed to ensure only that those bearing

20  arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"  *Id.* (quoting *District of*

21  *Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

22      Separate concurring opinions by three Justices in *Bruen* reinforce this point.  Justice Alito,

23  who joined the majority's opinion, underscored that the Court had decided "nothing about who

24  may lawfully possess a firearm or the requirements that must be met to buy a gun."  *Id.* at 2157

25  (Alito, J., concurring).  Nor had the Court "disturbed anything that [it] said in *Heller* or

26  *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the

27  possession or carrying of guns."  *Id.*  Justice Kavanaugh, who also joined the majority opinion,

28  wrote similarly in a separate concurring opinion:"[T]he 6 States including New York [and

California] potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States." *Id.* at 2162 (Kavanaugh, J., concurring). In Justice Kavanaugh's view, the Court's opinion in *Bruen* does not prohibit states from "requir[ing] a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* The Chief Justice joined Justice Kavanaugh's opinion. *Id.* at 2161.

In short, six Justices took care to explain why the Court's opinion did not bar the vast majority of states from continuing to enforce their firearms licensing regimes. Two of the Justices whose votes were necessary to make up the six-member majority also wrote specifically that states like New York and California could continue using background checks and imposing training requirements, among other criteria. As a result, in this case, the only harm most people will likely face absent a preliminary injunction is (1) a requirement to obtain a license, which requirement the majority did not question in *Bruen* and (2) having to conceal any handguns they may wish to carry in public.

Baird and Gallardo have not shown that this harm outweighs the harms that would likely result from an immediate preliminary injunction. If California cannot enforce sections 25850 and 26350 against those who carry handguns openly in public, then it would lose its primary means of limiting public handgun carrying to "ordinary, law-abiding citizens." *Bruen*, 142 S. Ct. at 2122. A person who could not obtain a license to carry a concealed handgun—due, for example, to a lack of "good moral character" or refusal to complete a "course of training"—could circumvent the state's laws by carrying the same gun openly. *See* Cal. Penal Code § 26150(a)(1), (4).

California also cites an unrebutted declaration from a former police chief and past president of the California Police Chiefs Association, who opines that "restrictions on the open carry of firearms greatly enhance public safety." Raney Decl. ¶21, ECF No. 69-2. In his opinion, based on "39 years of law-enforcement experience" and other work, "the restrictions on the open carry of firearms in California have been critical to the safety of law-enforcement officers, our communities, and those people who would want to openly carry firearms in public." *Id.* ¶¶ 2, 22.

12

To that same end, the state also cites academic research showing violent crime, property crime, and murder rates are higher in states that impose fewer restrictions on firearm carrying in public. *See* Opp'n at 18–19. The plaintiffs offer no countervailing evidence to show, for example, that crime rates are the same or lower when firearms regulations are relaxed. They instead criticize the cited studies as focusing on concealed firearms, whereas their complaint focuses on open carry alone. *See* Reply at 9. These criticisms limit the state's evidence, but they do not eliminate its persuasive force. *See, e.g.*, Wise Decl. Ex. 4 at 7–13 (collecting theories of increased violent crime, including some that do not depend on whether guns are concealed). The plaintiffs bear the burden to prove an injunction is in the public interest, and they have offered no countervailing evidence, so the cited studies weigh against issuing a preliminary injunction despite their limitations.

Baird and Gallardo argue public safety concerns such as these are irrelevant, citing the Supreme Court's observation that many constitutional rights carry "controversial public safety implications." *Bruen*, 142 S. Ct. at 2126 n.3 (quoting *McDonald*, 561 U.S. at 783 (plurality op.)). Under *Bruen*, the state could not defend its laws at trial by arguing they advance a compelling state interest in public safety. *See id.* at 2127 (rejecting "means-end scrutiny in the Second Amendment context"). But Baird and Gallardo are not seeking final judgment; rather, they are seeking a preliminary injunction, and the Supreme Court has held that a court may not enter a preliminary injunction unless the moving party shows the balance of harms and public interest weigh in its favor. *See Winter*, 555 U.S. at 20, 32. Public safety is part of that balance.

Finally, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

This court denied Baird's and Gallardo's previous motion for a preliminary injunction for similar reasons. *See* Order (Aug. 31, 2020) at 8–10, ECF No. 33. As this court wrote in its previous order, preliminary assessments of the merits can turn out to be incorrect. *See id.* at 9; *see also Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1193 (E.D. Cal. 2015), *aff'd,*

637 F. App'x 401 (9th Cir. 2016). The moving plaintiff must persuade the court that the benefits of a potential mistake outweigh the costs. *See Tracy*, 118 F. Supp. 3d at 1193. Courts hesitate when those costs are likely far-reaching, difficult to estimate, and potentially deadly. *See id.* Baird and Gallardo ask the court to force California to allow anyone to carry a loaded handgun openly in public without a permit while they attempt to prove the state's licensing regime is unconstitutional. They have not shown such a broad injunction would serve the public interest.

