ROB BONTA, State Bar No. 202668
Attorney General of California
R. MATTHEW WISE, State Bar No. 238485
Supervising Deputy Attorney General
RYAN DAVIS, State Bar No. 266330
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6050
 Fax: (916) 324-8835
 E-mail: Ryan.Davis@doj.ca.gov
*Attorneys for Defendant Attorney General Rob Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK BAIRD and RICHARD GALLARDO,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,**<br><br>Defendants. | Case No. 2:19-cv-00617-KJM-AC<br><br>**DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Dept: 3<br>Judge: Hon. Kimberly J. Mueller<br><br>Trial Date: None set<br>Action Filed: April 9, 2019 |

## INTRODUCTION

On December 8, 2022, this Court ordered the parties to show cause "why the court should not appoint its own expert witness to collect and survey evidence of the 'historical tradition that delimits the outer bounds of the right to keep and bear arms' . . . as relevant to this case, *see* Fed. R. Evid. 706(a)." Order, ECF No. 83 at 15, quoting *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2127 (2022). As explained below, there is no need for the Court to appoint its own expert witness because the issues can and should be framed by the parties through the adversarial process. To the extent the Court is inclined to appoint an expert of its own, it may be appropriate to appoint a historian to inform the Court about research methods and best practices, which may assist the Court in evaluating the evidence presented to it. But the evidence itself—that is, the historical record on which the Court should base its legal determination of whether the statutes challenged here infringe upon conduct that is "presumptively protected" by the "plain text" of the Second Amendment, and if so, whether the statutes are "consistent with the Nation's historical tradition of firearm regulation" *id.* at 2129-2130—should be developed and presented through normal civil procedure.

## ARGUMENT

The issues in this case have been narrowed by the Plaintiffs' Second Amended Complaint. ECF No. 68. Plaintiffs maintain their facial challenge to California Penal Code section 25850 and 26350, which impose criminal liability on those who carry handguns openly in public, but no longer challenge any particular aspect of California's public-carry licensing scheme, which allows individuals to apply for public-carry licenses, including open-carry licenses in counties with a population of less than 200,000. Cal. Penal Code §§ 26150(b)(2), 26155(b)(2). Plaintiffs allege that each of them "has a present intention to carry a handgun open and exposed for self-defense, loaded or unloaded, throughout the State of California, today and every day for the remainder of his natural life," and that each "intends to exercise his rights protected by the Second and Fourteenth Amendments without seeking permission from the government, including applying for and obtaining a license under California's licensing scheme, Penal Code section 26150 and 26155." ECF No. 68 at 5-6. As this Court put it, Plaintiffs now "contend the Second

Amendment countenances no limitations on their right to carry handguns openly in public . . . ." ECF No. 83 at 5.[1]

Given the broad sweep of Plaintiffs' claim, summary judgment in the Attorney General's favor is arguably appropriate even without the need for new historical evidence.[2]  Nonetheless, because *Bruen* marks a dramatic shift in Second Amendment jurisprudence, the parties should have the opportunity to develop the historical record.  Although Plaintiffs claim that "[t]here is no likelihood that reopening expert discovery will lead to any additional relevant evidence" and that existing Supreme Court decisions "have already established the history and tradition in the Founding Era of carrying weapons in public," Plaintiffs' Objections, ECF No. 81 at 9, the required analysis is not nearly as straightforward as Plaintiffs suggest.  The Supreme Court did observe in *Bruen* that in some cases the newly-required historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century. *Bruen*, 142 S. Ct. at 2131.  But in others—particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—the historical analysis requires a "more nuanced approach." *Id.* at 2132.  The State can justify regulations of that sort by "reasoning by analogy," a process that requires the

---

[1] This Court noted that the Second Amended Complaint could also be interpreted as including an as-applied challenge to California's licensing scheme based on Plaintiffs' alleged inability to obtain open-carry licenses within their respective counties, but dismissed any such claim for lack of jurisdiction.  Order at 4-6.

[2] First, Plaintiffs' claim arguably fails at the threshold stage of the analysis, at which the Court must assess whether the "Second Amendment's plain text covers" the regulated conduct. *Bruen*, 142 S. Ct. at 2129-30.  As this Court noted, California law allows people to carry concealed handguns in public.  ECF No. 83 at 11.  Indeed, both Plaintiffs can and do.  *See* Wise Decl., Ex. 1, Baird Dep., ECF No. 69-1 at 13:9-23, 14:2-9, 20:6-7; Wise Decl., Ex. 2, Gallardo Dep., ECF No. 69-1 at 6, 8, 15:11-17, 27:10-13.  Therefore, restrictions on open carry do nothing to infringe on plaintiffs' "constitutional right to bear arms in public for self-defense." *Bruen*, 142 S. Ct. at 2156.  Second, the Supreme Court's decision in *Bruen* undermines Plaintiffs' claim that licensing schemes are facially invalid.  Although the Supreme Court's decision invalidated one *aspect* of New York's licensing scheme (the proper-cause requirement), the Court explicitly approved of the practice of requiring a permit to carry a firearm in public so long as States do not deny public-carry licenses to ordinary citizens who fail to show that they have a special need for one. *Bruen*, 142 S. Ct. at 2123-2124 (citing approvingly the licensing schemes of 43 States); *id.* at 2138 n.9 ("nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes" or other licensing requirements that are "'narrow, objective, and definite'"); *see also id.* at 2161 (conc. opn. of Kavanaugh, J.) (also citing approvingly the licensing schemes of 43 States).

government to show that its regulation is "'relevantly similar'" to a "well-established and representative historical analogue." *Id.* at 2333 (emphasis omitted).

Here, the historical inquiry should not be limited to determining the extent to which public-carry licenses, in particular, have been used to ensure that only "law abiding, responsible citizens" are armed in public. *Id.* at 2156.  It will need to survey other practices, too, such as the use of "surety statutes" adopted by several States in the mid-19th century, which required individuals who were "reasonably likely to 'breach the peace'" to post a bond before carrying public, *Bruen*, 142 S. Ct. at 2148, and "legislatures' longstanding authority and discretion to disarm citizens unwilling to obey the government and its laws, whether or not they had demonstrated a propensity for violence." *Range v. Attorney General*, 53 F.4th 262, 269 (3d Cir. 2022) (applying *Bruen* and upholding 18 U.S.C § 922(g)(1), the federal prohibition on possession of firearms by felons).  Both are examples of regulations, which, like licensing schemes, are designed to minimize the extent to which dangerous people carry firearms in public.  Accordingly, one or more properly qualified historians are needed in order to present a complete and accurate depiction of the relevant evidentiary record.  It takes specialized knowledge to describe a "historical tradition" spanning several decades (if not a century or more) and to usefully compare contemporary regulations to historical practices based on the metrics that *Bruen* identified as "features that render regulations relevantly similar under the Second Amendment":  "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2132-2133.

By expanding the role of the historical inquiry needed to decide Second Amendment cases like this one, *Bruen* may well have complicated this Court's task.  Judges across the country have begun noting the challenges created by the Supreme Court's decision. *See, e.g., 09/08/2022 Case Announcements #5*, 2022-Ohio-3155[3] (dissent from a procedural order following *Bruen* noting "concerns about how 'history' or historiology can become part of a legal analysis, as this court embarks on the legal equivalent of asking whether a modern translation of the Bible accurately conveys the teachings of the original texts"); *United States v. Bullock*, No. 18-cr-165, 2022 WL

---

[3] https://www.supremecourt.ohio.gov/rod/docs/pdf/0/2022/2022-Ohio-3155.pdf

16649175, at *1 (SD. Miss. Oct. 27, 2022) (observing that "*Bruen* instructs courts to undertake a comprehensive review of history," yet judges "lack both the methodological and substantive knowledge that historians possess").  Without downplaying the challenges presented by *Bruen*, however, the Attorney General respectfully submits that the evidentiary record can and should be compiled by the parties, and that the required analysis can be done based on the evidence and argument presented by the parties.  *See, e.g., Range*, *supra*, 43 F.4th at 271-82 (surveying the historical record of status-based restrictions in upholding § 922(g)(1)); *Or. Firearms Fed., Inc. v. Brown*, __ F. Supp. 3d __, 2022 WL 17454829, at *12-14 (D. Or. Dec. 6, 2022) (concluding that large-capacity magazine restrictions are relevantly similar to historical analogues).  As the Supreme Court explained in *Bruen*, "[t]he job of judges is not to resolve historical questions in the abstract; it is to resolve legal questions presented in particular cases or controversies." *Id.* at 2130 n.6.  To do that work, "in our system of adversarial system of adjudication, [courts] follow the principle of party presentation. . . . Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Id.* (internal quotation and citation omitted).

As the Court is aware, "[a] Rule 706 expert typically acts as an advisor to the court on complex, scientific, medical, or technical matters." *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014).  In *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, (9th Cir. 2014), for example, the district court appointed Rule 706 experts to "aid it in understanding the technical and scientific aspects" of a document from the U.S. Fish and Wildlife Service described as "the most complex biological opinion ever prepared." *Id.* at 592, 603.  In *FTC v. Enforma Natural Products, Inc.*, 362 F.3d 1204 (9th Cir. 2004), a case concerning the effectiveness of diet supplements, the district court appointed a Rule 706 expert "'to evaluate matters related to the science at issue, and to advise the Court with respect to his opinions related to the science.'" *Id.* at 1209.  These are the sorts of cases the Ninth Circuit has cited to illustrate how "[a] Rule 706 expert typically acts . . . ." *Armstrong*, 768 F.3d at 987.  The issues presented by this case are different in kind.  Although it takes specialized knowledge to describe the relevant historical tradition, there is no reason to expect that the evidence presented in this case will be so technical

that the Court will be unable to rely on the expert witnesses presented by the parties to inform its legal analysis.

True, parties may disagree on whose expertise the Court should rely in identifying the relevant historical record and drawing the relevant comparisons. The Attorney General contends that the various experts his office has already retained in pending Second Amendment cases, including Professor Saul Cornell, are extraordinarily well-qualified for the job. As explained in the report previously provided to this Court (though prepared prior to the legal sea change effected by *Bruen*), Professor Cornell's scholarship on the Second Amendment and gun regulation has been widely cited by state and federal courts and has appeared in leading law review and peer-reviewed legal history journals. Report, ECF No. 56-3 at 4. Professor Cornell, of course, has a particular perspective, which he formed through years of academic training and research. So would any other qualified expert, whether provided by a party or obtained independently by the Court. The Attorney General thus urges the Court to allow each side, through the use of their own experts, to discover and produce the best evidence available, to identify deficiencies in the evidence where they exist, and to argue their respective positions on how the law applies to the evidentiary record.

The Court's order indicates that its appointed expert would "collect and survey evidence" (Order at 15), which would presumably consist of past laws and regulations, but the order does not specify whether the expert would also offer an opinion as to "how and why the regulations burden a law-abiding citizen's right to armed self-defense," *Bruen*, 142 S. Ct. at 2132-2133, and the extent to which they are analogous to the statutes in this case and thus relevant to the constitutional issues presented for this Court's decision. Nor does the order state whether the Court's expert would evaluate the parties' expert opinions and, if so, whether the parties would have an opportunity to respond to that evaluation. Moreover, the order does not explain how or whether the appointment would affect the case schedule the Court adopted on November 14, 2022. Under Rule 706(b)(2), court-appointed experts "may be deposed by any party." The parties would need adequate time to use that opportunity, including time to consult with their own experts in advance about the court-appointed expert's methods and resources. If the Court issues

an order appointing an expert under Rule 706, the Attorney General may request an opportunity to respond to these or other issues raised by that appointment.

      This Court offered the parties the opportunity to nominate potential experts. Due to the number of pending Second Amendment cases in the State, and because many of those cases require fact development in light of *Bruen*, the Attorney General's Office has already retained several experts in the history of firearms restrictions. In *Miller*, *supra*, 3:19-cv-1537-BEN-JLB, for example, the Attorney General recently submitted declarations by Professor Saul Cornell (Fordham University), Professor Randolph Roth (Ohio State University), Professor Robert Spitzer (SUNY Cortland), Professor Michael Vorenberg (Brown University), and Brennan Rivas (an independent researcher with a Ph.D. in history from Texas Christian University). *See id.*, Supplemental Brief and Attachments, ECF No. 137-137-9. Because there are only a few truly qualified experts in the history of firearms regulation, the Attorney General is unable, at this juncture, to nominate such an expert who has not already been retained by the Attorney General's Office to provide historical evidence in similar matters.

      If the Court is inclined to appoint an expert, it may be more appropriate to appoint an expert in historical *methodology*. In *Miller v. Becerra*, No. 3:19-cv-1537-BEN-JLB (S.D. Cal. Aug. 29, 2022) (*Miller*), for example, in response to a court order requiring briefing on *Bruen*'s effect on challenge to California's restrictions on assault weapons, and to support a request for further expert discovery, the Attorney General provided the court with a declaration by Zachary Schrag, a history professor at George Mason University and author of *The Princeton Guide to Historical Research* (Princeton University Press, 2021), to explain the complexities of sound historical research. Decl. of Zachary Schrag, *Miller*, ECF No. 129-1. An expert like Professor Schrag could help inform the court how resources are identified and accessed, the various choices that need to be made regarding the scope of one's research, and how historians conduct the difficult work of interpreting textual and non-textual sources. If the Court is inclined to appoint an expert regarding historical methodology and best practices, the Attorney General nominates Thomas Mullaney, Professor of History at Stanford University and author of *Where Research Begins*

(University of Chicago Press, 2022), who has not been previously retained by the Attorney General's Office.

## CONCLUSION

For the foregoing reasons, there is no need for the Court to appoint an expert of its own. If the Court is inclined to do so, however, it should appoint an expert in research methods and best practices.

Dated: January 9, 2023                              Respectfully Submitted,

                                                                                                     ROB BONTA
                                                                                                      Attorney General of California
                                                                                                      R. MATTHEW WISE
                                                                                                       Supervising Deputy Attorney General

                                                                               **/s/ *Ryan R. Davis***

                                                                                                      RYAN R. DAVIS
                                                                                                      Deputy Attorney General
                                                                                                      *Attorneys for Defendant Attorney General Rob Bonta*

# CERTIFICATE OF SERVICE

Case Name:   **Baird, Mark v. Rob Bonta**          No.   **2:19-cv-00617-KJM-AC**

I hereby certify that on January 9, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on January 9, 2023, at Sacramento, California.

|   |   |
|---|---|
| Ritta Mashriqi | */s/Ritta Mashriqi* |
| Declarant | Signature |

SA2019101934
36834663.docx