COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

-------------------------------------------------------x

MARK BAIRD and
RICHARD GALLARDO,

                Plaintiffs,

      v.

ROB BONTA, in his official capacity
as Attorney General of the State of California,

                Defendant.

-------------------------------------------------------x

Case No.: 2:19-cv-00617-KJM-AC

Date:      January 6, 2023
Judge:    Hon. Kimberly J. Mueller
Trial Date:  None Set
Action Filed: April 9, 2019

## PLAINTIFFS' RESPONSE TO THE COURT'S *SUA SPONTE*

## ORDER TO SHOW CAUSE

Plaintiffs Mark Baird and Richard Gallardo submit the following response to the Court's *sua sponte* Order requiring the parties to show cause why the Court should not appoint its own expert witness to "collect and survey evidence of the 'historical tradition that delimits the outer bounds of the right to keep and bear arms' *Bruen*, 142 S. Ct. at 2127, as relevant to this case, see Fed. R. Evid. 706(a)." ECF No. 83.

## I.  NO HISTORICAL EXPERT IS REQUIRED BECAUSE "TO THE EXTENT LATER HISTORY CONTRADICTS WHAT THE TEXT SAYS, THE TEXT CONTROLS."[1]

To the extent that history contradicts the plain language of the text of the Second Amendment – "the right to keep and bear arms shall not be infringed" – the plain text of the Second Amendment controls [*Bruen*, at 2137] because "post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, at 2137 (citations omitted).

Plaintiffs seek to "bear arms".

"Bearing arms" is a phrase that has been analyzed in the context of its historical meaning and scope and has been defined by the Supreme Court in *D.C. v. Heller*, 554 US 570 (2008), *Caetano v. Massachusetts*, 577 U.S. 411 (2016) ("the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding) and more recently in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022) to "guarantee the individual right to possess and carry weapons in case of confrontation."

*Bruen* reiterated *Heller*'s "confirm[ation] that the right to 'bear arms' refers to the right to wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." *Bruen*, at 2134 quoting, *Heller*, at 584 (internal quotation marks omitted) quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting).

---

[1] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2137 (2022).

PLAINTIFFS' RESPONSE TO THE COURT'S *SUA SPONTE* ORDER TO SHOW CAUSE

The plain language of the Second Amendment presumptively protects and guarantees the right to "bear arms" [*Bruen*, at 2126] and "[b]ear naturally encompasses public carry." *Bruen*, at 2134-35 ("The Second Amendment's plain text thus presumptively guarantees petitioners Koch and Nash a right to 'bear' arms in public for self-defense.").

California's Penal Code sections 25850 and 26350 criminalize a central component of the Second Amendment - "bearing arms."  Sections 25850 and 26350 impose blanket criminal penalties upon ordinary people who engage in conduct presumptively protected by the Second Amendment - carrying a firearm open and exposed on their person for self-defense and/or carrying a loaded firearm for self-defense.

Penal Codes 25850 and 26350 "contradict the plain text of the Second Amendment" – the right to "bear arms" and, because under *Bruen* the plain text of the Second Amendment "controls," Penal Codes 25850 and 26350 violate the Second Amendment.

## II.  NO HISTORICAL EXPERT IS WARRANTED, *BRUEN* IS A "PUBLIC CARRY" CASE

In addition to the extensive historical analysis and historical findings reached by the Supreme Court in *Heller,* which included historical analysis of public carry, *Bruen* was a "public carry" case and set the historical and legal precedent for public carry restrictions.

This Court need look no further than to *Bruen*'s historical analysis to reach its legal conclusions in determining whether the blanket criminalization of carrying a loaded firearm and/or carrying a firearm open and exposed on one's person for self-defense violates the Second (and Fourteenth) Amendments.

## III.  PUBLIC CARRY RESTRICTIONS DID NOT SURFACE UNTIL POST-RATIFICATION; A TIME PERIOD EXCLUDED FROM THE SUPREME COURT'S BILL OF RIGHTS JURISPRUDENCE

Governmental restrictions on public carry did not proliferate until after the ratification of the Second Amendment in 1791. *Bruen*, at 2145. Thus, post-ratification restrictions on the right to bear arms are *per se* unconstitutional. No historical expert is required to reach this conclusion.

"Supreme Court jurisprudence on all other provisions of the Bill of Rights looks to the Founding Period, not 1868. The conception that the Constitution has a fixed, original meaning goes

3

far back in constitutional jurisprudence.

> When interpreting the Free Speech and Press Clauses, we must be guided by their original meaning, for "[t]he Constitution is a written instrument. *As such its meaning does not alter. That which it meant when adopted, it means now." South Carolina v. United States*, 199 U.S. 437, 448 (1905). We have long recognized that the meaning of the Constitution "must necessarily depend on the words of the constitution [and] the *meaning and intention of the convention which framed and proposed it for adoption and ratification to the conventions ...* in the several states." *Rhode Island v. Massachusetts*, 37 U.S. (12 Pet.) 657, 721 (1838)." [2]

Recognizing that "the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791," the *Bruen* Court pointed to *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); and *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment). *Bruen*, at 2137–38 (emphasis added). Justice Thomas may have acknowledged an "ongoing scholarly debate" concerning 1868, but the *Bruen* Court adhered to Supreme Court jurisprudence, which "looks to the Founding era as the period of sole or primary relevance." See, Exhibit 1 annexed hereto.

Professor Smith goes on to discuss just a few of the "numerous cases involving all of the amendments in the Bill of Rights that have been incorporated" in which the Founding Period was the temporal focal point, not when the amendments were incorporated into the Fourteenth Amendment in 1868. [Ex. 1 at 17-30 discussing First Amendment: *Near v. Minnesota*, 283 U.S. 697 (1931), *Reynolds v. United States*, 98 U.S. 145 (1878), *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012), *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021), *Lynch v. Donnelly*, 465 U.S. 668 (1984); Fourth Amendment: *Wyoming v. Houghton*, 526 U.S. 295 (1999), *Wilson v. Arkansas*, 514 U.S. 927 (1995): Fifth Amendment: *Benton v. Maryland*, 395 U.S. 784 (1969), *Gamble v. United States*, 139 S.Ct. 1960 (2019); Sixth Amendment: *Ramos v. Louisiana*,140 S.Ct. 1390 (2020), *Powell v. Alabama*, 287 U.S. 45 (1932), *Klopfer v. North Carolina*, 386 U.S. 213 (1967), *In re Oliver*, 333 U.S. 257 (1948), *Duncan v.*

---

[2] Smith, Mark W., "Not All History Is Created Equal," October 1, 2022 [Ex. 1 at p. 9]  (emphasis supplied).

PLAINTIFFS' RESPONSE TO THE COURT'S *SUA SPONTE*  ORDER TO SHOW CAUSE

*Louisiana*, 391 U.S. 145 (1968), *Washington v. Texas*, 388 U.S. 14 (1967); Eighth Amendment: *Timbs v. Indiana*, 139 S.Ct. 682 (2019).

Because restrictions on public carry did not begin to surface until after the ratification of the Bill of Rights in 1791 – the relevant historical time period according for interpreting the provisions of the Bill of Rights according to Supreme Court jurisprudence – post-ratification restrictions on the right to bear arms that contradict the plain text of the Second Amendment are unconstitutional.

Put differently, no historical experts are required because any historical 'evidence' that either (i) contradicts the plain text of the Second Amendment and/or (ii) post-dates the ratification of the Bill of Rights and conflicts with the plain text of the Second Amendment is to be rejected – "the text controls." *Bruen*, at 2137.

## IV.   THERE ARE NO GROUNDS TO SUPPORT A COURT APPOINTED EXPERT

Expert witnesses are rarely appointed under Rule 706 because the adversary system is usually sufficient to promote accurate factfinding. *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1182 (E.D. Cal. 2011) citing, Federal Practice and Procedure § 6304 (3d ed. Supp. 2011). "It is clear that expert witnesses should only be appointed where doing so is necessary to ensure accurate factfinding. Such is the threshold issue. Nonetheless, courts consider other factors when deciding if appointment is appropriate. The first, and most obvious, is whether testimony from the parties' experts is sufficient to reveal the facts. Federal Practice and Procedure § 6304 (3d ed. Supp. 2011)." *Gorton*, at 1182.

### A.  *Bruen* Has Already Done the Heavy Lifting For Public Carry Cases

While Plaintiffs' complaint was amended after the *Bruen* decision, the amendments *simplified* Plaintiffs' causes of action by removing challenges to Penal Code sections 26150 and 26155. [ECF No. 68]. California's licensing regulations for the concealed carriage of handguns are no longer on the table. Plaintiffs' amended complaint challenges only the criminal statutes, Penal Code sections 25850 and 26350.

The *Bruen* decision did not place any greater historical burden on the parties or the Court. Rather, the scope of the relevant historical tapestry is narrowly defined, greatly simplifying the task

5

at hand for all involved. This is particularly so in this case because *Bruen*, as a public carry case, has already done the heavy lifting for this Court.

**B.  The Parties Were Able, and Did, Retain Their Own Experts**

While the Supreme Court's jurisprudence and extensive historical analysis require no additional input, Plaintiffs and the State each relied (pre-*Bruen*) upon experts in the field of Second Amendment jurisprudence in this case.

The parties have completed fact *and* expert discovery, including expert depositions. Defendant retained historical expert, Professor Saul Cornell, whose expert report was produced to Plaintiffs on August 27, 2021. [ECF No. 56-3].

In this open carry case, Defendant retained Professor Cornell no later than August 2021 to provide, "an expert opinion on the history of firearms regulation in the Anglo-American legal tradition, with a particular emphasis on the regulation of public (also referred to as "open") carry of arms at the national, and state level, with specific attention to California's regulatory history." [ECF No. 56-3, page 4 of 148]. Mr. Cornell's expert report provides Defendant with numerous citations, references, and other voluminous historical accounts for Defendant to research, rely upon, and/or pursue. [ECF No. 56-3].

Defendant also relied on the expert publications and studies from John Donohue, Abhay Aneja, and Kyle Weber, Dr. Michael Seigel, among others, and the voluminous publications cited therein (over 7 pages of citations) in their submissions opposing Plaintiffs' First and Second Motions for a Preliminary Injunction [ECF Nos. 20, 40]. Defendant did not seek to extend expert discovery to identify any additional historical experts.  [See, ECF Docket, generally].

Plaintiffs retained historical expert Clayton Cramer, whom Defendant had a full and fair opportunity to depose on October 21, 2021.

As each party had the ability to, and did, retain their own experts; there is no need for the Court to appoint a neutral expert.

**C.  There Are No Complex or Scientific Issues to Reconcile**

Neutral experts are appointed to assist the trier of fact where "the issues are complex and the parties' experts have presented conflicting testimony that is difficult to reconcile or have

6

1   otherwise failed to provide a sufficient basis for deciding the issues" [*Monolithic Power Sys., Inc.*

2   *v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009)] or where "scientific evidence was

3   'confusing and conflicting' and the appointment 'assist [ed] the court in evaluating contradictory

4   evidence about an elusive disease of unknown cause" *Walker v. Am. Home Shield Long Term*

5   *Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999)."

6       This case involves questions of *law*, not fact. There are no 'complex' or 'technical' or

7   'scientific' factual issues to be decided.

8

9   **V.  BY APPOINTING AN EXPERT, THE COURT WOULD INAPPROPRIATELY AND IMPROPERLY AIDING AND ASSISTING THE STATE TO MEET ITS BURDEN**

10       The parties, not the Court, are tasked with the responsibility of meeting their burdens of

11   proof under the *Bruen* test.

12       Under *Bruen,* Plaintiffs must demonstrate that the Second Amendment's plain text covers

13   their conduct- bearing arms – which it does. Under the *Bruen* test, the Constitution presumptively

14   protects their conduct.

15       "The government must then justify its regulation by demonstrating that it is consistent with

16   the Nation's historical tradition of firearm regulation. Only then may a court conclude that the

17   individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at

18   2129–30.

19       Plaintiff has no burden of producing historical evidence. Only the government – Defendant

20   Bonta - has the burden of providing historical support for its regulations.

21       By appointing its own historical expert, the Court would be improperly aiding the State in

22   its burden of producing historical evidence. Because there is no issue of fact – whether the

23   challenged regulations violate the Constitution is purely a question of law – appointing a Court

24   expert would be no different than appointing a third party to conduct legal research to aid the State

25   in its motion for summary judgment.

26       Performing research – whether historical, legal, or otherwise - is within the purview of the

27   attorneys, parties, and this Court. It's what we do. Experts have been consulted, amicus briefs from

28

PLAINTIFFS' RESPONSE TO THE COURT'S *SUA SPONTE* ORDER TO SHOW CAUSE

1   the *Bruen, Heller, McDonald,* and *Caetano* cases abound, as do post-*Bruen* articles and

2   submissions in numerous Second Amendment cases that have popped up in district and state courts

3   around the country. The government has a plethora of historical resources available to meet its

4   burden and an overabundant amount of time to attempt to justify its regulations.

5       In the case cited in this Court's Order to Show Cause, *United States v. Bullock*, No. 18-cr-

6   165, 2022 WL 16649175, at *2–3 (S.D. Miss. Oct. 27, 2022) the government and the defendant

7   each opposed the court's suggestion of a "court-appointed historian to address the historical record

8   relating to the issue before the Court." [See, Exhibits 2 and 3 annexed hereto][3]. It was the position

9   of each party that no court-appointed expert was warranted to address the historical record relating

10  to the constitutionality of the felon-in-possession law. *Id.*

11      The government in *Bullock* posited, the "prohibition against felons possessing firearms is

12  so thoroughly established as to not require detailed exploration of the historical record for the

13  purpose of this case." Ex. 2 at p. 1.

14      The defendant in *Bullock* also opposed the appointment of a court expert, noting that "*Bruen*

15  requires 'the government' - not the Court or a court-appointed expert - to carry the government's

16  burden of "affirmatively prov[ing]" the necessary historical tradition." [Exhibit 3] quoting, *Bruen*,

17  at 2130. The defendant further noted, "Under both *Bruen* and our system of party presentation, the

18  Court's analysis is confined to the historical record before it. A court-appointed expert may not

19  expand that record." [Exhibit 3 at p. 1].

20      "The job of judges is not to resolve historical questions in the abstract; it is to resolve legal

21  questions presented in particular cases or controversies. That legal inquiry is a refined subset of a

22  broader historical inquiry, and it relies on various evidentiary principles and default rules to resolve

23  uncertainties. For example, in our adversarial system of adjudication, we follow the principle of

24  party presentation. Courts are thus entitled to decide a case based on the historical record compiled

25  by the parties." *Bruen*, 142 S. Ct. at 2130 n.6 (cleaned up).

26

27

28

---

[3] Plaintiffs adopt and incorporate by reference those arguments that are consistent with their objections to this Court's Order to Show Cause

PLAINTIFFS' RESPONSE TO THE COURT'S *SUA SPONTE* ORDER TO SHOW CAUSE

1    As noted by the defendant in *Bullock,*

2        "the Court's Order in *Bruen* noted that Justice Alito commended the
     majority for its "'exhaustive historical survey.'" Order at 2 (citing
3        142 S. Ct. at 2157 (Alito, J., concurring)). The majority's survey was
     exhaustive because "the historical materials that respondents and
4        their amici ha[d] brought to bear" were exhaustive. *See id.* at 2132;
     *see also, e.g., id.* at 2138 (concluding that "the historical record
5        compiled by respondents does not demonstrate" the necessary
     tradition); *id.* at 2142 (limiting review to "this historical record");
6        Docket, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,* No. 20-843
     (reflecting 91 amicus briefs). The Supreme Court noted: "Of course,
7        we are not obliged to sift the historical materials for evidence to
     sustain New York's statute. ***That is respondents' burden.***" *Id.* at
8        2150."

9    Exhibit 3 at p. 3 (emphasis added).

10       As stated above, it would be improper for the Court to appoint a historical expert because

11   the Court would improperly be assisting Defendant Bonta with a second expert to meet its burden

12   of proof.  The responsibility of justifying Penal Codes 25850 and 26350 is Defendant Bonta's alone,

13   not the Court's.

14

15   **VI.  SHOULD THE COURT DISREGARD *BRUEN*, AND PLAINTIFFS' OBJECTIONS,
     PLAINTIFFS SUGGEST THE FOLLOWING EXPERTS**

16

17       If the Court disregards the *Bruen* decision, and Plaintiffs' objections, Plaintiffs recommend

18   the following experts:

19   • Professor and Attorney Eugene Volokh, UCLA Law School;

20   • Professor and Attorney Mark W Smith, Kings College, Presidential Scholar and Senior

21     Fellow in Law and Public Policy.

22

23   Dated: January 9, 2023                    THE BELLANTONI LAW FIRM, PLLC

24                                             ___/s/ Amy L. Bellantoni, Esq._____

25                                             Amy L. Bellantoni
                                               *Attorney for Plaintiffs*
26                                             *Pro Hac Vice*
                                               Email: abell@bellantoni-law.com
27

28

PLAINTIFFS' RESPONSE TO THE COURT'S *SUA SPONTE* ORDER TO SHOW CAUSE