**EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                                                                  No. 3:18cr165CWR-FKB

JESSIE BULLOCK
 a/k/a Booman Bullock

---

### SUBMISSION ADDRESSING THE NEED FOR
### A COURT-APPOINTED HISTORIAN

---

At the invitation of the Court, the Government presents this submission to respond to the Court's inquiry about the need for a court-appointed historian to address the historical record relating to the issue before the Court, namely, the constitutionality of "the federal statute prohibiting felons from possessing firearms, 18 U.S.C. § 922(g)(1)." ECF # 65 at 1.  While determining the historical basis for gun regulations is no doubt important generally, the prohibition against felons possessing firearms is so thoroughly established as to not require detailed exploration of the historical record for the purpose of this case.

As described below, the Supreme Court repeatedly has recognized that the felon prohibition is rooted in this country's tradition of firearms regulation.  And binding precedent of the Fifth Circuit likewise makes clear that 18 U.S.C. § 922(g)(1) is constitutional.  This binding precedent has never been abrogated, as would be necessary for either this Court or the Fifth Circuit to revisit it.  Defendant Jessie Bullock's motion

to dismiss the indictment should be denied for this reason alone. If, however, this Court were to deem it necessary to delve into text and history to confirm the result dictated by binding precedent, it should look to the parties for argument and evidence on that point, directing the parties to supplement their prior filings as necessary.

### I. Bullock's Challenge to 18 U.S.C. § 922(g)(1) Is Foreclosed by Binding Precedent.

Jessie Bullock contends the Government "cannot meet its burden of establishing that Section 922(g)(1), as applied to [him], is 'consistent with the Nation's historical tradition of firearm regulation.'" Motion to Dismiss, ECF # 61 at 4 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2130 (2022)). But binding precedent already holds that Section 922(g)(1) is constitutional in all its applications, and the Supreme Court's decision in *Bruen* does not abrogate that precedent.

In *District of Columbia v. Heller*, the Supreme Court defined the right to bear arms as limited to "law-abiding, responsible citizens." 554 U.S. 570, 635 (2008). Consistent with that definition, the Court cautioned that "nothing in [its] opinion should be taken to cast doubt" on "longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. The Court described these "permissible" measures as falling within "exceptions" to the protected right to bear arms. *Id.* at 635. In *McDonald v. City of Chicago*, a plurality of the Court "repeat[ed]" its "assurances" that *Heller*'s holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

The Court recently confirmed yet again that the right to keep and bear arms belongs only to "law-abiding" citizens. *Bruen*, 142 S.Ct. at 2122. *Bruen* repeatedly defines the Second Amendment as limited to "law-abiding" citizens. 142 S.Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156. Consistent with this principle, while *Bruen* invalidated New York's discretionary "may issue" licensing regime, it approved "shall-issue" regimes that "require applicants to undergo a background check or pass a firearms safety course."[1] *Id*. at 2138 n.9; *see id*. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("shall-issue licensing regimes are constitutionally permissible"). In reaching this result, the Court had no need to conduct a detailed historical analysis of shall-issue licensing regimes. Instead, the Court explained that such regimes generally pass constitutional muster because they "are designed to ensure only that those bearing arms … are, in fact 'law-abiding, responsible citizens.'" *Id*. at 2138 n.9 (majority op.) (quoting *Heller*, 554 U.S. at 635). This reasoning underscores that Section 922(g)(1)—which likewise aims to ensure that "those bearing arms" are "law-abiding, responsible citizens"—accords with the Second Amendment. *Id*.

Several courts of appeals, including the Fifth Circuit, accordingly have held that felons as a class are not among the law-abiding citizens protected by the Second Amendment. Following *Heller*, the Fifth Circuit "reaffirmed [its] prior jurisprudence" holding that "criminal prohibitions on felons (violent or nonviolent) possessing firearms

---

[1] A "shall issue" regime is one in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements." *Bruen*, 142 S.Ct. at 2123. By contrast, a "may issue" regime vests "authorities [with] discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria." *Id*. at 2124.

did not violate" the Second Amendment. *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (citing *United States v. Anderson*, 559 F.3d 348, 352 & n.6 (5th Cir. 2009)); *see also United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 n.7 (5th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S.Ct. at 2127-31; *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (holding that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment"); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (similar).

The Fifth Circuit's holdings remain controlling. As the Court has explained: "We are bound by our precedent unless the Supreme Court or our en banc court has changed the relevant law." *United States v. Leontaritis*, 977 F.3d 447, 451 n.1 (5th Cir. 2020), *cert. denied,* 142 S.Ct. 335 (2021). "'[F]or a Supreme Court decision to override a Fifth Circuit case, the decision must unequivocally overrule prior precedent.'" *Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (quoting *United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018)). Faithful adherence to controlling precedent "is 'a foundation stone of the rule of law.'" *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015) (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014)).

Since the Fifth Circuit's post-*Heller* decision in *Anderson*, the Supreme Court has reaffirmed twice—first in *McDonald*, then in *Bruen*—that non-law-abiding citizens fall outside the Second Amendment's scope. It follows that legislatures can prohibit

4

individuals convicted of felonies from possessing firearms. Indeed, Justices who joined the Court's recent opinion in *Bruen* took pains to underscore the limits of the decision, including specifically with respect to felon-possession restrictions. *See Bruen*, 142 S.Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that "longstanding prohibitions on the possession of firearms by felons" are constitutional under *Heller* and *McDonald*); *id.* at 2157 (Alito, J., concurring) (explaining that *Bruen* did not "disturb[] anything that [the Court] said in *Heller* or *McDonald* … about restrictions that may be imposed on the possession or carrying of guns"). Because *Bruen*'s "holding decid[ed] nothing about who may lawfully possess a firearm," *id.*, the Supreme Court's *Bruen* decision does not "unequivocally overrule" the Fifth Circuit's prior precedent holding that felons may be categorically prohibited from possessing firearms, *Gahagan*, 911 F.3d at 302. As another judge of this Court has recognized, the relevant question is "whether the *Bruen* holding constitutes an intervening decision" that "would relieve this Court of Fifth Circuit precedent upholding [18 U.S.C. § 922(g)(1)]"; the answer is that this precedent remains binding. *United States v. Cockerham*, No. 5:21cr6DCB-FKB, 2022 WL 4229314, at *2 (S.D. Miss. Sept. 13, 2022); *cf. United States v. Baker*, No. 2:20cr301, 2022 WL 16855423, at *3 (D. Utah Nov. 10, 2022) ("There is nothing in *Bruen* to indicate that either *Heller*, Tenth Circuit precedent based on *Heller*, or § 922(g)(1), are no longer valid.").[2]

---

[2] Although of no application here, we acknowledge that *Bruen* abrogates the "second step" of the general analytical framework that the Fifth Circuit has previously applied in Second Amendment cases: whether the prohibition at issue survived means-end scrutiny. *See Bruen*, 142 S.Ct. at 2126-30 (observing that courts of appeals had previously applied a "two-step" Second

In short, the Fifth Circuit—taking the Supreme Court at its word regarding the validity of laws prohibiting felons from possessing firearms—squarely has held that Section 922(g)(1) passes constitutional muster. This precedent has nothing to do with the means-end scrutiny that the Supreme Court abrogated in *Bruen*. The precedent therefore remains controlling. To the extent Bullock believes the Fifth Circuit and Supreme Court should have defined the Second Amendment's limits differently, his quarrel lies with the Supreme Court, not this Court. Put another way, the Government is taking this opportunity to clarify that this Court need not engage in a detailed analysis to independently confirm "that § 922(g)(1) 'is part of the historical tradition of regulation firearms possession,'" ECF # 65 at 2 (quoting ECF # 63 at 3), because the Supreme Court and Fifth Circuit solidly have foreclosed challenges to this statute and this Court remains bound by those decisions.

## II. Bullock's As-Applied Challenge Fails Under Any View of Text and History Because He Was Convicted of Multiple Violent Felonies.

In determining whether the services of a historian are required in the context of this case, it is worth considering that Bullock's prior convictions are not simply felonies, but reflect his participation in conduct that is both violent and dangerous. In May 2013, Bullock sought to run over a law enforcement officer with a Cadillac Fleetwood,

---

Amendment test—first ascertaining whether a law regulates activity falling within the scope of the constitutional right based on its original historical meaning, then applying means-end scrutiny—and that whereas "step one" is "broadly consistent with *Heller*," "*Heller* and *McDonald* do not support applying means-end scrutiny"); *id.* at 2127 n.4 (collecting court of appeals decisions reflecting a two-step approach, including the Fifth Circuit's decision in *National Rifle Association of America v. ATF*, 700 F.3d at 194-95). That aspect of *Bruen* is immaterial here, however, because the Fifth Circuit's precedents upholding Section 922(g)(1) have nothing to do with means-end scrutiny. *See, e.g., Anderson*, 559 F.3d at 352 & n.6.

6

resulting in his being charged with attempted aggravated assault of a law enforcement officer. The indictment for that offense referred to his prior convictions for murder and aggravated assault in February 1994. Bullock also previously had been convicted of aggravated assault and manslaughter in July 1992.

These are serious felony offenses that squarely place Bullock outside the scope of "'law-abiding, responsible citizens'" whose interest in self-defense the Second Amendment is intended to protect. *Bruen*, 142 S.Ct. at 2131 (quoting *Heller*, 554 U.S. at 665). Even judges who have expressed skepticism about blanketly precluding felons from possessing firearms have recognized that the Second Amendment does not protect the right of violent felons to bear arms. *See, e.g.*, *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting) ("The historical evidence does, however, support ... that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety."); *Folajtar v. Attorney General*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) (concluding that the "historical limits on the Second Amendment … protect us from felons, but only if they are dangerous"). Given Bullock's demonstrated pattern of violent conduct, he can find no proponent for a Second Amendment right to bear arms in the existing case law in this Circuit or elsewhere and there is no basis to expect that resort to the historical record will be of any avail under the circumstances of this case.

7

### III. If, Notwithstanding Binding Precedent, this Court Concludes that Further Historical Material Is Necessary to Resolve Bullock's Challenge, It Should Permit the Parties to Provide Such Material.

Following *Heller* and *Bruen*, courts correctly have recognized that—even where a comprehensive application of the Supreme Court's text-and-history standard is necessary to resolve challenges to Section 922(g)(1)—such cases can be resolved based on materials compiled by the parties. Addressing a post-*Bruen* challenge to the felon-disarmament statute, the Third Circuit recently held that a conviction for an offense covered by Section 922(g)(1) categorically "places [an individual] outside the class of people traditionally entitled to Second Amendment rights." *Range v. Attorney General*, 53 F.4th 262, 266 (3d Cir. 2022). The D.C. Circuit and Fourth Circuit likewise have rejected challenges to Section 922(g)(1) at "step one"—an analysis of "text, as informed by history," that *Bruen* did not abrogate, 142 S.Ct. at 2127. *See Medina v. Whitaker*, 913 F.3d 152, 157-61 (D.C. Cir. 2019); *Hamilton v. Pallozzi*, 848 F.3d 614, 625-27 (4th Cir. 2017).

This Court likewise should look to the parties to provide any necessary support for their positions as to whether the "the Second Amendment's plain text" extends a right to keep and bear arms to persons convicted of felony offenses and, if so, whether barring them from possessing firearms "is consistent with this Nation's historical tradition of firearms regulation." *Bruen*, 142 S.Ct. at 2130. If the Court concludes that a detailed analysis of these issues is necessary to resolve this case, the Government stands ready to submit further and more detailed briefing as ordered by the Court. The Government anticipates that such materials would provide ample basis for deciding the motion

pending in this case. *See, e.g.*, *Range*, 53 F.4th at 266 ("the Government has met its burden to demonstrate that its prohibition is consistent with historical tradition"). Following our standard adversarial practice, the Court then can decide which of the competing perspectives is the more persuasive, supplemented with the Court's own examination of the historical record as illuminated by the parties.

Our legal tradition rests in large part on the responsibility of the parties to present materials necessary to support their legal positions. The prospect of judges in all 94 federal judicial districts retaining a historian would be an expensive proposition and a departure from the typical reliance on the parties to provide support for their legal positions.

\* \* \*

For the foregoing reasons, the Government submits that it is unnecessary for this Court to appoint an historian to assist with the resolution of Bullock's challenge. If the Court concludes that it does not yet have sufficient material available to resolve Bullock's challenge, the Government requests an opportunity for further briefing.

> Respectfully submitted,
>
> DARREN J. LAMARCA
> *United States Attorney*
>
> By: /s/ *Gaines H. Cleveland*
> GAINES H. CLEVELAND
> *Assistant U.S. Attorney*
> Mississippi Bar No. 6300
> gaines.cleveland@usdoj.gov
> 1575 Twentieth Avenue
> Gulfport, MS 39501
> (228) 563-1560

JESSICA S. TERRILL
*Assistant U.S. Attorney*
Mississippi Bar No. 105510
jessica.terrill@usdoj.gov
501 East Court St. Suite 4.430
Jackson, MS 39201
(601) 973-2850

Dated: December 12, 2022