**EXHIBIT 3**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**UNITED STATES OF AMERICA**

V.                                                        **CRIMINAL NO. 3:18CR165-CWR-FKB**

**JESSIE BULLOCK**

## RESPONSE TO ORDER DEFERRING RULING ON MOTION TO DISMISS

Comes now Defendant Jessie Bullock and files this Response to Order Deferring Ruling on Motion to Dismiss. The Court ordered the parties to "respond and indicate their position on the appointment of a consulting expert." Order at 6. In keeping with the Court's Order, Mr. Bullock's counsel have conferred with federal public defenders throughout the Nation. *See id.* at 6 n.2.

Mr. Bullock respectfully opposes the appointment of a consulting expert. While Mr. Bullock appreciates the Court's careful attention to history, *Bruen* requires "the government"—not the Court or a court-appointed expert—to carry the government's burden of "affirmatively prov[ing]" the necessary historical tradition. *E.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126–28, 2130 (2022). Under both *Bruen* and our system of party presentation, the Court's analysis is confined to the historical record before it. A court-appointed expert may not expand that record.

1

Nor is a court-appointed expert necessary to help interpret the historical record before the Court. As the Court noted, the government "summarily asserts" the historical tradition that *Bruen* requires it to "affirmatively prove." *Compare* Order at 2, *with Bruen*, 142 S. Ct. at 2127. Under *Bruen*, the government's *ipse dixit* fails to carry the government's burden as a matter of law.

The Court should grant the Motion to Dismiss, holding that Section 922(g)(1) is unconstitutional as applied to Mr. Bullock.

## I. Argument

### A. Under *Bruen* and our system of party presentation, a court-appointed expert may not carry the government's burden.

The Court's Order stated that "*Bruen* instructs courts to undertake a comprehensive review of history to determine if Second Amendment restrictions are 'consistent with the Nation's historical tradition of firearm regulation.'" Order at 2 (citing *Bruen*, 142 S. Ct. at 2130). But *Bruen* requires the government—not the Court or a court-appointed expert—to carry the government's burden.

Under *Bruen*, it is "the government" that "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. *Bruen* states again that "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. Courts "are not obliged to sift the historical materials for evidence to sustain" a regulation.

2

*Id.* at 2150. "That is [the government's] burden." *Id.* "Only if" "the government" "carr[ies] that burden" of establishing a historical tradition "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126, 2135; *see also, e.g., id.* at 2130, 2149 n.25, 2156 (similar).

Six Justices explained that courts applying *Bruen* should "follow the principle of party presentation." *Id.* at 2130 n.6 (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)); *see also, e.g., Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation."). The majority in *Bruen* explained in full:

> The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies. That legal inquiry is a refined subset of a broader historical inquiry, and it relies on various evidentiary principles and default rules to resolve uncertainties. For example, in our adversarial system of adjudication, we follow the principle of party presentation. Courts are thus entitled to decide a case based on the historical record compiled by the parties.

*Bruen*, 142 S. Ct. at 2130 n.6 (cleaned up).[1]

---

[1] The Court's Order noted that Justice Alito commended the majority for its "'exhaustive historical survey.'" Order at 2 (citing 142 S. Ct. at 2157 (Alito, J., concurring)). The majority's survey was exhaustive because "the historical materials that respondents and their *amici* ha[d] brought to bear" were exhaustive. *See id.* at 2132; *see also, e.g., id.* at 2138 (concluding that "the historical record compiled by respondents does not demonstrate" the necessary tradition); *id.* at 2142 (limiting review to "this historical record"); Docket, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, No. 20-843 (reflecting 91 *amicus* briefs). The Supreme Court noted: "Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. That is respondents' burden." *Id.* at 2150.

3

Under *Bruen*, the Court need not—and must not—undertake its own "comprehensive review of history." Order at 2. Nor may the Court "identify and sift through authoritative sources on founding-era firearms restrictions" that the parties did not present. *Id.* at 6. Rather, the Court's review is limited to assessing whether the government has carried its burden, given the historical record compiled by the parties. Under *Bruen* and our system of party presentation, a court-appointed expert may not carry the government's historical burden for it.

**B. Because the government only "summarily asserts" the requisite historical tradition, a court-appointed expert is unnecessary to help interpret the historical record before the Court.**

As the Court's Order noted, the government "summarily asserts" that this application of Section 922(g)(1) is "entirely consistent with the Second Amendment." Order at 2; Resp. at 4. As a matter of law, that *ipse dixit* comes nowhere close to carrying the government's burden under *Bruen*. An expert is therefore unnecessary to help interpret the record before the Court.

Under *Bruen*, the government bears a heavy burden in establishing the necessary historical tradition. *See* Mot. at 2–3, 6–7; Reply at 6, 9–11. The government must always "sift the historical materials for evidence to sustain" its regulation. *Bruen*, 142 S. Ct. at 2150. To uphold a regulation, "the government" must at least "identify a well-established and representative historical analogue."

4

*Id.* at 2132–33 (directing courts to use analogical reasoning in their "consideration of modern regulations that were unimaginable at the founding").

The government's burden becomes even heavier when, as here, a modern regulation "addresses a general societal problem that has persisted since the 18th century." *Id.* at 2131. In such a case, the government must identify a "distinctly similar" historical regulation. *Id.*

But the government cites only one authority for the proposition that Section 922(g)(1) of the Gun Control Act of 1968 is part of the Nation's "historical tradition." *See* Resp. at 3–4. The relevant portion of that one case states in full:

> Federal law has for over 40 years regulated sales by licensed firearms dealers, principally to prevent guns from falling into the wrong hands. See Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* Under § 922(g), certain classes of people—felons, drug addicts, and the mentally ill, to list a few—may not purchase or possess any firearm.

*Abramski v. United States*, 573 U.S. 169, 172 (2014). The only regulation the government has identified to establish a "historical tradition" embracing the Gun Control Act of 1968 is, in fact, the Gun Control Act of 1968.[2]

---

[2] Mr. Bullock's Motion presented evidence that it was not until the twentieth century that any State or the federal government enacted a felon-disarmament law. *See* Mot. 4–6 (citing, *e.g.*, C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J. L. & Pub. Pol'y 695, 708 (2009) ("Though recognizing the hazard of trying to prove a negative, one can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I.")). The government failed to address any of Mr. Bullock's evidence, and the government did not identify any pre-twentieth-century felon-disarmament law. Counsel for Mr. Bullock remain unaware of any such pre-twentieth-century regulation. *See Bruen*, 142 S. Ct. at 2154 n.28 ("We will not address any of the 20th-century historical evidence brought to bear.").

The government has not identified any "well-established and representative historical analogue," let alone any "distinctly similar historical regulation." *Bruen*, 142 S. Ct. at 2131, 2133. The government has not identified any historical regulation disarming people because of felony convictions, let alone disarming them for any purpose and for life, let alone enforcing that lifetime proscription through a lengthy period of incarceration. *See id.* Indeed, the government has not identified *any* regulation predating 1968. *See id.* at 2154 n.28 ("We will not address any of the 20th-century historical evidence brought to bear.").

Against that backdrop, a court-appointed expert is not needed to conclude that the government comes nowhere close to carrying its burden. In future cases, perhaps a court-appointed expert could be appropriate to help a court interpret a highly technical or voluminous historical record.[3] But an expert is unnecessary here, where the government "summarily asserts" the historical tradition that it must "affirmatively prove." *Compare* Order at 2, *with Bruen*, 142 S. Ct. at 2127.

### C. Despite criticisms of *Heller* and *Bruen*, the Court and the government are bound to follow them.

The Court is correct that many have criticized *Heller* and *Bruen*. *See* Order at 3–5. But, for better or worse, *Heller* and *Bruen* are "the law of the land and the

---

[3] Take *Bruen* itself, where the government and dozens of *amici* compiled—and the Supreme Court interpreted—a myriad of "original sources from over 600 years of English and American history." 142 S. Ct. at 2179 (Breyer, J., dissenting).

6

[Court] is bound to follow [their] terms absent a change in practice by the Supreme Court." See *Jamison v. McClendon*, 476 F. Supp. 3d 386, 409 (S.D. Miss. 2020).

The government, too, is bound to follow their terms. Yet the government continues to rely on *Emerson* and *McGinnis* before the Court, despite acknowledging in August before the Fifth Circuit that *Bruen* "abrogates" those decisions.[4] The government continues to "limit[] *Bruen* to its facts," despite *Bruen*'s manifest holding (and reiteration thereof).[5] And the government continues to "summarily assert[]" the necessary historical tradition, despite the government's heavy burden under *Bruen*.[6] *Bruen* demands more.

And the government has ample incentive to attempt to satisfy its demands. As recently as January 2020, the U.S. Department of Justice has directed prosecutors to bring charges under Section 922(g) "aggressively," because those charges are "generally simple and quick to prove" and "can be used as leverage to gain plea bargaining and cooperation."[7] In FY 2021, officials reported 7,454 convictions under Section 922(g)(1) to the U.S. Sentencing Commission—more

---

[4] *Compare* Resp. at 1–2 (citing *Emerson* and *McGinnis*), *with* Suppl. Br. for Appellee United States at 12, *United States v. Rahimi*, No. 21-11001 (5th Cir. Aug. 9, 2022) ("*Bruen* abrogates the analysis in *McGinnis*," "requires this Court to revisit *Emerson*," and "'unequivocally overrule[s]' the second step of this Court's two-step Second Amendment analysis.").

[5] *Compare* Order at 2, *with Bruen*, 142 S. Ct. at 2126, 2129–30.

[6] *Compare* Order at 2, *with Bruen*, 142 S. Ct. at 2131, 2133, 2150.

[7] *Criminal Resource Manual* § 112, U.S. Dep't of Justice (updated Jan. 22, 2020), https://perma.cc/8QZV-9XEV.

7

than 10% of reported cases.[8] Despite the prevalence of these charges, and despite months of opportunity for the government to conduct research itself or consult with experts, the United States has identified no relevant historical evidence.

One final point bears mention. Mr. Bullock has raised only an as-applied challenge to Section 922(g)(1). *See* Mot. at 3–4, 6–7, 10; Reply at 1, 9–11. The government has failed to carry its burden in this particular as-applied challenge, but granting Mr. Bullock's Motion would permit the government to attempt to carry that burden with additional evidence in future cases.

## II. Conclusion

With appreciation for the Court's careful attention to this issue, Mr. Bullock respectfully opposes the appointment of a consulting expert. Because the government has failed to carry its burden, the Court should grant the Motion to Dismiss, holding that Section 922(g)(1) is unconstitutional as applied.

---

[8] *Quick Facts: Felon in Possession of a Firearm, Fiscal Year 2021*, U.S. Sentencing Comm'n, 1 (2021), https://perma.cc/Q4WT-49VP. Defendants were sentenced to an average of five years of incarceration. *Id.* at 2. And defendants pleaded in 98 percent of firearms cases. *See* Charles R. Breyer et al., *2021 Annual Report and Sourcebook of Federal Sentencing Statistics*, U.S. Sentencing Comm'n, 59 (2021), https://perma.cc/J734-RELS. More than three-quarters of people convicted were people of color. *See Quick Facts*, *supra*, at 1; *see also* Jacob D. Charles & Brandon L. Garrett, *The Trajectory of Federal Gun Crimes*, 170 U. Pa. L. Rev. 637, 696 (2022) (explaining that "systematic practices that work against Black Americans" make it more likely for Black Americans "*both* to get a gun-disqualifying conviction *and* to be the one with a gun-disqualifying conviction who gets caught unlawfully possessing a firearm"); Benjamin Levin, *Guns and Drugs*, 84 Fordham L. Rev. 2173, 2197 (2016) (discussing the "close relationship between antigun and antidrug initiatives").

Respectfully submitted, December 12, 2022.

**Omodare B. Jupiter**
Federal Public Defender

*/s/ Michael L. Scott*
Michael L. Scott (MB # 101320)
Assistant Federal Public Defender
N. and S. Districts of Mississippi
200 S. Lamar St., Suite 200 North
Jackson, Mississippi 39201
Telephone: (601)948-4284
Facsimile: (601)948-5510
Email:  mike_scott@fd.org

Attorney for Defendant

# CERTIFICATE OF SERVICE

I, Michael L. Scott, certify that this Response was filed with the Clerk of the United States District Court for the Southern District of Mississippi on December 12, 2022, using the electronic case filing system, which in turn sent an electronic copy of this Response to all attorneys of record in this case.

*/s/ Michael L. Scott*
Michael L. Scott
Attorney for Defendant