# EXHIBIT  6

FILED/ENDORSED

JUL 2 7 2022

By J. Bredberg, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SACRAMENTO**

The People of the State of California,

    Plaintiff,

v.

**TONY DIAZ,**

    Defendant.

Case No. 21FE019850   Dept. 40

**ORDER SUSTAINING DEMURRER**

    The defense demurs to four felony firearm charges, including three alleged violations of Penal Code section 25400, subdivision (a)(3)[1] and one alleged violation of section 25850, subdivision (a). After careful review, the Court concludes the demurrer must be sustained.

*I. Introduction*

    The facts of the case are largely irrelevant to the legal analysis, so the Court will provide only a brief synopsis.

    Defendant was one of three individuals in a vehicle smoking marijuana when they were contacted by law enforcement. Defendant was patted down and a loaded unregistered handgun was found in his waistband. Officers also located a key on defendant's person. The key opened a safe that contained two more firearms. Both were unregistered and one was reported stolen.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

1

*II. The Demurrer and the People's Response*

On July 11, 2022, the defense filed a demurrer challenging the charges. The defense maintains that in light of *New York State Rifle & Pistol Assoc., Inc. v. Bruen* (2022) 142 S.Ct. 2111 (*Bruen*), violations of sections 25400 and 25850 are no longer public offenses. (§ 1004, subd. (4).) The defense maintains *Bruen* invalidated California's concealed carry licensing statutes (§§ 26150, 26155), meaning individuals can no longer be punished for concealed carry of a firearm. Critically, the defense argues an individual need not have attempted to obtain a concealed carry license before invoking *Bruen*. The People disagree.

The People make several arguments that attempt to distinguish *Bruen* and demonstrate the defense's interpretation of *Bruen* is overbroad. The People argue that, under *Bruen*, a state may impose statutory prohibitions so long as those prohibitions do not "altogether prohibit the *public* carry of arms protected by the Second Amendment or state analogues." (Peop. Resp. at p. 5 citing *Bruen*.) The People then point out that sections 25400 and 25850 do not "contain any language regarding a licensing scheme" and that section 25400 prohibits various forms of concealed carry but that *Bruen* was concerned with "licensing scheme that involved public or open carry laws." The People contend section 25850 is still valid because "it does not ban, altogether, public carry." The People go on to cite pre-*Bruen* cases holding sections 25400 and 25850 are constitutional. Finally, the People maintain defendant is not the "law-abiding" citizen that *Bruen* approved for public carry.

*III. California's Public Carry Laws*

Section 25400, read by itself, completely prohibits carrying a concealed firearm in a vehicle or on one's person. The offense is either a misdemeanor or a felony depending on the circumstances. Section 25850, read by itself, completely prohibits carrying a loaded firearm on one's person or in a vehicle "while in any public place." Like section 25400, the offense is a misdemeanor or a felony depending on the circumstances. Per sections 25655 and 26010, an individual may, however, avoid prosecution for these offenses by obtaining a license under section 26150 or section 26155.

Sections 26150 and 26155 outline the requirements for obtaining a concealed carry

2

license.[2] The two statutes are essentially identical with one (§ 26150) applying when the sheriff is the licensing authority and the other (§ 26155) applying when the city chief of police is the licensing authority. For the remainder of this order the Court will refer to section 26150 as the relevant statute. To obtain a license an applicant must meet four criteria:

(1)   The applicant is of good moral character;

(2)   Good cause exists for issuance of the license;

(3)   The applicant is a resident of the county, or the applicant's principal place of employment is in the county and the applicant spends a substantial period of time in that place of employment;

(4)   The applicant has completed a course of training as described in Section 26165.

Compliance with section 26150 is the only legal means by which the majority of individuals can legally carry a concealed firearm[3].

### IV. Bruen and its Effect on California Law

#### a. Bruen

*Bruen* holds that the "Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." (*Bruen, supra,* 142 S. Ct. at p. 2122.) The "Second Amendment's plain text [] presumptively guarantees" the right to " 'bear' arms in public for self-defense." (*Id.* at p. 2635.) The decision allows for objective regulations only if they are "consistent with the Nation's historical tradition of firearm regulation." (*Id.*)

*Bruen* addressed New York's concealed carry licensing law, which required an applicant to convince a licensing officer that he is "of good moral character" and that "proper cause" exists

---

[2] Sections 26150 and 26155 provide a narrow exception that allows open carry in counties with populations under 200,000 people. Other than this exception, open carry is completely banned in California.

[3] Obtaining a license under section 26150 is not the *only* exemption from prosecution for carrying a concealed firearm. Other exemptions, however, depend on a person's place of employment, or the activity they are engaged in. For the vast majority of individuals, compliance with section 26150 is their only legal path to exercising their right to public carry. (§ 25620 [members of the Armed Forces permitted to public carry when on duty] § 25645 [transportation of unloaded firearms permitted for a person operating a licensed common carrier]; § 25640 [licensed hunters and fisherman permitted to carry concealed weapon while engaged in hunting or fishing]; § 25630 [exemption for any guard or messenger of any common carrier, bank, or other financial institution].)

3

1  to issue it. An individual caught with a concealed firearm and without a license, was punishable

2  by four years in prison for a felony or one year in jail for a misdemeanor. Possession of a loaded

3  firearm without a license was punishable by up to 15 years in prison. The two petitioners in *Bruen*

4  each sought a license to carry a concealed weapon and each was denied. The petitioners sued for

5  declaratory and injunctive relief, alleging New York's statute violated the Second Amendment by

6  denying their license applications on the basis that they had failed to show "proper cause."

7  (*Bruen, supra,* at pp. 2122-2126.) The Supreme Court agreed.

8      The Court began its analysis by rejecting the two-step approach appellate courts had taken

9  to analyze firearm regulations in the wake of *District of Columbia v. Heller* (2008) 554 U.S. 570

10  (*Heller*) and *McDonald v. City of Chicago* (2010) 561 U.S. 742. The specifics of the two-step

11  approach are not relevant here. Suffice it to say, the Court rejected the two-step analysis and

12  concluded that to justify a regulation of the Second Amendment, the state must demonstrate that

13  the regulation "is consistent with this Nation's historical tradition." Only then, will the

14  individual's conduct fall "outside the Second Amendment's 'unqualified command.' [Citation.]"

15  (*Bruen, supra,* at p. 2126.) The Court then conducted a painstaking review of historical firearm

16  regulations. At the end of their journey, the Court concluded New York did not meet "their

17  burden to identify an American tradition justifying the State's proper-cause requirement." (*Id.* at

18  p. 2156.) The Court stated, "we know of no other constitutional right that an individual may

19  exercise only after demonstrating to government officers some special need." (*Id.*) Though it

20  struck down New York's licensing statute, the Court made it clear that regulations consistent with

21  historical precedent are permitted.

22                                     *b. Effect on California Law*

23      California's concealed carry licensing scheme is the same as New York's. *Bruen*

24  specifically identified California as one of seven states (including New York) that utilize a

25  "proper cause" standard. (*Bruen, supra,* 142 S. Ct. at p. 2124.)  In a "Legal Alert," the California

26  Attorney General expressed his view that "that the Court's decision renders California's 'good

27  cause' standard to secure a permit to carry a concealed weapon in most public places

28

                                            4

1    unconstitutional." [4] The Attorney General also states he believes the other requirements of section

2    26150 remain valid and recommends licensing authorities should "continue to apply and enforce

3    all other aspects of California law with respect to public-carry licenses and carrying of firearms in

4    public." The Legislature is currently considering a bill that would amend California's licensing

5    scheme to comply with *Bruen*. (Sen. Bill 918, 2021-2022 Reg. Sess.)

6                                              *V. Discussion*

7                                     *a. The People's Arguments*

8              The Court recognizes that *Bruen* addressed a licensing statute, but the demurrer challenges

9    a punishment/criminal statute. But the People's attempt to separate the licensing scheme from the

10   criminal statutes is untenable. The licensing scheme (§ 26150) and criminal statutes (§§ 25400,

11   25850) are two sides of the same coin. Charging a violation of either section 25400 or 25850 is

12   implicitly and functionally an allegation that the defendant failed to comply with section 26150.

13   When the licensing statute and criminal statutes are considered together, and in light of the

14   caselaw cited by defense, the defendant cannot be punished for exercising his right to public

15   carry.

16             *Bruen* unequivocally holds that public carry is *presumptively legal*. States may regulate

17   public carry, but the regulation must be rooted in our Nation's history of gun regulation as

18   interpreted by *Bruen*. If the regulation is not constitutional, then the state returns to the default

19   position – that public carry is legal, at least until the unconstitutional portions of the licensing

20   scheme are excised or amended. The People's arguments do not counter this conclusion.

21             The Court identified five arguments in the People's response. First, the People contend

22   section 25400 "specifically prohibits various forms of *concealed* carry," but that *Bruen* "was

23   concerned with a licensing scheme that involved public or open carry laws." (Peop. Resp. at p. 5

24   (Italics in original).) The People are incorrect.   The opening paragraphs of *Bruen* cite the New

25   York law prohibiting concealed carry. The Court observed: "If he wants to carry a

26   firearm outside his home or place of business for self-defense, the applicant must obtain an

27

28   [4] The Legal Alert can be found at https://oag.ca.gov/system/files/media/legal-alert-oag-2022-02.pdf

1  unrestricted license to 'have and carry' a *concealed* 'pistol or revolver.' § 400.00(2)(f). To secure

2  that license, the applicant must prove that 'proper cause exists' to issue it." (*Bruen, supra,* 142 S.

3  Ct. at p. 2123 (Italics added).) Clearly, *Bruen* is as applicable to laws related to concealed carry as

4  it is laws concerning open carry.

5      Related to their first argument, the People's second argument posits that section 25850 "is

6  also appropriate under the *Bruen* analysis as it does not ban, altogether, public carry. Therefore,

7  contrary to Defendant's best efforts to incorrectly expand *Bruen*, Penal Code sections 25400 and

8  25850 are constitutional statutory prohibitions." (Peop. Resp. at p. 5.) This argument is

9  impossible to square with the statute's plain language. Section 25850 subjects anyone in a public

10  place "carrying a loaded firearm" on the person or in a vehicle to criminal prosecution. This

11  amounts to a total ban on public carry. The validity of the statute depends on individuals having a

12  legal means to exercise their right to public carry. This argument is emblematic of the People's

13  failure to connect the licensing scheme to criminal statutes.

14      The People's third argument is that *Bruen* only applies to the licensing statutes. To

15  support this argument, the People cite a footnote in a United States District Court case that states

16  "the Supreme Court decision in [*Bruen*], calls into question the constitutionality of California

17  Penal Code § 26150." The Court fails to see the relevance of this case. As noted above and

18  explained more fully below, the invalidation of the only legal means by which an individual can

19  exercise the right to public carry has significant ramifications on the ability to punish an

20  individual for the exercise of this constitutional right. The People's fourth argument is that two

21  pre-*Bruen* California decisions have already found sections 25400 and 25850 are constitutional.

22  *Bruen*, however, renders both of these decisions obsolete.

23      In *People v. Yarbrough* (2008) 169 Cal.App.4th 303, the defendant was convicted of

24  carrying a concealed and loaded firearm (fmr. §§ 12025 (now § 25400), § 12031 (now § 25850)).

25  The defendant argued these convictions violated the Second Amendment. Relying on *Heller*, the

26  court held the two statutes do "not broadly prohibit or even regulate the possession of a gun in the

27  home for lawful purposes of confrontation or self-defense, as did the law declared constitutionally

28  infirmed in *Heller*." (*Id.* at p. 313.) The court also found that "carrying a firearm concealed on the

1    person or in a vehicle in violation of section 12025, subdivision (a), is not in the nature of a

2    common use of a gun for lawful purposes which the court declared to be protected by the Second

3    Amendment in *Heller*." (*Id.* at p. 313-314.) The court's conclusions do not survive *Bruen*'s

4    holding that public carry is presumptively legal. Further, the court's reliance on *Heller* (a case

5    that decided whether possession of firearms in the home was protected by the Second

6    Amendment), is superseded by *Bruen*. As it was with *Yarbrough*, the People's faith in *People v.*

7    *Flores* (2008) 169 Cal.App.4th 568 (*Flores*) is misplaced.

8          In *Flores*, the defendant was convicted of being a felon in possession of a firearm,

9    carrying a concealed firearm and carrying a loaded firearm in a public place. The defendant

10   argued the convictions violated his Second Amendment rights under *Heller*. The court found that

11   "[g]iven [*Heller's*] implicit approval of concealed firearm prohibitions, we cannot read *Heller* to

12   have altered the courts' longstanding understanding that such prohibitions are constitutional."

13   (*Flores, supra,* at p. 575.)

14         *Flores'* conclusion that *Heller* approved concealed firearm prohibitions turned out to be

15   erroneous. *Heller* stated, "the majority of the 19th-century courts to consider the question held

16   that prohibitions on carrying concealed weapons were lawful under the Second Amendment or

17   state analogues." (*Heller, supra,* 554 U.S. at p. 626.) However, *Heller* also made clear they "do

18   not undertake an exhaustive historical analysis today of the full scope of the Second

19   Amendment." (*Ibid.*)  The Supreme Court completed its exhaustive analysis in *Bruen*. The *Bruen*

20   court acknowledged *Heller's* dicta on concealed carry laws and stated, "we cautioned that we

21   were not 'undertak[ing] an exhaustive historical analysis today of the full scope of the Second

22   Amendment' and moved on to considering the constitutionality of the District of Columbia's

23   handgun ban." (*Bruen, supra,* 142 S. Ct. at p. 2128.) *Flores* is no longer good law.

24         The People's fifth, and final argument, is that the facts of the present case distinguish it

25   from *Bruen*. The People argue (1) the charges involve unregistered firearms; (2) "these statutory

26   prohibitions fall short of the blanket bans discussed in *Bruen*; and (3) defendant is not the "law-

27   abiding" citizen using the firearm for self-defense that the Supreme Court approved for concealed

28   carry. The Court fails to see the import of the firearms not being registered, or even stolen. The

1  defendant is not charged with possession of an unregistered firearm and is not charged with

2  possession of stolen property. The question is whether the charges defendant is facing are still

3  public offenses, and those charges do not depend on whether the gun was registered or stolen.

4  The Court acknowledges sections 25400 and 25850 have provisions that affect the *punishment* for

5  public carry of an unregistered or stolen firearm, but those provisions do not change the

6  fundamental question before the Court. The People's contention that *Bruen* does not apply

7  because defendant is not the type of person entitled to public carry under *Bruen* is similarly

8  unpersuasive.

9        None of the People's arguments find traction. The People are correct that the Supreme

10  Court repeatedly states the Second Amendment protects the right of "law-abiding" citizens to

11  public carry for "self-defense." However, *Bruen* does not define law-abiding or give any guidance

12  on how lower courts should determine whether a weapon is carried for self-defense or for some

13  other purpose. The People also decline to offer a definition of these ambiguous terms, and the

14  Legislature has not yet addressed these questions. Do the criminal allegations themselves mean

15  someone is not law-abiding? Does carrying a concealed firearm while possibly engaged in

16  uncharged criminal conduct mean someone is no longer law-abiding? Does a prior conviction of

17  any kind mean someone is no longer law-abiding? What if the prior conviction is stale? How does

18  a court determine whether a firearm in a waistband is possessed for self-defense or not? Is a

19  firearm locked in a safe possessed for self-defense or some other purpose? Denying someone's

20  constitutional right by teasing through nebulous questions like these is not the Court's role.

21        The best argument for sustaining the demurrer is found in caselaw cited by the defense.

22  The People never address these cases in their brief.

23                    *b. Defendant May Exercise his Right with Impunity*

24        A critical question in deciding whether to overrule or sustain the demurrer is whether

25  defendant needed to attempt to comply with section 26150 before possessing the firearm in

26  public. The petitioners in *Bruen* chose to challenge the licensing law *after* they applied and were

27  denied, but did they *have to* apply for the license first? The cases cited by the defense are

28  unequivocal – the answer is no.

8

1        In *Shuttlesworth v. City of Birmingham, Ala.* (1969) 394 U.S. 147 (*Shuttlesworth*), the

2   petitioner was convicted of violating a city ordinance that prohibited participation in a "parade or

3   procession or any other public demonstration" without first obtaining a permit. The defendant

4   was sentenced to 90 days imprisonment at hard labor and fined. The Alabama Court of Appeals

5   initially reversed the conviction, but it was reinstated by the Alabama Supreme Court. The

6   Supreme Court then reviewed the ordinance and easily determined it was unconstitutional.

7        *Shuttlesworth* stated the ordinance was an unlawful prior restraint on the First Amendment

8   because it "conferred upon the City Commission virtually unbridled and absolute power to

9   prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways."

10   (*Shuttlesworth, supra,* at p. 150.) Critically, the Court then stated:

12        *And our decisions have made clear that a person faced with such an unconstitutional
          licensing law may ignore it and engage with impunity in the exercise of the right of free
13        expression for which the law purports to require a license.*

14   (*Id.* at p. 151.) The Court cited six prior opinions in support of this conclusion, including *Staub v.*

15   *City of Baxley* (1958) 355 U.S. 313 and *Freedman v. Maryland* (1965) 380 U.S. 51. The defense

16   cites both cases in the demurrer. At least one California appellate court has also held that

17   individuals faced with an unconstitutional license scheme may exercise their right without fear of

18   prosecution.

19        In *Aaron v. Municipal Court* (1977) 73 Cal.App.3d 596, the petitioners sought a writ of

20   prohibition to prevent their prosecution for violation of a municipal ordinance which outlawed

21   soliciting without a license. The petitioners argued the ordinance violated their First Amendment

22   rights. Application for the writ was necessary because the trial court had overruled the petitioners'

23   demurrers. The appellate court agreed, and reversed the judgment of the trial court and

24   "remanded with directions to issue a peremptory writ of prohibition commanding the respondent

25   municipal court to refrain from further proceedings in the actions specified in the petition,

26   pending against petitioners, *other than to dismiss the same.*" (*Id.* at p. 610 (Italics added).)

27                                    *c. Conclusions*

28                                          9

1    *Aaron* and *Shuttlesworth* provide a powerful argument for sustaining the demurrer. In

2    *Shuttlesworth*, the defendant's conviction was overturned because the licensing scheme was

3    unconstitutional. In *Aaron*, the court did not even allow the prosecution to proceed because it was

4    based on an invalid restraint on a constitutional right. Read together, the cases hold that an

5    individual cannot be prosecuted for exercising a constitutionally protected right. There is no

6    reason to believe these holdings do not apply when the Second Amendment is at issue. As *Bruen*

7    stated: "The constitutional right to bear arms in public for self-defense is not a 'second-class

8    right, subject to an entirely different body of rules than the other Bill of Rights Guarantees.'

9    [Citation.]" (*Bruen, supra,* 142 S. Ct. at p. 2156.)

10    At the time of defendant's arrest California provided one legal means by which an

11    individual could exercise their right to public carry – to get a license under section 26150. That

12    path was unconstitutional. According to *Shuttlesworth,* faced with an unconstitutional restriction

13    on his constitutional right, defendant was free to engage "with impunity in the exercise of the

14    right..."

15    The Court does not relish the conclusion reached here and understands its ramifications.

16    But this result cannot be avoided in light of *Bruen* and *Shuttlesworth* and the arguments presented

17    by the parties.

18                              *VI. Disposition*

19    The demurrer is SUSTAINED. The People may attempt to remedy the complaint by filing

20    an amended complaint within ten calendar days of the issuance of this order. (§ 1007.) If an

21    amended complaint is not timely filed, the case will be dismissed. (§ 1008.)

22
23    DATED: 7/27/22

24
25                                                      HON. STEVE WHITE
                                                        JUDGE OF THE SUPERIOR COURT
26
27
28
                                        10