FILED

UNITED STATES COURT OF APPEALS

SEP 29 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARK BAIRD; RICHARD GALLARDO,

        Plaintiffs-Appellants,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of
California,

        Defendant-Appellee.

No.    23-15016

D.C. No.
2:19-cv-00617-KJM-AC
Eastern District of California,
Sacramento

ORDER

The mandate issued on September 29, 2023 is recalled as having issued

prematurely in error.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK BAIRD AND RICHARD GALLARDO, | No. 23-15016 |
| *Plaintiffs-Appellants*, | D.C. No. 2:19-cv-00617-KJM-AC |
| v. | |
| ROB BONTA, in his official capacity as Attorney General of the State of California, | OPINION |
| *Defendant-Appellee*. | |

On Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted June 29, 2023
Pasadena, California

Filed September 7, 2023

Before:  N. Randy Smith, Kenneth K. Lee, and Lawrence
VanDyke, Circuit Judges

Opinion by Judge VanDyke

# SUMMARY[*]

## Second Amendment/Preliminary Injunctions

The panel reversed the district court's denial of Appellants' motion for a preliminary injunction seeking to enjoin enforcement of California Penal Code sections that impose criminal penalties for the unlicensed open carry of a handgun, and remanded with instructions.

The panel held that the district court abused its discretion by applying an incorrect legal standard to deny Appellants' motion for a preliminary injunction. Instead of analyzing the first factor set forth in *Winter v. Nat. Res. Def. Council*, *Inc.*, 555 U.S. 7 (2008)—whether Appellants were likely to succeed on the merits of their claim—the district court erroneously determined that because the public interest and balance of harms disfavored the issuance of a preliminary injunction, it was not necessary to assess Appellants' likelihood of success on the merits. Analysis of the first *Winter* factor is centrally important where a plaintiff alleges a violation of a constitutional right, including the individual's right to carry a handgun for self-defense outside the home under the Second Amendment. Pursuant to *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), a government may regulate the manner of that carry only if it demonstrates that the regulation is identical or closely analogous to a firearm regulation broadly in effect when the Second or Fourteenth Amendment was ratified.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel set forth three requirements to guide the district court's preliminary injunction analysis on remand:

- The district court's analysis of the first *Winter* factor must include consideration of whether the conduct that California's general open-carry ban regulates is covered by the text of the Second Amendment. If it is, California bears the burden to identify a well-established and representative historical analogue to its open-carry ban that was in force when the Second or Fourteenth Amendment was ratified.

- Noting that it has been more than four years since Appellants first moved for a preliminary injunction and more than fourteen months since *Bruen* was decided, the panel directed the district court to complete its preliminary injunction review expeditiously.

- If the district court determines that Appellants showed that they are likely to succeed on the merits of their claim, the district court must account for the impact that determination has on the remaining *Winter* factors when it analyzes each of them. This means recognizing that, in cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm, and strongly tips the balance of equities and public interest in favor of granting a preliminary injunction.

## COUNSEL

Amy L. Bellantoni (argued), The Bellantoni Law Firm PLLC, Scarsdale, New York, for Plaintiffs-Appellants.

Mica Moore (argued) and Lara Haddad, Deputy Attorneys General, Attorney General's Office, Los Angeles, California; Ryan R. Davis, Deputy Attorney General; R. Matthew Wise, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, California Attorney General; California Attorney General's Office, Sacramento, California; for Defendant-Appellee.

## OPINION

VANDYKE, Circuit Judge:

Appellants Mark Baird and Richard Gallardo wish to openly carry handguns in California for self-protection, but California's current licensing regime effectively establishes a statewide ban on open carry by ordinary law-abiding Californians. With narrow exceptions, those Californians who reside in counties with more than 200,000 residents—roughly 95% of state residents—may not apply for an open-carry license. Cal. Penal Code §§ 25850, 26150(b)(2), 26155(b)(2), 26350; *see also id.* §§ 26361–92 (exceptions). A subset of the remaining 5% of Californians not subject to other categorical bars may *apply* for an open-carry license from the local county sheriff or police chief, but California has provided no evidence that any such license has ever been issued.

Appellants brought a Second Amendment suit against the Attorney General of California in his official capacity and sought a preliminary injunction enjoining the enforcement of California Penal Code sections that impose criminal penalties for unlicensed open carry.  The district court applied an incorrect legal standard to deny the preliminary injunction.  We therefore reverse and remand to the district court with instructions to perform a proper preliminary injunction analysis.

## I.  BACKGROUND

Appellants reside in counties with fewer than 200,000 inhabitants but have been unable to obtain an open-carry license, so they cannot legally openly carry a handgun.  They argue that this prohibits conduct covered by the Second Amendment, has no historical analogue, and therefore infringes their Second Amendment right to bear arms for self-defense.  They sued the Attorney General of California in his official capacity and thrice moved the district court to preliminarily enjoin enforcement of sections 25850 and 26350 of the California Penal Code, which criminalize unlicensed open carry of a handgun.

After a hearing, the district court denied the instant preliminary injunction motion without analyzing whether Appellants were likely to succeed on the merits of their claim or likely to suffer irreparable injury.  They now appeal the district court's order, arguing that the district court abused its discretion by (1) conducting an incomplete preliminary injunction analysis (2) that was flawed even on its own terms because it consisted solely of a speculative or even impermissible public safety analysis of the effects of issuing a preliminary injunction.  Appellants ask this court to reverse

the district court's denial of a preliminary injunction, because the court abused its discretion.

## II.  STANDARD OF REVIEW

We review a district court's denial of a preliminary injunction motion for abuse of discretion. *Olson v. California*, 62 F.4th 1206, 1218 (9th Cir. 2023). A district court abuses its discretion if it bases its decision "on an erroneous legal standard or on clearly erroneous factual findings." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022) (quoting *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc)). A district court bases its decision on an erroneous legal standard if it fails to "employ the appropriate legal standards that govern the issuance of a preliminary injunction," or if it applies the appropriate standards but "misapprehend[s] the law with respect to the underlying issues in the litigation." *Id.* (quoting *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1096 (9th Cir. 2008)).

The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 481 (9th Cir. 2023). As a general matter, district courts "*must* consider" all four *Winter* factors. *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014) (emphasis added). The first factor "is a threshold inquiry and is the most important factor."

*Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Thus, a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). When, like here, the nonmovant is the government, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020) (per curiam).

It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation. *See Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). And his likelihood of succeeding on the merits also tips the public interest sharply in his favor because it is "always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

An "individual's right to carry a handgun for self-defense outside the home" under the Second Amendment is one such constitutional right. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022). A government may regulate the manner of that carry only if it demonstrates that the regulation is identical or closely analogous to a firearm regulation broadly in effect when the Second or Fourteenth Amendment was ratified. *Id.* at 2129–30, 2133. A district court should not try to help the government carry its burden by "sift[ing] … historical materials" to find an analogue. *Id.*

at 2150.  The principle of party presentation instead requires the court to "rely on the parties to frame the issues for decision." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)); *see also Bruen*, 142 S. Ct. at 2130 n.6 ("Courts are … entitled to decide a case based on the historical record compiled by the parties.").

If a movant makes a sufficient demonstration on all four *Winter* factors (three when as here the third and fourth factors are merged), a court "must not shrink from [its] obligation to enforce [his] constitutional rights," regardless of the constitutional right at issue. *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (quoting *Brown v. Plata*, 563 U.S. 493, 511 (2011)).  It may not deny a preliminary injunction motion and thereby "allow constitutional violations to continue simply because a remedy would involve intrusion into" an agency's administration of state law.  *Id.* (quoting *Brown*, 563 U.S. at 511).

## III.  DISCUSSION

This appeal presents the question whether, in a case in which a plaintiff alleges a constitutional violation, a district court can deny a motion for a preliminary injunction without analyzing the plaintiff's likelihood of success on the merits. The answer to that question is clear: a district court may not do so.  Because of how a finding that a plaintiff is likely to succeed on the merits of a constitutional claim impacts the other *Winter* factors, a district court necessarily abuses its discretion when it skips analyzing the likelihood of success factor in a case involving such a claim.  This rule of course applies to claims alleging a violation of the Second Amendment right to bear arms, which the Supreme Court has repeatedly emphasized is not a "second-class right,

subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010); *accord Bruen*, 142 S. Ct. at 2156.

The district court here declined to undertake *any* analysis of Appellants' likelihood of success on the merits of their claim. Instead, it conducted only an analysis of the last two merged *Winter* factors, on the theory that the public interest disfavoring a preliminary injunction can outweigh a plaintiff's showing that a law likely infringes his constitutional rights and causes him irreparable harm.[1] This was an abuse of discretion. We reverse with instructions to guide the district court's preliminary injunction analysis on remand.

## A. The district court abused its discretion by improperly applying the preliminary injunction standard.

As noted above, proper analysis of a preliminary injunction motion requires a district court to examine the *Winter* factors. The first factor—likelihood of success on the merits—is the most important (and usually decisive) one in cases where a plaintiff brings a constitutional claim, including a Second Amendment claim. *Bruen* did not change this multifactor preliminary injunction test, and the district court therefore abused its discretion when it deliberately skipped *any* analysis of the first *Winter* factor.

---

[1] As part of that analysis, the district court inferred from the record that issuing a preliminary injunction could endanger public safety because it would temporarily deprive California of its "primary means of limiting public handgun carrying to 'ordinary, law-abiding citizens.'" Although the record raises serious doubts about the soundness of that conclusion, the parties did not brief the question of whether the district court abused its discretion in relying on those inferences and so we do not address it.

### 1. The first *Winter* factor is centrally important in cases where a plaintiff brings a constitutional claim.

We begin with the relevant preliminary injunction principles. The first *Winter* factor, likelihood of success, "is a threshold inquiry and is the most important factor" in any motion for a preliminary injunction. *Env't Prot. Info. Ctr.*, 968 F.3d at 989. That holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation. If a plaintiff bringing such a claim shows he is likely to prevail on the merits, that showing will almost always demonstrate he is suffering irreparable harm as well. *See Humble*, 753 F.3d at 911; *Melendres*, 695 F.3d at 1002 ("[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion))); *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (holding that a finding of irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional"). Accordingly, "[w]hen an alleged deprivation of a constitutional right is involved, … most courts hold that no further showing of irreparable injury is necessary." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 1998).

A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor. Because "public interest concerns are implicated when a constitutional right has been violated, … all citizens have a stake in upholding the Constitution," *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005), meaning "it is always in the public interest to prevent the violation of a party's constitutional rights,"

*Elsasser*, 32 F.4th at 731 (quoting *Melendres*, 695 F.3d at 1002); *see also Cal. Chamber of Com.*, 29 F.4th at 482 ("[T]his court has 'consistently recognized the significant public interest in upholding [constitutional] principles.'" (quoting *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014))). The government also "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that the government "cannot suffer harm from an injunction that merely ends an unlawful practice" implicating "constitutional concerns"). Accordingly, we have held that plaintiffs who are able to "establish[] a likelihood that [a] policy violates the U.S. Constitution … have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Hernandez*, 872 F.3d at 996.

In sum, because of the importance of the first *Winter* factor in cases where a plaintiff alleges a constitutional injury, it is no surprise that "our caselaw clearly favors granting preliminary injunctions to a plaintiff … who is likely to succeed on the merits of his [constitutional] claim." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

**2. The right to carry a handgun for defense outside the home can be regulated only in ways closely analogous to regulations widely in effect in 1791 or 1868.**

Having established the centrality of the likelihood of success on the merits factor to the preliminary injunction

analysis, we next provide a brief overview of the substantive law that governs the merits inquiry in Appellants' Second Amendment challenge to California's general open-carry ban.

The Second Amendment guarantees the right to keep and bear arms, *see District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), including "an individual's right to carry a handgun for self-defense outside the home," *Bruen*, 142 S. Ct. at 2122. The Due Process Clause of the Fourteenth Amendment incorporated the Second Amendment against the states. *See McDonald*, 561 U.S. at 791. Following *Heller* and *McDonald*, we applied "a two-step inquiry in deciding Second Amendment cases." *Silvester v. Harris*, 843 F.3d 816, 820–21 (9th Cir. 2016). First, we looked to history to determine "whether the challenged law burden[ed] conduct protected by the Second Amendment," and, if so, we then applied "the appropriate level of scrutiny," *id*. at 821, depending on "the extent to which the law burden[ed] the core of the Second Amendment right" of self-defense and the severity of that burden, *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 960–61 (9th Cir. 2014).

In *Bruen*, the Supreme Court expressly rejected the use of such "means-end scrutiny in the Second Amendment context" and described the two-step approach as "one step too many." 142 S. Ct. at 2127. Following *Bruen,* "text and history, not a means-end analysis, now define the controlling Second Amendment inquiry." *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023); *see Bruen*, 142 S. Ct. at 2131 (stating that, although "judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands" under the Second Amendment).

Thus, if the Second Amendment's plain text covers the regulated conduct, the regulation will stand only if the government can "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms" in the United States. *Bruen*, 142 S. Ct. at 2127. While the government need not identify a "dead ringer" for its modern regulation, it must locate a "well-established and representative historical *analogue*" that was in effect when the Second or Fourteenth Amendment was ratified. *Id.* at 2132–33. To qualify, the analogue must be close: the historical regulation must have been "relevantly similar" to the challenged regulation in "how and why" it "burden[ed] a law-abiding citizen's right to armed self-defense." *Id.* As the Supreme Court has cautioned, upholding a modern regulation that only "remotely resembles a historical analogue" would entail "endorsing outliers that our ancestors would never have accepted" and thus be inconsistent with the historical inquiry required by *Bruen*. *Id.* at 2133 (quoting *Drummond v. Robinson Twp.*, 9 F.4th 217, 226 (3d Cir. 2021)).

### 3. *Bruen*'s effect on the *Winter* test for preliminary injunctions.

We next briefly address the effect of *Bruen* on *Winter*'s four-factor preliminary injunction test. *Bruen* clarified the appropriate legal framework to apply when a plaintiff challenges a statute under the Second Amendment. *Bruen* expressly rejected the use of "means-end scrutiny," 142 S. Ct. at 2127, and any "interest-balancing inquiry," *id*. at 2129 (quoting *Heller*, 554 U.S. at 634), when assessing a plaintiff's likelihood of success on the merits of a Second Amendment challenge. Thus, *Bruen* obviously affects the first *Winter* factor—the likelihood of success on the merits

inquiry in a motion for a preliminary injunction. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (holding that the "burdens at the preliminary injunction stage track the burdens at trial"); *see also Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). And under *Winter*'s well-settled standards—which apply to Second Amendment claims like any other constitutional claim—courts consider all of the *Winter* factors and assess irreparable harm and the public interest through the prism of whether or not the plaintiff has shown a likelihood of success on the merits.

### 4. The district court abused its discretion when it skipped any analysis of the first and most important *Winter* factor in this case.

Applying these principles to the instant case, we have no trouble concluding that the district court abused its discretion when it denied Appellants' preliminary injunction motion. A district court that skips analyzing the first *Winter* factor in a constitutional case cannot properly evaluate the other factors.

As noted, the likelihood of success on the merits is a particularly important consideration in the preliminary injunction analysis of a constitutional claim, because a finding that the plaintiff is likely to succeed on the merits of such a claim sharply tilts in the plaintiff's favor both the irreparable harm factor, *see Melendres*, 695 F.3d at 1002, and the merged public interest and balance of harms factors, *see Elsasser*, 32 F.4th at 731; *Zepeda*, 753 F.2d at 727. Consequently, a plaintiff who can show that a statute likely violates the Constitution will also usually show "that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal*., 757 F.3d at

1069; *see also Am. Beverage Ass'n*, 916 F.3d at 757–58 (recognizing that a showing of likelihood of success on the merits of a constitutional claim "compels a finding" that the balance of hardships and the public interest favor issuance of a preliminary injunction).

Notwithstanding this settled interplay between the factors, the district court here declined to undertake *any* inquiry into Appellants' likelihood of success on the merits of their Second Amendment challenge to sections 25850 and 26350 of the California Penal Code. Instead, it conducted only a merged analysis of the third and fourth *Winter* factors and proceeded to deny the injunction after concluding that, because the public interest and balance of harms disfavored the issuance of a preliminary injunction, it was "not necessary" to assess Appellants' likelihood of success on the merits. This was error. In a case presenting a constitutional claim, it is always necessary for a district court to determine whether a plaintiff is likely to succeed on the merits, because of the influence such a finding has on the other *Winter* factors. Put otherwise: a district court that skips over analyzing the first *Winter* factor where the plaintiff alleges a constitutional violation cannot properly evaluate the other factors. *See Elsasser*, 32 F.4th at 731; *Ariz. Dream Act Coal.*, 757 F.3d at 1069; *Melendres*, 695 F.3d at 1002; *Zepeda*, 753 F.2d at 727. By denying Appellants' motion to enjoin California's general open-carry ban based solely on its conclusion that the public interest weighed against Appellants, the district court thus employed an incorrect legal standard for the issuance of a preliminary injunction, and therefore abused its discretion. *See Cal. Chamber of Com.*, 29 F.4th at 475.

The district court did not cite to any authority from a case involving a constitutional claim to justify its determination

that it was "not necessary" to evaluate Appellants' likelihood of success on the merits of their Second Amendment claim. California attempts to defend the district court's approach by offering three cases in which a preliminary injunction movant alleged a constitutional violation, but none of those cases in fact supports the district court's analysis.

Although California is correct that this court said in the first of those three cases that it "is not enough" to grant a preliminary injunction if a movant shows only that he is likely to succeed on the merits, *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011), nowhere in that case did we say that examination of the first *Winter* factor is unnecessary in a constitutional case.  In *DISH Network*, the plaintiff sought to enjoin a statute that it alleged violated the First Amendment.  *Id.* at 774.  The district court "focused entirely" on whether the plaintiff was likely to succeed on the merits of its claim and denied the injunction.  *Id*. at 775. The plaintiff argued "that in the case of a First Amendment claim, all four of the *Winter* factors collapse into the merits." *Id*. at 776.  Because we agreed with the district court that the plaintiff had not met its burden on the first factor, however, we determined that "we need not consider the remaining three."  *Id*. at 776–77.  We therefore determined that "even if we were to determine that [the plaintiff] is likely to succeed on the merits, we would still need to consider whether it satisfied the remaining elements of the preliminary injunction test."  *Id*.

Far from supporting the argument that a court can skip the first *Winter* factor in a case presenting a constitutional claim, *DISH Network* amplifies the necessity of analyzing that first factor, as there we affirmed the denial of the preliminary injunction based *only* on the plaintiff's *failure* to

show its likelihood of success.[2]  *See id*. at 776; *see also Disney Enters.,* 869 F.3d at 856 (stating that a "court need not consider the other factors" if a plaintiff cannot satisfy the threshold inquiry of the first factor).  But Appellants do not argue that their likelihood of success on the merits in isolation is necessarily enough to warrant an injunction; they argue that the district court erred by failing to assess their likelihood of success on the merits at all.  *DISH Network* has no bearing on that argument.

The second case relied on by California serves its argument no better.  In *Klein v. City of San Clemente*, our court concluded that the plaintiff had shown a likelihood of success on the merits of his free speech claim against a California anti-littering ordinance.  *See* 584 F.3d at 1207.  As California notes, we then stated that the plaintiff "must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor."  *Id.*  But in the rest of the same paragraph, we explained that because the plaintiff had brought a free-speech claim "it is clear that these requirements are satisfied."  *Id.*  Rather than support California's position that analysis of the first factor can be skipped, *Klein*—like *DISH Network*—underscores the centrality of the first factor in cases involving allegations of a violation of constitutional rights.

---

[2] In its analysis, *DISH Network* relied on our earlier precedent, *Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009).  Rather than treat consideration of the first factor as unnecessary in *Stormans*, our court there treated that analysis as a prerequisite to a proper analysis of irreparable harm and a weighty consideration in the analysis of the public interest.  *Id.* at 1138–40.

The third case that California offers is even less convincing than the first two.  California observes that in *United States v. California* our court considered the other *Winter* factors even after we concluded that the United States was likely to prevail on the merits of a Supremacy Clause challenge.  921 F.3d 865, 894 (9th Cir. 2019).  That is true but unhelpful for California's position because we said that in the context of expressly *rejecting* the argument that a district court could look only to the latter factors in a preliminary injunction analysis.  *See id.* ("We are not prepared, in the first instance, to affirm the district court's denial of a preliminary injunction … based on [balance of equities and public interest] considerations.").   In so concluding, we again stressed that we *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest.  *Id.* at 893–94.  That is just another way of stating the interplay of factors we discussed above, and precedent involving a preliminary injunction for constitutional violations leaves no room for a proper analysis of any *Winter* factor divorced from an analysis of the first factor.     This analysis does not change where the constitutional violation at issue is a Second Amendment violation because the right to peaceably bear arms to defend oneself is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees."  *McDonald*, 561 U.S. at 780.

District courts carry heavy case dockets, thus it is understandable why they may seek to resolve cases on what may appear a simpler basis.  But a court confronted with a constitutional claim may not, in short, skip over evaluating a movant's likelihood of success on that claim when it adjudicates a preliminary injunction motion.  *See Elsasser*,

32 F.4th at 731; *Ariz. Dream Act Coal.*, 757 F.3d at 1069; *Melendres*, 695 F.3d at 1002; *Zepeda*, 753 F.2d at 727.

### B. The district court must conduct a proper preliminary injunction analysis on remand.

This error necessitates reversal and remand. On remand, the district court must analyze all of the *Winter* preliminary injunction factors. We set forth three requirements to guide the district court's preliminary injunction analysis on remand.

*First*, the district court's analysis of the first *Winter* factor must include consideration of the question whether the conduct that California's general open-carry ban regulates is covered by the text of the Second Amendment. *Bruen*, 142 S. Ct. at 2129–30. If it is, California bears the burden to identify a "well-established and representative historical analogue" to its open-carry ban that was in force when the Second or Fourteenth Amendment was ratified. *Id.* at 2130–31, 2133, 2136–38 (emphasis omitted).

While California does not need to identify a "dead ringer" for its open-carry ban, *id.*, California cannot satisfy the requirement for a closely analogous historical regulation by reference to any general firearm regulation California might unearth, *id*. at 2130. Because states in 1791 and 1868 also grappled with general gun violence, California must provide analogues that are "distinctly similar," *id.* at 2131, to California's general open-carry ban in "how" and "why" they curtailed individuals' right to carry firearms, *id.* at 2132–33.

Courts in our sister circuits have consistently recognized that the *Bruen* standard for identifying a closely analogous historical regulation is a demanding one. A proper analysis

demands "paying close attention to the enforcement and impact of various regulations." *Atkinson*, 70 F.4th at 1022. So, for instance, postbellum statutes banning the carry of firearms "*while* under the influence" were deemed not analogous to a modern carry ban on "unlawful users" of intoxicants because "there is a considerable difference between someone who is actively intoxicated and someone who is an 'unlawful user.'" *United States v. Daniels*, --- F.4th ---, 2023 WL 5091317, at *8 (5th Cir. Aug. 9, 2023) (emphasis added). And Founding-era statutes that disarmed groups of persons who governments thought might be dangerous because of their race or religion were not considered analogous to modern carry prohibitions on released felons also thought to be dangerous: "any such analogy would be far too broad." *Range v. Att'y Gen.*, 69 F.4th 96, 103–05 (3d Cir. 2023) (en banc). *See also Peruta v. Cnty. of San Diego*, 824 F.3d 919, 941–42 (9th Cir. 2016) (en banc) ("[E]ven assuming that California's restrictions on public open carry violate the Second Amendment … it does not follow that California's restrictions on public concealed carry violate the Amendment."), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111 (2022).

In short, as numerous courts have correctly observed in applying *Bruen*, California must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a comparable degree, with a comparable severity, and with a comparable blanket enforcement to California's open-carry ban. *See Atkinson*, 70 F.4th at 1021–22; *Range*, 69 F.4th at 105; *Daniels*, --- F.4th ---, 2023 WL 5091317, at *8. That is the standard the district court must apply on remand in analyzing the first *Winter* factor.

*Second*, the district court must complete this preliminary injunction review expeditiously.  It has been more than four years since Appellants first moved for a preliminary injunction and more than fourteen months since *Bruen* was decided.  Because even a brief deprivation of a constitutional right causes irreparable injury, *see Cuviello v. City of Vallejo*, 944 F.3d 816, 831–33 (9th Cir. 2019), the district court must quickly determine whether the *Winter* factors favor issuance of a preliminary injunction in this case, and if so, not "shrink from [its] obligation to enforce [their] constitutional rights," *Porretti*, 11 F.4th at 1047.  "Courts are … entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6; *see also Sineneng-Smith*, 140 S. Ct. at 1579.  It is the parties' duty, not the court's, to collect and present historic analogues.[3]

In circumstances like this, appellate courts have sometimes imposed strict deadlines for district courts to meet in reevaluating a remanded preliminary injunction motion.  *See, e.g.*, *Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (60 days to issue a ruling); *New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 184 (2d Cir. 2020) (10 days after issuance of mandate to allow parties to supplement their initial preliminary injunction filings); *Grace Schs. v. Burwell*, 801 F.3d 788, 807–08 (7th Cir.

---

[3] While California initially argued below that Appellants bore the burden to identify historical analogues at the preliminary injunction stage, the district court rejected that argument, correctly assuming in its preliminary injunction order that "the state bears the burden to show … it is consistent with the Nation's historical tradition of firearm regulation." *See Cal. Chamber of Com.*, 29 F.4th at 477–78.  And California did not dispute that it bears that burden when pressed at oral argument before this court.

2015) (preliminary injunction to be vacated 60 days after remand unless district court rules by then on alternative arguments for granting it), *judgment vacated on other grounds*, 578 U.S. 969 (2016) (mem). Here, however, we have confidence that the district court on remand will swiftly reevaluate the preliminary injunction without the need for a specific deadline. We therefore follow our court's practice of simply instructing the district court to expeditiously decide the preliminary injunction motion on remand. *See, e.g.*, *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1234 (9th Cir. 2020); *Toyo Tire Holdings of Am. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010).

*Third*, if the district court determines that Appellants showed that they are likely to succeed on the merits of their claim, the district court must account for the impact that determination has on the remaining *Winter* factors when it analyzes each of them. This means recognizing that, in cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm, *Melendres*, 695 F.3d at 1002, and strongly tips the balance of equities and public interest in favor of granting a preliminary injunction, *Elsasser*, 32 F.4th at 731.

## CONCLUSION

We reverse the denial of a preliminary injunction if it resulted from an abuse of discretion. *Olson*, 62 F.4th at 1218. Here, by declining to assess Appellants' likelihood of success on the merits of their Second Amendment claim, the district court abused its discretion by failing to apply the proper preliminary injunction standard for a case raising a constitutional challenge. *See Cal. Chamber of Com.*, 29 F.4th at 475. We therefore reverse and remand. Recognizing that the preliminary injunction proceedings in

this case have been ongoing for more than four years, we instruct the district court to complete its reevaluation of the requested preliminary injunction and issue a decision expeditiously.

**REVERSED AND REMANDED.**