1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   MARK R. BECKINGTON, State Bar No. 126009
    Supervising Deputy Attorney General
3   LARA HADDAD, State Bar No. 319630
    Deputy Attorney General
4     300 South Spring Street, Suite 1702
      Los Angeles, CA  90013-1230
5     Telephone:  (213) 269-6250
      Fax:  (916) 731-2124
6     E-mail:  Lara.Haddad@doj.ca.gov
    *Attorneys for Defendant Rob Bonta in his official*
7   *capacity as Attorney General of California*

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13   **MARK BAIRD and RICHARD GALLARDO,**                    2:19-cv-00617-KJM-AC

14                                      Plaintiffs,     **DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

15               v.

16   **ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,**

17                                                      Date:         November 3, 2023
                                                       Time:         10:00 a.m.
18                                     Defendants.     Dept:         3
                                                       Judge:        The Honorable Kimberly J. Mueller
19
                                                       Trial Date:   None set.
20                                                     Action Filed: April 10, 2019

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 1

Background .................................................................................................................. 2

    I.     California's Laws Pertaining to the Open Carry of Firearms ................................ 2

    II.    California Authorizes the Concealed Carry of Firearms.......................................... 4

Argument ..................................................................................................................... 4

    I.     The Second Amendment Does Not Require Unlicensed Open Carry Where a Shall-Issue Concealed Carry Licensing Scheme Is in Place .............................. 4

    II.    California's Open Carry Restrictions Are Constitutional ....................................... 6

        A.    This Court Should Apply Bruen's "More Nuanced Approach" in Its Historical Inquiry ...................................................................................... 6

        B.    California's Restrictions on Open Carry Readily Pass Constitutional Review. .................................................................................................... 8

            1.    Defendant Has Presented Multiple Relevant Historical Analogues to Its Challenged Open Carry Laws. ........................... 8

                a.    Many Historical Laws Restricted the Open Carry of Weapons. ................................................................. 10

                b.    Many Historical Laws Required a Licensing Scheme in Order to Openly Carry Weapons. ................................ 16

            2.    Plaintiffs' Arguments That No Historical Analogues Exist Are Unavailing. ........................................................................ 17

                a.    Plaintiffs Misinterpret Bruen............................................ 17

                b.    Plaintiffs' Other Arguments, and Declarations and Exhibits in Support, Should Be Disregarded. ................. 19

                c.    Plaintiffs' Citation to a Superior Court Case Concerning Concealed Carry Laws Should Be Disregarded. ................................................................... 21

    III.    If the Court Concludes that California's Restrictions on Unlicensed Open Carry Are Unconstitutional, the Court Should Stay Enforcement of the Judgment Pending Appeal.......................................................................... 22

Conclusion ................................................................................................................ 23

---

i

# TABLE OF AUTHORITIES

**Page**

### CASES

*Baird v. Bonta*
   81 F.4th 1036 (9th Cir. 2023)................................................................ 7, 8, 17

*Boland v. Bonta*
   ECF 7, Case No. 23-55276 (9th Cir. Apr. 3, 2023) ................................ 23

*District of Columbia v. Heller*
   554 U.S. 570 (2008) ...................................................................... 7, 9, 17, 18

*Duncan v. Becerra*
   3:17-cv-1017 (S.D. Cal., filed 2017) .......................................................... 9

*Fed. Trade Comm'n v. Qualcomm Inc.*
   935 F.3d 752 (9th Cir. 2019)..................................................................... 22

*Frey v. Nigrelli*
   No. 21 CV 05334 (NSR), 2023 WL 2473375 (S.D.N.Y. Mar. 13, 2023) ............................... 6

*Humane Soc'y of U.S. v. Gutierrez*
   558 F.3d 896 (9th Cir. 2009)..................................................................... 22

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
   142 S. Ct. 2111 (2022) .................................................................... *passim*

*United States v. Alaniz*
   69 F.4th 1124 (9th Cir. 2023)....................................................................... 8

*United States v. Salerno*
   481 U.S. 739 (1987) ...................................................................................... 6

### STATUTES

1686, Grants, Concessions, and Original Constitutions of The Province of New
   Jersey 289–90 (1881) ............................................................................... 10

1866–1867 Alabama Laws 260 & 263, Chapter 2,
   § 2(10) ...................................................................................................... 16

1867 Arizona, An Act to prevent the improper use of deadly weapons, and the
   indiscriminate use of fire arms in the towns and villages of the territory. § 1.
   In Coles Bashford, The Compiled Laws of the Territory of Arizona, page 96,
   Image 102 (1871).  ................................................................................... 14

ii

**TABLE OF AUTHORITIES**
(continued)

Page

1855, California, William H. R. Wood (Editor), Digest of the Laws of California: Containing All Laws of a General Character Which were in Force on the First Day of January, 1858, 334 (1861), art. 1904. .................................................... 13

California Penal Code §§ 26150(b)(2), 26155(b)(2) ..................................................... *passim*

California Penal Code § 26045 ..................................................... *passim*

Code of Alabama 883 (1876), Chapter 3 § 4111 ..................................................... 14

1868, Florida, James F McClellan (Editor), A Digest of the Laws of the State of Florida: From the Year One Thousand Eight Hundred and Twenty-Two, to the Eleventh Day of March, One Thousand Eight Hundred and Eighty-One, Inclusive 403 (1881), § 13. .................................................... 14

1858, District of Columbia, 1 William B. Webb, The Laws of the Corporation of Washington Digested and Arranged under Appropriate in Accordance with a Joint Resolution of the City 418 (1868), Act of Nov. 18, 1858. .......................................... 13

1852 Haw. Sess. Laws 19 § 1 .................................................... 13

1820 Ind. Acts 39, Chapter 23 § 1 .................................................... 11

1868, Kansas, The General Statutes of the State of Kansas, to Which the Constitutions of the United State of Kansas, Together with the Organic Act of the Territory of Kansas, the Treaty Ceding the Territory of Louisiana to the United States, and the Act Admitting Kansas into the Union are Prefixed Page 378, Image 387 (1868), Crimes and Punishments, § 282. .................................................... 14

1821, Maine, Revised Statutes of the State of Maine 709 (1840), tit. 12, ch. 169, § 16 .................................................... 11

1847, Maine, The Revised Statutes of the State of Maine, Passed October 22, 1840, 709 (1847), tit. 12, ch. 169, § 16. .................................................... 13

1694 Mass. Laws 12, no. 6, An Act for Punishing of Criminal Offenders .................................................... 10

1750 Mass. Acts 544, Chapter 17 § 1 .................................................... 10

1786 Mass. Acts 87, Chapter 38 .................................................... 11

1

<u>**TABLE OF AUTHORITIES**</u>
(continued)

2
<u>Page</u>

3   1835, Massachusetts, Theron Metcalf (Editor), Revised Statutes of the
        Commonwealth of Massachusetts Passed November 4, 1835 to which are
4       Subjoined, as Act in Amendment Thereof, and an Act Expressly to Repeal the
        Acts Which are Consolidated Therein, both Passed in February 1836, 750
5       (1836) ch. 134, § 16 ...................................................................................... 12

6   1837 Miss. Laws 290–92
7       § 6 ..................................................................................................................... 12

8   1837 Miss. Laws 294
9       § 5 ..................................................................................................................... 12

10  1839 Miss. Laws 385–86, Chapter 168
        § 5 ..................................................................................................................... 12
11
    1840 Miss. Laws 180–81, Chapter 111
12      § 5 ..................................................................................................................... 12

13  1818, Missouri, Henry S. Geyer (Editor), *A Digest of the Laws of Missouri
        Territory* 374 (1818) § 3 ................................................................................ 16
14
15  1871, Missouri—St. Louis, Everett W. Pattinson (Editor), *Revised Ordinance of
        the City of St. Louis* 491 (1871), art. 2, § 9 ................................................. 16

16
    1771 New Hampshire, *Acts and Laws of His Majesty's Province of New-
17      Hampshire* 9–10 (1771), ch. 6, § 2 ............................................................. 10

18  1786 Va. Laws 33, ch. 21, An Act forbidding and punishing Affrays, chap. 17, § 1 ................. 10

19  1792 Virginia, Collection of All Such Acts of the General Assembly of Virginia,
        of a Public and Permanent Nature, as are Now in Force 187 (1803), ch. 103,
20      §§ 8–9 ............................................................................................................. 11

21  1801, Tennessee, 1801 Tenn. Laws 259–60, ch. 22, § 6 .......................................... 11

22  1821, Tennessee, Robert Looney Caruthers, A Compilation of the Statutes of
23      Tennessee, of a General and Permanent Nature, from the Commencement of
        the Government to the Present Time: With References to Judicial Decisions, in
24      Notes, to Which is Appended a New Collection of Forms Page 100, Image 105
25      (1836). ............................................................................................................ 11

26  1854, Washington [Territory], 1854 Wash. Sess. Law 80, ch. 2, § 30.   ...................... 13

27  1859, Washington [Territory] Wash. Sess. Laws 109, Chapter 2
        § 30 ................................................................................................................. 14
28

iv

# TABLE OF AUTHORITIES
### (continued)

Page

**OTHER AUTHORITIES**

Jacob D. Charles, *On Sordid Sources in Second Amendment Litigation*, Stan. L.
Rev 30 (2023)................................................................................................... 11

Senate Bill No. 2 (SB 2), 2022-2023 Reg. Session.................................................... 3, 5

**INTRODUCTION**

California reasonably and lawfully regulates the open carry of firearms.  The State does not prohibit open carry entirely; instead, individuals in counties of 200,000 people or less may apply for permits to openly carry firearms within those county borders.  And, California law exempts all persons from criminal prosecution for the open carry of firearms—regardless of what county they are in, and whether they have a license or not—if they reasonably believe it is necessary to openly carry to prevent an immediate and grave danger to any person or property.

Moreover, nothing prevents individuals from obtaining permits to conceal carry weapons: California has a shall-issue licensing scheme throughout the entire state with respect to concealed weapons.  On this record, Plaintiffs, who reside in counties of 200,000 people or less, are not entitled to summary judgment on their claim to "the free exercise of the right to carry a handgun open and exposed" in an "unregulated" manner, ECF 96-1 at 9, or their claim that licensing violates the Second Amendment.

As explained in Defendant's motion for summary judgment, California's licensing regime is constitutional under the text-and-history analysis set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  Under the textual prong of the analysis, the Second Amendment does not encompass the unfettered right that Plaintiffs assert: it does not compel the unlicensed open carriage of firearms.    Plaintiffs have not shown that unlicensed open carry is conduct protected by the Second Amendment.  *Bruen* confirms that States may regulate the manner of public carry, so long as they provide some means for individuals to carry firearms outside the home.  California does precisely this: individuals may carry firearms, concealed, throughout the State.  Plaintiffs themselves acknowledge they are able to do so.  And they may openly carry under the circumstances defined by statute.

Further, California's restrictions on the open-carry of weapons are "consistent with the Nation's historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2130.  State and local governments have long regulated or outright prohibited the open carry of weapons, including by laws that were in effect at the time of the ratification of the Second and Fourteenth Amendments. With respect to licensing requirements, States may retain licensing regimes for the public carry of

1

firearms, contrary to Plaintiffs' contentions.  History demonstrates that licensing and other similar forms of regulation have long been exercised by States on the public carry of firearms.

With respect to open carry specifically, Defendant has identified numerous laws that were in effect in 1791 and 1868 that serve as relevant historical analogues and demonstrate that the challenged laws here are part of a longstanding tradition.  Many of the laws cited placed similar or near-identical burdens on the open carriage of firearms that California's requirements do, and for the same public safety reasons.  *See Bruen*, 142 S. Ct. at 2132-33 (historical analogues must be "relevantly similar" to "how and why the [challenged] regulations burden a law-abiding citizen's right to armed self-defense").  Many historical laws, in fact, went far further than California's current regime.  And they show that there is no historical tradition of the unqualified right to openly carry firearms, as Plaintiffs assert.

Moreover, as Defendant's experts have explained in detail, for much of the Nation's history, the open carry of firearms was not a common practice due to technology limitations and societal norms.  These considerations inform how to conduct the Second Amendment analysis.  As the Supreme Court recognized in *Bruen*, such considerations call for a more nuanced approach, which would require this Court to consider a wider range of laws as historical analogues.

On the other hand, Plaintiffs have presented no credible or admissible evidence rebutting Defendant's experts or surveyed laws.  As a result, there are no triable issues of fact going to the constitutionality of the challenged laws.  Despite this evidentiary failure, Plaintiffs seek a sweeping injunction and assert that they have the unfettered right to openly carry firearms without regulation or restriction.  Nothing in Second Amendment jurisprudence supports this claim for relief. Plaintiffs' counter-motion for summary judgment should be denied, and Defendant's motion should be granted with respect to all claims.

## BACKGROUND

### I.   CALIFORNIA'S LAWS PERTAINING TO THE OPEN CARRY OF FIREARMS

Defendant incorporates the background and asserted facts set forth in the brief in support of his motion for summary judgment.  ECF 90-1.  As discussed in that brief, local authorities are

2

allowed to issue licenses to carry "loaded and exposed" firearms in public in counties with a population of less than 200,000 persons, for carry within the bounds of the issuing county.  Cal. Penal Code, §§ 26150(b)(2), 26155(b)(2).[1]  And, anyone may openly carry a firearm without a license if that person "reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property."  § 26045(a).  Moreover, in all counties, concealed-carry is authorized throughout the state with a permit, as discussed below.

In addition, SB 2, which will become effective on January 1, 2024, will substantially modify California's licensing scheme.  SB 2 (2023-2024 Reg. Sess.).  As relevant here, it provides that a local sheriff "shall issue" an open carry license within counties of less than 200,000 people, provided that certain objective criteria is met, and removes the "good cause" requirements.  §§ 10, 11.

California's licensing scheme is therefore not a statewide ban on the open carry of firearms, as Plaintiffs assert.  ECF 96-1 at 8-9.  As Plaintiffs themselves acknowledge, permits for open carry are allowed in counties of 200,000 people or less, and individuals with permits may openly carry firearms within the county in which the permits are issued.  *Id.* at 9.  And, Plaintiffs each live in counties of 200,000 people or less.  ECF 96-2, ¶¶ 4-5, 9-10.  Moreover, licensing is run by the individual counties that issue the permits.  *See* §§ 26150(b)(2), 26155(b)(2).  It is therefore incorrect to say that "California" has implemented an "absolute ban" on the open carry of firearms.  ECF 96-4, ¶ 14.

California has long regulated and restricted the public-carry of weapons, including the open-carry of firearms, as discussed below at 8-17.  Plaintiffs' assertions that there existed the unfettered right to openly carry handguns in California before 1967 are plainly wrong, and should be disregarded.  ECF 96-2 at 9; ECF 96-4, ¶ 11.

---

[1] All statutory references are to the California Penal Code unless otherwise stated.

## II.   CALIFORNIA AUTHORIZES THE CONCEALED CARRY OF FIREARMS

It is undisputed that California has adopted a shall-issue permitting scheme with respect to the concealed carry of firearms, and that individuals with a concealed carry permit may carry their weapons throughout the state.[2]  *See* ECF 90-1 at 6-7; ECF 90-2, ¶ 1.  As discussed in Defendant's opening brief, Plaintiffs have acknowledged in deposition testimony that they are able to carry a weapon if concealed in California.  ECF 90-4 at 12:2-9 (Plaintiff Baird testifying that he successfully applied to carry a concealed firearm in January 2021); *id.* at 31:1-17 (Plaintiff Gallardo testifying that he carries a concealed firearm pursuant to the federal Law Enforcement Officer Safety Act).  Plaintiff Baird now asserts that he does not hold a California concealed carry handgun license, though he gives no explanation for this change in circumstance.  ECF 96-4, ¶ 7.  Neither Plaintiff, however, asserts that he cannot now carry a handgun concealed on his person in California.  *See* §§ 26150(b)(1), 26155 (b)(1).  Nor do they assert that if they are prohibited from obtaining a concealed-carry license, it is not on the basis of objective criteria allowable under *Bruen*.  Nor can they.  *See* ECF 90-4 at ¶ 2, Ex. 1 (Attorney General's Legal Alert).

## ARGUMENT

## I.   THE SECOND AMENDMENT DOES NOT REQUIRE UNLICENSED OPEN CARRY WHERE A SHALL-ISSUE CONCEALED CARRY LICENSING SCHEME IS IN PLACE

As argued in Defendant's motion for summary judgment, the text of the Second Amendment does not compel unlicensed open carry.  ECF 90-1 at 9-10.  Plaintiffs only argue that "[l]icensing is . . . repugnant to the plain text of the Second Amendment" because it states that the right to bear arms "shall not be infringed."  ECF 96-1 at 27.  But *Bruen* confirmed that States may retain licensing regimes for the public carry of firearms, and explicitly approved of the practice of requiring a permit to carry a firearm in public provided there is no special need requirement.  *See Bruen*, 142 S. Ct. at 2123-24; *id.* at 2138 n.9; *see also id.* at 2161 (Kavanaugh J., concurring).  Thus, the majority opinion and Justice Kavanaugh's concurring opinion confirm that a State may require license applicants to first pass a background check and a firearms safety course, as does

---

[2] Plaintiffs do not deny this fact on substantive grounds.  Instead, they object to Defendant's evidence as being irrelevant, and deny Defendant's evidence "as to form."  ECF 96-2, ¶ 1.  Defendant has responded to Plaintiffs' objections in Responses and Objections to Plaintiffs' Response and Counterstatement, filed concurrently with this brief.

1  California.  §§ 26185 (background check requirement), 26195 (same), 26150(a)(4) (firearms

2  safety course requirement), 26155(a)(4) (same).  Thus, "reasonable, well-defined" restrictions on

3  the public carrying of firearms, *Bruen*, 142 S. Ct. at 2156, that have "narrow, objective, and

4  definite standards," *id.* at p. 2138, n.9, are permitted.[3]  States may prohibit the carrying of

5  firearms by those who do not first obtain a license subject to that criteria.

6      *Bruen* also observed that the Second Amendment's text requires some form of public carry.

7  *Bruen*, 142 S. Ct. at 2134.  However, not *all* forms of public carry are required.  Plaintiffs'

8  startling contention that *Bruen* "made no distinction between concealed and open carry" (ECF 96-

9  1 at 12) is plainly wrong.  *Cf. Bruen*, 142 S. Ct. at 2145.  The Supreme Court noted, "States could

10 *not* ban public carry altogether . . . concealed-carry prohibitions were constitutional only if they

11 did not similarly prohibit *open* carry."  *Id.* at 2146 (emphasis in original).  It further observed,

12 "States could lawfully eliminate one kind of public carry—concealed carry—so long as they left

13 open the option to carry openly."  *Id.* at 2150.  Thus, *Bruen* recognizes that states can restrict

14 some forms of public carry if it allows others.  In California, concealed carry is permitted, and a

15 shall-issue licensing scheme exists with respect to those permits.[4]  The Supreme Court has

16 explicitly approved of the practice of requiring a permit to carry a firearm in public so long as

17 ordinary citizens are not denied a license for failing to show a special need.  *See Bruen*, 142 S. Ct.

18 at 2123-24; *id.* at 2138, n.9.  California no longer enforces any for-cause requirements on

19 concealed carry.  ECF 90-4 at ¶ 2, Ex. 1.  California therefore has a valid concealed carry

20 licensing scheme under *Bruen*; notably, Plaintiffs have disclaimed any challenge to the concealed

21 carry regime.

22     That all but answers the constitutional question presented in Plaintiffs' motion:  they are

23 authorized to seek a concealed carry license under a scheme they do not challenge; they may seek

24 a license to carry openly in their counties of residence; and there is an exception for exigent

25 circumstances that would allow them to openly carry under certain circumstances.  At least one

26 _____

27    [3] As noted above, SB 2, which takes effect on January 1, 2024, mandates a "shall issue" licensing scheme for open carry, and removes the "good cause" requirements.

28    [4] Plaintiffs mistakenly characterize California's concealed carry licensing scheme as a "may issue" test.  ECF 96-1 at 11-12.  That is incorrect.  *See* ECF 90-2, ¶ 1; ECF 90-4 at 4-6.

1    court has upheld another state's similar open carry laws: in declining to preliminarily enjoin New

2    York's open-carry regulations, the district court pointed to the language in *Bruen* in observing

3    that the plaintiffs could not argue "as they try to do, that New York has no way to allow people to

4    public carry." *Frey v. Nigrelli*, No. 21 CV 05334 (NSR), 2023 WL 2473375 at *14 (S.D.N.Y.

5    Mar. 13, 2023), *appeal pending*, No. 23-208 (2nd Cir. 2023).  On the contrary, New Yorkers are

6    permitted to conceal carry.  *Id.*  "The fact that the manner in which New York allows public

7    carry—concealed rather than open—is not to Plaintiffs' liking does not mean that enforcement

8    against open carry is unconstitutional."  *Id.*  For these same reasons, California's reasonable open

9    carry laws do not infringe on Plaintiffs' Second Amendment rights.

10          In addition, as noted in Defendant's motion, Plaintiffs' facial challenge to California's open

11   carry regulations necessarily fails.  California law exempts all persons, anywhere in the State,

12   from criminal prosecution for the unlicensed open carry of firearms, if they reasonably believe it

13   is necessary to openly carry to prevent an immediate and grave danger to any person or property.

14   § 26045.  Plaintiffs cannot meet their high burden to show that there are no set of circumstances

15   where the regulations would be valid, in light of *Bruen*.  *See United States v. Salerno*, 481 U.S.

16   739, 745 (1987) (A facial challenge to a statute is "the most difficult challenge to mount

17   successfully, since the challenger must establish that no set of circumstances exists under which

18   the Act would be valid.").  *Bruen* made clear that the Second Amendment protects the right of

19   law-abiding citizens to possess firearms for self-defense, not an unfettered right to carry firearms

20   in any manner or for any purpose.  *Bruen*, 142 S. Ct. at 2128.  Because California law provides

21   squarely what the Second Amendment permits, Plaintiffs' facial challenge must fail.

22   **II.    CALIFORNIA'S OPEN CARRY RESTRICTIONS ARE CONSTITUTIONAL**

23          In addition, California's restrictions are consistent with the Nation's tradition of firearm

24   regulation.

25          **A.    This Court Should Apply *Bruen*'s "More Nuanced Approach" in Its
            Historical Inquiry**
26

27          As the Supreme Court discussed in *Bruen*, when a challenged law addresses either

28   "unprecedented societal concerns or dramatic technological changes," a "more nuanced

                                              6

approach" is warranted rather than a "fairly straightforward" historical analysis. *Bruen*, 142 S. Ct. at 2131-32. For the reasons set forth in Defendant's brief, ECF 90-1 at 11-15, this Court should apply *Bruen*'s "more nuanced approach" to its analysis of California's open carry restrictions. Plaintiffs ignore this argument completely.

The Ninth Circuit recently provided an "overview of the substantive law" governing Second Amendment analysis. *Baird v. Bonta*, 81 F.4th 1036, 1043 (9th Cir. 2023). "Because states in 1791 and 1868 also grappled with general gun violence," Defendant must provide "distinctly similar" historical analogues. *Id.* at 1046 (citing *Bruen*, 142 S. Ct. at 2131). Requiring distinctly similar analogues does not preclude application of a "more nuanced approach" when circumstances warrant it.

Further, *Bruen* concerned "handgun violence, primarily in urban areas," in the context of the challenged concealed carry restrictions. *Bruen*, 142 S. Ct. at 2131 (citing *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008)). Unlike *Bruen* and *Heller*, this case concerns the open carry of firearms. And Defendant has submitted expert testimony, which specifically described the fact that the open carry of firearms was *not* a prevalent practice during the periods of ratification of the Second and Fourteenth Amendments. ECF 90-1 at 12-14. This was because of technological limits, particularly on ammunition, and prevailing social norms at the time. *Id.* As one expert's unrebutted testimony describes, "Nineteenth-century public carry laws explicitly prohibited *concealed* weapons because the primary mode of carrying . . . deadly weapons was concealed in one's pocket." ECF 90-5 at 3. "But the existence of these laws should not be interpreted to mean that Americans have historically approved of open-carry." *Id.* at 4. If there was not a practical means of openly carrying weapons, nor a practice of doing so, there would be little reason to limit it.[5] Given this expert evidence, this Court should apply *Bruen*'s "more nuanced" approach. *See Bruen*, 142 S. Ct. at 2133 (noting that under the more nuanced approach, governments need not identify a "historical *twin*" or "dead ringer for historical precursors" to pass

---

[5] This is also why laws restricting or prohibiting the concealed carry of weapons are relevant historical analogues in the analysis of whether open carry restrictions are constitutional, contrary to Plaintiffs' contentions otherwise. ECF 96-1 at 27.

7

1   historical muster.  *Id.* (emphasis in original); *see also Baird*, 81 F.4th at 1043 (historical

2   analogues need be "dead ringers," quoting *Bruen*).

3        The more nuanced approach is also consistent with other recent Ninth Circuit precedent.  In

4   *United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023), the Court considered Second Amendment

5   challenges to sentencing enhancements for the possession of a dangerous weapon during the

6   commission of a felony drug offense.  There, the government provided a number of statutes from

7   the 1700s throughout the 1800s to prove that there was a historical tradition of sentencing

8   enhancements tied to firearm possession, though the laws were not identical to the challenged

9   provision.  *Id.* at 1129.  The Court observed that "illegal drug trafficking is a largely modern

10  crime," and was distinct from "smuggling crimes" that were the concern of Founding Era laws.

11  *Id.*  Thus, *Bruen*'s "more nuanced" approach was required in its analysis.  *Id.* at 1130.  "Viewing

12  the government's proposed analogues through this lens," the Court went on to hold that the

13  challenged law was "of a kind that the Founders would have tolerated."  *Id.*

14       The "more nuanced" approach applies here, and is consistent with *Baird* and *Bruen*.  But

15  even if it does not, California's open carry laws readily satisfy Constitutional standards.

16   **B.   California's Restrictions on Open Carry Readily Pass Constitutional
           Review.**

17

18       **1.   Defendant Has Presented Multiple Relevant Historical Analogues to
                 Its Challenged Open Carry Laws.**

19       Defendant has identified numerous laws that were in effect in 1791 and 1868 that serve as

20  relevant historical analogues, and that demonstrate that the challenged laws here are part of a

21  longstanding historical tradition.  *Bruen* requires that historical analogues must be "relevantly

22  similar" to the present-day challenged regulations in to significant ways: "how and why the

23  regulations burden a law-abiding citizen's right to armed self-defense."  *Bruen*, 142 S. Ct. at

24  2132-33; *see also Baird*, 8 F.4th at 1043 (quoting *Bruen*).  The laws that Defendant has identified

25  placed similar or near-identical burdens on open carry that the challenged regulations here do, for

26  the same public safety reasons.  Because California's laws places similar burdens (or are in fact

27  less burdensome) on the open carry of firearms as relevant historical laws, they pass Second

28  Amendment muster.

                                              8

*Bruen* did not limit its analysis to those laws that were *only* in effect in 1791 and 1868. Rather, the Supreme Court, which kept intact the first analytical step in *Heller*, observed that other historical eras, such as English common-law practices or post-Civil War laws may inform the analysis, particularly if they are consistent with the original meaning of the constitutional text. *See Bruen*, 142 S. Ct. at 2136-38 (assessing different periods of history for relevant analogues). For these same reasons, Plaintiffs' blanket assertions that laws of England and pre-ratification history are immaterial to Second Amendment analysis, ECF 96-1 at 24-25, are incorrect. Instead *Bruen* recognized that a more considered analysis is required: A long line of common-law precedent "is far more likely to be part of our law than a short-lived, 14th-century English practice." *Bruen*, 142 S. Ct. at 2135. Accordingly, all of the laws that Defendants have identified are relevant for the purposes of this Court's analysis, as they show a long tradition of restricting the open carry of firearms.

In any event, Defendant has met his burden here. There were multiple laws that restricted or the open-carry of weapons, or required licensing of those weapons, that were in effect when the Second or Fourteenth Amendment was ratified. This is made plain by the many laws described by the Defendant's experts in their declarations, and compiled in Defendant's appendix.[6] See, *e.g.*, ECF 90-6 at 89-346 (exhibits with charts, citations, and descriptions of the many types of various guns restrictions); ECF 90-3.

---

[6] Plaintiffs object to Defendant's appendix on the basis that it is not admissible evidence. ECF 96-1 at 21. Plaintiffs' objections should be overruled. First, the laws compiled therein, and attached to counsel's sworn declaration, are not factual evidence but citations to legal sources; many of them are, as noted by Defendant, referenced or discussed, or the text is included, by Defendant's experts. The one entry that Plaintiffs specifically take issue with is the description of a statute from 1786. ECF 96-1 at 21. But that law is described in the sworn declaration and expert report of Robert Spitzer, as incorporating penalties for openly carrying weapons. ECF 90-6 at 6, 12, 15, 16. The text of the law itself is also provided. *Id.* at 223. Second, the appendix includes all citations to the laws for this Court, and so judicial notice should be granted. And, at least one court in four cases has requested a spreadsheet listing all laws to aid in its historical inquiry under *Bruen*. *See, e.g.*, Dec. 12, 2022 Minute Order, ECF 134, *Duncan v. Becerra*, 3:17-cv-1017 (S.D. Cal., filed 2017). Nevertheless, Defendant has collected all laws cited below and filed them concurrently with this brief. *See* Defendant's Request for Judicial Notice (RJN). If the Court wishes to have copies of all laws cited in the Appendix, Defendant will prepare and submit them before the summary judgment hearing date.

9

That many of these laws restricted the carry of *all* weapons, whether concealed or open, does not make them inapplicable to the Court's analysis, as Plaintiffs may argue.  Rather, they demonstrate a rich historical tradition of regulating and restricting the public carry of weapons, including the open carry of firearms (even when the practice of openly carrying firearms was not prevalent, as discussed above).

  **a.** **Many Historical Laws Restricted the Open Carry of Weapons.**

Laws restricting the open carry of weapons include, but are not limited to:[7]

- 1686, New Jersey, Grants, Concessions, and Original Constitutions of The Province of New Jersey 289–90 (1881).  Prohibited the carrying "privately" of any pocket pistol, skeines, stilettoes, daggers or dirks, or other unusual or unlawful weapons.  Defendant's RJN, Ex. 1.
- 1694, Massachusetts, 1694 Mass. Laws 12, no. 6, An Act for Punishing of Criminal Offenders. Prohibited riding or ongoing "armed Offensively" before colonial authorities.  Defendant's RJN, Ex. 2.
- 1750, Massachusetts, 1750 Mass. Acts 544, ch. 17, § 1.  Prohibited the carrying of a club or other weapon while unlawfully, riotously, or tumultuously assembling.  Defendant's RJN, Ex. 3.
- 1771, New Hampshire, Acts and Laws of His Majesty's Province of New-Hampshire 9–10 (1771), ch. 6, § 2.  Prohibited any persons numbering twelve or more being armed with "clubs or other weapons," or any group numbering thirty or more, from unlawfully, riotously, or tumultuously assembling.  Defendant's RJN, Ex. 4.
- 1786, Virginia, 1786 Va. Laws 33, ch. 21, An Act forbidding and punishing Affrays, chap. 17, § 1.  Prohibited any person from doing the following: "go nor ride armed

---

[7] The laws listed here, in Defendant's appendix, and in Defendant's expert declarations include the dates that they were *enacted*.  Defendant has found no evidence that the enacted laws were not in effect and in force during the period of the later ratification of the Second or Fourteenth Amendments.

by night nor by day, in fair or markets, or in other places, in terror of the Country, upon pain of being arrested and committed to prison."[8]  Defendant's RJN, Ex. 5.

- 1786, Massachusetts, 1786 Mass. Acts 87, ch. 38.  Prohibited being armed with a club or other weapon while assembling in a group of twelve or more.  Defendant's RJN, Ex. 6.

- 1792, Virginia, Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as are Now in Force 187 (1803), ch. 103, §§ 8–9.  Prohibited any "negro or mulatto" from possessing or carrying a gun, powder, shot, club, or other weapon.[9]  Defendant's RJN, Ex. 7.

- 1801, Tennessee, 1801 Tenn. Laws 259–60, ch. 22, § 6.  Prohibited the private carrying of "any dirk, large knife, pistol, or any other dangerous weapon, to the fear or terror of any person," unless a surety is posted.  Defendant's RJN, Ex. 8.

- 1820, Indiana, 1820 Ind. Acts 39, ch. 23, § 1.  Prohibited any person, "not being a traveler," from wearing or carrying "any dirk, pistol, sword in a cane, or other dangerous weapon."  Defendant's RJN, Ex. 9.

- 1821, Maine, Revised Statutes of the State of Maine 709 (1840), tit. 12, ch. 169, § 16.  Prohibited the carrying of a dirk, dagger, sword, pistol, or other offensive and dangerous weapon without reasonable cause to fear an assault.  Defendant's RJN, Ex. 10.

---

[8] Plaintiffs object to the shortened description in Defendant's appendix of this law.  ECF 96-1 at 22-23.  However, the plain language shows that it prohibits the public carry of weapons.  Defendant's expert also described the law as a restriction on the open-carry of weapons.  ECF 90-6 at 6.  Notably, he described it as one of multiple laws that "mirrored the British Statute of Northampton, where '[t]he very fact of carrying a firearm was considered to be in terror of the people and was therefore prohibited by that statute.'"  ECF 90-6 at 11, quoting Jonathan E. Taylor, "The Surprisingly Strong Originalist Case for Public Carry Laws," Harvard Journal of Law & Public Policy, 43 (Spring 2020).

[9] As Defendant noted in his appendix, such status-based laws, which would be unconstitutional today, are based on odious views and stereotypes, but excluding them from consideration would distort the historical record.  Jacob D. Charles, *On Sordid Sources in Second Amendment Litigation*, Stan. L. Rev. Online, 30, 37 (2023); *see also id.* at 31 ("Without a full picture of past laws—the prosaic and prejudiced alike—courts risk impermissibly narrowing the range of legislative options the ratifiers understood to be consistent with the right to keep and bear arms.").  Plaintiffs are incorrect that statutes restricting firearms on the basis of race or other discriminatory characteristics are rendered "obsolete."  ECF 96-1 at 25.

11

- 1821, Tennessee, Robert Looney Caruthers, A Compilation of the Statutes of Tennessee, of a General and Permanent Nature, from the Commencement of the Government to the Present Time: With References to Judicial Decisions, in Notes, to Which is Appended a New Collection of Forms Page 100, Image 105 (1836). Prohibited carrying "dirk, sword cane, Spanish stiletto, belt or pocket pistol, either public or private" and ordering fine.  Defendant's RJN, Ex. 11.

- 1835, Massachusetts, Theron Metcalf (Editor), Revised Statutes of the Commonwealth of Massachusetts Passed November 4, 1835 to which are Subjoined, as Act in Amendment Thereof, and an Act Expressly to Repeal the Acts Which are Consolidated Therein, both Passed in February 1836, 750 (1836) ch. 134, § 16.  Prohibited the carrying of a dirk, dagger, sword, pistol, or other offensive and dangerous weapon without reasonable cause to fear an assault.  Defendant's RJN, Ex. 12.

- 1837, Mississippi, 1837 Miss. Laws 290–92, § 6.  Prohibited the use of any rifle, shotgun, sword cane, pistol, dirk, dirk knife, Bowie knife, or any other deadly weapon in a fight in which one of the combatants was killed, and the exhibition of any dirk, dirk knife, Bowie knife, sword, sword cane, or other deadly weapon in a rude or threatening manner that was not in necessary self-defense.  Defendant's RJN, Ex. 13.

- 1837, Mississippi—Town of Sharon, 1837 Miss. Laws 294, § 5.  Authorized the town of Sharon to enact "the total inhibition of the odious and savage practice" of carrying dirks, Bowie knives, or pistols.  Defendant's RJN, Ex. 14.

- 1839, Mississippi—Town of Emery, 1839 Miss. Laws 385–86, ch. 168, § 5.  Authorized the town of Emery to enact restrictions on the carrying of dirks, Bowie knives, or pistols.  Defendant's RJN, Ex. 15.

- 1840, Mississippi—Town of Hernando, 1840 Miss. Laws 180–81, ch. 111, § 5.  Authorized the town of Hernando to enact restrictions on the carrying of dirks, Bowie knives, or pistols.  Defendant's RJN, Ex. 16.

12

- 1847, Maine, The Revised Statutes of the State of Maine, Passed October 22, 1840, 709 (1847), tit. 12, ch. 169, § 16.  Prohibited the carrying of a dirk, dagger, sword, pistol, or other offensive and dangerous weapon without reasonable cause to fear an assault.  Defendant's RJN, Ex. 17.

- 1852, Hawaii, 1852 Haw. Sess. Laws 19, § 1.  Prohibited the unauthorized carry of any bowie knife, sword-cane, pistol, air gun, slung-shot, or deadly weapon.[10]  Defendant's RJN, Ex. 18.

- 1854, Washington [Territory], 1854 Wash. Sess. Law 80, ch. 2, § 30.  Prohibited exhibiting, in a rude, angry, or threatening manner, a pistol, Bowie knife, or other dangerous weapon.  Defendant's RJN, Ex. 19.

- 1855, California, William H. R. Wood (Editor), Digest of the Laws of California: Containing All Laws of a General Character Which were in Force on the First Day of January, 1858, 334 (1861), art. 1904.  Prohibited the display of any dirk, dirk-knife, Bowie knife, sword, sword cane, pistol, gun, or other deadly weapon in a threatening manner, or use of such weapon in a fight.  Defendant's RJN, Ex. 20.

- 1858, District of Columbia, 1 William B. Webb, The Laws of the Corporation of Washington Digested and Arranged under Appropriate in Accordance with a Joint Resolution of the City 418 (1868), Act of Nov. 18, 1858.  Prohibited "any person or persons to carry or have concealed about their persons any deadly or dangerous weapons, such as dagger, pistol, bowie knife, dirk knife, or dirk, colt, slungshot, or brass or other metal knuckles."[11]  Defendant's RJN, Ex. 21.

---

[10] Plaintiffs claim that the Hawaii statute is not a historical analogue because it was not annexed as an American territory until four decades later, and so it not "part of an American historical tradition."  ECF 96-1 at 30-31.  First, Plaintiffs have cited to a previously-undisclosed expert report for this assertion.  ECF 96-1 at 31 n.29.  Second, neither Plaintiffs nor their expert cite to any authority that a statute enacted in a future state is not a relevant analogue. While *Bruen* noted that laws from Western Territories may not be given much weight given that they were short-lived, *Bruen*, 142 S. Ct. at 2121, there is no evidence that the Hawaii law did not survive at least until the State's annexation in 1898.

[11] Plaintiffs assert that this is solely a concealed carry law.  ECF 96-1 at 31.  The plain language of the law, however, shows that it applies to all public carry, concealed or otherwise.

13

- 1859, Washington [Territory], 1859 Wash. Sess. Laws 109, ch. 2, § 30.  Prohibited exhibiting, in a rude, angry, or threatening manner, a pistol, Bowie knife, or other dangerous weapon.  Defendant's RJN, Ex. 22.

- 1867, Arizona, An Act to prevent the improper use of deadly weapons, and the indiscriminate use of fire arms in the towns and villages of the territory. § 1. In Coles Bashford, The Compiled Laws of the Territory of Arizona, page 96, Image 102 (1871).  Prohibiting drawing or exhibiting any deadly weapon in presence of two or more persons "in a rude, angry or threatening manner, not in necessary self-defense, or who shall, in any manner, unlawfully use the same in any fight or quarrel."  Defendant's RJN, Ex. 23.

- 1868, Alabama, Wade Keyes & Fern Wood (Editors), Code of Alabama 883 (1876), ch. 3, § 4111.  Prohibited the carrying of any rifle or "shot-gun walking cane."  Defendant's RJN, Ex. 24.

- 1868, Florida, James F McClellan (Editor), A Digest of the Laws of the State of Florida: From the Year One Thousand Eight Hundred and Twenty-Two, to the Eleventh Day of March, One Thousand Eight Hundred and Eighty-One, Inclusive 403 (1881), § 13.  Prohibited the carrying "secretly, on or about their person" any dirk, pistol or other arm or weapon, except a "common pocket knife."  Defendant's RJN, Ex. 25.

- 1868, Kansas, The General Statutes of the State of Kansas, to Which the Constitutions of the United State of Kansas, Together with the Organic Act of the Territory of Kansas, the Treaty Ceding the Territory of Louisiana to the United States, and the Act Admitting Kansas into the Union are Prefixed Page 378, Image 387 (1868), Crimes and Punishments, § 282.  Any person who is "not engaged in any legitimate business, any person under the influence of intoxicating drink, and any person who has ever borne arms against the government of the United States, who shall be found within the limits of this state, carrying on his person a pistol,

14

1      bowie-knife, dirk or other deadly weapon" is subject to arrest and fine or

2      imprisonment.  Defendant's RJN, Ex. 26.

3          These are only a sampling of the many laws that Defendant and Defendant's experts have

4   referenced, quoted, or surveyed.[12]  *See* ECF 90-3.  Contrary to Plaintiffs' contentions otherwise,

5   the dangerous weapons laws, including those cited above, are relevantly similar to California's

6   open carry regulations in light of their comparable burdens and justifications.  They all restrict the

7   manner of carry, and often have limited exceptions without good cause, such as for those who

8   perceive themselves to be in immediate danger.  Notably, multiple laws described here bear

9   similar or near-identical provisions to California's challenged regulations.  For example, the 1835

10  Massachusetts law and the 1847 Maine law prohibited the carrying of any dangerous weapon,

11  including pistols, "without reasonable cause to fear an assault."  *Cf.* § 26045 (permitting open

12  carry if individual reasonably believe it is necessary to prevent an immediate and grave danger to

13  any person or property).  Other laws cited above gave cities and towns specific authority to

14  restrict or prohibit the public carry of weapons.

15         In addition, California itself has a long tradition of restricting the public carry of weapons,

16  despite Plaintiffs' contentions otherwise.  The 1855 California law described above prohibited the

17  display of weapons, including a pistol or gun, in a threatening manner.  An even earlier law in

18  San Francisco, from 1849, prohibited the carrying of pistols, guns, and other weapons, with the

19  intent to assault someone.  Defendant's RJN, Ex. 27 (San Francisco—1849 Cal. Stat. 245, div.

20  11, § 127).  In 1850, a version of that law was adopted in the entire state.  Defendant's RJN, Ex.

21  28 (1850, California, ch. 125, div. 11, § 127).  An 1864 law prohibited the concealed carry of

22  pistols and other weapons.  Defendant's RJN, Ex. 29 (The General Laws of the State of

23  California, from 1850 to 1864, Inclusive 261 (1872), § 1585 [§ 1]).  And in 1878, Los Angeles

24  prohibited all persons except peace officers and anyone traveling through the city from carrying a

25  deadly weapon concealed or otherwise.  Defendant's RJN, Ex. 30 (Ordinances of the City of Los

26  Angeles, § 36, (1878)).

27  _____

28      [12] They also demonstrate that the public carry of weapons was regulated by states before
1791, contrary to Plaintiffs' assertions.

15

1

**b.    Many Historical Laws Required a Licensing Scheme in Order to Openly Carry Weapons.**

2

3      In addition, contrary to Plaintiffs' contentions, there are many examples of laws requiring a

4   license in order to own or use a gun in the historical record.  *See, e.g.*, ECF 90-5 at 36-38; ECF

5   90-6 at 234-238.  As Dr. Spitzer observed, "[w]eapons licensing or permitting was a widespread

6   and varied regulatory tool utilized in America."  ECF 90-6 at 17.  Defendant has identified

7   multiple licensing laws that serve as relevant historical analogues, because of the comparable

8   burdens placed on the open carry of firearms, for the same purposes.  "Despite the difference of

9   hundreds of years, licensing in early America functioned largely in the way it functions today."

10  *Id.*  But because open carry was not prevalent during this period, *see* ECF 90-1 at 12-14,

11  concealed carry license laws and restrictions on the firing of weapons were more prevalent and

12  serve as relevant historical analogues.  There were also many laws that went much further,

13  requiring a license for weapons ownership or imposing licensing requirement laws on

14  marginalized groups.  *See* ECF 90-6 at 17-18, 234-338 (compiling historical licensing laws), 340-

15  343 (table listing licensing laws by type).  For example, in 1818, Missouri passed a law requiring

16  free Blacks who wished to keep and use guns to have a license from a justice of the peace.[13]  In

17  1871, the City of St. Louis passed a requirement that no one could conceal carry pistols,

18  revolvers, and other weapons "without written permission from the Mayor."[14]  In addition, one

19  prevalent form of licensing—taxation—was used as a means of regulating firearms.  ECF 90-5 at

20  31-32.  For example, in 1867, Alabama imposed an annual tax on all "private persons" in

21  possession of certain weapons, including on "All pistols and revolvers."[15]  "The criteria for the

22  granting of these licenses were generally highly discretionary for the individuals or bodies

23  granting them," often with no criteria set or with vague or broad requirements.  ECF 90-6 at 19.

24      Further, that California allows open carry licensing in less populated counties fits within the

25  historical tradition: there is a long history of governments drawing distinctions "about the relative

26  ――――――――――――――――
        [13] Henry S. Geyer (Editor), A Digest of the Laws of Missouri Territory 374 (1818) § 3
    [Slaves].  Defendant's RJN, Ex. 31.

27      [14] Everett W. Pattinson (Editor), Revised Ordinance of the City of St. Louis 491 (1871),
    art. 2, § 9.  Defendant's RJN, Ex. 32.

28      [15] 1866–1867 Ala. Laws 260 & 263, ch. 2, § 2(10).  Defendant's RJN, Ex. 33.

1  dangers of deadly weapons in urban versus rural locales." ECF 90-5 at 38.  In the American

2  West, "different rules often applied in organized towns than in the expansive countryside beyond

3  their borders.  *Id.* at 39.  For example, "[p]ublic carry laws often featured modified rules for long-

4  distance travelers venturing beyond the safety of their local communities.  When exposed to the

5  dangers of the highway bushwacker or the prowling coyote . . . laws generally allowed the

6  carrying of weapons—including those statutorily restricted as deadly weapons." *Id.* at 38; *see*

7  *also id.* at 38 n.116 (citing laws).  California had many such laws.  Municipalities issued licenses

8  to applicants on a showing "that they were particularly vulnerable to attack and therefore in need

9  of weapons for self-defense." *Id.* at 39.  Other states "explicitly prohibited the carrying of

10  concealed weapons in towns and settlements." *Id.* at 39-40.

11       Thus, many historical laws required individuals to apply for a license, often to own, carry,

12  or use a gun.  Similarly, in counties that permit it, the State requires individuals to apply for a

13  license in order to openly carry a weapon.  And, unlike many past laws, it has set forth specific

14  criteria in order for such a license to be obtained.  Requiring a license to carry or own a weapon

15  has "deep roots in California history."  Rivas Sur-Rebuttal at 3; *see also* ECF 90-5 at 37 ("One of

16  the earliest proponents of licensing as a way of regulating the carrying of pistols was California").

17       In short, there is a long tradition of restricting and prohibiting the open carry of firearms in

18  the United States.  Plaintiffs have provided no evidence to the contrary.

19         **2.**    **Plaintiffs' Arguments That No Historical Analogues Exist Are**

20                **Unavailing.**

21         **a.**    **Plaintiffs Misinterpret *Bruen*.**

22       Throughout their brief, Plaintiffs ignore *Bruen* and *Heller* and assert that only laws from the

23  Founding Era are relevant historical analogues.  ECF 96-1 at 16; 25.  In support of their

24  argument, Plaintiffs cite to an unpublished article by an individual that they have not disclosed as

25  an expert.  ECF 96-1 at 18; *see also* Defendant's Objections to Plaintiff's Evidence at ¶ 5.  But

26  *Bruen* made clear that laws from 1868 *are* relevant, as discussed above and as confirmed by the

27  Ninth Circuit.  *Baird*, 81 F.4th at 1043 (historical analogue must have been in effect "when the

28  Second *or* Fourteenth Amendment was ratified," emphasis added); *supra* at 6-8.  Similarly,

1   Plaintiffs' reliance on non-Second Amendment jurisprudence for their assertion that laws from

2   1868 should be disregarded is not persuasive.  *See* ECF 96-1 at 17-18 (citing cases concerning the

3   First, Fourth, Fifth, Sixth, and Eight Amendments).  Second Amendment cases have relied on

4   laws from the time of the Fourteenth Amendment's ratification; *Bruen* does not disturb that

5   analysis.  *Supra* at 6-8.

6        Plaintiffs appear to posit that laws that restrict the open carry of weapons in 1868 are

7   irrelevant if there were not also laws that restricted the open carry of weapons in existence in

8   1791. ECF 96-1 at 25.  Not so; their argument would render meaningless the use of post-1791

9   laws.  Their citation to *Bruen* in support of this premise is misleading.  ECF 96-1 at 20.  When the

10  Supreme Court observed that "to the extent later history contradicts what the text says, the text

11  controls," *Bruen*, 142 S. Ct. at 2137, which Plaintiffs quote, this was in acknowledgement that the

12  Court had, in *Heller*, recognized that "evidence through the end of the nineteenth century

13  represented a critical tool of constitutional interpretation."  *Id.*, quoting *Heller*, 554 U.S. at 605.

14       The Supreme Court also observed that "the public understanding of the right to keep and

15  bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public

16  carry." *Bruen*, 142 S. Ct. at 2138.  This does not, contrary to Plaintiffs' assertions, mean that

17  laws in effect in 1868 are invalid if they contradict laws in effect in 1791.  Rather, with respect to

18  public carry, laws from both periods in history inform the present analysis.  Plaintiffs instead

19  interpret this statement in *Bruen* to mean that because New York's concealed carry laws were

20  invalidated, so too must California's open carry restrictions be.  ECF 90-1 at 20-21.  But the

21  concept of open carry has evolved with time: as Defendant's experts have explained in detail, the

22  public understanding of open carry of the period was very different from today, given

23  technological limits and prevailing social norms.  ECF 90-5 at 4-17; ECF 90-7 at 14-18.  And, in

24  California, concealed carry is permitted; California has therefore not banned public carry, but has

25  lawfully restricted one kind of public carry only.  *See Bruen*, 142 S. Ct. at 2146, 2150.

26

27

28

### b. Plaintiffs' Other Arguments, and Declarations and Exhibits in Support, Should Be Disregarded.

Plaintiffs' other arguments that they raise in their cross-motion are without merit.[16]  In support of their motion, they submit a declaration and expert report purporting to rebut Defendant's experts.  *See* ECF 96-3.  First, this report should be stricken in full because, as noted above, it was not disclosed to Defendants in discovery.  *See* Defendant's Objections to Plaintiff's Evidence, ¶ 1; Haddad Supp. Decl., ¶¶ 3-5.  Rather, a different rebuttal report was served by Plaintiffs, and Defendant in turn served sur-rebuttal reports.  *See* Sur-Rebuttal Reports of Dr. Spitzer, Dr. Cornell, and Dr. Rivas, filed concurrently with Defendant's brief.  Plaintiffs' new, revised report raises claims and arguments not previously raised in their rebuttal report, and removes some of the passages that Defendants' experts have pointed to as examples of why Mr. Cramer's scholarship raises serious concerns.  *See*, *e.g.*, Spitzer Sur-Rebuttal at 3; Rivas Sur-Rebuttal at 2-4.  For example, Mr. Cramer's previous expert report devoted nine pages to the discussion of Dr. Spitzer's analysis of concealed weapons regulations.  Haddad Supp. Decl., Ex. 2 at pp. 43-51.  His newly-filed report only contains one page of discussion.  ECF 96-3 at 14. Plaintiffs have given no explanation as to why they filed a different report, and because the report was served well after discovery in this case closed without notice and without the Court's permission, Plaintiffs are not in compliance with the Federal Rules of Civil Procedure.  At the very least, the Court should substitute the properly-served report, attached as Exhibit 2 to the Supplemental Haddad Declaration, rather than accept the filed version.

Even if this Court accepts Mr. Cramer's report, little weight should be given to the opinions on the grounds that Defendant's experts have raised serious concerns about his scholarship, methodology, and opinions.  Sur-Rebuttal Reports of Dr. Spitzer, Dr. Rivas, and Dr. Cornell.  As Dr. Rivas concludes, "Mr. Cramer's claims about American historical do not comport with the standards of historical scholarship."  Rivas Sur-Rebuttal at 17; *see also* Spitzer Sur-Rebuttal at 3.

---

[16] Several arguments that Plaintiffs raise are without citation and do not appear to be a part of the Second Amendment analysis set forth in *Bruen*.  For example, they contend, without evidence, that women may have a difficult time concealing weapons due to the clothing they wear.  ECF 96-1 at 12 n.5.

Dr. Rivas points as an example to an attempt "to take a recent historical study pertaining to mentally ill persons and superimpose its conclusions upon nineteenth-century Americans without accounting for differences in social mores, conceptions of mental illness, or availability of sources defies some of the most fundamental principles to the practice of history." *Id.* at 18 (citing Cramer Rebuttal Report, Haddad Supp. Dec., Ex. 2 at 29).

Moreover, Mr. Cramer fails to rebut Defendant's experts. In general, Plaintiffs' criticisms of Defendant's experts—ECF 96-1 at 29-32—have all been addressed in the experts' sur-rebuttal reports. *See* Rivas Sur-Rebuttal; Spitzer Sur-Rebuttal; Cornell Sur-Rebuttal. For example, relying on Mr. Cramer's report, Plaintiffs assert that Defendant has improperly conflated handguns and "dangerous and unusual weapons," and that historical laws restricting dangerous weapons are not analogues for present day laws restricting the carry of handguns. ECF 96-1 at 24. But as Dr. Rivas explained, the pistols that were widely regulated were those that were in major circulation at the time that laws restricting their usage were passed. Rivas Sur-Rebuttal at 7-9. And as evidenced by the laws that Defendant cites, pistols were regularly restricted and included alongside lists of dangerous and deadly weapons.

Plaintiffs also argue that many of the statutes that Defendant point to as relevant historical analogues are inapposite because they restrict the brandishing and display of weapons, as opposed to peaceable carriage of handguns. ECF 96-1 at 25-26; ECF 96-3 at 18-21. Plaintiffs are wrong. As Dr. Spitzer explained at length, "brandishing laws involve the display of weapons in the presence of others and to do so in a menacing or threatening manner. Weapons display laws criminalize the mere display of weapons in public—that is, they simply can be seen by and in the presence of others in the public." Spitzer Sur-Rebuttal at 9; *see also* ECF 90-6 at 11. Display laws differ from public carry in that they prohibit open carry when in the presence of the public. Spitzer Sur-Rebuttal at 9. Dr. Spitzer also explained that while brandishing laws are in a category separate from open carry prohibitions, as display laws are, they are necessarily related and must be assessed in considering the historical tradition of regulating open carry. Spitzer Sur-Rebuttal at 8, 13; ECF 90-6 at 17.

1   The other points that Plaintiffs raise have been refuted by the experts themselves.  For

2   example, Plaintiffs contend that Dr. Spitzer failed to acknowledge the outcome of a court decision

3   later invalidating a Georgia firearms law.  ECF 96-1 at 30.  But as Dr. Spitzer explained, his

4   report's focus was on the state's statutory enactment of weapons carrying laws as state-enacted

5   public policy, "to demonstrate their prolific and varied nature throughout the country."  Spitzer

6   Sur-Rebuttal at 7.  And, Defendant noted the court decision in the appendix.  ECF 90-3 at ¶ 44.

7   Finally, Defendants' experts do not rely on public safety claims, as Plaintiffs assert.  ECF

8   96-1 at 27.  Defendants' historical experts each explain the context for the historical laws to

9   which they cite; to the extent that the laws were passed because of public safety concerns, such

10  history should not be disregarded.  Regarding Chief Raney's expert report concerning the public

11  safety implications of widespread open carry, his testimony goes to the comparable burdens and

12  goals of the current laws with the relevant historical analogues.  *See* ECF 90-8.  He underscores

13  that the purpose of the laws is to achieve public safety—just as relevant historical laws are.  ECF

14  6-10.  And, such evidence is relevant in assessing the State and public interest when considering a

15  stay request.  *See infra* at 22-23.

16  In all, Plaintiffs do nothing to undercut Defendant's experts or their conclusions, and this

17  Court can and should rely on them when conducting its historical analysis.

18          **c.    Plaintiffs' Citation to a Superior Court Case Concerning**
19                 **Concealed Carry Laws Should Be Disregarded.**

20  Finally, Plaintiffs cite to a criminal case where the superior court sustained a defendant's

21  demurrer challenging criminal charges concerning the concealed carry and possession of

22  unregistered handguns.  *See* ECF 96-12 at 2-3.  In that case, the court dismissed the criminal

23  charges on the basis that under *Bruen*, criminal charges could not be brought on the basis of

24  unlicensed concealed carry.  ECF 96-12 at 11.  But this superior court case is not persuasive

25  authority here.  It concerned the concealed carry of weapons, which is a scheme that plaintiffs do

26  not even challenge here.  And it did not address the open carry laws at issue here.

27

28

III.   **IF THE COURT CONCLUDES THAT CALIFORNIA'S RESTRICTIONS ON UNLICENSED OPEN CARRY ARE UNCONSTITUTIONAL, THE COURT SHOULD STAY ENFORCEMENT OF THE JUDGMENT PENDING APPEAL.**

As discussed, the uncontroverted evidence demonstrates that California's laws governing the open carry of firearms are constitutional as a matter of law.  Nevertheless, if the Court enters judgment holding that those laws violate the Second Amendment, Defendant respectfully requests that the Court stay enforcement of any such judgment pending appeal.

All four factors that courts consider in evaluating a request to stay pending appeal weigh in favor of Defendant's request.  *See Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) ("A party seeking a stay must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of relief, [3] that the balance of equities tip in his favor, and [4] that a stay is in the public interest.").  On the first factor, the party seeking the stay "need not demonstrate that it is more likely than not they will win on the merits," but rather must show only "a reasonable probability" or "fair prospect" of success.  *Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019) (granting partial stay of injunction pending appeal where the party seeking a stay showed "the presence of serious questions on the merits of the district court's determination").

First, Defendant meets the serious questions going to the merits standard here.  Regardless of the outcome, this case will be among the first opportunities for the Ninth Circuit to address the constitutionality of open carry restrictions post-*Bruen*, after Defendant has developed a historical record.  At a minimum, this case presents a serious and novel question in the Ninth Circuit, and thus satisfies the first factor for a stay pending appeal where, as here, the equities tip strongly in favor of granting a stay.

Second, absent a stay, Defendant and the State of California will be irreparably injured. Expanding the open carry of weapons, which has been restricted for years, would risk public safety, as described by one of Defendant's experts.  *See* ECF 90-8 at 6-10.

Third, the balance of harms favors Defendant.  While a stay will delay the relief that Plaintiffs seek in this action, any additional delay pending appeal would be comparatively minor and would preserve the status quo until this matter is finally resolved.  While any delay in the

22

enjoyment of a constitutional right will involve a burden to those who wish to exercise it, if a judgment issued by this Court in Plaintiffs' favor is affirmed on appeal, any such burden would be relatively modest in comparison to the substantial burden that will be imposed on the State if individuals were allowed the sudden, unlicensed and unrestricted ability to openly carry firearms (which is the relief that Plaintiffs seek here).

Fourth, the public interest strongly favors staying any judgment pending appeal.  A stay pending appeal will preserve the status quo involving important public-safety laws that have been in effect for over a decade while the Ninth Circuit considers this Second Amendment challenge. *See Boland v. Bonta*, ECF 7, Case No. 23-55276 (9th Cir. Apr. 3, 2023) (granting Attorney General's motion for an emergency stay where the district court had granted a preliminary injunction enjoining enforcement of certain requirements in the Unsafe Handgun Act and had only stayed the case long enough to allow time for the State to seek a stay from the Ninth Circuit).

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' cross-motion for summary judgment, grant Defendant's motion for summary judgment, and enter judgment in Defendant's favor.

Dated:  October 13, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*s/ Lara Haddad*
LARA HADDAD
Deputy Attorney General
*Attorneys for Defendant Rob Bonta in his official capacity as Attorney General of California*

## CERTIFICATE OF SERVICE

Case Name:   **Baird, Mark v. Rob Bonta**          No.     **2:19-cv-00617-KJM-AC**

I hereby certify that on <u>October 13, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 13, 2023</u>, at Los Angeles, California.

| Lara Haddad | *Lara Haddad* |
|:---:|:---:|
| Declarant | Signature |