Rob Bonta, State Bar No. 202668
Attorney General of California
Mark R. Beckington, State Bar No. 126009
Supervising Deputy Attorney General
Lara Haddad, State Bar No. 319630
Deputy Attorney General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone: (213) 269-6250
  Fax: (916) 731-2124
  E-mail: Lara.Haddad@doj.ca.gov
*Attorneys for Defendant Rob Bonta in his official capacity as Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK BAIRD and RICHARD GALLARDO,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California, and DOES 1-10,**<br><br>Defendants. | 2:19-cv-00617-KJM-AC<br><br>**SUR-REBUTTAL REPORT AND DECLARATION OF SAUL CORNELL**<br><br>Date:<br>Time:<br>Courtroom:<br>Judge:<br>Trial Date:<br>Action Filed:   April 10, 2019 |

1

# SUR-REBUTTAL REPORT AND DECLARATION OF SAUL CORNELL

1. I previously submitted an updated declaration and expert report in this matter, signed on June 8, 2023. I am submitting this sur-rebuttal expert report and declaration to address the rebuttal report prepared by Clayton Cramer attached as Exhibit 3 to his declaration, signed on July 14, 2023.

## OPINIONS

2. Everything that I stated in my previous report is true and accurate to the best of my knowledge. Mr. Cramer asserts that I have made "multiple errors" in my report (Cramer Rebuttal, ¶ 1.) That assertion, itself, erroneous.

3. At paragraphs 7 and 8, Cramer takes issue with my assertion that the Founding-era states adopted multiple aspects of English common law. He concludes that if a right was codified in a state constitution, then all aspects of the common law were effectively nullified. No serious scholar would make such a claim. For example, the codification of the First Amendment did not wipe traditional English views of libel law from the books, as the controversy over the Alien and Sedition Acts demonstrates.[1] Historically, states did not have to choose between adopting the common law in toto or abandoning the common law.

4. At paragraph 11, Cramer challenges a case that I cite, *Commonwealth v. Leach*, 1 Mass. 59 (1804), arguing that only some parts of the English common law were adopted by Massachusetts law. But this was exactly my point. In particular, the case I cite discussed the continuity between the powers of the justice of peace under common law and the powers they enjoyed under Massachusetts law.

5. At paragraph 13, Cramer asserts that I have attributed the carryover of English law in 1776 to only three sources, and that I do not understand those sources. But what I discuss in my report are examples of the way aspects of the common law were absorbed at the Founding.

---

[1] See Jud Campbell, *Natural Rights and the First Amendment*, 127 YALE L.J. 246, 254 (2017). ("Federalists in the late 1790s, for instance, typically invoked the English common law to defend the constitutionality of sedition prosecutions, while many Republicans appealed to practical experience and common sense to reach the opposite conclusion.")

Additional evidence of this is in the scholarly citations in my report, which Cramer does not acknowledge. Nor does he acknowledge the voluminous scholarly literature on the influence of the common law on early American legal development.[2]

6. In general, Cramer assumes that absorption of the common law was a simple either-or choice: either total incorporation of the common law or none. But at paragraph 15, Cramer himself cites to a 1795 case that acknowledges that English law is "from whence most of our legal principles and legislative notions are derived." His view is inconsistent with the last century of legal scholarship; it should not be credited.

7. At paragraph 18, Cramer asserts that Blackstone, in <u>Commentaries on the Laws of England</u>, "listed the absolute rights that every Englishman enjoyed," but failed to include the peace as a basic right. However, the passage he quotes discussed retained *natural* rights. The "peace" was by definition not a retained natural right. Only by parting with part of natural liberty, could one acquire the benefits of living in civil society under the rule of law.[3] Preservation of the peace was only possible once one left the state of nature and created political society.[4] This is one of the most basic legal and constitutional ideas from the Founding era.

8. At paragraph 23, Cramer asserts that if I believe in "popular sovereignty," I would end up defending laws permitting segregation, discrimination, and the like. I have never made any of these claims—I opined instead on what Founding era laws meant at the time they were passed. Cramer's speculation about the legal consequences of applying Founding era law to the modern world is a legal question and not one not within the purview of historians.

---

[2] Lauren Benton & Kathryn Walker, *Law for the Empire: The Common Law in Colonial America and the Problem of Legal Diversity*, 89 CHI.-KENT L. REV. 937 (2014); Bernadette Meyler, *Towards a Common Law Originalism* 59 STANFORD LAW REVIEW 551 (2006).

[3] William Blackstone observed that "every man, when he enters into society, gives up a part of his natural liberty," 9. 1 WILLIAM BLACKSTONE, COMMENTARIES *125. Gouverneur Morris, Political Enquiries, ("Natural Liberty absolutely excludes the Idea of political Liberty since it implies in every man the Right to do what he pleases. So long, therefore, as it exists Society cannot be established. And when Society is established natural Liberty must cease. It must be restricted" http://press-pubs.uchicago.edu/founders/documents/v1ch16s8.html

[4] Blackstone's makes this point expressly in his discussion of the advantages of civil society over the state of nature: "For the principal aim of society is to protect individuals in the enjoyment of those absolute rights, which were vested in them by the immutable laws of nature; but which could not be preserved in peace without that mutual assistance and intercourse, which is gained by the institution of friendly and social communities." 1 COMMENTARIES *119-123.

9. At paragraph 26, Cramer cites to *Heller* to dispute my statement that the Second Amendment recognizes both the right to keep and bear arms and the right of the people to regulate arms to promote the goals of preserving a free state. But in Federalist 29, Hamilton wrote: "If a well-regulated militia be the most natural defense of a free country, it ought certainly to be under the regulation and at the disposal of that body which is constituted the guardian of the national security."[5]

10. Over several paragraphs, Cramer engages in hyperbolic argument regarding my reasoning, again asserting that taking my statements to their conclusion would result in support for laws permitting discrimination and the like. (See Cramer Rebuttal, ¶¶ 29-30.) This is not historical argument and does not rebut any of my historical points. Nor is he stating claims that I have made or support.

11. At paragraph 46, Cramer makes an argument about modern day gun violence to rebut my claims and Randolph Roth's research, on which I rely. Cramer appears to believe that evidence he cites showing low levels of gun violence in modern-day portions of America challenges Roth's evidence about low levels of gun violence in 1791. This is not only illogical, it also does not undermine Roth's research or the statements I make in reliance on that research.

12. At paragraphs 46 and 47, Cramer contends that there was a civilian market for pistols before the Revolution. However, he ignores my citation to the work of Kevin Sweeney documenting low levels of pistol ownership at the time that the Second Amendment passed. I never stated that there was "no market" for pistols: I pointed out that ten percent of the arms owned by American were pistols at the time of the Second Amendment's ratification. (Cornell, 12.)Moreover, his impressionistic use of newspaper citations does not conform to accepted historical practice, which requires greater quantitative rigor.

13. At paragraph 59, Cramer contends that I claimed that there was a scarcity of pistols outside of those used by the elite for dueling. My claim was not that duels were the only use, but that in general there was little utility for pistols in a largely rural and agrarian society. (Cornell,

---

[5] See Alexander Hamilton, *Federalist No. 29*, https://avalon.law.yale.edu/18th_century/fed29.asp.

4

12.) He does not challenge the fact that 90% of guns at this time were long guns, a fact that underscores my point about the utility of pistols in 1791.  (Cornell, 13.)

14. At paragraph 74, Cramer states that I take a view of "the nearly unlimited authority of the state," and logically this would somehow lead the state to justify criminalization of sodomy and divorce.  Not only do I not assert this, but this is speculation about modern legal applications of claims about eighteenth century law. Such claims are not only speculative, but are they are not historical at all.  Cramer's speculations are not based on any sound historical method.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on August 4, 2023, at Redding, CT.

                                              Dr. Saul Cornell

# CERTIFICATE OF SERVICE

Case Name:   **Baird, Mark v. Rob Bonta**          No.     **2:19-cv-00617-KJM-AC**

I hereby certify that on <u>October 13, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**SUR-REBUTTAL EXPERT REPORT AND DECLARATION OF SAUL CORNELL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 13, 2023</u>, at Los Angeles, California.

|  |  |
|---|---|
| Lara Haddad | *Lara Haddad* |
| Declarant | Signature |