COSCA LAW CORPORATION
CHRIS COSCA   SBN 144546
1007 7th Street, Suite 210
Sacramento, CA 95814
916-440-1010

AMY L. BELLANTONI
THE BELLANTONI LAW FIRM, PLLC
2 Overhill Road, Suite 400
Scarsdale, NY 10583
Telephone: 914-367-0090
Facsimile:  888-763-9761
*Pro Hac Vice*

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK BAIRD and RICHARD GALLARDO,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>Defendant. | Case No. 2:19-CV-00617-KJM-AC<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:           November 3, 2023<br>Time:          10:00 a.m.<br>Courtroom:  3<br>Judge:         Hon. Kimberly J. Mueller<br>Trial Date:    None set<br>Action Filed:  April 9, 2019 |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................................. i

I. CRIMINALIZING SELF-DEFENSE IS REPUGNANT TO NATURAL LAW ........................ 1

II. BEARING ARMS IS PROTECTED CONDUCT, NOT CRIMINAL ACTIVITY .................. 2

III. LIKE THE FIRST AMENDMENT, THE GOVERNMENT CANNOT DICTATE HOW INDIVIDUALS EXERCISE THEIR SECOND AMENDMENT RIGHTS .................................. 2

IV. LIKE HELLER AND BRUEN, CALIFORNIA'S REGULATIONS 'ADDRESS A GENERAL SOCIETAL PROBLEM THAT HAS PERSISTED SINCE THE 18th CENTURY ............................................................................................................................. 3

    A. The Supreme Court Rejected 'Nuanced Judgments' From Inferior Federal Courts .................................................................................................. 3

    B. Sec. 25850 and 26350 Address the Same Societal Problems: Firearm Violence ........................................................................................................... 4

V. LAWS PROHIBITING 'PISTOLS' ARE NOT HISTORICAL ANALOGUES ....................... 6

VI. DEFENDANT PRESSES THE SAME 'PUBLIC SAFETY' JUSTIFICATIONS FIRMLY REJECTED BY THE SUPREME COURT AND (NOW) THE NINTH CIRCUIT ...................... 6

VII. DEFENDANT'S 'TAKE IT OR LEAVE IT' APPROACH VIOLATES THE PLAIN TEXT AND FINDS NO SUPPORT UNDER THE *BRUEN* TEST ........................................................ 8

    A. California's Modern Licensing Scheme Is Not An 'Historical Analogue' ............... 8

    B. Licensing Is Inconsistent With The Plain Text, And Not An Historical Tradition .... 8

    C. Open Carry Is Banned; No License Has Ever Been Issued ...................................... 9

VIII. NO STAY OF JUDGMENT SHOULD BE GRANTED ..................................................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023) .................................................................................................. 7

*D.C. v. Heller*,
  554 U.S. 570 (2008) ........................................................................................................ Passim

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................................................. 10

*Espinoza v. Montana Dep't of Revenue*,
  140 S. Ct. 2246 (2020) ........................................................................................................... 1

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  46 F.4th 1075 (9th Cir. 2022) .............................................................................................. 10

*McDonald v. Chicago*,
  561 U.S. 742 (2010) ........................................................................................................... 3, 7

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) .................................................................................................. Passim

*Silveira v. Lockyer*,
  328 F.3d 567 (9th Cir. 2003) ................................................................................................. 2

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  582 U.S. 449 (2017) ............................................................................................................ 2, 3

**Statutes**

California Penal Code section 25850 ........................................................................................ 1, 4, 5

California Penal Code section 26150 ................................................................................................ 9

California Penal Code section 26155 ................................................................................................ 9

California Penal Code section 26350 ........................................................................................ 1, 4, 5

Defendant plies the Court with anecdotes, speculative opinions, and incomparable regulations hoping that, if multiple people with hundreds of pages repeating the same contrived narrative, accompanied by cherry-picked phrases and strained contortions of the *Bruen* opinion, the Court will surely place its imprimatur on California Penal Code sections 25850 and 26350.

Defendant ignores this absolute truth: the Founders enacted the Bill of Rights codify fundamental rights that came from God -- natural rights inherent in all people by virtue of their being human -- and that certain of these rights are inalienable, meaning they cannot be surrendered to government under any circumstances.[1] The Founders believed that governments were legitimate to the extent that they protected those rights, but those that arbitrarily took them away possessed no moral authority.[2] California exemplifies the latter.

Plaintiffs are entitled to summary judgment because (i) imposing criminal sanctions for 'bearing arms'[3] is repugnant to the plain text of the Second Amendment and (ii) Defendant failed to meet its burden of justifying Penal Code sections 25850 and 26350 with an historical analogue.

**I. CRIMINALIZING SELF-DEFENSE IS REPUGNANT TO NATURAL LAW**

Criminalizing public carry is "odious to our Constitution" [c.f., *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2255 (2020)], which presumptively guarantees the right to bear arms for self-defense. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2135 (2022). In fact, there is little evidence of an early American practice of regulating public carry by the general public. *Bruen*, at 2142.

California's enactment of licensing laws to 'soften the blow' of its overarching infringement of preexisting rights is immaterial to the question before the Court: is criminalizing open carry "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, at 2126. The answer is a resounding "No." *Heller*, at 594 ("By the time of the founding, the right to keep and bear arms was understood to be an individual right protecting against both public and private violence"). Defendant failed to prove that it was, requiring summary judgment for Plaintiffs.

---

[1] https://constitutioncenter.org/the-constitution/white-papers/the-declaration-the-constitution-and-the-bill-of-rights
[2] https://billofrightsinstitute.org/essays/equal-and-inalienable-rights
[3] Possessing and carrying weapons for self-defense in case of confrontation. *D.C. v. Heller*, 554 U.S. 570, 592 (2008).

1

## II. BEARING ARMS IS PROTECTED CONDUCT, NOT CRIMINAL ACTIVITY

Defendant's attempt to equate the right to bear arms with prohibited criminal acts such as affray, terrorizing, and brandishing is "worthy of the Mad Hatter."[4] Carrying arms for self-defense is a Natural Right of resistance and self-preservation, not a crime. *Heller*, at 592; *Bruen*, at 2145-46.

> In 1765, Blackstone explained the right of every Englishman "of having arms for their defence" arose from "the natural right of resistance and self-preservation, when the sanctions of society and laws are found insufficient to restrain the violence of oppression."
>
> As Blackstone describes the "natural right" of an Englishman to keep and bear arms, the arms are for personal defense as well as resistance to tyranny.

*Silveira v. Lockyer*, 328 F.3d 567, 576 (9th Cir. 2003) (Kleinfeld, Circuit Judge, Kozinski, O'Scannlain, and T.G. Nelson) (dissenting from denial of rehearing *en banc* because "the Second Amendment secures an individual, and not collective, right to keep and bear arms").[5]

Laws against criminal conduct do not implicate the Second Amendment. *Bruen*, at 2142-2146 (common-law offenses of 'affray' or 'going armed to the terror of the people' did not impair the right of the general population to peaceable public carry).[6]

## III. LIKE THE FIRST AMENDMENT, THE GOVERNMENT CANNOT DICTATE HOW INDIVIDUALS EXERCISE THEIR SECOND AMENDMENT RIGHTS

The Free Exercise Clause protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions. As the Court put it more than 50 years ago, it is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017). The government cannot require the People to pray in a certain way or mandate that they "subscribe to a certain view of the Gospel". C.f., *Trinity Lutheran Church*

---

[4] *Heller*, at 589.

[5] A view later vindicated in *Heller*. The *Silveira* dissent exposed the panel's misguided belief that the Second Amendment "imposes no limitation on California's [or any other state's] ability to enact legislation regulating or prohibiting the possession or use of firearms," "does not confer an individual right to own or possess arms" and "erases the Second Amendment from our Constitution as effectively as it can, by holding that no individual even has standing to challenge any law restricting firearm possession or use. This means that an individual cannot even get a case into court to raise the question." Twenty years later, this tyrannical agenda continues to oppress the Natural Right of the People of California to self-preservation, in defiance to the uncomplicated words of the Second Amendment.

[6] Even those accused of threatening behavior did not forfeit their right to bear arms. *Bruen*, at 2148 (surety statutes).

*of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017).

Likewise, the government cannot infringe the rights protected by the Second Amendment by penalizing the way individuals bear arms for self-defense. The plain text does not limit the Right. Neither *Heller* nor *Bruen* found the Right only protected one way of bearing arms, but not another. *Heller* defined 'bearing Arms' as encompassing open carry ('carry upon the person') *and* concealed carry ('in the clothing or in a pocket') equally. *Bruen*, at 2134 quoting, *Heller*, at 584. And the *Bruen* Court had "little difficulty concluding the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct -- carrying handguns publicly for self-defense." *Bruen*, at 2134. It was immaterial that the "proposed course of conduct" was *concealed* carry and not *open* carry.

In an unexpected violent confrontation, such as a mugging or rape, time is of the essence. Deployment of one's weapon in a swift and efficient manner is paramount and requires one's weapon(s) to be readily accessible, not trapped below layers of clothing. See, e.g., *Heller*, at 635 (the Second Amendment guarantees the right to have one's weapon at the ready for "immediate self-defense"). How (and whether) to conceal one's weapon for use against a violent attack is an individual and preexisting right. And just as the government cannot punish someone for reading the Bible in public, it cannot punish peaceful carry for self-defense – whether open and holstered, or concealed.

**IV. LIKE *HELLER* AND *BRUEN*, CALIFORNIA'S REGULATIONS 'ADDRESS A GENERAL SOCIETAL PROBLEM THAT HAS PERSISTED SINCE THE 18th CENTURY**

**A. The Supreme Court Rejected 'Nuanced Judgments' From Inferior Federal Courts**

Defeated by historical tradition *and* the plain text, California urges this Court to adopt a "nuanced approach" and consider of "a wider range of laws as historical analogues." [State Br. at 2, 7]. But *McDonald* and *Bruen* prohibit inferior courts from "making nuanced judgments about which evidence to consult and how to interpret it." *Bruen*, at 2130 quoting *McDonald v. Chicago*, 561 U.S. 742, 803–804 (2010) (Scalia, J., concurring).

Like *Bruen* and *Heller*, the historical analogies in this case "are relatively simple to draw" and do not implicate "unprecedented societal concerns or dramatic technological changes." *Bruen*,

3

at 2132. This case does not call for analogical reasoning to determine "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation" [*Bruen*, at 2132] because criminal penalties for bearing arms are not "distinctly modern firearm regulations." *Heller* involved a ban on firearms in the home, *Bruen* involved restrictions on public carry, and this case involves criminal penalties for public carry – all 'straightforward' historical inquiries. *Bruen*, at 2131.

> When a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. *Bruen*, at 2131.

The very existence of the Second Amendment defeats the idea that it is a crime to wear, bear, or carry a firearm upon the person or in the clothing or in a pocket for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person. *Bruen*, at 2134 quoting, *Heller*, at 584. And post-ratification laws that conflict with the plain text of the Second Amendment must be rejected as "inconsistent with this Nation's historical tradition." *Bruen*, at 2126; 2137 ("to the extent later history contradicts what the text says, the text controls").

Failing to find a "distinctly similar historical regulation," Defendant implores this Court to disregard the plain text altogether and hold that laws punishing criminal activity (menacing, affray, brandishing, assault, poaching, treason) are analogues for the preexisting right to carry a firearm for self-defense. An obviously absurd conclusion. All such regulations must be rejected.

**B. Sec. 25850 and 26350 Address the Same Societal Problems: Firearm Violence**

The governments in *Heller* and *Bruen* "addressed a perceived societal problem– firearm violence in densely populated communities - and employed a regulation that the Founders themselves could have adopted to confront that problem." *Bruen*, at 2131.[7] Each of the laws were stricken by the Supreme Court; the Founders had already considered *and rejected* public safety justifications. *Heller*, 634-35.

California enacted sec. 25850 and 26350, which are also regulations the Founders could have adopted to confront firearm violence, but did not. Defendant concedes that sec. 25850 and

---

[7] "Many Americans hazard greater danger outside the home than in it…The text of the Second Amendment reflects that reality." *Bruen,* at 2135.

4

26350 address the "same alleged societal problem addressed in *Heller*. [see, State Br. at 19 ("The modest burdens imposed by California's open-carry laws and its analogues are **comparably justified by pressing public-safety concerns**. In response to potential **interpersonal violence**, **population growth**, and rapid technological advances in firearms, states and localities acted to restrict or prohibit the open-carry of weapons. These laws are justified by the **public safety concerns** of the threats posed by the open-carry of weapons, when not worn by government officials or officers.")].

*Heller* and *Bruen* exemplify the same straightforward historical inquiry to be applied here.[8] The lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. *Bruen*, at 2131–32.

> New York's proper-cause requirement concerns the same alleged societal problem addressed in *Heller*: "handgun violence," primarily in "urban area[s]."
>
> Following the course charted by *Heller*, we will consider whether "historical precedent" from before, during, and even after the founding evinces a comparable tradition of regulation.
>
> And, as we explain below, we find no such tradition in the historical materials that respondents and their amici have brought to bear on that question. *Bruen*, at 2131-32, quoting *Heller*, at 631 (cleaned up).

*Bruen*'s extensive historical analysis of public carry unearthed not so much as a hint of a tradition of the Founders punishing open carry with criminal sanctions. Just the opposite – the Second Amendment was ratified. Defendant did not (and cannot) identify a "distinctly similar" historical regulation for 25850 and 26350 because ***they outlaw the preexisting Right*** and conflict with the plain text; but the text "controls." *Bruen*, at 2137.

And having failed his task (because a Natural Right is not a crime), Defendant hopes that the sheer numerosity of other inapposite, pre- and post-ratification laws and 'expert' opinions and suppositions of what was (or was not) 'prevalent' will induce this Court to find he has met his burden to justify the challenged laws. But zero + zero + zero still equals ***zero.***

---

[8] After considering "founding-era historical precedent," including "various restrictive laws in the colonial period," and finding that none was analogous to the District's ban, *Heller* concluded that the handgun ban was unconstitutional. *Bruen*, at 2131–32 quoting *Heller*, at 631; see also *Heller*, at 634 (describing the claim that "there were somewhat similar restrictions in the founding period" a "false proposition").

## V. LAWS PROHIBITING 'PISTOLS' ARE NOT HISTORICAL ANALOGUES

Defendant leans on multiple laws banning the carriage of enumerated 'unusual' weapons, some of which include 'pistols' to justify its open carry ban. **First,** the analogy is unsound. An analogy to a pistol ban is a pistol ban – these are simple historical inquiries. Criminalizing *how* the pistol is carried (as is the case here) is no analogue to banning pistols altogether. **Second,** colonial laws provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today. *Bruen*, at 2143 (cleaned up). "Whatever the likelihood that handguns were considered 'dangerous and unusual' during the colonial period, they are indisputably in 'common use' for self-defense today. They are, in fact, 'the quintessential self-defense weapon.'" *Bruen*, at 2143. So, every proffered regulation that bans 'pistols' must also be rejected.

## VI. DEFENDANT PRESSES THE SAME 'PUBLIC SAFETY' JUSTIFICATIONS FIRMLY REJECTED BY THE SUPREME COURT AND (NOW) THE NINTH CIRCUIT

Apparently unable to understand legal text, Defendant continues to advance the same public safety claims firmly rejected in *Heller, McDonald,* and *Bruen,* including:

> "The modest burdens imposed by California's open-carry laws and its analogues are comparably **justified by pressing public-safety concerns**. In response to potential interpersonal violence, population growth, and rapid technological advances in firearms, states and localities acted to restrict or prohibit the open-carry of weapons. **These laws are justified by the public- safety concerns** of the threats posed by the open-carry of weapons, when not worn by government officials or officers."[9]

> "During the colonial period and the early Republic, multiple jurisdictions **enacted restrictions or prohibitions** on the **public carry** of weapons, many of which included the open carry of weapons, **due to dangers to public safety**."[10]

'Public safety' was balanced by the Congress -- and rejected in favor of codifying the individual right to possess and carry weapons.

---

[9] State Br. at 19 (emphasis added).
[10] State Br. at 12 (emphasis added).

> The Second Amendment is the very product of an interest balancing by the people and it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense.
>
> It is this balance—struck by the traditions of the American people—that demands our unqualified deference. *Bruen*, at 2131 quoting, *Heller*, at 635 (cleaned up).

*Heller* rejected the view that 'guns are bad so state and local jurisdictions should be free to restrict them essentially as they see fit.' *Bruen*, at 2160–61 (Alito, J. concurring) (cleaned up).

> "*Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun….Today, unfortunately, many Americans have good reason to fear that they will be victimized if they are unable to protect themselves. And today, no less than in 1791, the Second Amendment guarantees their right to do so." *Bruen*, at 2161.

*McDonald* also rejected public safety claims because the right to keep and bear arms is "not the only constitutional right that has controversial public safety implications. All the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, at 783 (citing cases).

In *Baird v. Bonta*, the Ninth Circuit highlighted *Bruen*'s "express rejection of the use of such 'means-end scrutiny in the Second Amendment context,'" recognizing that, although "judicial deference to legislative interest balancing is understandable --and, elsewhere, appropriate -- it is not deference that the Constitution demands under the Second Amendment." *Baird*, 81 F.4th 1036, 1043 (9th Cir. 2023) quoting, *Bruen*, 142 S. Ct. at 2127, 2131.[11] Defendant cites **no** case where the Supreme Court "refrained from holding that a provision of the Bill of Rights is binding on the States

---

[11] *Bruen* rightly observed that "no one apparently knows how many of the 400 million privately held guns are in the hands of criminals, but there can be little doubt that many muggers and rapists are armed and are undeterred by the Sullivan Law." *Bruen*, at 2158. California's rapists, murderers, and muggers are likewise undeterred by Penal Code sections 25850 and 26350.

7

on the ground that the right at issue has disputed public safety implications." *Ibid.* Defendant's public safety justifications must also be rejected.

**VII. DEFENDANT'S 'TAKE IT OR LEAVE IT' APPROACH VIOLATES THE PLAIN TEXT AND FINDS NO SUPPORT UNDER THE *BRUEN* TEST**

*Heller* rejected the government's claim that it is "permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed"[12]; likewise, it is impermissible to ban one mode of bearing arms so long as the other remains an option.

### A. California's Modern Licensing Scheme Is Not An 'Historical Analogue'

***First,*** Plaintiffs are challenging criminal statutes, not a licensing scheme. *Bruen* requires California to identify an historical analogue for *criminal statutes* punishing open carry. California's modern day licensing scheme is ***not*** an historical analogue, and it cannot be used an historical analogue. ***Second,*** because there was no requirement in the Founding Era that citizens obtain permission from the government *before* they could bear arms, licensing itself is inconsistent with the plain text and National historical traditions. The Natural Right preexists any government.

### B. Licensing Is Inconsistent With The Plain Text, And Not An Historical Tradition[13]

Defendant attempts to justify banning open carry because his may-issue licensing scheme 'allows' concealed carry. Licensing a "preexisting and guaranteed right" is an oxymoron. Defendant concedes licensing is "***permission*** by competent authority to do an act which, without such permission, would be ***illegal***." [ECF 90-6 at 17 (emphasis added)]. Spitzer's report speaks of licensing *concealed* carry between 1871 through the early 1900s but not *open* carry.[14] Cornell identifies *concealed* carry licensing requirements in some towns in California beginning in 1876 and a 1917 statewide limit on *concealed* carry in urban areas.[15] Rivas has difficulty separating criminal conduct from peaceful carry and identifies no laws requiring licensed open carry.[16]

---

[12] *Heller*, at 629.
[13] As of May 2023, 27 states -- over half – are constitutional carry (permitless). https://worldpopulationreview.com/state-rankings/constitutional-carry-states
[14] ECF 90-6 at 19-25.
[15] ECF 90-7 at 21-22.
[16] ECF 90-5.

8

Defendant also falsely claims California is a shall-issue state.[17] A plain read of the licensing statutes reveal California's continued status as an outlier may-issue state.[18] Under Penal Code sec. 26150 and 26155, the licensing authority "may issue a license." Open carry is banned and concealed carry remains a privilege.

As late as 1857 the public was free to "carry arms *wherever they went*." *Bruen*, at 2150 (emphasis supplied) (citation omitted). After the ratification of the Fourteenth Amendment in 1868 came an uptick in gun regulation but, as the Supreme Court "suggested in *Heller*, late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, at 2153–54.[19] And the handful of public carry restrictions that arose restricted *concealed* carry and expressed a preference for *open carry*. *Bruen*, at 2146-47. The aversion to concealed carry logically establishes that open carry was a societal norm.[20] Knowing that, Defendant declares the opposite to be true [absent a citation], speculating that open carry was not a "prevalent practice." [State Reply at 7]. Plaintiffs have no burden to prove that open carry was "prevalent."[21] *Defendant alone* must prove that criminalizing open carry was a national historical tradition[22], which he failed to do.

### C. Open Carry Is Banned; No License Has *Ever* Been Issued

Defendant claims open carry is 'available' under the licensing statutes, but failed to rebut Plaintiffs' sworn allegation that, in fact, no open carry license has ever been issued. In 4 years of litigation, Defendant could not produce evidence that even ***one*** open carry license has been issued. Defendant then pivots to a "take it or leave it" approach: apply for a concealed carry license or

---

[17] State Reply at 4 ("It is undisputed that California has adopted a shall-issue permitting scheme with respect to the concealed carry of firearms"). Plaintiffs dispute his claim.

[18] *Bruen*, at 2161-2162 (Kavanaugh, J. concurring, joined by The Chief Justice) (discussing the 6 unusual discretionary may-issue regimes with "unchanneled discretion for licensing officials" like New York).

[19] But to the extent later history contradicts what the text says, the text controls. Liquidating indeterminacies in written laws is far removed from expanding or altering them. Thus, post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text. *Bruen*, at 2137 (cleaned up) (citations omitted).

[20] Defendant's report from Saul Cornell concedes that concealed carry was "a dastardly and cowardly practice to most Americans in antebellum America." [ECF 90-7 at 14]. The corollary being, of course, that open carry was the norm.

[21] State Reply at 7.

[22] But the absence of evidence is not evidence of its absence. Open carry was such a natural and accepted part of society that the initial post-ratification firearm regulations banned *concealed* carry – and even those jurisdictions recognized that open carry was a constitutional right. *Bruen*, at 2146-47.

carry illegally (see, "magic gun" theory (§26045) at ¶¶29-30 Plaintiffs' Reply Statement of Facts).

Forced alternatives are inconsistent with the plain text of the codified Right. Pistols and concealed carry may have been disfavored in some jurisdictions long ago, but they are part of the societal norm today. And before pistols and concealed carry became societal norms, long guns and open carry were prevalent.[23] But ***all*** enjoy the same protections under the Second and Fourteenth Amendments.

**VIII. NO STAY OF JUDGMENT SHOULD BE GRANTED**

Plaintiffs' claims have proven to be meritorious, and they have suffered actual harm long enough. The loss of a constitutional right is irreparable [*Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citation omitted)], and monetary damages are neither quantifiable nor recoverable against Defendant. The balance of equities and the public interest weigh in Plaintiffs' favor and it is always in the public interest to enjoin unconstitutional laws. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1098 (9th Cir. 2022). California will suffer no harm from enjoining these unconstitutional laws, which restores the People to the free exercise of fundamental rights they enjoyed before California took them away. And try as he might, Defendant's emotional pleas about ***'public safety' cannot be considered in a Second Amendment challenge***. Defendant's request for a stay is frivolous and should be denied.

**CONCLUSION**

Plaintiffs' cross-motion for summary judgment should be granted in its entirety, Penal Code §§ 25850 and 26350 should be permanently enjoined generally or, in the alternative, as against individuals who open carry, and judgment should be entered in Plaintiffs' favor. Defendant's motion for summary judgment should be denied in its entirety.

Dated:  October 23, 2023

    Respectfully submitted,

    THE BELLANTONI LAW FIRM, PLLC

    /s/ Amy L. Bellantoni, Esq.
    Amy L. Bellantoni

---

[23] Open carry is legal in every state in the Ninth Circuit except California and Hawaii. https://wisevoter.com/state-rankings/open-carry-states/

Counsel for Plaintiffs
Email: abell@bellantoni-law.com
*Pro Hac Vice*