The affirmative character of the plaintiffs' proposal advises caution as well. As noted above, when a plaintiff asks to change the status quo rather than preserve it, district courts must exercise greater caution. *See, e.g.*, *Garcia*, 786 F.3d at 740. "The status quo means the last, uncontested status which preceded the pending controversy." *Id.* at 740 n.4 (quoting *N.D. ex rel. Parents v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010)). This case began in 2019; California's current regime had been operative since 2012, so the existing regime is the "status quo." *Compare* 2010 Cal. Stats. Ch. 711, §§ 6, 10 (S.B. 1080) (West), *with* Compl., ECF No. 1. As explained above, the preliminary injunction Baird and Gallardo propose would upend that regime. This is so even if their injunction could be described as "prohibitive" in that it would prohibit certain criminal prosecutions; what matters is whether the injunction preserves or alters the status quo. *See, e.g.*, *Doe*, 28 F.4th at 111 (rejecting recharacterization of changes to status quo as "prohibitory"); *see also Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005) ("It is not at all difficult to envision situations where a mandatory injunction would preserve the status quo and a prohibitory injunction would alter the status quo." (citation omitted)).

For these reasons, Baird and Gallardo must show this is not a "doubtful" case and that the preliminary injunction they propose is necessary to avoid "extreme or very serious damage." *Doe*, 28 F.4th at 111 (quoting *Marlyn Nutraceuticals*, 571 F.3d at 879). They have not done so; as explained above, the harm they seek to avoid is (1) compliance with an objective permitting scheme and (2) concealing any handguns carried in public. This is also a "doubtful" case. Deciding whether the state's laws are constitutional will require a difficult investigation and careful consideration of historical firearm regulations. Opp'n at 12 (citing Schrag Decl., *Miller v. Becerra*, No. 19-1537 (S.D. Cal. Aug. 29, 2022), ECF No. 129-1). The Ninth Circuit's extensive

1    discussion of historical open-carry regulations in *Young* has been vacated, so it is no longer the

2    binding law in this circuit.  And as Justice Barrett pointed out in her concurring opinion in *Bruen*,

3    a number of "unsettled questions" and a "scholarly debate" further complicate this historical

4    exercise.  *See* 142 S. Ct. 2163 (Barrett, J., concurring).  This court is indeed "ill equipped to

5    conduct the type of searching historical surveys that the [Supreme] Court's approach requires."

6    *Id.* at 2179 (Breyer, J., dissenting).  Baird and Gallardo have not proven it would be better to

7    upend the status quo than leave it in place while the court adjudicates their claims.

8           Because Baird and Gallardo have not shown their proposed preliminary injunction would

9    serve the public interest, and because their proposal does not appropriately balance the likely

10   harms, their motion is denied.  *See Winter*, 555 U.S. at 20, 32.

11   **IV.    CONCLUSION AND ORDER TO SHOW CAUSE**

12          The Second Amended Complaint is **dismissed in part for lack of subject matter**

13   **jurisdiction** as explained in section II above.  The motion for a preliminary injunction (ECF No.

14   65) is **denied**.

15          On the court's own motion, to facilitate the court's considerations of any obligations it has

16   following *Bruen*, the parties are **ordered to show cause within thirty days** why the court should

17   not appoint its own expert witness to collect and survey evidence of the "historical tradition that

18   delimits the outer bounds of the right to keep and bear arms," *Bruen*, 142 S. Ct. at 2127, as

19   relevant to this case, *see* Fed. R. Evid. 706(a).  In their responses, each party may submit

20   nominations of potential experts if they wish.  *See id.*  The parties may also address the court's

21   tentative observation that an appointed expert could provide a more thorough, rigorous, and

22   balanced perspective than those the parties have offered to date.  *Cf., e.g.*, *United States v.*

23   *Bullock*, No. 18-cr-165, 2022 WL 16649175, at *2–3 (S.D. Miss. Oct. 27, 2022) (ordering

24   similarly in felony case based on 18 U.S.C. § 922 charge with motion to dismiss pending, after

25   identifying and summarizing "a serious disconnect between the legal and historical

26   communities")[4]; *but cf., e.g.*, *United States v. Kelly*, No. 22-0037, 2022 WL 17336578, at *3

---

[4] The parties have not yet filed their responses to the court's order in *Bullock*; it appears the responses currently are due by December 12, 2022.

1    (M.D. Tenn. Nov. 16, 2022) (in criminal prosecution, observing "[p]ending gun cases must be

2    decided, which means, now, that they must be decided through the methodology set forth in

3    *Bruen*, whether the courts are actually well-suited to that inquiry or not.").

4        IT IS SO ORDERED.

5    DATED:  December 7, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE